```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                 IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

    SIGHT SCIENCES, INC.,
 4                                        :
                                          :       CIVIL ACTION NO.
 5              Plaintiff,                :
    v                                     :
 6                                        :
    IVANTIS, INC.,                        :
 7                                        :       21-1317-VAC-SRF
                Defendant.
 8                              - - -

 9                         Wilmington, Delaware
                          Thursday, June 2, 2022
10                          Telephone Conference

11                              - - -

12  BEFORE:    HONORABLE SHERRY R. FALLON, U.S. Magistrate Judge

13  APPEARANCES:                   - - -

14
            YOUNG CONAWAY STARGATT & TAYLOR, LLP
15          BY:  MELANIE K. SHARP, ESQ.,
            AND, TAYLOR E. HALLOWELL, ESQ.
16
                    and
17
            COOLEY LLP
18          BY:  ORION ARMON, ESQ.,
                 (Denver, Colorado)
19
                    and
20
            COOLEY LLP
21          BY:  MICHELLE S. RHYU, ESQ.,
                 DAVID MURDTER, ESQ.,
22          AND, EMILY M. ROSS, ESQ.
                 (Palo Alto, California)
23
                       Counsel on behalf of
24                     Sight Sciences, Inc.

25                              Brian P. Gaffigan
                                Registered Merit Reporter
```

```
 1   APPEARANCES:   (Continued)

 2
                 SHAW KELLER, LLP
 3               BY:   JOHN W. SHAW, ESQ.

 4                       and

 5               KIRKLAND & ELLIS, LLP
                 BY:   GREGG LOCASCIO, ESQ.
 6               AND, JUSTIN BOVA, ESQ.
                       (Washington, District of Columbia)
 7
                         and
 8
                 KIRKLAND & ELLIS, LLP
 9               BY:   KAT LI, ESQ.
                       (Austin, Texas)
10
                             Counsel on behalf of Ivantis, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                            - oOo -

2                         P R O C E E D I N G S

3              (REPORTER'S NOTE:  The following telephone

4    conference was held remotely, beginning at 11:00 a.m.)

5              THE COURT:  Good morning everyone.  This is

6    Magistrate Judge Sherry Fallon joining the Rule 16

7    scheduling conference in Sight Sciences versus Ivantis.

8              Let me find out first if we have our court

9    stenographer on the line, Mr. Gaffigan.

10             THE COURT REPORTER:  Yes, Your Honor.  I'm on

11   the line.  Good morning.

12             THE COURT:  Good morning.  Thank you.

13             My law clerk, Ms. Polito is on the line.

14             And we will now start with appearances of

15   counsel beginning with Delaware counsel for the plaintiff.

16             MS. HALLOWELL:  Good morning, Your Honor.  This

17   is Taylor Hallowell from Young Conaway Stargatt & Taylor on

18   behalf of Sight Sciences.

19             Melanie Sharp from Young Conaway is also on the

20   line, along with Stephanie Vangelo who is a summer associate

21   here at Young Conaway.

22             And we are joined by Orion Armon, Michelle Rhyu,

23   David Murdter, and Emily Ross from Cooley.

24             THE COURT:  All right.  Thank you.  And welcome

25   to the summer associate who is joining.

1          I'll now ask for the same introductions on
2    behalf of defendant, beginning with Delaware counsel.
3          MR. SHAW:  Good morning, Your Honor.  This is
4    John Shaw for defendant Ivantis.
5          Joining me from Kirkland & Ellis are Greg
6    LoCascio, Kat Li, and Justin Bova.
7          THE COURT:  Very well.  I have reviewed the
8    proposed scheduling order submitted by the parties.  I
9    have also looked at the docket to generally familiarize
10   myself with the patent issues that are the subject of the
11   litigation which I'll generally say involves treatment of
12   glaucoma with intraocular implants.
