IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.: 21-1317-VAC-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| IVANTIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**STIPULATION AND [PROPOSED] ORDER RE:
DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Plaintiff Sight Sciences, Inc. and Defendant Ivantis, Inc. stipulate to and respectfully ask the Court to enter the following ORDER regarding discovery of Electronically Stored Information ("ESI"):

1. **Purpose**. This Order replaces the ESI portion of the District of Delaware's Default Standard for Discovery in Section 5 (c)-(e) and supplements the Federal Rules of Civil Procedure and any other applicable orders and rules. The District of Delaware's Default Standard for Discovery continues to apply to this litigation in all other respects.

2. **Cooperation**. The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. The failure of counsel or the Parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.

3.     **Definitions**.

The following definitions apply to this Order:

a.     **"Database"** means an electronic collection of structured data (often maintained in a non-custodial manner).

b.     **"Family"** means a group of documents that are maintained as a single unit in the ordinary course of business (*e.g.*, an email and its attachments).

c.     **"ESI"** or **"Electronic Document"** means electronically stored information as defined in FRCP 34(a)(1)(A).

d.     **"Extracted Text"** refers to the result of the process by which content of an Electronic Document is electronically extracted during e-discovery processing.

e.     **"Native Format"** means the default format of ESI created by its associated software program and also includes the export format of documents that are not maintained in a usable Native Format.

f.     **"Optical Character Recognition"** or **"OCR"** refers to the result of the process by which a hard copy or non-searchable Electronic Document is scanned by a computer to capture text from the face of the document.

g.     **"Privileged Information"** refers to information subject to a claim of attorney-client privilege, work-product protection, or other privilege or immunity.

h.     **"Producing Party"** means any Party to this proceeding who produces documents or information under this Order.

i.     **"Receiving Party"** means any Party to this proceeding who receives documents or information under this Order.

4. **Production Format and Metadata**.

a. **Format**. Subject to the exceptions for documents to be produced in Native Format, documents will be produced as Bates-stamped tagged image file format ("TIFF") images accompanied by an image load file, a data load file with fielded metadata, document-level Extracted Text for ESI, and OCR text for scanned hard copy documents and ESI that does not contain extractable text. The Bates stamp shall appear in the lower right-hand corner of all images and shall be a unique, consistently formatted identifier that will: (1) be consistent across the production; (2) contain no special characters; and (3) be numerically sequential within a given file.

b. **TIFF Images**. TIFF images will be produced in black and white, 300 DPI Group IV single-page format and will be consecutively Bates-stamped.

(i) Images will include the following content where present:

a. For word processing files (*e.g.*, Microsoft Word): Comments, "tracked changes," similar in-line editing and all hidden content.

b. For presentation files (*e.g.*, Microsoft PowerPoint): Speaker notes, comments, and all other hidden content.

(ii) In the event that black-and-white imaging renders a document difficult to read (*e.g.*, Word documents with tracked changes from multiple authors), the Receiving Party may request that the Producing Party re-produce the document in color JPEG, 300 DPI Group IV single-page format. The Requesting Party must identify the pages by Bates number that it wishes to receive as color images, limited to a reasonable number of pages.

c. **Native Files**. Spreadsheet files (*e.g.*, Microsoft Excel and .csv files) and Media files (*e.g.*, .mp3, .wmv, etc.) shall be provided in Native Format with a single placeholder image bearing the Bates number and confidentiality designation.

A party may request reproduction in native format of a reasonable number of files identified by Bates number if the default production format renders them difficult to review, creates formatting errors, or degrades legibility (*e.g.*, PowerPoint presentations).

The parties will meet-and-confer to discuss a suitable production format for any proprietary or non-standard file types that require special software or technical knowledge for review, Databases and Database reports, and any document types that cannot be accurately rendered or reviewed in image format.

The Producing Party may use a Native File redaction tool (*e.g.*, "Blackout") to redact Privileged Information from documents produced in Native Format as long as the Receiving Party can easily identify the redactions.

d. **Deduplication**. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. Deduplication shall occur at the Family level, *e.g.*, stand-alone Electronic Documents will not be compared to email attachments for deduplication purposes. Hard copy documents containing handwritten notes will not be considered as duplicative of any other document.

e. **Document Unitization**. Where documents with attachments are produced, they will be attached in the same manner as included in the original file. Unless documents contain solely Privileged Information, parties will produce complete Document Families where any portion of the Family contains relevant information. Where documents are produced and the full Family is

not included, the Producing Party will identify the missing attachments by means of a "place holder" file explaining why the document was not produced. For example, if a document is withheld on privilege grounds, the place holder would state "Withheld for Privilege."

