IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIGHT SCIENCES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-1317-VAC-SRF |
| ) | |
| IVANTIS, INC., ALCON RESEARCH ) | |
| LLC, ALCON VISION, LLC, and ALCON ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

**LETTER TO THE HONORABLE SHERRY R. FALLON**
**FROM JOHN W. SHAW**

OF COUNSEL:
Gregg LoCascio
Justin Bova
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Kat Li
Austin C. Teng
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Dated: August 12, 2022

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Dear Judge Fallon:

Defendants submit this letter in opposition to Sight Sciences, Inc.'s ("Sight") August 11 letter and its proposed Protective Order. Instead of Plaintiff's proposal to screen all in-house counsel from materials marked Highly Confidential - Attorneys' Eyes Only ("HC-AEO"), Defendants seek entry of a less restrictive Protective Order (Ex. A) that would permit one in-house counsel from each side access to HC-AEO information. *See* Ex. A ¶ 6.3(a) (highlighted). For Defendants, that is Jeffrey Prokop. *See* Decl. of J. Prokop, ¶ 1 (Ex. B).

Sight cannot meet its burden to demonstrate that restricting Mr. Prokop from accessing critical case materials is warranted. *See iCeutica Pty Ltd. v. Lupin Ltd.*, C.A. No. 14-1515-SLR-SRF, at 41:12-16 (D. Del. June 15, 2015) (Ex. C) (transcript) (noting that the party seeking to bar disclosure to in-house counsel bears the burden). Delaware courts routinely grant access to in-house counsel who, like Mr. Prokop, are not competitive decision makers. Mr. Prokop has regularly acted as a designated in-house counsel in other cases without disclosing any HC-AEO information. He is not involved in IP licensing outside of litigation he manages. As such, Sight cannot show any legitimate risk of disclosure (inadvertent or otherwise) by Mr. Prokop, and Defendants' need to manage the litigation greatly outweighs any purported risk to Sight's information.

**I.    Sight's proposal would prevent Defendants' designated in-house representative from properly managing the pending litigation and is out of step with district practice.**

Mr. Prokop is the Executive Director, U.S. and IP Litigation at Alcon, and he is Defendants' in-house counsel responsible for day-to-day management of pending litigation matters, including this proceeding. Decl. of J. Prokop ¶¶ 1, 3 (Ex. B). Mr. Prokop reviews every filing with the Court submitted in this litigation and, consistent with his usual practice, works closely with outside counsel in preparing for depositions and hearings, and making strategic decisions about the conduct of the litigation, including any potential settlement. *Id.* ¶ 3. He does not participate in competitive decision making for Defendants. *See id.* ¶¶ 3, 4.

As Judge Bryson has explained, an in-house attorney's "role in supervising patent litigation and settlement makes it important for him to have broad access to the litigation materials in order to manage the litigation and make strategic decisions in the course of the case." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 394 (D. Del. 2019). Screening Mr. Prokop from all HC-AEO information, including, for example, briefing, expert reports, and testimony on liability and damages, will undermine his ability to assess critical issues in this case and direct Defendants' legal strategy. Ex. B, ¶ 5. For example, Sight seeks lost profits damages. Sight's financial and product information related to its alleged lost sales (which would be HC – AEO under ¶ 2.7 of the proposed Protective Order) bear on liability and damages in this case. Without access to this information, Mr. Prokop would not be able to comprehensively assess the nature and scope of Sight Science's claims and direct Defendants' defense to those claims. *See id.* ¶¶ 5, 6.

Further, maintaining Mr. Prokop's access to HC-AEO material is consistent with this court's other rulings. Indeed, recognizing that "it's truly unfair for someone in-house not to have access to everything," judges in this district regularly enact Protective Orders granting at least one in-house counsel access to all information, including highly confidential material. *Matsushita Elec. Indus. Co. v. Cinram Int'l, Inc.*, C.A. No. 01-882-SLR (D. Del. Oct. 16, 2002) (transcript) (Ex. D); *see*

1

*also, e.g., Belcher Pharms., LLC v. Hospira Inc.*, C.A. No. 17-775-LPS, D.I. 123 at 28:24-29:2 (D. Del. Dec. 20, 2018) (Stark, J.) (transcript) (Ex. E) (finding it "better for this case if there is someone at [the client] that can see not only the confidential information but also the highly confidential information."); *Exelixis, Inc. v. MSN Lab'ys Priv. Ltd.*, C.A. No. 19-2017-RGA-SRF, D.I. 162 at 2 (D. Del. July 14, 2021) (order) (providing HC-AEO access to an in-house representative who was not a competitive decision maker); *iCeutica*, C.A. No. 14-1515-SLR-SRF at 39:16-24, 40:15-42:19 (transcript) (Ex. C) (same).

