# EXHIBIT F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
**ALCON VISION, LLC,**

                                **Plaintiff,**

                                **MEMORANDUM AND ORDER**

   **-against-**

                                **18-CV-407 (NG)**

**LENS.COM, INC.,**

                                **Defendant.**
-----------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

Currently pending before the Court are the parties' cross-motions for a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, to govern the disclosure of certain information to be produced in discovery. See Letter Motion for Protective Order by Lens.com (July 31, 2019) ("Def. 7/31/19 Letter"), Electronic Case Filing Docket Entry ("DE") DE #93; Letter Motion for Protective Order by Alcon Vision, LLC (Aug. 1, 2019) ("Pl. 8/1/19 Letter"), DE #94. After several failed attempts to agree upon a stipulated protective order, the parties' remaining dispute primarily centers around the extent to which plaintiff Alcon Vision, LLC ("plaintiff" or "Alcon") is permitted to share with specified in-house counsel certain materials designated as attorneys'-eyes-only ("AEO").

## FACTUAL BACKGROUND

In the course of a hearing held on May 21, 2019 (the "May 21 hearing"), this Court heard extensive argument from the parties regarding the AEO provision to be incorporated into a confidentiality stipulation that was to be submitted for judicial approval. See Minute Entry and Order (May 21, 2019) ("5/21/19 Minute Entry"), DE #68; Transcript of Proceedings held

on May 21, 2019 (docketed June 10, 2019) ("5/21/19 Tr."), DE #71; see also Letter Motion for Protective Order by Lens.com, Inc. (Apr. 26, 2019), DE #61; Response in Opposition (Apr. 30, 2019) ("Pl. 4/30/19 Response"), DE #62; Reply in Support (May 2, 2019), DE #64. Initially, the parties' competing versions of a protective order each included two levels of confidentiality designations: (1) "Confidential" and (2) "AEO" (also referred to as "Highly Confidential"). Each party took an extreme position: Alcon demanded that its office of in-house counsel have access to all AEO materials, without designating specific individuals who would have access, and Lens.com sought to preclude disclosure of any AEO materials to Alcon's in-house counsel. In support of Alcon's claimed need for in-house counsel to access AEO material, Alcon offered as examples two such in-house attorneys: Jeff Prokop, Director, Senior Legal Counsel, Litigation and Government Investigations; and the individual to whom he reports, Chris Cook, Alcon's Global Head of Litigation and Government Investigations. See Pl. 4/30/19 Response at 3 & n.1.

At the May 21 hearing, this Court rejected the proposal of each party and ruled that "the appropriate resolution is to come up with a three-tier approach," pursuant to which a limited category of materials to be restricted to outside counsel would be "produced in two forms, redacted and un-redacted, so that . . . counsel for the receiving party is not restricted from sharing with in-house counsel portions that are not deserving of that extra level of protection." 5/21/19 Tr. at 25. The Court ordered the parties to "go back to the drafting boards" (id. at 35) and jointly craft a stipulation consistent with the guidance that the Court had provided, see 5/21/19 Minute Entry.

Alas, the parties were unable to do so. See Letter Motion for Discovery (June 13, 2019), DE #73; Response in Opposition (June 17, 2019), DE #77. Accordingly, on July 25, 2019, this Court issued an order directing the parties to make a final attempt to reach a resolution, with the guidance that "the parties would be well-advised to use as a model" the stipulated protective order recently so-ordered by Magistrate Judge Peggy Kuo in Alcon Vision, LLC v. Allied Vision Group, Inc., (the "AVG case"), 18cv2486 (MKB)(PK), DE #116, a case presenting similar discovery issues. See Memorandum and Order (July 25, 2019) at 3, DE #90. The protective order entered by Judge Kuo is consistent with the guidance provided by this Court at the May 21 hearing.

The parties filed further submissions on July 31 and August 1, 2019, setting forth their positions on the final remaining disputes. See Def. 7/31/19 Letter; Pl. 8/1/19 Letter. The Court subsequently required Alcon to submit declarations from its in-house counsel, which prompted further submissions by the parties. See Electronic Scheduling Order (Aug. 2, 2019); Declaration of Royce Bedward (Aug. 7, 2019) ("Bedward Decl."), DE #96; Declaration of R. Christopher Cook (Aug. 7, 2019), DE #97; Declaration of Jeffrey M. Prokop (Aug. 7, 2019), DE #98; Letter to Judge Mann in Response to Alcon's In-House Counsel Declarations (Aug. 14, 2019) ("Def. 8/14/19 Letter"), DE #102; Reply in Opposition (Aug. 16, 2019) ("Pl. 8/16/19 Reply"), DE #103.

