IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | **JURY TRIAL DEMANDED** |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendant Ivantis Inc. ("Ivantis") is a company dedicated to the development of innovative solutions for glaucoma therapy. Ivantis' Hydrus® Microstent is a groundbreaking, minimally invasive glaucoma surgery (MIGS) technology implant indicated for use in conjunction with cataract surgery for the reduction of intraocular pressure (IOP) in adult patients with mild to moderate primary open-angle glaucoma (POAG). Ivantis was acquired by Alcon Research, LLC ("Alcon Research"), an indirect, wholly-owned subsidiary of Alcon Inc. Alcon Inc., Alcon Vision, LLC ("Alcon Vision"), and Alcon Research, LLC, are collectively referred to herein unless as otherwise noted as "Alcon."

Plaintiff Sight Sciences Inc. ("Sight Sciences" or "Plaintiff") is not now, and never has been, in the business of selling surgical implants for the treatment of glaucoma. Sight Sciences does not sell any products that practice U.S. Patent Nos. 8,287,482; 9,370,443; 9,486,361; 10,314,742; and 11,389,328 (collectively, the "Patents-in-Suit"). Defendants Ivantis and Alcon (collectively, "Defendants") do not infringe the Patents-in-Suit, which are invalid.

## ANSWER

Defendants demand a trial by jury on all issues so triable and answer Plaintiff Sight Sciences Second Amended Complaint and state their affirmative defenses and counterclaims against Sight Sciences as follows:

## THE PARTIES[1]

1.      Upon information and belief, admitted.

2.      Defendants admit that Ivantis is a Delaware corporation, with its corporate headquarters at 201 Technology Dr., Irvine, CA 92618. Defendants also admit that Ivantis is a wholly-owned subsidiary of Alcon Research, LLC.

3.      Defendants admit that Alcon Research, LLC is a company organized under the laws of the state of Delaware, with its principal place of business at 6201 South Freeway, Fort Worth, Texas 76134, and that it is an indirect, wholly-owned subsidiary of Alcon Inc. Defendants deny any and all remaining allegations of paragraph 3.

4.      Defendants admit that Alcon Vision, LLC is a company organized under the laws of the state of Delaware, with its principal place of business at 6201 South Freeway, Fort Worth, Texas, 76134, and that it is an indirect, wholly-owned subsidiary of Alcon Inc. Defendants deny any and all remaining allegations of paragraph 4.

5.      Defendants admit that Alcon Inc. is organized under the laws of Switzerland. Defendants admit that Alcon Inc.'s "principal office" is located at Rue Louis-d'Affry 6, 1701

---

[1]      For ease of reference, Defendants adopt the headings set forth in the Second Amended Complaint. To the extent that such headings themselves contain factual or legal characterizations or allegations, Defendants deny such characterizations and allegations.

Fribourg, Switzerland. Alcon Inc. is also registered under the corporate name Alcon SA.

Defendants deny any and all remaining allegations of paragraph 5.

## JURISDICTION AND VENUE

6.      Defendants admit that the Second Amended Complaint purports to set forth claims for patent infringement, but deny Defendants committed or are committing acts of patent infringement.  Defendants admit that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

7.      Defendants admit that Ivantis is incorporated in Delaware.  Defendants admit that, pursuant to 28 U.S.C. § 1400(b), venue is proper in this district for purposes of this action. Defendants deny any and all remaining allegations of paragraph 7.

8.      Defendants admit that Alcon Research is incorporated in Delaware.  Defendants admit that venue is proper in this district for purposes of this action. Defendants deny any and all remaining allegations of paragraph 8.

9.      Defendants admit that Alcon Vision is incorporated in Delaware.  Defendants admit that venue is proper in this district for purposes of this action. Defendants deny any and all remaining allegations of paragraph 9.

10.      Defendants admit that Alcon Inc. is a foreign corporation organized under the laws of Switzerland.  Defendants admit that venue is proper in this district for purposes of this action. Defendants deny any and all remaining allegations of paragraph 10.

11.      Defendants admit that this Court has personal jurisdiction over Ivantis for purposes of this action.  Defendants deny any and all remaining allegations of paragraph 11.

12.      Defendants admit that this Court has personal jurisdiction over Alcon Research for purposes of this action.  Defendants deny any and all remaining allegations of paragraph 12.

13.     Defendants admit that this Court has personal jurisdiction over Alcon Vision for purposes of this action.  Defendants deny any and all remaining allegations of paragraph 13.

14.     Defendants incorporate by reference the Stipulation and [Proposed] Order Regarding Alcon Entities as Parties (the "Stipulation") filed on July 29, 2022. Dkt. 58. As stated in the Stipulation, Defendants admit that this Court has personal jurisdiction over Alcon Inc. for the specific and limited purpose of this action only.  *Id.* at 2.  Defendants deny any and all remaining allegations of paragraph 14.

## FACTUAL ALLEGATIONS

15.     Defendants admit that glaucoma is a potentially blinding disease that affects over 60 million people worldwide and is a condition of the eye that is typically caused by excessive intraocular pressure, or IOP.  Defendants admit that human eyes contain a clear, colorless, and continuously replenished fluid known as "aqueous humor," which is generated by the "ciliary body," a structure in the posterior chamber of the eye that lies beneath the iris.  Defendants admit that in a healthy eye the aqueous humor generated by the ciliary body flows unobstructed through the pupil into the anterior chamber, and that aqueous humor exits from the anterior chamber through the eye's natural drainage system, known as the trabeculocanalicular outflow pathway. Defendants admit that the eye's natural drainage system comprises a trabecular meshwork, Schlemm's canal, and about 30-40 collector or drainage channels around the eye that connect to the venous system so that aqueous humor can flow into the bloodstream and leave the eye. Defendants deny any and all remaining allegations of paragraph 15.

16.     Defendants admit that in primary open-angle glaucoma ("POAG") patients, the outflow or drainage system of the eye, including the trabecular meshwork, Schlemm's canal, and about 30-40 collector or drainage channels, can become obstructed.  Defendants admit that if aqueous humor accumulates and the fluid pressure inside the eye increases, this can cause damage

to the optic nerve and lead to irreversible blindness if left untreated. Defendants admit that treatments to reduce intraocular pressure in the eye are desirable for patients suffering from POAG. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 16, and therefore deny those allegations.

