

**WILMINGTON**
RODNEY SQUARE

**Melanie K. Sharp**
P 302.571.6681
F 302.576.3333
msharp@ycst.com

June 6, 2023

**BY E-FILE (UNDER SEAL) AND HAND DELIVERY**

**Redacted - Public Version Filed on:
June 20, 2023**

The Honorable Sherry R. Fallon
United States District Court of Delaware
844 North King Street
Wilmington, DE 19801

Re:   _Sight Sciences, Inc. v. Ivantis, Inc._, C.A. No.:  21-1317-GBW-SRF

Dear Judge Fallon:

I write on behalf of my client, Sight Sciences, Inc. ("Sight") to respectfully request that the Court compel Defendants Ivantis Inc. ("Ivantis"), Alcon Research, LLC, Alcon Vision LLC, and Alcon Inc. (collectively, "Defendants") to produce a narrow set of litigation materials from _Glaukos Corp. v. Ivantis, Inc._, No. 8:18-cv-00620-JVS-JDE (C.D. Cal.) ("_Glaukos_") and its related appeal, _In re Ivantis, Inc._, C.A. No. 20-147 (Fed. Cir.).  _Glaukos_ involved the same accused product as this case, the Hydrus Microstent ("the Hydrus"), and the patents asserted by Glaukos Corp. ("Glaukos") are related to prior art relied upon by Defendants in this case.[1]

## I.    Factual Background

Sight's RFP Nos. 85, 86, 93, and 165 seek materials relating to _Glaukos_, and RFP No. 168 seeks materials from the related appeal, where Ivantis unsuccessfully appealed a spoliation finding.  On May 11, 2023, Sight narrowed the materials requested by these RFPs to the following list:

  a.  Deposition transcript of Reay Brown, co-inventor of the _Glaukos_ patents-in-suit
  b.  Deposition transcript of Mary Lynch, co-inventor of the _Glaukos_ patents-in-suit
  c.  Ivantis's responses to any interrogatories or RFAs propounded by Glaukos relating to non-infringement, invalidity, and invention of the Hydrus
  d.  Unredacted briefs and appendices filed in _In re Ivantis, Inc._, C.A. No. 20-147 (Fed. Cir.)
  e.  Kenneth Galt (Ivantis VP R&D): 9/13/2019 Deposition Transcript
  f.  Andrew Iwach (Invalidity Expert): 2/12/2020 Deposition Transcript
  g.  Mohan Rao (Damages Expert): 2/6/2020 Deposition Transcript
  h.  Douglas Rhee (Medical Expert): Expert Report; Deposition Transcript
  i.  Angelo Tanna (Medical Expert): 2/7/2020 Deposition Transcript

---

[1]  The parties are continuing to meet and confer in advance of the June 29, 2023 close of fact discovery regarding additional discovery disputes that Sight hopes to resolve without the need for motion practice.

**Young Conaway Stargatt & Taylor, LLP**
The Honorable Sherry R. Fallon
June 6, 2023
Page 2

  j. Harold Walbrink (Technical Expert): Expert Report; 1/24/2020 Deposition Transcript

*See* Ex. 1.[2] During the parties' May 16, 2023 meet and confer, Defendants objected to producing these materials because they contain Glaukos confidential information.

## II. Legal Standards

Materials from a previous litigation, including deposition transcripts, expert reports, and discovery responses, are discoverable when the previous litigation involves the same accused product as the current litigation, even if those materials contain a third party's confidential information.  Oral Order, *Rex Med., LP v. Intuitive Surgical, Inc.*, C.A. No. 19-00005-MN-SRF (D. Del. Oct. 5, 2021) (Ex. 2) (compelling defendant to produce "transcripts, expert reports, and discovery responses" from defendant's prior litigation involving the same accused product, and explaining that, "[a]s the producing party, Defendant shall promptly provide [the plaintiff in that prior litigation] with a copy of this Order to provide notice and obtain, if required, consent to disclose confidential third party information"); *see also* Discovery Order, *Sonos Inc. v. D&M Holdings Inc.*, C.A. No. 14-1330-RGA, D.I. 288 at 1-2 (D. Del. June 2, 2017) (ordering defendant to produce "expert reports, declarations, and deposition testimony" from a previous case where the accused products were the same as the "commercial embodiments" of the patents in that case); Special Master Order #11, *TQ Delta, LLC v. Dish Network Corp.*, C.A. No. 15-614-RGA, D.I. 393 at 1, 5-10 (D. Del. Feb. 1, 2022) (Ex. 4) (finding that "expert reports, declarations, and testimony transcripts of [a party's expert] from other . . . litigations relating to patents from the same family as the patents asserted in this case" were "relevant to the claims and defenses in the present action" and ordering them to be produced in "unredacted form" in part because plaintiff already possessed unredacted copies of the litigation materials and the materials could be designated as Attorneys' Eyes Only), *so ordered*, D.I. 404 (D. Del. Feb. 23, 2022); Oral Order, *Personal Audio LLC v. Google LLC*, C.A. No. 17-1751-CFC-CJB (D. Del. Feb. 27, 2019) (Ex. 5); Oral Order, *Int'l Bus. Machs. Corp. v. Expedia, Inc.*, C.A. No. 17-1875-LPS-CJB, D.I. 193 (D. Del. Aug. 21, 2019) (Ex. 6); Oral Order, *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125-LPS, D.I. 167 (D. Del. Apr. 1, 2021) (Ex. 7).

## III. RFP Nos. 85 and 86 – Deposition Testimony and Expert Reports

RFP No. 85 seeks "[a]ll deposition testimony by any Ivantis fact or expert witness in [*Glaukos*]." RFP No. 86 seeks "[a]ll expert reports served by Ivantis's experts in [*Glaukos*]."  Sight narrowed RFP No. 85 to only seek deposition transcripts for Kenneth Galt, Andrew Iwach, Mohan Rao, Douglas Rhee, Angelo Tanna, and Harold Walbrink.  Ex. 1.  Sight narrowed RFP No. 86 to only seek expert reports for Douglas Rhee and Harold Walbrink.  *Id.*  The relevance of the requested materials is summarized below:

---

[2] Sight also sent this narrowed list on May 11, 2023 to counsel for Glaukos.  Counsel for Glaukos responded that "it is premature to involve" Glaukos and suggested reaching back out when "Sight Sciences and Ivantis agree on a scope of production, and Ivantis provides authorization for Glaukos to review specific documents to determine whether Glaukos information is contained therein."  Ex. 8.  Glaukos previously agreed that Defendants could produce the Glaukos and Ivantis settlement agreement in this litigation on an "Outside Attorneys' Eyes Only" basis.

**Young Conaway Stargatt & Taylor, LLP**
The Honorable Sherry R. Fallon
June 6, 2023
Page 3

a.  Kenneth Galt (9/13/2019 Deposition Transcript):   Mr. Galt was V.P., Research and Development at Ivantis and passed away in 2022.  Mr. Galt was involved in development of the Hydrus and evaluation of ███ intellectual property.  *See* Ex. 9, Van Meter Dep. Tr. at 13:18-21 (noting that Ken Galt "was responsible for our intellectual property portfolio"); *see also id.* at 87:1-13 (explaining that Ken Galt would give investors an "overview of our freedom to operate . . . ███████████").

b.  Andrew Iwach (2/12/2020 Deposition Transcript):  Defendants identified Dr. Iwach as an expert in this case and his prior testimony on patent validity is relevant because the patents asserted by Glaukos are related to prior art relied upon by Defendants in this case.

c.  Mohan Rao (2/6/2020 Deposition Transcript):  Dr. Rao was Ivantis's damages expert. Dr. Rao's opinions are relevant to Defendants' damages defenses in this case.

d.  Douglas Rhee (Expert Report; Deposition Transcript):  Dr. Rhee's opinions on the safety and efficacy of the Hydrus are relevant to issues of market definition and competition in this case.

e.  Angelo Tanna (2/7/2020 Deposition Transcript):  Defendants have identified Dr. Tanna as an expert in this case, and Dr. Tanna testified in the claim construction portion of this case.  Dr. Tanna's testimony is relevant to positions he may take in the current case.

f.  Harold Walbrink (Expert Report; 1/24/2020 Deposition Transcript):  Dr. Walbrink is an infringement expert.  Dr. Walbrink's testimony is relevant to the non-infringement positions Defendants are taking in the current case.

Defendants should be compelled to produce this narrowed list of deposition transcripts and expert reports from *Glaukos* because this litigation and *Glaukos* involve the same accused product, the Hydrus.  Ex. 2.  Defendants may argue that production of these materials is prohibited by the Protective Order in *Glaukos*.  That argument is unpersuasive, as the materials could be designated under the Protective Order in this case.  Moreover, Glaukos already agreed that the confidentiality of its settlement agreement with Ivantis would be adequately protected by the Protective Order in this case, and that agreement was produced unredacted.  All of the requested materials should also already be in Ivantis's possession or control by virtue of Ivantis being a party in *Glaukos*.

**IV.  RFP No. 93 – Deposition Testimony of Prior Art Inventors/Authors**

RFP No. 93 seeks "[a]ll deposition testimony by any inventor or author (including but not limited to Reay Brown or Mary Lynch) of any patent or publication (including patent publications) that You contend is prior art to the Patents-in-Suit that was given in [*Glaukos*]."  Sight narrowed this request to only seek the deposition transcripts of Dr. Reay Brown and Dr. Mary Lynch. Ex. 1. Dr. Brown and Dr. Lynch were co-inventors on patents asserted in *Glaukos*, and Defendants have cited Brown/Lynch references related to these patents as prior art in the current case.[3]  Dr. Brown's deposition in this case is set for June 29.  It is unlikely that these transcripts contain Glaukos confidential information, since Dr. Brown and Dr. Lynch were never Glaukos employees. (Glaukos purchased the patents from Dr. Brown's and Dr. Lynch's former employer.)  Even if

---

[3] Glaukos asserted U.S. Patent Nos. 6,626,858 and 9,827,243.  Three prior art references relied upon in Defendants' invalidity contentions (US 2005/0038334, WO 00/64391, US 2005/0090807) claim priority to the same Provisional Appl. No. 60/131,030.  (Ex. 10, at pp. 5, 7, 11.)

**Young Conaway Stargatt & Taylor, LLP**
The Honorable Sherry R. Fallon
June 6, 2023
Page 4

they did contain Glaukos confidential information, Defendants should be compelled to produce them for the same reason as for RFP No. 85 above.  *See* Ex. 2.

## V.     RFP No. 165 – Ivantis's Responses to Interrogatories and RFAs in *Glaukos*

RFP No. 165 seeks "Your responses to any interrogatories or requests for admission propounded by Glaukos Corporation in [*Glaukos*]."  Sight narrowed this request to seek only Ivantis's responses to any interrogatories or RFAs propounded by Glaukos relating to non-infringement, invalidity, and invention of the Hydrus.  Ex. 1.  Ivantis's sworn statements related to the Hydrus are relevant because the Hydrus is also an accused product here.  Ivantis's sworn statements related to the teachings of the prior art are also relevant because the asserted patents in *Glaukos* are related to Brown/Lynch prior art relied upon by Defendants in this case.  Accordingly, Defendants should be compelled to produce this narrowed list of discovery responses.  Ex. 2.

## VI.     RFP No. 168 – Unredacted Briefs and Exhibits filed in *In re Ivantis, Inc.*

RFP No. 168 seeks "[u]nredacted copies of all briefs and appendices filed in *In re Ivantis, Inc.*, C.A. No. 20-147 (Fed. Cir.)."  These documents relate to Ivantis's appeal of the district court's order finding intentional spoliation by Ivantis.  *See* Ex. 11, *Glaukos Corp. v. Ivantis, Inc.*, No. 8:18-cv-00620-JVS-JDE, 2020 WL 10501850, at *4-5 (C.D. Cal. June 17, 2020) (finding that an adverse inference instruction "should be imposed in light of Ivantis's spoliation"); Ex. 12, *In re Ivantis*, 835 F. App'x 560 (Fed. Cir. 2020) (denying Ivantis's petition for a writ of mandamus). These documents are relevant to the question of whether spoliation affected this matter. Defendants' purported earliest knowledge of U.S. Pat. No. 8,287,482 (a patent-in-suit) as 2016, four years post-issuance (*see* Ex. 13, p. 5), contradicts other evidence, namely: (1) In a January 7, 2009 meeting between Doug Roeder, a member of Ivantis's board of directors, and Paul Badawi, one of the inventors, Mr. Roeder offered (on behalf of Ivantis) to purchase the patent application leading to the patents-in-suit and Mr. Badawi refused, stating his intention to build a company based on this IP (*see* Ex. 14, pp. 43-44); (2) Ivantis hired patent litigators from Arnold & Porter in 2013 (*see* Ex. 15, *In re Ivantis, Inc.*, C.A. No. 20-147, D.I. 15 at 23 (Fed. Cir. Sept. 15, 2020)); (3) Ivantis instituted an automatic email deletion policy that deleted emails dated June 2013 to April 2017 (*see* Ex. 16, *Glaukos*, D.I. 495-12, ¶¶3-5 (C.D. Cal. Apr. 10, 2020))[4]; (4) Ivantis conducted regular evaluations of the IP landscape (*e.g.*, Ex. 17, at IVANTIS_SS_00165094); (5) Ivantis's CEO admitted that it performed freedom to operate analyses on ████████████ patents (Ex. 9, Van Meter Dep. Tr. at 13:18-21; 87:1-13); and (6) Ivantis argued unsuccessfully in *Glaukos* that its retention of outside counsel to perform patent diligence was not related to that litigation (Ex. 11, *4).  *See also* Ex. 18, pp. 10-16.  Defendants should be compelled to produce documents responsive to RFP No. 168, as the foregoing evidence shows that Ivantis sought and failed to buy the parent patent application to the patents-in-suit, knew or should have known of the patents-in-suit when they issued, hired litigation counsel, and yet, instituted and maintained an email auto-deletion policy in effect for three years while these events were unfolding.

---

[4] The earliest entry in Defendants' privilege log served in this case is dated November 2, 2016 (i.e., during the spoliation period).

**Young Conaway Stargatt & Taylor, LLP**
The Honorable Sherry R. Fallon
June 6, 2023
Page 5

                                        Respectfully,

                                        */s/ Melanie K. Sharp*

                                        Melanie K. Sharp (No. 2501)

MKS:mg

cc:    All Counsel of Record (by e-mail)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.:  21-1317-GBW-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>PROPOSED ORDER GRANTING SIGHT SCIENCES, INC.'S MOTION TO COMPEL</u>**

Upon consideration of Plaintiff Sight Sciences, Inc.'s ("Sight") Motion to Compel ("the

Motion"), and all related pleadings and argument:

IT IS HEREBY ORDERED that:

1.      The Motion is GRANTED.

2.      Within (7) days of this Order, Defendants shall produce unredacted copies of all

briefs and appendices filed in *In re Ivantis, Inc.*, C.A. No. 20-147 (Fed. Cir.), and the following

materials from *Glaukos Corp. v. Ivantis, Inc.*, No. 8:18-cv-00620-JVS-JDE (C.D. Cal.):

      a.      Transcripts (and any errata) of depositions of Kenneth Galt, Andrew Iwach,

Mohan Rao, Douglas Rhee, Angelo Tanna, Harold Walbrink, Reay Brown, and Mary Lynch;

      b.      Expert reports of Douglas Rhee and Harold Walbrink; and

      c.      Ivantis's responses to any interrogatories or requests for admission

propounded by Glaukos Corp. relating to non-infringement, invalidity, and invention of the Hydrus

Microstent.

SO ORDERED this _____ day of _____, 2023.

                                             _____

                                           United States Magistrate Judge

30364699.2

# EXHIBIT 1

**From:** Strosnick, Lauren
**Sent:** Thursday, May 11, 2023 2:28 PM
**To:** 'Merideth, Vicki' <vicki.merideth@kirkland.com>; Armon, Orion <oarmon@cooley.com>; cvilloslada@ycst.com; Arora, Priya <PArora@cooley.com>; Elkman, Alli E. <aelkman@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; Rhyu, Michelle <RHYUMS@cooley.com>; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-VAC-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Correspondence

Counsel,

As discussed on our May 5 meet-and-confer and referenced in your May 10 letter, below is a narrowed list of *Glaukos* litigation materials that we will share with Glaukos's counsel. We propose that these documents be produced as HC-AEO for preliminary review. To the extent any information contained in these documents is Glaukos confidential information, Sight will seek permission from Glaukos before citing any confidential portions. In any event, we will request written confirmation as to whether or not the below materials have been designated as containing Glaukos confidential information. Additionally, we plan to ask Glaukos to cooperate in providing Dr. Brown and Dr. Lynch full unredacted copies of their respective deposition transcripts and any errata if they so request.

- Deposition transcript of Reay Brown
  - Dr. Brown is a witness in the Sight case and was a co-inventor on patents asserted by Glaukos in the prior litigation. Ivantis has cited prior art references related to these patents as prior art in the current case. It is our understanding that Dr. Brown licensed his patents to Glaukos, but was never employed by Glaukos and did not have access to Glaukos confidential information.
- Deposition transcript of Mary Lynch
  - Dr. Lynch was a co-inventor (with Dr. Brown) on patents asserted by Glaukos in the prior litigation. Ivantis has asserted prior art references related to these patents in the current case. It is our understanding that Dr. Lynch licensed her patents to Glaukos, but was never employed by Glaukos and did not have access to Glaukos confidential information.
- Ivantis's responses to any interrogatories or RFAs propounded by Glaukos relating to non-infringement, invalidity, and invention of the Hydrus
  - Ivantis's sworn statements related to the Hydrus and as to prior art publications are highly relevant to the current case.
- Unredacted briefs and appendices filed in *In re Ivantis, Inc.*, C.A. No. 20-147 (Fed. Cir.)
  - These documents relate to Ivantis's appeal of the district court's order finding intentional spoliation by Ivantis. Ivantis's institution of a document destruction policy in 2013, after it engaged litigation counsel and after it became aware of the patent application leading to the patents-in-suit, is highly relevant to the question of whether Ivantis improperly destroyed documents to deprive Sight of those documents in a future litigation.
- Kenneth Galt: 9/13/2019 Deposition Transcript

**Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions**

- o   Mr. Galt was V.P., Research and Development at Ivantis and passed away in 2022.  Mr. Galt appears to have been involved in development of the Hydrus and evaluation of competitors' intellectual property, including freedom to operate.  *See* Van Meter Dep. Tr., 13:18-21 (IVANTIS_SS_00172382) (noting that Ken Galt "was responsible for our intellectual property portfolio"); *see also id.* at 87:1-13 (IVANTIS_SS_00172456) (explaining that Ken Galt would give investors an "overview of our freedom to operate . ████████████████████  In view of Sight's inability to take Mr. Galt's deposition, Sight requests this transcript.

- Andrew Iwach: 2/12/2020 Deposition Transcript
  - o   Defendants have identified Dr. Iwach as an expert in this case, and his prior testimony is highly relevant to the invalidity positions Defendants are taking in the current case.

- Mohan Rao: 2/6/2020 Deposition Transcript
  - o   Dr. Rao is a damages expert who presumably provided Ivantis's assessment of the market in which the Hydrus competes, including market share, assessment of lost profits and reasonable royalties.  Dr. Rao's assessments would be highly relevant to positions Ivantis is taking in the current case.

- Douglas Rhee: Expert Report; Deposition Transcript
  - o   Dr. Rhee's report offers opinions on the safety and efficacy of Ivantis' Hydrus product, which are relevant at least to the positions Defendants are taking on the fact of the Hydrus' safety and efficacy data in the context of assessing the market in which the Hydrus competes for damages.

- Angelo Tanna: 2/7/2020 Deposition Transcript
  - o   Defendants have identified Dr. Tanna as an expert in this case, and Dr. Tanna has testified in the claim construction portion of this case.  Dr. Tanna's prior testimony is highly relevant to positions he may take in the current case.

- Harold Walbrink: Expert Report; 1/24/2020 Deposition Transcript
  - o   Dr. Walbrink is an infringement expert whose report and testimony offer opinions on the Hydrus' functionality.  Dr. Walbink's prior testimony is highly relevant to the non-infringement positions Defendants are taking in the current case.


We will copy you on our email to Glaukos's counsel.  To the extent you claim that you are not in possession of these materials, we understand that the information we have requested in discovery, if not yet in K&E's possession by its discovery collection in this action, is or should be in Ivantis' possession or control.  For example, Ivantis is obligated to request the information from its own counsel in the Glaukos matter.

For clarity, we understand that Defendants already have and will produce (to the extent you have not already) the requested expert reports and deposition transcripts for Todd Abraham, Gary Condon, and Andrew Schieber, as you stated on the April 26 meet-and-confer.  Your May 10 letter states that these transcripts and reports "will include any appropriate redactions" – please confirm that these redactions will be limited to Glaukos confidential information.


Thanks,
Lauren

Lauren Strosnick
Direct: +1 650 843 5065

**From:** Merideth, Vicki <vicki.merideth@kirkland.com>
**Sent:** Wednesday, May 10, 2023 3:02 PM
**To:** Armon, Orion <oarmon@cooley.com>; cvilloslada@ycst.com; Arora, Priya <PArora@cooley.com>; Elkman, Alli E. <aelkman@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; Rhyu, Michelle <RHYUMS@cooley.com>; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-VAC-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Correspondence

**[External]**

Counsel,

Please see the attached correspondence.  Thank you.


**Vicki Merideth**
Senior Paralegal

**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 678 9180
**F** +1 512 678 9101

**vicki.merideth@kirkland.com**


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 2

ORAL ORDER re 108 Letter,, 110 Letter: IT IS HEREBY ORDERED that: (1) Plaintiff's request to compel the production of financial documents responsive to Request for Production Nos. 29, 30, and 131 is GRANTED. Defendant raises no substantive objection to the production of this information. Accordingly, Defendant shall complete the production of documents including gross profit, operating profit, loss, and sales projection information for the accused products on or before October 18, 2021. (2) Plaintiff's request to compel the production of transcripts, expert reports, and discovery responses from the Ethicon litigation in response to Request for Production Nos. 135, 138, and 140 is GRANTED-IN-PART. On or before October 18, 2021, Defendant shall complete its production of transcripts, expert reports, and discovery responses limited to those documents relating to the SureForm product. As the producing party, Defendant shall promptly provide Ethicon with a copy of this Order to provide notice and obtain, if required, consent to disclose confidential third party information. (3) Plaintiff's motion to strike Defendant's final invalidity contentions is DENIED. See EMC Corp. v. Pure Storage, Inc., 154 F. Supp. 3d 81, 93 (D. Del. 2016) ("Courts in the Third Circuit favor resolution of disputes on their merits, particularly with respect to patent validity issues, which raise public interest concerns extending beyond the immediate dispute between the parties."). The record before the Court does not support Plaintiff's argument that Defendant's invalidity theory based on the GIA devices is untimely. Defendant referenced the GIA devices in its December 2019 supplementation of the invalidity contentions, it identified the GIA devices in its July 30, 2021 final identification of invalidity references, and it timely served its final invalidity contentions by the September 24, 2021 deadline. (D.I. 83 at 2; D.I. 110, Ex. 6 at 96; Ex. 7) (4) Plaintiff's motion to compel Defendant to supplement its responses to Interrogatories 11 and 17 is GRANTED-IN-PART, and Defendant shall serve a supplemental response to Interrogatory 17 on or before October 12, 2021. Plaintiff's request is DENIED as moot with respect to Interrogatory 11 because Defendant supplemented its response on October 1, 2021. (D.I. 110, Ex. 8 at 4-6) (5) Plaintiff's motion to compel Defendant to identify a Rule 30(b)(6) witness on Topic 29 is DENIED as moot. The record shows that Defendant designated a Rule 30(b)(6) witness on Topic 29 on October 1, 2021. (D.I. 110, Ex. 9 at 1) IT IS FURTHER ORDERED that the discovery dispute teleconference set in this matter for October 6, 2021 at 12:30 p.m. is CANCELLED. Signed by Judge Sherry R. Fallon on 10/5/2021. (Polito, Rebecca) (Entered: 10/05/2021)

As of October 6, 2021, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Rex Medical, LP v. Intuitive Surgical, Inc. et al*
1-19-cv-00005 (DDE), 10/5/2021, docket entry

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONOS INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 14-1330-RGA |
| | : | |
| D&M HOLDINGS INC., et al., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| D&M HOLDINGS, INC., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 16-141-RGA |
| | : | |
| SONOS, INC., | : | |
| | : | |
| Defendant. | : | |

**AMENDED DISCOVERY ORDER**

The parties have a dispute. (No. 14-1330, D.I. 272, 276).

