IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.:  21-1317-GBW-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | ███████████████████ |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | ███████████████ |
| Defendants. | ) | **Redacted - Public Version Filed on:** |
| | | **July 11, 2023** |

**LETTER TO THE HONORABLE SHERRY R. FALLON
FROM MELANIE K. SHARP REGARDING MOTION TO COMPEL,
MOTION FOR PROTECTIVE ORDER, AND MOTION TO ALLOW
LIMITED NUMBER OF DEPOSITIONS AFTER THE CLOSE OF FACT DISCOVERY**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

COOLEY LLP
Michelle S. Rhyu
David Murdter
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
Juan Pablo González
Angela R. Madrigal
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Orion Armon
1144 15th Street, Suite 2300
Denver, CO  80202-2686
(720) 566-4000

*Attorneys for Sight Sciences, Inc.*

Dated:  June 27, 2023

Dear Judge Fallon:

Sight Sciences, Inc. ("Sight") submits this Letter Brief in support of the Joint Motion for Teleconference at D.I. 218.

## I.   IMPROPER CLAWBACKS

The Court should compel Defendants to produce three categories of documents that were improperly clawed back: (A) documents identifying the fact and timing of Defendants' freedom-to-operate ("FTO") analyses of Sight's patents; (B) documents, marked as exhibits, about which Cari Stone testified at deposition; and (C) other documents from Defendants' extensive and ongoing clawbacks.  To the extent any privilege protection existed, privilege has been waived.

The party invoking attorney-client privilege must prove: "(1) there is a communication, (2) made between privileged persons, (3) in confidence, (4) for the purpose of obtaining or providing legal assistance for the client."  *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 477-78 (D. Del. 2012) (citing *In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 359 (3rd Cir. 2007)).  "[B]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly."  *Westinghouse Elec. Corp. v. Republic of Phillipines*, 951 F.2d 1414, 1423 (3d Cir. 1991).  The attorney-client privilege "extends only to *communications* and not to facts."  *Allscripts Healthcare, LLC v. Andor Health, LLC*, C.A. No. 21-704-MAK, 2022 WL 605347, at *2 (D. Del. Jan. 27, 2022) (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981)), *Report and Recommendation adopted*, 2022 WL 611056 (D. Del. Jan. 31, 2022); *see also In re G-I Holdings Inc.*, 218 F.R.D. 428, 431 (D.N.J. 2003) ("[T]he attorney-client privilege shields access to the substance of attorney-client communications, but "[i]nformation such as representation itself or the date upon which services are rendered are freely discoverable") (citing *In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969)).

The attorney-client privilege is waived by voluntary disclosure.  "Disclosing otherwise privileged communications to third parties waives attorney-client privilege, unless, the voluntary disclosure is necessary to assist the client in obtaining legal advice."  *Magnetar*, 886 F. Supp. 2d at 477-78 (citing *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 156 (D. Del. 1977)).  Waiver may occur during a deposition.  *See, e.g.*, *Lee Nat. Corp. v. Deramus*, 313 F. Supp. 224, 227 (D. Del. 1970) (corporate witness that disclosed some confidential conversations with counsel relating to by-law and charter amendments waived privilege as to other conversations regarding the same subject matter); *see also Nationwide Life Ins. Co. v. St. Clair Mobile Home Parks, LLC*, 2005 U.S. Dist. LEXIS 30348, at *20 (D. Mo. Dec. 1, 2005); *Hostetler v. Dillard*, C.A. No. 13-351, 2014 WL 6871262, at *3-4 (S.D. Miss. Dec. 3, 2014).  Voluntary disclosure justifies compelling disclosure of additional privileged information concerning the same subject matter.  *Shionogi Pharma, Inc. v. Mylan Pharms., Inc.*, C.A. No. 10-1077-MMB, 2011 WL 6651274, at *3 (D. Del. Dec. 21, 2011) (citing Fed. R. Evid. 502(a)).

### A.   The Fact and Timing of Ivantis's FTO Analyses of Sight's Patents

On May 25, 2023, Defendants claimed they inadvertently produced three documents originally produced on March 7-8, 2023, asserting attorney client communications.  Ex. 1 at p. 3 (clawing

back IVANTIS_SS_00222500; -00222501; -00300832[1]). Defendants originally argued that these documents reflect attorney mental impressions, suggesting work-product protection, but are not now asserting work product. The documents contain only non-privileged facts, and thus are not protected by the attorney-client privilege or work-product doctrine. *See Allscripts Healthcare*, 2022 WL 605347, at *1-2. The columns labeled "Attorney Notes" contain only factual, non-privileged information. For example, ███████████ is a non-privileged fact and not an attorney-client communication. This shows that an FTO analysis regarding ████████████████████████████████████ ████████████ *See* Exs. 2-4. These documents are relevant to Sight's claims of willful infringement and spoliation. Also, whether or not the information in Exs. 2-4 was privileged, privilege was waived during the *Glaukos* Litigation. In *Glaukos Corp. v. Ivantis, Inc.*, No. 8:18-cv-00620-JVS-JDE (C.D. Cal.), Ivantis's CEO, Dave Van Meter, testified that Ivantis's FTO analysis included Sight. D.I. 189, Ex. 9 at 87:1-13 ("Ken gives [investors] overview of our freedom to operate. ████████████████████████████). Ivantis waived privilege as to the fact that its counsel performed FTO analysis ████████████████ (1) when Mr. Galt gave investors overviews of Ivantis's FTO ████████████████, (2) when it allowed its CEO to testify about it, (3) when it chose to produce that transcript in this case, and (4) when it did not assert privilege when Sight relied on the transcript as an exhibit to its motion to compel. *See id.*; Fed. R. Evid. 502(a). Defendants should be compelled to produce IVANTIS_SS_00222500, -00222501, and -00300832.

## B.    Documents Waived by Cari Stone's Testimony

Cari Stone was VP of Global Glaucoma at Alcon, who was primarily responsible for the decision to acquire Ivantis, as well as Ivantis's post-acquisition integration. During her deposition on June 1, 2023, IVANTIS_SS_00206226, -00331502, -00208219, -00208990, and -00321530 were marked as exhibits.[2] Each of these documents contains non-privileged factual information that Defendants should be compelled to produce. *Allscripts Healthcare*, 2022 WL 605347, at *1-2. Moreover, Defendants waived any privilege applying to IVANTIS_SS_00331502, -00208219, -00208990, and -00321530 by allowing Ms. Stone to testify about them. *Lee Nat.*, 313 F. Supp. at 227. She testified that she was satisfied that IVANTIS_SS_00331502 does not contain any attorney-client privileged information (Ex. 10 at 64:2-66:5), and counsel allowed questioning relating to the document (*id.*, 66:10-77:10). Counsel also allowed questioning relating to IVANTIS_SS_00208219 (*id.*, 89:6-94:14), -00208990 (*id.*, 85:21-88:17), and -00321530 (*id.*, 113:17-118:11).

---

[1] Sight submits excerpted versions of these documents as Exs. 2-4, respectively, "to the court under seal for a determination of [their] claim" pursuant to Fed. R. Civ. P. 26(b)(5)(B), pursuant to the "proper procedure" identified in the Protective Order (D.I. 69 ¶ 11). *See also U.S. Home Corp. v. Settlers Crossing, LLC*, C.A. No. DKC 08-1863, 2012 WL 5193835, at *5 (D. Md. Oct. 18, 2012) (Rule 26(b)(5)(B) permits parties to use and rely on contested documents when briefing a dispute related to them because "[i]t would be wholly illogical to read Rule 26(b)(5)(B) as prohibiting the use of documents 'subject to a claim of privilege' when resolving that very claim of privilege"). Sight will submit the full documents for *in camera* review if the Court wishes.

[2] Sight submits excerpts of these documents as Exs. 5, 6, 7, 8, and 9, respectively.

### C.     Other Clawbacks

From June 9-13, 2023, Defendants clawed back 28 additional documents.[3]  Sight moves to compel production of the following documents from Defendants' clawbacks on June 9 (Ex. 11), June 10 (Ex. 12) and June 13 (Ex. 1), all of which Defendants have vaguely claimed "reflect[] attorney-client communications" without identifying the attorney involved:

- An email from Kenneth Galt (Ivantis VP R&D) to a consultant, along with attachments comprising Sight's patents (Ex. 13): IVANTIS_SS_00325181, -00325182, -00325258, -00325326, and -00325366.  The email was neither authored by nor sent to an attorney, and any privilege was waived by sending the email and documents to a third party.
- Alcon presentations from 2022 titled "Ivantis Integration IT Playbook," which were sent to third parties such as KPMG, KME Systems, and/or Arbala Systems and thus are not privileged:  IVANTIS_SS_00224407, -00224119, -00223595, -00223445, -00223491, -00223545, -00301924, -00301901, and -00301879.[4]  Defendants have not shown that these disclosures to third parties were to obtain legal advice, let alone that they were "necessary to assist the client in obtaining legal advice."  *Magnetar*, 886 F. Supp. 2d at 477-78.
- Alcon presentations from 2022 titled "Ivantis Integration & Hydrus Acceleration Plan ELT update," which do not contain legal advice or any indicia of attorney-client privilege: IVANTIS_SS_00224461 (Ex. 15) and -00331837 (which appear identical).

Additionally, Defendants' clawbacks (225 total) are improper because Rule 502(d) was only ever meant to protect inadvertent disclosure, not intentional disclosure of privileged docs.  *Nielsen Co. (US), LLC v. HyphaMetrics, Inc.*, C.A. No. 21-1591-CJB, 2023 WL 3569362, at *2 (D. Del. May 19, 2023) ("Courts have often explained that the purpose and intent of Rule 502(d) relates to documents that are mistakenly or unintentionally produced—not to documents. . . that were produced intentionally.").  The Protective Order here cannot exceed that limited protection (D.I. 69 ¶ 11).  The nature, volume, and timing of these clawbacks demonstrate that the disclosures do not qualify as inadvertent disclosures.  *See id.*

## II.    SIGHT'S 30(B)(6) TOPICS

Sight served notices of deposition pursuant to Fed. R. Civ. P. 30(b)(6) on May 4, 2023.  Sight moves to compel Defendants to provide a witness for: (A) Ivantis Topic 5/Alcon Topic 6; (B) Ivantis Topic 71/Alcon Topic 69; and (C) Ivantis Topic 72/Alcon Topic 70.  Defendants refused to produce a witness on Topic 5/6 or Topic 72/70, and represented they were "not currently aware of any non-privileged information related to" Topic 71/69. Exs. 16, 17.

### A.     Topic 5/6 (Document filing, storage, retention, preservation, and destruction)

As a result of Ivantis's spoliation in the *Glaukos* litigation, Topic 5/6 seeks "policies and practices with respect to the filing, storage, retention, preservation, and destruction of Documents",

---

[3] On June 19, 2023, Defendants clawed back an additional 109 documents; on June 26, Defendants clawed back an additional 74 documents.  Sight is evaluating those clawbacks.

[4] Sight has attached IVANTIS_SS_00224445 and its parent email (Ex. 14) as representative of this group of related presentations and their respective parent emails.

including (i) "Any suspension or modification" of policies related to Any of the Accused Products; and (ii) identification of evidence affected and the "reasons for and circumstances surrounding such activity." Ex. 16 at 8; Ex. 17 at 8. While the Default Standard applies in this case, this Court has noted that efforts to preserve documents may be discoverable if there is a "credible allegation of spoliation." Ex. 18, Oral Order, *Shilpa Pharma, Inc. v. Novartis Pharms. Corp.*, C.A. No. 21-558-SRF, at 1 (D. Del. June 8, 2022); *see also* D.I. 189 at 4. During a June 5, 2023 meet and confer, Defendants stated that they may provide a witness if there is "normal discovery" on this Topic, but not if the questions will be about a "spoliation narrative." Defendants argued that there was no anticipation of litigation until Sight filed suit, but when Sight asked Defendants if they had fully investigated the issue and were certain there was no prior anticipation of litigation, Defendants refused to answer. Sight also noted that Topic 5/6 also relates to willfulness, because changes in document destruction or retention policies after obtaining knowledge of the patents and of infringement support a finding of willfulness. During a subsequent meet and confer on June 7, Defendants agreed to provide a witness (perhaps different ones for Ivantis and Alcon) to speak about document retention policies, including Ivantis's document destruction policy from 2013-2017. However, on June 14, 2023, Defendants reversed their position and refused to provide a witness for this Topic. Defendants should be compelled to produce a witness because Topic 5/6 is relevant to willful infringement and spoliation, and preparation of a witness is not burdensome, especially since Defendants' document retention policies were recently at issue in *Glaukos*, where the court held that Ivantis spoliated evidence in a case involving the same accused product. *Glaukos Corp. v. Ivantis, Inc.*, No. 8:18-cv-00620-JVS-JDE, 2020 WL 10501850, at *4-5 (C.D. Cal. June 17, 2020).

**B.    Topic 71/69 and Topic 72/70 (FTO Analysis; whether and when it was conveyed to Defendants)**

Topic 71/69 seeks "Any [FTO] analyses conducted by You or on Your behalf with respect to the Accused Products," which Sight offered to narrow to whether and when any FTO analyses regarding the Asserted Patents with respect to the Accused Products occurred. The facts of whether and when FTO analyses were rendered are not privileged. *In re G-I Holdings Inc.*, 218 F.R.D. at 431. Topic 72/70 seeks "The identities, roles, and dates when Any employee, counterparty, or external advisor of Yours evaluated Any of the Patents-in-Suit." Topic 72/70 seeks only non-privileged facts, all of which would ordinarily be on a privilege log. Defendants should be compelled to designate a witness for Topics 71/69 and 72/70 because the information sought is relevant to spoliation and willful infringement and is not privileged. And privilege, if any, was waived because CEO Van Meter testified that Ivantis performed FTO analyses ▓▓▓▓ ▓▓▓▓ and Mr. Galt shared FTO information with investors. *See supra* Section I.A.

**III.    P<span></span>ROTECTIVE ORDER AGAINST LATE DISCOVERY**

Sight moves for a protective order pursuant to Rule 26(c)(1)(A) forbidding the two belated notices of Rule 30(b)(1) depositions and second notice of 30(b)(6) deposition, for which Defendants provided notices on June 15, 2023. The two 30(b)(1) deposition notices are for sales representatives Sabrina Katz and Sarah Sloan Marcus.

Sight seeks a protective order to keep the scope of discovery reasonable and to adhere to the Court-ordered case schedule.  *See* Ex. 19, Oral Order, *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723, D.I. 783 (D. Del. Aug. 3, 2016) (finding that where "much, most, or potentially all" of the additional deposition testimony "is duplicative, not proportional to the needs of the case, and/or the burden outweighs the likely benefit[,]" good cause supports a protective order against further 30(b)(1) fact depositions).  The parties have already scheduled (and taken the majority of) 26 depositions for the 32 business days between May 17 and the June 29 end of fact discovery.  To complete depositions where reasonable notice was provided, the parties have agreed to take seven depositions after June 29.  Neither Ms. Katz nor Ms. Marcus are listed on Sight's Rule 26 or Paragraph 3 disclosures, but documents mentioning Ms. Katz and Ms. Marcus were produced on February 23, 2023.  Defendants' delay until June 15 to notice their depositions is unjustifiable. Nor is there any need for this testimony.  Defendants already deposed two other salespeople, Richard Plank and Chris Phelps (Mr. Phelps manages Ms. Katz and Ms. Marcus), and will depose Mark Papini, the manager of Mr. Phelps and Mr. Plank and Sight's 30(b)(6) designee, who will address Defendants' remaining sales-related questions.