13         As you know, this is assigned to the Vacant
14   Judgeship so absent assignment of an Article III judge and
15   absent consent of the parties to my jurisdiction, as the
16   Magistrate Judge, I cannot assign a pretrial date or a trial
17   date for this case at this time.  So we'll go forward with
18   plugging in as much of the balance of the schedule as I can
19   do presently, and I will resolve any disputes between the
20   parties concerning the scheduling order on this call.
21         So with that, let me turn to the first section
22   where the parties differ.  Subparagraph 3, or I'm sorry,
23   2(g) on page 3, requests, number of Requests For Admission.
24         The plaintiff wants to include a provision for
25   document authentication, an unlimited number.

1          Let me hear from the plaintiff on that and then
2    I will hear from the defendant.
3          MS. SHARP:  Good morning, Your Honor.  Melanie
4    Sharp.
5          With respect to the RFAs, Sight Sciences
6    seeks an unlimited number of RFAs for authentication.  We
7    originally I think in our discussions back and forth
8    reached agreement on that proposition, but then as we
9    were negotiating various iterations we moved off of that.
10         We have, in a more recent meet-and-confer,
11   agreed that the best way to address authentication is by a
12   stipulation, but of course the devil is in the details when
13   it comes to negotiating a stipulation.
14         Unlimited RFAs are common here and unlimited
15   RFAs for the purpose of authentication will incentivize the
16   parties equally to reach a stipulation so that neither side
17   has to issue or respond to RFAs about authentication.  If we
18   don't provide here for that mechanism, the parties will be
19   unequally situated in their bargaining position with respect
20   to authenticating documents.
21         So Sight Sciences' request is to add an
22   unlimited number of Requests For Admission for authentication
23   understanding the matters will work together to stipulate
24   around that, if possible.
25         THE COURT:  All right.  Does the defendant care

1    to respond at this time?

2            MS. LI:  Good morning, Your Honor.  Kat Li on

3    behalf of defendants.

4            With respect to the unlimited RFAs proposal,

5    as Ms. Sharp has stated, we believe that the more effective

6    route is to negotiate a stipulation which we are open to.

7            In the event that a stipulation is not

8    negotiated, which we don't think is likely, we believe that

9    there are other vehicles that would be more effective to

10    addressing a dispute between authentication.  We believe

11    that the potential for -- we believe that having unlimited

12    RFAs has the potential for abuse by having, you know,

13    unlimited, thousands of RFAs being served.

14            If there is a dispute about authentication, we

15    would work in good faith prior to the trial to resolve

16    those issues.  We think it's premature right now to try to

17    resolve it at this stage of the case, when we don't even

18    know what disputes are.  We also believe that not only are

19    stipulations common, but if they aren't reached, then closer

20    to trial what we can do is do things like have a specific

21    number of RFAs that address the disputed documents or have

22    proposed pretrial orders that deal with authentication so

23    that they avoid Court intervention.

24            THE COURT:  Thank you both sides.  I'm going to

25    adopt the defendant's position on this, and here is why:

1              It's certainly without prejudice to either side
2      to seek additional relief if additional RFAs are needed
3      for document or documents.  I think the parties can be
4      reasonable with one another about that, and it's a little
5      bit premature and speculative at this point to know just how
6      many RNAs relating to authentication of documents will be
7      needed in the case, and I think the parties can effectively
8      address that through stipulation or meet and confers, and
9      the RFA maximum of 50 requests without the unlimited
10     qualifier for document authentication is typical in what I
11     put in my scheduling orders.  So given that the defendant's
12     position is consistent with that, we'll utilize that, but as
13     I said it's without prejudice to either side.
14             The next issue is the following subparagraph,
15     paragraph (h)(ii), limitation on hours for deposition
16     discovery.
17             I will hear plaintiff on that, and I also want
18     plaintiff to address is the likely that there are going to
19     be foreign language depositions involving translation?  I
20     didn't get that feel from reading the pleadings, but I
21     certainly don't know the witnesses and/or fact witnesses
22     and/or experts that may be engaged in this case.