Where the Producing Party converts paper documents into electronic format, distinct documents must not be merged into a single record, and single documents must not be split into multiple records.

Documents that are segregated or separated from other documents, whether by inclusion of binders, files, dividers, tabs, clips, or any other method, will be produced in a manner that reflects these divisions.

f. **Metadata Fields**. Aside from metadata fields generated during eDiscovery processing and production (*e.g.*, Bates numbers, hash and custodian values, etc.), the Producing Party is not obligated to produce metadata from a document if metadata is not reasonably available. The parties agree to produce the following metadata fields where applicable: PROD_VOL, Custodian, All Custodians, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Filename, Author, Date Created, Date Last Modified, MD5 Hash, File Extension, Bates Number Begin, Bates Number End, ProdBeg Attachment, ProdEnd Attachment, and Confidentiality (or the equivalent thereof). Descriptions of each metadata field are listed below.

| Field | Description |
|---|---|
| PROD_VOL | Name of the Production Volume. |
| Custodian | Custodian who possessed the document or electronic file. |
| All Custodians | When global deduplication is used, these are custodians whose file has been deduplicated; multiple custodians separated by semicolon (*e.g.* "Doe, Jane; Jones, James; Smith, Bob.") |
| Email Subject | "Subject" field extracted from email message. |
| From | "From" field extracted from email message. |
| To | "To" field extracted from email message. |
| CC | "CC" or "carbon copy" field extracted from email message. |
| BCC | "BCC" or "blind carbon copy" field extracted from email message. |
| Date Sent | Sent date of email message (mm/dd/yyyy format). |

| Time Sent | Sent time of email message. |
|---|---|
| Filename | Original file name. |
| Author | If available, the person(s) who created, wrote, reviewed, signed, or approved the document. |
| Date Created | Date the document was created. |
| Date Last Modified | Date the document was last modified. |
| MD5 Hash | MD5 Hash value for ESI. |
| File Extension | File extension describing the type of document. |
| Bates Number Begin | The production ID number for the first page of the document. |
| Bates Number End | The production ID number for the last page of the document. |
| ProdBeg Attachment | The production ID number for the first page of the parent document. |
| ProdEnd Attachment | The production ID number for the last page of the last attachment to the parent document. |
| Confidentiality | Text of confidentiality designation, if any. If the value of this field conflicts with the face of the document, the highest designation controls. |

5. **Production Deliverable**.

    a. **Load Files**. A Concordance compatible data load file will be provided with each production volume containing a header row listing all metadata fields included in the volume. Image load files will be produced in Opticon compatible format. Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable. Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

    b. **Delivery**. Productions shall be delivered via secure online data transfer (*e.g.*, secure FTP site), or on an external hard drive if the size of a production makes online transfer impractical.

    c. **Encryption**. To maximize the security of information in transit, the Parties shall encrypt any media on which documents are produced. In such cases, the Producing Party will

transmit the encryption key or password and applicable instructions to the Receiving Party, upon receipt of the encrypted media.

    d. **Extracted Text/OCR**.

        (i) Electronically Extracted Text must be provided if available for documents collected from electronic sources. Text generated via OCR shall be provided for all documents that do not contain electronically extractable text (*e.g.*, non-searchable PDF files or JPG images), for documents redacted in image format, and hard copy documents. The parties will not degrade the searchability of documents as part of the document production process.

        (ii) Document text will be produced as separate, document-level text files and will not be embedded in the metadata load file.

        (iii) Text files will be named according to the beginning Bates number of the document to which they correspond.

        (iv) If a document is provided in Native Format, the text file will contain the Extracted Text of the native file.

6. **Document Preservation**.

    a. All parties are obligated to take reasonable and proportionate steps to preserve relevant information in the party's possession, custody, or control. The parties agree to meet and confer if they identify discoverable ESI sources that are not covered by the technical specifications in this Order and agree to modify as needed.

    b. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that unless otherwise ordered by the Court upon a motion of a party, the information sources listed in <u>Schedule A</u> need not be preserved, searched, reviewed, or produced.