**II.  Sight's imagined "lopsided" risk baselessly assumes that Mr. Prokop's access will inevitably lead to disclosure, and does not outweigh Defendants' need for access.**

Courts have recognized that it is improper to assume that protective order materials in the hands of in-house counsel, rather than outside counsel, are more likely to "be misused or fall into the wrong hands, whether inadvertently or not." *See* Sight Letter Brief, at 2; *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("It is not appropriate to deny an attorney of record access to confidential or 'attorneys' eyes only' information under a protective order based solely on that person's status as in-house counsel . . . . This is because denial of such access may not 'rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order.'"); *Boehringer Ingelheim Pharm., Inc. v. Hercon Labs. Corp.*, C.A. No. 89-484 - CMW, 1990 U.S. Dist. LEXIS 14075, at *3 (D. Del. Oct. 12, 1990). Instead, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party . . . must govern any concern for inadvertent or accidental disclosure." *U.S. Steel*, 730 F.2d at 1468. Courts consider the degree to which counsel are engaged in competitive decision-making. *See Exelixis, Inc.* No. 19-2017-RGA-SRF, D.I. 162 at 2.

Here, Sight cannot show that Mr. Prokop is incapable of handling HC-AEO information without inadvertent disclosure. Multiple U.S. district courts have permitted Mr. Prokop access to HC-AEO materials, including after finding that he is "not involved in competitive decision making." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG), at 6 (E.D.N.Y. Aug. 22, 2019) (order) (Mann, J.) (Ex. F); *see Hoya Corp. v. Alcon Inc.*, No. 20-CV-03629, Dkts. 68, 92 (N.D.T.X. Nov. 15, 2021) (order) (Lynn, J.) (Exs. G, H). Mr. Prokop's responsibilities are limited to supervising and managing litigation against Alcon and its subsidiaries (including Ivantis), and managing government and/or internal investigation matters. Ex. B. ¶¶ 3, 4. He has no involvement in patent prosecution. *Id.* Nevertheless, as a further precaution, the proposed Protective Order would bar Mr. Prokop from participating in related patent prosecution for two years, and he would only be permitted to use HC-AEO information he received "for prosecution, defending, or attempting to settle this Action and associated appeals." *See* Ex. A., ¶¶ 6.1, 7. Moreover, Mr. Prokop does not directly report to Alcon's CEO or any other competitive decision maker. Rather, he reports to Christopher Cook, Alcon's Global Head of Litigation and Government Investigations, who has also been found not to be a competitive decision maker, has no involvement in patent prosecution, and has been granted access to HC-AEO material. *See* Ex. B, ¶ 4; Ex. I, *Alcon Vision*, No. 18-CV-407 (NG), at 6.

Sight relies heavily on *Blackbird* and *PhishMe*, but those cases are inapposite. *See Brit. Telecomms.*, 330 F.R.D. at 394 (distinguishing *Blackbird* as "unusual" and *PhishMe* as tied to its underlying facts). *Blackbird* involved in-house counsel who were "essentially the officers and principals . . . [of] a business whose main practice is acquiring patents and asserting them in

2

litigation." *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, C.A. No. 15-53-RGA, 2016 U.S. Dist. LEXIS 65308, at *13 (D. Del. May 18, 2016). Mr. Prokop is not an officer or principal of Alcon, and he is not involved in IP licensing outside of the litigation he manages. Ex. B, ¶ 3. Likewise, PhishMe was a company "at a point in its corporate history where deciding whom to sue for patent infringement (or license) still amounts to a particularly 'important' part of its business strategy." *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, C.A. No. 16-403-LPS-CJB, 2017 U.S. Dist. LEXIS 150862, at *17 (D. Del. Sep. 18, 2017). Here Defendants, as Sight recognizes in its own brief, are in a different business. Sight Letter Brief, at 2.

Sight further cites *R.R. Donnelly & Sons v. Quark, Inc.* as an instance where "AEO access to a party's employee" was denied. C.A. No. 06-032-JJF, 2007 WL 61885, at *1 (D. Del. Jan. 4, 2007). The employee (who was not in-house counsel bound by the same ethical obligations as all attorneys), however, was a competitive decision maker who advised "on company wide business initiatives and opportunities for growth." *Id.* at *2. More importantly, Sight omits the fact that the *R.R. Donnelly* court granted access to the same company's "Chief Patent Counsel," whose role was limited to "legal decision-making" and did not "report directly to any business person with direct responsibility for competitive decision-making." *Id.* at *1. Granting Mr. Prokop access to HC-AEO information is consistent with *R.R. Donnelly*. Mr. Prokop is in-house counsel who does not report directly to any competitive decision makers, and his role is limited to legal decision-making surrounding Alcon's litigation matters.