## DISCUSSION

Rule 26 provides qualified protection from disclosure of trade secrets or other confidential commercial information. See Fed. R. Civ. P. 26(c)(1)(G). "'[I]nformation may

3

be subject to protection from discovery because of its commercial value. The most common situation is that in which the producing party is able to demonstrate that the dissemination of confidential information will place it at a competitive disadvantage. In these circumstances, the commercial value of the information at issue can generally be protected by a protective order limiting the purposes for which the information can be used and the extent to which it can be disseminated.'" In re Dental Supplies Antitrust Litig., No. CV 16-696 (BMC) (GRB), 2017 WL 1154995, at *2 (E.D.N.Y. Mar. 27, 2017) (quoting Cohen v. City of New York, 255 F.R.D. 110, 118 (S.D.N.Y. 2008)). "[T]he district court has broad discretion to decide what degree of protection is required." In re Deutsche Bank Trust Co. Ams., 605 F.3d 1373, 1380 (Fed. Cir. 2010).

Having considered the parties' seemingly endless stream of submissions and arguments, this Court concludes that the appropriate Protective Order to govern discovery in this case is the Protective Order entered by Judge Kuo in the AVG case, with the modifications discussed below.

*Section 2.10*: Lens.com takes the position that any Alcon in-house counsel seeking access to AEO materials should be subject to a procedure for approving specific attorneys on a case-by-case basis. Alcon, instead, identifies three of its in-house counsel who it claims need access to all AEO materials: Jeffrey Prokop, Christopher Cook, and Alcon's General Counsel, Royce Bedward.

This Court adopts Alcon's proposal, with one exception: Royce Bedward is deleted from the definition of "House Counsel" who are granted access to material that is designated

4

"Highly Confidential – Attorneys' Eyes Only." Mr. Bedward is Senior Vice President, General Counsel, and Secretary of Alcon Inc., the ultimate parent company of plaintiff Alcon Vision, LLC, and an officer of Alcon Vision. See Bedward Decl. ¶ 1. Mr. Bedward appears to be a "competitive decisionmaker." See Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co., No. 5:03CV165(HGM/GLS), 2003 WL 1956214, at *5 (N.D.N.Y. Apr. 24, 2003) (denying access to outside counsel who was also defendant's corporate secretary and member of its board of directors).[1] Moreover, Alcon has not established the claimed need for Mr. Bedward to access AEO information. By his own admission, Mr. Bedward "rel[ies] on others to manage" Alcon's litigation matters on a day-to-day basis. See Bedward Decl. ¶ 4. Indeed, Alcon's original submissions identified only Jeffrey M. Prokop and R. Christopher Cook as the in-house counsel who required access to AEO material, and did not suggest a similar need on the part of Mr. Bedward. See Pl. 4/30/19 Response at 3 & n.1. Even without such access, Mr. Bedward will be able to discuss the damages claims at issue in this case with his outside counsel and Messrs. Prokop and Cook, albeit without the granular details disclosed in "Highly Confidential – Attorneys' Eyes Only" material. Although this Court has every confidence that Mr. Bedward would act in good faith, "it is difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort

---

[1] In earlier submissions, Alcon "agreed that access to highly confidential material depends on whether the in-house counsel is involved in competitive decisionmaking." Pl. 4/30/19 Response at 2. Alcon has not disputed Lens.com's assertion that Mr. Bedward "is, beyond question, a competitive decisionmaker." See Pl. 8/1/19 Letter at 2-3; Def. 7/31/19 Letter at 2. Rather, Alcon now appears to take the position that the phrase "competitive decisionmaker" is meaningless. See Pl. 8/1/19 Letter at 2-3; Pl. 8/16/19 Reply at 1-2. This Court is unpersuaded by Alcon's latest contention.

may be to do so." Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd., 311 F.R.D. 80, 83 (S.D.N.Y. 2015) (internal quotation marks and citations omitted).