17.     Defendants admit that elevated IOP can be treated using multiple modalities, including medication, incisional surgery, laser surgery, or other forms of surgery, and that medication may not be sufficient for some patients. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 17, and therefore deny those allegations.

18.     Defendants admit that implants known as trabecular micro-bypass stents were inserted between the anterior chamber of the eye and Schlemm's canal, bypassing a small section of the diseased trabecular meshwork. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 18, and therefore deny those allegations.

19.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 19, and therefore deny those allegations.

20.     Defendants admit that the face of U.S. Patent No. 7,909,789 (the "'789 patent") lists U.S. Appl. No. 11/475,525 (the "'523 application") and identifies David Y. Badawi and Paul Badawi as inventors. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 20, and therefore deny those allegations.

21.     Defendants admit that the specification filed with the '523 application states that it describes "devices, kits and methods [that] relate to intraocular implants implantable into Schlemm's canal that can reduce intraocular pressure without substantially interfering with fluid

flow across Schlemm's canal." Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 21, and therefore deny those allegations.

22.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 22, and therefore deny those allegations.

23.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 23, and therefore deny those allegations.

24.     Defendants admit that the face of the '443 patent purports to be a division of application No. 11/475,523, now Pat. No. 7,909,789. Defendants further admit that the face of the '742 patent purports to be a continuation of application No. 13/025,112, now Pat. No. 9,370,443, which is a division of application No. 11/475,523, now Pat. No. 7,909,789. Defendants further admit that the face of the '482 patent purports to be a continuation of application No. 11/475,523, now Pat. No. 7,909,789. Defendants further admit that the face of the '361 patent purports to be a continuation of application No. 12/695,053, now Pat. No. 8,287,482, which is purportedly a continuation of 11/475,523, now Pat. No. 7,909,789. Defendants further admit that the face of the '328 patent purports to be a continuation of application No. 15 / 182,165, now Pat. No. 10,314,742. Defendants deny any and all remaining allegations of paragraph 24.

25.     Defendants admit that the face of the '482 patent states that it was filed January 27, 2010 and that the issue date on the face of the '482 patent is October 16, 2012. Defendants further admit that Plaintiff's Second Amended Complaint purports to attach a copy of the '482 patent as Exhibit A, the face of which includes the title "Intraocular Implants and Methods and Kits Therefor." Defendants lack knowledge or information sufficient to form a belief about the truth of

Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 25.

26.     Defendants admit that the face of the '443 patent states that it was filed February 10, 2011 and that the issue date on the face of the '443 patent is June 21, 2016.  Defendants further admit that Plaintiff's Second Amended Complaint purports to attach a copy of the '443 patent as Exhibit B, the face of which includes the title "Intraocular Implants and Methods and Kits Therefor."  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 26.

27.     Defendants admit that the face of the '361 patent states that it was filed April 12, 2012 and that the issue date on the face of the '361 patent is November 8, 2016.  Defendants further admit that Plaintiff's Second Amended Complaint purports to attach a copy of the '361 patent as Exhibit C, the face of which includes the title "Intraocular Implants and Methods and Kits Therefor."  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 27.

28.     Defendants admit that the face of the '742 patent states that it was filed June 14, 2016 and that the issue date on the face of the '742 patent is June 11, 2019.  Defendants further admit that Plaintiff's Second Amended Complaint purports to attach a copy of the '742 patent as Exhibit D, the face of which includes the title "Intraocular Implants and Methods and Kits Therefor."  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 28.

29.     Defendants admit that the face of the '328 patent states that it was filed May 15, 2019 and that the issue date on the face of the '328 patent is July 19, 2019.  Defendants further admit that Plaintiff's Second Amended Complaint purports to attach a copy of the '328 patent as Exhibit E, the face of which includes the title "Intraocular Implants and Methods and Kits Therefor."  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 29.

30.     Defendants admit Ivantis was founded in 2007 to, among other things, design, develop, and commercialize new technologies to treat eye disease.  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 30.

31.     Defendants admit that the face of U.S. Pub. No. 2007/0298068 lists Appl. No. 11/475,523, and that December 27, 2007 is listed on the face of U.S. Pub. No. 2007/0298068 as the publication date.

32.     Defendants admit that in or around December 2008 an email was sent to the Badawi brothers or their representatives related to U.S. Publ. No. 2007/0298068.  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 32.

33.     Defendants admit that the issue date on the face of the '789 patent is March 22, 2011.  Defendants admit that in or around December 2008 Doug Roeder met with one or more of the Badawi brothers and discussed, among other things, U.S. Publ. No. 2007/0298068.  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 33.

34.     Defendants deny that Ivantis competes with Sight Sciences in the market for minimally invasive surgical glaucoma therapies.  Defendants admit that Ivantis gathers certain market data related to Sight Sciences.  Defendants deny any and all remaining allegations of paragraph 34.

35.     Defendants admit that Shay Glenn LLP has represented Ivantis since around 2008. Defendants deny any and all remaining allegations of paragraph 35.

36.     Defendants admit that Ivantis' website lists U.S. Patent Nos. 7,740,604; 8,337,509; 8,372,026;  8,425,449;  8,512,404;  8,663,150;  8,734,377;  8,961,447;  9,039,650;  9,050,169; 9,211,213; 9,226,852; 9,351,874; 9,402,767; 9,610,196; and 9,693,899 for the Hydrus® Microstent to serve as notice under 35 U.S.C. § 287(a).  Defendants admit that U.S. Patent No. 9,358,156 and U.S. Patent No. 11,026,836 are assigned to Ivantis, Inc.  Defendants admit that the '156 patent lists U.S.  2007/0298068;  U.S.  2011/0196487;  U.S.  2013/0253402;  U.S.  2013/0253403;  U.S. 2013/0253437;  and U.S. 2013/0253438 to Badawi et al. on its face under "References Cited." Defendants  admit  that  the  '836  patent  lists  U.S.  2007/0298068;  U.S.  2011/0196487;  U.S. 2013/0253402;  U.S.  2013/0253403;  U.S.  2013/0253437;  U.S.  2013/0253438;  and  U.S. 2017/0143541 to Badawi et al. on its face under "References Cited."  Defendants deny any and all remaining allegations of paragraph 36.