D&M seeks expert reports, declarations, and deposition testimony of three Sonos experts in this case who were also experts in a 2014 patent case brought against Sonos by a third party, and also seeks deposition testimony and declarations of Sonos' fact witnesses in the prior litigation.

D&M states that the "wireless audio products" accused in the prior litigation are "the same products" as are accused in No. 16-141 and the "commercial embodiments" of the patents asserted in No. 14-1330. (D.I. 272 at 1). Sonos responds that the Sonos products accused of infringement in the first case are "not at issue" in these cases. (D.I. 276 at 1). It appeared to me

that both assertions could not be true, and upon further inquiry (D.I. 277), I learned that the

conflict was the result of a typographical error.  (D.I. 280).  Thus, my concern about the honesty

of representations that were being made to me is resolved.

I do not need to reschedule the discovery conference.  Sonos offered to produce the

"BHM Case materials" in the 16-141 case.  (D.I. 280, ¶ 9).  I assume by "BHM Case materials,"

Sonos means what D&M calls the "BHM Documents."  (D.I. 272 at 1).  Sonos is ORDERED to

make that production.  Sonos states that the production is irrelevant to the 14-1330 case, as the

fact that some of the accused products in the BHM litigation are asserted as commercial

embodiments of the asserted patents in the 14-1330 case does not make anything in the BHM

case relevant to any of the issues in the 14-1330 case. (D.I. 280, ¶ 7).  It is certainly the case that

the materials would be, at minimum, much less relevant to the 14-1330 case than to the 16-141

case.  If there were nothing but the 14-1330 case, this might be a difficult decision.  However,

there is no extra burden to Sonos producing the materials in both cases, and there is some

marginal possibility that some of it will be relevant to the 14-1330 case.  Thus, Sonos is

ORDERED make the production in the 14-1330 case also.

IT IS SO ORDERED this 7 day of June 2017.

United States District Judge

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TQ DELTA, LLC,                               :
                                             :
                    Plaintiff,               :
                                             :
            v.                               :        Civil Action No. 15-614-RGA
                                             :
                                             :
DISH NETWORK CORPORATION, *et al.*,          :
                                             :
                    Defendants.              :

**SPECIAL MASTER ORDER #11 – RULING ON DISH DEFENDANTS'
MOTION TO COMPEL PRODUCTION OF UNREDACTED EXPERT
REPORTS, DECLARATIONS, AND TESTIMONY TRANSCRIPTS OF
TQ DELTA, LLC'S TECHNICAL EXPERT, DR. VIJAY MADISETTI**

## I.    INTRODUCTION

Pending before the Special Master is Defendants DISH Network Corp., DISH Network LLC, DISH DBS Corp., and DISH Technologies L.L.C.'s (collectively "DISH") motion to compel Plaintiff TQ Delta, LLC ("TQ Delta" or "Plaintiff") to produce unredacted expert reports, declarations, and testimony transcripts of its technical expert, Dr. Vijay Madisetti ("Dr. Madisetti"), from other TQ Delta litigations relating to patents from the same family as the patents asserted in this case,[1] and any future opinions or testimony offered by its experts in other litigations relating to patents from the same family as the patents asserted in this case (D.I. 380) (the "Motion").[2]  DISH further requests an award of its fees and costs in connection with this Motion. (Op. Br. at 3).  On January 25, 2022, TQ Delta submitted its answering brief in opposition to the

---

[1] This Order refers to any and all expert reports, declarations, and testimony transcripts of its technical expert, Dr. Madisetti, from other TQ Delta litigations relating to patents from the same family as the patents asserted in this case as the "Prior Litigation Materials".

[2] In support of the Motion, DISH lodged upon the Special Master an Opening Letter Brief dated January 18, 2021 ("Opening Brief" or "Op. Br.").

Motion ("Answering Brief" or "Ans. Br.") asserting that that the Prior Litigation Materials have "little relevance to the present litigation" and that disclosure of unredacted copies of the Prior Litigation Materials is prohibited under the terms of the protective orders in the Prior Actions.[3] (Ans. Br. at 1). On January 31, 2022, the Special Master heard oral argument on the Motion. After considering the written submissions by the parties and oral argument from counsel, the Motion is ripe for adjudication and ruling by the Special Master. For the reasons set forth more fully below, the Motion is GRANTED.

## II.   BACKGROUND AND RELEVANT PROCEDURAL POSTURE

Plaintiff initiated this action on July 17, 2015, alleging that DISH infringed eight (8) of TQ Delta's patents. (D.I. 1). Two patents remain at issue in the present action: U.S. Patent Ns. 8,718,158 ("the '158 patent") and 9,014,243 ("the '243 patent").

On February 5, 2016, DISH served upon TQ Delta its First Set of Requests for Production to Plaintiff (Nos. 1-138), which sought, among other things, the production of materials from TQ Delta's prior litigations. (D.I. 48; Op. Br., Ex. C). On August 21, 2021, TQ Delta disclosed to DISH that Dr. Madisetti would serve as its expert in the present action.

The parties subsequently met and conferred regarding DISH's relevant discovery requests, and TQ Delta represented that there were no expert opinions on damages in those cases, or on technical topics by experts other than Dr. Madisetti. (Op. Br. at 1). Based upon this representation, DISH narrowed the relevant discovery requests to include only five categories of materials. (*Id.*) One of the five categories of materials was "prior expert reports, declarations, deposition

---

[3] "Prior Actions" refer to the prior TQ Delta litigations where in Dr. Madisetti served as an expert witness, including *TQ Delta, LLC v. 2Wire, Inc.,* 1:13-cv-01835-RGA ("2Wire Case") and *TQ Delta, LLC v. Adtran, Inc.,* 1:14-cv-00954-RGA ("ADTRAN Case"). At issue in the Prior Actions were six patents in the same patent family as the patents asserted in the present action, including U.S. Patent Nos. 7,292,627, 7,471,721, 8,073,041, 8,090,008, 8,218,610, and 8,355,427.

2

testimony, and any other materials from Dr. Madisetti from the [2Wire Case] and [ADTRAN Case]." (Op. Br., Ex. D at 2).

To date, TQ Delta has not produced to DISH any of the Prior Litigation Materials. Rather, on January 6, 2022, TQ Delta provided to DISH a list of all Prior Litigation Materials identifying the Defendant, the title of the report or declaration, and the docket entry. (Ans. Br., Ex. D). This list included both sealed and publicly filed Prior Litigation Materials.

DISH's Motion requests the Court to require TQ Delta to produce unredacted Prior Litigation Materials. (D.I. 380). In support of the Motion, DISH asserts that Dr. Madisetti's prior opinions are relevant to the present action because they pertain to "the scope and validity of claims bearing a remarkable resemblance to those asserted in this case" and specifically represents that Dr. Madisetti's prior opinions relate to other "phase scrambling" patents like the patents at issue in this action. (Op. Br. at 2). DISH also asserts that TQ Delta's production of the Prior Litigation Materials would not be unduly burdensome to TQ Delta because TQ Delta's counsel have the documents available in its possession and because TQ Delta can designate the Prior Litigation Materials as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in the present action to protect any non-party confidential information. (*Id.* at 3).

In opposition to the Motion, TQ Delta contends that the protective orders[4] in the Prior Actions prohibit the disclosure of unredacted copies of the Prior Litigation Materials because the Prior Litigation Materials contain information that has been designated "HIGHLY

---

[4] The applicable protective order in the 2Wire Case is attached to the Answering Brief at Exhibit A. The applicable protective order in the ADTRAN Case is attached to the Answering Brief as Exhibit B. The two protective orders in the Prior Actions are collectively referred to as the "Protective Orders." Also, at play is a protective order governing the production of information by Broadcam Corporation ("Broadcam") in the Prior Litigations (the "Broadcam Protective Order"). The Broacdcam Protective Order is attached to the Answering Brief as Exhibit C.

3

CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL –
SOURCE CODE" by other parties in the Prior Actions who are non-parties in this action. (Ans.
Br. at 1). In other words, TQ Delta contends that it is prohibited from producing the Prior
Litigation Materials to DISH because they contain confidential information of non-parties. (*Id.* at
2). TQ Delta further contends that DISH ought to "deal directly with the non-parties to obtain
permission to receive the non-parties' confidential information" because that would be "'more
convenient, less burdensome, [and] less expensive' than requiring TQ Delta to insert itself in that
process." (*Id.*).

## III.   ANALYSIS

### A.   Legal Standard

Pursuant to Rule 26 of the Federal Rule of Civil Procedure, "[p]arties may obtain discovery
regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional
to the needs of the case, considering the importance of the issues at stake in the action, the amount
in controversy, the parties' relative access to relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and whether the burden or expense of the
proposed discovery outweighs its likely benefit. Information within this scope of discovery need
not be admissible in evidence to be discoverable." Fed. R. Civ. Pro. 26(b)(1).

The Third Circuit "employs a liberal discovery standard," *Westchester Fire Ins. Co. v.
Household Int'l, Inc.*, 167 F. Appx 895, 899 (3d Cir. 2006), and recognizes that "the federal rules
allow broad and liberal discovery." *Pacetti by Pacetti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999).
Similarly, the District of Delaware has "'construed liberally and with common sense' the
requirement of relevancy, rather than measure relevancy by the precise issues framed by the
pleadings or limited by other concepts of narrow legalisms. Thus, discovery should ordinarily be

allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Rohm & Haas Co. v. Brotech Corp.*, 1990 U.S. Dist. LEXIS 20117, at *12 (D. Del. Sept. 14, 1990); *see also See Finjan, Inc. v. Rapid7, Inc.*, 2020 WL 5045186, at *2 (D. Del. Aug. 7, 2020) ("Relevance is liberally construed to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Discovery may be limited if the court determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(c).

**B.**   **TQ Delta is Ordered to Produce the Prior Litigation Materials to DISH in Unredacted Form.**

To determine whether DISH is entitled to unredacted versions of the Prior Litigation Materials, the Court's analysis begins with Rule 26(b)(1). First, the Court must determine whether the information requested concerns a nonprivileged matter that is relevant to any party's claim or defense. Here, the Special Master finds that the Prior Litigation Materials are relevant to the claims and defenses in the present action. Specifically, Dr. Madisetti's prior opinions concern other "phase scrambling" patents in the same patent family as the '158 and '243 patents. *See* Op. Br., Ex. A at 4. In fact, in the ADTRAN Case, Dr. Madisetti opined on the construction of the "phase characteristic" term. (Op. Br., Ex. K at 20-26). This term is similarly recited by the '158 patent

5

in the present action. Thus, based on the resemblance of the patents at issue in the present action and the patents at issue in the Prior Actions, the Special Master finds that the Prior Litigation Materials are relevant to the claims and defenses in this action.

Having determined that the Prior Litigation Materials are relevant, the Special Master next evaluates whether the production of unredacted versions of the Prior Litigation Materials is proportional to the needs of the case considering (i) the importance of the issues at stake in the action, (ii) the amount in controversy, (iii) the parties' relative access to relevant information, (iv) the parties' resources, (v) the importance of the discovery in resolving the issues, and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit. Here, the parties' dispute centers around whether the production of unredacted versions of the Prior Litigation Materials amounts to an undue burden to TQ Delta.

Again, TQ Delta argues that production of the unredacted versions of the Prior Litigation Materials is unduly burdensome because the Protective Orders prohibit the use and disclosure of documents or other materials to DISH for use in this action absent the non-parties' consent. (Ans. Br. at 2-3). Indeed, the Protective Orders in the Prior Actions limit the use of documents or other discovery materials produced or exchanged in connection with the Prior Actions to use in each Prior Action respectively, absent written consent by the Designating Party[5] or unless otherwise ordered by the Court. (Ans. Br., Ex. A at 1 ("Documents or other discovery materials produced or exchanged in connection with this Action may only be used in this Action . . . and may not be used for other actions *absent the written agreement of the producing party*.") (emphasis added);

---

[5] The Protective Orders include the following definitions: (i) "Designating Party" is defined as "a Party or non-party that designates information or items that is produced in disclosures or in responses to discovery as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code"; and (ii) "Receiving Party" is defined as "a Party that receives Discovery Material from a Producing Party." (Ans. Br., Ex. A. at 3; Ex. B at 3-4).

Ex. B (same); *see also* Ans. Br., Ex. A at 4 (¶ 3 ("All documents, materials, items, testimony or information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and "HIGHLY CONFIDENTIAL – SOURCE CODE," . . . shall be governed by this Protective Order and shall be used only for the purposes of this Action and not for any other litigation . . . and shall not be disclosed to anyone except as provided in this Protective Order, absent a specific order by the Court."); Ex. B at 5 (¶ 3 (same)); Ex. A at 12 (¶ 7.1 ("A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party only in connection with this Action and not for any other litigation (including any other action brought by TQ Delta) . . . and shall not disclose Protected Material to anyone except as provided in this Order absent a specific order by the court.")); Ex. B at 13 (¶ 7.1 (same)).

In addition to allowing disclosure of designated confidential information when required by a court order, the Protective Orders in the Prior Actions include provisions expressly addressing a Designating Party's rights in the event a Receiving Party is ordered to disclose information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE." (Ans. Br., Ex. A at 23-24 (¶ 8); Ex. B. at 24-25 (¶ 8)). Specifically, the Protective Orders provide that if "an order issued in other litigation would compel disclosure" of such confidential information "the Receiving Party must so notify the Designating Party, in writing, promptly and in no event more than ten (10) court days after receiving the . . . order" and must include a copy of the order. (Ans. Br., Ex. A at 23; Ex. B at 24). The Protective Orders recognize that these provisions serve to "alert the interested parties to the existence of [the Protective Orders] and to afford the Designating Party in this Action an

opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued." (Ans. Br., Ex. A at 23; Ans. Br., Ex. B at 25).[6]

The Special Master has carefully considered the parties' arguments and makes the following findings:  based upon the provisions of the Protective Orders in the Prior Actions and the Broadcom Protective Order, the Special Master finds that, upon an order from this Court requiring TQ Delta to produce any non-party confidential information, TQ Delta need only satisfy the notice requirements set forth in the Protective Orders and the Broadcam Protective Order.  *See* Ans. Br., Ex. A at 23, Ex. B at 24 and Ex. C at 16-17.  Such notice requirements are not unduly burdensome for TQ Delta.  Also, TQ Delta does not dispute that its counsel possesses copies of the Prior Litigation Materials in unredacted form and, thus, it is not unduly burdensome for TQ Delta to produce these Prior Litigation Materials to DISH if so ordered by this Court.  In other words, the burden of TQ Delta producing the Prior Litigation Materials in unredacted form is not outweighed by its likely benefit.

At the same time, the Special Master recognizes the importance of protecting non-parties' confidential information.  The Special Master certainly wants to be sensitive to avoid doing any harm that may result to the non-parties by requiring the disclosure of non-party confidential information in this action.  The Special Master is unaware of any manner in which the non-parties are adverse to DISH.  To the contrary, by virtue of both the non-parties and DISH being adverse to TQ Delta in pending patent litigations, their interests appear to be somewhat aligned.  Also, in

---

[6] The Broadcam Protective Order includes similar notice provisions to the extent a court order compels disclosure of "BROADCOM – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE."  Ex. C at 16-17.  Further, the Protective Orders in the Prior Actions and the Broadcam Protetive Order state that "[t]he Designating Party shall bear the burdens and expenses of seeking protection in that court of its confidential material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another Court."  (Ans. Br., Ex. A at 24; Ex. B at 25; Ex. C at 16-17).

this action, the Court has entered a protective order allowing the parties to designate documents, testimony and information exchanged between the parties as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." (D.I. 72) Thus, any Prior Litigation Materials produced in this action may be designated as "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" to continue to protect the non-party confidential information in this action.

In light of the above, the Special Master concludes that DISH is entitled to the Prior Litigation Materials given their relevance to the claims and defenses in this action, and that the burden of TQ Delta producing the Prior Litigation Materials in unredacted form is not outweighed by its likely benefit. Therefore, TQ Delta is ordered to produce the Prior Litigation Materials in unredacted form to DISH as follows: Specifically, the Special Master orders that within two (2) days of the date of this Order, TQ Delta shall satisfy all requisite notices requirements under the Protective Orders in the Prior Actions and the Broadcam Protective Order, which includes notifying all affected non-parties of this Order requiring the production of unredacted versions of the Prior Litigation Materials containing information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL SOURCE CODE" or "BROADCOM – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE." Thereafter, within ten (10) days of the date of this Order, TQ Delta shall produce all Prior Litigation Materials to DISH in unredacted form in this action as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to and subject to the terms of the protective order entered in this action. If, after receiving notice from TQ Delta, any non-party objects to the production of its confidential information to DISH in this action, it may move for a protective order before this Court on or

9

before February 10, 2022. In the event that a non-party files a motion for protective order with this Court on or before February 10, 2022 to prevent disclosure of its designated confidential information to DISH, the ten (10) day deadline for TQ Delta to produce all Prior Litigation Materials to DISH in unredacted form shall be stayed only with respect to Prior Litigation Materials containing the confidential information of the non-party or non-parties who have filed motion(s) for protective order with this Court and only until the Court is able to hear and determine the merits of such motion(s). [7]

### C.     DISH's Request For Fees and Expenses Is Denied.

DISH requests an award of fees and costs under Federal Rule of Civil Procedure 37(a)(5)(A) and 28 U.S.C. § 1927 in connection with the Motion. (Op. Br. at 3). TQ Delta opposes this request. (Ans. Br. at 3). It is within this Court's discretion to impose sanctions under Federal Rule of Civil Procedure 37. *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir.1995) (internal quotation marks omitted); *see also* L.R. 1.3(a) ("Sanctions may be imposed, at the discretion of the Court, for violations of the Rules, as well as for violations of the Fed. R. Civ. P. and any order of the Court. Such sanctions may include, but are not limited to, costs, fines and attorneys' fees imposed on the offending party and that party's attorney."). The Special Master, in his discretion, finds that both sides presented meritorious arguments on the Motion and, therefore, denies DISH's request for an award of its fees and expenses in connection with the Motion.

---

[7] DISH further seeks the Court require TQ Delta to produce any future opinions or testimony provided by Dr. Madisetti or other experts in the Prior Actions that are relevant to "phase scrambling" patents. (Op. Br. at 2). If and when Dr. Madisetti or another expert in the Prior Actions renders any future opinions or testimony in the Prior Actions that are relevant to the "phase scrambling" patents in the Prior Actions, the same rationale will generally apply. However, without deciding such possible future disputes at this time, DISH can file another motion if and when the situation arises for the Special Master to evaluate and rule on the dispute in context.

## IV.    CONCLUSION

For the foregoing reasons, the Special Master GRANTS DISH's Motion.  Within two (2) days of the date of this Order, TQ Delta shall satisfy all requisite notices requirements under the Protective Orders in the Prior Actions and the Broadcam Protective Order, which includes providing notice to all affected non-parties of this Order requiring the production of unredacted versions of the Prior Litigation Materials containing information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL SOURCE CODE" or "BROADCOM – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE."   Thereafter, within ten (10) days of the date of this Order, TQ Delta shall produce all Prior Litigation Materials to DISH in unredacted form in this action as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to and subject to the terms of the protective order entered in this action.  If, after receiving notice from TQ Delta, any non-party objects to the production of its confidential information to DISH in this action, it may move for a protective order before this Court on or before February 10, 2022.  In the event that a non-party files a motion for protective order with this Court on or before February 10, 2022 to prevent disclosure of its designated confidential information to DISH, the ten (10) day deadline for TQ Delta to produce all Prior Litigation Materials to DISH in unredacted form shall be stayed only with respect to Prior Litigation Materials containing the confidential information of the non-party or non-parties who have filed motion(s) for protective order with this Court and only until the Court is able to hear and determine the merits of such motion(s).

ENTERED this 1st day of February, 2022.

Gregory B. Williams (#4195)
Special Master

11

SO ORDERED this _____ day of _____, 2022.