Defendants' second 30(b)(6) deposition is improper for at least four reasons.  First, Defendants did not obtain leave of Court.  *See* Rule 30(a)(2)(A)(ii) ("A party must obtain leave of court . . . : (A) if the parties have not stipulated to the deposition and: . . . (ii) the deponent has already been deposed in the case."); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 233-36 (E.D. Pa. 2008) (holding that Rule 30(a)(2)(A)(ii) applies to 30(b)(6) depositions, and a party must obtain leave of court to notice a second 30(b)(6) deposition).  Second, while negotiating the Scheduling Order in April 2022, Defendants rejected Sight's proposal to allow the parties to serve multiple 30(b)(6) notices.  Ex. 20 at pp. 4-5 (Ivantis removing Sight's proposal that "[p]arties may notice and take multiple 30(b)(6) depositions").  Because Ivantis rejected Sight's proposal to allow multiple notices, leave of Court is required for additional notices.  *See* Rule 30(a)(2)(A)(ii); *State Farm*, 254 F.R.D. at 233-36.  Third, Defendants were dilatory in serving a second 30(b)(6) notice.  Defendants raised these same or highly similar topics in RFPs served months ago.  Fourth, there is significant overlap between these topics and topics served in Defendants' first 30(b)(6) notice.  *Cf.* Ex. 21, Topics 57-67 *with* Ex. 22, Topics 1, 10, 16, 36, 37, 40, 44, 45, 46.

Good cause exists to grant this protective order because the risk that the case schedule would be disrupted, and the unnecessary time and expense of defending additional depositions following the close of fact discovery, far outweigh any alleged need for this discovery.  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994).

Sight seeks a minor amendment to the case schedule in view of seven depositions (requested long ago) that the parties agreed to take after the close of fact discovery to accommodate witness schedules.  Sight seeks permission to supplement its opening expert report regarding damages—due July 13, 2023 (D.I. 93, ¶ 2.i.i)—by July 17, 2023 to account for any relevant testimony provided by Michael Chodzko on July 13, 2023.  Mr. Chodzko's deposition was requested May 11, 2023.  Defendants will still have ample time to address any supplement in their rebuttal expert report due August 17, 2023 (D.I. 93 ¶ 2.i.i).

Respectfully,

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

cc:     All Counsel of Record (by e-mail)

30498540.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.:  21-1317-GBW-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PROPOSED ORDER GRANTING SIGHT SCIENCES, INC.'S MOTION TO COMPEL, MOTION FOR PROTECTIVE ORDER, AND MOTION TO ALLOW A LIMITED NUMBER OF DEPOSITIONS AFTER THE CLOSE OF FACT DISCOVERY**

Upon consideration of Plaintiff Sight Sciences, Inc.'s ("Sight") Motion to Compel, Motion for Protective Order, and Motion to allow a limited number of depositions to be taken after the close of fact discovery (collectively, "the Motion"), and all related pleadings and argument:

IT IS HEREBY ORDERED that:

1.       The Motion is GRANTED.

2.       Within (7) days of this Order, Defendants Ivantis Inc. ("Ivantis"), Alcon Research, LLC, Alcon Vision LLC, and Alcon Inc. (collectively, "Alcon") (collectively, "Defendants") shall produce the following documents that they improperly attempted to claw back: IVANTIS_SS_00222500, -00222501, -00300832, -00206226, -00331502, -00208219, -00208990, -00321530, -00325181, -00325182, -00325258, -00325326, -00325366, -00224407, -00224119, -00223595, -00223445, -00223491, -00223545, -00301924, -00301901, -00301879, 00224461, and -00331837.

3.       Ivantis shall produce a witness to testify on Ivantis 30(b)(6) Topics 5, 71, and 72 at a date and time to be agreed upon by the parties and no later than July 14, 2023.

4.      Alcon shall produce a witness to testify on Alcon 30(b)(6) Topics 6, 69, and 70 at a date and time to be agreed upon by the parties and no later than July 14, 2023.

5.      Sight is granted a protective order forbidding Defendants' second Rule 30(b)(6) deposition noticed on June 15, 2023.

6.      Sight is granted a protective order forbidding the Rule 30(b)(1) depositions of Sight employees Sabrina Katz and Sarah Sloan Marcus noticed on June 15, 2023.

7.      The following depositions may be taken after the close of fact discovery: Andres Rivero on June 30, 2023; Dr. John Galanis on July 6, 2023; Dr. Arsham Sheybani on July 10, 2023; Steve McAuley on July 11, 2023; Michael Chodzko on July 13, 2023; Mark Papini on July 20, 2023; and Dr. Reay Brown on a date to be agreed upon by the parties.

8.      Sight may supplement its opening expert report regarding damages by July 17, 2023 to account for any relevant testimony provided by Michael Chodzko on July 13, 2023.  No other deadlines shall be affected.


        SO ORDERED this _____ day of _____, 2023.


                                        _____
                                        United States Magistrate Judge

30493928.1

# EXHIBIT 1

| | |
|---|---|
| **From:** | Dirks, Steven <steven.dirks@kirkland.com> |
| **Sent:** | Tuesday, June 13, 2023 1:03 AM |
| **To:** | Strosnick, Lauren; Armon, Orion; Rhyu, Michelle; Arora, Priya; Madrigal, Angela R.; Sharp, Melanie; Hallowell, Taylor E.; Higgins, James; Murdter, David; Vanderwall, Cameron C.; Wood, Alissa; Douglas, Jeannine; Gibbs, Tracy; z/Sight Sciences Ivantis |
| **Cc:** | SKIvantis@shawkeller.com; #Alcon-SightSciences |
| **Subject:** | RE: RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Document Production |

Counsel,

The following documents were inadvertently produced and subject to attorney client privilege:

1. IVANTIS_SS_00224461 – Confidential draft presentation reflecting attorney-client communications
2. IVANTIS_SS_00325182 – Document reflecting attorney-client communications
3. IVANTIS_SS_00325258 – Document reflecting attorney-client communications
4. IVANTIS_SS_00325326 – Document reflecting attorney-client communications
5. IVANTIS_SS_00325366 – Document reflecting attorney-client communications
6. IVANTIS_SS_00325472 – Document reflecting attorney-client communications
7. IVANTIS_SS_00325484 – Document reflecting attorney-client communications
8. IVANTIS_SS_00325493 – Document reflecting attorney-client communications
9. IVANTIS_SS_00325504 – Document reflecting attorney-client communications
10. IVANTIS_SS_00325517 – Document reflecting attorney-client communications

We will also supplement our privilege log to reflect these documents. Pursuant to Paragraph 11 of the Protective Order, please return or destroy these documents and any copies. Please confirm you will comply.

We are continuing to investigate a vendor issue relating to the screening of privileged materials and working to identify any other documents that may need to be clawed back.

Please notify us immediately if you encounter any documents that appear on their face to include attorney-client privileged information, including those explicitly marked as such. *See* Protective Order ("If a Receiving Party identifies what appears on its face to be Privileged Information, the Receiving Party is under a good-faith obligation to notify that Producing Party."). In particular, we expect you not to use any documents that appear on their face to contain privileged information, including at depositions, without first notifying us.

Best,
Steven

**Steven Dirks**

-----------------------------------------------------------
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389 3024  **M** +1 202 531 9787
**F** +1 202 389 5200
-----------------------------------------------------------
steven.dirks@kirkland.com

**From:** Teng, Austin C. <austin.teng@kirkland.com>
**Sent:** Friday, June 9, 2023 11:30 PM
**To:** Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Document Production

Counsel,

The following documents were inadvertently produced and subject to attorney client privilege:

1. IVANTIS_SS_00224407 - Confidential draft presentation reflecting confidential attorney-client communications
2. IVANTIS_SS_00224461 - Confidential draft presentation reflecting confidential attorney-client communications
3. IVANTIS_SS_00224119 - Confidential draft presentation reflecting confidential attorney-client communications
4. IVANTIS_SS_00223595 - Confidential draft presentation reflecting confidential attorney-client communications
5. IVANTIS_SS_00223445 - Confidential draft presentation reflecting confidential attorney-client communications
6. IVANTIS_SS_00223491 - Confidential draft presentation reflecting confidential attorney-client communications
7. IVANTIS_SS_00223545 - Confidential draft presentation reflecting confidential attorney-client communications
8. IVANTIS_SS_00223208 - Confidential draft presentation reflecting confidential attorney-client communications
9. IVANTIS_SS_00300830 – Document reflecting confidential attorney client communications
10. IVANTIS_SS_00301924 - Confidential draft presentation reflecting confidential attorney-client communications
11. IVANTIS_SS_00301901 - Confidential draft presentation reflecting confidential attorney-client communications
12. IVANTIS_SS_00301879 - Confidential draft presentation reflecting confidential attorney-client communications
13. IVANTIS_SS_00303934 - Confidential draft presentation reflecting confidential attorney-client communications
14. IVANTIS_SS_00445906 - Confidential draft presentation reflecting confidential attorney-client communications
15. IVANTIS_SS_00304267 - Confidential draft presentation reflecting confidential attorney-client communications
16. IVANTIS_SS_00331837 - Confidential draft presentation reflecting confidential attorney-client communications
17. IVANTIS_SS_00206218 -  Confidential draft document seeking legal advice from counsel

We will also supplement our privilege log to reflect these documents. Pursuant to Paragraph 11 of the Protective Order, please return or destroy these documents and any copies. Please confirm you will comply.

We are continuing to investigate a vendor issue relating to the screening of privileged materials and working to identify any other documents that may need to be clawed back.

Please notify us immediately if you encounter any documents that appear on their face to include attorney-client privileged information, including those explicitly marked as such. *See* Protective Order ("If a Receiving Party identifies what appears on its face to be Privileged Information, the Receiving Party is under a good-faith obligation to notify that Producing Party."). In particular, we expect you not to use any documents that appear on their face to contain privileged information, including at depositions, without first notifying us.

Best,
Austin

**Austin Teng**
-------------------------------------------------------
**KIRKLAND & ELLIS LLP**

401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101
----------------------------------------------------
austin.teng@kirkland.com

---

**From:** Teng, Austin C. <austin.teng@kirkland.com>
**Sent:** Thursday, May 25, 2023 3:40 PM
**To:** Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Document Production

Counsel,

It has come to our attention that you recently served a supplemental response to Defendant's Interrogatory No. 6 that references information from the "Attorney Notes" column of the following spreadsheets:

1. IVANTIS_SS_00222500 - Document prepared by counsel reflecting confidential attorney client communications
2. IVANTIS_SS_00222501 - Document prepared by counsel reflecting confidential attorney client communications
3. IVANTIS_SS_00300832 - Document prepared by counsel reflecting confidential attorney client communications

These documents were inadvertently produced and subject to attorney client privilege. Given the volume of documents that has been produced in this case, we would appreciate it if you would notify us first if you encounter what appears to be privileged information. *See* Protective Order (Dkt. 69), ¶ 11 ("If a Receiving Party identifies what appears on its face to be Privileged Information, the Receiving Party is under a good-faith obligation to notify that Producing Party.").

We will supplement our privilege log to reflect these documents. Pursuant to Paragraph 11 of the Protective Order, please return or destroy these documents and any copies, including any references to the information in your discovery responses. Please confirm you will comply.

Best regards,
Austin

**Austin Teng**
----------------------------------------------------
**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101
----------------------------------------------------
austin.teng@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 2

# Disputed Clawback
# (Excerpted)

| Publication Number | Abstract | Clipped Image | Current Assignee |
|---|---|---|---|



| Publication Number | Inventor | Priority Date(s) | Main Family Members | Extended Family Members |
|---|---|---|---|---|

**Publication Number**    **Claims**



**Publication Number**      **Attorney Notes**



# EXHIBIT 3
# Disputed Clawback
# (Excerpted)

| Publication Number | Abstract | Clipped Image | Current Assignee |
|---|---|---|---|



| Publication Number | Inventor | Priority Date(s) | Main Family Members | Extended Family Members |
|---|---|---|---|---|



**Publication Number**          **Claims**



**Publication Number**        **Attorney Notes**



# EXHIBIT 4
# Disputed Clawback
# (Excerpted)

| Publication Number | Abstract | Clipped Image |
|---|---|---|



| Publication Number | Current Assignee | Inventor | Priority Date(s) | Main Family Members |
|---|---|---|---|---|

| Publication Number | Extended Family Members | Claims |
| --- | --- | --- |



**Publication Number**          **Attorney Notes**



IVANTIS_SS_00300832

# EXHIBIT 5

█████████████

# Disputed Clawback
# (Excerpted)



IVANTIS_SS_00206226



5

IVANTIS_SS_00206230

# EXHIBIT 6



## Disputed Clawback
## (Excerpted)



IVANTIS_SS_00331502



IVANTIS_SS_00331503



IVANTIS_SS_00331507



IVANTIS_SS_00331522



IVANTIS_SS_00331524



IVANTIS_SS_00331528

# EXHIBIT 7

███████████████

# Disputed Clawback
# (Excerpted)



IVANTIS_SS_00208219



IVANTIS_SS_00208220



IVANTIS_SS_00208222



IVANTIS_SS_00208225

# EXHIBIT 8

## Disputed Clawback
## (Excerpted)



IVANTIS_SS_00208990



IVANTIS_SS_00208993

# EXHIBIT 9

██████████████████

# Disputed Clawback
# (Excerpted)



IVANTIS_SS_00321530



IVANTIS_SS_00321534

# EXHIBIT 10
## (Excerpted)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SIGHT SCIENCES, INC.,      )
                              )
            Plaintiff,       )
                              )
     vs.                  )   C.A. No.: 21-1317-GBW-SRF
                              )
IVANTIS, INC., et al.,    )
                              )
            Defendants.      )
                              )

REMOTE VIDEOGRAPHED

DEPOSITION OF CARI STONE

COSTA MESA, CALIFORNIA

THURSDAY, JUNE 1, 2023

Reported by:
LAURA A. RUTHERFORD, RPR
CSR No. 9266



Page 2

1        IN THE UNITED STATES DISTRICT COURT
2            FOR THE DISTRICT OF DELAWARE
3
4
5    SIGHT SCIENCES, INC.,   )
                              )
6        Plaintiff,          )
                              )
7    vs.                     )  C.A. No.: 21-1317-GBW-SRF
                              )
8    IVANTIS, INC., et al.,  )
                              )
9        Defendants.         )
                              )
10
11
12
13
14
15        Remote videographed deposition of CARI STONE,
16    taken on behalf of Plaintiff, at 650 Town Center Drive,
17    10th Floor, Costa Mesa, California, beginning at 9:06
18    a.m., and ending at 1:46 p.m., on Thursday, June 1, 2023,
19    before LAURA A. RUTHERFORD, RPR, Certified Shorthand
20    Reporter No. 9266.
21
22
23
24
25

Page 3

1    APPEARANCES:
2
3    For Plaintiff:
4        COOLEY, LLP
         BY:  ORION ARMON, ESQ. (VIA ZOOM)
5        4401 Eastgate Mall, 4th Floor
         San Diego, CA  92121
6        (720) 566-4119
         oarmon@cooley.com
7
8    For Defendants:
9        KIRKLAND ELLIS
         BY:  AUSTIN C. TENG, ESQ.
10       401 Congress Avenue
         Austin, Texas  78701
11       (512) 355-4351
         austin.teng@kirkland.com
12
13   Videographer:
14       SERGIO ESPARZA, VIDEOGRAPHER
15
16
17
18
19
20
21
22
23
24
25