23             MS. SHARP:  Your Honor, Melanie Sharp.
24             In connection with the deposition hours request,
25     Sight Sciences is in the process of amending the complaint

1   to add several entities that are Alcon entities.  We are in
2   discussions with opposing counsel in connection with perhaps
3   stipulating to certain amendments, and we have reached
4   agreement with respect to several entities.  We have not yet
5   reached agreement to amend to add Alcon, the parent.
6               On the question of foreign language depositions,
7   it is the addition of these parties by way of amendment
8   that will introduce perhaps the foreign language, foreign
9   language challenge.
10              The parties here are not similarly situated when
11  it comes to the issue of depositions.
12              Sight Sciences is a quite small company with
13  fewer than 200 employees so the universe of potential
14  deponents is quite limited.
15              Ivantis, on the other hand, was acquired by
16  Alcon entities, and the entities that will be added by
17  stipulation or by motion practice are quite large entities.
18  For example, Alcon Vision, which is the US operating
19  company, has more than 20,000 employees.
20              So for those reasons, plaintiff is seeking more
21  deposition hours to address those additional entities.
22  That's a challenge that defendant Ivantis will not be
23  confronted with, which is why we believe that they should
24  have relatively fewer deposition hours.
25              THE COURT:  All right.  Let me hear from

1   Ivantis.

2              MR. LoCASCIO:  Good morning, Your Honor.  It's
3   Greg LoCascio from Kirkland & Ellis.

4              So our starting point is both sides should get
5   the same number of hours.  And the reason for that is
6   actually what we just heard from the Sight Sciences folks
7   supports it.  What is really going on here is the party that
8   allegedly was infringing, this Ivantis business, actually
9   has less employees than Sight Sciences.  It's got 150 to 200
10  employees.  It was acquired by Alcon actually a few months
11  ago, sort of after the suit began.

12             And so the suggestion now that Alcon needs to
13  be a party, which, you know, we'll get to as to why and for
14  what reason, but at base from a discovery standpoint, all
15  the alleged design decisions, acts of infringement, every-
16  thing necessary to bring the case happened pre-acquisition.

17             And so as a general matter, I think both sides
18  should get the same number of hours, but the rationale
19  offered that now there is sort of a larger entity Alcon
20  doesn't do anything to change the equation here.  The
21  parties should have the same number of hours.

22             Ultimately, if there is some need, of course,
23  it is without prejudice for either side to say, well, there
24  is more than I thought there was, I need to come back for
25  hours.  But their initial disclosures on the other side,

1    identify the CEO of Alcon, for instance, hopefully we won't
2    have to come back on *Apex* issues and other unnecessary
3    efforts to perhaps try to use discovery as a lever, but on
4    the merits of this case, the parties share the same number
5    of hours. The discovery is almost exclusively or very
6    largely basely on Sight and Ivantis, the sub that has now
7    been acquired. So we think it is 85 per side.
8              On the foreign language issue, I don't think
9    there is anybody -- nobody -- I don't think either side has
10   really identified folks that are going to need that.
11             Ultimately, I don't have an inherent aversion
12   to the concept of there is a factor applied when you bring a
13   translator in, but, you know, I don't think that is a need
14   right now and something probably the parties can get to, but
15   that, that is the footnote on this versus the overall hours.
16             THE COURT: On the --
17             MS. SHARP: Your Honor.
18             THE COURT: All right. Go ahead. You may
19   respond, Ms. Sharp.
20             MS. SHARP: In connection with the acquisition,
21   Alcon and the Alcon entities obviously were quite active,
22   so certainly the involvement of Alcon in connection with the
23   acquisition and any other involvement in connection with the
24   infringement would be discoverable.
25             I don't agree with the proposition that there is

1    nothing pre-acquisition that implicates Alcon.

2              The discovery of Alcon is also necessary in

3    connection with damages.  It's clear that the Alcon parent

4    has sponsored many of the marketing efforts which -- and

5    this constitutes the basis for the, one of the bases for

6    the motion to amend.  So discovery of the additional Alcon

7    entities is necessary, so the 200 person limit in Ivantis is

8    not what controls here.