7. **Privilege**.[1]

    a. Pursuant to Section 11 of the Stipulated Protective Order and Rule 502(d) of the Federal Rules of Evidence, the production or disclosure of any privileged or otherwise protected documents (as defined by Fed. R. Civ. P. 34(a)(l)) and accompanying metadata (collectively, "Documents"), shall not result in the waiver of any privilege or other protection (including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, or other applicable privilege) associated with such Documents in this case or in any other federal or state proceeding. The Parties will not conduct an inquiry under FRE 502(b) to determine whether information was produced inadvertently. Instead, the Parties will determine inadvertence solely based on the good faith representation of the Producing Party.

    b. Fed. R. Civ. P. 26(b)(5)(B) governs the proper procedure for the notification and return of Privileged Information when identified by the Producing Party.

    c. Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

    d. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    e. The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney

---

[1] The Parties are currently negotiating a Protective Order. The two references to the Protective Order in this ESI Stipulation are to sections of a draft Protective Order that the Parties agree to. To the extent the cross-references to the paragraphs in the Protective Order change, the Parties will file an Amended ESI Stipulation to reflect those changes.

work product, or similar doctrines, in accordance with Section 12.4 of the Stipulated Protective Order.

8. **Non-Custodial Databases**. If discoverable data from any Database can be produced in the form of an already existing and reasonably available report, the Producing Party may collect and produce the data in that report in accordance with Sections 4 and 5 above. If an existing report form is not reasonably available, the Producing Party may make reasonable efforts to export from the Database discoverable information in the form of a new report or in a format compatible with Microsoft Excel or Microsoft Access and may produce such information in that native format.

9. **Reproduction of Third-Party ESI**. Notwithstanding anything to the contrary herein, any party that produces documents produced to it by a third party, such as in response to a subpoena, may produce such documents in the format in which they were produced by the third party.

10. **Modification**. Unless specifically stated otherwise, the parties may jointly agree to modify this Stipulation without the Court's leave. Any such modification shall be in a writing signed by the parties or their respective counsel. If the parties cannot resolve their disagreements regarding a proposed modification, the parties reserve the right to seek relief through the Court's discovery dispute procedures.

11. **Cost Shifting**.

    a. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

    b. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations, but nothing in this order shall affect

a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of ESI.

12. **Federal or Local Rules**.  Except as expressly stated, nothing in this Order affects the parties' discovery obligations under the Federal or Local Rules.

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

| YOUNG CONAWAY STARGATT & TAYLOR, LLP | SHAW KELLER LLP |
|---|---|
| */s/ Melanie K. Sharp* | */s/ Andrew E. Russell* |
| Melanie K. Sharp (No. 2501)<br>James L. Higgins (No. 5021)<br>Taylor E. Hallowell (No. 6815)<br>1000 North King Street<br>Wilmington, DE  19801<br>(302) 571-6600<br>msharp@ycst.com<br>jhiggins@ycst.com<br>thallowell@ycst.com | John W. Shaw (No. 3362)<br>Andrew E. Russell (No. 5382)<br>Nathan R. Hoeschen (No. 6232)<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>arussell@shawkeller.com<br>nhoeschen@shawkeller.com |
| COOLEY LLP<br>Michelle S. Rhyu<br>David Murdter<br>Deepa Kannappan<br>Emily M. Ross<br>3175 Hanover Street<br>Palo Alto, CA  94304-1130<br>(650) 843-5000 | KIRKLAND & ELLIS LLP<br>Gregg LoCascio<br>Justin Bova<br>1301 Pennsylvania Avenue, N.W.<br>Washington, DC  20004<br>(202) 389-5000 |
| Orion Armon<br>1144 15th Street, Suite 2300<br>Denver, CO  80202-2686<br>(720) 566-4000 | Kat Li<br>401 Congress Avenue<br>Austin, TX  78701<br>(512) 678-9100 |
| *Attorneys for Sight Sciences, Inc.* | Ryan Kane<br>601 Lexington Avenue<br>New York, NY  10022<br>(212) 446-4800 |
| | *Attorneys for Ivantis, Inc.* |

SO ORDERED this _____ day of _____, 2022.

_____
United States District Judge