Because Protective Orders are intended to protect information that would provide a competitive advantage against the disclosing party, a party's need for access to HC-AEO information outweighs any risk of inadvertent disclosure when, as here, the individual receiving access is not a competitive decision maker. *U.S. Steel*, 730 F.2d at 1468; *see also In re Deutsche Bank Tr. Ams.*, 605 F.3d 1373, 1380 (Fed. Cir. 2010); *Brit. Telecomms.*, 330 F.R.D. at 393 ("The more [in-house counsel's] roles have been limited to the conduct and settling of litigation, and the less they have been engaged in regular direct contact with the company's decisionmakers, the more likely the courts have been to find that the attorneys could have access to confidential information without undue risk of inadvertent disclosure.").

Additionally, in-house counsel like Mr. Prokop are bound by the ethical obligations that bind all attorneys, all of whom risk jeopardizing their licenses if they violate the Protective Order. *See U.S. Steel*, 730 F.2d at 1468 ("Like retained counsel, however, in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions."). Mr. Prokop fully understands these obligations and the consequences of violating them. Ex. B, ¶ 7. In his nearly 18 years of experience in complex litigation, Mr. Prokop has scrupulously observed the requirements of protective orders, *id.*, and Sight has posited no reason he will fail to do so here.

Not only has Sight failed to demonstrate any risk of disclosure, it has ignored the burden imposed on Defendants if Mr. Prokop is barred from having full access to the information necessary to effectively supervise and manage this litigation. *See In re Deutsche Bank*, 605 F.3d 1373, 1380 (Fed. Cir. 2010) (establishing that risk of disclosure must be balanced "against the potential harm to the opposing party from restrictions imposed upon that party's right to have the benefit of counsel of its choice"); Ex. B, ¶¶ 5, 6. Mr. Prokop should be permitted access to these materials.

### III. Sight's lack of an in-house attorney with a similar role as Mr. Prokop is irrelevant.

Sight argues without authority that the "differing size and diversification of the parties" businesses causes the risk of inadvertent disclosure to fall on Sight. Sight Letter Brief, at 2. The relative size of two publicly-traded companies (Sight and Alcon Inc.) is irrelevant. If anything, Defendants bear the greater risk because Sight is not a competitor and "does not as of February 18, 2022 sell any products that practice the Patents-in-Suit." Sight's Answer to Ivantis's Countercls. (D.I. 26), ¶ 2. Yet Sight seeks detailed technical information about Defendants' products.

Equally misguided is Sight's argument that Mr. Prokop should not be permitted access to HC-AEO material because Sight does not have similarly situated in-house counsel. A Protective Order is designed to safeguard information (regardless of the parties' respective size) and the manner in which Sight has chosen to staff its legal department should not dictate its terms. Indeed, it is not unusual for courts to institute Protective Orders granting different levels of access to parties when the particular facts concerning the parties at issue render it necessary. *See Affymetrix, Inc. v. Illumina, Inc.,* C.A. No. 04-901-JJF, 2005 WL 1801683, at *1 (D. Del. July 28, 2005).

In *Affymetrix*, the Plaintiff proposed access to their team of "four in-house lawyers known as the 'Litigation Unit,'" while defendants had proposed access to its one in-house lawyer. *Affymetrix*, 2005 WL 1801683, at *1. The court granted plaintiff's team of four in-house counsel access because they were "not involved in competitive decision making" but barred access from defendant's singular in-house counsel because the counsel's "role [crossed] over into [] competitive-decision making." *Id.* at *2.

The inquiry is not whether equal numbers of plaintiff's and defendants' in-house counsel are granted access, but whether the particular counsel proposed are competitive decision makers. *Id.*; *see also Belcher Pharms.,* C.A. No. 17-775-LPS, D.I. 123 at 28:22-30:1 (Ex. E) (denying access to plaintiff's proposed representative, a competitive decision maker, and granting access to defendant's in-house counsel). Here, Mr. Prokop is not a competitive decision maker. Mr. Prokop should not be denied access to critical information necessary for him to manage and supervise the case merely because Sight does not employ an in-house attorney to oversee this litigation who is not a competitive decision maker.

Sight, as the party seeking to limit disclosure of its information, bears the burden of showing that barring Mr. Prokop from access is warranted. *Cf.* Protective Order ¶ 5.3 ("The burden of persuasion in any such challenge proceeding shall be on the Designating Party and such challenges shall be made subject to the provision of Federal Rule of Civil Procedure relating to sanctions.") Sight cannot carry that burden here. Accordingly, Defendants respectfully requests that the court enter the attached proposed Protective Order and permit Mr. Prokop to access HC – AEO information.

Respectfully submitted,

/s/ *John W. Shaw*

John W. Shaw (No. 3362)

cc:   Clerk of the Court (via CM/ECF & Hand Delivery)
       All Counsel of Record (via CM/ECF & Email)