In short, Alcon has not shown that its ability to litigate will be unduly prejudiced if Mr. Bedward is denied access to this information. See id. at 84-85 (holding that the three in-house attorneys "most actively involved in this case on a daily basis" could access AEO materials; barring access to in-house attorney whose role was "oversight" of "all US-based litigations"); Frank Brunckhorst Co., LLC v. Ihm, Civil No. 11-1883 (CAB) (NLS), 2012 WL 684760, at *5-*6 (S.D. Cal. Mar. 2, 2012) (denying access to general counsel to documents produced as attorneys'-eyes-only); Intel Corp. v. VIA Techs, Inc., 198 F.R.D. 525, 528-29 (N.D. Cal. 2000). Accordingly, plaintiff has failed to demonstrate that Mr. Bedward's need for access to those documents outweighs Lens.com's concerns about affording access to someone in his position. See Koninklijke Philips N.V., 311 F.R.D. at 84-85; Norbrook Labs. Ltd., 2003 WL 1956214, at *5. On the other hand, the balance tips in Alcon's favor with respect to Messrs. Prokop and Cook, whose responsibilities are litigation-focused; based on Alcon's representations, the Court is satisfied that they are not involved in competitive decisionmaking, such as pricing or product design.

*Sections 2.8 and 2.9*: Lens.com argues that its financial information, such as costs, revenue and pricing, should be viewed only by outside counsel. Alcon contends that depriving its designated in-house counsel of such information would hamper its defense of Lens.com's antitrust counterclaims.

The Court rules that confidential information designated as Outside-Attorneys'-Eyes-

6

Only ("OAEO") shall be limited to the identities of Lens.com's customers and suppliers. The Court rejects Lens.com's proposal to shield from Alcon's pre-approved in-house counsel financial information, pricing, and costs, which it considers trade secrets. As an initial matter, Lens.com's concern that Alcon will use the former's financial data to shut down its sources of supply (see Def. 8/14/19 Letter at 3) overlooks the fact that the identities of Lens.com's sources and customers will be protected as OAEO. Contrary to Lens.com's assumption, see Def. 7/31/19 Letter at 1, the fact that financial information is not publicly available does not, without more, qualify that information "as a trade secret." Broadening the scope of the OAEO proscription to cover financial information would create an untenable risk of over-designation, a concern the Court raised at the May 21 hearing. Particularly since this Court has limited those in-house counsel with access to Lens.com's financial information, it is not necessary to further narrow the scope of information reserved for outside counsel.

Out of an abundance of caution, the parties are directed to add a provision to Section 6.3 that, in addition to signing the "Acknowledgment and Agreement to Be Bound," "House Counsel" eligible to receive AEO materials must "maintain such information in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to its own proprietary or highly sensitive information."

*Sections 6.1 and 6.8*: Alcon seeks to include a provision in the Protective Order that would permit it to use discovery material to identify and/or assert claims against third parties selling counterfeit lenses. Lens.com, on the other hand, proposes adding a procedure

7

requiring Alcon to identify the information it seeks to use and the personnel to whom that information will be disclosed.

The Protective Order is modified so that Alcon is permitted to use information obtained in this litigation for purposes of reporting to government authorities any third parties selling counterfeit products, but not for pursuing claims against such third parties on its own. Permitting Alcon to notify law enforcement or regulatory entities of counterfeit activity is an exception to the standard protective order limiting use of discovery solely for purposes of the instant litigation.  See In re Deutsche Bank Trust, 605 F.3d at 1378 ("Typically, protective orders include provisions specifying that designated confidential information may be used only for purposes of the current litigation."); In re Am. Express Anti-Steering Rules Antitrust Litig. (No II), 10-CV-04496 (NGG) (RER), 2012 WL 13098456, at *1 (E.D.N.Y. Nov. 16, 2012) (protective order limited use of confidential information "to only 'the purpose of this litigation and not for any other purpose'").

*Section 8*:   The parties agree to add a provision in Section 8 that documents produced in the MDL will continue to be governed by the protective order in that case.  However, Lens.com also seeks to add a new section that would allow third parties to treat the protective order in this case as a two-tier protective order and to mark as OAEO all documents that would otherwise be marked as AEO.  Alcon contends that essentially creating a different protective order for third parties is ill-considered.

This Court rejects Lens.com's request that a new subsection be added.  Lens.com's concern that, absent such a provision, third parties will resist producing documents is entirely

speculative.  The Federal Rules of Civil Procedure provide an adequate mechanism for parties to this action to compel discovery from otherwise recalcitrant third parties.

The parties must submit a stipulated protective order consistent with this Memorandum and Order by August 29, 2019.

**SO ORDERED.**

Dated:    **Brooklyn, New York**
           **August 22, 2019**

           /s/ *Roanne L. Mann*
           **ROANNE L. MANN**
           **CHIEF UNITED STATES MAGISTRATE JUDGE**