37.     Defendants admit that Plaintiff's Second Amended Complaint purports to attach a copy of PCT Application PCT/US2016/066957 as Exhibit F.  Defendants deny any and all remaining allegations of paragraph 37.

38.     Defendants admit that David T. Van Meter and Kenneth M. Galt are listed as inventors on PCT Application PCT/US2016/066957, and that an International Search Report for PCT/US16/66957 lists U.S. Patent No. 8,287,482 as a "document defining the general state of the

art which is not considered to be of particular relevance."  Defendants deny any and all remaining allegations of paragraph 38.

39.     Denied.

40.     Denied.

41.     Defendants admit that Ivantis commenced a study titled "The Safety and Effectiveness of the Hydrus Aqueous Implant for Lowering Intraocular Pressure in Glaucoma Patients Undergoing Cataract Surgery, A Prospective, Multicenter, Randomized, Controlled Clinical Trial" in January 2012, also referred to as the HORIZON study.  Defendants further admit that the primary completion date of the study was in June 2017.  Defendants deny any and all remaining allegations of paragraph 41.

42.     Defendants admit that on or about August 10, 2018, the FDA issued an Approval Order for Ivantis' premarket approval application ("PMA") for the Hydrus® Microstent, which is indicated for use in conjunction with cataract surgery for the reduction of intraocular pressure (IOP) in adult patients with mild to moderate primary open-angle glaucoma (POAG).  Defendants admit that Ivantis thereafter began selling the Hydrus® Microstent.  Defendants deny any and all remaining allegations of paragraph 42.

43.     Defendants admit that the '482 patent (at 2:56-59), the '443 patent (at 2:58-61), the '361 patent (at 2:61-64), and the '742 patent (at 2:61-64) state that "[t]he devices for reducing pressure within the eye comprise a support implantable circumferentially within Schlemm's canal that is configured to maintain the patency of at least a portion of the canal."  Defendants deny any and all remaining allegations of paragraph 43.

44.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that "[t]he implant is laser cut from nitinol tubing to a proprietary design with alternating

'spines' for structural support and 'windows' to provide outflow pathways for aqueous humor." Defendants further admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that "[t]he implant is designed to have adequate structural thickness to support the tissue of the canal while providing maximum open flow areas through the canal, with the proximal portion of the implant exiting the canal through the trabecular meshwork to allow inflow of aqueous humor from the anterior chamber." Defendants further admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that "nitinol has super-elastic properties making it suitable as a support structure in Schlemm's canal." Defendants deny any and all remaining allegations of paragraph 44.

45.     Defendants admit that the figure in paragraph 45 appears in the Hydrus® Microstent Instructions for Use (C00256 Rev A.1). Defendants deny any and all remaining allegations of paragraph 45.

46.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the "microstent is implanted into the eye using a hand-held delivery system . . . that provides for delivery of the implant through a stainless steel cannula into the target site in the eye. The delivery system was designed to provide smooth tracking and controlled delivery of the microstent into Schlemm's canal." Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that "[t]o accommodate a wide range of hand positions, a rotatable sleeve at the distal end allows positioning and alignment of the cannula by the surgeon to direct the implant into Schlemm's canal. The tracking wheel on the delivery system serves as the control mechanism to advance the implant into the canal or retract the implant into the cannula." Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state "[t]he

Hydrus® Microstent is a crescent-shaped implantable microstent pre-loaded onto a hand held delivery system." Defendants deny any and all remaining allegations of paragraph 46.

47.     Defendants admit that the image in paragraph 47 purports to be from a video describing the Hydrus® Microstent. Defendants further admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the "microstent is implanted into the eye using a hand-held delivery system . . . that provides for delivery of the implant through a stainless steel cannula into the target site in the eye. The delivery system was designed to provide smooth tracking and controlled delivery of the microstent into Schlemm's canal." Defendants deny any and all remaining allegations of paragraph 47.

48.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the "length and curvature of the implant are designed to occupy approximately 90° or 3 clock hours of Schlemm's canal." Defendants further admit that the figures in paragraph 48 appear in the Hydrus® Microstent Instructions for Use (C00256 Rev A.1). Defendants deny any and all remaining allegations of paragraph 48.

49.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that part of the microstent procedure includes "[v]erify[ing] that the inlet of the microstent is positioned in the anterior chamber." Defendants further admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the "the proximal portion of the implant exiting the canal through the trabecular meshwork [is] to allow inflow of aqueous humor from the anterior chamber." Defendants further admit that Figure 5 of the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that it "shows the microstent positioned in Schlemm's canal with the proximal end (i.e., the inlet) protruding slightly into the anterior chamber for inflow of aqueous humor." Defendants further admit that the images in paragraph 49 purport to be from

12

a video describing the Hydrus® Microstent.  Defendants deny any and all remaining allegations of paragraph 49.

50.     Defendants admit that the voiceover of the Hydrus® Animation that purports to be from a video describing the Hydrus® Microstent makes the statement provided in the block quote ("The Hydrus® Microstent acts. . . aqueous outflow veins") of paragraph 50.  Defendants deny any and all remaining allegations of paragraph 50.

51.     Defendants admit that the image in paragraph 51 purports to be from a video describing the Hydrus® Microstent Defendants deny any and all remaining allegations of paragraph 51.

52.     Defendants admit that the screenshots in paragraph 52 purport to be from an animation describing the Hydrus® Microstent.  Defendants deny any and all remaining allegations of paragraph 52.

53.     Denied.

54.     Defendants admit that the '482 patent at 11:16-20; the '443 patent at 11:16-20; the '361 patent at 11:29-33; and the '742 patent at 11:30-34 state "[t]he fraction of canal wall surface area in contact with a support can be estimated by viewing the inside of Schlemm's canal as a slightly arcuate cylinder C having length L, extending circumferentially from a first end X1 to a second end X2 of support 152, and inside radius Ri."  Defendants deny any and all remaining allegations of paragraph 54.

55.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the "microstent is approximately 8mm in overall length with major and minor axes of 292μm and 185μm, respectively."  Defendants further admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that "the proximal portion of the implant exit[s] the

13

canal through the trabecular meshwork to allow inflow of aqueous humor from the anterior chamber." Defendants deny any and all remaining allegations of paragraph 55.