_____
UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT 5

ORAL ORDER: The Court, having reviewed the parties' supplemental letters relating to Defendant's request that Plaintiff be compelled to complete its production of litigation materials generated from Plaintiff's prior litigations against Apple and Acer, (D.I. 357; D.I. 359), HEREBY ORDERS as follows: (1) Defendant, as the party moving to compel, bears the burden of establishing that these documents are relevant to the instant litigation. See Tessera, Inc. v. Broadcom Corp., Civil Action No. 16-380-LPS-CJB, 2017 WL 4876215, at *2 (D. Del. Oct. 24, 2017). (2) First, as to the expert deposition transcripts and expert reports from the Apple case, the Court agrees with Defendant that these are relevant to this litigation, for the reasons set out by Google. (D.I. 359 at 1-2) Plaintiff has not made a showing of any undue burden pursuant to Fed. R. Civ. P. 26 as to production of these documents. Thus, by no later than March 13, 2019, Plaintiff shall produce any expert deposition transcripts and expert reports from the Apple case that are in its possession, custody or control. (3) Second, as to the defendants' discovery responses in the Apple and Acer cases, Defendant acknowledges that some such responses (such as those identifying certain financial information) might be irrelevant, while arguing that other responses (such as those relating to validity of the asserted patents) are "clearly relevant here." (D.I. 359 at 2) The Court agrees. As to how to deal with the fact that this category of materials is likely to contain both relevant and irrelevant documents, Defendant's alternative proposal, (id.), whereby Plaintiff may produce the discovery responses with information that it believes to be irrelevant redacted (with Defendant able to subsequently challenge any redactions as necessary), appears to be a reasonable and practical solution. By no later than March 13, 2019, Plaintiff shall produce any of the defendants' responses to Interrogatories and/or Requests for Admissions in the Apple and Acer cases that are in its possession, custody or control in accordance with this proposal. (4) With respect to Plaintiff's concern that some of the documents referenced above may contain Apple's highly confidential technical and financial information, (D.I. 351 at 1), presumably such documents would be produced pursuant to the Protective Order in this case, and that should at least partly address such a concern. Moreover, if Apple believes that certain materials should not be produced or that certain redactions should be made, Apple may attempt to intervene accordingly. (See D.I. 359 at 2 n.2); and (5)To the extent that Defendant believes that Plaintiff has not produced any other documents relating to Plaintiff's prior litigations that should in fact be produced, Defendant is free to follow up regarding those issues by further utilizing the Court's discovery dispute procedures. Ordered by Judge Christopher J. Burke on 2/27/2019. (dlb) (Entered: 02/27/2019)

As of February 28, 2019, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Personal Audio LLC v. Google LLC*
1-17-cv-01751 (DED), 2/27/2019, docket entry

# EXHIBIT 6

ORAL ORDER: The Court, having reviewed the parties' discovery dispute motion relating to (a) Defendants' request that Plaintiff be compelled to produce relevant e-mail documents that it previously produced in the Priceline and Groupon litigations (the Priceline and Groupon e-mails); (b) Plaintiff's request that if it is required to produce the Priceline and Groupon e-mails, the parties should then be ordered to engage in new e-mail discovery; and (c) Plaintiff's request that Defendants serve supplemental invalidity contentions relating to the alleged prior art version of Expedia's website, (the "Motion"), (D.I. 165), and the parties' letter briefs relating thereto, (D.I. 175; D.I. 177; D.I. 187; D.I. 189), and having heard argument on August 19, 2019, hereby ORDERS as follows with respect to the Motion: (1) With regard to Defendants' request that Plaintiff be compelled to produce the Priceline and Groupon e-mails, the request is GRANTED. Most, if not all, of these e-mails are likely to be relevant to the claims and defenses at issue in this action, as the Priceline and Groupon litigations each involved four of the five patents that are in-suit here (and indeed, Plaintiff does not really argue that the e-mails would be irrelevant to this case), (D.I. 187 at 5). Nor would there be any undue "burden or expense" on Plaintiff to produce the e-mails pursuant to Fed. R. Civ. P. 26(b)(1), as the e-mails have already been collected and reviewed in the prior litigations. Lastly, in light of what was stated during the telephonic argument on August 19, 2019, it is clear that there was no joint "agreement" between the parties that IBM would not produce such e-mails in this case (IBM had said they did not want to produce the e-mails, and Defendants had disagreed with that position). Plaintiff shall thus produce the e-mails by no later than August 30, 2019.; (2) With regard to Plaintiffs request that if it is required to produce the Priceline and Groupon e-mails, the parties should then be ordered to engage in new e-mail discovery, the Court ORDERS that by no later than August 30, 2019, the parties shall provide a joint letter, of no more than four single-spaced pages, outlining their proposals for the scope of limited, reciprocal new e-mail discovery. The Court is not yet certain whether it believes that, at this late date (and in light of the parties prior understanding that no such new e-mail discovery was really needed in this case), it would be fair to order that such discovery be undertaken now. But it does also understand that Plaintiff's agreement not to undertake new e-mail discovery was at least in part linked to Plaintiff's position that the Priceline and Groupon e-mails need not be produced. Now that those e-mails must be produced, the Court is willing to at least consider whether some limited (i.e., a small number of search terms, a small number of custodians) new e-mail discovery should be allowed.; and (3) With regard to Plaintiff's request that Defendants serve supplemental invalidity contentions relating to the alleged prior art version of Expedia's website, the Court DENIES the request as MOOT. Because the parties suggest that Defendants will be updating the relevant contentions soon (and that, before they do, Plaintiff will be updating its infringement contentions), the Court need not resolve this dispute now. The Court hereby ORDERS that Plaintiff shall supplement its infringement contentions by August 30, 2019 and Defendants shall supplement their invalidity contentions by September 6, 2019. The Court also orders the parties to meet and confer to present an agreed-upon proposal, (or joint letter outlining their respective proposals), concerning identification of source code (and other computer files) on which infringement and invalidity contentions are based, including a timeline for such identification and any related issue (e.g., limitations on the parties ability to rely on additional source code or computer files identified in later stages of the case). The parties should submit such joint proposal or letter, which should not exceed

four single-spaced pages, by no later than September 13, 2019. Ordered by Judge
Christopher J. Burke on 8/21/2019. (dlb) (Entered: 08/21/2019)
As of August 22, 2019, PACER did not contain a publicly available document
associated with this docket entry. The text of the docket entry is shown above.

*International Business Machines Corporation v. Expedia, Inc. et al*
1-17-cv-01875 (DED), 8/21/2019, docket entry 193

# EXHIBIT 7

ORAL ORDER: Having reviewed the parties' letters and related materials raising numerous discovery disputes (see, e.g., D.I. 160, 163), IT IS HEREBY ORDERED that: (1) Archer's request that Natera be ordered to complete (and not just "substantially complete") production of all documents regarding conception and reduction to practice of the patents-in-suit (RFP 2) is GRANTED in that such complete production must be completed by April 30 - in the context of this case, particularly given its multiple patents, numerous asserted claims, and up to 17 inventors, and given what Natera contends is already a fairly complete production, there is no reason to keep Archer waiting much longer for complete production; (2) Archer's request to compel a response to ROG 11, regarding conception and reduction to practice of non-asserted claims, is DENIED WITHOUT PREJUDICE as it appears the parties have not fully met and conferred, although Natera is ORDERED to advise Archer by April 6 what Natera is willing to provide Archer in response to the interrogatory and the parties shall advise the Court by joint status report no later than April 9 if there is any remaining dispute; (3) Archer's request to compel documents from a related litigation (RFP 39) is GRANTED, as there is no burden on Natera (Archer's attorneys already have possession of the documents by virtue of being counsel in the related case), the Court is persuaded the requested materials are relevant, Natera is not entitled at this stage to know which subset of the materials Archer is interested in, and Archer's attorneys are undoubtedly familiar with (and are expected of course to comply with) their obligations to third parties and under any protective order; (4) Archer's request to compel financial information regarding Natera's Signatera product (RFP 15) is DENIED as Natera represents it has already produced "documents sufficient to show the sales, revenue and profits since the product was first sold" and "[t]here is nothing for the Court to compel" (D.I. 163 at 3) and the record does not show these representations to be incorrect. The discovery teleconference later today will not address the disputes the Court has already resolved. ORDERED by Judge Leonard P. Stark on 4/1/21. (ntl) (Entered: 04/01/2021)

As of April 2, 2021, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Natera, Inc. v. ArcherDX, Inc.*
1-20-cv-00125 (DDE), 4/1/2021, docket entry 167

# EXHIBIT 8

**From:** Glasser, Lisa <lglasser@irell.com>
**Sent:** Thursday, May 11, 2023 9:04 PM
**To:** Armon, Orion <oarmon@cooley.com>
**Cc:** Teng, Austin C. <austin.teng@kirkland.com>; Heffernan, Jeannie <jheffernan@kirkland.com>; Li, Kat <kat.li@kirkland.com>; Bova, Justin <justin.bova@kirkland.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>
**Subject:** Re: SSIv Sight Sciences v Ivantis - Production of unredacted copies of deposition transcripts and expert reports from Glaukos v. Ivantis case

**[External]**

Counsel,

As noted previously, Glaukos is a third party and also has obligations under the protective order from its litigation with Ivantis. Many documents marked confidential in that case had a mix of confidential material from both sides and/or third parties. Until Sight Sciences and Ivantis agree on a scope of production, and Ivantis provides authorization for Glaukos to review specific documents to determine whether Glaukos information is contained therein, it is premature to involve us. Let us know when the parties have worked out their issues.

Best,
Lisa

On May 11, 2023, at 12:53 PM, Armon, Orion <oarmon@cooley.com> wrote:

Hi Lisa,

Counsel for Ivantis said that you had requested that we narrow and prioritize the list of documents we're requesting. In a good faith effort to move things along, please see below a narrowed list of Glaukos litigation materials relevant to the Sight Sciences case. To the extent that these documents contain Glaukos confidential information, please advise whether Glaukos consents to production of these documents in the Sight/Ivantis litigation as "Highly Confidential – Attorneys' Eyes Only" (with no in-house attorney access) for preliminary review. To the extent redactions become necessary (e.g., for documents that would be used at trial or in a hearing open to the public) we would work with you on redactions, or seek your permission before citing any Glaukos confidential portions. Please also confirm (1) which of the below materials have been designated as containing Glaukos confidential information, and (2) whether you will provide Dr. Brown and Dr. Lynch full unredacted copies of their respective deposition transcripts and any errata if they so request.

* Deposition transcript of Reay Brown
* Deposition transcript of Mary Lynch
* Ivantis's responses to any interrogatories or RFAs propounded by Glaukos relating to non-infringement, invalidity, and development of the Hydrus
* Unredacted briefs and appendices filed in In re Ivantis, Inc., C.A. No. 20-147 (Fed. Cir.)

* Kenneth Galt: 9/13/2019 Deposition Transcript
* Andrew Iwach: 2/12/2020 Deposition Transcript
* Mohan Rao: 2/6/2020 Deposition Transcript
* Douglas Rhee: Expert Report; Deposition Transcript
* Angelo Tanna: 2/7/2020 Deposition Transcript
* Harold Walbrink: Expert Report; 1/24/2020 Deposition Transcript

Thanks,
Orion

Orion Armon
Cooley LLP
1144 15th Street, Suite 2300
Denver, CO 80202-2686
720 566 4119 office
303 949 0925 mobile
oarmon@cooley.com<mailto:oarmon@cooley.com>

From: Glasser, Lisa <lglasser@irell.com>
Sent: Tuesday, May 2, 2023 7:03 AM
To: Teng, Austin C. <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>
Cc: Heffernan, Jeannie <jheffernan@kirkland.com>; Li, Kat <kat.li@kirkland.com>; Bova,
Justin <justin.bova@kirkland.com>; z/Sight Sciences Ivantis
<zSightSciencesIvantis@cooley.com>
Subject: RE: SSIv Sight Sciences v Ivantis - Production of unredacted copies of deposition
transcripts and expert reports from Glaukos v. Ivantis case

[External]
_____
8:30 this morning would work for me.

From: Teng, Austin C. <austin.teng@kirkland.com<mailto:austin.teng@kirkland.com>>
Sent: Monday, May 1, 2023 1:17 PM
To: Glasser, Lisa <lglasser@irell.com<mailto:lglasser@irell.com>>; Armon, Orion
<oarmon@cooley.com<mailto:oarmon@cooley.com>>
Cc: Heffernan, Jeannie <jheffernan@kirkland.com<mailto:jheffernan@kirkland.com>>; Li, Kat
<kat.li@kirkland.com<mailto:kat.li@kirkland.com>>; Bova, Justin
<justin.bova@kirkland.com<mailto:justin.bova@kirkland.com>>; z/Sight Sciences Ivantis
<zSightSciencesIvantis@cooley.com<mailto:zSightSciencesIvantis@cooley.com>>
Subject: RE: SSIv Sight Sciences v Ivantis - Production of unredacted copies of deposition
transcripts and expert reports from Glaukos v. Ivantis case

Lisa,

I have availability tomorrow between 8:30-10:30 am or 1-2 pm PT. Let me know what works with your schedule.

Austin Teng
-------------------------------------------------------
KIRKLAND & ELLIS LLP
401 Congress Avenue, Austin, TX 78701
T +1 512 355 4351 M +1 214 444 8364
F +1 512 678 9101
-------------------------------------------------------
austin.teng@kirkland.com<mailto:austin.teng@kirkland.com>

From: Glasser, Lisa <lglasser@irell.com<mailto:lglasser@irell.com>>
Sent: Monday, May 1, 2023 11:02 AM
To: Armon, Orion <oarmon@cooley.com<mailto:oarmon@cooley.com>>; Teng, Austin C. <austin.teng@kirkland.com<mailto:austin.teng@kirkland.com>>
Cc: Heffernan, Jeannie <jheffernan@kirkland.com<mailto:jheffernan@kirkland.com>>; Li, Kat <kat.li@kirkland.com<mailto:kat.li@kirkland.com>>; Bova, Justin <justin.bova@kirkland.com<mailto:justin.bova@kirkland.com>>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com<mailto:zSightSciencesIvantis@cooley.com>>
Subject: RE: SSIv Sight Sciences v Ivantis - Production of unredacted copies of deposition transcripts and expert reports from Glaukos v. Ivantis case

Austin, Can you connect with me sometime this week to discuss? To the extent these contain confidential materials of Glaukos, the Ivantis-Glaukos PO bars Ivantis from possessing copies of them after the conclusion of the litigation. The reverse

Austin,

Can you connect with me sometime this week to discuss? To the extent these contain confidential materials of Glaukos, the Ivantis-Glaukos PO bars Ivantis from possessing copies of them after the conclusion of the litigation. The reverse is also true for confidential materials of Ivantis.

That does not necessarily mean that no production could be made (and if I recall correctly, some of the below were not confidential), but I want to make sure that Ivantis is complying with the PO, and also that we can address the request below without any issues under the PO.

Lisa

From: Armon, Orion <oarmon@cooley.com<mailto:oarmon@cooley.com>>
Sent: Friday, April 28, 2023 6:30 PM
To: Teng, Austin C. <austin.teng@kirkland.com<mailto:austin.teng@kirkland.com>>; Glasser, Lisa <lglasser@irell.com<mailto:lglasser@irell.com>>
Cc: Heffernan, Jeannie <jheffernan@kirkland.com<mailto:jheffernan@kirkland.com>>; Li, Kat <kat.li@kirkland.com<mailto:kat.li@kirkland.com>>; Bova, Justin

<justin.bova@kirkland.com<mailto:justin.bova@kirkland.com>>; z/Sight Sciences Ivantis
<zSightSciencesIvantis@cooley.com<mailto:zSightSciencesIvantis@cooley.com>>
Subject: RE: SSIv Sight Sciences v Ivantis - Production of unredacted copies of deposition
transcripts and expert reports from Glaukos v. Ivantis case

Austin - Thank you for copying me on your email.
Lisa – I represent Sight Sciences. We understand that Glaukos agreed that the Glaukos/Ivantis
and Transcend settlement and license agreements could be produced pursuant to the Protective
Order entered in our litigation as HC-AEO information that is not accessible by any in-house
counsel.

I would appreciate it if you would let me know if any of the following documents contain
Glaukos confidential information, and if so, whether Glaukos would consent to their production
with the same protections afforded to the Glaukos/Ivantis and Transcend license agreements.

Please note that we believe that our requests cover the additional documents highlighted here:

* Todd Abraham: Expert Report; 9/19/2019 Deposition Transcript
* Gary Condon: Expert Report; Deposition Transcript
* Kenneth Galt: 9/13/2019 Deposition Transcript
* Andrew Iwach: 2/12/2020 Deposition Transcript
* Jason Jones: Expert Report; Deposition Transcript (to the extent it exists)
* Daniel LaRoche: Expert Report; Deposition Transcript (to the extent it exists)
* Mohan Rao: 2/6/2020 Deposition Transcript
* Douglas Rhee: Expert Report; Deposition Transcript
* Andrew Schieber: Expert Report; 1/23/2020 Deposition Transcript
* Angelo Tanna: Expert report; 2/7/2020 Deposition Transcript
* Harold Walbrink: Expert Report; 1/24/2020 Deposition Transcript
* Jeff Whitman: Expert Report; Deposition Transcript (to the extent it exists)

Sincerely,
Orion
Orion Armon
Cooley LLP
1144 15th Street, Suite 2300
Denver, CO 80202-2686
720 566 4119 office
303 949 0925 mobile
oarmon@cooley.com<mailto:oarmon@cooley.com>

From: Teng, Austin C. <austin.teng@kirkland.com<mailto:austin.teng@kirkland.com>>
Sent: Friday, April 28, 2023 4:29 PM
To: Glasser, Lisa <lglasser@irell.com<mailto:lglasser@irell.com>>
Cc: Armon, Orion <oarmon@cooley.com<mailto:oarmon@cooley.com>>; Heffernan, Jeannie
<jheffernan@kirkland.com<mailto:jheffernan@kirkland.com>>; Li, Kat
<kat.li@kirkland.com<mailto:kat.li@kirkland.com>>; Bova, Justin

<justin.bova@kirkland.com<mailto:justin.bova@kirkland.com>>
Subject: SSIv Sight Sciences v Ivantis - Production of unredacted copies of deposition transcripts
and expert reports from Glaukos v. Ivantis case

[External]
_____
Lisa,

Sight Sciences (outside counsel copied here) has requested that Ivantis produce unredacted
copies of the following deposition transcripts and reports from the Glaukos v. Ivantis case.


* Todd Abraham: Expert Report; 9/19/2019 Deposition Transcript
* Gary Condon: Expert Report; Deposition Transcript
* Kenneth Galt: 9/13/2019 Deposition Transcript
* Andrew Iwach: 2/12/2020 Deposition Transcript
* Jason Jones: Expert Report
* Daniel LaRoche: Expert Report
* Mohan Rao: 2/6/2020 Deposition Transcript
* Douglas Rhee: Expert Report; Deposition Transcript
* Andrew Schieber: Expert Report; 1/23/2020 Deposition Transcript
* Angelo Tanna: 2/7/2020 Deposition Transcript
* Harold Walbrink: Expert Report; 1/24/2020 Deposition Transcript
* Jeff Whitman: Expert Report

Does Glaukos object to the production of these materials?

Austin Teng
-----------------------------------------------------
KIRKLAND & ELLIS LLP
401 Congress Avenue, Austin, TX 78701
T +1 512 355 4351 M +1 214 444 8364
F +1 512 678 9101
-----------------------------------------------------
austin.teng@kirkland.com<mailto:austin.teng@kirkland.com>



The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the addressee. It
is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use,
disclosure or copying of this communication or any part thereof is strictly prohibited and may be
unlawful. If you have received this communication in error, please notify us immediately by
return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and
destroy this communication and all copies thereof, including all attachments.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT 9

**(Excerpted)**

1     UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA

3      SOUTHERN DIVISION

4

5  GLAUKOS CORPORATION, a  ) Case No.

6  Delaware corporation,   ) 8:18-cv-00620-JVS-JDE

7      Plaintiff,  )

8    VS.       )

9  IVANTIS, INC., a Delaware ) Pages 1-277

10  corporation,      )

11      Defendant.  )

12  _____ )

13

14  ATTORNEYS' EYES ONLY - PURSUANT TO PROTECTIVE ORDER

15       * * *

16   VIDEOTAPED DEPOSITION OF DAVID VAN METER

17    THURSDAY, SEPTEMBER 26, 2019

18      9:01 A.M.

19

20

21  Reported by:

22  LINDA NICKERSON

23  CSR No. 8746

24  Job No. 3507323

25  Pages 1-277

Page 1

IVANTIS_SS_00172370

```
 1              Videotaped deposition of DAVID VAN METER, the

 2       witness, taken on behalf of the Plaintiff, on

 3       THURSDAY, SEPTEMBER 26, 2019, 9:01 a.m., at 660

 4       Newport Center Drive, Sixteenth Floor, Newport

 5       Beach, California, before LINDA NICKERSON, CSR No.

 6       8746, pursuant to NOTICE.

 7

 8       APPEARANCES OF COUNSEL:

 9       FOR PLAINTIFF:

10            IRELL & MANELLA, LLP

11            BY:  LISA GLASSER, ESQ.

12                 JONATHON MADDERN, ESQ.

13            840 Newport Center Drive

14            Suite 400

15            Newport Beach, California  92660

16            (949) 760-0991

17            lglasser@irell.com

18            jmaddern@irell.com

19       FOR DEFENDANT:

20            KEKER, VAN NEST & PETERS, LLP

21            BY:  DAVID J. SILBERT, ESQ.

22            633 Battery Street

23            San Francisco, California  94111

24            (415) 391-5400

25            dsilbert@keker.com
```

Page 2

IVANTIS_SS_00172371

```
1        APPEARANCES (Continued):

2

3        ALSO PRESENT:

4            KIMBERLEE DECKER (Videographer)

5            DAVID SHAW

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 3
```

IVANTIS_SS_00172372

```
1                         I N D E X

2

3    WITNESS              EXAMINATION              PAGE

4    DAVID VAN METER

5

6                         By Ms. Glasser        12, 272

7                         By Mr. Silbert             269

8

9                         E X H I B I T S

10   NUMBER        PAGE      DESCRIPTION

11   Exhibit 200   75       E-mail dated 4-11-09 from

12                          Reay Brown

13                          (LB00004355)

14   Exhibit 201   84       E-mail chain ending on

15                          11-15-16 from Ken Galt

16                          (IVNTS_00059497-

17                          IVNTS_00059498)

18   Exhibit 202   88       E-mail chain ending on

19                          4-14-18 from Michael

20                          Robinson

21                          (IVNTS_00060321-

22                          IVNTS_00060322)

23   ///

24   ///

25   ///
```

Page 4

IVANTIS_SS_00172373

```
 1              E X H I B I T S (Continued)

 2      NUMBER        PAGE      DESCRIPTION

 3      Exhibit 203   96        E-mail chain ending on

 4                              7-5-17 from Michael

 5                              Robinson

 6                              (IVNTS_00058386-

 7                              IVNTS_00058388)

 8      Exhibit 204   120       Flash Drive

 9      Exhibit 205   138       Flash Drive

10      Exhibit 206   138       Vimeo Website

11      Exhibit 207   142       E-mail chain ending on

12                              7-10-17 from David Van Meter

13                              (IVNTS_00070089-

14                              IVNTS_00070093)

15      Exhibit 208   145       E-mail chain ending on

16                              1-22-18 from David Van Meter

17                              (IVNTS_00221511-

18                              IVNTS_00221512)

19      Exhibit 209   156       E-mail chain ending on

20                              11-30-17 from Jim Mazzo

21                              (IVNTS_00056284-

22                              IVNTS_00056285)

23      Exhibit 210   160       E-mail dated 11-30-17 from

24                              David Van Meter

25                              (IVNTS_00056302)

                                                    Page 5
```

IVANTIS_SS_00172374

```
 1              E X H I B I T S (Continued)

 2       NUMBER        PAGE       DESCRIPTION

 3       Exhibit 211   163        E-mail chain ending on

 4                                2-17-17 from Todd Abraham

 5                                (IVNTS_00063938-

 6                                IVNTS_00063939)

 7       Exhibit 212   165        E-mail chain ending on

 8                                4-12-17 from Todd Abraham

 9                                (IVNTS_00071032-

10                                IVNTS_00071038)

11       Exhibit 213   169        E-mail chain ending on

12                                8-7-17 from David Van Meter

13                                (IVNTS_00102921-

14                                IVNTS_00102923)

15       Exhibit 214   173        E-mail chain ending on

16                                8-18-17 from David Van Meter

17                                (IVNTS_00069933-

18                                IVNTS_00069934)

19       Exhibit 215   175        E-mail chain ending on

20                                11-3-17 from Michael Chodzko

21                                (IVNTS_00092946)

22       Exhibit 216   186        E-mail chain ending on

23                                12-26-17 from David Van Meter

24                                (IVNTS_00107608-

25                                IVNTS_00107617)

                                               Page 6
```

IVANTIS_SS_00172375

```
 1              E X H I B I T S (Continued)

 2       NUMBER        PAGE        DESCRIPTION

 3       Exhibit 217   189         E-mail chain ending on

 4                                 4-14-18 from dvanmeter

 5                                 (IVNTS_00055669-

 6                                 IVNTS_00055670)

 7       Exhibit 218   195         E-mail chain ending on

 8                                 4-16-18 from dvanmeter

 9                                 (IVNTS_00055663-

10                                 IVNTS_00055665)

11       Exhibit 219   200         E-mail chain ending on

12                                 5-14-18 from David Van Meter

13                                 (IVNTS_00184924-

14                                 IVNTS_00184925)

15       Exhibit 220   202         E-mail chain ending on

16                                 5-20-18 from Glen Burgess

17                                 (IVNTS_00064431-

18                                 IVNTS_00064432)

19       Exhibit 221   208         Commercial Roll Out

20                                 (IVNTS_00064355-

21                                 IVNTS_00064366)

22       Exhibit 222   212         Ivantis BOD Meeting, June 7,

23                                 2018

24                                 (IVNTS_00034053-

25                                 IVNTS_00034187)

                                              Page 7
```