Page 4

1                    INDEX
2    WITNESS:                       PAGE
3    CARI STONE
4        BY MR. ARMON          8
5
6
7                    EXHIBITS
8    EXHIBIT NO.     DESCRIPTION              PAGE
9    1    DEPOSITION NOTICE          10
10   3    LINKEDIN PROFILE           10
11   4    (BATES STAMPED IVANTIS__SS_00206372)    33
12   5    (BATES STAMPED IVANTIS_SS_00206693)     35
13   6    ALCON PLUS IVANTIS, A PERFECT MATCH (BATES
14       STAMPED IVANTIS_SS_00206771)    51
15   7    ALCON Q AND A CONFIDENTIAL.  NOT FOR
16       EXTERNAL DISTRIBUTION (BATES STAMPED
17       IVANTIS_SS_00206226)            57
18   8    (BATES NUMBER IVANTIS_SS_00331502)    63
19   9    ITHICA PRICING SCENARIO WORKSHOP,
20       SEPTEMBER 20, 2021 (BATES STAMPED
21       IVANTIS_SS_00331626)            77
22   10   EMAIL (BATES STAMPED IVANTIS_SS_00224170)    83
23   11   INDUS INDICATION STRATEGY (BATES STAMPED
24       IVANTIS_SS_00208990)            85
25

Page 5

1                INDEX (CONT.)
2                EXHIBITS (CONT.)
3    EXHIBIT NO.     DESCRIPTION              PAGE
4    12   INDUS PROMOTIONAL GUARDRAILS, 20, 2022
5        (BATES STAMPED IVANTIS_SS_00208219)    89
6    13   SURGICAL GLAUCOMA UPDATE, NOVEMBER 3, 2022
7        (BATES STAMPED IVANTIS_SS_00331906)    94
8    14   ASCRS 2021 USER MEETING (BATES STAMPED
9        IVANTIS_SS_00206140)            98
10   15   GLOBAL SURGICAL GLAUCOMA OVERVIEW (BATES
11       STAMPED IVANTIS_SS_00207164)    104
12   16   U.S. SURGICAL GLAUCOMA, SECOND QUARTER '22,
13       BRAND HEALTH TRACKER, JUNE 2022 (BATES
14       STAMPED IVANTIS_SS_00208022)    106
15   17   KEY DEAL EXECUTION IVANTIS (BATES
16       STAMPED IVANTIS_SS_00209169)    109
17   18   ELT COMPETITIVE UPDATE (BATES STAMPED
18       IVANTIS_SS_00207107)            111
19   19   PROJECT ITHICA ACQUISITION DILIGENCE
20       KICK-OFF, SEPTEMBER 2021 (BATES STAMPED
21       IVANTIS_SS_00321530)            113
22
23
24
25




Page 6

1          INDEX (CONT.)

2

3

4          INFORMATION REQUESTED

5             (None)

6

7

8          INSTRUCTION NOT TO ANSWER

9          PAGE    LINE

10          42      18

11          61       9

12          63       2

13         118     16

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

08:52   1          COSTA MESA, CALIFORNIA; THURSDAY, JUNE 1, 2023

08:52   2                  9:06 A.M. - 1:46 P.M.

08:52   3                       ---oOo---

08:52   4

08:57   5          THE VIDEOGRAPHER:  Good morning.  We are on

09:06   6      the record.  This begins video number one in the

09:06   7      deposition of Cari Stone, in the matter of Sight Sciences

09:06   8      versus Ivantis, in the United States District Court of the

09:06   9      District of Delaware, case number 21-1317-GBW-SRF.

09:06  10          Today's date is June 1, 2023, and the time is

09:06  11      9:06 a.m.  This deposition is being taken at 650 Town

09:06  12      Center Drive, 10th floor, in Costa Mesa, California, at

09:06  13      the request the Colley, LLP.

09:06  14          My name is Sergio Esparza, the videographer.

09:06  15      The court reporter is Laura Rutherford.  We are both from

09:06  16      Magna Legal Services.

09:06  17          Will counsel and all parties present state

09:06  18      their appearances and whom they represent?

09:06  19          MR. ARMON:  Good morning.  Orion Armon with

09:06  20      Colley on behalf of plaintiff, Sight Sciences, Inc.

09:07  21          MR. TENG:  Austin Teng with Kirland Ellis on

09:07  22      behalf of defendants and Ivantis.

09:07  23          THE WITNESS:  Cari Stone.  I am the witness,

09:07  24      on behalf of Alcon and Ivantis.

09:07  25          THE VIDEOGRAPHER:  Thank you.

Page 8

09:07   1          Would the court reporter please swear in the

09:07   2      witness?

09:07   3

09:07   4              CARI STONE,

09:07   5      having been first duly placed under oath,

09:07   6      was examined and testified as follows:

09:07   7

09:07   8              EXAMINATION

09:07   9   BY MR. ARMON:

09:07  10      Q.  Please state your full name.

09:07  11      A.  My name is Cari Stone.

09:07  12      Q.  Okay.

09:07  13          You're a former employee of Alcon; correct?

09:07  14      A.  That's correct.

09:07  15      Q.  Okay.

09:07  16          What was your title when you departed Alcon?

09:07  17      A.  Vice-President of Global Glaucoma.

09:07  18      Q.  Okay.

09:07  19          And when did you leave Alcon's employment?

09:07  20      A.  My last day of employment was December 31,

09:07  21      2022.

09:08  22      Q.  Approximately when were you hired by Alcon?

09:08  23      A.  In August of 2020.

09:08  24      Q.  Okay.

09:08  25          Do you have any consulting arrangement with

Page 9

09:08   1   Alcon today?

09:08   2      A.  No.

09:08   3      Q.  You understand that you're here today to

09:08   4   testify regarding your work at Alcon; correct?

09:08   5      A.  Correct.

09:08   6      Q.  Okay.

09:08   7          Is there any reason that you can't provide

09:08   8   complete and truthful testimony today?

09:08   9      A.  No.

09:08  10      Q.  Okay.

09:08  11          And you understand that you're testifying

09:08  12   under oath; correct?

09:08  13      A.  Correct.

09:08  14      Q.  Okay.

09:08  15          And you understand that the testimony you

09:08  16   provide today is being recorded and may be used in the

09:08  17   court proceeding between Sight Sciences and Alcon;

09:08  18   correct?

09:09  19      A.  I do.

09:09  20      Q.  Okay.

09:09  21          Ms. Stone, I'll be using this tool called

09:09  22   Agile Law to show you some exhibits today.  The left-hand

09:09  23   side of your browser window will show up a list of

09:09  24   exhibits as I bring them up.

09:09  25          And you may need to refresh the browser





Page 62







18 (Pages 66 to 69)





19 (Pages 70 to 73)



| 11:05 | 11 | Q. All right. |
| 11:05 | 12 | Let's look at a new exhibit. This is marked |
| 11:05 | 13 | as Exhibit 9. |
| 11:05 | 14 | (Exhibit Number 9 was marked for |
| 11:05 | 15 | identification.) |
| 11:05 | 16 | Q. BY MR. ARMON: It's a document titled, |
| 11:05 | 17 | "Ithica Pricing Scenario Workshop, September 20, 2021." |
| 11:05 | 18 | The first page number, Ivantis_SS_00331626. |
| 11:05 | 19 | A. Yeah. |
| 11:05 | 20 | MR. TENG: And, Mr. Armon, if you'd allow me |
| 11:05 | 21 | just to make a brief remark on the record here? |
| 11:05 | 22 | As we've been going through this document and |
| 11:05 | 23 | through questions, it appears that there may be some |
| 11:05 | 24 | comments in this document that were not fully redacted for |
| 11:05 | 25 | privilege and may contain attorney/client notes that were |

20 (Pages 74 to 77)



Page 82

```
11:12   1           Q.  And what happened?
11:12   2           You referenced to changes in reimbursement at
11:12   3   the end of 2022.  Had those changes been announced before
11:12   4   you departed?
11:12   5           A.  Those changes -- just to really
11:12   6   clear, those changes were finalized in November '21.  They
11:12   7   took effect on January 1, 2022.
11:12   8           And so during my entire tenure, the
11:12   9   reimbursement for the TM Stent category, which includes
11:13  10   Hydrus and iStent, went down from, on average, $6- to
11:13  11   $700, to $135.  And at the time, Omni was getting
11:13  12   reimbursed in the $700 range.
11:13  13           Q.  Were there any other changes in reimbursement
11:13  14   during your tenure that affected the MIGS market?
11:13  15           A.  Not until January 1st of '23.  The next
11:13  16   change was implemented January 1, 2023, but I was -- I was
11:13  17   gone on the 31st.
11:13  18           Q.  Okay.  Okay.
11:13  19           We've been going for a bit more than an hour.
11:13  20   I know there's been a couple breaks, but do you need a
11:13  21   break now, or shall we continue forward?
11:14  22           A.  Do you want to plow forward for 30 more
11:14  23   minutes?
11:14  24           Q.  Sure.  All right.
11:14  25           Next exhibit, this is Exhibit 10.
```

Page 83

```
11:14   1           (Exhibit Number 10 was marked for
11:14   2   identification.)
11:14   3           Q.  BY MR. ARMON:  First page is
11:14   4   Ivantis_SS_00224170.  Please review and let me know if you
11:14   5   recognize it.
11:14   6           A.  Let me just read this.
11:15   7           Yep.
11:15   8           Q.  What was the nature of the email exchange
11:15   9   here?
11:15  10           A.  Can you clarify, kind of, what you're looking
11:15  11   for?
11:15  12           Q.  Yeah.
11:15  13           The subject is, "Key One, Hydrus
11:15  14   Performance," and it's an email between Laurentattias and
11:15  15   you regarding a market scope report; right?
11:15  16           A.  No.  It was -- so it was originally an email
11:15  17   from me to ELT members and other key members of the
11:16  18   Ivantis integration team, basically summarizing the Hydrus
11:16  19   performance for the quarter in the context of how the
11:16  20   market performed that quarter.
11:16  21           Q.  And you were relying upon the Q1-2022 market
11:16  22   scope quarterly survey results as the basis for the email
11:16  23   update; right?
11:16  24           A.  No.  Some of it, but the Glaukos data and the
11:16  25   Omni data, I believe from recollection, were from their
```

Page 84

```
11:16   1   public financials, since they are both publicly traded
11:16   2   companies.  Yeah.  You can see the sources below.
11:16   3           Q.  I see the footnotes.  Yes, thank you.
11:17   4           Would there be any aspect of the market scope
11:17   5   quarterly survey results that you would rely upon to
11:17   6   inform your understanding of the relevant market shares of
11:17   7   players in the MIGS market?
11:17   8           MR. TENG:  Objection.  Vague and ambiguous.
11:17   9           THE WITNESS:  It's really hard -- it's really
11:17  10   hard to do.  The market scope numbers, as I said,
11:17  11   generally are inflated.
11:17  12           So when we were calculating market share, we
11:17  13   try to keep it as clean as possible.  And that's why we
11:17  14   really kept it to iStent and Hydrus, because we knew
11:17  15   those -- those numbers from their financials and our
11:17  16   performance.
11:17  17           Q.  BY MR. ARMON:  When you mentioned that your
11:17  18   experience the markets scope data was inflated, inflated
11:17  19   how?
11:17  20           A.  Like the size of the market was -- felt
11:18  21   higher than it really was.  Like, if you took the number
11:18  22   they provided and added up all the public companies you
11:18  23   knew, plus you estimated the private companies, it still
11:18  24   felt like, you know, that number that they put out there
11:18  25   was a little bit high.
```

Page 85

```
11:18   1           And, you know, they take data from all
11:18   2   different sources to get what they believe is the best
11:18   3   estimate.
11:18   4           Q.  Okay.
11:18   5           I believe you earlier testify, though, that
11:18   6   market scope is still really the only game in town for
11:18   7   trying to compile MIGS market share data?
11:18   8           MR. TENG:  Objection.  Misstates testimony.
11:18   9           Q.  BY MR. ARMON:  Is that right?
11:18  10           A.  That's not what I said.  I never said we used
11:18  11   market scope data to calculate market share.  I said it's
11:18  12   the only game in town to get relative sizes of the market.
11:18  13           Q.  Okay.  Understood.
11:18  14           Had you -- had Alcon ever, during your time
11:19  15   at the company, quantified the amount of inflation in the
11:19  16   market scope numbers you were seeing, or is that more of a
11:19  17   gut feel?
11:19  18           A.  It's a gut feel.  It's possible.  It's
11:19  19   possible to calculate that.
```



| 1:25 | 19 | It's been about half an hour.  Would you like |
| 1:25 | 20 | to keep a break or keep going? |
| 1:25 | 21 | A.  Sure.  We can take five minutes, if that's |
| 1:25 | 22 | okay with you. |
| 1:25 | 23 | MR. ARMON:  All right.  Let's go off the |
| 1:25 | 24 | record. |
| 1:25 | 25 | THE VIDEOGRAPHER:  Off the record the time |

Page 89

| 1:25 | 1 | 11:26 a.m. |
| 1:26 | 2 | (Pause in proceeding.) |
| 1:26 | 3 | THE VIDEOGRAPHER:  On the record.  The time |
| 1:32 | 4 | is 11:3 2:00 a.m. |
| 1:32 | 5 | Q.  BY MR. ARMON:  All right. |
| 1:32 | 6 | Marking another exhibit.  This is Exhibit 12, |
| 1:32 | 7 | Ivantis_SS_00208219. |
| 1:32 | 8 | (Exhibit Number 12 was marked for |







Page 96

| | | |
|---|---|---|
| 11:45 | 1 | Q.  From your perspective, was Hydrus competing |
| 11:45 | 2 | with all of the commercialized products here, or some |
| 11:45 | 3 | subset of them? |
| 11:45 | 4 | MR. TENG:  Objection.  Vague. |
| 11:45 | 5 | THE WITNESS:  I can go back to what I told |
| 11:45 | 6 | you before, you know.  We always saw the TM Stents as our |
| 11:45 | 7 | primary competitor.  We measured market share against |
| 11:45 | 8 | iStent, which is a TM Stent.  But we recognized that there |
| 11:45 | 9 | was a larger market of MIGS of which the other players, |
| 11:45 | 10 | not exhaustive, are included on this slide. |
| 11:45 | 11 | BY MR. ARMON:  Okay. |
| 11:45 | 12 | So the significant players in the trebecular |
| 11:45 | 13 | mesh work/MIGS space are segmented into stent, |
| 11:45 | 14 | canaloplasty and goniotomy? |
| 11:45 | 15 | A.  Yeah. |
| 11:45 | 16 | Q.  Is that the way that Alcon thought about it |
| 11:46 | 17 | for its business planning purposes? |
| 11:46 | 18 | A.  Yes. |
| 11:46 | 19 | Q.  Okay. |
| 11:46 | 20 | And your view was that Hydrus was primarily |
| 11:46 | 21 | competing in the stent bucket, but also competing more |
| 11:46 | 22 | broadly in the TM/MIGS category. |
| 11:46 | 23 | Is that fair? |
| 11:46 | 24 | A.  It was part of the category.  But I think the |
| 11:46 | 25 | important distinction is not only are these three lanes |