9              THE COURT:  Understood.  But as this stage, I

10   guess until the pleadings are amended and the case starts

11   to take form as it progresses, I am all about balance in

12   the initial scheduling order.  So I'll adopt defendant's

13   position, but I will bump up the 85 hours to 90 hours for

14   each side.  And then it is without prejudice for either side

15   to make an application to the Court that it needs additional

16   time consistent with the reasoning that I have heard on this

17   call or for any other reasons that are yet unknown and

18   developed during the course of discovery in this case.  So

19   I'll adopt the defendant's position with respect to that and

20   bump it up from 85 to 90 hours.

21             The next section I want to take the parties to

22   is not a section that was flagged by either side but one

23   which came up on my radar when I reviewed this scheduling

24   order.  And that is on page 5, subparagraph I believe it's

25   3(k), or it might be 2(k), but it's subsection (k) on that

1     **page, page 5, fact witnesses to be called at trial, and the**
2     **three bullet points would follow from that.**
3                **In looking at it, if I take out the chronology**
4     **because these events, beginning with sub-part (k)(1) are**
5     **triggered from the close of expert discovery, which going**
6     **back to previous pages closes under paragraph 2 on November**
7     **16th.  So if I took out the timeline under these three**
8     **sub-parts, that would take it out to, under sub-part 3, to**
9     **February of 2024, which is beyond the deadline in paragraph**
10    **14 for filling case dispositive and *Daubert* motions in**
11    **December of 2023.  That would take it out two months past,**
12    **if the parties utilize these provisions.**
13               **Now, there is always a possibility that no**
14    **additional depositions will be needed, but in any event,**
15    **if there are, you are taking those depositions after the**
16    **deadline for completing submission of case dispositive and**
17    ***Daubert* motions, and the last thing the Court really wants,**
18    **that burns up both the resources of the parties as well as**
19    **the resources of the Court, to have to supplement existing**
20    **briefing if these depositions are taken after the fact.**
21               **So any thoughts about that?  Do you want to**
22    **leave the dispositive motion deadline as is and take chances**
23    **that these depositions won't come about or won't interfere**
24    **with the briefing schedule?  I need to know your preferences**
25    **or if you have any concerns if I'm being overly concerned**

1    about it.

2              Let me hear first from the plaintiff.

3              MS. SHARP:  Your Honor, we appreciate you

4    flagging this.  It isn't anything that we had focused on

5    in terms of timing.

6              I do not believe that we ought to change the

7    case dispositive deadline given where it falls in connection

8    next with what should be the projected trial date.

9              What I would propose is that the parties

10   should revisit this provision, which we would hope would

11   not necessarily be used and try to come up with a tighter

12   schedule that would keep us closer to being on track with

13   the case dispositive motion, and that we, the parties do

14   that within seven days.

15             THE COURT:  All right.  Any objection by

16   defendant to the adopt the proposal?

17             MR. LoCASCIO:  No, no objection to that, Your

18   Honor.  And I would echo the parties -- I think, I think our

19   understanding is it comes from, at least was built off in

20   part some of your default guidelines, and I think probably

21   so since we have been in situations where you have a fact

22   witness where you need a dep before trial because they were

23   never deposed.

24             I think inherent on both parties will be between

25   initial discovery and discovery responses identifying

```
1    witnesses so nobody has a situation where they feel like
2    they have been sandbagged, but, you know, for various
3    reasons sometimes a fact witness shows up late.  And I think
4    both sides just want the insulation or protective approach
5    from your guidance that would allow us to make sure that
6    person couldn't, you know, sneak through un-deposed.
7              And it sounds like the plan will be to sort of
8    work on that a little bit vis-à-vis the timing.  I don't
9    know that I have an inherent problem with that the parties
10   agree collectively to say that that kind of clean up dep.
11   could happen after dispositive motions because I think it is
12   in both parties' interest not to have the schedule flip anymore.
13             But we will work something out and come back to
14   up; and if you have views or guidance on that, like you
15   think it ought to be hard and fast that that happens before
16   the briefing is closed on those motions, that that is fine.