56.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that "[t]he implant is laser cut from nitinol tubing to a proprietary design with alternating 'spines' for structural support and 'windows' to provide outflow pathways for aqueous humor." Defendants further admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the "microstent is approximately 8mm in overall length with major and minor axes of 292µm and 185µm, respectively," and that "[t]he implant is designed to have adequate structural thickness to support the tissue of the canal while providing maximum open flow areas through the canal, with the proximal portion of the implant exiting the canal through the trabecular meshwork to allow inflow of aqueous humor from the anterior chamber." Defendants deny any and all remaining allegations of paragraph 56.

57.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the "microstent is approximately 8mm in overall length with major and minor axes of 292µm and 185µm, respectively." Defendants deny any and all remaining allegations of paragraph 57.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Defendants admit that Murray A. Johnstone et al., *Effects of a Schlemm canal scaffold on collector channel ostia in human anterior segments*, 119 Experimental Eye Research 70 (2014) (the "Johnstone article"), lists Andrew T. Schieber as a co-author and states "Supported by Ivantis Inc., and an unrestricted grant from Research to Prevent Blindness." Defendants admit

that the Johnstone article contains a Figure 6 that has a caption stating "Pictorial overlay (black solid lines) of 8 mm (A) and 15 mm (B) microstents on the Fig. 5. Scanning electron microscopy image comparing the effects microstent placement on the outer wall of Schlemm's canal (SC). The overlay shows how the microstent bridged an area of the external wall of SC."  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 61.

62.     Defendants admit that the Johnstone article contains a Figure 5 that has a caption that refers to the Schlemm's canal external wall as SCEW.  Defendants admit that the caption also states that the "[d]otted areas outline microstent generated indentations."  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 62.

63.     Defendants admit that Saba Samet et al., *Hydrus microstent implantation for surgical management of glaucoma: a review of design, efficacy and safety*, Eye and Vision, 6:32 (2019),  available  at  https://eandv.biomedcentral.com/track/pdf/10.1186/s40662-019-0157-y.pdf (hereinafter the "Samet article"), contains a Figure 3 that has a caption stating "Scanning electron microscopic image of SC outer wall following insertion and removal of an 8 mm Hydrus microstent, with collector channel ostia shown in panels a-d.  Particulate debris visible in image (a) (barred arrows).  The intact but sloping edge of the collector channel ostium (shown in d) resulting from microstent-dependent indentation appearing to compress the lower portion of the ostia while leaving the upper portion open.  Courtesy of Johnstone et al."  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 63.

64.     Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations and therefore deny them.

65.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the "implant is laser cut from nitinol tubing to a proprietary design with alternating 'spines' for structural support and 'windows' to provide outflow pathways for aqueous humor." Defendants admit that the Samet article contains a Figure 2 that has a caption stating "Hydrus and iStent devices in situ.  (a) Histological section of the Hydrus scaffold window region in situ showing SC dilatation.  Histological section of the iStent micro-bypass rail in situ.  Images courtesy of Hays et al."  Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 65.

66.     Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations and therefore deny them.

67.     Defendants admit that the Samet article states that "[t]he study demonstrated minimal disruption to SC and CC anatomy and patency, with the 8 mm design having a lower potential for CC obstruction due to reduced contact with SC outer wall."  Defendants deny any and all remaining allegations in paragraph 67.

68.     Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that the Hydrus® Microstent "is designed to have adequate structural thickness to support the tissue of the canal while providing maximum open flow areas through the canal."  Defendants deny any and all remaining allegations in paragraph 68.

69.     Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations and therefore deny them.

70.     Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations and therefore deny them.

71.     Defendants deny that the Hydrus® Microstent meets the claim limitation reciting "support contacts less than 30% of C" in certain claims of the '482, '443, '328, and '742 patents. Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations and therefore deny any and all remaining allegations of paragraph 71.

72.     Defendants admit that the FDA's premarket approval application ("PMA") letter to Ivantis, Inc. states that the "Hydrus Microstent is indicated for use in conjunction with cataract surgery for the reduction of intraocular pressure (IOP) in adult patients with mild to moderate primary open-angle glaucoma (POAG)."   Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state that "[t]he microstent implantation procedure should be performed after completion of cataract extraction and intraocular lens implantation." Defendants admit that the Hydrus® Microstent Instructions for Use (C00256 Rev A.1) state to "[c]reate a corneal incision at one of the recommended incision locations as follows (refer to Figure 4). . . 5. Inject ophthalmic viscoelastic into the anterior chamber, unless enough viscoelastic remains from cataract procedure.  A high molecular weight cohesive viscoelastic is recommended. Verify eye is firm but do not overinflate.  The anterior chamber should be maintained at moderate AC pressure (approximately 15 – 20 mmHg) for an optimal view and microstent delivery.  6. Remove the Hydrus Microstent from the packaging, remove the cannula protector and adjust the cannula orientation for proper hand position. 7. Advance the microstent slightly out of the cannula then retract the implant back into the cannula to position the implant just behind the cannula opening.  8. Insert the cannula through the corneal incision as shown in Figure 4.  9.  Replace the gonioprism lens onto the cornea to establish view of the anterior chamber angle and the cannula

tip.  Target the trabecular meshwork four clock hours counter clockwise from the entry point for right-handed access (opposite for left-handed access).  The approach of the delivery cannula to the target tissue area should be lateral and not across the pupil, so that the cannula angle of approach is not steep.  (Figure 4) 10. Pierce the trabecular meshwork by aiming the cannula tip at a slight angle anteriorly (approximately 15 degrees) toward the target.  After piercing the TM, the cannula tip should slide gently into Schlemm's canal.  Care should be taken with cannula tip approach to fully incise the TM and position the cannula against the posterior wall of Schlemm's canal.  11. When the cannula tip is in the canal and the first window of the microstent is visible, align the cannula to be parallel with the iris.  Continue to advance the microstent by rolling the wheel slowly.  If resistance is felt, stop advancement, retract if necessary and readjust the position of the cannula. 12. Visually confirm the windows of the microstent entering the canal.  The windows should be visible during advancement.  The microstent should appear 'dull' during advancement and behind the TM.  A shiny stent appearance means the microstent is in front of the TM and not in Schlemm's canal.  If the microstent cannot be visualized during delivery, the microstent may be posterior to Schlemm's canal.  Retract the implant and redeliver the microstent.  13. Continue to advance the microstent until a physical stop is felt and the interlock releases the microstent.  Verify that the inlet of the microstent is positioned in the anterior chamber.  14. If repositioning of the microstent is desired, recapture the microstent by engaging the inlet onto the interlock and reversing the wheel.  Alternatively, a Kuglen hook or micro-forceps may be used to reposition the microstent. 15. If the interlock does not appear to release the microstent, slightly withdraw the cannula tip from the TM.  After this cannula tip adjustment, the microstent should release.  Caution: If the microstent does not release from the interlock, or if the microstent cannot be retracted into the cannula, withdraw the entire delivery system from the eye.  16. After release of the microstent

from the delivery system, take care to remove the cannula tip from the eye without contacting the microstent.  17. Completely irrigate and aspirate the viscoelastic from the anterior segment.  18. Close the corneal incision according to normal practice and verify the eye has been re-pressurized." Defendants deny any and all remaining allegations in paragraph 72.