IVANTIS_SS_00172376

```
 1            E X H I B I T S (Continued)

 2       NUMBER        PAGE      DESCRIPTION

 3       Exhibit 223   220       E-mail dated 6-26-18 from

 4                               Todd Abraham

 5                               (IVNTS_00060047-

 6                               IVNTS_00060057)

 7       Exhibit 224   222       South Bank Day Hospital

 8                               Surgeons

 9       Exhibit 225   228       E-mail dated 8-1-18 from

10                               David Van Meter

11                               (IVNTS_00074282)

12       Exhibit 226   238       E-mail chain ending on

13                               2-14-17 from Brandon Lorry

14                               (IVNTS_00071466-

15                               IVNTS_00071467)

16       Exhibit 227   245       E-mail chain ending on

17                               6-6-17 from David Van Meter

18                               (IVNTS_00070434-

19                               IVNTS_00070435)

20       Exhibit 228   253       E-mail chain ending on

21                               11-14-17 from David Van Meter

22                               (IVNTS_00056561-

23                               IVNTS_00056562)

24       ///

25       ///

                                                    Page 8
```

IVANTIS_SS_00172377

```
 1                E X H I B I T S (Continued)

 2      NUMBER         PAGE        DESCRIPTION

 3      Exhibit 229   265         E-mail chain ending on

 4                                11-27-17 from Dave Van

 5                                Meter

 6                                (IVNTS_00068409)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                Page 9
```

IVANTIS_SS_00172378

```
 1                    NEWPORT BEACH, CALIFORNIA

 2             THURSDAY, SEPTEMBER 26, 2019; 9:01 A.M.

 3

 4             THE VIDEOGRAPHER:  Good morning.           09:01:56

 5             We are going on the record at 9:01 a.m. on  09:01:57

 6   September the 26th of 2019.                          09:02:02

 7             Please note that the microphones are       09:02:04

 8   sensitive and may pick up whispering, private       09:02:05

 9   conversation, and cellular interference.  Please    09:02:08

10   turn off all cell phones or place them away from the 09:02:11

11   microphones as they can interfere with the          09:02:14

12   deposition audio.                                   09:02:16

13             Audio and video recording will continue to 09:02:17

14   take place unless all parties agree to go off the   09:02:19

15   record.                                             09:02:22

16             This is Media Unit One of the             09:02:22

17   video-recorded deposition of Dave Van Meter taken by 09:02:25

18   counsel for the plaintiff in the matter of Glaukos  09:02:29

19   versus Ivantis, Inc., filed in the U.S. District    09:02:31

20   Court, Central District of California.              09:02:35

21             This deposition is being held at Stradling 09:02:37

22   Yocca, located at 660 Newport Center Drive, Suite   09:02:40

23   1600, Newport Beach, California.                    09:02:46

24             My name is Kimberlee Decker from the firm  09:02:50

25   Veritext Legal Solutions, and I'm the videographer. 09:02:53

                                                 Page 10
```

IVANTIS_SS_00172379

| | | |
|---|---|---|
| 1 | The court reporter is Linda Nickerson from the | 09:02:55 |
| 2 | Veritext Legal Solutions. | 09:02:58 |
| 3 | I'm not related to any party in this action | 09:03:00 |
| 4 | nor am I financially interested in the outcome. | 09:03:03 |
| 5 | Counsel and all present in the room will | 09:03:05 |
| 6 | now state their appearances and affiliations for the | 09:03:07 |
| 7 | record.  If there's any objection to proceeding, | 09:03:10 |
| 8 | please state it at the time of your appearance, | 09:03:13 |
| 9 | beginning with the noticing attorney. | 09:03:15 |
| 10 | MS. GLASSER:  Lisa Glasser with Irell & | 09:03:16 |
| 11 | Manella on behalf of Glaukos. | 09:03:18 |
| 12 | MR. SILBERT:  David Silbert, Keker, Van | 09:03:20 |
| 13 | Nest & Peters on behalf of Ivantis. | 09:03:22 |
| 14 | MR. SHAW:  David Shaw for Ivantis. | 09:03:24 |
| 15 | THE WITNESS:  David Van Meter, president | 09:03:26 |
| 16 | and CEO of Ivantis. | 09:03:27 |
| 17 | THE VIDEOGRAPHER:  Will the court reporter | 09:03:30 |
| 18 | please swear in the witness. | 09:03:31 |
| 19 | | |
| 20 | DAVID VAN METER, | |
| 21 | having been first duly sworn, was | |
| 22 | examined and testified as follows: | |
| 23 | | |
| 24 | /// | |
| 25 | /// | |

Page 11

IVANTIS_SS_00172380

```
 1                    EXAMINATION

 2      BY MS. GLASSER:

 3          Q    Would you please state your name again for   09:03:41

 4      the record.

 5          A    David Van Meter.                             09:03:43

 6          Q    And you are the president and CEO of         09:03:44

 7      Ivantis, correct?                                    09:03:46

 8          A    Yes.                                         09:03:47

 9          Q    You are also a member of the board of       09:03:48

10      directors; is that right?                            09:03:49

11          A    Yes.                                         09:03:50

12          Q    And have you ever been deposed before?      09:03:51

13          A    I have been deposed once before.            09:03:55

14          Q    In what matter was that?                    09:03:56

15          A    In regard to an employment matter roughly   09:03:58

16      eight or nine years ago.                             09:04:04

17          Q    Was that at Ivantis?                        09:04:05

18          A    Yes.                                         09:04:06

19          Q    And did you have the opportunity to meet    09:04:06

20      with your counsel before today to understand the     09:04:09

21      deposition process?                                  09:04:12

22          A    To some extent, I met to understand the     09:04:13

23      deposition process, but as far as rules and          09:04:18

24      procedures relating to the deposition, I'm -- it's   09:04:21

25      been a long time.  So I'm not -- I'm not sure of     09:04:24
```

Veritext Legal Solutions
800-826-0277

IVANTIS_SS_00172381

```
1    those.                                          09:04:27

2         Q    Okay.  Are you aware that you need to  09:04:27

3    answer questions fully and to the best of your  09:04:29

4    ability under oath?                             09:04:31

5         A    Absolutely.                           09:04:32

6         Q    If you do have any questions, feel free to  09:04:33

7    let me know.  Otherwise, I'll assume that you   09:04:36

8    understood the questions as they were phrased.  09:04:39

9         A    Okay.                                 09:04:41

10        Q    Were you personally aware of the '858  09:04:42

11   patent before Glaukos filed this case?          09:04:46

12        A    Yes, I was.                            09:04:48

13        Q    And how long had you been aware?       09:04:50

14        A    So I was aware of the '858 patent probably  09:04:53

15   roughly around the time of the second to -- second  09:05:04

16   quarter to middle of 2008.                      09:05:10

17        Q    How did you become aware?              09:05:13

18        A    So I hired a vice president of research,  09:05:15

19   Ken Galt, and in Ken's responsibilities, he handled  09:05:20

20   our product development and he was also responsible  09:05:25

21   for our intellectual property portfolio.        09:05:27

22        Q    And Ken Galt in his capacity as vice   09:05:30

23   president of research and development brought the  09:05:34

24   '858 patent to your attention; is that correct?  09:05:36

25
```

Page 13

IVANTIS_SS_00172382

Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions

Page 14

IVANTIS_SS_00172383

```
 1          A    Well, I can't remember any investor ever      10:41:58

 2     not asking us about the intellectual property          10:42:05

 3     landscape as well as our own patents and how we felt    10:42:07

 4     about our freedom to operate.                           10:42:11

 5          That's -- that's a standard thing that any         10:42:13

 6     investor would want to learn about.  Very rarely is     10:42:14

 7     it worded this specifically around Glaukos.             10:42:20

 8          Q    So the question was:  Can you recall any      10:42:22

 9     major investor or potential investor who didn't ask     10:42:26

10     you any questions about the Glaukos patents?            10:42:29

11          A    Yes.                                          10:42:31

12          Q    Who?                                          10:42:36

13          A    It doesn't jump out to me who they are, but   10:42:37

14     the typical venue by which this happens is we get a     10:42:42

15     meeting.  You get an hour.  You present the business    10:42:45

16     case.  You lay out everything to make your argument     10:42:49

17     about why they should invest in your company and why    10:42:54

18     it's a great opportunity to help patients.              10:42:56

19          And then at the end, they'll say, well,            10:42:58

20     we'd like to learn more about freedom to operate.       10:43:04

21     And then that's when I say, okay, that's what we        10:43:07

22     have Ken Galt for, we can arrange a follow-up call.     10:43:10

23          Q    Well, that's a good clarification.  I         10:43:12

24     didn't mean to include folks that you just had the      10:43:13

25     one-hour meet and greet with.                           10:43:16
```

Page 86

IVANTIS_SS_00172455

```
 1              In terms of major investors and potential      10:43:18
 2       investors that proceeded to the due diligence phase,   10:43:21
 3       can you think of anyone who didn't ask questions       10:43:24
 4       about the Glaukos patents?                             10:43:26
 5           A    Well, I mean, some of this may be             10:43:35
 6       wordsmithing, but they don't ask us directly about     10:43:37
 7       the Glaukos patents.  They ask us for an overview of   10:43:41
 8       the patent landscape, and that's where Ken gives       10:43:44
 9       them overview of our freedom to operate.               10:43:48
10       ████████████████     ████████████████        ██████████
11       ██████    ████████████████    ██████████  ████████  ██████████
12       ██████████   ████████████████  ██████  ████████████   ██████████
13       ████████████                                           10:44:01
14           Q    So I want to ask you specifically about       10:44:02
15       Glaukos, though.                                       10:44:06
16           A    Sure.                                         10:44:06
17           Q    Do you recall any -- can you think of         10:44:07
18       any -- as you sit here now, any major investor or      10:44:10
19       potential investor where you got to the due            10:44:14
20       diligence phase and they didn't have any questions     10:44:16
21       for you specifically about Glaukos patents?            10:44:18
22              MR. SILBERT:  Objection; asked and              10:44:21
23       answered.                                              10:44:25
24              THE WITNESS:  I mean, I've presented to 200     10:44:25
25       investors at least.  I can't, as I sit here, call      10:44:27
```

Page 87

IVANTIS_SS_00172456

Ivantis Sciences, Inc. Deposition of James R. Glaukos



```
 1    out by name anyone who didn't, but I know that all      10:44:32

 2    of them did not ask me specifically about Glaukos       10:44:34

 3    patents.                                                10:44:37

 4    BY MS. GLASSER:                                         10:44:37

 5         Q    In terms of the ones who got to the due       10:44:37

 6    diligence phase, can you think of any who didn't ask    10:44:40

 7    you about the Glaukos patents?                          10:44:43

 8         A    Well, due diligence is kind of a -- it's      10:44:45

 9    a -- it's sort of a -- a loose term.  There are         10:44:46

10    investors who hear a presentation, have a follow-on     10:44:49

11    call, and that's their due diligence.                   10:44:55

12         There are others that will spend three,            10:44:57

13    four weeks diving through documents. ▪▪▪ ▪▪▪▪           ▪▪▪▪▪

14    ▪▪▪▪▪▪▪▪▪▪▪▪ ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪                           ▪▪▪▪▪

15    ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ ▪▪▪▪                               ▪▪▪▪▪

16    ▪▪▪▪▪▪ ▪▪▪▪▪▪▪▪▪▪▪▪▪▪                                   ▪▪▪▪▪

17    ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪                                  ▪▪▪▪▪

18    ▪▪▪▪▪▪ ▪▪▪▪▪▪▪▪▪▪▪▪ ▪▪▪▪ ▪▪▪▪                           ▪▪▪▪▪

19    ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪                                ▪▪▪▪▪

20    ▪▪▪▪▪▪                                                  10:45:22

21         MS. GLASSER:  Marking as Exhibit 202 IVNTS         10:45:35

22    60321.                                                  10:45:42

23         (The document referred to was marked by the

24    Reporter as Deposition Exhibit 202 for

25    identification and is attached hereto.)
```

Page 88

IVANTIS_SS_00172457

```
 1        his actual read-world data for the two products and    04:17:31

 2        compare them?                                          04:17:36

 3               MR. SILBERT:  Objection; asked and              04:17:36

 4        answered.                                              04:17:37

 5               THE WITNESS:  I don't know Dr. Clement          04:17:37

 6        personally.  So I can't answer the question.           04:17:39

 7               MS. GLASSER:  Okay.  Thank you very much.       04:17:41

 8               THE VIDEOGRAPHER:  We are off the record at     04:17:44

 9        4:17 p.m., and this concludes today's testimony        04:17:48

10        given by Dave Van Meter.  The total number of media    04:17:51

11        used was eight and will be retained by Veritext        04:17:54

12        Legal Solutions.                                       04:17:56

13               (Whereupon, at the hour of 4:17 p.m.,

14                the deposition was concluded.)

15

16

17

18

19

20

21

22

23

24

25
```

Page 275

IVANTIS_SS_00172644

```
 1     STATE OF CALIFORNIA     )

 2                             )   ss

 3     COUNTY OF ORANGE        )

 4

 5          I, DAVID VAN METER, declare under the

 6     penalties of perjury of the laws of the United

 7     States that the foregoing is true and correct.

 8          Executed this     day of          ,

 9     2019, at                     , California.

10

11

12

13          _____

14          DAVID VAN METER

15

16

17

18

19

20

21

22

23

24

25

                                        Page 276
```

IVANTIS_SS_00172645

```
 1      STATE OF CALIFORNIA    )

 2                             )  ss

 3      COUNTY OF ORANGE       )

 4              I, LINDA NICKERSON, CSR #8746, in and for

 5      the State of California do hereby certify:

 6              That, prior to being examined, the witness

 7      named in the foregoing deposition was by me duly

 8      sworn to testify the truth, the whole truth, and

 9      nothing but the truth;

10              That said deposition was taken down by me in

11      shorthand at the time and place therein named, and

12      thereafter reduced to typewritten form at my

13      direction, and the same is a true, correct, and

14      complete transcript of the testimony at said

15      proceedings.

16              Before completion of the deposition, review

17      of transcript [ ] was [X] was not requested.  If

18      requested, any changes made by the deponent (and

19      provided to the reporter) during the period allowed

20      are appended hereto.

21              I further certify that I am not interested

22      in the event of the action.

23      WITNESS MY HAND this 13th day of October, 2019.

24

25              LINDA NICKERSON, CSR No. 8746
```

Page 277

IVANTIS_SS_00172646

# EXHIBIT 10

# (Excerpted)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-VAC-SRF |
| | ) | |
| IVANTIS, INC., | ) | **JURY TRIAL DEMANDED** |
| ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC and | ) | |
| ALCON INC. | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' CORRECTED INITIAL INVALIDITY CONTENTIONS**

Pursuant to Paragraph 9 of the Amended Scheduling Order (D.I. 65), Defendants Ivantis, Inc, Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants"), by their undersigned counsel, provide the following initial invalidity contentions to Plaintiff Sight Sciences, Inc. ("Sight") for each Asserted Claim of U.S. Patent Nos. 8,287,482 (the "'482 Patent"); 9,370,443 (the "'443 Patent"); 9,486,361 (the "'361 Patent"); and 10,314,742 (the "'742 Patent") (collectively, the "Asserted Patents").[1]

These contentions and disclosures are preliminary, and Defendants reserve the right to amend or supplement these contentions and disclosures based on fact and expert discovery, after claim terms are construed, and as permitted by the Court's rules and orders. These contentions and disclosures are subject to correction for inadvertent errors or omissions, if any.

---

[1] Plaintiff filed a Second Amended Complaint on August 1, 2022, that added U.S. Patent No. 11,389,328 (the "'328 Patent") to the lawsuit. Per the Amended Scheduling Order, Defendants will supplement their Initial Invalidity Contentions by September 22, 2022, to include their contentions for '328 Patent.

June 26, 2006 priority date. Instead, the claims reciting "support" without the central core language are entitled to a priority date no earlier than the following, which represent the first time the term "support" appeared in claim language without the central core language:

| '482 Patent | January 27, 2010 |
|---|---|
| '443 Patent | N/A[3] |
| '361 Patent | January 27, 2010 (due to its priority claim to the application that became the '482 patent) |
| '742 Patent | June 14, 2016 |

## II.    IDENTIFICATION OF PRIOR ART

Pursuant to Paragraph 9 of the Amended Scheduling Order (D.I. 65), and based on public information and produced documents available to it at this time, Defendants identify the following prior art that Defendants allege anticipate or render obvious each asserted claim.

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 1 | Lynch et al. | 2005/0038334 | Shunt Device and Method for Treating Glaucoma | Feb. 17, 2005 | U.S. | Lynch '334 |

---

[3] Each independent claim originally filed with the application that became the '443 patent included the "wherein the support occupies at least a portion of a central core of Schlemm's canal." *See* Feb. 20, 2011 Amendments to the Claims, cls. 1, 53, 77, 79, 84, 88, 89, 90, 92, and 98.  It was not until January 13, 2015 that the Applicants amended the claims to broaden the "support" term and remove the "occupies at least a portion of a central core of Schlemm's canal" language. This addition was new matter, rendering the claims invalid under 35 U.S.C. § 112 ¶ 1 (pre-AIA)

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 2 | Grieshaber et al. | 2,244,646 | Method and Device to Improve Aqueous Humor Drainage in an Eye | Feb. 15, 1999 | Canada | Grieshaber |
| 3 | Porteous et al. | 2004/0254520 | Coil Implant for Glaucoma Treatment | Dec. 16, 2004 | U.S. | Porteous |
| 4 | Gharib | 2002/0165478 | Bifurcatable Trabecular Shunt for Glaucoma Treatment | Nov. 7, 2002 | U.S. | Gharib |
| 5 | Lynch et al. | 2005/105197 | Indwelling Shunt Device and Methods for Treating Glaucoma | Nov. 10, 2005 | WIPO | Lynch '197 |
| 6 | Neuhann et al. | 6,494,857 | Device for Improving in a Targeted Manner and/or Permanently Ensuring the Ability of the Aqueous Humor to Pass Through the Trabecular Meshwork | Dec. 17, 2002 | U.S. | Neuhann |
| 7 | Stegmann et al. | 2006/066103 | Ophthalmic Implant for Treatment of Glaucoma | June 22, 2006 | WIPO | Stegmann |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 8 | Lynch et al. | 00/64391 | Stent Device and Method for Treating Glaucoma | Nov. 2, 2000 | WIPO | Lynch '391 |
| 9 | Bergheim et al. | 2003/0060752 | Glaucoma Device and Methods Thereof | Mar. 27, 2003 | U.S. | Bergheim |
| 10 | Tu et al. | 6,736,791 | Glaucoma Treatment Device | May 18, 2004 | U.S. | Tu '791 |
| 11 | Tu et al. | 2005/0266047 | Injectable Glaucoma Implants with Multiple Openings | Dec. 1, 2005 | U.S. | Tu '047 |
| 12 | Tu et al. | 02/36052 | Glaucoma Treatment Device | May 10, 2002 | WIPO | Tu '052 |
| 13 | Smedley et al. | 2006/0116626 | Fluid Infusion Methods for Glaucoma Treatment | June 1, 2006 | U.S. | Smedley |
| 14 | Shadduck | 2004/0193262 | Implants for Treating Ocular Hypertension, Methods of Use and Methods of Fabrication | Sept. 30, 2004 | U.S. | Shadduck |
| 15 | Burns et al. | 2004/0147870 | Glaucoma Treatment Kit | July 29, 2004 | U.S. | Burns |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 16 | Hill | 6,533,768 | Device for Glaucoma Treatment and Methods Thereof | Mar. 18, 2003 | U.S. | Hill |
| 17 | Bahler et al. | Am. J. Ophthalmol. 138:988–94 (2004), DOI: 10.1016/j.ajo.2004.07.035 | Trabecular Bypass Stents Decrease Intraocular Pressure in Cultured Human Anterior Segments | July 19, 2004 | U.S. | Bahler |
| 18 | Glaukos | N/a | iStent® | At least as early as July 2004 | U.S. | iStent |
| 19 | Stefansson | Am. J. Ophthamol. 8/9:681-93 (1925) | An Operation for Glaucoma | Sept. 1925 | Canada | Stefansson |
| 20 | Sidoti et al. | Current Opinion in Ophthamology 5:11:85-98 (1994), DOI: 10.1097/00055735-199404000-00013 | Glaucoma Drainage Implants | April 1, 1994 | U.S. | Sidoti |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 21 | Schwartz et al. | Curr. Opin. Ophthamol. 17:181-189 (2006), DOI: 10.1097/01.icu .0000193080.5 5240.7e | Glaucoma Drainage Implants: A Critical Comparison of Types | April 2006 | U.S. | Schwartz |
| 22 | Haffner et al | 2004/0102729 | Devices and methods for Glaucoma Treatment | May 27, 2004 | U.S. | Haffner |
| 23 | Johnson, et al. | J. Glacoma, 10:55-67 (2001). | How Does Nonpenetrating Glaucoma Surgery Work? Aqueous Outflow Resistance and Glaucoma Surgery | Feb. 2001 | U.S. | Johnson |
| 24 | Butany et al. | J. Clin. Pathol., 58:795-804 (2005), DOI: 10.1136/jcp.20 04.024174 | Coronary Artery Stents: Identification and Evaluation | Sept. 2005 | U.S. | Butany |
| 25 | Colombo et al. | J. Am. Coll. Cardiol., 40(6):1021-1033 (2002). | Selection of Coronary Stents | Sept. 2002 | U.S. | Colombo |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 26 | Guerrero et al. | Int. Ophthamol. Clin., 40(1):149-163 (2000), DOI: 10.1097/ 00004397- 200040010- 00015 | Complications of Glaucoma Drainage Implant Surgery | January 2000 | U.S. | Guerrero |
| 27 | Minckler et al. | Cochrane Database of Systematic Reviews, 2:1-56 (2006), DOI: 10.1002/14651 858.CD00491 8.pub2 | Aqueous Shunts for Glaucoma | April 19, 2006 | U.S. | Minckler |
| 28 | Yablonski | J. Glaucoma, 14(2):91-97 | Trabeculotomy with Internal Tube Shunt | April 2005 | U.S. | Yablonski |
| 29 | Zhou et al | J. Glaucoma, 15(5):446-455 | Trabecular Bypass | October 2006 | U.S. | Zhou |
| 30 | Stegmann | 5,360,399 | Method and Apparatus for Maintaining the Normal Intraocular Pressure | November 1, 1994 | U.S. | Stegmann '399 |
| 31 | Stegmann | 5,486,165 | Method and Appliance for Maintaining the Natural Intraocular Pressure | January 23, 1996 | U.S. | Stegmann '165 |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 32 | Matthias et al. | J. Cataract Refract Surg, 26:1367-1373 (2000), DOI: https://doi.org/ 10.1016/S0886 - 3350(00)0044 9-1 | Viscocanalosto my For Primary Open-Angle Glaucoma: The Gross Pankow Experience | Sept 2000 | U.S. | Matthias |
| 33 | Lynch et al. | 2005/0090807 | Shunt Device and Method for Treating Glaucoma | April 28, 2005 | U.S. | Lynch '807 |

Defendants' investigation is ongoing, and Defendants reserve the right to identify new or additional references as their investigation continues. For example, Defendants expect that this disclosure may be amended or supplemented based on additional prior art identified during discovery of which Defendants were not aware at the time of these contentions.