---

| | | |
|---|---|---|
| 11:42 | 15 | Let's move to a new exhibit, Exhibit 13. |
| 11:42 | 16 | (Exhibit Number 13 was marked for |
| 11:42 | 17 | identification.) |
| 11:42 | 18 | Q.  BY MR. ARMON:  Titled "Surgical Glaucoma |
| 11:42 | 19 | Update, November 3, 2022."  First slide number |
| 11:42 | 20 | Ivantis_SS_00331906. |
| 11:42 | 21 | A.  Yeah.  Sorry.  I'm just looking through this. |
| 11:43 | 22 | Okay. |
| 11:43 | 23 | Q.  Did you prepare this Exhibit 13? |
| 11:43 | 24 | A.  I had a hand -- oh, I had a hand in it. |
| 11:43 | 25 | Q.  Were these slides that you used to provide an |

Page 95

| | | |
|---|---|---|
| 11:43 | 1 | update to the ELT regarding the surgical glaucoma |
| 11:43 | 2 | business? |
| 11:43 | 3 | A.  Yes. |
| 11:43 | 4 | Q.  How frequently did you provide surgical |
| 11:43 | 5 | glaucoma updates to the ELT during calendar year 2022? |
| 11:43 | 6 | A.  I mentioned quarterly before, same answer. |
| 11:43 | 7 | Q.  Okay.  Okay. |
| 11:44 | 8 | So this would have been one of the quarterly |
| 11:44 | 9 | updates? |
| 11:44 | 10 | A.  Correct. |
| 11:44 | 11 | Q.  What are Alcon's quarterly reporting dates? |
| 11:44 | 12 | A.  You mean for their financials, like to the |
| 11:44 | 13 | street? |
| 11:44 | 14 | Q.  Well, I just don't associate November 3rd of |
| 11:44 | 15 | 2022 as the end of a quarter.  So would you report at the |
| 11:44 | 16 | beginning or end of a quarter, or would you report |
| 11:44 | 17 | approximately four times? |
| 11:44 | 18 | A.  Approximately four times. |
| 11:44 | 19 | Q.  Okay.  Thank you.  All right. |
| 11:44 | 20 | Let's jump into the contents of Exhibit 13. |
| 11:44 | 21 | A.  Um-hum. |
| 11:44 | 22 | Q.  We'll move to slide 3.  I'll move you there. |
| 11:44 | 23 | This is a slide titled, "Glaucoma Competitive Landscape, |
| 11:44 | 24 | Preread Only." |
| 11:44 | 25 | A.  Um-hum. |

Page 97

| | | |
|---|---|---|
| 11:46 | 1 | the type of procedures that are performed, they all get |
| 11:46 | 2 | reimbursed at different rates as well.  And so, you know, |
| 11:46 | 3 | it's important to think about the competition in light of |
| 11:46 | 4 | reimbursement as well. |
| 11:46 | 5 | Q.  Okay. |
| 11:46 | 6 | And by the "competition," you mean with |
| 11:46 | 7 | respect to the TM/MIGS segment? |
| 11:46 | 8 | A.  Those three rows. |





Page 110

| | | |
|---|---|---|
| 13:28 | 1 | it, but -- it looks like something that would be prepared |
| 13:28 | 2 | as an ELT update. |
| 13:28 | 3 | Q.  Okay. |
| 13:28 | 4 | A.  As you can see, it is not complete.  It's |
| 13:28 | 5 | still a draft. |
| 13:28 | 6 | Q.  Okay. |
| 13:28 | 7 | Do you recall when in time, presumably during |
| 13:28 | 8 | 2022, when -- what month in 2022 you would have prepared |
| 13:29 | 9 | this? |
| 13:29 | 10 | A.  I'm going to deduce that it was in probably |
| 13:29 | 11 | November, because we had completed the ERP transition in |
| 13:29 | 12 | October of 2022.  November or potentially December, |
| 13:29 | 13 | but -- without a date, that's my -- that's, I think, a |
| 13:29 | 14 | reasonable time. |
| 13:29 | 15 | Q.  All right. |
| 13:29 | 16 | Bottom right-hand quadrant, "Upcoming |
| 13:29 | 17 | Milestones."  There's a reference to "MDR approval."  Do |
| 13:30 | 18 | you recall what MDR stood for? |
| 13:30 | 19 | A.  I don't know the -- I'm not a regulatory |
| 13:30 | 20 | expert, so I forget what the acronym is.  But all products |
| 13:30 | 21 | in the EU had to transition from MDD approval to MDR |
| 13:30 | 22 | approval as part of a humongous transition for all medical |
| 13:30 | 23 | devices in Europe.  That's what that is referring to. |
| 13:30 | 24 | Q.  All right. |
| 13:30 | 25 | Here's another exhibit, 18. |

Page 111

| | | |
|---|---|---|
| 13:30 | 1 | (Exhibit Number 18 was marked for |
| 13:30 | 2 | identification.) |
| 13:30 | 3 | Q.  BY MR. ARMON:  Labeled Ivantis_SS_00207120. |
| 13:30 | 4 | Do you recall seeing this slide prior to |
| 13:30 | 5 | today? |
| 13:30 | 6 | A.  Can I look through it? |
| 13:31 | 7 | Q.  Yes.  Go ahead. |
| 13:31 | 8 | And I think I messed on the page number |
| 13:31 | 9 | reference.  So it's "ELT Competitive Update," |
| 13:31 | 10 | Ivantis_SS_00207107. |
| 13:31 | 11 | A.  I'm looking at the right document. |
| 13:31 | 12 | Q.  Okay. |
| 13:31 | 13 | And would you have prepared or been involved |
| 13:31 | 14 | in preparing this ELT Competitive Update? |
| 13:31 | 15 | A.  Give me a second to look at this, please. |
| 13:32 | 16 | So the only slides that I would have been |
| 13:32 | 17 | associated with in this deck are slides 13 and 14.  This |
| 13:32 | 18 | is a much broader deck that was presented on the overall |
| 13:32 | 19 | surgical business and the vision care business, |
| 13:32 | 20 | presumably, to ELT. |
| 13:32 | 21 | I did not present this but, you know, these |
| 13:32 | 22 | two slides we just recently talked about, 13 and 14.  So |
| 13:32 | 23 | those are the only two that have any relevance to my |
| 13:32 | 24 | role. |
| 13:32 | 25 | Q.  Okay. |

Page 112

| | | |
|---|---|---|
| 13:32 | 1 | And with respect to slide 14, which is the |
| 13:32 | 2 | reference to a growing but increasingly competitive |
| 13:32 | 3 | market, do you recall who made the decision to update that |
| 13:32 | 4 | slide to include Sight Sciences and New World Medical? |
| 13:33 | 5 | A.  I don't know.  And again, this is clearly a |
| 13:33 | 6 | draft.  So unless you have the final version of this |
| 13:33 | 7 | document, there's no guarantee that the final version had |
| 13:33 | 8 | that.  I can't tell you with any certainty whether or not |
| 13:33 | 9 | unless you show me the final document. |
| 13:33 | 10 | Q.  Let's look back at Exhibit 15, please. |
| 13:33 | 11 | A.  (Witness complies.)  Yep. |
| 13:33 | 12 | Q.  Isn't this the final version of that slide? |
| 13:34 | 13 | A.  This is an excerpt from -- where did this |
| 13:34 | 14 | come from? |
| 13:34 | 15 | Where did these two slides come from? |
| 13:34 | 16 | Q.  It was produced that way, so I don't know. |
| 13:34 | 17 | A.  It's hard for me to say which is the final |
| 13:34 | 18 | version, because the other two competitors are not |
| 13:34 | 19 | included. |
| 13:34 | 20 | You know, if you can go back to slide 14 of |
| 13:34 | 21 | the other document, you know, iStar and Micro Optics are |
| 13:34 | 22 | on here.  But on the other document, those are not.  So |
| 13:34 | 23 | it's hard for me to know which is the final document. |
| 13:34 | 24 | Neither seem complete, if that makes sense. |
| 13:34 | 25 | Q.  Does iStar have a product that's FDA approved |

Page 113

| | | |
|---|---|---|
| 13:34 | 1 | for sale in the United States? |
| 13:34 | 2 | A.  Not yet, no. |
| 13:34 | 3 | Q.  Okay. |
| 13:35 | 4 | Does Micro Optics have a product that's FDA |
| 13:35 | 5 | approved in the United States? |
| 13:35 | 6 | A.  Not yet, no. |
| 13:35 | 7 | Q.  Okay. |
| 13:35 | 8 | So as to the U.S. mild to moderate surgical |
| 13:35 | 9 | glaucoma market, iStar and Micro Optics wouldn't be |
| 13:35 | 10 | relevant; correct? |
| 13:35 | 11 | A.  That's true as of right now, yes. |
| 13:35 | 12 | Hold on.  I want to go back. |
| 13:35 | 13 | Can I go back to this? |
| 13:35 | 14 | Yes.  They're not -- they are not currently |
| 13:35 | 15 | marketed in the U.S. market.  That's correct. |




MAGNA
LEGAL SERVICES







Page 120

```
3:45    1   is 1:46 p.m.
3:46    2          MR. TENG:  I'll take a rough, please.
3:46    3          THE REPORTER:  Thank you.
3:46    4          (Ending time:  1:46 p.m.)
        5
        6
        7
        8
        9
       10
       11
       12
       13
       14
       15
       16
       17
       18
       19
       20
       21
       22
       23
       24
       25
```

```
13:44   13   confusing the witness, I appreciate you trying to ask your
13:44   14   questions without inquiring.
13:44   15          I'm just going to instruct the witness not to
13:44   16   answer these questions and -- on the basis of
13:44   17   attorney/client privilege.
13:44   18      Q.  BY MR. ARMON:  You are going to follow that
13:44   19   instruction?
13:44   20      A.  Yeah.
13:44   21      Q.  Okay.
13:44   22          I appreciate your time.  I don't have any
13:44   23   further questions.
13:44   24      A.  Are you going to ask me?
13:44   25          MR. TENG:  Let me just review here if I have
```

Page 119

```
13:44    1   any questions.
13:44    2          I'd like to go ahead and designate the
13:45    3   transcript as highly confidential, attorney's eyes only.
13:45    4          Also, just to recap some of the discussion
13:45    5   earlier today, during questioning, counsel for plaintiffs
13:45    6   introduced a number of exhibits, including at least
13:45    7   Exhibit 7, 8 and 12, that appear to have been
13:45    8   inadvertently produced with information concerning or
13:45    9   containing confidential attorney/client privileged
13:45   10   information.
13:45   11          We instruct that these exhibits should be
13:45   12   clawed back, and defense will review the transcript and
13:45   13   the exhibit, follow up regarding any other documents that
13:45   14   may need to be clawed back.
13:45   15          MR. ARMON:  So, Austin, other than the one
13:45   16   stipulation I provided on the record, you'll need to
13:45   17   follow up with us after the deposition today, and we'll
13:45   18   address those issues with you.
13:45   19          MR. TENG:  Understood we'll follow up in
13:45   20   writing.
13:45   21          MR. ARMON:  All right.
13:45   22          Thanks very much, Ms. Stone.  I appreciate
13:45   23   your time.
13:45   24          THE WITNESS:  Sure.  Thank you.
13:45   25          THE VIDEOGRAPHER:  Off the record.  The time
```

```
        1
        2
        3
        4          I, CARI STONE, do hereby declare under penalty of
        5   perjury that I have read the foregoing transcript of my
        6   deposition; that I have made such corrections as noted
        7   herein, in ink, initialed by me, or attached hereto; that
        8   my testimony as contained herein, as corrected, is true
        9   and correct.
       10          EXECUTED this _____ day of _____,
       11   at _____, _____.
                      (City)          (State)
       12
       13
       14
       15
                         _____
       16             CARI STONE
       17
       18
       19
       20
       21
       22
       23
       24
       25
```

31 (Pages 118 to 121)



1
2       I, the undersigned, a Certified Shorthand Reporter
3   for the State of California, do hereby certify:
4       That prior foregoing proceedings were taken before
5   me at the time and place herein set forth; that any
6   witnesses in the foregoing proceedings, prior to
7   testifying, were placed under oath;
8       That a verbatim record of the proceedings was made
9   by me using machine shorthand which was thereafter
10  transcribed under my direction; further, that the
11  foregoing is an accurate transcription thereof.
12      I further certify that I am neither financially
13  interested in the action nor a relative or employee of any
14  attorney of any of the parties.
15      IN WITNESS WHEREOF, I have this date subscribed my
16  name.
17
18  Dated:  June 6, 2023
19
20
21
22
                    _____
23                  Laura A. Rutherford, RPR
                    CSR No. 9266
24
25



# EXHIBIT 11
# (Excerpted)

| | |
|---|---|
| **From:** | Teng, Austin C. <austin.teng@kirkland.com> |
| **Sent:** | Friday, June 9, 2023 11:59 PM |
| **To:** | Armon, Orion; Rhyu, Michelle; Arora, Priya; Madrigal, Angela R.; Sharp, Melanie; Hallowell, Taylor E.; Higgins, James; Murdter, David; Vanderwall, Cameron C.; Wood, Alissa; Douglas, Jeannine; Gibbs, Tracy |
| **Cc:** | SKIvantis; #Alcon-SightSciences |
| **Subject:** | RE: Sight Sciences v. Ivantis - Discovery deficiencies and outstanding issues |

Counsel,

We have identified multiple deficiencies in Sight's responses to Interrogatory Nos. 19-21, as well as improper use of inadvertently produced Ivantis privileged information in Interrogatory No. 21 which we are clawing back, as described more fully below.  Please confirm Sight will supplement its responses to address these deficiencies by no later than June 13, 2023.

**Clawback:** Sight's response to Defendants' Interrogatory No. 21 contains a reference to IVANTIS_SS_00325181, which was inadvertently produced and subject to attorney client privilege. The confidential email, dated October 22, 2019, reflects attorney-client communications regarding patent issues.

We will supplement our privilege log to reflect this document. Pursuant to Paragraph 11 of the Protective Order, please return or destroy these documents and any copies, including any references to the information in your discovery responses. Please confirm you will comply.

**Interrogatory No. 19:** Sight's narrative response to Interrogatory No. 19 is self-serving and contradicted by the documents Sight identified in its Rule 33(d) response, and must be corrected.  For example, Sight claims "Sight Sciences became aware that Ivantis and/or Ivantis sales representatives desired to co-promote Hydrus and OMNI. In response to learning this information, Sight Sciences prohibited any co-promotion of Hydrus and OMNI by its salespeople."  But then in its Rule 33(d) citation, Sight identifies documents that refute this.  For example, in SGHT0058349, Dr. Paul Singh shares with Patrick Smale, Sight's VP Marketing (Surgical), that "I have been doing a bunch of Hydrus and Omni cases recently" and shares a video.  Mr. Smale responds: "You're on to something that I think is very important for your peers and the market in general to hear; "***No matter how you chose to bypass TM (with Hydrus in this case), always treat the distal outflow system first!*** … While we are very focused on building the Stand-alone market with OMNI, *I think this is another extremely important use case that could be powerful for patients and surgeons in the combo cataract space*.  ***Love it.***"  Mr. Smale forwards the email to Paul Badawi, and says ███████████████████████████████ ██████████████████████████████████████████████████  Similarly, in SGHT0045145 at 146, Kristine Cobrando, a Glaucoma Surgical Sales Representative,  discusses a "meeting with Conner regarding Omni/Hydrus combination," and she notes ███████████████████████████████████ ██████████████

Further, Sight's Rule 33(d) citations are incomplete, as even a simple search of "Omni and Hydrus" in Sight's own production should have revealed to you.  For example, SGHT0085687 is an email from Kavita Dhamdhere at Sight Sciences to Dr. Greenwood attaching a number of documents, including SGHT0085696, which is an abstract from a paper by Dr. Singh discussing "a combined 36 viscodilation of the canal using the OMNI surgical systems device (Sight Sciences) and Hydrus stent implantation (Ivantis)."