17             I think my experience has been that sometimes
18   the witness list process is happening after dispositive
19   motions, which is what this was designed to capture.
20             THE COURT:  Yes, I think you are probably right.
21   I think there are, let me say, probably going to be very
22   rare situations where an after-the-fact witness deposition
23   is going to upset or disrupt the briefing of dispositive
24   motions and/or *Daubert* motions.  I think where it more comes
25   into play as more of a problem perhaps is if witnesses,
```

1    after-the-fact witnesses are taken too close perhaps to the
2    pretrial conference date and an issue crops up about certain
3    testimony that one side or the other wants to either object
4    to admissibility or whatever.  That just creates a conundrum
5    for the Court because, you know, by the time you get to the
6    pretrial conference, it's hoped that whatever evidentiary
7    issues the Court is going to have to deal with are set out
8    either in the motions in limine or in the pretrial order,
9    and that once that is done and the order is entered and the
10   parties go forward with trial, the Court doesn't want any
11   late breaking evidentiary issues on the horizon with
12   witnesses that could have been vetted earlier but were not.
13   And I think that is the main concern there.
14              So in any event, I will let the parties flush
15   that out and, you know, address it however the parties think
16   best in a revised form of scheduling order that you will get
17   to me within ten days -- I'm sorry, seven days of this
18   conference, and that will be fine.
19              If you don't alter it, that's fine.  I mean you
20   just deal with these things as they come up.  Both sides I
21   hope will be reasonable in recognizing that the whole
22   objective here with this scheduling order is case management
23   and not having after-the-fact issues disrupt the balance of
24   the schedule that remains when they arrive.
25              Moving ahead to the status report and status

1    conference, page 8.

2            The status report at paragraph 7 on January 12
3    of next year is fine with me.  I usually like to hold a
4    status teleconference after that, so I'll give the parties a
5    date of January 18, 2023 at 10:00 a.m.

6            If, when you submit your status report, both
7    sides feel that there is really nothing going on at that
8    time like a discovery dispute or anything that would require
9    action by the Court, you can mutually request in that status
10   report that I cancel the status teleconference.  I'm not
11   interested in wasting your time if there is no reason to be
12   touching base with the Court both in your written report and
13   then a teleconference if the teleconference is unnecessary.
14   I don't have a problem canceling it if the parties mutually
15   request it.

16           And as far as the balance of the schedule, I
17   cannot, under our standing order regarding the Vacant
18   Judgeship, I can't give a *Markman* hearing date, nor the date
19   a *Markman* decision might be issued or pretrial conference
20   date or trial date at this time because this is a Vacant
21   Judgeship case.

22           So I think that is the extent of what we can
23   do on our call today.  I'll look for the parties' proposed
24   revised scheduling order.  And when I get it, I will sign it
25   and enter it on the docket.

1        With that, is there anything further that we
2   need to address on behalf of the plaintiff?
3            MS. SHARP:  Nothing, Your Honor.  Thank you.
4            THE COURT:  Anything further from the defendant?
5            MR. LoCASCIO:  Nothing here, Your Honor.
6            THE COURT:  All right.  Thank you, counsel.
7   I appreciate your time today, and I will look for the
8   scheduling order.  We are adjourned.  Thank you.
9            MS. SHARP:  Thank you.
10           MR. LoCASCIO:  Thanks.
11           (Telephone conference ends at 11:23 a.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1       **CERTIFICATE**

2

3

4            I HEREBY CERTIFY that the proceedings were

5       taken by me and that the transcript is a true and accurate

6       record of the proceedings.

7

8
           /s/   Brian P. Gaffigan
9          _____
           Brian P. Gaffigan
10         Registered Merit Reporter
           Federal Certified Realtime Reporter
11         Michigan Certified Shorthand Reporter
           North Carolina Certified Shorthand Reporter
12         Dated:   June 5, 2022

13

14

15            (The foregoing certification of this transcript
        does not apply to any reproduction of the same by any means,
16      unless under the direct control and/or supervision of the
        certifying reporter.)
17

18

19

20

21

22

23

24

25