73.    Admitted.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Defendants admit that on or around November 8, 2018, Alcon Research, Ithaca Merger Sub, and Ivantis entered into an Option Agreement and Plan of Merger, which provided Alcon Research the option to acquire Ivantis. Defendants further admit that an Amendment to the Option Agreement and Plan of Merger was entered into by the same entities on or around December 16, 2019. Defendants admit that Ithaca Merger Sub is a wholly-owned subsidiary of Alcon Research, and that Alcon Research is an indirect, wholly-owned subsidiary of Alcon Inc. Defendants deny any and all remaining allegations in paragraph 77.

78.    Defendants admit that on or around November 5, 2021, Alcon Research exercised the Option to acquire 100% of the outstanding shares and equity of Ivantis, Inc. Defendants further admit that Alcon Research's acquisition of Ivantis closed on January 7, 2022, and that Alcon Research paid $475 million for the acquisition of Ivantis, net of cash acquired as a result of the acquisition. Defendants further admit that on closing, Ivantis became a wholly-owned subsidiary of Alcon Research, and that Alcon Research is an indirect, wholly-owned subsidiary of Alcon Inc. Defendants deny any and all remaining allegations in paragraph 78.

79.     Defendants admit that Alcon Inc.'s consent was required before Alcon Research could exercise the Option. Defendants deny any and all remaining allegations in paragraph 79.

80.     Defendants admit that a press release announced the completion of the acquisition of Ivantis, Inc. on January 10, 2022, and that document speaks for itself. Defendants deny any and all remaining allegations in paragraph 80.

81.     Defendants admit that the same press release includes quotes attributed to David Endicott and that the document speaks for itself. Defendants deny any and all remaining allegations or characterizations in paragraph 81.

82.     Defendants admit that Exhibit G purports to be an edited transcript of a JPMorgan Healthcare Conference and that the document speaks for itself. Defendants lack knowledge or information sufficient to form a belief about the truth of any remaining allegations or characterization in paragraph 82, and therefore deny any and all such allegations and characterizations.

83.     Defendants admit that Sight Sciences filed a complaint against Ivantis for patent infringement on September 16, 2021, and filed an amended complaint on December 15, 2021. One or more Alcon defendants were aware of this lawsuit and of Sight Sciences' claims of patent infringement against Ivantis prior to Alcon Research closing its acquisition of Ivantis. Defendants deny any and all remaining allegations or characterizations in paragraph 83.

84.     Defendants admit that Sight Sciences alleges in its complaints that Jim Shay and Doug Roeder had unsuccessfully attempted to purchase the Badawis' rights to the patent application to which the Patents-in-Suit claim priority, and that it further contends that Ivantis was aware of the Patents-in-Suit and Ivantis's alleged infringement before the filing of this lawsuit.

Defendants admit that Alcon Research acquired Ivantis. Defendants deny any and all remaining allegations in paragraph 84.

85.     Denied.

86.     Denied.

87.     Defendants admit that Alcon Research is identified as a "Collaborator" for the "Visual Outcomes with a Trifocal IOL in Subjects With Open-angle Glaucoma" clinical trial. Defendants further admit that the clinical trial website states "Cataract surgery with implantation of the PanOptix IOL combined with minimally invasive glaucoma surgery utilizing the Hydrus Microstent." Defendants deny any and all remaining allegations in paragraph 87.

88.     Alcon Vision has contributed to the marketing and sale of the Hydrus® Microstent. Defendants deny any and all remaining allegations in paragraph 88.

89.     Defendants admit that Cari Stone is Vice President of Glaucoma at Alcon Vision. Defendants deny any and all remaining allegations or characterizations in paragraph 89.

90.     Denied.

91.     Defendants admit that Alcon Research acquired Ivantis. Defendants deny any and all remaining allegations or characterizations in paragraph 91.

92.     Defendants admit that the document titled "Hydrus® Microstent Coding and Billing Guide" includes a copyright notice attributed to "Alcon Inc." and that the document speaks for itself. Defendants deny any and all remaining allegations or characterizations in paragraph 92.

93.     Defendants admit that the Alcon trademark and associated trade dress are owned by Alcon Inc. Defendants admit that Exhibits H and I to the Second Amended Complaint purport to be printouts from the Trademark Electronic Search System and that the documents speak for

themselves. Defendants deny any and all remaining allegations or characterizations in paragraph 93.

94.     Defendants admit that Carrie Lennart is a Surgical Glaucoma Manager and Theresa Klinge is a Surgical Glaucoma Specialist at Alcon Vision. Defendants admit that Dan Preast, Brooke Riddhagni Park, and Carter Holland are Surgical Glaucoma Managers at Alcon Vision. Defendants further admit that Ms. Lennart, Ms. Klinge, Mr. Preast, Ms. Park, and Mr. Holland are former employees of Ivantis, Inc. Defendants deny any and all remaining allegations or characterizations in paragraph 94.

95.     Denied.

96.     Defendants admit that Exhibit J purports to be a printout from Alcon's "MyAlconProfessionals" website and that the document speaks for itself. Defendants admit that the MyAlconProfessionals website contains a copyright notice attributed to "Alcon Inc.," and uses the "Alcon" and "Alcon See Brilliantly" trademarks, which are owned by Alcon Inc. Defendants further admit that Exhibit K purports to be a printout from the Trademark Electronic Search System and that the document speaks for itself. Defendants deny any and all remaining allegations or characterizations in paragraph 96.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

**FIRST CAUSE OF ACTION: INFRINGEMENT OF U.S. PAT. NO. 8,287,482**

102.    Defendants restate their Answers to paragraphs 1 through 101 as if fully set forth herein.

103.     Denied.

104.     Denied.

105.     Defendants admit that a claim chart is attached to the Second Amended Complaint as Exhibit L.  Defendants deny any and all remaining allegations of paragraph 105.