       1.     Ivantis Prior Art

Given that the Asserted Claims of the Asserted Patents are not entitled to the June 26, 2006 priority date for the reasons explained above in Section I, the below references and products qualify as prior art. Moreover, to the extent Defendants infringe any of the Asserted Claims, the following Ivantis references or product either anticipate or render obvious each of the Asserted Claims.

       a.     Ivantis §§ 102(a), (b) Prior Art References

requires "the support does not substantially interfere with transmural flow *across* Schlemm's canal." Nothing in the specification explains how "into and out of" differs from "across." Thus, Claim 57 contains no additional limitations that Claim 1 does not already recite, and is invalid. *See Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006)

Similarly, claim 15 of the '482 patent is invalid for failing to comply with the requirements of 35 U.S.C. § 112 ¶ 4. Claim 15, which depends upon claim 1, recites that "the support has a unitary structure." If "has" is interpreted in its ordinary sense to mean that the support must have at least one component that has a unitary structure, but it may have other separate or connectable components, then "unitary structure" does not limit the support.

## VIII.   DOCUMENT PRODUCTION

Copies of the prior art referenced in Defendants' Corrected Initial Invalidity Contentions are being produced with production numbers: IVANTIS_SS_00001298 - IVANTIS_SS_00003153.

Dated: September 2, 2022

OF COUNSEL:
Gregg LoCascio
Justin Bova
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Ryan Kane
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

/s/ Kat Li
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Kat Li, hereby certify that on September 2, 2022, this document was served on the

persons listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Melanie K. Sharp | Michelle S. Rhyu, J.D., Ph.D. |
| James L. Higgins | David N. Murdter |
| Taylor E. Hallowell | Deepa Kannappan |
| YOUNG, CONAWAY, STARGATT & TAYLOR LLP | COOLEY LLP |
| Rodney Square | 3175 Hanover Street |
| 1000 North King Street | Palo Alto, CA 94305 |
| Wilmington, DE 19801 | (650) 843-5000 |
| (302) 571-6600 | rhyums@cooley.com |
| msharp@ycst.com | dmurdter@cooley.com |
| jhiggins@ycst.com | dkannappan@cooley.com |
| thallowell@ycst.com | |

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

_/s/ Kat Li_
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue

OF COUNSEL:               Austin, TX 78701
Gregg LoCascio            (512) 678-9100
Justin Bova
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.     John W. Shaw (No. 3362)
Washington, DC 20004               Andrew E. Russell (No. 5382)
(202) 389-5000                     Nathan Hoeschen (No. 6232)
                                   SHAW KELLER LLP
Ryan Kane                          I.M. Pei Building
KIRKLAND & ELLIS LLP               1105 North Market Street, 12th Floor
601 Lexington Avenue               Wilmington, DE 19801
New York, NY 10022                 (302) 298-0700
(212) 446-4800                     jshaw@shawkeller.com
                                   nhoeschen@shawkeller.com
Dated: September 2, 2022
                                   _Attorneys for Defendants_

# EXHIBIT 11

2020 WL 10501850
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

GLAUKOS CORPORATION

v.

IVANTIS, INC.

Case No. SACV 18-620 JVS (JDEx)
|
Filed 06/17/2020

**Attorneys and Law Firms**

Lisa Sharrock Glasser, David C. McPhie, Morgan Chu, Stephen M. Payne, Irell and Manella LLP, Newport Beach, CA, for Glaukos Corporation.

Ajay S. Krishnan, Christina Lee, David J. Silbert, Kristen Elizabeth Lovin, Laurie Carr Mims, Leo L. Lam, Robert Adam Lauridsen, Robert A. Van Nest, Jr., Sophie A. Hood, Tara Melody Rangchi, Keker Van Nest and Peters LLP, San Francisco, CA, for Ivantis, Inc.

**Proceedings: [IN CHAMBERS] Order Regarding Motion for Adverse Inference Instruction and Exclusion**

James V. Selna, U.S. District Court Judge

**\*1** Plaintiff and Counter-Defendant Glaukos Corporation ("Glaukos") moved for an adverse inference instruction and exclusion regarding Defendant Ivantis, Inc.'s ("Ivantis") alleged spoliation of evidence. Mot., Dkt. No. 413 (sealed version at Dkt. No. 429-7). Ivantis opposed. Opp'n, Dkt. No. 495 (sealed version at Dkt. No. 509). Glaukos replied. Reply, Dkt. No. 526 (sealed version at Dkt. No. 541).

For the reasons stated in this Order, the Court **GRANTS** Glaukos's motion. [1]

# I. BACKGROUND

Glaukos filed this action for patent infringement against Ivantis on April 14, 2018. Complaint, Docket No. 1. Glaukos asserts two patents: (1) U.S. Patent No. 6,626,858 ("the '858 patent"), and (2) U.S. Patent No. 9,827,143 ("the '143 patent") (collectively, the "Asserted Patents"). Id., Exs. A, B. The

Asserted Patents disclose inventions relating to the treatment of glaucoma. See id. Glaukos alleged "[t]he infringing Ivantis product is a medical device known as the Hydrus Microstent ('Hydrus')." Id. ¶ 1. Glaukos further alleged "[o]n information and belief, Ivantis currently manufactures the Hydrus at its facility in Irvine, California, for use outside of the safe harbor provided under 35 U.S.C. § 271(e)(1), including for commercial use in international markets." Id. ¶ 2.

Ivantis maintained a document policy that automatically deletes emails after 12 months; it instituted this policy in 2013. Declaration of Lisa Glasser ("Glasser Decl."), Exs. 49, 61; Declaration of David Van Meter ("Van Meter Decl.") ¶ 3 Ivantis claims it instituted its email policy to alleviate burdens on its IT systems. Van Meter Decl. ¶¶ 2-4. It is impossible for Ivantis to recover any emails that were deleted. Glasser Decl, Ex. 14. Ivantis made no effort to preserve documents related to Glaukos before Glaukos filed suit in April 2018. Glasser Decl., Exs. 2, 10, 15. Ivantis instituted a litigation hold on April 19, 2018. Van Meter Decl. ¶ 5. Thus, emails as of April 19, 2017 were not subject to the mandatory deletion policy. Id.

# II. LEGAL STANDARD

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 649 (9th Cir. 2009). A party that has despoiled evidence can be sanctioned by a district court under two sources of authority: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery." Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (internal quotations and citations omitted).

The obligation to preserve relevant evidence attaches when litigation is "pending or reasonably foreseeable." Sunrise Corp. v. Bountiful Biotech Corp., 2010 WL 4590766, at *29 (C.D. Cal. Oct. 8, 2010) (citing Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)); see also United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no spoliation because the defendant was not on notice of a "future, specific" lawsuit). Courts in the Ninth Circuit generally agree that this duty is triggered "[a]s soon as a potential claim is identified." Apple, Inc. v. Samsung Elecs Co., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (citations

omitted). This duty to preserve extends to evidence that parties knew or should have known was relevant or may be relevant to future litigation. Kitsap, 314 F.3d at 1001; Sunrider Corp., 2010 WL 4590766, at *29; see also Wm. T. Thompson v. Gen. Nutrition Corp., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984.) ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information."). Notably, a finding of bad faith is not required to justify a spoliation sanction. Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).

**\*2** "The court has broad discretion to fashion, on a case-by-case basis, an appropriate sanction for spoliation." Cyntegra, Inc. v. Idexx Laboratories, Inc., 2007 WL 5193736, at *2, 2007 U.S. Dist. LEXIS 97417, at *4 (C.D. Cal. Sept. 21, 2007) (citing Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.3d 363, 367 (9th Cir. 1992). District courts may employ a variety of different sanctions in response to the spoliation of evidence, including monetary sanctions, evidentiary sanctions, civil contempt sanctions, and default judgment. See In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). However, the Court's "inherent powers must be exercised with restraint and discretion." Advantacare Health Partners v. Access IV, 2004 WL 1837997, at *4, 2004 U.S. Dist. LEXIS 16835, at *12 (N.D. Cal. Aug. 17, 2004) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). When selecting the appropriate sanction, the Court generally considers: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." Apple, 888 F. Supp. 2d at 992 (citing Nursing Home Pension Fund v. Oracle Corp., 254 F.R.D. 559, 563 (N.D. Cal. 2008). Spoliation sanctions should be "commensurate to the spoliating party's motive or degree of fault in destroying the evidence." Cottle-Banks v. Cox Comm'ns, Inc., 2013 WL 2244333, at *13 (S.D. Cal. May 21, 2013) (quoting Apple, 888 F. Supp. 2d at 992-93). Therefore, the Court may deny a request for harsh sanctions when the "degree of fault and level of prejudice are insufficient to justify the imposition of the sanctions." Apple, 888 F. Supp. 2d at 993.

Rule 37(e) of the Federal Rules of Civil Procedure was amended to establish the findings necessary to support

certain curative measures for failure to preserve electronically stored information. This amendment "forecloses reliance on inherent authority or state law to determine when certain measures should be used" to address spoliation of electronically stored information. See Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment (emphasis added).

Rule 37(e) recites the following:

e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the *intent* to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e) (emphasis added).

### III. DISCUSSION

**A. Finding of Spoliation**

In order to establish spoliation, Glaukos must demonstrate that Ivantis destroyed evidence that was potentially relevant to the reasonably foreseeable litigation. See Housing Rights Center v. Sterling, 2005 WL 3320739, at *3, 2005 U.S. Dist. LEXIS 44769, at *10 (C.D. Cal. Mar. 3, 2005) ("[A] litigant is under no duty to keep or retain every document in its possession ... it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.") (citing Zubulake, 220 F.R.D. at 217). The duty to

preserve relevant documents attaches when future litigation is "probable," which means "more than a possibility." Realnetworks, Inc. v. DVD Copy Control Ass'n, 264 F.R.D. 517, 524 (N.D.Cal. 2009). The critical inquiry is whether Ivantis had "some notice that the documents were potentially relevant." Cyntegra, 2007 WL 5193736, at *2, 2007 U.S. Dist. LEXIS 97417, at *8 (quoting Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991)) (emphasis added).

 *3  Glaukos moves for an adverse inference jury instruction and preclusion sanctions based on Ivantis's failure to preserve emails when litigation allegedly became reasonably foreseeable. See generally, Mot. Glaukos claims that Ivantis's failure to suspend its email policy, which deleted all company emails annually, resulted in spoliation of evidence. Id. According to Glaukos, there are four reasons why litigation was reasonably foreseeable before Ivantis suspended its email policy.

First, in 2009, one of the two inventors of the Asserted Patents, Dr. Reay Brown, told Ivantis that he was sure the Hydrus "must infringe," and then followed up with an email stating that the "essential features" of the device "are depicted" in the parent patent to the Asserted Patents and that the patent "perhaps anticipat[e] some of the features in your device." Glasser Decl. Exs. 3, 11. Dr. Brown retained this email, which is how Glaukos obtained it; Ivantis did not produce it. Mot. at 5. Ivantis's CEO responded to Dr. Brown that Ivantis was "certain [its] IP does not infringe." Declaration of Christina Lee ("Lee Decl."), Ex. G.

Second, in 2013, Ivantis hired outside patent litigation counsel to conduct diligence related to Glaukos's patents. Glasser Decl., Exs. 10, 40. Additionally, Ivantis asserts the work product privilege over documents dating back to at least September 2017; Glaukos argues this must mean these documents were prepared in anticipation of litigation regarding the Hydrus. Mot. at 6; Glasser Decl., Exs. 14, 40, 54.

Third, multiple investors considered investing in Ivantis or acquiring it but declined to do so based on concerns about patent litigation by Glaukos. Mot. at 6. In 2017, one investor stated that Glaukos's patents presented "a big issue," while another stated the same year that it would not invest based on "IP overhang." Glasser Decl., Exs. 42, 46, 47. In May 2017, Ivantis's CEO circulated a report from an industry analyst, who stated that he expected that Glaukos would initiate patent litigation in 2018. Mot. at 6-7, Glasser Decl., Ex. 44. Another

industry analyst report, from November 2017, stated that Glaukos was expected to initiate legal proceedings against Ivantis. Glasser Decl., Ex. 43.

Fourth, Ivantis began preparing *inter partes* review petitions to challenge Glaukos's Asserted Patents by no later than March 2018, a month before Glaukos filed its Complaint. Glasser Decl., Exs. 15, 45.

Ivantis generally argues that it openly developed the Hydrus and therefore that Glaukos was aware of the product. Opp'n at 3-4; Van Meter Decl. ¶¶ 6-9. Glaukos, according to Ivantis, "never undertook any actions to put Ivantis on notice ... whether through express notice to Ivantis or any other means, despite being fully aware of Ivantis's development of the Hydrus." Opp'n at 11; Van Meter Decl. ¶ 10. [2] The Court is not convinced that Glaukos's choice not to explicitly put Ivantis on notice of litigation excuses Ivantis's obligation to preserve emails relevant to litigation, at the point that it was reasonably foreseeable. See Thompson v. U.S. Dep't of Housing & Urban Development, 219 F.R.D. 93, 100 (D. Md. 2003) ("While a litigant certainly may request that an adversary agree to preserve electronic records ... it is not required, and a failure to do so does not vitiate the independent obligation of an adverse party to preserve such information."); Apple, 881 F. Supp. 2d at 1136 (plaintiffs' "failure" to send preservation letter " 'does not vitiate the independent obligation of an adverse party to preserve such information' if the adverse party knows or should know of impending litigation"); Napster, 462 F. Supp. 2d at 1069 (duty to preserve evidence arose over a year before receipt of preservation letter where defendant "should reasonably have believed that litigation against it was probable.").

 *4  Additionally, Ivantis also argues that litigation "was at most a possibility" until early 2018, and that it was not on notice about *this* litigation prior to Glaukos filing suit. Opp'n at 10; see Oracle Am., Inc. v. Hewlett Packard Enter. Co., 328 F.R.D. 543, 551 (N.D. Cal. 2018). For example, Ivantis argues that its IPR filings did not involve litigation, and neither did its retention of outside counsel to perform patent diligence. Opp'n at 11-12. The work product entries in Ivantis's privilege log, it claims, "are not related to this litigation (or the potential for it)," although Ivantis does not point to other litigation that would justify asserting the work product privilege. Id. at 12. Finally, the "apprehension from the investing community regarding a risk of litigation," according to Ivantis, does not amount to a *probability* of litigation. See Realnetworks, 264

*Glaukos Corporation v. Ivantis, Inc.*, Slip Copy (2020)

F.R.D. at 526 ("[a] general concern over litigation does not trigger a duty to preserve evidence.").

The Court has reviewed the relevant sequence of events and concludes that actions taken by Ivantis, and various communications made by third parties to Ivantis, illustrate not only that a reasonable party in Ivantis's position would have reasonably foreseen this litigation, but that Ivantis *actually* foresaw this litigation, at least by the beginning of 2017, if not earlier. See Waymo LLC v. Uber Techs., 2018 WL 646701, at *15 (N.D. Cal. Jan. 30, 2018). Ivantis's retention of outside counsel to perform due diligence, and its assertion of the work product privilege, reveal that it apprehended it would be sued. Id. at *15 (noting that the defendant "consulted and retained [ ] litigation counsel to obtain legal advice regarding potential liability exposure," retained a firm to perform "a due diligence investigation," and then asserted privilege over such activities). The communications by Dr. Brown, multiple potential investors, and industry analysts buttress this conclusion. See, e.g., Surowiec v. Capital Title Agency, Inc., 790 F. Supp. 2d 997, 1005–06 (D. Ariz. 2011) (letter from third party warning that plaintiff might sue sufficient to create a reasonable apprehension of suit); see also Metrokan, Inc. v. Built NY, Inc., 2008 WL 4185865, at *5 (S.D.N.Y. Sept. 3, 2008) (email exchange between bag designer and principal of defendant that bags were "confusingly similar" created anticipation of trademark suit). Finally, its preparation of the IPR filings also illuminates an apprehension of the likelihood of litigation.

Therefore, even if Ivantis's policy supported the annual, automatic deletion of emails, Ivantis was required to cease deleting emails once the duty to preserve attached. Since Ivantis acknowledges that it did not cease its email policy, the Court finds that the evidence supports a finding of spoliation and that the Court may impose sanctions. See Zubulake, 220 F.R.D. at 220 ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent.").

### 2. Appropriate Sanction

The Court next considers what sanction(s) should be imposed in light of Ivantis's spoliation. Glaukos requests two remedies: (1) an adverse inference instruction, and (2) a sanction prohibiting Ivantis from referring to any pre-suit investigation of the Asserted Patents as a basis for believing that it did not infringe or that the patents were invalid. Mot. at 18-19. [3]

First, the Court concludes that Rule 37(e)—a rule that Glaukos identifies in its motion for sanctions—applies to the relief sought. Since the Advisory Committee Notes to the 2015 amendment of Rule 37(e) make clear that the new rule "forecloses reliance on inherent authority or state law to determine when certain measures should be used" to address spoliation of electronically stored information, the Court is unable to exercise its inherent power to sanction the alleged conduct by Ivantis. Rule 37(e) was amended to promote uniformity because the previous rule caused circuits to "establish[ ] significantly different standards for imposing sanctions or curative measures on parties who fail to preserve electronically stored information." Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment. Thus, even if the Court were not foreclosed from exercising its inherent power to sanction in this context, the Court still would not do so because the remedies under Fed. R. Civ. P. 37(e) are directly applicable to the alleged conduct at issue.

**\*5** An adverse inference is a sanction carried out as an instruction to the trier of fact that "evidence made unavailable by a party was unfavorable to that party." Lewis, 261 F.R.D. at 521 (quoting Nursing Home Pension Fund v. Oracle Corp., 254 F.R.D. 559, 563 (N.D.Cal. 2008)). In order for the Court to impose an adverse inference Glaukos must establish that: "(1) the party having control over the evidence had an obligation to preserve it; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense." Id. (quoting Residential Fund'g Corp. v. De–George Fin. Corp., 306 F.3d 99, 107 (2d Cir.2002)). The "culpable state of mind" includes negligence. Id.

Before the Court may impose sanctions, Glaukos must demonstrate that it suffered prejudice from Ivantis's failure to suspend its email deletion policy. Glaukos argues that it suffered prejudice because was unable to review emails from key custodians. Mot. At 14. For example, the earliest email produced from Dave Van Meter, the CEO, was from October 2016. Id. As a result, Glaukos contends that it has been deprived of evidence concerning Ivantis's copying and willful infringement. Id. at 15. Ivantis did not produce emails concerning the design of the Hydrus; not did it produce communications made in connection with Dr. Brown's warning about infringement. Id. Glaukos also points out that the deleted emails would likely include those concerning Ivantis's investigation of Glaukos's patents as of 2009. Reply at 13.

Ivantis suggests that Glaukos has not suffered prejudice because all emails from April 2017 onward were retained and preserved. Van Meter Decl. ¶¶ 4–5; Opp'n at 9-10. And Ivantis contends that Glaukos only offers speculation about what information it was not able to obtain, and that it was able to obtain relevant information and documents from other sources. Id. at 17-18. Of course, a measure of speculation is somewhat inherent in this activity, as Glaukos reasonably cannot identify every specific deleted document that would be helpful to its case. The Court is satisfied with the categories of information Glaukos identifies that are covered by the relevant time period of the email policy.

The Court finds that Glaukos suffered prejudice from being deprived of emails that likely would have been probative to the claims at issue in this action. See Apple, 881 F. Supp. 2d at 150 (finding prejudice due to deletion of emails from "key custodians"). "Prejudice may appear in many forms, such as plaintiffs being unable to fully respond to the secondary evidence or being required to go to great lengths in discovery to fill in the gaps in the evidence." 4DD Holdings, LLC v. United States, 143 Fed. Cl. 118, 132 (Fed. Cl. 2019).

For the Court to issue an adverse inference instruction under Rule 37(e)(2), Glaukos must also establish that Ivantis acted with the intent to deprive Glaukos of evidence. Ivantis argues that it did not act with the requisite culpable state of mind or the intent to expunge evidence because it adopted its policy five years before Glaukos filed suit, for the entirely innocent reason of making its IT system workable. Opp'n at 13-14; see Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1322 (Fed. Cir. 2011) ("most document retention policies are adopted with benign business purposes.").

Glaukos argues that "the circumstances of Ivantis's deletion of relevant documents demonstrate that Ivantis acted with intent to deprive Glaukos of the use of such information in this litigation." Mot. at 16-17. Ivantis instituted its email deletion policy in 2013, the same year it retained patent litigation counsel. Glaukos contends that subsequent events – Ivantis performing diligence regarding Glaukos's patents, being repudiated by investors based on litigation concerns, receiving reports about the inevitability of litigation, and preparing IPR filings – "show more than just negligence, but an intentional decision to continue deleting documents once litigation was not only anticipated but actually underway." Mot. at 17.

**\*6** The Court agrees and finds that Glaukos's proposed jury instruction [4] and preclusion sanction are appropriate, given that Ivantis did not suspend its automatic email deletion policy even when litigation was reasonably foreseeable. The Court may infer an intent to deprive Glaukos of the relevant emails from Ivantis's actions. See, e.g., Moody v. CSX Transportation, Inc., 271 F. Supp. 3d 410, 431-32 (W.D.N.Y. 2017). The emails would have been probative to the claims at issue in this action, and as a result, Glaukos is forced to go to trial lacking this evidence. The amount of discovery Ivantis and Glaukos produced is irrelevant to whether Glaukos suffered prejudice; contrary to Ivantis's argument (see Opp'n at 16) what matters is the relevant time period (2009 to early 2017) during which Ivantis annually deleted emails. The preclusion sanction is appropriate because Glaukos cannot counter Ivantis's references to its pre-suit investigation of the Asserted Patents as a basis for believing it did not infringe. [5]

Therefore, the Court **GRANTS** Glaukos's motion.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Glaukos's motion.

The Court asks the parties to meet and confer and notify the Court which parts of the order should be redacted within seven days.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 10501850

**Footnotes**

1      The Court has reviewed Ivantis's request for a hearing and finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15.

2      Ivantis also argues that the Glaukos's August 2016 litigation hold as to Ivantis is relevant; the Court does not find that this date is relevant as to when *Ivantis* was obligated to preserve emails.

3      Glaukos no longer asks the Court to exclude evidence relating to Ivantis's hypothetical negotiation theory. Reply at 18 n.7.

4      This is the text of the instruction:

     Ivantis intentionally deleted and failed to preserve relevant evidence for this litigation. Ivantis anticipated patent infringement litigation from Glaukos, but nonetheless adopted and maintained a policy that deleted all company email after 12 months, resulting in the destruction of virtually all emails at Ivantis that pre-date April 2017, including emails specifically relating to the Glaukos Asserted Patents. You may presume from that destruction that the destroyed evidence was favorable to Glaukos and unfavorable to Ivantis, including on the issue of whether Ivantis willfully infringed the Asserted Patents.