# EXHIBIT 12
# (Excerpted)

| | |
|---|---|
| **From:** | Teng, Austin C. <austin.teng@kirkland.com> |
| **Sent:** | Saturday, June 10, 2023 12:30 AM |
| **To:** | Armon, Orion; Rhyu, Michelle; Arora, Priya; Madrigal, Angela R.; Sharp, Melanie; Hallowell, Taylor E.; Higgins, James; Murdter, David; Vanderwall, Cameron C.; Wood, Alissa; Douglas, Jeannine; Gibbs, Tracy |
| **Cc:** | SKIvantis@shawkeller.com; #Alcon-SightSciences |
| **Subject:** | RE: RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Document Production |

Counsel,

The following documents were inadvertently produced and subject to attorney client privilege:

1. IVANTIS_SS_00224407 - Confidential draft presentation reflecting confidential attorney-client communications
2. IVANTIS_SS_00224461 - Confidential draft presentation reflecting confidential attorney-client communications
3. IVANTIS_SS_00224119 - Confidential draft presentation reflecting confidential attorney-client communications
4. IVANTIS_SS_00223595 - Confidential draft presentation reflecting confidential attorney-client communications
5. IVANTIS_SS_00223445 - Confidential draft presentation reflecting confidential attorney-client communications
6. IVANTIS_SS_00223491 - Confidential draft presentation reflecting confidential attorney-client communications
7. IVANTIS_SS_00223545 - Confidential draft presentation reflecting confidential attorney-client communications
8. IVANTIS_SS_00223208 - Confidential draft presentation reflecting confidential attorney-client communications
9. IVANTIS_SS_00300830 – Document reflecting confidential attorney client communications
10. IVANTIS_SS_00301924 - Confidential draft presentation reflecting confidential attorney-client communications
11. IVANTIS_SS_00301901 - Confidential draft presentation reflecting confidential attorney-client communications
12. IVANTIS_SS_00301879 - Confidential draft presentation reflecting confidential attorney-client communications
13. IVANTIS_SS_00303934 - Confidential draft presentation reflecting confidential attorney-client communications
14. IVANTIS_SS_00445906 - Confidential draft presentation reflecting confidential attorney-client communications
15. IVANTIS_SS_00304267 - Confidential draft presentation reflecting confidential attorney-client communications
16. IVANTIS_SS_00331837 - Confidential draft presentation reflecting confidential attorney-client communications
17. IVANTIS_SS_00206218 -  Confidential draft document seeking legal advice from counsel

We will also supplement our privilege log to reflect these documents. Pursuant to Paragraph 11 of the Protective Order, please return or destroy these documents and any copies. Please confirm you will comply.

We are continuing to investigate a vendor issue relating to the screening of privileged materials and working to identify any other documents that may need to be clawed back.

Please notify us immediately if you encounter any documents that appear on their face to include attorney-client privileged information, including those explicitly marked as such. *See* Protective Order ("If a Receiving Party identifies what appears on its face to be Privileged Information, the Receiving Party is under a good-faith obligation to notify that Producing Party."). In particular, we expect you not to use any documents that appear on their face to contain privileged information, including at depositions, without first notifying us.

Best,
Austin


**Austin Teng**

---------------------------------------------------

# EXHIBIT 13
# Disputed Clawback



IVANTIS_SS_00325181

# EXHIBIT 14
# Disputed Clawback



IVANTIS_SS_00223444



IVANTIS_SS_00223445



IVANTIS_SS_00223446



IVANTIS_SS_00223447



IVANTIS_SS_00223448



IVANTIS_SS_00223449



IVANTIS_SS_00223450



IVANTIS_SS_00223451



IVANTIS_SS_00223452



IVANTIS_SS_00223453



IVANTIS_SS_00223454



IVANTIS_SS_00223455



IVANTIS_SS_00223456



IVANTIS_SS_00223457



IVANTIS_SS_00223458



IVANTIS_SS_00223459



IVANTIS_SS_00223460



IVANTIS_SS_00223461



IVANTIS_SS_00223462



IVANTIS_SS_00223463



IVANTIS_SS_00223464



IVANTIS_SS_00223465



IVANTIS_SS_00223466



IVANTIS_SS_00223467

# EXHIBIT 15



# Disputed Clawback



IVANTIS_SS_00224461



IVANTIS_SS_00224462



IVANTIS_SS_00224463



IVANTIS_SS_00224464



IVANTIS_SS_00224465



IVANTIS_SS_00224466



IVANTIS_SS_00224467



IVANTIS_SS_00224468



IVANTIS_SS_00224469



IVANTIS_SS_00224470



IVANTIS_SS_00224471



IVANTIS_SS_00224472



IVANTIS_SS_00224473



IVANTIS_SS_00224474



IVANTIS_SS_00224475



IVANTIS_SS_00224476



IVANTIS_SS_00224477



IVANTIS_SS_00224478



IVANTIS_SS_00224479



IVANTIS_SS_00224480



IVANTIS_SS_00224481



IVANTIS_SS_00224482



IVANTIS_SS_00224483

# EXHIBIT 16

█████████████████

# (Excerpted)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | ███████████ |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF
SIGHT SCIENCES, INC.'S NOTICE OF DEPOSITION OF
<u>IVANTIS, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 30, Defendant Ivantis, Inc. ("Ivantis") responds to Plaintiff Sight Sciences, Inc.'s ("Sight") Notice of Rule 30(b)(6) Deposition of Ivantis. Ivantis is available to meet and confer with Sight about these objections.

**<u>OBJECTIONS TO SIGHT'S DEFINITIONS AND INSTRUCTIONS</u>**

1.     Defendant objects to Sight's Instructions and Definitions to the extent they purport to impose upon Defendant discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.     Defendant objects to Sight's Instructions and Definitions to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory on the grounds that such alteration renders the Interrogatory vague, ambiguous, unduly broad, and/or uncertain by failing to adequately define terms or by using terms the meaning of which are not readily available or

decipherable. Defendant's responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such Definition or Instruction.

3.      Defendant objects to the definitions of "Ivantis," "Alcon," "You," and "Your" because the definitions are overbroad, unduly burdensome, and/or not proportional to the needs of the case as they purport to require Defendant to provide information that is not within the possession, custody, or control of Defendant, or to otherwise respond on behalf of third parties. Defendant further objects to the definition of "Alcon" as vague and ambiguous, including to the extent it refers to any Alcon entities that are not parties to this case. Defendant's responses are limited to the information known to Defendant.

4.      Defendant objects to the definition of "Accused Product(s)" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it purports to include unnamed products beyond the "Hydrus Microstent product." Defendant understands "Accused Product(s)" to mean Hydrus and its packaging.

5.      Defendant objects to the definition of "Hydrus" and "Hydrus product" as vague and ambiguous, at least with respect to the term "versions." Defendant further objects to the definition of "Hydrus" and "Hydrus product" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it lacks reasonable temporal restrictions and potentially spans over 15 years of development-related work and future work that are not relevant to the asserted claims.

6.      Defendant objects to the definition of "Patents-in-Suit" as vague and ambiguous because it purports to include "any other patents that Sight is permitted to assert in the above-captioned case" without identifying any particular "other patents." For purposes of Defendant's

Responses, "Patents-in-Suit" is limited to U.S. Patent Nos. 8,287,482; 9,370,443; 9,486,361; 10,314,742; and 11,389,328.

7.      Defendant objects to the definition of "identify," "identifies," and "identification" when used with respect to a document as overbroad, unduly burdensome, and/or not proportional to the needs of the case because it requires Defendant to provide "(ii) the date appearing on such document or, if no date appears thereon, the approximate date the document was prepared; (iii) the identifying code number, file number, title, or label of such document; (iv) a general description of such document (e.g., letter, memorandum, drawing); (v) the title or heading; (vi) the number of pages of which such document consists; (vii) the name of each person having possession, custody, or control of such document; (viii) if the document existed at one time, but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having custody of it." These definitions could require the undue burden of collecting and providing information well beyond what is in the documents themselves and that is not readily obtainable or ascertainable.

8.      Defendant objects to the definition of "identify" when used with respect to a product, device, or service as overbroad, unduly burdensome, and/or not proportional to the needs of the case, at least with respect to the phrases "service name," "part number," and "type." These terms are vague and could require the undue burden of collecting and providing information regarding products, devices, or components that are not at issue in this case, readily obtainable, or ascertainable.

9.      Defendant objects to the definition of "identify," "identifies," and "identification" when used with respect to a natural person as overbroad, unduly burdensome, and/or not proportional to the needs of the case, at least with respect to the phrases "last known address and telephone number" and "all known e-mail addresses." All potential witnesses employed by

Defendant, or believed to be employed by Defendant, are to be contacted solely through Kirkland and Ellis LLP.

10. Defendant's discovery and investigation in connection with this case are ongoing. As a result, Defendant's responses are provided without waiver of Defendant's right to: (a) object to other interrogatories directed to the subject matter of these interrogatories and responses; (b) make additional or supplementary objections to these interrogatories; or (c) revise, correct, supplement, or clarify the contents of these responses.

11. Unless otherwise specified, Defendant adopts and incorporates by reference Defendants' general and specific objections to each Interrogatory.

## OBJECTIONS AND RESPONSES

### DEPOSITION TOPIC NO. 1:

Your organizational structure as it relates to the Accused Products, including the identity and roles of the departments, groups, or personnel involved in conception, design, development, manufacturing, testing, regulatory submissions, sales (including sales team training and outreach to physicians), marketing and distribution (nationally and internationally), finance, and patent and legal departments.

### RESPONSE TO DEPOSITION TOPIC NO. 1:

Defendant objects to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because Defendant's "organizational structure" is not relevant to any claims or issues in this case. Defendant objects to this Topic as vague and ambiguous because the terms and phrases "organizational structure" and "conception," "regulatory submissions," "sales team training," "outreach to physicians," "distribution," and "patent and legal departments" are unclear and undefined. Defendant objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work

4

**DEPOSITION TOPIC NO. 5:**

Your policies and practices with respect to the filing, storage, retention, preservation, and destruction of Documents, including (i) Any suspension or modification of Document destruction or retention policies related to Any of the Accused Products; and (ii) Any responsive or relevant evidence that has been lost, destroyed, erased, misplaced, or withheld (whether intentionally or inadvertently) as well as the reasons for and circumstances surrounding such activity.

**RESPONSE TO DEPOSITION TOPIC NO. 5:**

Defendant objects to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because Defendant's "policies and practices with respect to the filing, storage, retention, preservation, and destruction of Documents" are not relevant to any claims or issues in this case. Moreover, this Topic fails to describe with reasonable particularity the matters for examination, and any attempt by Defendant to prepare one witness, or even more than one witness, to testify regarding this Topic would be unduly burdensome. Defendant objects to this Topic as vague and ambiguous because the terms and phrases "policies and practices," "filing," "storage," "retention," "preservation," "destruction," "lost," "destroyed," "erased," "misplaced," "withheld" are unclear and undefined. Defendant objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity. Defendant objects to the definition of "Accused Product(s)" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it purports to include unnamed products beyond the "Hydrus Microstent product."

Defendant will not present a witness on this Topic.

**RESPONSE TO DEPOSITION TOPIC NO. 70:**

Defendant objects to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because it seeks testimony regarding "[a]nalysis or valuations of acquisitions or potential acquisitions of companies or businesses Relating to MIGS devices and/or the Accused Products" without limitation. Defendant objects to this Topic as vague and ambiguous because the terms and phrases "analysis," "valuation," and "potential acquisition" are unclear and undefined. Defendant objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity. Defendant objects to the definition of "Accused Product(s)" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it purports to include unnamed products beyond the "Hydrus Microstent product."

Defendant is willing to meet and confer regarding an appropriate scope, if any, of this Topic.

**DEPOSITION TOPIC NO. 71:**

Any freedom-to-operate analyses conducted by You or on Your behalf with respect to the Accused Products.

**RESPONSE TO DEPOSITION TOPIC NO. 71:**

Defendant objects to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because it purports to seek "any freedom-to-operate analyses." Defendant objects to this Topic as vague and ambiguous because the phrase

59

"analyses" is unclear and undefined. Defendant objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity.

Subject to and without waiving the foregoing general and specific objections, Defendant responds that they are not currently aware of any non-privileged information related to this Topic.

**DEPOSITION TOPIC NO. 72:**

The identities, roles, and dates when Any employee, counterparty, or external advisor of Yours evaluated Any of the Patents-in-Suit.

**RESPONSE TO DEPOSITION TOPIC NO. 72:**

Defendant objects to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because it purports to seek information about the "identities, roles, and dates when *any* employee, counterparty, or external advisor … evaluated Any of the Patents-in-Suit." Defendant further objects to the extent this Topic requests information subject to third-party confidentiality. Defendant objects to this Topic as vague and ambiguous because the terms and phrases "identities," "roles," "dates," "employee, counterparty, or external advisor," and "evaluated" are unclear and undefined. Defendant objects to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity.

Defendant will not produce a witness on this Topic.

**DEPOSITION TOPIC NO. 73:**

All communications regarding Sight Sciences, the Patents-in-Suit or this litigation that You have had with Your shareholders, agents, or the other Defendants in this lawsuit, including descriptions and assessments of the suit prior to Alcon's acquisition of Ivantis.

to the definition of "Accused Product(s)" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it purports to include unnamed products beyond the "Hydrus Microstent product."

Subject to and without waiving the foregoing general and specific objections, Defendant will produce one or more witnesses reasonably prepared to testify about hardship that third-parties would experience if enjoined from making, using, selling, offering for sale, importing, or exporting the Hydrus® Microstent.

As to objections and contentions only,

/s/Kat Li

OF COUNSEL:                            John W. Shaw (No. 3362)
Gregg LoCascio                         Andrew E. Russell (No. 5382)
Justin Bova                            Nathan Hoeschen (No. 6232)
KIRKLAND & ELLIS LLP                   SHAW KELLER LLP
1301 Pennsylvania Avenue, N.W.         I.M. Pei Building
Washington, DC 20004                   1105 North Market Street, 12th Floor
(202) 389-5000                         Wilmington, DE 19801
                                       (302) 298-0700
Kat Li                                 jshaw@shawkeller.com
Jeanne M. Heffernan                    nhoeschen@shawkeller.com
Austin Teng                            Attorneys for Defendant
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Dated: May 24, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Kat Li, hereby certify that on May 24, 2023, this document was served on the persons

listed below in the manner indicated:

<u>BY EMAIL</u>

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com


Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com


Allison E. Elkman
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800

Michelle S. Rhyu, J.D., Ph.D.
David Murdter
Priyamvada Arora
Lauren Strosnick
Alissa Wood
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
dmurdter@cooley.com
parora@cooley.com
lstrosnick@cooley.com
amwood@cooley.com


*/s/ Kat Li*  _____
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

*Attorney for Defendants*

# EXHIBIT 17

█████████████████████

# (Excerpted)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | ███████████ |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF
SIGHT SCIENCES, INC.'S NOTICES OF DEPOSITION OF
ALCON RESEARCH LLC, ALCON VISION, LLC, and ALCON INC.
<u>PURSUANT TO FED. R. CIV. P. 30(b)(6)</u>**

Plaintiff Sight Sciences, Inc.'s ("Sight") Notices of Rule 30(b)(6) Deposition of Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Alcon") are the same. Thus, pursuant to Federal Rules of Civil Procedure 26 and 30, the Alcon Defendants respond to Sight's Notices together. Alcon is available to meet and confer with Sight about these objections.