106.     Denied.

107.     Denied.

## SECOND CAUSE OF ACTION: INFRINGEMENT OF U.S. PAT. NO. 9,370,443

108.     Defendants restate their Answers to paragraphs 1 through 101 as if fully set forth herein.

109.     Denied.

110.     Defendants admit that a claim chart is attached to the Second Amended Complaint as Exhibit M.  Defendants deny any and all remaining allegations of paragraph 110.

111.     Denied.

112.     Denied.

## THIRD CAUSE OF ACTION: INFRINGEMENT OF U.S. PAT. NO. 9,486,361

113.     Defendants restate their Answers to paragraphs 1 through 101 as if fully set forth herein.

114.     Denied.

115.     Denied.

116.     Denied.

117.     Defendants admit that a claim chart is attached to the Second Amended Complaint as Exhibit N.  Defendants deny any and all remaining allegations of paragraph 117.

118.     Denied.

119.     Denied.

**FOURTH CAUSE OF ACTION: INFRINGEMENT OF U.S. PAT. NO. 10,314,742**

120.   Defendants restate their Answers to paragraphs 1 through 101 as if fully set forth herein.

121.   Denied.

122.   Denied.

123.   Defendants admit that a claim chart is attached to the Second Amended Complaint as Exhibit O.  Defendants deny any and all remaining allegations of paragraph 123.

124.   Denied.

125.   Denied.

**FIFTH CAUSE OF ACTION: INFRINGEMENT OF U.S. PAT. NO. 11,389,328**

126.   Defendants restate their Answers to paragraphs 1 through 101 as if fully set forth herein.

127.   Denied.

128.   Denied.

129.   Defendants admit that a claim chart is attached to the Second Amended Complaint as Exhibit P. Defendants deny any and all remaining allegations of paragraph 129.

130.   Denied.

131.   Denied.

**PRAYER FOR RELIEF**

The Second Amended Complaint recites a prayer for relief for which no response is required.  To the extent an answer is required, Defendants deny that Plaintiff is entitled to any remedy or relief.

## DEMAND FOR JURY TRIAL

Defendants join Plaintiff's request for a jury trial for all issues triable by jury.

## GENERAL DENIAL

Defendants deny all allegations in Plaintiff's Second Amended Complaint not expressly admitted.

## DEFENSES

Without any admission as to the burden of proof, burden of persuasion, or the truth of any allegation in the Second Amended Complaint, Defendants reply upon the following defenses, whether pled as an affirmative defense or otherwise.

## FIRST DEFENSE (NON INFRINGEMENT)

Defendants do not infringe (literally or under the doctrine of equivalents), and at all relevant times to this action has not infringed, any valid and enforceable claim of the Patents-in-Suit.

## SECOND DEFENSE (INVALIDITY)

The Patents-in-Suit are invalid for failure to satisfy one or more of the conditions and requirements of patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, or under any of the judicially created doctrines of invalidity.

## THIRD DEFENSE (FAILURE TO STATE A CLAIM)

The Second Amended Complaint fails to state a claim upon which relief can be granted.

## FOURTH DEFENSE (NO WILLFUL INFRINGEMENT)

Defendants have not willfully infringed, and does not willfully infringe, any valid and enforceable claim of any of the Patents-in-Suit.

## FIFTH DEFENSE (NO EXCEPTIONAL CASE)

Defendants' actions in defending this case, or otherwise, do not give rise to an exceptional case in Plaintiff's favor under 35 U.S.C. § 285.

## SIXTH DEFENSE (NO INJUNCTIVE RELIEF)

Plaintiff is not entitled to preliminary and/or permanent equitable relief, including but not limited to a preliminary and/or permanent injunction because they cannot meet any of the multi-factor tests required for demonstrating a right to such injunctive relief and because of Plaintiff's delay in seeking to enforce the Patents-in-Suit.

## SEVENTH DEFENSE (NOTICE AND DAMAGES)

Plaintiff is not entitled to any damages for the purported infringement of the Patents-in-Suit pursuant to 35 U.S.C. §§ 284 and 287, including, but not limited to, any interest or trebled damages.  Plaintiff's claims for a reasonable royalty and/or lost profits are limited to any infringement committed no more than six (6) years prior to the filing of the Complaint, pursuant to 35 U.S.C. § 286. To the extent Plaintiff failed to comply with the notice provisions of 35 U.S.C. § 287, Plaintiff may not recover a reasonable royalty and/or lost profits for alleged infringement committed prior to the filing of its Complaint.

## EIGHTH DEFENSE (PROSECUTION HISTORY ESTOPPEL)

Plaintiff is estopped from construing any valid and enforceable claim of the Patents-in-Suit to cover or include, either literally or by application of the doctrine of equivalents, devices manufactured, used, imported, sold, offered for sale, or imported by Defendants, or methods used by Defendants, because of admissions and statements to the United States Patent and Trademark Office during prosecution of the application leading to the issuance of the Patents-in-Suit.

## **ADDITIONAL DEFENSES**

Defendants reserve the right to assert any additional defenses or counterclaims that discovery may reveal.

## DEFENDANTS' DECLARATORY JUDGMENT COUNTERCLAIMS

Defendants/Counterclaim-Plaintiffs Alcon Vision, LLC ("Alcon Vision"), Alcon Research, LLC ("Alcon Research"), and Ivantis, Inc. ("Ivantis") (collectively, the "Counterclaim-Plaintiffs") demand a trial by jury on all issues so triable and assert the following counterclaims against Plaintiff/Counterclaim-Defendant Sight Sciences, Inc. ("Sight Sciences" or "Counterclaim-Defendant"):

## INTRODUCTION

1.      Alcon and its related operating companies are the global leaders in eye care and have helped patients in more than 140 countries. *See About Alcon*, Alcon, https://www.alcon.com/about-us (last visited Sept. 15, 2022). Thriving for more than seventy-five years, Alcon has grown to become the largest eye care device company in the world due in part to its long history of innovation. *See id.* For example, Business Intelligence Group designated Alcon's Acrysof IQ PanOPtix Trifocal IOL as a 2020 Big Innovation Award Winner. *5 Executives and 100 Companies and Products Leading in Innovation in 2020*, Business Intelligence Group, https://www.bintelligence.com/blog/2020/1/22/5-executives-and-100-  companies-and-products-leading-in-innovation-in-2020 (last visited Sept. 15, 2022). In addition, the Alcon's Acrysof IQ PanOPtix Trifocal IOL was also chosen as a 2020 Edison Best New Product silver award winner, which is one of the highest accolades a company can receive in the name of innovation and business success. *2020 Edison Best New Product Awards Winners*, Edison Awards, https://edisonawards.com/winners2020.php (last visited Sept. 15, 2022).