5      To the extent that pre-suit investigation evidence was work product, Ivantis and/or its counsel would necessarily have to waive the privilege to present it at trial.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 12

835 Fed.Appx. 560
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. Fed. Cir. Rule 32.1.
United States Court of Appeals, Federal Circuit.

IN RE: IVANTIS, INC., Petitioner

2020-147
|
November 03, 2020

**Synopsis**
**Background:** Owner of patents for treating glaucoma
brought infringement action against device manufacturer.
The United States District Court for the Central District of
California, James V. Selna, J., granted an adverse-inference
instruction. Manufacturer filed petition for writ of mandamus,
asking Court of Appeals to vacate District Court's order.

The Court of Appeals, Wallach, Circuit Judge, held that
manufacturer was not entitled to writ of mandamus.

Petition denied.

**Procedural Posture(s):** On Appeal; Petition for Writ of
Mandamus.

On Petition for Writ of Mandamus to the United States
District Court for the Central District of California in No.
8:18-cv-00620-JVS-JDE, Judge James V. Selna.

**Attorneys and Law Firms**

Robert A. Van Nest, Esq., Steven A. Hirsch, Esq., Attorney,
Laurie Carr Mims, AT, Eduardo E. Santacana, AT, David
Silbert, Keker, Van Nest & Peters LLP, San Francisco,
CA, Ajay S. Krishnan, Esq., Keker & Van Nest, LLP, San
Francisco, CA, for Petitioner

Lisa Glasser, Attorney, Morgan Chu, Esq., David C. McPhie,
Esq., Attorney, Stephen Payne, Irell & Manella LLP, Newport
Beach, CA, for Respondent

Before Dyk, Wallach, and Taranto, Circuit Judges.

**ON PETITION**

Wallach, Circuit Judge.

**ORDER**

Ivantis, Inc. petitions for a writ of mandamus asking this
court to vacate the United States District Court for the Central
District of California's order granting an adverse-inference
instruction and to bar the district court from issuing any
adverse-inference instruction or alternatively to require the
district court to defer consideration of any adverse-inference
instruction until the end of trial. Glaukos Corporation opposes
the petition. Ivantis replies.

In April 2018, Glaukos filed the underlying complaint,
alleging that Ivantis's Hydrus Microstent device used for
treating glaucoma infringed two of Glaukos's patents. During
discovery, Ivantis informed Glaukos that it was unable to
produce emails prior to April 19, 2017, citing its email
retention policy of deleting emails **\*561** after 12 months. [*]
Glaukos then moved for an adverse jury instruction.

The district court granted Glaukos's motion, finding that
Ivantis had destroyed evidence despite "Ivantis *actually*
fore[seeing] this litigation, at least by the beginning of 2017,
if not earlier." Appx7. After concluding that Ivantis intended
to deprive Glaukos of the emails in litigation in maintaining a
policy that deleted emails after 12 months despite anticipating
the litigation and concluding Glaukos was prejudiced in
being deprived of potential evidence concerning copying and
willfulness, the court ordered that the jury could presume the
destroyed evidence was favorable to Glaukos and unfavorable
to Ivantis.

A party seeking a writ bears the heavy burden of
demonstrating to the court that it has no "adequate alternative"
means to obtain the desired relief, *Mallard v. U.S. Dist. Court
for the S. Dist. of Iowa*, 490 U.S. 296, 309, 109 S.Ct. 1814,
104 L.Ed.2d 318 (1989), and that the right to issuance of the
writ is "clear and indisputable," *Will v. Calvert Fire Ins.*, 437
U.S. 655, 666, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) (internal
quotation marks omitted). And even when those requirements
are met, the court must still be satisfied that the issuance of the
writ is appropriate under the circumstances. *Cheney v. U.S.
Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 381, 124
S.Ct. 2576, 159 L.Ed.2d 459 (2004).

In re Ivantis, Inc., 835 Fed.Appx. 560 (2020)

It is generally inappropriate to review such discovery orders by mandamus because a post-judgment appeal is an adequate means to correct an erroneous adverse-inference instruction. *See Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms., Inc., USA,* 748 F.3d 1354, 1361–63 (Fed. Cir. 2014); *Linde v. Arab Bank, PLC,* 706 F.3d 92, 119 (2d Cir. 2013). Ivantis suggests that it may not be able to survive such an appeal because, if Glaukos is successful in obtaining the judgment it seeks, Ivantis could owe more money than it is worth. But we are not prepared to depart from the usual practice of waiting until after final judgment to review such orders based on such speculation.

While immediate intervention by way of mandamus may be appropriate in certain exceptional circumstances to review novel important legal issues, *see In re Seagate Tech., LLC,* 497 F.3d 1360, 1367 (Fed. Cir. 2007) (en banc), abrogated on other grounds by *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* — U.S. ——, 136 S. Ct. 1923, 195 L.Ed.2d 278 (2016), we cannot say that such circumstances have been presented here. Ivantis's petition challenges the assessment that it "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). That assessment was based on the specific sequence of events leading up to the litigation, including: (1) one of the inventors informing Ivantis in 2009 that he was sure the accused product infringed; (2) Ivantis

instituting its retention policy the same year it retained patent litigation counsel; (3) Ivantis's CEO circulating a report in 2017 from an industry analyst who stated the expectation Glaukos would sue for patent infringement in 2018; and (4) Ivantis preparing a petition for *inter partes* review at least a month before the complaint. We discern no obvious basic, undecided legal issue underlying the district court's ruling, nor can we say that it was so patently unreasonable as to warrant mandamus. As to Ivantis's request to order the court to defer any intent ruling until hearing trial **\*562** testimony, the district court denied that request as procedurally improper under its local rules for not raising it until requesting reconsideration, and the court did not clearly and indisputably err in denying a request that it was not properly asked to consider.

Accordingly,

IT IS ORDERED THAT:

The petition for a writ of mandamus is denied.

FOR THE COURT

**All Citations**

835 Fed.Appx. 560

---

## Footnotes

\*       Ivantis instituted a litigation hold on April 19, 2018, suspending the deletion of one-year old emails.

---

**End of Document**                                           © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 13



**(Excerpted)**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | ███████████████████ |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF SIGHT SCIENCES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-6)

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as all applicable local rules and this Court's Orders, Defendants Ivantis, Inc. ("Ivantis"), Alcon Research, LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants") hereby make the following objections and responses to the First Set of Interrogatories (Nos. 1–6), which were served by Plaintiff Sight Sciences, Inc. ("Sight") on April 18, 2022 ("Interrogatories").[1]

### OBJECTIONS TO SIGHT'S DEFINITIONS AND INSTRUCTIONS

1.      Defendants object to Sight's Instructions and Definitions to the extent they purport to impose upon Defendants discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

---

[1]   Alcon Research, LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Alcon Defendants") agreed to respond to Sight Sciences' First Set of Interrogatories by October 17, 2022.

Defendants, or believed to be employed by Defendants, are to be contacted solely through Kirkland and Ellis LLP.

9.     Defendants' discovery and investigation in connection with this case are ongoing. As a result, Defendants' responses are provided without waiver of Defendants' right to: (a) object to other interrogatories directed to the subject matter of these interrogatories and responses; (b) make additional or supplementary objections to these interrogatories; or (c) revise, correct, supplement, or clarify the contents of these responses.

10.     Unless otherwise specified, the Alcon Defendants adopt and incorporate by reference Ivantis's general and specific objections to each Interrogatory.

## OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Please describe in detail Your first awareness of each of the Patents-in-Suit and of the patent application to which the Patents-in-Suit claim priority (11/475,523), which was published as U.S. Publ. No. 2007/0298068. A complete response should include the date of Your first awareness, the identities of Your employees, officers or directors who became aware, and the circumstances that led to Your awareness of each of the Patents-in-Suit and of the patent application to which the Patents-in-Suit claim priority (11/475,523), which was published as U.S. Publ. No. 2007/0298068.

### RESPONSE TO INTERROGATORY NO. 1:

Ivantis objects to this Interrogatory as seeking information protected from discovery by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity, including attorney-client communications and attorney work product. Ivantis will not provide such information. Ivantis objects to this Interrogatory as vague and ambiguous at least because the terms "awareness" and "circumstances" are unclear and undefined. Ivantis further objects to this Interrogatory as overbroad, unduly burdensome, and/or not proportional to the needs of the case because it seeks information irrelevant to the claims or defenses asserted in this proceeding,

specifically information regarding awareness of patent application No. 11/475,523 and U.S. Publ. No. 2007/0298068. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe *a patent*, the patent must exist and one must have knowledge of it. . . . Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents."). Ivantis further objects to this Interrogatory as overbroad, unduly burdensome, and/or not proportional to the needs of the case because this Interrogatory seeks information regarding Ivantis' employees and officers or directors without limitation.

Without waiving any applicable privileges or immunities, Ivantis responds as follows:

Based on Ivantis's investigation to date, Ivantis became aware of the existence of U.S. Patent No. 8,287,482 on or around November 2, 2016.

Based on Ivantis's investigation to date, Ivantis became aware of U.S. Patent No. 9,370,443 on or around August 24, 2016.

Based on Ivantis's investigation to date, Ivantis was not aware of U.S. Patent Nos. 9,486,361; or 10,314,742 prior to the filing of the Complaint in this action.

Based on Ivantis's investigation to date, Ivantis became aware of U.S. Publ. No. 2007/0298068 on or around December 18, 2008.

Ivantis's investigation is ongoing and Ivantis reserves its right to supplement, revise, or amend this response as discovery and Ivantis's investigation in this Action proceeds.

**10/17/2022 SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Without waiving any applicable privileges or immunities, Defendants respond as follows:

Based on Defendants' investigation to date, the Alcon Defendants became aware of the existence of U.S. Patent Nos. 8,287,482; 9,370,443; 9,486,361; and 10,314,742 on or after the filing of the Complaint in this action.

Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions

Based on Defendants' investigation to date, the Alcon Defendants became aware of U.S. Publ. No. 2007/0298068 on or after the filing of the Complaint in this action.

Based on Defendants' investigation to date, Defendants became aware on or after July 15, 2022, that U.S. Patent No. 11,389,328 would issue on July 19, 2022.

Defendants' investigation is ongoing, and Defendants reserve the right to supplement, revise, or amend this response as discovery and Defendants' investigation in This Action proceeds.

**4/10/2023 SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Without waiving any applicable privileges or immunities, Defendants respond as follows:

Based on Defendants' investigation to date, Defendants became aware of the existence of the U.S. Patent No. 8,287,482 on or around November 2, 2016.  The following employees, officers, or directors were aware of the existence of U.S. Patent No. 8,287,482 on or around that date: Ken Galt and Dave Van Meter. ████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

Based on Defendants' investigation to date, Defendants became aware of the existence of the U.S. Patent No. 9,370,443 on or around August 24, 2016.  ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

Based on Defendants' investigation to date, Defendants became aware of the existence of the U.S. Patent No. 9,486,361 on or around July 26, 2019.  The following employees, officers, or directors were aware of the existence of U.S. Patent No. 9,486,361 on or around that date: Ken Galt. ████████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

Based on Defendants' investigation to date, Defendants became aware of the existence of the U.S. Patent No. 10,314,742 on or around September 2, 2020.  The following employees, officers, or directors were aware of the existence of U.S. Patent No. 10,314,742 on or around that date: Jason Finch and Matt Rein. ████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

Based on Defendants' investigation to date, Defendants became aware of the existence of U.S. Patent No. 11,389,328 on or around July 19, 2022.  The following employees, officers, or directors were aware of the existence of U.S. Patent No. 11,389,328 on or around that date: Christopher Cook, Christine Bohmann, Jeffrey Prokop, Brannon Latimer, and Rebecca Burt. ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

Based on Defendants' investigation to date, Defendants became aware of U.S. Publ. No. 2007/0298068 on or around December 18, 2008.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendants identify the following documents from which information responsive to this Interrogatory may be ascertained: SGHT0029569.

Defendants' investigation is ongoing, and Defendants reserve the right to supplement, revise, or amend this response as discovery and Defendants' investigation in This Action proceeds.

**5/30/2023 SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

████████████████████████████████████████

Without waiving any applicable privileges or immunities, Defendants respond as follows:

Based on Defendants' investigation to date, Defendants became aware of the existence of the U.S. Patent No. 8,287,482 on or around November 2, 2016.  The following employees, officers, or directors were aware of the existence of U.S. Patent No. 8,287,482 on or around that date: Ken Galt and Dave Van Meter. ████████████████████████

████████████████████████████████████████

████████████████████████████████

Based on Defendants' investigation to date, Defendants became aware of the existence of the U.S. Patent No. 9,370,443 on or around August 24, 2016. ████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

Based on Defendants' investigation to date, Defendants became aware of the existence of the U.S. Patent No. 9,486,361 on or around July 26, 2019.  The following employees, officers, or directors were aware of the existence of U.S. Patent No. 9,486,361 on or around that date: Ken Galt. ████████████████████████████████

████████████████████████████████████████

████████████████████

Based on Defendants' investigation to date, Defendants became aware of the existence of the U.S. Patent No. 10,314,742 on or around September 2, 2020.  The following employees, officers, or directors were aware of the existence of U.S. Patent No. 10,314,742 on or around that date: Jason Finch and Matt Rein. ████████████████████████

██████████████████████

Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions

Based on Defendants' investigation to date, Defendants became aware of the existence of U.S. Patent No. 11,389,328 on or around July 19, 2022.  The following employees, officers, or directors were aware of the existence of U.S. Patent No. 11,389,328 on or around that date: Christopher Cook, Christine Bohmann, Jeffrey Prokop, Brannon Latimer, and Rebecca Burt.

Based on Defendants' investigation to date, Defendants became aware of U.S. Publ. No. 2007/0298068 on or around March 5, 2008.  The following employees, officers, or directors were aware of the existence of U.S. Publ. No. 2007/0298068 on or around that date: Dave Van Meter, Tom Hektner, and Chuck Euteneuer.

Defendants' investigation is ongoing, and Defendants reserve the right to supplement, revise, or amend this response as discovery and Defendants' investigation in This Action proceeds.

**INTERROGATORY NO. 2:**

Describe why You offered to purchase or license Sight intellectual property (including but not limited to U.S. App. No. 11/475,523, which was published as U.S. Publ. No. 2007/0298068), and whether You changed Your business strategy or the design of the Hydrus after Your offer was rejected.

Defendants' investigation is ongoing, and Defendants reserves the right to supplement, revise, or amend this response as discovery and Defendants' investigation in this Action proceeds.

As to objections and contentions only,

*/s/ Kat Li*

OF COUNSEL:

Gregg LoCascio

Justin Bova

Steven Dirks

Socrates Boutsikaris

KIRKLAND & ELLIS LLP

1301 Pennsylvania Avenue, N.W.

Washington, DC 20004

(202) 389-5000

Kat Li

Jeanne M. Heffernan

Austin Teng

Ryan Melde

KIRKLAND & ELLIS LLP

401 Congress Avenue

Austin, TX  78701

(512) 678-9100

Ryan Kane

Nathaniel DeLucia

Laura Zhu

KIRKLAND & ELLIS LLP

601 Lexington Avenue

New York, NY 10022

(212) 446-4800

John W. Shaw (No. 3362)

Andrew E. Russell (No. 5382)

Nathan Hoeschen (No. 6232)

SHAW KELLER LLP

I.M. Pei Building

1105 North Market Street, 12th Floor

Wilmington, DE 19801

(302) 298-0700

jshaw@shawkeller.com

nhoeschen@shawkeller.com

*Attorneys for Defendant*

Dated: May 30, 2023

## CERTIFICATE OF SERVICE

I, Kat Li, hereby certify that on May 30, 2023, this document was served on the persons

listed below in the manner indicated:

**BY EMAIL**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Allison E. Elkman
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800

Michelle S. Rhyu, J.D., Ph.D.
David Murdter
Priyamvada Arora
Lauren Strosnick
Alissa Wood
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
dmurdter@cooley.com
parora@cooley.com
lstrosnick@cooley.com
amwood@cooley.com

*/s/ Kat Li*
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

*Attorney for Defendants*

# EXHIBIT 14

**(Excerpted)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.:  21-1317-GBW-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | ████████████████ |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

**SIGHT SCIENCES, INC.'S
THIRD SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
DEFENDANT IVANTIS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-2, 4-7)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Sight Sciences, Inc. ("Plaintiff" or "Sight Sciences") hereby supplements its responses to Defendant Ivantis, Inc.'s ("Defendant" or "Ivantis") First Set of Interrogatories (the "Interrogatories") served on April 22, 2022.  On August 1, 2022, Sight Sciences served a Second Amended Complaint adding Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Alcon") as defendants.  D.I. 59.  Thus, "Defendants" as used herein refers to Ivantis and Alcon collectively.

**GENERAL RESPONSES**

1.      Sight Sciences' response to the Interrogatories is made to the best of Sight Sciences' present knowledge, information, and belief. This response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Sight Sciences' recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Sight Sciences' further discovery or investigation.

2.      Sight Sciences reserves the right to make any use of, or to introduce at any

Pursuant to 35 U.S.C. §§ 284 and 285, Sight Sciences is entitled to enhanced damages, up to three times the amount of any damages found or assessed, and an award of attorneys' fees and costs, because Defendants' infringement of the Asserted Patents has been and continues to be willful, (*see* Sight Sciences' responses to Interrogatory No. 6, below), and because Defendants have engaged in wanton, malicious, and bad-faith behavior by knowingly infringing Sight Sciences' patents after Defendants' efforts to purchase the intellectual property underlying Sight Sciences' patents were rejected.

Sight Sciences is also entitled to the other remedies as set forth in the Prayer for Relief in its Second Amended Complaint, including recovery of its costs and attorneys' fees, and pre-judgment and post-judgment interest.

**INTERROGATORY NO. 6**

State the complete factual and legal bases for Your contention that Ivantis willfully infringed the Asserted Patents as alleged in Sight Sciences First Amended Complaint, and describe in detail the facts that support each basis, including but not limited to the complete factual and legal bases for Sight Sciences' contention that Ivantis had knowledge or was "willfully blind to the existence of the Asserted Patents" as asserted in the Complaint. *See* Dkt. 19, at ¶¶ 25, 30.

**RESPONSE TO INTERROGATORY NO. 6**

Sight Sciences incorporates by reference its General Responses and Objections. Sight Sciences further objects to this Interrogatory because it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from discovery. Sight Sciences objects to this Interrogatory to the extent it seeks a legal conclusion or legal analysis. Sight Sciences further objects to this Interrogatory to the extent it seeks information outside of Sight Sciences' possession, custody, or control.

Subject to the foregoing general and specific objections, Sight Sciences responds as follows:

Discovery is in its nascent stages and Defendant has not yet provided meaningful discovery to Sight Sciences, inhibiting Sight Sciences' ability to provide a fulsome response to this Interrogatory at this time. Notwithstanding the limited information presently available to Sight Sciences, Sight Sciences responds as follows:

Sight Sciences incorporates by reference its First Amended Complaint (D.I. 19). As set forth therein, particularly in Paragraphs 20-30, Defendant's infringement of the Asserted Patents has been and continues to be willful, because Defendant has been aware of the parent application for each of the Asserted Patents since at least December 18, 2008, as evidenced at least by Defendant's unsuccessful attempts to purchase that application through its agent Doug Roeder. Moreover, Sight Sciences expects that discovery will reveal that Ivantis and/or its legal counsel has continued to monitor the Badawi brothers' and then Sight Sciences' patent portfolio ever since Ivantis's unsuccessful purchasing attempt in 2008. Ivantis's awareness and continued monitoring of Sight Sciences' patent portfolio is evidenced, for example, by the citation to the '523 application by numerous Ivantis patents, as well as the citation to the '482 patent by Ivantis's PCT Application PCT/US2016/066957.

Pursuant to Federal Rule of Civil Procedure 33(d), Sight Sciences will produce non-privileged documents in its possession, custody, or control that are responsive to this Interrogatory.

Discovery is in its early stages and ongoing, and Sight Sciences reserves the right to supplement or amend its Response to this Interrogatory as discovery progresses.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6**

Subject to the foregoing general and specific objections, Sight Sciences additionally responds as follows:

Sight Sciences incorporates the additional allegations regarding willful infringement (for example, at least ¶¶30-40 and ¶¶85-101) of its Second Amended Complaint, D.I. 59, filed August 1, 2022.

Sight Sciences also provides the below additional narrative detail of the 2008/2009 interaction between Paul Badawi and Doug Roeder.

On December 18, 2008, Ivantis's then-counsel Jim Shay indicated that he had been forwarded U.S. Patent Publication 2007/0298068 from Ivantis and asked Sight's patent counsel Mika Mayer to set up a meeting between Ivantis and the patent application owners to discuss the '068 application.   Paul Badawi met with Doug Roeder at the offices of Delphi Ventures (3000 Sand Hill, Building 1, Suite 135) on January 7, 2009.  During the meeting, Mr. Roeder explained that Delphi Ventures was an investor in Ivantis and generally described Ivantis's business. Based upon the information Mr. Roeder shared, Mr. Badawi realized that Ivantis would be a competitor.  Mr. Badawi explained to Mr. Roeder that his goal was to build a company around the intellectual property he and his brother had developed, and he rejected Mr. Roeder's overtures made on behalf of Ivantis. There were no further discussions.

Discovery is in its early stages and ongoing, and Sight Sciences reserves the right to supplement or amend its Response to this Interrogatory as discovery progresses.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6**

Subject to the foregoing general and specific objections, Sight Sciences additionally responds as follows:

Sight Sciences incorporates by reference its Corrected Initial Infringement Contentions served on August 26, 2022, with Exhibits A-E attached thereto, and its forthcoming supplemental infringement contentions that will incorporate the Court's claim constructions.

Pursuant to Federal Rule of Civil Procedure 33(d), Sight Sciences further identifies the following documents from which information responsive to this Interrogatory may be ascertained: SGHT0029566, SGHT0029567-568, SGHT0029569, SGHT0029570, SGHT0029571-572, SGHT0029573-574, SGHT0029575-577.

Sight Sciences further responds that, in *Glaukos Corp. v. Ivantis, Inc.*, C.A. No. 8:18-cv-00620-JVS ("the *Glaukos* Litigation"), the Central District of California entered an adverse interference instruction regarding spoliation against Ivantis based on, *inter alia*, Ivantis's failure to suspend its email deletion policy, which was instituted in 2013 and automatically deleted emails after 12 months, when litigation was reasonably foreseeable by 2017 or earlier.  2020 WL 10501850, at *1-3, *6 (C.D. Cal. June 17, 2020); *see also Glaukos*, 2020 WL 5914552 (C.D. Cal. July 30, 2020) (denying motion for reconsideration of order granting motion for adverse interference instruction); *see also In re: Ivantis, Inc.*, 835 F. App'x 560 (Fed. Cir. 2020) (denying petition for writ of mandamus re adverse interference instruction).  Here, as set forth above, Ivantis has been aware of the '068 patent publication—which is related to the Asserted Patents— since at least December 18, 2008.  Documents evidencing Ivantis's knowledge of the Asserted Patents[1] therefore overlap with the relevant time period during which Ivantis annually deleted emails.  *See Glaukos*, 2020 WL 10501850, at *6 ("[W]hat matters is the relevant time period (2009 to early 2017) during which Ivantis annually deleted emails.").  Accordingly, the finding of spoliation by Ivantis in the *Glaukos* Litigation supports Sight Sciences' claim of willful

---

[1] These documents are responsive to at least Sight Sciences' Request for Production (RFP) No. 1, which seeks "All documents and communications related to any attempt(s) by You (including but not limited to attempts by Doug Roeder acting as Your agent) to purchase any patents or patent applications owned by or assigned to Sight."  In response, Ivantis stated that it "will produce relevant, non-privileged, and responsive documents regarding any alleged attempt to purchase the Patents-in-Suit within Ivantis's possession, custody, or control to the extent such documents exist and can be located with a reasonable search."  Ivantis's Objections and Responses to Sight's First Set of RFPs (Nos. 1-88) (May 18, 2022); Ivantis's Second Supplemental Objections and Responses to Sight's First Set of RFPs (Nos. 1-88) (Oct. 17, 2022).

assignments were recorded on May 15, 2019.

o   On November 23, 2020, Sight Sciences executed an assignment of a reaffirmed and amended security interest in the '328 patent to Midcap Funding IV Trust, 7255 Woodmont Ave., Suite 200, Bethesda MD 20814. Sight Sciences also executed an assignment of a reaffirmed and amended security interest in the '328 patent to Midcap Financial Trust, 7255 Woodmont Ave., Suite 200, Bethesda MD 20814.  The assignments were recorded on November 25, 2020.