**<u>OBJECTIONS TO SIGHT'S DEFINITIONS AND INSTRUCTIONS</u>**

1.      Defendants object to Sight's Instructions and Definitions to the extent they purport to impose upon Defendants discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.      Defendants object to Sight's Instructions and Definitions to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory on the grounds that such alteration renders the Interrogatory vague, ambiguous, unduly broad, and/or uncertain by failing to adequately define terms or by using terms the meaning of which are not readily available or

decipherable. Defendants' responses to such Interrogatories shall not be construed as an admission, agreement, or acquiescence to any such Definition or Instruction.

3.      Defendants object to the definitions of "Ivantis," "Alcon," "You," and "Your" because the definitions are overbroad, unduly burdensome, and/or not proportional to the needs of the case as they purport to require Defendants to provide information that is not within the possession, custody, or control of Defendants, or to otherwise respond on behalf of third parties. Defendants further object to the definition of "Alcon" as vague and ambiguous, including to the extent it refers to any Alcon entities that are not parties to this case. Defendants' responses are limited to the information known to Defendants.

4.      Defendants object to the definition of "Accused Product(s)" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it purports to include unnamed products beyond the "Hydrus Microstent product." Defendants understand "Accused Product(s)" to mean Hydrus and its packaging.

5.      Defendants object to the definition of "Hydrus" and "Hydrus product" as vague and ambiguous, at least with respect to the term "versions." Defendants further object to the definition of "Hydrus" and "Hydrus product" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it lacks reasonable temporal restrictions and potentially spans over 15 years of development-related work and future work that are not relevant to the asserted claims.

6.      Defendants object to the definition of "Patents-in-Suit" as vague and ambiguous because it purports to include "any other patents that Sight is permitted to assert in the above-captioned case" without identifying any particular "other patents." For purposes of Defendants'

Responses, "Patents-in-Suit" is limited to U.S. Patent Nos. 8,287,482; 9,370,443; 9,486,361; 10,314,742; and 11,389,328.

7.      Defendants object to the definition of "identify," "identifies," and "identification" when used with respect to a document as overbroad, unduly burdensome, and/or not proportional to the needs of the case because it requires Defendants to provide "(ii) the date appearing on such document or, if no date appears thereon, the approximate date the document was prepared; (iii) the identifying code number, file number, title, or label of such document; (iv) a general description of such document (e.g., letter, memorandum, drawing); (v) the title or heading; (vi) the number of pages of which such document consists; (vii) the name of each person having possession, custody, or control of such document; (viii) if the document existed at one time, but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having custody of it." These definitions could require the undue burden of collecting and providing information well beyond what is in the documents themselves and that is not readily obtainable or ascertainable.

8.      Defendants object to the definition of "identify" when used with respect to a product, device, or service as overbroad, unduly burdensome, and/or not proportional to the needs of the case, at least with respect to the phrases "service name," "part number," and "type." These terms are vague and could require the undue burden of collecting and providing information regarding products, devices, or components that are not at issue in this case, readily obtainable, or ascertainable.

9.      Defendants object to the definition of "identify," "identifies," and "identification" when used with respect to a natural person as overbroad, unduly burdensome, and/or not proportional to the needs of the case, at least with respect to the phrases "last known address and telephone number" and "all known e-mail addresses." All potential witnesses employed by

Defendants, or believed to be employed by Defendants, are to be contacted solely through Kirkland
and Ellis LLP.

10. Defendants' discovery and investigation in connection with this case are ongoing.
As a result, Defendants' responses are provided without waiver of Defendants' right to: (a) object
to other interrogatories directed to the subject matter of these interrogatories and responses; (b)
make additional or supplementary objections to these interrogatories; or (c) revise, correct,
supplement, or clarify the contents of these responses.

11. Unless otherwise specified, Defendants adopt and incorporate by reference the
Alcon Defendants' general and specific objections to each Interrogatory.

## OBJECTIONS AND RESPONSES

### DEPOSITION TOPIC NO. 1:

Your organizational structure as it relates to the Accused Products, including the identity
and roles of the departments, groups, or personnel involved in conception, design, development,
manufacturing, testing, regulatory submissions, sales (including sales team training and outreach
to physicians), marketing and distribution (nationally and internationally), finance, mergers and
acquisitions, and patent and legal departments.

### RESPONSE TO DEPOSITION TOPIC NO. 1:

Defendants object to this Topic as overly broad, unduly burdensome, and calling for

information that is not relevant to any of the claims or defenses in this litigation and/or not

proportional to the needs of the case, specifically because Defendants' "organizational structure"

is not relevant to any claims or issues in this case. Defendants object to this Topic as vague and

ambiguous because the terms and phrases "organizational structure" and "conception," "regulatory

submissions," "sales team training," "outreach to physicians," "distribution," and "patent and legal

departments" are unclear and undefined. Defendants object to this Topic to the extent it seeks

information protected by the attorney-client privilege, common interest privilege, attorney work

**RESPONSE TO DEPOSITION TOPIC NO. 5:**

Defendants object to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because the organization of Documents within Defendants' organization is not relevant to any claims or issues in this case and there is only one Accused Product. Defendants object to this Topic as vague and ambiguous because the terms and phrases "policies," "practices," "procedures," "operation and testing," "architecture of the Accused Products," and "Identification of the final commercial designs" are unclear and undefined. Defendants object to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity. Defendants object to the definition of "Accused Product(s)" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it purports to include unnamed products beyond the "Hydrus Microstent product."

Subject to and without waiving the foregoing general and specific objections, Defendants will produce one or more witnesses reasonably prepared to testify about Defendants' documentation of research and development and commercial designs of the Hydrus.

**DEPOSITION TOPIC NO. 6:**

Your policies and practices with respect to the filing, storage, retention, preservation, and destruction of Documents, including (i) Any suspension or modification of Document destruction or retention policies related to Any of the Accused Products; and (ii) Any responsive or relevant evidence that has been lost, destroyed, erased, misplaced, or withheld (whether intentionally or inadvertently) as well as the reasons for and circumstances surrounding such activity.

**RESPONSE TO DEPOSITION TOPIC NO. 6:**

Defendants object to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because Defendants' "policies and practices with respect to the filing, storage, retention, preservation, and destruction of Documents" are not relevant to any claims or issues in this case. Moreover, this Topic fails to describe with reasonable particularity the matters for examination, and any attempt by Defendants to prepare one witness, or even more than one witness, to testify regarding this Topic would be unduly burdensome. Defendants object to this Topic as vague and ambiguous because the terms and phrases "policies and practices," "filing," "storage," "retention," "preservation," "destruction," "lost," "destroyed," "erased," "misplaced," "withheld" are unclear and undefined. Defendants object to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity. Defendants object to the definition of "Accused Product(s)" as overbroad, unduly burdensome, and calling for information not relevant to any of the claims or defenses in this litigation or not proportional to the needs of this case, specifically because it purports to include unnamed products beyond the "Hydrus Microstent product."

Defendants will not present a witness on this Topic.

**DEPOSITION TOPIC NO. 7:**

Your Identification, collection, preservation, and production of Documents and responsive information in this litigation, including the circumstances and timing of Any litigation hold placed to suspend Any Document destruction policy for Documents related to this litigation.

Defendants are willing to meet and confer regarding an appropriate scope, if any, of this Topic.

**DEPOSITION TOPIC NO. 69:**

Any freedom-to-operate analyses conducted by You or on Your behalf with respect to the Accused Products.

**RESPONSE TO DEPOSITION TOPIC NO. 69:**

Defendants object to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because it purports to seek "any freedom-to-operate analyses." Defendants object to this Topic as vague and ambiguous because the phrase "analyses" is unclear and undefined. Defendants object to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity.

Subject to and without waiving the foregoing general and specific objections, Defendants responds that they are not currently aware of any non-privileged information related to this Topic.

**DEPOSITION TOPIC NO. 70:**

The identities, roles, and dates when Any employee, counterparty, or external advisor of Yours evaluated Any of the Patents-in-Suit.

**RESPONSE TO DEPOSITION TOPIC NO. 70:**

Defendants object to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because it purports to seek information about the "identities, roles, and dates when *any* employee, counterparty, or external advisor … evaluated Any of the Patents-in-Suit." Defendants further object to the extent this Topic requests information

58

subject to third-party confidentiality. Defendants object to this Topic as vague and ambiguous because the terms and phrases "identities," "roles," "dates," "employee, counterparty, or external advisor," and "evaluated" are unclear and undefined. Defendants object to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity.

Defendants will not produce a witness on this Topic.

**DEPOSITION TOPIC NO. 71:**

All communications regarding Sight Sciences, the Patents-in-Suit or this litigation that You have had with Your shareholders, agents, or the other Defendants in this lawsuit, including descriptions and assessments of the suit prior to Alcon's acquisition of Ivantis.

**RESPONSE TO DEPOSITION TOPIC NO. 71:**

Defendants object to this Topic as overly broad, unduly burdensome, and calling for information that is not relevant to any of the claims or defenses in this litigation and/or not proportional to the needs of the case, specifically because "*[a]ll* communications regarding Sight Sciences, the Patents-in-Suit or this litigation that You have had with Your shareholders, agents, or the other Defendants in this lawsuit" without limitation. Defendants object to this Topic to the extent it seeks information protected by the attorney-client privilege, common interest privilege, attorney work product, or any other applicable privilege, doctrine, or immunity.

Defendants are willing to meet and confer regarding an appropriate scope, if any, of this Topic.

**DEPOSITION TOPIC NO. 72:**

After receiving the complaint and infringement contentions in this action, how if at all, You changed the materials and information provided to Your users/customers and/or potential users/customers Relating to the Accused Products.

As to objections and contentions only,

OF COUNSEL:
Gregg LoCascio
Justin Bova
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Kat Li
Jeanne M. Heffernan
Austin Teng
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Dated: May 24, 2023

/s/Kat Li
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Kat Li, hereby certify that on May 24, 2023, this document was served on the persons

listed below in the manner indicated:

**<u>BY EMAIL</u>**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Allison E. Elkman
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800

Michelle S. Rhyu, J.D., Ph.D.
David Murdter
Priyamvada Arora
Lauren Strosnick
Alissa Wood
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
dmurdter@cooley.com
parora@cooley.com
lstrosnick@cooley.com
amwood@cooley.com

*/s/ Kat Li*
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

*Attorney for Defendants*

# EXHIBIT 18

ORAL ORDER: Having reviewed the parties&#39 discovery dispute letter submissions (D.I. 112 ; D.I. 113 ; D.I. 121 ; D.I. 122 ), IT IS HEREBY ORDERED that: (1) Plaintiff&#39s request to amend the Protective Order to give Chidambaram S. Iyer access to Defendant&#39s confidential information as a &#34Qualified Person&#34 is DENIED without prejudice. Consistent with the Special Master&#39s decision on the motion to disqualify, which acknowledged the possibility that Mr. Iyer&#39s stated role could change and he could potentially be called as a witness, (D.I. 98 at 7), IT IS ORDERED that Mr. Iyer shall not be given access to Defendant&#39s confidential information under the Protective Order before the close of fact discovery. If Mr. Iyer&#39s testimony by deposition has not been taken by that time, Plaintiff may then renew its request to amend the Protective Order. Granting Mr. Iyer access to Defendant&#39s confidential information prior to the close of fact discovery cannot be undone should Mr. Iyer&#39s role change in the interim. See Andrx Pharms., LLC v. GlaxoSmithKline, PLC, 236 F.R.D. 583, 587 (S.D. Fla. 2006). Plaintiff has not suggested that Mr. Iyer requires access to Defendant&#39s confidential information prior to the close of fact discovery or otherwise explained how it will be prejudiced by the denial of access until that time. (2) Defendant&#39s request to compel Plaintiff to supplement its response to Contention Interrogatory No. 11 is GRANTED-IN-PART. Plaintiff shall supplement its response to Interrogatory No. 11 within 30 days of issuance of the Markman decision. The Court has broad discretion on this issue, and compelling a supplemental response after the Court issues its claim construction order will provide an opportunity for both parties to further refine their respective invalidity positions. See Glob. Locating Sys., LLC v. ShadowTrack 247, LLC, 2020 WL 3432714, at *2 (W.D.N.C. June 23, 2020). Defendant acknowledged as much in its preliminary invalidity contentions. (D.I. 113, Ex. B at 5) (&#34Any invalidity analysis depends, ultimately, upon claim construction, which is a question of law reserved for the Court.&#34). (3) Defendant&#39s request to compel Plaintiff to supplement its responses to Interrogatory Nos. 16-17 and Request for Production Nos. 104-05 is DENIED. Discovery regarding efforts undertaken by Plaintiff to preserve documents in anticipation of litigation is barred under the Court&#39s Default Standard for Discovery of ESI and Fed. R. Civ. P. 26(b)(3)(A) and (B), particularly in the absence of a credible allegation of spoliation. See Brand Energy & Infrastructure Servs., Inc. v. Irex Corp., 2018 WL 806341, at *2 (E.D. Pa. Feb. 9, 2018) (denying request for documents reflecting servers defendants accessed or used for storage as impermissible &#34discovery on discovery&#34 without the requisite showing of bad faith or withholding of documents). The requested discovery is also irrelevant because it is sought to undermine a theory that is no longer being asserted by Plaintiff. (D.I. 98 at 6-7) (4) Defendant&#39s request to compel Plaintiff to supplement its responses to Interrogatory Nos. 19-20 is GRANTED-IN-PART as to the identification by name of individuals with knowledge of the filing of the instant suit and knowledge of the application leading to the patent-in-suit. The motion to compel is DENIED as to the balance of the information sought in Interrogatory Nos. 19-20. These interrogatories seek the identity of individuals &#34involved in the decision to file&#34 the complaint and the application leading to the patent-in-suit, as well as &#34the respective role of each (e.g., advisor, decision maker, final decision maker, etc.).&#34 (D.I. 113, Ex. A at 10) Although the individuals&#39 names themselves are not privileged, disclosure of those names in conjunction with descriptions of strategic decisions leading up to

litigation and patent prosecution may reveal mental impressions, conclusions, and opinions that are protected under the work product doctrine. See Fed. R. Civ. P. 26(b)(3); United States v. Stabl Inc., 2018 WL 3758204, at *7 (D. Neb. Aug. 8, 2018) (holding that topics requesting details about decision to file complaint were &#34clearly work product&#34 under Fed. R. Civ. P. 26(b)(3)). IT IS FURTHER ORDERED that the discovery dispute teleconference scheduled for June 8, 2022 at 3:00 p.m. is CANCELLED. Ordered by Judge Sherry R. Fallon on 6/8/2022. (lih) (Entered: 06/08/2022)

As of June 9, 2022, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Shilpa Pharma, Inc. v. Novartis Pharmaceuticals Corporation*
1-21-cv-00558 (DDE), 6/8/2022, docket entry

# EXHIBIT 19

ORAL ORDER: Having reviewed the parties' submissions relating to discovery disputes (D.I. 772, 773), IT IS HEREBY ORDERED that: (1) AVX's request for a protective order against any further fact depositions other than Mr. Wicks and one additional assembler (of Greatbatch's choice) is GRANTED; and (2) the teleconference scheduled for tomorrow is CANCELLED. AVX has demonstrated good cause for its protective order, including by showing that much, most, or potentially all of the additional deposition testimony sought by Greatbatch is duplicative, not proportional to the needs of the case, and/or the burden outweighs the likely benefit. ORDERED by Judge Leonard P. Stark on 8/3/16. (ntl) (Entered: 08/03/2016)

As of August 4, 2016, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Greatbatch Ltd. v. AVX Corporation et al*
1-13-cv-00723 (DED), 8/3/2016, docket entry 783

# EXHIBIT 20

| | |
|---|---|
| **From:** | Li, Kat <kat.li@kirkland.com> |
| **Sent:** | Monday, April 25, 2022 4:49 PM |
| **To:** | Armon, Orion; LoCascio, Gregg F. |
| **Cc:** | *msharp@ycst.com; jshaw@shawkeller.com; Rhyu, Michelle; Kannappan, Deepa; Murdter, David; Ross, Emily Mae-Yen; Kane, Ryan; Bova, Justin |
| **Subject:** | RE: Sight Sciences v. Ivantis - Rule 26(f) conference |
| **Attachments:** | Proposed Case Schedule - KE.docx |

**[External]**

Orion—Attached is our proposed schedule and responses re: discovery for your review. Note that we edited some of the event descriptions.