2.      Each year Alcon commits substantial resources to research and development to continue developing breakthrough technology and transforming the way it treats eye diseases and conditions. *See About Alcon*, *supra*. Alcon and its related operating companies have made one of the largest research and development commitments of any surgical and vision care company, with

more than 1,400 associates researching and developing treatments for vision conditions and eye diseases. *Corporate Overview*, Alcon, https://www.investor.alcon.com/ (last visited Sept. 15, 2022).

3.      Ivantis, which was acquired by Alcon Research, is dedicated to the development of innovative solutions for glaucoma therapy.  Ivantis spent years and millions of dollars developing the Hydrus® Microstent, an FDA-approved, revolutionary, minimally invasive glaucoma surgery (MIGS) technology implant indicated for use in conjunction with cataract surgery for the reduction of intraocular pressure (IOP) in adult patients with mild to moderate primary open-angle glaucoma (POAG).  The Hydrus® Microstent is a less invasive surgery that allows for fewer complications and faster healing times than traditional glaucoma surgery.

4.      Sight Sciences has never been and is not now in the business of selling surgical implants for the treatment of glaucoma.  Sight Sciences does not sell any products that practice the Patents-in-Suit.  Sight Sciences waited until September 16, 2021, to sue Ivantis, over three years after the Hydrus® Microstent received FDA approval.

5.      As this lawsuit will reveal, Ivantis is a true innovator and does not infringe the Patents-in-Suit, which are invalid and should never have issued.

## PARTIES

6.      Ivantis, Inc. ("Ivantis") is a corporation organized under the laws of Delaware with its corporate headquarters at 201 Technology Dr., Irvine, CA 92618.

7.      Alcon Research, LLC ("Alcon Research") is a company organized under the laws of the state of Delaware, with its principal place of business at 6201 South Freeway, Fort Worth, Texas 76134.

8.      Alcon Vision, LLC ("Alcon Vision") is a company organized under the laws of the state of Delaware, with its principal place of business at 6201 South Freeway, Fort Worth, Texas, 76134.

9.      Upon information and belief, Sight Sciences, Inc. ("Sight Sciences") is a corporation organized under the laws of Delaware with its corporate headquarters at 4040 Campbell Ave., Suite 100, Menlo Park, CA 94025.

## NATURE OF THE ACTION

10.     Counterclaim-Plaintiffs seek declaratory judgment under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that U.S. Patent Nos. 8,287,482 ("the '482 patent"); 9,370,443 ("the '443 patent"); 9,486,361 ("the '361 patent"); 10,314,742 ("the '742 patent"); and 11,389,328 ("the '328 patent") (collectively, "Patents-in-Suit") are invalid and/or not infringed.

## JURISDICTION AND VENUE

11.     This Court has exclusive subject matter jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331, 1338; and the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

12.     This Court has personal jurisdiction over Sight Sciences because it has subjected itself to the jurisdiction of this Court by filing the Second Amended Complaint.

13.     Venue in this Court is proper based on the choice of forum by Sight Sciences and pursuant to 28 U.S.C. §§ 1391(b)-(c), and 1400(b).

## FACTUAL BACKGROUND

14.     On or about October 16, 2012, the '482 patent issued to named inventors David Y. Badawi and Paul Badawi.

30

15.     On or about June 21, 2016, the '443 patent issued to named inventors David Y. Badawi and Paul Badawi.

16.     On or about November 8, 2016, the '361 patent issued to named inventors David Y. Badawi and Paul Badawi.

17.     On or about June 11, 2019, the '742 patent issued to named inventors David Y. Badawi and Paul Badawi.

18.     On or about July 19, 2022, the '328 patent issued to named inventors David Y. Badawi and Paul Badawi.

19.     Sight Sciences purports to be the owner of each of the Patents-in-Suit.

20.     On September 16, 2021, Sight Sciences filed a lawsuit against Ivantis asserting that Ivantis' Hydrus® Microstent infringes the Patents-in-Suit.

21.     On August 1, 2022, Sight Sciences filed the Second Amended Complaint adding Alcon Inc., Alcon Vision, and Alcon Research as Defendants.

22.     Pursuant to 28 U.S.C. § 2201(a), an actual and justiciable controversy has arisen and exists between Counterclaim-Plaintiffs and Sight Sciences.   Counterclaim-Plaintiffs are entitled to a judicial determination and declaration that it has not infringed and is not infringing the Patents-in-Suit, and that the Patents-in-Suit are invalid.

## COUNT I

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '482 PATENT

23.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–21 as if fully set forth herein.

24.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '482 patent.

25.     A real, immediate, and justiciable controversy exists between Sight Sciences and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '482 patent.

26.     Counterclaim-Plaintiffs have not infringed and are not infringing any valid and enforceable claim of the '482 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.  For example, the Hydrus® Microstent does not meet each and every limitation of claim 1 of the '482 patent because the Hydrus® Microstent is not a "support…wherein…the support contacts less than 30% of C" as those terms are used in the '482 patent.

27.     Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and have not infringed, either directly or indirectly, any valid and enforceable claim of the '482 patent, either literally or under the doctrine of equivalents.

## COUNT II

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '482 PATENT

28.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–26 as if fully set forth herein.

29.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '482 patent.

30.     Counterclaim-Plaintiffs allege that the claims of the '482 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112.

31.     A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Sight Sciences regarding, *inter alia*, the validity of the claims of the '482 patent.

32.     Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claims 1 and 63, of the '482 patent are invalid.