Sight confirms that, to date, there have not been offers by others to license or purchase the Asserted Patents, aside from the request to purchase that Ivantis's representative made in 2008/2009, for which Sight incorporates its response (and supplemental responses) to Interrogatory No. 6.  *See* 3/16/2023 J. Bova Email.

Pursuant to Federal Rule of Civil Procedure 33(d), Sight Sciences further identifies the following documents from which information responsive to this Interrogatory may be ascertained:  SGHT0130163; SGHT0130165; SGHT0130167; SGHT0130169; SGHT0130171; SGHT0130192;   SGHT0130213;   SGHT0130215;   SGHT0130236;   SGHT0130248; SGHT0130260; SGHT0130272.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

COOLEY LLP
Michelle S. Rhyu
David Murdter
Priyamvada Arora
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Orion Armon
1144 15th Street, Suite 2300
Denver, CO  80202-2686
(720) 566-4000

Allison E. Elkman
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
(202) 842-7800

Dated:  May 19, 2023                    *Attorneys for Sight Sciences, Inc.*

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on May 19, 2023, I caused a copy of Sight Sciences, Inc.'s Third Supplemental Responses and Objections to Defendant Ivantis, Inc.'s First Set of Interrogatories (Nos. 1-2, 4-7) to be served on the following counsel of record in the manner indicated below:

**BY E-MAIL**

John W. Shaw
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

Gregg LoCascio
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
gregg.locascio@kirkland.com
justin.bova@kirkland.com
steven.dirks@kirkland.com
socrates.boutsikaris@kirkland.com

Kat Li
Jeanne M. Heffernan
Austin C. Teng
Ryan J. Melde
Kirkland & Ellis LLP
401 Congress Avenue
Austin, TX  78701
kat.li@kirkland.com
jheffernan@kirkland.com
austin.teng@kirkland.com
ryan.melde@kirkland.com

Ryan Kane
Nathaniel DeLucia
Laura Zhu
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
nathaniel.delucia@kirkland.com
laura.zhu@kirkland.com

_____/s/ Melanie K. Sharp_____
Melanie K. Sharp (No. 2501)

30389780.1

# EXHIBIT 15

# (Excerpted)

No. 2020-147

# United States Court of Appeals
# for the Federal Circuit

### In re: IVANTIS, INC.

*Petitioner*

On Petition for Writ of Mandamus to the United States District Court
for the Central District of California in No. 8:18-cv-00620-JVS-JDE,
Judge James V. Selna

### NONCONFIDENTIAL

### RESPONDENT GLAUKOS CORPORATION'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Lisa S. Glasser
David McPhie
Morgan Chu
Stephen M. Payne
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

*Attorneys for Respondent
Glaukos Corporation*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Respondent Glaukos Corporation certify the following:

1. The full name of every party represented by me is:

     Glaukos Corporation

2. The names of the real parties in interest represented by me are:

     Not applicable.

3. All parent corporations and any publicly held companies that own ten percent (10%) or more of the stock of the parties represented by me are:

     BlackRock, Inc. – publicly traded parent of entit(ies) owning 10% or more of Glaukos stock.

4. The names of all law firms and the partners or associates that appeared for the parties represented by me in the trial court or are expected to appear in this Court are:

     IRELL & MANELLA LLP
     Lisa S. Glasser
     David McPhie
     Morgan Chu
     Stephen M. Payne
     840 Newport Center Dr., Ste. 400
     Newport Beach, CA 92660

5. Other than the originating case, any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

     None.

6. Organizational Victims and Bankruptcy Cases:

     None/Not applicable.

Respectfully Submitted,

Dated: September 15, 2020      By: */s/ Lisa S. Glasser*      
       Lisa S. Glasser

Lisa S. Glasser
David McPhie
Morgan Chu
Stephen M. Payne
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

***Counsel for Respondent Glaukos Corporation***

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ....................................................................1

II.    BACKGROUND ....................................................................2

    A.    Glaukos's Claims For Patent Infringement......................2

    B.    Ivantis's Spoliation............................................................3

    C.    Glaukos's Motion For Adverse Inference Instruction ....................8

    D.    Ivantis's Motion for Reconsideration............................10

III.    ARGUMENT........................................................................13

    A.    Ivantis's Petition Is Procedurally Improper Because It Has Alternate Means To Obtain Relief .................................14

    B.    Ivantis Makes No Showing That The District Court Erred At All – Much Less Committed A "Clear Abuse Of Discretion" As Required For Mandamus Relief ...........19

        1.    Ivantis's Adoption of its Deletion Policy ...........20

        2.    Ivantis's Retention of Litigation Counsel and Assertion of Work Product Privilege.................22

        3.    Ivantis's Communications with Third Parties Warning Ivantis of Litigation...............................24

        4.    Ivantis's Preparation of IPR Petitions.................26

        5.    The District Court's Citation To *Moody* Was Proper..........29

        6.    The District Court Did Not Clearly Abuse its Discretion By Issuing the Adverse Inference Instruction Before Trial........................................31

IV.    CONCLUSION....................................................................33

## DESCRIPTION OF CONFIDENTIAL MATERIAL

The material redacted on page 6 of this Response is a quotation from an Ivantis email concerning this lawsuit designated as Highly Confidential by Ivantis pursuant to the Stipulation and Protective Order (SAppx250-268). The material redacted on page 7 of this Response is a quotation from an Ivantis email concerning Glaukos's asserted '143 Patent designed as Highly Confidential by Ivantis pursuant to the Stipulation and Protective Order.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AIM Sports*,
  447 Fed. App'x 213 (Fed. Cir. 2011) .............................................................. 14

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980) ........................................................................................ 13

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  881 F. Supp. 2d 1132 (N.D. Cal. 2012) .......................................................... 28

*In re Boeringer Ingelheim Pharms., Inc.*,
  745 F.3d 216 (7th Cir. 2014) ................................................................... 15, 16

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
  817 F.3d 1316 (Fed. Cir. 2016) ............................................................... 19, 29

*Colonies Partners, L.P. v. County of San Bernardino*,
  No. 5:12-cv-00420, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ........... 30, 33

*Connaught Labs., Inc. v. SmithKline Beecham P.L.C.*,
  165 F.3d 1368 (Fed. Cir. 1999) ............................................................... 13, 19

*In re Depuy Orthopedics, Inc.*,
  870 F.3d 345 (5th Cir. 2017) .......................................................................... 17

*EEOC v. Carter*,
  577 F.2d 43 (8th Cir. 1978) ............................................................................ 16

*In re Flood*,
  500 Fed. App'x 105 (3d Cir. 2012) ................................................................. 15

*Golden Bridge Tech., Inc. v. Apple, Inc.*,
  758 F.3d 1362 (Fed. Cir. 2014) ...................................................................... 31

*In re HTC Corp.*,
  889 F.3d 1349 (Fed. Cir. 2018) ...................................................................... 18

*Jerry Beeman & Pharm. Servs., Inc. v. Caremark Inc.*,
  322 F. Supp. 3d 1027 (C.D. Cal. 2018) .......................................................... 25

**Page(s)**

*Linde v. Arab Bank, PLC,*
706 F.3d 92 (2d Cir. 2013) ................................................................... 15, 17, 18

*Mannion v. Ameri-Freight Sys. Inc.,*
No. CV-17-03262, 2020 WL 417492 (D. Ariz. Jan. 27, 2020)....................... 33

*Moody v. CSX Transportation, Inc.,*
271 F. Supp. 3d 410 (W.D.N.Y. 2017)........................................... 29, 30, 31, 33

*In re NBS Technologies, Inc.,*
315 Fed. App'x 915 (Fed. Cir. 2008) .............................................................. 14

*In re Oracle Corp. Sec. Litig.,*
627 F.3d 376 (9th Cir. 2010) .......................................................................... 19

*Paisley Park Enters., Inc. v. Boxill,*
330 F.R.D. 226 (D. Minn. 2019) .................................................................... 30

*In re QLT Phototherapeutics, Inc.,*
25 Fed. App'x 825 (Fed. Cir. 2001) ............................................................... 19

*In re Rearden LLC,*
841 F.3d 1327 (Fed. Cir. 2016) ...................................................................... 32

*In re Rembrandt Techs. LP Patent Litig.,*
899 F.3d 1254 (Fed. Cir. 2018) ................................................................. 14, 19

*Roadrunner Transp. Servs., Inc. v. Tarwater,*
642 Fed. App'x 759 (9th Cir. 2016) ................................................................ 32

*Sanofi-Aventis Deutschland GmBH v. Glenmark Pharms. Inc., USA,*
748 F.3d 1354 (Fed. Cir. 2014) ................................................... 14, 23, 31, 32

*Uniloc 2017 LLC v. Apple, Inc.,*
964 F.3d 1351 (Fed. Cir. 2020) ...................................................................... 32

*In re United States,*
397 F.3d 274 (5th Cir. 2005) .......................................................................... 16

*Waymo LLC v. Uber Techs., Inc.,*
870 F.3d 1350 (Fed. Cir. 2017) ...................................................................... 17

**Page(s)**

*WeRide Corp. v. Kun Huang*,
  No. 5:18-cv-07233, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .......... 30, 33

**Statutes**

35 U.S.C. § 271(e) ................................................................................................ 28

**Rules**

Fed. Cir. R. 21(a)(2)(C) ......................................................................................... 3

Fed. R. Civ. P. 26(f) ........................................................................................ 7, 21

Fed. R. Civ. P. 37(e)............................................................................................*passim*

Fed. R. Civ. P. 37(e)(2), Advisory Committee Notes, 2015
  Amendment............................................................................................... 32, 33

## I.   <u>INTRODUCTION</u>

Ivantis's Petition for Writ of Mandamus ("Petition") seeks review of an order by the District Court issuing a permissive adverse inference jury instruction. Ivantis's Petition should be denied.

*First*, Ivantis's Petition does not meet the strict procedural standard for mandamus, which requires there be no adequate alternative means to obtain the relief sought. Here, Ivantis seeks writ review of an order that may be appealed in the ordinary course after final judgment. The opportunity for a post-judgment appeal is an adequate remedy that precludes mandamus relief.

*Second*, Ivantis's criticism of the District Court's ruling has no substantive merit. Ivantis identifies no error—much less a "clear abuse of discretion"—in the District Court's finding that Ivantis intended to deprive Glaukos of evidence. To the contrary, the evidence of Ivantis's intent (much of which Ivantis omits from its Petition) is overwhelming. Ivantis adopted a policy to automatically delete all emails after an inventor of the Glaukos asserted patents told Ivantis it "must infringe," and after Ivantis had already retained litigation counsel. Ivantis continued to delete all emails even as it received repeated warnings that Glaukos would file suit, was repudiated by major investors based on concerns that Ivantis infringed Glaukos's asserted patents, generated work product in anticipation of Glaukos filing suit, and even after Ivantis itself commenced adversary proceedings

Fed. R. Civ. P. 26(f)(3)(C), but did not. Its document destruction was not uncovered until nine months later. SAppx345.

### 2.    Ivantis's Retention of Litigation Counsel and Assertion of Work Product Privilege

Ivantis next argues that its retention of litigation counsel and assertion of work product privilege do not support the District Court's conclusion that Ivantis apprehended it would be sued. Pet. at 32–34.

Ivantis's argument rests on a mischaracterization of the District Court's orders, suggesting the District Court relied on a "link" between Ivantis's retention of counsel and assertion of work product privilege to find intent. As discussed above, the District Court "did not find intent based only on Ivantis's . . . retention of outside counsel, or its assertion of the work product privilege over documents dating back to at least September 2017" but rather on the entire "sequence of events" from 2009 to 2018. Appx18; *see also* Appx7 (summarizing evidence). In other words, the District Court considered Ivantis's retention of a "top patent litigation firm" and assertion of work product privilege as two of many factors that together established Ivantis anticipated this patent litigation, yet nonetheless continued to delete relevant documents. Appx10, Appx16-19.

Ivantis also mischaracterizes the District Court's order when it suggests the Court found no duty to preserve evidence until "early 2017." Rather, the District Court found "***not only*** that a reasonable party in Ivantis's position would have

reasonably foreseen this litigation" based on the "relevant sequence of events" from 2009 to 2018, "but that Ivantis *actually* foresaw this litigation, at least by the beginning of 2017, if not earlier." Appx7 (emphases added). The duty to preserve evidence is assessed based on an objective standard and arises once a reasonable party would anticipate suit, *see Sanofi-Aventis*, 748 F.3d at 1362, which here the District Court found was before 2017. Ivantis's duty to preserve evidence therefore arose before 2017 when suit became reasonably foreseeable, not just when it later subjectively apprehended suit.

Ivantis next argues that "the evidence submitted below demonstrated that Ivantis did not retain Arnold & Porter in 2013 to litigate." Pet. at 33. Ivantis ignores the substantial evidence showing the exact opposite. As discussed above, in 2013 Ivantis retained two patent trial litigators at Arnold & Porter specifically to perform "an analysis of certain patents owned by the Glaukos Corporation ("Glaukos") in connection with Ivantis' Hydrus Microstent." Appx230-231. The two patent trial lawyers that Ivantis retained are the same lawyers who initially represented Ivantis in this litigation. Appx22-23. Further, Ivantis's CEO testified that Arnold & Porter was retained *as litigation counsel*, Appx124, and in 2016 Ivantis assured investors that it had retained a "top patent litigation firm." Appx18, SAppx292. The District Court considered this evidence (as one part of the entire "sequence of events") and reasonably concluded it supported finding intent. Appx10, Appx17-19.

Similarly, while Ivantis argues the District Court "got it wrong" with respect to "Ivantis's invocations of privilege," Pet. at 34, Ivantis identifies no factual error in the District Court's analysis. To the contrary, Ivantis admits it asserted work product privilege dating back to ***at least*** September 2017 (seven months before Ivantis stopped deleting documents), which is precisely what the District Court found. Appx6, Appx18. Whether or not Ivantis's assertion of work product related to Arnold & Porter or to other lawyers does not affect that determination. The relevant fact established by Ivantis's invocation of privilege is that ***Ivantis*** apprehended litigation, regardless of who performed the legal work. Nor does it matter that Ivantis did not log work product documents until 2017. Even assuming that no work product was created before that time (as opposing to being created and deleted), the District Court found that both Ivantis's earlier "retention of outside counsel to perform due diligence" "***and*** its assertion of the work product privilege, reveal that it apprehended it would be sued." Appx7 (emphasis added); *see also* Appx17-18.

### 3.   Ivantis's Communications with Third Parties Warning Ivantis of Litigation.

Ivantis next argues that the District Court erred when it concluded that the fact Ivantis received repeated warnings of litigation, yet took no steps to preserve evidence, further showed that Ivantis's document destruction was intentional. Pet. at 34–36. Ivantis's argument is meritless.

Ivantis also states that "courts around the country" have adopted the approach of deciding the issue of intent at trial. Pet. at 38. While district courts have discretion to do so, Federal Rule 37(e) and its Advisory Committee Notes are explicit that the "finding may be made by the court when ruling on a pretrial motion," and this is the approach most commonly employed. *See, e.g*., Fed. R. Civ. P. 37(e)(2), Advisory Committee Notes, 2015 Amendment; *Moody*, 271 F. Supp. 3d at 432; *WeRide*, 2020 WL 1967209, at *15; *Colonies Partners*, 2020 WL 1496444, at *12; *see also Mannion v. Ameri-Freight Sys. Inc*., No. CV-17-03262, 2020 WL 417492, at *4 (D. Ariz. Jan. 27, 2020) ("Judges are fully capable of making discovery-related factual findings. Moreover, presenting spoliation-related factual disputes to juries creates a high risk of confusion and prejudice. For these reasons, many other courts have concluded that the question of whether sanctionable spoliation occurred should not be a jury issue."). There is thus no merit to Ivantis's argument that the District Court clearly abused its discretion by finding intent before trial.

## IV.   CONCLUSION

For the foregoing reasons, Ivantis's Petition fails to meet both the procedural and substantive standards for mandamus, and should be denied.

Respectfully Submitted,

Dated: September 15, 2020      By: */s/ Lisa S. Glasser*
            Lisa S. Glasser

Lisa S. Glasser
David McPhie
Morgan Chu
Stephen M. Payne
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

**Counsel for Respondent Glaukos Corporation**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 27(d) and 32(g), the undersigned hereby certifies that the foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 7,691 words. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Respectfully Submitted,

Dated: September 15, 2020

By: */s/ Lisa S. Glasser*
    Lisa S. Glasser

Lisa S. Glasser
David McPhie
Morgan Chu
Stephen M. Payne
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

***Counsel for Respondent Glaukos Corporation***

## <u>CERTIFICATE OF CONFIDENTIAL MATERIAL</u>

Pursuant to Federal Circuit Rule 25.1(e)(2), the undersigned hereby certifies that the foregoing document contains 11 unique words (including numbers) marked confidential, not counting repeated uses of the same word(s). This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

Respectfully Submitted,

Dated: September 15, 2020

By: */s/ Lisa S. Glasser*
    Lisa S. Glasser

Lisa S. Glasser
David McPhie
Morgan Chu
Stephen M. Payne
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

***Counsel for Respondent Glaukos Corporation***

# EXHIBIT 16

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST (SBN 84065)
rvannest@keker.com
DAVID SILBERT (SBN 173128)
dsilbert@keker.com
AJAY S. KRISHNAN (SBN 222476)
akrishnan@keker.com
SOPHIE HOOD (SBN 295881)
shood@keker.com
EDUARDO E. SANTACANA (SBN 281668)
esantacana@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

Attorneys for Defendant
IVANTIS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION-SANTA ANA

| | |
|---|---|
| GLAUKOS CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>IVANTIS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 8:18-cv-00620-JVS-JDE<br><br>**DECLARATION OF DAVID VAN METER IN SUPPORT OF IVANTIS'S OPPOSITION TO GLAUKOS'S MOTION FOR ADVERSE-INFERENCE INSTRUCTION AND EXCLUSION**<br><br>Judge:    Hon. James V. Selna<br><br>Hearing Date:   May 4, 2020<br>Hearing Time:   1:30 p.m.<br>Courtroom:   10C<br><br>Pre-trial conference: June 29, 2020<br><br>Trial date: July 28, 2020 |

**REDACTED VERSION OF DOCUMENT**

**PROPOSED TO BE FILED UNDER SEAL**

1379794

1        I, David Van Meter, declare and state that:

2        1.     My name is David Van Meter, and I am President and Chief

3 Executive Officer of Ivantis, Inc. ("Ivantis").  I make this declaration in support of

4 Ivantis's Memorandum in Opposition to Glaukos's Motion for Adverse-Inference

5 Instruction and Exclusion.  I have personal knowledge of the facts set forth herein,

6 and if called to testify as a witness thereto, I would do so competently under oath.

7        2.     Since January 2012, Ivantis has used an external information

8 technology ("IT") vendor, KME, to handle its email systems, maintain Ivantis's

9 servers, provide software installation, and generally provide IT infrastructure

10 support.

11        3.     In 2013, Ivantis was experiencing system-wide technical difficulties

12 to the point that the IT systems, including document management and email

13 accounts, were slow and cumbersome.  KME advised Ivantis that the system-wide

14 technical issues were the result of the large volume of data on the servers.  At that

15 point in time, all Ivantis emails were stored on Ivantis's server without any date

16 limitation.  As a solution for Ivantis's IT system errors, KME recommended that

17 Ivantis adopt a traditional industry practice of maintaining email on the server for a

18 period of one year—*i.e.*, emails would be retained for 365 days after the

19 communication.

20        4.     This solution from KME was a system program that would

21 automatically (without any action by the user) delete emails older than 365 days

22 from the server unless those emails had been saved separately, *i.e.*, onto the

23 company's shared computer drive, by a user.  The system program would be

24 applied only to emails on the server (many of which were non-substantive

25 communications).  It would not apply to other electronic and hard-copy documents,

26 such as design, validation, testing, and manufacturing documents.  Ivantis

27 implemented KME's recommendation in June 2013, and as a result, Ivantis'

28

1

1379794

1  system-wide technical issues were resolved: the company's IT systems worked
2  much better.

3      5.    In April 2018, just days after Ivantis was served with the complaint in
4  the current lawsuit, it implemented a document hold notice.  This suspended the
5  email system program as of April 19, 2018.  As a result, emails from April 2017 to
6  the present day are preserved.

7      6.    Ever since I joined Ivantis in 2008, we openly and actively shared the
8  Hydrus Microstent design with others in our industry.  For example, in 2009 and in
9  subsequent years, Ivantis participated in the Cutting Edge Symposium, an annual
10  meeting designed to facilitate information-sharing between companies and
11  glaucoma surgeons.  In June 2011, the Hydrus was presented at the World
12  Glaucoma Congress in Paris, France.  In March 2012, four separate presentations
13  of the Hydrus technology, including clinical results, were made at the American
14  Glaucoma Society meeting in New York.

15      7.    In 2013, Ivantis's Hydrus was featured as a solution for glaucoma on
16  the nationally-televised CBS show "The Doctors."  Dr. Andrew Ordon on the show
17  described the Hydrus as "a huge innovation."  Ivantis has produced in this
18  litigation a video clip of "The Doctors" television show at IVNTS_00212230.

19      8.    The minimally invasive glaucoma surgery ("MIGS") industry is small
20  and close-knit.  Companies and personnel frequently cross paths at conferences
21  and other events.  ████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████   ████████████████████████

████████████

28      9.    In April 2013, I shared Ivantis's plans regarding a head-to-head

2

1379794

1  clinical trial comparing the Hydrus to Glaukos's iStent product at the

2  Ophthalmology Innovation Summit, also known as OIS@ASCRS (American

3  Society of Cataract and Refractive Surgery). Three other CEOs in the MIGS

4  industry were onstage with me when I made that announcement, including

5  Glaukos's CEO, Thomas Burns. I had previously presented publicly Ivantis's

6  plans to conduct the head-to-head clinical trial at the Ophthalmology Futures

7  Forum in Milan, Italy in September 2012.

8      10.  ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████  I had no reason to believe Glaukos would bring

15  litigation against Ivantis, because before it filed the present lawsuit, Glaukos *never*

16  sent a demand letter or any other communication to Ivantis regarding Glaukos's

17  patents, licensing, litigation, or any potential infringement by Ivantis.