Thanks,
Kat

**Kat Li**

**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 678 9167  **F** +1 512 678 9101

kat.li@kirkland.com

**From:** Armon, Orion <oarmon@cooley.com>
**Sent:** Monday, April 18, 2022 6:06 PM
**To:** Li, Kat <kat.li@kirkland.com>; LoCascio, Gregg F. <glocascio@kirkland.com>
**Cc:** *msharp@ycst.com <msharp@ycst.com>; jshaw@shawkeller.com; Rhyu, Michelle <RHYUMS@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Murdter, David <dmurdter@cooley.com>; Ross, Emily Mae-Yen <eross@cooley.com>; Kane, Ryan <ryan.kane@kirkland.com>; Bova, Justin <justin.bova@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Rule 26(f) conference

Kat and Gregg – Here's an updated proposed schedule that includes our proposed language for RFA and depo limits.  We'll circulate a complete scheduling order draft after we receive your feedback.

Orion

Orion Armon
Cooley LLP
1144 15th Street, Suite 2300
Denver, CO 80202-2686
720 566 4119 office
303 949 0925 mobile
oarmon@cooley.com

**From:** Li, Kat <kat.li@kirkland.com>
**Sent:** Thursday, April 14, 2022 8:10 AM
**To:** Armon, Orion <oarmon@cooley.com>
**Cc:** LoCascio, Gregg F. <glocascio@kirkland.com>; *msharp@ycst.com <msharp@ycst.com>; jshaw@shawkeller.com; Rhyu, Michelle <RHYUMS@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Murdter, David <dmurdter@cooley.com>; Ross, Emily Mae-Yen <eross@cooley.com>; Kane, Ryan <ryan.kane@kirkland.com>; Bova, Justin <justin.bova@kirkland.com>
**Subject:** Re: Sight Sciences v. Ivantis - Rule 26(f) conference

1

*Sight Sciences v. Ivantis*
**Proposed Case Schedule**

| Event | Sight Proposal | Ivantis Proposal |
|---|---|---|
| Complaint filed | 9/16/2021 | - |
| Amended Complaint filed | 12/15/2021 | - |
| Jointly notify court of non-consent to Magistrate Judge | 4/11/2022 | - |
| Rule 26(f) conference | 4/18/2022 | - |
| Plaintiff to identify Accused Products and Asserted Patents, and produce file histories; both parties' initial disclosures of custodians and ESI issues under paragraphs 3 and 4 of the Default Standard for Discovery | 4/18/2022 | 6/7/2022 |
| Rule 26(a)(1) Initial disclosures | 5/2/2022 | 5/24/2022 |
| Defendants to produce core technical docs related to Accused Products | 5/18/2022 | 7/7/2022 |
| Case management conference | 6/2/2022 | 6/2/2022 |
| Plaintiff to produce initial infringement contentions | 6/17/2022 | 8/2/2022 |
| Defendants to produce initial invalidity contentions | 7/17/2022 | 9/1/2022 |
| Disclose opinions of counsel | 8/1/2022 | 9/15/2022 |

| Event | Sight Proposal | Ivantis Proposal |
|---|---|---|
| Exchange claim construction terms and proposed constructions | 8/15/2022 | 10/6/2022 |
| Submit Joint Claim Construction Chart | 8/29/2022 | 10/20/2022 |
| Plaintiff to serve (but not file) opening claim construction brief | 9/26/2022 | 11/10/2022 |
| Defendants to serve (but not file) answering claim construction brief | 10/17/2022 | 12/15/2022 |
| Deadline for substantial completion of document production | 10/24/2022 | 3/15/2023 |
| Plaintiff to serve (but not file) reply claim construction brief | 10/24/2022 | 1/5/2023 |
| Last day for joinder of other parties and amendment of pleadings | 10/28/2022 | 3/2/2023 |
| Defendants to serve (but not file) sur-reply claim construction brief | 10/31/2022 | 1/19/2023 |
| File Joint Claim Construction Brief | 11/4/2022 | 1/25/2023 |
| Submit interim status report | 11/20/2022 | 2/28/2023 |
| *Markman* hearing | [Between 11/7-11/18/2022] | [~March 2023] |
| Plaintiff to provide final infringement contentions | 4/14/2023 | 8/17/2023 |
| Defendants to provide final invalidity contentions | 4/28/2023 | 9/7/2023 |
| Close of fact discovery | | 9/19/2023 |

| Event | Sight Proposal | Ivantis Proposal |
|---|---|---|
| Initial FRCP 26(a)(2) disclosure of expert testimony | 5/12/2023 | 10/10/2023 |
| Last day for supplemental disclosure of expert testimony to contradict or rebut evidence on the same matter identified by another party | 6/23/2023 | 11/16/2023 |
| Reply expert reports from the party with the initial burden of proof | 7/14/2023 | 12/14/2023 |
| Close of expert discovery | 8/18/2023 | 1/23/2024 |
| File case dispositive and *Daubert* motions | 9/1/2023 | 2/28/2024 |
| File joint proposed final pretrial order | Seven days prior to pretrial conference | Seven days prior to pretrial conference |
| File Jury Instructions, Voir Dire, and Verdict Forms | Four days prior to pretrial conference | Four days prior to pretrial conference |
| Pretrial conference | 2 weeks prior to start of trial | [No objection] |
| Trial | [Between 12/4 – 12/22/2023] | [~June 2024] |
| RFAs | <u>Requests for Admission</u>.  A maximum of <u>50</u> requests for admission shall be served by each party to any other party.  Requests for admission for document authentication are unlimited | [No objection] |
| Depositions | <u>Limitation on Hours for Deposition Discovery</u>.  Each side is limited to a maximum of 85 hours for taking party | <u>Limitation on Hours for Deposition Discovery</u>.  Each side is limited to a maximum of 85 hours for taking party |

| Event | Sight Proposal | Ivantis Proposal |
|---|---|---|
| | depositions on case merits issues.  Parties may notice and take multiple 30(b)(6) depositions within their hours limits.  Depositions of individuals are limited to 7 hours on the record; 30(b)(6) depositions may continue day-to-day for more than 7 hours on the record within total hours limits, so long as no single day of testimony exceeds 7 hours.  Each deposition taken by one party of another party shall count for a minimum of 3 hours against that party's hours maximum. | depositions on case merits issues.  Depositions of individuals are limited to 7 hours on the record.  The parties agree to meet and confer regarding whether extending 30(b)(6) depositions beyond 7 hours on the record is necessary once individuals are designated.  Each deposition taken by one party of another party shall count for a minimum of 3 hours against that party's hours maximum. |

# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' SECOND NOTICE OF DEPOSITION OF PLAINTIFF PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants") will take the deposition of Plaintiff Sight Sciences, Inc. ("Sight"). The deposition will take place at Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004, on June 29, 2023, at 9 a.m. Eastern time, or at such other time and place as mutually agreed-upon, and will continue from day to day until completed.

Sight shall designate one or more of its officers, directors, managing agents, or other persons with knowledge of the matters set forth in Attachment A of this Notice to appear and testify on its behalf at the deposition. The Person(s) so designated shall testify as to matters known or reasonably available to Sight, including without limitation all matters known or reasonably available to individuals identified in Sight's initial disclosures in the above-captioned case.

The deposition will be before a Person authorized by law to administer oaths and will

1

be recorded using the stenographic method, through the instant visual display of testimony, and will also be recorded using audio and videotape technology. Testimony derived pursuant to this Notice of Deposition shall be used for any and all appropriate purposes. You are invited to attend and participate.

<table>
<tr><td></td><td>/s/ Andrew E. Russell<br>John W. Shaw (No. 3362)<br>Andrew E. Russell (No. 5382)<br>Nathan Hoeschen (No. 6232)</td></tr>
<tr><td>OF COUNSEL:<br>Gregg LoCascio<br>Justin Bova<br>Steven Dirks<br>Socrates L. Boutsikaris<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, DC 20004<br>(202) 389-5000</td><td>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>arussell@shawkeller.com<br>nhoeschen@shawkeller.com<br>Attorneys for Defendants</td></tr>
</table>

OF COUNSEL:
Gregg LoCascio
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Kat Li
Jeanne M. Heffernan
Austin C. Teng
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Laura Zhu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: June 15, 2023

## ATTACHMENT A

## DEFINITIONS

1.      "Alcon" shall mean Defendants Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. and their officers, employees, counsel, agents, consultants, and representatives, and includes joint ventures and other entities that are wholly or partially owned by Alcon, either directly or indirectly, and the officers, employees, counsel, agents, consultants, and representatives of these divisions, subsidiaries, and joint ventures.

2.      "Ivantis" shall mean Ivantis, Inc., its present and former officers, directors, employees, counsel, agents, consultants, and representatives, and includes affiliates, assignees, predecessors in interest, or successors in interest.

3.      "Defendants" collectively refers to Alcon and Ivantis.

4.      "Sight Sciences," "Plaintiff," "You," or "Your" shall mean Plaintiff Sight Sciences, Inc., its present and former officers, directors, employees, counsel, agents, consultants, representatives, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on their behalf, including, without limitation, any inventors of the Asserted Patents.

5.      "This Case" or "This Action" refers to the above-captioned action, *Sight Sciences, Inc. v. Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc.*, No. 21-cv-1317-GBW-SRF (D. Del.).

6.      "Complaint" refers to the Complaint filed in This Action (D.I. 1) on September 16, 2021, and any amendments thereto, including Sight Sciences' First Amended Complaint (D.I. 19), filed on December 15, 2021, and Sight Sciences' Second Amended Complaint (D.I. 59), filed on August 1, 2022.

7.      "Asserted Patents" means U.S. Patent Nos. 8,287,482; 9,370,443; 9,486,361; 10,314,742; and 11,389,328 and the respective patent applications, including any applications to which they claim priority, that led to each, as well as any other patent that Sight Sciences contends Defendants infringe.

8.      "Hydrus" shall mean the Ivantis Hydrus® Microstent, as identified in the Complaint.

9.      "Accused Products" shall mean the Hydrus and any other device, system, or method that Sight Sciences alleges infringes the Asserted Patents in This Action.

10.      "Asserted Claim" means each claim of the Asserted Patents that Sight Sciences alleges, in the Complaint or in subsequent pleadings or disclosures, is infringed by one or more of the Accused Products, either directly or indirectly.

11.      "Person" shall mean any natural person, alive or deceased, and any business, legal or governmental entity or association.

12.      "Document" shall mean all materials, as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, any handwritten, printed, typed, recorded photographic, and computer-generated materials of any kind or nature, however produced or reproduced, as well as material stored electronically, electromagnetically, mechanically, optically, and electronic recordings or transcripts thereof, and includes drafts, revisions of drafts, preliminary and preparatory materials, originals, copies, emails, attachments, exhibits, removable notes, and all translations and summaries thereof.

13.      The terms "concerning" and "relating to" shall mean, in whole or in part, referring to, describing, evidencing, constituting, containing, comprising, referring to, embodying, connected to, reflecting, analyzing, showing, discussing, identifying, illustrating, stating,

regarding, supporting, refuting, rebutting, responding to, commenting on, evaluating, about, in respect of, mentioning, dealing with, or in any way pertaining to, either explicitly or implicitly.

14.     The singular form of each word shall be interpreted in the plural, and vice versa, so as to give each request the broadest possible scope.

15.     Regardless of the tense employed, all verbs shall be read as applying to past, present, and future as necessary to make any phrase more, rather than less, inclusive.

16.     The conjunctives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17.     The terms "all," "each," and "any" shall be construed as all and any.

### TOPICS FOR EXAMINATION

57.     The contributions of each inventor, separately, to the conception and reduction to practice of the Asserted Patents.

58.     Sight's awareness, monitoring, or analysis of Defendants or Defendants' intellectual property.

59.     Sight's awareness, monitoring, or analysis of Hydrus, including the date You first became aware of Hydrus.

60.     Any materials provided to Sight's prosecution counsel and/or any Person responsible for prosecuting the Asserted Patents during prosecution of the Asserted Claims.

61.     The facts and circumstances related to when Sight first believed it had intellectual property, including a patent or patent application, that covered Hydrus.

62.     The facts and circumstances related to when Sight first discussed or considered litigation regarding the Accused Products, and its final decision to sue in 2021.

63.      All communications with Alcon or Ivantis regarding Sight's patent rights before you filed this lawsuit.

64.      Your knowledge and internal and external communications concerning Alcon's potential acquisition of Ivantis, including the date You first became aware of a potential acquisition or an option to acquire Ivantis.

65.      Your sales activities and history of sales for each account or customer relationship You contend has been "negatively impacted" by Defendants' alleged infringement, including the causal nexus to Defendants' alleged infringement. *See, e.g.*, Pl.'s Resp. to Interrog. 12.

66.      The facts and circumstances related to your attempts to develop and commercialize Helix.

67.      The facts and circumstances related to Sight's analysis and response to proposed Medicare reimbursement changes related to Omni, including but not limited to the issue described in Item 8.01 of Sight Sciences' June 8, 2023 Form 8-K filing with the U.S. Securities and Exchange Commission.

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew E. Russell, hereby certify that on June 15, 2023, this document was served on

the persons listed below in the manner indicated:

**<u>BY EMAIL</u>**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Michelle S. Rhyu, J.D., Ph.D.
David N. Murdter
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
Angela R. Madrigal
Juan Pablo Gonzalez
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
dmurdter@cooley.com
lstrosnick@cooley.com
amwood@cooley.com
cvanderwall@cooley.com
jgonzalez@cooley.com
amadrigal@cooley.com

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

# EXHIBIT 22

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON | ) | |
| RESEARCH LLC, ALCON | ) | |
| VISION, LLC, and ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' NOTICE OF DEPOSITION OF
<u>PLAINTIFF PURSUANT TO FED. R. CIV. P. 30(b)(6)</u>**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants") will take the deposition of Plaintiff Sight Sciences, Inc. ("Sight"). The deposition will take place at Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004, on June 15, 2023, at 9 a.m. Eastern time, or at such other time and place as mutually agreed-upon, and will continue from day to day until completed.

Sight shall designate one or more of its officers, directors, managing agents, or other persons with knowledge of the matters set forth in Attachment A of this Notice to appear and testify on its behalf at the deposition. The Person(s) so designated shall testify as to matters known or reasonably available to Sight, including without limitation all matters known or reasonably available to individuals identified in Sight's initial disclosures in the above-captioned case.