## COUNT III

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '443 PATENT**

33.     Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–31 as if fully set forth herein.

34.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '443 patent.

35.     A real, immediate, and justiciable controversy exists between Sight Sciences and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs's alleged infringement of the '443 patent.

36.     Counterclaim-Plaintiffs have not infringed and is not infringing any valid and enforceable claim of the '443 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.  For example, the Hydrus® Microstent does not meet each and every limitation of claim 1 of the '443 patent because the Hydrus® Microstent  is not a "support compris[ing] an arcuate member, wherein as least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal so that at least a portion of the arcuate member is configured to extend out of Schlemm's canal and into the trabecular meshwork and… wherein the support contacts less than 30% of C" as those terms are used in the '443 patent.

37.     Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and have not infringed, either directly or

indirectly, any valid and enforceable claim of the '443 patent, either literally or under the doctrine of equivalents.

## COUNT IV

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '443 PATENT

38.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–36 as if fully set forth herein.

39.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '443 patent.

40.     Counterclaim-Plaintiffs allege that the claims of the '443 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112.

41.     A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Sight Sciences regarding, inter alia, the validity of the claims of the '443 patent.

42.     Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 1, of the '443 patent are invalid.

## COUNT V

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '361 PATENT

43.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–41 as if fully set forth herein.

44.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '361 patent.

45. A real, immediate, and justiciable controversy exists between Sight Sciences and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '361 patent.

46. Counterclaim-Plaintiffs have not infringed and are not infringing any valid and enforceable claim of the '361 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents. For example, the Hydrus® Microstent does not meet each and every limitation of claim 1 of the '361 patent because the Hydrus® Microstent is not a "support compris[ing] an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than a radius of curvature of Schlemm's canal" as those terms are used in the '361 patent.

47. Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and have not infringed, either directly or indirectly, any valid and enforceable claim of the '361 patent, either literally or under the doctrine of equivalents.

## COUNT VI

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '361 PATENT

48. Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–46 as if fully set forth herein.

49. Sight Sciences has brought claims against Counterclaim-Plaintiffs' alleging infringement of at least one claim of the '361 patent.

50. Counterclaim-Plaintiffs allege that the claims of the '361 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112.

51.     A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Sight Sciences regarding, inter alia, the validity of the claims of the '361 patent.

52.     Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 1, of the '361 patent are invalid.

<u>COUNT VII</u>

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '742 PATENT**

53.     Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–51 as if fully set forth herein.

54.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '742 patent.

55.     A real, immediate, and justiciable controversy exists between Sight Sciences and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '742 patent.

56.     Counterclaim-Plaintiffs have not infringed and are not infringing any valid and enforceable claim of the '742 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.  For example, the Hydrus® Microstent does not meet each and every limitation of claim 1 of the '742 patent because the Hydrus® Microstent is not a "support compris[ing] an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than a radius of curvature of Schlemm's canal" as those terms are used in the '742 patent.

57.     Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and has not infringed, either directly or

indirectly, any valid and enforceable claim of the '742 patent, either literally or under the doctrine of equivalents.

## COUNT VIII

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '742 PATENT

58.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–56 as if fully set forth herein.

59.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '742 patent.

60.     Counterclaim-Plaintiffs allege that the claims of the '742 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112.

61.     A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Sight Sciences regarding, inter alia, the validity of the claims of the '742 patent.

62.     Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 1 of the '742 patent, are invalid.

## COUNT IX

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '328 PATENT

63.     Counterclaim-Plaintiffs repeat and re-alleges paragraphs 1–60 as if fully set forth herein.

64.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '328 patent.

65.     A real, immediate, and justiciable controversy exists between Sight Sciences and Counterclaim-Plaintiffs regarding Counterclaim-Plaintiffs' alleged infringement of the '328 patent.

66.     Counterclaim-Plaintiffs have not infringed and are not infringing any valid and enforceable claim of the '328 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.  For example, the Hydrus® Microstent does not meet each and every limitation of claim 1 of the '328 patent because the Hydrus® Microstent is not a "support…comprising…an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature $R_{supp}$ smaller than a radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal" as those terms are used in the '328 patent.

67.     Counterclaim-Plaintiffs are entitled to a declaratory judgment that Counterclaim-Plaintiffs do not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid and enforceable claim of the '328 patent, either literally or under the doctrine of equivalents.

## COUNT X

**DECLARATORY JUDGMENT OF INVALIDITY OF THE '328 PATENT**

68.     Counterclaim-Plaintiffs repeat and re-allege paragraphs 1–65 as if fully set forth herein.

69.     Sight Sciences has brought claims against Counterclaim-Plaintiffs alleging infringement of at least one claim of the '328 patent.

70.     Counterclaim-Plaintiffs allege that the claims of the '328 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112.

71.     A present, genuine, and justiciable controversy exists between Counterclaim-Plaintiffs and Sight Sciences regarding, inter alia, the validity of the claims of the '328 patent.

72.     Counterclaim-Plaintiffs are entitled to a declaration that one or more claims, including at least claim 1 of the '328 patent, are invalid.

### ATTORNEYS' FEES

This is an exceptional case entitling Counterclaim-Plaintiffs to an award of their attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Counterclaim-Plaintiffs hereby respectfully request a jury trial on all issues and claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiffs request the following judgments and seek the following relief:

(i)     That all claims against Counterclaim-Plaintiffs be dismissed with prejudice and that all relief requested by Sight Sciences be denied;

(ii)    That a judgment be entered declaring that Counterclaim-Plaintiffs have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of the Patents-in-Suit, either literally or under the doctrine of equivalents;

(iii)     That a judgment be entered declaring that the claims of the Patents-in-Suit are invalid and/or unenforceable for failure to comply with the statutory provisions of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112;

(iv)     An award of Counterclaim-Plaintiffs' costs as the prevailing party;

(v)      That a judgment be entered declaring that this case is exceptional under 35 U.S.C. § 285, and accordingly that Counterclaim-Plaintiffs are entitled to recover reasonable attorneys' fees and costs upon prevailing in this action; and

(vi)     That Counterclaim-Plaintiffs be awarded such other relief that the Court deems just and proper.

OF COUNSEL:
Gregg LoCascio
Justin Bova
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Kat Li
Austin C. Teng
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Dated: September 15, 2022

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
arussell@shawkeller.com
*Attorneys for Defendants*