18      I declare under penalty of perjury under the laws of the United States that

19  the foregoing is true and correct to the best of my knowledge, and that this

20  declaration was executed on April 9, 2020 in _Irvine_____, California.

21  

22      David Van Meter

23  

24  

25  

26  

27  

28  

3

1379794

# EXHIBIT 17

| | |
|---|---|
| **From:** | Christopher Timothy Shen ██████████ |
| **Sent:** | 2/23/2017 4:17:53 PM |
| **To:** | David DVanMeter@Ivantis ████████████ |
| **CC:** | Jennifer Wilson ██████████████ |
| **Subject:** | Re: Ivantis BOD Meeting |

Dave

Very good to see you as well! Hope you made it up to Big Bear without issues.

Our email issues seem to be resolved. Please resend so we have a copy for our records.

Chris

Christopher Shen, MD
Managing Director
VERTEX HEALTHCARE
████████████████
██████████████████
██████████████
███████████

On Feb 23, 2017, at 07:47, Dave Van Meter █████████████████ wrote:

Chris, Jennifer definitely tried to resend via Dropbox yesterday afternoon.  Jennifer, please send again, and maybe even try to send outside of Dropbox.
 Thx.

Chris, the Singapore issue seems to be near resolution.  Thanks for your help.

Great seeing you.

Dave

Sent from my iPhone

On Feb 22, 2017, at 11:56 PM, Christopher Timothy Shen████████████████ wrote:

Dave

I don't believe the deck came through for me.

Btw, how are things progressing in SG?

Chris

████████████████
██████████████

████████
IVANTIS_SS_00165093

**Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions**

█████████████████
████████████████████
██████████████████████
██████████████████████
████████████████

On Feb 21, 2017, at 07:37, Dave Van Meter ██████████████████████ wrote:

Dear Ivantis Board:

I wanted to let you all know - in the event anyone missed it - that the Board deck went out to you all Sunday night via Dropbox.  If anybody has any issues receiving or accessing, please let me know.

Thanks, and look forward to seeing most of you tomorrow.

Best,
Dave

Sent from my iPhone

On Feb 7, 2017, at 1:42 PM, Dave Van Meter ██████████████████████ wrote:

Dear Ivantis Board:

I hope you all are well.

███████████████████████████████████████████████████ ██ ████████
██████████████████████████████████████████████████████████████
██████████████████████████  Initial meeting was 2-5 (for the new investors, just FYI, this 2 pm start is the usual time slot so the Asia Pac investors can call in).  Let's all plan on 2-6, and if we end early, great.

Dinner will follow nearby at 6:30 pm.  Jennifer will send details.

Looking forward to seeing you all.

Thanks,
Dave

Dave Van Meter
President & CEO
Ivantis, Inc.
38 Discovery, Suite 150
Irvine, CA  92618
████████  ████████
████████████████████████████
████████████████████

---

**From:** Dave Van Meter █████████████████████████████
**Date:** Thursday, February 2, 2017 at 12:39 PM
**To:** Ali Behbahani █████████████████████, Doug Roeder████████████████████████, "Butler, Tara
███████████████████████████████████ Brant Heise █████████████████████,

████████████                                                    IVANTIS_SS_00165094

**Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions**

Tananbaum█████████████████, "Heng Tong CHOO (EDBI)"██████████████████, Ben Gust
████████████████, Peter Kolchinsky███████████████, Tak Cheung██████████████,
"jgraf@nea.com" <jgraf@nea.com>, Jay Graf██████████████, Chris Shen██████████████,
Randy Alexander██████████████, Zach Scheiner <zscheiner@racap.com>
**Cc:** "Feuchter, Bruce"████████████████, David Boyd ████████████████, David Boyd
██████████████

**Subject:** Ivantis Update - Addition of Todd Abraham, Vice President of Operations

Dear Ivantis Board:

Greetings from Australia, where we have been meeting this week (and today) with the group of surgeons who have done over 600 Hydruses in the widest array of cases, from mild glaucoma in phaco, to standalone in the most advanced of disease. Yesterday, we had an elderly female patient who was blind in one eye from hypotony from prior a trab procedure gone bad (opaque cornea), and the sole remaining eye had significant visual loss (could only count fingers), was at IOP 28, and on 4 meds, including Diamox, which was making her vomit every day. The surgeon, after nearly 100 Hydrus cases, has such confidence in Hydrus that he trusted the device to be the last option he would try to save her eyesight and get her off the medication that, in some ways, was making her waste away. The procedure went perfectly and took only a few minutes. The rep for the microscope company who was there, and who had seen a double iStent case the prior day at another hospital (which he said required 4 separate attempts to regrasp and properly position), was very, very impressed at the difference in terms of elegance of delivery. That was a nice, powerful reminder of why we are doing this and the value being created here.

Anyway, the point of this note is not that, but rather, to let you know we have already taken steps as a result of the C raise to significantly augment our capabilities to build Ivantis, and we could not have done better. Todd Abraham is one of the most sought after Ops leaders in Orange County, he recently had a gap between opportunities, and we jumped on it. I knew Todd 15 years ago, and his reputation in this industry is stellar. I know his CEO from Endologix very well and the references are all strong. Several BOD members interviewed him, and the feedback was consistently positive. The team and I could not be more pleased at what he will bring in terms of elevating Ivantis into a world class, commercial manufacturing organization. Todd will start officially at the end of March. Details below.

See you all in a few weeks.

Best,
Dave

Dave Van Meter
President & CEO
Ivantis, Inc.
████████████████
███ ██ ████
██ █████████████
████████████

---

**From:** Dave Van Meter████████████████████
**Date:** Thursday, February 2, 2017 at 12:03 AM
**To:** Irvine Personnel████████████████████, Ivantis Employees █████████████
**Subject:** Addition of Todd Abraham, Vice President of Operations

Dear Fellow Ivantians:

**Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions**

As you all know, 2017 is a pivotal year for the Company.  With all of our patients in the HORIZONS (aka HYDRUS IV) US pivotal trial reaching 2 year follow up by mid year, and with the subsequent submission of PMA package to FDA, we are highly optimistic we will receive FDA approval in 2018.  Thanks again to all of you for your great work in bringing the HORIZONS trial to the doorstep of approval.

With the approval and launch of the Hydrus device just around the corner, we have a tremendous opportunity before us to dramatically alter glaucoma patient care in this country. ███████████████████████████████
███████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████  █████████████████████████████
████████████████████████████████████████████████████████████████████████████
█████████████████████████████

In anticipation of commercial launch within the next 18 months within the largest market in the world, we will need to evolve into a world class manufacturing organization capable of achieving very high volumes at the most competitive of standard costs, and with a supply chain strategy that will give us competitive advantage in the market.  As such, the Board and I have determined that additional senior leadership with many years of commercial scale medical device manufacturing experience is necessary.

In recognition of this next stage in our development, it gives me tremendous pleasure to announce the appointment of Todd Abraham to the position of Vice President, Operations, reporting directly to me.  Todd is one of the most respected medical device company Operations leaders in Orange County.  Todd started his career at Cordis Corporation (which became a division of Johnson & Johnson midway through his tenure there), where he rose quickly and eventually oversaw the manufacturing facility (800 employees) for the leading coronary stent in the US market.  In the early 2000's, Todd joined Edwards, one of the most highly regarded and consistently excellent medical device companies in the world (also stents), where, in various stints, he ran global supply chain management, lead manufacturing for heart valves, peripheral stents (nitinol), and grafts, and also was GM of a business within Edwards.  In 2010, Todd went to Endologix, an OC based, publicly traded medical device company in AAA stent grafting, where he was Vice President, Global Operations, and served on the Executive leadership team for 5 years.  In 2015, Todd left Endologix and served in a consulting capacity for several medical device companies.  Of note, Todd has also worked in the early stage, startup environment, and is known to be a "team player", and is exactly the type of individual who will "roll up the sleeves" and dive in, which makes him a great fit for Ivantis.

We are fortunate to have Todd joining the team, and I hope you will all join me in warmly welcoming him.  Todd will officially start at the end of March, but will be occasionally in the office between now and then.  David and all of Manufacturing will report to Todd.  Ken will continue to lead our R&D and Intellectual Property efforts, as well as supporting the development of the Manufacturing module through the PMA process, and will continue to report to me.

Best Regards,
Dave

Dave Van Meter
President & CEO
Ivantis, Inc.



# EXHIBIT 18

**(Excerpted)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | C. A. No.: 21-1317-GBW-SRF |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF SIGHT SCIENCES, INC.'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FOURTH SET OF INTERROGATORIES (NOS. 19-21)**

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Judicial District, Plaintiff Sight Sciences, Inc. ("Sight Sciences" or "Sight") hereby responds to Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc.'s ("Defendants") Fourth Set of Interrogatories (Nos. 19-21), dated May 5, 2023.

**GENERAL RESPONSES**

1.      Sight Sciences' response to the Interrogatories is made to the best of Sight Sciences' present knowledge, information, and belief. This response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Sight Sciences' recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Sight Sciences' further discovery or investigation.

2.      Sight Sciences reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to the Interrogatories but discovered subsequent to the date of this response, including, but not limited to, any such information or documents obtained in discovery in this action.

1

objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from discovery, or to the extent it seeks a legal conclusion or legal analysis and would implicate the mental impressions of counsel to provide a proper response.

Subject to the foregoing general and specific objections, Sight Sciences responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Sight Sciences identifies the following documents from which information responsive to this Interrogatory may be ascertained: SGHT0166268; SGHT0152605; SGHT0153024; SGHT0153029; SGHT0167451; IVANTIS_SS_00420586; IVANTIS_SS_00337117.

Sight Sciences continues to reserve the right to modify and/or supplement this response as fact and expert discovery proceed.

**INTERROGATORY NO. 21:**

Explain the complete factual and legal basis of Sight's contention that spoliation has occurred in this case and any remedy Sight contends is appropriate for such purported spoliation. *See* Mar. 9, 2023 Sight's 2d Supp. Resp. to Defendants Interrog. Nos. 4, 5, and 6. A complete response should include an identification of the date(s) on which Sight believes Defendants should have reasonably anticipated litigation with respect to the issues in this case triggering a duty to preserve evidence related to the issues in this case, along with the complete factual and legal basis for which Sight believes Defendants should have reasonably anticipated litigation as of that (those) date(s).

**RESPONSE TO INTERROGATORY NO. 21:**

Sight Sciences incorporates by reference its General Responses and Objections.  Sight Sciences further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection from discovery, or to the extent it seeks a legal conclusion or legal analysis and would

implicate the mental impressions of counsel to provide a proper response.  Sight further objects to the extent it seeks to apply a legal definition of "reasonably anticipated" or "duty to preserve."

Subject to the foregoing general and specific objections, Sight Sciences responds as follows:

On or around March 5, 2008, Ivantis became aware of the disclosures in the patent application to which the Asserted Patents claim priority (U.S. Patent Appl. No. 11/475,523 ("the '523 Application")), which published as U.S. Publ. No. 2007/0298068 ("the '068 Publication"). *See* Defendants' May 30, 2023 Third Supplemental Response to Interrogatory No. 1 at p. 9.

Between late 2008 and early 2009, Ivantis sought to purchase the '523 Application and the related intellectual property from Sight.  On December 18, 2008, Ivantis's then-counsel Jim Shay of Shay Glenn LLP indicated that he had been forwarded the '068 Publication from Ivantis and asked Sight's patent counsel Mika Mayer to set up a meeting between Ivantis and the patent application owners to discuss the '068 Publication.  *See* SGHT0029566; SGHT0029567-568; SGHT0029569; SGHT0029570; SGHT0029571-572; SGHT0029573-574.  Paul Badawi met with Doug Roeder at the offices of Delphi Ventures (3000 Sand Hill, Building 1, Suite 135) on January 7, 2009.  *See* SGHT0029575-577.  During the meeting, Mr. Roeder explained that Delphi Ventures was an investor in Ivantis and generally described Ivantis's business.  Based upon the information Mr. Roeder shared, Mr. Badawi realized that Ivantis would be a competitor.  Mr. Badawi explained to Mr. Roeder that his goal was to build a company around the intellectual property he and his brother had developed, and rejected Mr. Roeder's overtures made on behalf of Ivantis.  There were no further discussions.

On October 16, 2012, U.S. Patent No. 8,287,482 ("the '482 patent") (an Asserted Patent) issued from the '523 Application.  Shortly thereafter, in 2013, Ivantis hired outside patent litigation counsel at Arnold & Porter Kaye Scholer LLP ("Arnold & Porter").  *Glaukos Corp. v. Ivantis, Inc.*, 2020 WL 10501850, at *5 (C.D. Cal. Jun. 17, 2020) ("[I]n 2013, Ivantis hired outside litigation counsel to conduct diligence related to Glaukos's patents."); *see also* IVANTIS_SS_00172370-703 (Sept. 26, 2019 Dep. Tr. of David Van Meter) at -424 (55:3-12)

(testifying that Ivantis first retained litigation counsel from Arnold & Porter "in roughly, I would say, 2013 or so"); *In re Ivantis, Inc.*, C.A. No. 20-147, D.I. 2-1 (Ivantis's Petition for Writ of Mandamus) at 43 (Fed. Cir. Aug. 24, 2020) (stating that Ivantis hired Arnold & Porter in 2013 "to handle diligence-related matters"); *id.* at D.I. 15 (Glaukos's Response) at 23 (Fed. Cir. Sept. 15, 2020) ("[I]n 2013 Ivantis retained two patent trial litigators at Arnold & Porter specifically to perform 'an analysis of certain patents owned by [Glaukos] in connection with Ivantis' Hydrus Microstent."). Ivantis argued in the *Glaukos* Litigation that its retention of Arnold & Porter in 2013 to perform patent diligence was ***not*** related to that litigation. 2020 WL 10501850, at *4; IVANTIS_SS_00172424.

In June 2013, the same year Ivantis hired outside patent litigation counsel, Ivantis instituted an automatic email deletion policy that "automatically (without any action by the user) delete[d] emails older than 365 days from the server"—***without regard to the email's subject matter***. *See Glaukos Corp. v. Ivantis, Inc.*, 8:18-cv-00620-JVS-JDE ("*Glaukos* Litigation"), D.I. 495-12 (Van Meter Decl.), ¶ 4 (C.D. Cal. Apr. 10, 2020); *see also id.* at ¶ 3 ("[E]mails would be retained for 365 days after the communication."); *see also id.* at D.I. 425-23 (C.D. Cal. Mar. 23, 2020) ("Ivantis had an email retention policy in place for several years that automatically deletes emails after 12 months."); *see also Glaukos*, 2020 WL 10501850, at *6, n.4 (C.D. Cal. June 17, 2020) (providing the text of the adverse inference instruction, including that Ivantis "adopted and maintained a policy that deleted ***all company email*** after 12 months, resulting in the destruction of virtually all emails at Ivantis that pre-date April 2017") (emphasis added). Ivantis suspended this automatic email deletion policy on April 19, 2018; "[t]hus, emails as of April 19, 2017 were not subject to the mandatory deletion policy." 2020 WL 10501850, at *1; *see also Glaukos* Litigation, D.I. 495-12 (Van Meter Decl.), ¶ 5. Accordingly, Ivantis's automatic deletion policy affected emails from June 2013 to April 19, 2017.

To the extent emails regarding Sight's Asserted Patents (or related applications or publications) existed on Ivantis's server between June 2013 and April 19, 2017, those emails would have been automatically deleted after 365 days. Notably, during this time period of

automatic deletion, two additional Asserted Patents issued from the '523 Application—U.S. Patent Nos. 9,370,443 ("the '443 patent") on June 21, 2016, and 9,486,361 ("the '361 patent") on November 8, 2016.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ *cf. In re Ivantis, Inc.*, C.A. No. 20-147, D.I. 15 at 31 ("[I]n 2016 Ivantis assured investors that it had retained a 'top patent litigation firm.'").  On information and belief, ████████████████████████ would have—or at minimum should have—identified the '482 patent, which issued in 2012, and the '443 patent, which issued in June 2016. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████ ██████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ that would or should have identified at least two of the Asserted Patents, Defendants have produced documents indicating

13

**Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions**

that Ivantis and/or its legal counsel monitored the Badawi brothers' and then Sight's patent portfolio ever since Ivantis's unsuccessful purchasing attempt in 2008, for example:

- In "Summer 2007[,]" Ivantis conducted a "[r]obust patent search" that was "***periodically updated***[.]" IVANTIS_SS_00417127 at -147 (Date Last Modified 3/6/2008) (emphasis added).

- 

- An "Expense detail" spreadsheet for Denali Vision includes expenses for "Consulting – IP Search" with projections through December 2009. IVANTIS_SS_00417162 ("Vision detail" tab, row 20) (Date Last Modified 3/6/2008).

- Defendants produced a copy of Sight's '068 patent publication with a Date Created of 12/6/2010 and Custodian "Paul Badawi." IVANTIS_SS_00337118.

- Defendants produced a Sight Company Presentation with the following relevant metadata: Date Created 3/15/2013; Date Last Modified 9/25/2013; Filename Sight Sciences Presentation; Author Cynthia Kalb; Custodian Paul Badawi.

- In February 2017, an Ivantis Board of Directors meeting 

- During his September 18, 2019 deposition in the *Glaukos* Litigation, Todd Abraham testified that "[Ivantis's] team . . . reviews the [IP portfolio] landscape extensively." IVANTIS_SS_00171981 at -056 (76:15-19).

- On October 22, 2019, Ken Galt sent an email ███████████████

14

**Plaintiff Sight Sciences, Inc. Objects to Defendants' Redactions**

███████████  █████  ██████  ███████  ████  ██████████  ██████  ██  ████  ████████

████████████████

Accordingly, on information and belief, Ivantis was aware of Sight's patent portfolio, including the Asserted Patents, and knew that the Hydrus Microstent infringed at least one claim of the Asserted Patents.  Ivantis's monitoring of Sight and Sight's patent portfolio starting in December 2008 at latest (as described above), coupled with Ivantis's automatic email destruction policy from June 2013 to April 2017, indicates, on information and belief, that Ivantis spoliated evidence relating to Ivantis's infringement of the Asserted Patents. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012); *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1323 (Fed. Cir. 2011) (finding that defendant "was on notice of potentially infringing activities" following licensing discussions because "[o]nce the patent issued, the gun was loaded; when the targets were acquired, it was cocked; all that was left was the pull the trigger by filing a complaint").

Sight expects that the noticed depositions of third parties Jim Shay, Steve McAuley, and Matthew Wolf will further reveal that Ivantis knew or should have known that it infringed at least one claim of the Asserted Patents and anticipated or should have anticipated that a lawsuit would be filed after the Hydrus's commercialization.Sight also expects that the outstanding document request subpoenas to third parties Steve McAuley and Arnold & Porter will further reveal that Ivantis knew or should have known that it infringed at least one claim of the Asserted Patents and anticipated or should have anticipated that a lawsuit would be filed after the Hydrus's commercialization.

Additionally, Sight's pending motion to compel production of certain litigation materials from the *Glaukos* Litigation and its related appeal (collectively, "*Glaukos* Litigation Materials"), will be heard by Judge Fallon on June 12, 2023.  (D.I. 170; *see also* May 24, 2023 Docket Entry.) If Judge Fallon grants Sight's motion to compel, Sight expects that the production of the *Glaukos* Litigation Materials—and particularly the unredacted briefs and appendices filed in *In re Ivantis, Inc.*, C.A. No. 20-147 (Fed. Cir.)—will reveal relevant facts and Sight will supplement this Interrogatory upon receiving such information.

Appropriate remedies for spoliation by Ivantis in this case include (1) an adverse inference instruction under Fed. R. Civ. P. 37(e)(2), (2) a finding by the Court that this is an exceptional case under 35 U.S.C. § 285, (3) a finding by the jury that Ivantis's and Alcon's infringement was and is willful and an award of treble damages for past infringement, (4) entry of a permanent injunction against Defendants based on a finding, *inter alia*, that the balance of the equities favors Sight Sciences and not Defendants as a result of Ivantis's spoliation of evidence, (5) a sanction prohibiting Ivantis from referring to any pre-suit investigation of the Asserted Patents as a basis for believing that it did not infringe or that the Asserted Patents were invalid, *see* 2020 WL 10501850, at *4, and (6) pursuant to Rule 37 of the Federal Rules of Civil Procedure, an award of Sight Sciences' attorneys' fees and costs associated with briefing and arguing discovery motions relating to Sight's motions to compel discovery relating to Ivantis's spoliation.

Sight Sciences continues to reserve the right to modify and/or supplement this response as fact and expert discovery proceed.

16

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

COOLEY LLP
Michelle S. Rhyu
David Murdter
Priyamvada Arora
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Orion Armon
1144 15th Street, Suite 2300
Denver, CO  80202-2686
(720) 566-4000

Allison E. Elkman
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
(202) 842-7800

Dated: June 5, 2023            *Attorneys for Sight Sciences, Inc.*

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on June 5, 2023, I caused a copy of Plaintiff Sight Sciences, Inc.'s Objections and Responses to Defendants' Fourth Set of Interrogatories (Nos. 19-21) to be served on the following counsel of record in the manner indicated below:

**BY E-MAIL**

John W. Shaw
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

Gregg LoCascio
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
gregg.locascio@kirkland.com
justin.bova@kirkland.com
steven.dirks@kirkland.com
socrates.boutsikaris@kirkland.com

Kat Li
Jeanne M. Heffernan
Austin C. Teng
Ryan J. Melde
Kirkland & Ellis LLP
401 Congress Avenue
Austin, TX  78701
kat.li@kirkland.com
jheffernan@kirkland.com
austin.teng@kirkland.com
ryan.melde@kirkland.com

Ryan Kane
Nathaniel DeLucia
Laura Zhu
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
nathaniel.delucia@kirkland.com
laura.zhu@kirkland.com

_/s/ Melanie K. Sharp_
Melanie K. Sharp (No. 2501)

## <u>CERTIFICATE OF SERVICE</u>

I, Melanie K. Sharp, Esquire, hereby certify that on June 6, 2023, I caused to be electronically filed a true and correct copy of Letter to the Honorable Sherry R. Fallon from Melanie K. Sharp regarding Plaintiff Sight Sciences, Inc.'s Motion to Compel with the Clerk of the Court using CM/ECF, which will send notification to the following counsel of record:

John W. Shaw
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

I further certify that on June 6, 2023, I caused a copy of the foregoing document to be served on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL:**

| | |
|---|---|
| Gregg LoCascio | Kat Li |
| Justin Bova | Jeanne M. Heffernan |
| Steven Dirks | Austin C. Teng |
| Socrates L. Boutsikaris | Ryan J. Melde |
| Kirkland & Ellis LLP | Kirkland & Ellis LLP |
| 1301 Pennsylvania Avenue, N.W. | 401 Congress Avenue |
| Washington, DC  20004 | Austin, TX  78701 |
| gregg.locascio@kirkland.com | kat.li@kirkland.com |
| justin.bova@kirkland.com | jheffernan@kirkland.com |
| steven.dirks@kirkland.com | austin.teng@kirkland.com |
| socrates.boutsikaris@kirkland.com | ryan.melde@kirkland.com |

Ryan Kane
Nathaniel DeLucia
Laura Zhu
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
nathaniel.delucia@kirkland.com
laura.zhu@kirkland.com

_/s/ Melanie K. Sharp_
Melanie K. Sharp (No. 2501)

30438760.1