The deposition will be before a Person authorized by law to administer oaths and will be recorded using the stenographic method, through the instant visual display of testimony, and will

1

also be recorded using audio and videotape technology. Testimony derived pursuant to this Notice of Deposition shall be used for any and all appropriate purposes. You are invited to attend and participate.

| | |
|---|---|
| | */s/ Kat Li* |
| OF COUNSEL: | John W. Shaw (No. 3362) |
| Gregg LoCascio | Andrew E. Russell (No. 5382) |
| Justin Bova | Nathan Hoeschen (No. 6232) |
| Steven Dirks | SHAW KELLER LLP |
| Socrates L. Boutsikaris | I.M. Pei Building |
| KIRKLAND & ELLIS LLP | 1105 North Market Street, 12th Floor |
| 1301 Pennsylvania Avenue, N.W. | Wilmington, DE 19801 |
| Washington, DC 20004 | (302) 298-0700 |
| (202) 389-5000 | jshaw@shawkeller.com |
| | nhoeschen@shawkeller.com |
| Jeanne M. Heffernan | *Attorneys for Defendants* |
| Kat Li | |
| Austin Teng | |
| Ryan J. Melde | |
| KIRKLAND & ELLIS LLP | |
| 401 Congress Avenue | |
| Austin, TX  78701 | |
| (512) 678-9100 | |
| | |
| Ryan Kane | |
| Laura Zhu | |
| KIRKLAND & ELLIS LLP | |
| 601 Lexington Avenue | |
| New York, NY 10022 | |
| (212) 446-4800 | |

Dated: May 3, 2023

## ATTACHMENT A

## DEFINITIONS

1.      "Alcon" shall mean Defendants Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. and their officers, employees, counsel, agents, consultants, and representatives, and includes joint ventures and other entities that are wholly or partially owned by Alcon, either directly or indirectly, and the officers, employees, counsel, agents, consultants, and representatives of these divisions, subsidiaries, and joint ventures.

2.      "Ivantis" shall mean Ivantis, Inc., its present and former officers, directors, employees, counsel, agents, consultants, and representatives, and includes affiliates, assignees, predecessors in interest, or successors in interest.

3.      "Defendants" collectively refers to Alcon and Ivantis.

4.      "Sight Sciences," "Plaintiff," "You," or "Your" shall mean Plaintiff Sight Sciences, Inc., its present and former officers, directors, employees, counsel, agents, consultants, representatives, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on their behalf, including, without limitation, any inventors of the Asserted Patents.

5.      "This Case" or "This Action" refers to the above-captioned action, *Sight Sciences, Inc. v. Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc.*, No. 21-cv-1317-GBW-SRF (D. Del.).

6.      "Complaint" refers to the Complaint filed in This Action (D.I. 1) on September 16, 2021, and any amendments thereto, including Sight Sciences' First Amended Complaint (D.I. 19), filed on December 15, 2021, and Sight Sciences' Second Amended Complaint (D.I. 59), filed on August 1, 2022.

7.      "Ivantis' Counterclaims" or "Defendants' Counterclaims" refer to the Counterclaims (D.I. 22) filed by Ivantis in This Action, and any amendments thereto, including Defendants' Counterclaims (D.I. 77), filed on September 15, 2022.

8.      "Asserted Patents" means U.S. Patent Nos. 8,287,482; 9,370,443; 9,486,361; 10,314,742; and 11,389,328 and the respective patent applications, including any applications to which they claim priority, that led to each, as well as any other patent that Sight Sciences contends Defendants infringe.

9.      "Hydrus" shall mean the Ivantis Hydrus® Microstent, as identified in the Complaint.

10.     "Accused Products" shall mean the Hydrus and any other device or system that Sight Sciences alleges infringes the Asserted Patents in This Action.

11.     "Asserted Claim" means each claim of the Asserted Patents that Sight Sciences alleges, in the Complaint or in subsequent pleadings or disclosures, is infringed by one or more of the Accused Products, either directly or indirectly.

12.     "Person" shall mean any natural person, alive or deceased, and any business, legal or governmental entity or association.

13.     "Document" shall mean all materials, as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, any handwritten, printed, typed, recorded photographic, and computer-generated materials of any kind or nature, however produced or reproduced, as well as material stored electronically, electromagnetically, mechanically, optically, and electronic recordings or transcripts thereof, and includes drafts, revisions of drafts, preliminary and preparatory materials, originals, copies, emails, attachments, exhibits, removable notes, and all translations and summaries thereof.

14.     "Prior Art" shall mean the subject matter described in 35 U.S.C. §§ 102 or 103, including, without limitation, all patents, patent applications, printed publications, Documents,

4

things, or activities, including public uses, disclosures, sales or offers to sell, or any other information described in 35 U.S.C. §§ 102 or 103 that could relate to the validity of the Asserted Patents.

15.     "Date" means the exact day, month, and year, if ascertainable, or, if not, the closest approximation thereto that can be made by means of a relationship to other events, locations, or matters. Identify each instance in which the given date is an approximation, and state Your bases for making such approximation.

16.     "Employee" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the designated entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

17.     "Sight Product" shall mean any product Sight Sciences sells.

18.     The terms "concerning" and "relating to" shall mean, in whole or in part, referring to, describing, evidencing, constituting, containing, comprising, referring to, embodying, connected to, reflecting, analyzing, showing, discussing, identifying, illustrating, stating, regarding, supporting, refuting, rebutting, responding to, commenting on, evaluating, about, in respect of, mentioning, dealing with, or in any way pertaining to, either explicitly or implicitly.

19.     The singular form of each word shall be interpreted in the plural, and vice versa, so as to give each request the broadest possible scope.

20.     Regardless of the tense employed, all verbs shall be read as applying to past, present, and future as necessary to make any phrase more, rather than less, inclusive.

21.     The conjunctives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

22.     The terms "all," "each," and "any" shall be construed as all and any.

## TOPICS FOR EXAMINATION

1.     The conception, creation, design, and development of the inventions claimed in the Asserted Patents.

2.     Expenditures and costs for the conception, creation, research, design, and development of the inventions claimed in the Asserted Patents.

3.     Sight's analyses, estimations, or calculations of contact between a device and the internal wall of Schlemm's canal.

4.     Sight's testing, measurements, or analysis of (i) aqueous outflux a device permits after it is inserted into Schlemm's canal, (ii) intraocular pressure reduction after a device is inserted into Schlemm's canal, or the amount of interference a device makes with aqueous humor after it is inserted into Schlemm's canal.

5.     Sight's analyses, estimations, or calculations of the radius of curvature of an arcuate member compared to the radius of curvature of Schlemm's canal.

6.     Sight's promotion and/or marketing of any Sight Product, including OMNI, with a non-Sight product, including Hydrus.

7.     Sight's non-privileged communications and presentations regarding its patent portfolio, including to potential investors.

8.     Any valuations of Sight's intellectual property, including its patents.

9.     The facts and circumstances surrounding any communication or negotiation by Sight or its employees or agents thereof, regarding licensing or selling intellectual property or technology to any Person, including Ivantis or Alcon.

10.    The preparation and prosecution of the applications that issued as the Asserted Patents, including, but not limited to, all interviews with the USPTO, materials presented to the USPTO, and all affidavits, oaths, or declarations submitted to the USPTO.

11.     All research, development, testing, consideration, experimentation, analysis, and/or evaluation of supports that are tubular or supports that do not occupy at least a portion of the central core of Schlemm's canal.

12.     For any assertion of objective indicia of non-obviousness for any asserted claim of any Asserted Patent, the identification of which specific objective indicia Sight asserts applies to which specific asserted claim or claims, and the factual basis for Sight's assertion.

13.     For any assertion that a prior art reference teaches away from any claim of the Asserted Patents, the identification of the reference or prior art, the claim or claims to which it applies, and the factual basis for asserting that it teaches away.

14.     The factual bases for Sight's contention that Defendants infringe, induce the infringement of, and/or contribute to the infringement of each Asserted Claim, including, but not limited to, the contents of all documents relied upon in Sight's Infringement Contentions.

15.     The factual bases for Sight's contention that the Asserted Claims are not invalid under 35 U.S.C. §§ 102, 103, and/or 112, including, but not limited to, the identity and contents of any documents, analyses, reports, or opinions relied upon in support thereof.

16.     Sight's knowledge before September 16, 2021 of Hydrus.

17.     Sales forecasts, sales projections, or market analyses in Sight's possession or control concerning OMNI or MIGS.

18.     The sales, sales forecasts, costs, profits, profit forecasts, and market share data in Sight's possession or control for any product or method embraced by any claim in any patent-in-suit, such as those described in any business plans, communications, or documents.

19.     Promotional, sales, and marketing activities with respect to Sight Products, including, but not limited to, sampling, rebates, discounts, and/or other incentives offered for the use or

purchase of Sight Products, strategies for the promotion and marketing of Sight Products, and promotional and marketing budgets and/or expenditures.

20.     Profit and Loss Data for Sight Products showing each line item, including, but not limited to, COGS, SG&A, R&D, overhead, marketing, and any other costs.

21.     All information concerning any analysis, projection, or calculation of profits that Sight has made or will make for Sight Products.

22.     Competitors and competitive intelligence or analyses in Sight's possession or control for Sight Products.

23.     Market and financial analysis of Sight Products, including without limitation analysis of sales, costs, pricing, profits, market share, market definition, sales projections, and physician surveys.

24.     Marketing plans, business plans, advertising plans, sales plans, promotional plans, market studies, market research, market analyses, competitive research, advertisements, communications with doctors, or any other healthcare providers, patients, training and instruction of marketing personnel, and competitive analyses relating to any product that Sight contends embodies one or more claims of any patent-in-suit.

25.     Sight's efforts or attempts to obtain approval of any product that it contends practices any claim of the Asserted Patents.

26.     Analyses, research, or studies of pricing of Sight Products, including any analyses of Sight Products and any alleged competitive or alternative product in the US market, including iStent, Hydrus, or any MIGS product.

27.     By year, any R&D expenditure actually made by Sight in the development of OMNI.

28.     Any agreements, contracts, partnerships, or arrangements by Sight with any third party relating to the development, supply, manufacture, approval, distribution, promotion, marketing, and/or sale of any Sight Product.

29.     Any licensing by Sight, or those acting on its behalf, of any patent relating to OMNI.

30.     All communications, instructions, agreements, offers, and/or promotional incentives for healthcare providers, doctors, or any medical professional to switch, replace, or transition from iStent or Hydrus, and all documents reflecting same.

31.     The time and effort required to develop a medical device along with the necessary regulatory submissions, including with respect to ophthalmic medical devices.

32.     All facts and circumstances relating to whether the Hydrus or any other MIGS products compete with OMNI for customers, sales, or revenue, including any analyses of the financial impact of the introduction of Hydrus on Sight.

33.     Any efforts by Sight to market, advertise, or promote itself as similar to Alcon or Ivantis, or to promote OMNI as similar or complementary to Hydrus.

34.     Any analysis of Alcon's, Ivantis' or Sight's brand reputation, including but not limited to any evaluation of whether Alcon's brand influences prospective consumers to buy Alcon products, and/or any evaluation of whether Sight's brand influences prospective consumers to buy OMNI.

35.     Sight's awareness or knowledge of customer purchasing decisions for MIGS products, including decision-making factors, costs of switching products, and willingness to substitute one MIGS product with another.

36.     The factual basis for Sight's assertion that Defendants' alleged infringement resulted in lost sales of OMNI, including but not limited to the Persons that would have purchased OMNI but for the alleged infringement.

37.  Any analyses or comparisons between OMNI and Hydrus.

38.  All facts and circumstances concerning the market, demand, and any competition (with Defendants or any third party) for MIGS products, including all market studies, analyses, and reports commissioned or obtained by Sight concerning the OMNI, Hydrus, or any other competitor MIGS product.

39.  The full factual basis for any contention that Sight is entitled to injunctive relief, including (a) that Sight has suffered or will continue to suffer irreparable harm as a result of Defendants' conduct; (b) that remedies available at law, such as monetary damages, are inadequate to compensate for any such irreparable harm; (c) that a remedy in equity is warranted considering the balance of hardships between Sight and Defendants; and (d) that the public interest would not be disserved by a permanent injunction.

40.  All facts and circumstances when Sight first became aware of the alleged infringement of the Asserted Patents by any of Defendants' product or technology.

41.  What the inventors, applicants, or patentees considered to be the inventions disclosed in the Asserted Patents, their review of the application's disclosures and claims, and the reasons for when and how they chose to prosecute each Asserted Claim of the Asserted Patents.

42.  Sight's alleged priority date for each claim of the Asserted Patents and all factual support for those priority dates.

43.  The earliest embodiment of and any disclosure to any Person or entity, prior to the priority date of the Asserted Patents, of any aspect of the claimed subject matter of the Asserted Patents.

44.  Any notice of alleged infringement of any Asserted Patents Sight provided to Defendants prior to the filing of This Action.

45.     The facts underlying Sight's business decision to file This Case, including its timing and any Documents and communications considered by Sight before deciding to file This Case.

46.     All facts and circumstances related to the development of the Helix Microstent, including the origin of the idea for the Helix Microstent, the individuals involved in the conception, reduction to practice, and development of the Helix Microstent, and whether—and if so, why—Sight Sciences abandoned its development.

47.     Information related to any litigation funding offer that Sight solicited or received.

48.     Sight's financial liquidity and all facts related to Sight's financial resources prior to and after its initial public offering.

49.     Any opinion, assessment, or evaluation made by or on behalf of Sight regarding the patentability, enforceability, validity, and/or infringement of the Asserted Patents or related applications.

50.     Any presentation, communication, or correspondence to or from any third party regarding the Asserted Patents.

51.     Communications between Sight and doctor(s), distributor(s), or other customer(s) regarding the present lawsuit.

52.     Sight's capacity to manufacture, sell, and market Sight products and any Ivantis units Sight contends it would have sold but for the alleged infringement.

53.     Sight's contention that no non-infringing alternatives exist.

54.     Royalties received by Sight for the Asserted Patents or related patents and applications.

55.     Any offers to license the Asserted Patents or any other patents owned by Sight Sciences.

56.     Any offers to purchase Sight and/or the Asserted Patents, including the facts and circumstances to support Sight's allegations made in its Second Amended Complaint that "[Doug] Roeder offered to purchase the Badawis' IP rights."

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on June 27, 2023, I caused to be electronically filed a true and correct copy of Letter to the Honorable Sherry R. Fallon from Melanie K. Sharp Regarding Motion to Compel, Motion for Protective Order, and Motion to Allow Limited Number of Depositions After the Close of Fact Discovery with the Clerk of the Court using CM/ECF, which will send notification to the following counsel of record:

John W. Shaw
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

I further certify that on June 27, 2023, I caused a copy of the foregoing document to be served on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL:**

Gregg LoCascio
Sean M. McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
gregg.locascio@kirkland.com
sean.mceldowney@kirkland.com
justin.bova@kirkland.com
steven.dirks@kirkland.com
socrates.boutsikaris@kirkland.com

Jeanne M. Heffernan
Kat Li
Austin C. Teng
Ryan J. Melde
Kirkland & Ellis LLP
401 Congress Avenue
Austin, TX  78701
jheffernan@kirkland.com
kat.li@kirkland.com
austin.teng@kirkland.com
ryan.melde@kirkland.com

Ryan Kane
Nathaniel DeLucia
Laura Zhu
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
nathaniel.delucia@kirkland.com
laura.zhu@kirkland.com

Brian A. Verbus
Jacob Rambeau
300 N. LaSalle
Chicago, IL 60654
brian.verbus@kirkland.com
jake.rambeau@kirklandcom

Noah S. Frank
200 Clarendon Street
Boston, MA 02116
noah.frank@kirkland.com

_/s/ Melanie K. Sharp_
Melanie K. Sharp (No. 2501)

30498453.1