IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Redacted - Public Version** |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | ███████████████████ |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## LETTER TO THE HONORABLE JUDGE SHERRY R. FALLON
## FROM KAREN E. KELLER

OF COUNSEL:
Gregg LoCascio
Sean McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Austin C. Teng
Ryan J. Melde
Lydia B. Cash
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Laura Zhu
KIRKLAND & ELLIS LLP
601 Lexington Avenue

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: July 10, 2023

Dear Judge Fallon:

Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision LLC, and Alcon, Inc. ("Defendants") respectfully request the Court grant Defendants' motion to compel Plaintiff ("Plaintiff" or "Sight") to produce attachments referenced, but not produced, in produced emails.

Defendants have repeatedly asked Sight to produce all missing attachments from its productions. *See* Ex. 1 (4/21/2023 J. Bova Letter at 2); Ex. 2 (4/28/2023 J. Bova email); Ex. 3 (5/10/2023 J. Bova Letter at 6); Ex. 4 (5/26/2023 A. Teng email); Ex. 5 (6/12/2023 S. Dirks email); Ex. 6 (6/23/2023 A. Teng email); Ex. 7 (6/27/2023 N. DeLucia Letter at 2). This should not be controversial: Sight produced numerous email chains that reference one or more attachments that were not produced, and Defendants simply ask that Sight produce those referenced attachments. *See, e.g.,* Exs. 8 - 13 (SGHT0030283, SGHT0030410, SGHT0030936, SGHT0031063, SGHT0130538, SGHT0160500); Ex. 14 (6/20/2023 N. Frank email) (identifying these emails as examples of this issue to Sight). Nor does Sight dispute that such attachments are relevant, responsive, and should be produced. *See* Ex. 15 (6/22/23 L. Strosnick email) (agreeing to produce missing attachments for exemplary documents cited in prior correspondence); Ex. 16 (7/7/23 L. Strosnick email) (same). Rather, Sight argues that: 1) it was not obligated to "locate[]" and produce those attachments because they were not referenced by the last-in-time email in the produced email chain, and 2) it is Defendants' burden to scour Sight's production and identify all missing attachments. Ex. 15 (6/22/23 L. Strosnick email). Neither argument has merit.

**First**, Sight is wrong that it had no obligation to produce the missing attachments because "an attachment is only part of the document family when its parent document is the last-in-time [] email in the email chain." Ex. 17 (6/23/2023 L. Strosnick email). The Discovery Order required Sight to "***produce complete Document Families where any portion of the Family contains relevant information***." D.I. 49 § 4(e). This includes attachments to responsive email threads. *See Ariza v. Loomis Armored US, L.L.C.*, No. CV 13-419-JWD-SCR, 2014 WL 12611311, at *2 (M.D. La. Nov. 12, 2014) (ordering that "as to the original email that started the…email thread, within 10 days, the defendant shall produce the original email, and all other emails which followed it in the same thread, ***and all attachments to which any such email referred***"). Indeed, it would be absurd to posit that parties can shirk their discovery obligations by merely choosing to produce the most inclusive version of the ***text*** of an email chain, without regard to the various attachments that were part of the chain. *Cf. FrenchPorte IP, LLC v. C.H.I Overhead Doors, Inc.*, No. 21-2014, 2022 WL 18832042, at *3–4 (C.D. Ill. Dec. 19, 2022), *report and recommendation adopted sub nom. FrenchPorte IP, LLC v. C.H.I. Overhead Doors, Inc.*, No. 21-CV-2014, 2023 WL 2447591 (C.D. Ill. Mar. 10, 2023) (finding Plaintiff failed to comply with its discovery obligations where, "once it became clear that the spam filter excluded relevant documents, Plaintiff should have amended the domains to allow for all relevant documents to be captured").

**Second**, Sight, not Defendants, should be required to locate the missing attachments. Defendants identified as many as 400 emails that reference attachments to emails earlier in the thread. *See* Ex. 15 (6/22/2023 L. Strosnick email); Ex. 6 (6/23/2023 A. Teng email). Nor is this necessarily the full extent of the issue. It is simply not reasonable to expect Defendants to scour Plaintiff's production to identify every missing attachment Sight failed to produce. *See Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, No. 08 CIV. 7508 SAS, 2011 WL 3738979, at *7

1

(S.D.N.Y. Aug. 18, 2011), *report and recommendation adopted,* No. 08 CIV. 7508 SAS, 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011) ("The Special Master finds that it would be not only inefficient, but also patently unfair, to place the burden on Defendants to identify all of the e-mails that are missing attachments and to identify those e-mails to Plaintiffs for the purpose of further productions.").   By contrast, it is easily within Sight's vendor's capabilities to identify all unproduced emails associated with the emails Sight did produce.   Indeed, when Defendants confronted Sight with examples of the email chains missing attachments, Sight was able to locate and produce the referenced attachments in a matter of days.   *See* Ex. 15 (6/22/23 L. Strosnick email).   And Sight should not need to re-review for relevance given that the attachments are undisputedly relevant and responsive, and in any event any purported burden of a "re-review" is one of its own making.   Ex. 15 (6/22/23 L. Strosnick email) (agreeing to produce missing attachments for exemplary documents cited in prior correspondence); Ex. 16 (7/7/23 L. Strosnick email) (same); *See Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, No. 08 CIV. 7508 SAS, 2011 WL 3738979, at *7 (S.D.N.Y. Aug. 18, 2011), *report and recommendation adopted,* No. 08 CIV. 7508 SAS, 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011) ("in light of the unique relationship of attachments to e-mails that support an inference of contextual relevance—or where production of the attachments may be required for fairness or completeness," parties should be required to produce missing attachments to responsive, produced emails).

*        *        *

Sight is obligated to produce responsive attachments, and the Court should compel Sight to produce the missing attachments for all of the Bates numbers identified by Defendants thus far, as well as to run searches for and produce all other instances of lesser-included emails with missing attachments.

Respectfully submitted,

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)

cc:     Clerk of Court (by CM/ECF & Hand Delivery)
        All Counsel of Record (by CM/ECF & Email)

2

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on July 10, 2023, this document was served on

zsightsciencesivantis@cooley.com and the persons listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Melanie K. Sharp | Michelle S. Rhyu, J.D., Ph.D. |
| James L. Higgins | David N. Murdter |
| Taylor E. Hallowell | Lauren Strosnick |
| YOUNG, CONAWAY, STARGATT & TAYLOR LLP | Alissa Wood |
| Rodney Square | Cameron C. Vanderwall |
| 1000 North King Street | Angela R. Madrigal |
| Wilmington, DE 19801 | Juan Pablo Gonzalez |
| (302) 571-6600 | COOLEY LLP |
| msharp@ycst.com | 3175 Hanover Street |
| jhiggins@ycst.com | Palo Alto, CA 94305 |
| thallowell@ycst.com | (650) 843-5000 |
| | rhyums@cooley.com |
| Orion Armon | dmurdter@cooley.com |
| COOLEY LLP | lstrosnick@cooley.com |
| 1144 15th Street, Suite 2300 | amwood@cooley.com |
| Denver, CO 80202 | cvanderwall@cooley.com |
| (720) 566-4000 | jgonzalez@cooley.com |
| oarmon@cooley.com | amadrigal@cooley.com |
| | |
| Dustin M. Knight | Bonnie Fletcher Price |
| COOLEY LLP | COOLEY LLP |
| 11951 Freedom Drive, 14th Floor | 1299 Pennsylvania Avenue, NW |
| Reston, VA 20190 | Suite 700 |
| (703) 456-8024 | Washington, DC 20004 |
| dknight@cooley.com | (202) 776-2099 |
| | bfletcherprice@cooley.com |

*/s/ Karen E. Keller*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO COMPEL**

Upon consideration of Defendants' Motion to Compel, Defendants' Motion is

**GRANTED**.

The Court therefore **ORDERS** as follows:

1. Plaintiff shall search for attachments referenced in lesser-included content of

   produced emails and produce all missing attachments by Monday, July 17,

   2023.

SO ORDERED this _____ day of _____, 2023.

_____
United States Magistrate District Judge

3

# EXHIBIT 1

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States

Justin Bova
To Call Writer Directly:
+1 202 389 3261
justin.bova@kirkland.com

+1 202 389 5000

Facsimile:
+1 202 389 5200

www.kirkland.com

April 21, 2023

**Via Email**

Lauren Strosnick                                              **CONFIDENTIAL**
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

Re:     *Sight Sciences, Inc. v. Ivantis, Inc.*, C.A. No. 21:1317-GBW-SRF:
        Plaintiff's Deficient Document Production and Responses to Defendants'
        Second Set of RFPs

Dear Lauren:

Defendants served their first set of RFPs last April. Over the last several months, Defendants have requested Sight fulfill its discovery obligations and furnish a fulsome document production. *See* 11/21/2022, 1/6/2023 K. Li Letters; 1/18/2023 Meet-and-Confer; 1/31/2023 S. Dirks Letter; 2/21/2023, 2/22/2023 Meet-and-Confers; 3/3/2023 K. Li Letter; 3/14/2023 Meet-and-Confer; 3/15/2023 S. Dirks e-mail. As explained below, Sight's document production has been, and remains, deficient despite the passage of the Court's deadline for substantial completion on March 9, 2023 with respect to several of Defendants' requests from their first set of RFPs (Nos. 1-66). Sight's responses to Defendants' second set of RFPs (Nos. 67-98) are similarly deficient, as explained below. Sight's ongoing failure to comply with its obligations under Fed. R. Civ. P. 34 prejudice Defendants in their ability to progress with fact discovery, which closes on June 29, 2023. Given the fast-approaching deadline, please confirm, by April 25, 2023, that Sight will produce the requested materials. Otherwise, please provide your availability to meet and confer on April 26 or 27.

## I.      DEFENDANTS' FIRST SET OF RFPS (NOS. 1-66)

After multiple letters and meet-and-confers on Sight's deficient document production in response to Defendants' first set of RFPs (Nos. 1-66), Sight represented last month that it would produce additional documents responsive to certain requests or investigate whether such additional documents exist. *See* 3/16/2023 L. Strosnick e-mail; 3/15/2023 S. Dirks e-mail; 3/3/2023 K. Li Letter. Sight's most recent production of 1,907 documents served on April 10, 2023 fails to resolve the deficiencies Defendants identified, and raises serious questions as to why certain documents

## KIRKLAND & ELLIS LLP

Lauren Strosnick
April 21, 2023
Page 2

**CONFIDENTIAL**

were not produced before the March 9, 2023 deadline for substantial completion of document production. For example, after Defendants pointed out that Sight had only produced 174 emails from the Badawis *combined*, Sight represented that it has all of the Badawis' emails (including emails from their personal email accounts) going back to at least 2006 and that it had produced all relevant non-privileged documents and communications, but that it would re-evaluate whether there are additional emails to produce. 3/15/2023 S. Dirks e-mail; 3/16/2023 L. Strosnick e-mail. Sight's most recent production, however, included only 198 new emails from the Badawis, bringing the total emails from the Badawis to 446 emails. Most of these recently produced emails should have hit on search terms Sight represented that it ran against its custodial documents. 12/6/2022 L. Strosnick e-mail ("For ESI maintained by David and Paul Badawi, we used the following search terms … 9. Helix OR Dilator"); *see, e.g.*, SGHT0130299 (Paul Badawi custodial document produced April 10, 2023 comprising the word "Helix"); SGHT0135699 (same). Moreover, despite agreeing to produce complete document families, D.I. 49, several Badawi emails are missing attachments referenced in the body of the email. *See, e.g.*, SGHT0029883. These issues raise serious concerns about Sight's overall document collection, review, and production. Please explain why these additional emails were not produced before the substantial completion deadline and also confirm Sight is not similarly withholding other responsive, non-privileged documents or communications, including from the Badawis' emails at the following email addresses: paul@sightsciences.com, pbadawi@yahoo.com, david@sightsciences.com, davidbadawi@gmail.com, davidbadawi@kindle.com. Please also provide a date certain for when Sight will produce all missing attachments.

As another example, after expressing our concern over the lack of documents related to the Helix and its early-stage development that we would expect to be responsive at least to RFP Nos. 10-11, 14, 21, 24, 34, 36, 46-47, and 63-64, *see* 3/15/2023 S. Dirks e-mail, 3/3/2023 K. Li Letter, Sight agreed to "produce additional documents relating to the design of the Helix." 3/16/2023 L. Strosnick e-mail. Sight's most recent production, however, includes only 84 documents that include the word "Helix." As with the Badawi emails, it is unclear why these documents were not included in Sight's productions before the substantial completion deadline. It is also concerning that Sight has only produced 537 documents from the claimed priority date through Sight's "pausing" of its foundational product Sight has alleged embodies the Asserted Patents (2006-2012) compared to the post-Helix years (11,850 documents between 2013-2023). Please confirm Sight will produce relevant, responsive documents and that it is not withholding such documents.

Regarding RFP No. 39, which seeks "all documents relating to analyses or decisions by You concerning whether to research, develop, launch, continue, or discontinue the making, use, offering for sale, sale or importation in the United States of any Covered Product," Sight represented it would investigate whether there are additional responsive, non-privileged documents to produce. 3/16/2023 L. Strosnick e-mail. There must be additional documents regarding the decision to "pause" the development of the foundational Helix product, but Sight's recent production includes very few of these types of documents. Such documents are relevant to

## KIRKLAND & ELLIS LLP

Lauren Strosnick
April 21, 2023
Page 3

**CONFIDENTIAL**

the invalidity of the Asserted Claims, secondary considerations, and damages. Please confirm Sight will produce non-privileged documents responsive to the full scope of RFP No. 39.

Regarding RFP No. 59, which requests documents "concerning any harm that Sight Sciences asserts Ivantis has caused to Sight Sciences," you stated you were working to collect additional financial documents that would be produced. Please confirm Sight's production of financial documents is up to date.

## II.   DEFENDANTS' SECOND SET OF RFPS (NOS. 67-98)

Several of Sight's responses improperly limit the materials it intends to produce while ignoring the remainder of Defendants' requests. The below is not intended to be exhaustive of all the deficiencies in Sight's responses and should not be interpreted as such. Defendants reserve the right to raise additional issues with Sight's objections, responses, and documents, and this letter does not redefine or narrow the scope of Defendants' requests. As explained in more detail below, Sight's responses fail to comply with its obligation under Fed. R. Civ. P. 34 and prejudice Defendants in their ability to progress with fact discovery.

### RFP No. 67

RFP No. 67 requests "All Documents that identify, evaluate, analyze, assess, or otherwise discuss why You lost sales for any product for which You are seeking lost profits, including for example lost sales reports." In response, Sight indicated that it "has produced or will produce responsive, relevant, non-privileged documents responsive to this Request." It does not appear that Sight has produced any such documents. Please provide a date certain for when Sight will do so.

### RFP No. 68

RFP No. 68 requests documents comparing any product for which Sight is seeking lost profits to Hydrus. In response, Sight indicated that it "has produced or will produce relevant, non-privileged documents responsive to this Request." Please confirm that Sight has produced all of the requested documents or provide a date certain for when Sight will do so.

### RFP Nos. 69-72, 74, 77-82, 90

In response to RFP Nos. 69-72, 74, and 77-82, Sight indicated that it has no relevant, non-privileged documents or communications responsive to these requests or a portion of the request. Please state whether Sight is withholding any responsive materials subject to its objections as

## KIRKLAND & ELLIS LLP

Lauren Strosnick                                                          **CONFIDENTIAL**
April 21, 2023
Page 4

required by Fed. R. Civ. P. 34(b)(2)(C). For example, please confirm that ███████████ ████████████████████████████████████████████ (RFP No. 71).

In response to RFP No. 90, Sight indicated that it has no non-privileged documents responsive to the request. Please state whether Sight is withholding any responsive materials subject to its objections as required by Fed. R. Civ. P. 34(b)(2)(C). For example, please confirm that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

In response to RFP No. 69, Sight also indicated that it "has produced or will produce responsive, relevant, non-privileged documents sufficient to show why Sight chose to prioritize commercialization of products other than Helix in the 2012 timeframe." As explained above for RFP. No. 39, Sight's production appears to be deficient. Please confirm that Sight has produced all of the requested documents or provide a date certain for when Sight will do so.

**RFP No. 73**

RFP No. 73 requests documents describing or concerning the value of the Asserted Patents. In response, Sight indicated that it "will produce relevant, non-privileged documents responsive to this Request, to the extent such documents exist." Please provide a date certain for when Sight will produce such documents.

**RFP No. 75**

RFP No. 75 requests documents concerning financial projections of any product for which Sight is seeking lost profits. In response, Sight indicated that it "has produced or will produce documents responsive to this Request." Please confirm that Sight has produced all of the requested documents or provide a date certain for which Sight will do so.

**RFP No. 76**

RFP No. 76 requests documents sufficient to show Sight's manufacturing, sales, and marketing capacity for products for which Sight is seeking lost profits. In response, Sight indicated that it "has produced or will produce relevant, non-privileged documents responsive to this Request." It does not appear that Sight has produced any such documents. Please provide a date certain for when Sight will produce the requested documents, including but not limited to manufacturing agreements, list of manufacturing facilities, list of suppliers, supply agreements, sales and marketing plans, sales coverage maps, budgeting for sales and marketing, lines of credit,

## KIRKLAND & ELLIS LLP

Lauren Strosnick
April 21, 2023
Page 5

**CONFIDENTIAL**

financial projections, documents recording impacts of COVID and future plans, and communications regarding the above.

### RFP No. 83

RFP No. 83 requests documents supporting Sight's contentions that it is entitled to collateral convoyed sales or lack thereof as a result of the sale of any product for which Sight is seeking lost profits. In response, Sight indicated that it "has produced or will produce relevant, non-privileged documents responsive to this Request, to the extent such documents exist, during time periods when Sight claims lost profit damages." Please confirm that Sight has produced all of the requested documents or provide a date certain for which Sight will do so.

### RFP No. 84

RFP No. 84 requests Sight's annual reports, whether audited or unaudited, from fiscal year 2015 to present. In response, Sight indicated that it has produced or will produce its audited and unaudited annual reports from fiscal year 2015 to present. It does not appear that such reports have been produced. Please provide a date certain for when Sight will produce the requested documents.

### RFP Nos. 85-86

RFP Nos. 85 and 86 request all valuations and any third party financial analyses of Sight's intellectual property, including the Asserted Patents. In response, Sight indicated that it "will produce relevant, non-privileged documents responsive to [these requests], to the extent such documents exist." It does not appear that Sight has produced any such documents. Please provide a date certain for when Sight will do so.

### RFP Nos. 87, 89

RFP No. 87 requests "All Documents, calculations, estimations, or analyses relating to measuring the amount of surface area contact between an implant and Schlemm's canal." RFP No. 89 requests "All documents, calculations, estimations, or analyses relating to measuring the fraction of canal wall surface area in contact with a support that is estimated by viewing the inside of Schlemm's canal as a slightly arcuate cylinder having length, extending circumferentially from a first end to a second end of a support, and an inside radius." In response, Sight indicated that it "has produced or will produce relevant, non-privileged documents responsive to [these] Request[s] to the extent such documents exist and are in Sight's possession, custody, and control." It does not appear that Sight has produced any such materials. Please provide a date certain for when Sight will produce responsive materials.

## KIRKLAND & ELLIS LLP

Lauren Strosnick
April 21, 2023
Page 6

**CONFIDENTIAL**

### RFP Nos. 88, 91

RFP No. 88 requests documents relating to the benefits of having an implant occupy the central core of Schlemm's canal, including documents relating to the disadvantages or challenges of having an implant assume a tubular design. RFP No. 91 requests "All Documents relating to Westwood Vision, Inc., including documents mentioning or referring to Westwood Vision, Inc. or any code words, shorthand, or abbreviations thereof, the circumstances under which the company was founded and the persons involved, and the circumstances under which the company became Sight Sciences, Inc." In response, Sight indicated that it "has produced or will produce relevant, non-privileged documents responsive to [these] Request[s] to the extent such documents exist." Please confirm that Sight has produced all of the requested documents or provide a date certain for which Sight will do so.

### RFP No. 92

RFP No. 92 requests "Documents referring or relating to Your possession or investigation of any physical Hydrus implant, including the circumstances upon which You obtained such possession or performed such investigation." In response, Sight indicated that it "has produced or will produce relevant, non-privileged documents responsive to this Request to the extent they exist and are in Sight's possession, custody, or control." It does not appear that Sight has produced any of these documents. Please provide a date certain for when Sight will do so.

### RFP No. 93

RFP No. 93 requests documents sufficient to show, for each of the Asserted Patents, certain indicia of nonobviousness. In response, Sight indicated that it "has produced or will produce responsive, non-privileged documents in Sight's possession, custody, and control." Please confirm that Sight has produced all of the requested documents or provide a date certain for which Sight will do so.

### RFP No. 94

RFP No. 94 requests documents relating to Sight's, Paul Badawi, and/or David Badawi's research and development efforts predating the Helix. In response, Sight indicated that it "has produced or will produce responsive, non-privileged documents relating to prototypes of supports that it made before prototyping the Helix support." As noted above, Sight has only produced 537

## KIRKLAND & ELLIS LLP

Lauren Strosnick                                                    **CONFIDENTIAL**
April 21, 2023
Page 7

documents in the 2006-2012 timeframe, and it does not appear that Sight has produced any documents responsive to this request. Please provide a date certain for when Sight will do so.

### RFP Nos. 95-96

RFP No. 95 requests documents "relating to Your consideration of and efforts to obtain FDA approval of the Helix, including Documents relating to researching the possibility of or preparing submissions for 510(k) and/or premarket approval applications for the Helix, including Documents referring to the Hydrus or other MIGS products as a potential predicate device." In response, Sight refused to produce documents responsive to this request, arguing that ███████ █████████████████████████ "do not relate to a product that will be commercially marketed prior to the trial in this case." RFP No. 96 requests documents "relating to testing performed or prepared to perform relating to the Helix, including animal, cadaver, and in-human studies (*e.g.*, the studies described in SGHT0008228)." In response to RFP No. 96, Sight agreed to produce relevant, responsive, non-privileged documents "sufficient to show testing performed relating to the Helix prior to 2012," but refused to produce documents responsive to this request relating to the ████████████, as such development efforts allegedly "do not relate to a product that will be commercially marketed prior to the trial in this case."

Defendants are entitled to discovery on products that Sight contends embody or practice any claim of the Asserted Patents that are within Sight's possession, custody, or control. Independent of whether a product is commercially marketed prior to the trial in this case, such discovery is relevant to, for example, assessing the validity of the Asserted Claims, secondary considerations, and whether Sight is entitled to damages. Sight's reliance on the Hydrus for FDA approval, as another example (*see* SGHT0033140), is relevant to damages as it demonstrates cost avoidance. Sight provides no factual or legal justification as to why the Helix needs to be commercially marketed before trial for such discovery to be relevant to these issues. Please confirm that Sight will produce documents responsive to the full scope of these requests.

### RFP No. 97

RFP No. 97 requests "All Documents relating to Project Falcon, including Documents relating to Sight's decision to pursue VASCAR and/or delay commercialization of the Helix." In response, Sight indicated that it "has produced or will produce relevant, responsive, non-privileged documents sufficient to show why Sight chose to prioritize commercialization of VASCAR over the Helix in the 2012 timeframe." Defendants are entitled to the full scope of this RFP, which requests "All Documents," not "documents sufficient to show." Furthermore, RFP No. 97 does not limit the request to the "2012 timeframe." To the extent responsive documents exists beyond that timeframe, Sight must produce them. "Project Falcon" appears in just one document. *See* SGHT0024316. Thus, it does not appear that Sight has produced all documents responsive to this

## KIRKLAND & ELLIS LLP

Lauren Strosnick
April 21, 2023
Page 8

**CONFIDENTIAL**

request. Please provide a date certain for when Sight will produce all documents responsive to the full scope of this RFP.

### RFP No. 98

RFP No. 98 requests "All Documents or communications supporting Your contention that any Defendant or any alleged agent of a Defendant, including any individual from Shay Glenn or Delphi Ventures, made unsolicited overtures, offers to purchase, or expressions of interest to purchase any intellectual property owned by or assigned to Westwood Vision, Inc., Sight Sciences Inc., Paul Badawi, and/or David Badawi." In response, Sight indicated that it "has produced relevant, responsive, non-privileged documents showing Ivantis's unsolicited overtures to Sight regarding U.S. Patent Publ. No. 2007/0298068." Please confirm that Sight is not withholding any relevant, non-privileged documents responsive to the full scope of this RFP.

\*       \*       \*

Please confirm by April 25, 2023 that Sight will supplement its responses or will produce documents response to the above requests. Otherwise, please provide your availability on April 26 or 27, 2023 to meet and confer.

Sincerely,

/s/ *Justin Bova*

Justin Bova

# EXHIBIT 2

| | |
|---|---|
| **From:** | Bova, Justin |
| **To:** | Armon, Orion; Rhyu, Michelle; Arora, Priya; Madrigal, Angela R.; *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com; Murdter, David; Vanderwall, Cameron C.; Strosnick, Lauren; Douglas, Jeannine |
| **Cc:** | SKIvantis; #Alcon-SightSciences; z/Sight Sciences Ivantis |
| **Subject:** | RE: Sight Sciences v. Ivantis - Case schedule |
| **Date:** | Friday, April 28, 2023 8:47:01 PM |

Counsel,

Thank you for confirming you share our understanding regarding what "claim construction order" means in the context of the final contentions deadlines.

**Sight's Document Production.** During our conferral, and after we repeated the concerns we raised in our April 21 letter about Sight's deficient document production, you agreed to respond in writing to each of our requests in the letter. Please provide the date certain for your response. As mentioned, our concerns about Sight's collection, review, and production remain. You agreed to investigate our concern regarding documents produced that are missing attachments. For example, Sight produced some documents that reference attachments and SolidWorks or IGES files that are missing. *See, e.g.*, SGHT0031048, SGHT0031051. You also confirmed that despite allegedly collecting all emails from the Badawis dating back to 2006 and running search terms against those emails, the reason for your subsequent production of more emails was because you loosened your relevance filter to include Helix-related documents.  As we explained on our call, it is unclear why these relevant documents were excluded from the initial productions, considering your representation that you initially applied the search term "Helix" across the Badawis' emails. *See* 12/6/2022 L. Strosnick email.  Our concerns over your relevance filtering are not isolated to Defendants' RFPs related to the Helix, but to all of the RFPs we identified in our letter. 4/26/2023 J. Bova Letter (citing, *e.g.*, RFP Nos. 59,  67-68, 70-76, 79-86). For example, it does not appear that Sight has produced documents sufficient to show its manufacturing, sales, and marketing capacity for products for which Sight is seeking lost profits. *See* Defendants' RFP No. 76. Further, Sight confirmed that it is still gathering documents responsive to Defendants' RFP No. 84, regarding Sight's audited and unaudited financial reports. We look forward to receiving those documents along with other damages documents with ample time to review in advance of depositions as you stated during the meet and confer.

Sight's document production remains deficient well past the substantial completion deadline of March 9, and its selective, unilateral, and narrow determination of relevance is highly concerning to Defendants. Sight's action are prejudicing Defendants' ability to prepare for depositions.  Defendants first requested these documents in April 2022 and have been requesting supplementation of Sight's productions since November 2022. Please confirm that Sight's document production will be substantially complete by May 5.  We propose the parties mutually agree to schedule depositions after that date.

**Sight's Interrogatory Responses.** You also confirmed during our conferral that you will supplement your responses to Defendants' Interrogatories Nos. 2, 4, 5, 6, and 7 with a tentative target of May 5 and "mid-May" for Interrogatory No. 5. 4/19/23 L. Strosnick email.  You also agreed to supplement your responses to Defendants' Interrogatory No. 8 to more clearly articulate Sight's bases for its positions.  More specifically:

- With respect to Defendants' Interrogatory No. 5, you confirmed that Sight seeks lost profits solely for OMNI and is not seeking lost profits on collateral or convoyed sales of any of Sight's other products.
- You also agreed to supplement your response to Defendants' Interrogatory No. 6 on Sight's allegation of willful infringement to include details about any alleged unsuccessful attempts to purchase Sight's IP that are currently missing from your response.
- We explained that your response to Interrogatory No. 8 is conclusory and not commensurate with the level of detail in Defendants' invalidity contentions. For example, we directed you to pages 19-20 of your supplemental response, which merely lists several prior art references that Sight contends fail to teach the "support" limitation. You stated that you would get back to us about supplementing your response to Interrogatory No. 8 sooner than mid-May. Please provide the date certain that Sight will supplement its response.

**Sight's Asserted Claims.** We also discussed narrowing the number of claims asserted in the case (currently 86 claims). You stated that you would entertain proposals for narrowing of claims and prior art, but you refused to drop any claims before Judge Williams rules on Defendants' objections to Judge Fallon's claim construction Report and Recommendation (R&R). We asked whether you would be willing to drop dependent claims that are not directly subject to the objections, but you refused that proposal too. We reiterate that Sight's assertion of 86 claims across 5 patents from the same family is excessive, and again request that Sight narrow its asserted claims.

Thank you,
Justin

**Justin Bova**
––––––––––––––––––––––––––––––––––––––––––––––
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave NW, Washington, D.C. 20004
**T** +1 202 389 3261 **M** +1 202 718 2499
**F** +1 202 389 5200
––––––––––––––––––––––––––––––––––––––––––––––
justin.bova@kirkland.com

**From:** Armon, Orion <oarmon@cooley.com>
**Sent:** Friday, April 28, 2023 1:06 PM
**To:** Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>
**Subject:** Sight Sciences v. Ivantis - Case schedule

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

Counsel – During Wednesday's conferral, the parties exchanged views regarding final contention deadlines. Sight Sciences agrees to adopt Defendants' interpretation of the Scheduling Order (Dkt. 93) regarding the deadlines for Plaintiff to provide final infringement contentions and Defendants to provide final invalidity contentions, i.e., that these two deadlines will be calculated relative to Judge Williams' order on Mag. Fallon's Report and Recommendation. No other case deadlines are affected by Sight's agreement regarding these deadlines, as no other deadlines in the Scheduling Order are keyed-off of the claim construction order. And pursuant to Paragraph 8 of the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, "[u]ntil a District Judge has completed his or her review of an objection to a Magistrate Judge's order or ruling on a nondispositive matter, such order or ruling shall govern further proceedings."

Sincerely,
Orion

Orion Armon
Cooley LLP
1144 15th Street, Suite 2300
Denver, CO 80202-2686
720 566 4119 office
303 949 0925 mobile
oarmon@cooley.com

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT 3

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States

Justin Bova
To Call Writer Directly:
+1 202 389 3261
justin.bova@kirkland.com

+1 202 389 5000

Facsimile:
+1 202 389 5200

www.kirkland.com

May 10, 2023

**FOR ATTORNEY EYES ONLY**

Orion Armon
Cooley LLP
1144 15th Street, Suite 2300
Denver, CO 80202-2686
T: +1 720 566 4119
oarmon@cooley.com

Re:     Sight's May 2, 2023 Letter – *Sight Sciences, Inc. v. Ivantis, Inc.*, C.A. No.
        21:1317-GBW-SRF

Dear Orion:

We write in response to your May 2, 2023 Letter.

## I.     **Sight's General Discovery Allegations**

### A.     ***Glaukos*** **Litigation Materials**

During the April 26 meet and confer, Defendants agreed to ask Glaukos whether it had objections to producing unredacted versions of certain deposition transcripts and expert reports identified in the April 21 email from L. Strosnick. The parties did not discuss any other *Glaukos* litigation materials. Sight Sciences then attempted to raise additional items directly with Glaukos without having first discussed such an outreach with Defendants. (5/2/2024 Email from O. Armon to L. Glasser.) As you know, Defendants have objected to the production of those items.

At Glaukos's request, Defendants spoke with Glaukos's counsel regarding the requested materials. Glaukos objected to reviewing all litigation materials from the *Glaukos* case, including the lengthy list of items in your May 2 email, to determine whether Glaukos has any objections based on confidential business information (CBI). In general, Glaukos expressed its view that the

**FOR ATTORNEY EYES ONLY**

parties should be using redacted copies (to the extent they exist) so as to not burden a third party. Glaukos indicated it may be willing to consent to the production of a small set of unredacted copies, and has requested a specific and narrow set of items to review. Glaukos stated it would be "quite onerous" to have its outside counsel review transcripts and reports (not to mention the other requested materials) for CBI.

To the best of Glaukos's counsel's recollection, and subject to Glaukos's request that Ivantis's former counsel confirm that recollection, Glaukos does not believe that the following materials contain Glaukos CBI:

- Jason Jones: Expert Report; Deposition Transcript (to the extent it exists)

- Daniel LaRoche: Expert Report; Deposition Transcript (to the extent it exists)

- Jeff Whitman: Expert Report; Deposition Transcript (to the extent it exists)

Glaukos was not prepared to provide concrete positions concerning CBI on the remaining items because Glaukos would have to incur the expense of investigating each item.

As discussed in further detail below, Defendants maintain that Sight's blanket requests for litigation materials from the *Glaukos* litigation seek irrelevant materials, are overly broad, and are not proportional to the needs of the case.

(i)     RFP 84 – Documents Produced by Ivantis

As we discussed on the May 5 meet-and-confer, Defendants have conducted a reasonable search and produced responsive, non-privileged, non-email documents that were produced in the Glaukos case (e.g., IVANTIS_SS_00040938).

(ii)     RFPs 85 and 86 – Deposition Testimony and Expert Reports, Respectively

As requested, Defendants will produce the expert reports and deposition transcripts for Todd Abraham, Gary Condon, and Andrew Schieber (to the extent they exist and are in Defendants' possession). The transcripts and reports *will include any appropriate redactions*.

Jason Jones, Daniel LaRoche, and Jeff Whitman did not provide opinions on damages, infringement, or invalidity and therefore their reports are not responsive to Sight's modified request for "[a]ll expert reports served by Ivantis's experts in the Glaukos Corporation v. Ivantis, Inc., 8:18-cv-00620-JVS-JDE litigation in the United States District Court for the Central District of California, relating to damages, infringement by the Hydrus product, or invalidity of U.S. Patent Nos. 6,626,858 or 9,827,143." Defendants have not located any deposition transcripts for Jones,

Orion Armon
May 10, 2023
Page 3

**FOR ATTORNEY EYES ONLY**

LaRoche, and Whitman. In addition, Sight's requests for ***unredacted*** copies of these same materials are overly broad and not proportional to the needs of the case.

        (iii)    RFP 87 – Glaukos/Ivantis and Glaukos/Transcend Settlement Agreements

The requested materials have been produced.

        (iv)    RFP 88 – Documents Prepared for, Sent to, or Presented to Alcon's Board of Directors regarding the *Glaukos* case

Defendants maintain their objections and will not produce the requested materials.

        (v)    RFP 93 – Deposition Testimony of Prior Art Inventors/Authors, including but not limited to Reay Brown and Mary Lynch

As stated in Defendants' objections to RFP 93, based on Defendants' investigation, the requested deposition transcripts are designated third party confidential. Glaukos is unwilling to incur the expense of investigating whether individual documents contain Glaukos CBI until the parties agree upon a reasonably limited set of materials.

        (vi)    RFP 149 – Negotiations and Discussions Regarding Settlement

Defendants are investigating the scope of this request and aim to provide an update by the end of the week.

        (vii)    RFPs 165-169, 173, and 182

As discussed during the May 5 meet and confer, Defendants maintain that Sight's blanket demand for all prior discovery in the *Glaukos* litigation is irrelevant, overly broad, not proportional to the needs of the case, and makes an end-run around the discovery limits in the Court's Scheduling Order. By serving these types of requests, Sight seeks potentially voluminous information without consideration of the relevance to the facts and issues of the present case. The cost involved in reviewing prior discovery, redacting confidential and private information about a third party, and the time needed to accomplish such a task outweighs any marginal benefit such discovery might provide.

For similar reasons, Glaukos has not consented to review each of the requested materials for its CBI, let alone consented to the production of the requested documents. But even if it had, Defendants' objections to RFPs 165-169, 173, and 182 would not be obviated by any alleged Glaukos consent.

Orion Armon
May 10, 2023
Page 4

**FOR ATTORNEY EYES ONLY**

       **B.**      **Clawback of Documents**

As discussed during the May 5 meet-and-confer, the underlying "QuickBooks" information you requested from your review of the clawed back documents is third-party Aurora Surgical's information, not Defendants' information. The emails contain documents, which were gathered at the direction of Quinn Emanuel, that were inadvertently produced and are protected work product.

       **C.**      **Sight's Second Set of RFPs**

Based on the investigation to date, Defendants have not located any non-privileged information responsive to the following RFPs (including as revised):

- RFP 152 (as revised in 3/9/2023 L. Strosnick Email): All valuation and/or appraisal reports (both internal and/or third party) created or amended from January 1, 2007 to December 31, 2009, regarding the valuation of any intellectual property assets held by Ivantis.

- RFP 153 (as revised in 3/9/2023 L. Strosnick Email): All policies and internal and/or third-party documents and reports created or amended from 2007 to December 31, 2009, regarding the determination of asset values for Ivantis patents.

- RFP 155 (as revised in 3/9/2023 L. Strosnick Email): All valuation and/or appraisal reports (both internal and/or third party) created or amended from January 1, 2007 to December 31, 2009, regarding the valuation of Patent Pub. No. US 2007/0298068 and any related patent applications, patent publications, or issued patents.

- RFP 146: All documents and other information relating to Your policies and/or marketing programs established to license patented technology from and/or to others from January 1, 2018 to present.

- RFP 147: All documents and other information relating to Your patent licensing strategy and plans from January 1, 2012 to present.

Defendants are continuing to investigate RFP 90 and aim to provide an updated response by the end of the week.

During the April 26 meet and confer, Sight suggested the possibility of a 2012 hypothetical negotiation date and asked Defendants to consider its impact on the temporal scope of RFPs 115, 124, 131, 135, and 147. Defendants are continuing to investigate Sight's contentions and aim to provide an updated response by the end of the week.

Orion Armon
May 10, 2023
Page 5

**FOR ATTORNEY EYES ONLY**

### D.    "Additional Issues"

As we stated on the meet and confer, Defendants are working to provide unredacted versions of documents containing Non-Responsive material. Defendants also confirmed that IVANTIS_SS_00420586 is the most recent ███████████████ that currently exists and that IVANTIS_SS_00337117 is the P&L document that contains Hydrus sales information for January 2022-February 2023. In addition, as discussed, Defendants will provide updated Paragraph 9.b disclosures.

Regarding your statement that you intend to continue pursuing discovery regarding an unaccused, unapproved, and not-commercially-launched product, we reiterate the same objections to this pursuit we made almost five months ago, (12/20/2022 K. Li Letter), and note your refusal to allow discovery into Sight's ██████████████████████. Specifically, Sight's Second Amended Complaint does not allege infringement based on "plans to market the Hydrus product ████████████████████████" (RFP 36) or "████████████████████████████ the Hydrus product" (RFP 47). Sight's demand for a "binding representation regarding ██████████████████████" is unjustified, particularly given Sight has not shown how any materials related to ██████ would be proportional to the needs of, or relevant to, this case. *See, e.g., Ethicon LLC v. Intuitive Surgical, Inc.*, 2018 WL 1392341, at *2-3 (D. Del. Feb. 12, 2018) (denying discovery regarding unaccused products because "discovery is limited to that which is 'relevant to any party's claim . . . .'"). Nevertheless, based on information currently available to Defendants, Defendants do not anticipate offering for sale on the market██████████████████████████████ ████████████. Please confirm that Sight will cease its burdensome discovery requests regarding an unaccused, unapproved, and not-commercially-launched product.

## II.    Sight's Deficient Discovery Responses and Productions

### A.    Sight's Deficient Document Production

Sight's document production was not substantially complete by March 9, and its unilateral decision to selectively withhold more than 60% of the Badawi documents based on alleged irrelevance is not justified. Defendants have been raising issues with Sight's deficient production, including its unilateral decision to produce only documents "sufficient to show the information" requested by Defendants' Helix-related RFPs, for months, well before the substantial completion deadline. *See, e.g.*, 11/21/2022 K. Li Letter ("Sight Sciences' first four productions were limited to various public documents, including journal articles and file histories for the asserted patents. Sight Sciences' latest production, made on October 19, 2022, contained only 1,013 documents, over 700 of which are child excel files containing only out-of-context data. The remaining documents consist largely of more public journal articles, OMNI or investor presentations, and background information on MIGS."); 1/6/2023 K. Li Letter ("As explained in our November 21, 2022, letter, Defendants served their first set of RFPs on April 4, 2022, and Sight's production as

Orion Armon
May 10, 2023
Page 6

**FOR ATTORNEY EYES ONLY**

of that letter was minimal. Since then, Sight has made an additional production, which again only contains 1,476 documents, over 900 of which are child excel files containing only out-of-context data…. Please confirm by January 10th that Sight will agree to produce documents in response to the full scope of these RFPs."); 1/31/2023 S. Dirks Letter (regarding Helix-related RFPs, "[y]ou further confirmed that Sight is not withholding any responsive, non-privileged documents."); 3/3/2023 K. Li Letter ("Sight's production appears to have excluded documents from the time period of the alleged priority date and from early-stage development of the Helix…. These wholesale exclusions deprive Defendants of documents responsive to the full scope of numerous RFPs…. Sight's production includes only 174 emails from both of the Badawis combined, despite their central roles in the company as co-inventors, co-founders, and executives. Please confirm that Sight will produce responsive, non-privileged documents responsive to the full scope of these requests.").

Defendants also expressed their concern, before the deadline, that many of the previously excluded documents should have been independently produced because the documents would have hit on search terms Sight represented it ran against its custodial documents. 3/3/2023 K. Li Letter. Sight still has not provided any reason as to why the documents were previously excluded, which raises concerns regarding whether Sight has produced all relevant, non-privileged documents. To be clear, as Defendants explained, these concerns do not apply solely to documents that would have hit on the term "Helix." Several documents in Sight's production on May 1 would have hit on many other search terms, including, for example, "Ivantis," "Glaukos," "Admedes," "memry," "MLPC," "Rabbit." 12/6/2022 L. Strosnick e-mail. Defendants still have no answers as to how this occurred and whether other non-Helix documents have been withheld despite hitting on search terms. Nor have Defendants' concerns over missing attachments been resolved—several Badawi emails from the May 1 production are also missing the attachments referenced in the body of the email. It is not Defendants' burden to investigate why Sight has failed to comply with its agreement to produce complete families. D.I. 49. As we have repeatedly explained, all of these issues raise serious concerns about Sight's overall document collection, review, and production.

Indeed, Sight's recent production at 4PM on May 1—just 4 days before the date Sight offered its first witness for deposition—confirms the extent to which Sight improperly withheld documents and prejudiced Defendants' ability to conduct fact discovery. For example, this production includes never-before-seen Helix prototypes, testing, and communications that should have been produced by March 9, 2023. Defendants requested these documents in April 2022, well in advance of depositions. Sight's productions of relevant documents days before the first offered deposition put Defendants in the position of having to ingest and sift through documents Defendants should have had months ago.

Regarding RFPs 95-96, Defendants already explained why such discovery is relevant: "Defendants are entitled to discovery on products that Sight contends embody or practice any claim of the Asserted Patents that are within Sight's possession, custody, or control. Independent

Orion Armon
May 10, 2023
Page 7

**FOR ATTORNEY EYES ONLY**

of whether a product is commercially marketed prior to the trial in this case, such discovery is relevant to, for example, assessing the validity of the Asserted Claims, secondary considerations, and whether Sight is entitled to damages. Sight's reliance on the Hydrus for FDA approval, as another example (see SGHT0033140), is relevant to damages as it demonstrates cost avoidance." 4/21/2023 J. Bova Letter. Defendants again request that Sight produce these documents, and Sight has not explained why Helix needs to be commercially marketed to be relevant to the above issues. Sight has also not explained the relevance of any of Defendants' development projects when those are not (and cannot be) Accused Products, and when no party has taken a position that those practice any Asserted Claims.

In addition, Defendants are evaluating the sufficiency of Sight's responses to the remaining RFPs referenced on pages 8-9 of your May 2 letter in light of Sight's recent productions on April 25, May 1, May 3, May 4, and May 5.

**B.      Sight's Deficient Interrogatory Responses**

Thank you for confirming that you will consider our points in preparing your supplemental responses to Sight's Interrogatory Responses. We expect Sight's supplement will be fulsome, and that it will not simply address the deficiencies raised in our email. As for Sight's response to Interrogatory No. 6, you state that details are not missing because Sight provided "narrative detail regarding the 2008/2009 interaction between Paul Badawi and Doug Roeder" in Sight's First Supplemental Response served on August 23, 2022. Generally, that narrative states that Paul Badawi met with Doug Roeder, Mr. Roeder "generally described Ivantis' business," Mr. Badawi "realized that Ivantis would be a competitor," that "his goal was to build a company around the intellectual property he and his brother had developed," and that Mr. Badawi "rejected Mr. Roeder's overtures." Sight's initial Response also states that Ivantis made an "unsuccessful purchasing attempt in 2008." Similar allegations appear in Sight's Complaint, filed in September 2021. To date, despite being asked on several occasions, Sight has only made general allegations of "overtures" and "attempts to purchase." Please provide the details of the alleged "overtures" and "attempts to purchase."

**C.      Case Narrowing**

You mentioned on the May 5 meet-and-confer that you would consider a proposal for a mutual narrowing of the Asserted Claims and asserted prior art. In light of your position that you will not consider any proposal until after the claim construction order, which we disagree with because 86 asserted claims across 5 related patents is excessive, we propose the following:

- Seven days after the claim construction order or by June 1 (whichever is earlier), Plaintiff will reduce its Asserted Claims to 25. Fourteen days thereafter, Defendants

Orion Armon
May 10, 2023
Page 8

**FOR ATTORNEY EYES ONLY**

will reduce the number of asserted anticipation grounds and obviousness combinations to amount to no more than a total of 10 per claim.

- 60 days before the pretrial order, Plaintiff will reduce its Asserted Claims to 10. Fourteen days thereafter, Defendants will reduce the number of asserted anticipation grounds and obviousness combinations to amount to no more than a total of 5 per claim.

Please let us know if you agree to this proposal to narrow the case.


Sincerely,


*/s/ Justin Bova*

Justin Bova

# EXHIBIT 4

| | |
|---|---|
| **From:** | Teng, Austin C. |
| **To:** | Armon, Orion; Rhyu, Michelle; Arora, Priya; Madrigal, Angela R.; *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com; Murdter, David; Vanderwall, Cameron C.; Wood, Alissa; Douglas, Jeannine; Gibbs, Tracy |
| **Cc:** | SKIvantis; #Alcon-SightSciences |
| **Subject:** | Sight Sciences v. Ivantis - Discovery deficiencies and outstanding issues |
| **Date:** | Friday, May 26, 2023 7:01:06 PM |

Counsel,

We write to address the continued deficiencies in Sight's interrogatory responses and to re-raise other issues that are still outstanding.

Sight's deficient interrogatory responses:

- **ROG 2**: Sight's interrogatory response relies on alleged "long-felt need," "commercial success," "industry praise," "deliberate copying," "attempts to license or purchase," and "failure of others." Sight's second supplemental response provides no details regarding any alleged nexus between the alleged "long-felt need," "industry praise," "deliberate copying," "attempts to license or purchase," or "failure of others." This interrogatory was served over a year ago. Please either confirm that Sight is not relying on these alleged objective indicia of nonobviousness or supplement this deficient response.
- **ROG 8**: Sight's second supplemental response remain deficient. As an initial matter, Sight supplemented its response only as to the "support" limitation. Sight failed to supplement as to several other limitations, including the "arcuate member," "substantial interference," "discontinuous," "only a portion," "periodic contact," "fluted edges," and the introducer limitations. Sight's conclusory assertions must be supplemented to provide at least as much detail as Sight provided for the "support" limitation. Further, Sight's second supplemental response for the "support" limitation fails to provide Sight's basis for its assertion that references disclosing "stents" are not "prop[s]." Please confirm that Sight's position is that, for example, a device that "provide[s] a stenting capability when the elements are placed inside the canal" (Gharib, Ex. 443-A1 at 6) or a device that has a cross-sectional diameter ranging from 30 to about 500 micron inside of Schlemm's canal (Hill, Ex. 443-A7 and 33) does not meet the "support" limitation of the Asserted Claims.
- **ROG 12**: Sight "further points Defendants to SGHT0166268 under Rule 33(d), as discussed during the meet-and-confer and will provide a supplement in due course." Please confirm that Sight is not withholding any other information responsive to Interrogatory No. 12.
- **ROG 13**: Sight's funding sources are relevant to understanding the audience for presentations Sight made to investors. The funding sources are also relevant to rebutting Sight's claims for injunctive relief, including Sight's allegations that it lacked funding to file the lawsuit until 2021. Please supplement your response to identify the specific outside funding sources for the Helix.
- **ROG 14**: Sight asserted that the lead Helix candidate for commercialization in 2012 when work was paused, "on information and belief, would embody at least the independent asserted claims of the '482 patent." Sight's responses are merely conclusory. Sight is required to provide the facts it relies on in its interrogatory responses to support its assertions, including what "information and belief." *See, e.g., LG.Philips LCD Co. v. Tatung*

*Co.*, No. CV 04-343 JJF, 2006 WL 8452362, at *4 (D. Del. Nov. 8, 2006), *report and recommendation adopted*, No. CV 04-343-JJF, 2007 WL 9771321 (D. Del. July 3, 2007).

Additional outstanding issues:

- When can we expect the promised supplemental responses to Interrogatory No. 18?
- When can we expect a response regarding the missing attachments issue we first raised over a month ago and again over several correspondence and meet and confers? 4/21/2023 J. Bova Letter at 2; 4/28/2023 J. Bova e-mail; 5/10/2023 J. Bova Letter at 6.
- When can we expect your counter-proposal for narrowing the case, which you said you expected to provide this week? *See* 5/16 L. Strosnick email.

Regards,
Austin

**Austin Teng**
--------------------------------------------
**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101
--------------------------------------------

austin.teng@kirkland.com

# EXHIBIT 5

| | |
|---|---|
| **From:** | Dirks, Steven |
| **To:** | Strosnick, Lauren; Armon, Orion; Rhyu, Michelle; Arora, Priya; Madrigal, Angela R.; *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com; Murdter, David; Vanderwall, Cameron C.; Wood, Alissa; Douglas, Jeannine; Gibbs, Tracy; z/Sight Sciences Ivantis; Radovanovich, Alyssa M. |
| **Cc:** | SKIvantis; #Alcon-SightSciences |
| **Subject:** | RE: Sight Sciences v. Ivantis - Deposition scheduling |
| **Date:** | Monday, June 12, 2023 10:01:24 PM |

Counsel,

We are following up on several items. Please let us know by tomorrow, Tuesday, June 13 at 12:00pm ET. If your response is no to any of the below, please let us know your availability to meet and confer on Wednesday, June 14 from 1-3pm ET.

- Will you accept service of the subpoena duces tecum on behalf of Reay Brown?  *See* M. Portwood June 9 email.
- Will you produce either the unredacted version of the SBIR document plus its attachments or the final version that was submitted to the NIH? *See* A. Teng June 6 email.
- Will you identify the specific document(s) on which you would like a witness to be educated relating to the FDA submission topics so that Defendants can meaningfully prepare a witness to testify on the broad topics?  *See* S. Dirks June 10 email.
- Will you supplement your deficient interrogatory responses?  *See* A. Teng June 9 email.
- Will you provide an update on the missing attachments issue in your production that we have raised over the course of months?

Best,
Steven

**Steven Dirks**

---------------------------------------------

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389 3024  **M** +1 202 531 9787
**F** +1 202 389 5200

---------------------------------------------

steven.dirks@kirkland.com

---

**From:** Dirks, Steven <steven.dirks@kirkland.com>
**Sent:** Saturday, June 10, 2023 6:58 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>

# EXHIBIT 6

| | |
|---|---|
| **From:** | Teng, Austin C. |
| **To:** | Strosnick, Lauren; Frank, Noah S.; Rhyu, Michelle; Merideth, Vicki; cvilloslada@ycst.com; Armon, Orion; Gibbs, Tracy; Wood, Alissa; z/Sight Sciences Ivantis; Murdter, David; Douglas, Jeannine; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com; *msharp@ycst.com; Vanderwall, Cameron C. |
| **Cc:** | SKIvantis@shawkeller.com; #Alcon-SightSciences; Mecham, Ross D; Wood, Alissa |
| **Subject:** | RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Document Production Deficiencies |
| **Date:** | Friday, June 23, 2023 10:11:26 PM |
| **Attachments:** | 2023.06.23 Amended Motion for Teleconference.docx |

Counsel,

Thank you for your time on today's meet and confer. Based on our call, we understand that not all of Sight's emails within a produced email thread were consistently marked as responsive, and as a result, not all attachments referenced throughout the thread have necessarily been produced.

For any email Sight has produced, Sight is obligated to produce the compete thread, including any attachments referenced throughout. The missing information does not appear on your privilege log, and therefore there is no valid reason for withholding the missing emails and attachments. Rule 34(a)(1)(A) requires the production of designated ESI, and nothing in the Discovery Order excuses the parties from having to produce all of the attachments associated with responsive email threads. Your argument regarding the definition of "Family" is beside the point. While the Discovery Order permits deduplication at the "Family level," the Producing Party is still required to produce at least "a single copy of responsive Duplicate ESI." D.I. 49 § 4(d). And the Discovery Order clearly favors production of complete sets of information. *See, e.g.*, D.I. 49 § 4(e) ("Unless documents contain solely Privileged Information, parties will produce complete Document Families where any portion of the Family contains relevant information.").

While you have stated that you do not believe the attachment issue is widespread, we did a quick check following our call and identified as many as 400 emails that reference attachments earlier in the thread. It is unreasonable to expect Defendants to scour your production for missing information when Sight maintains the information in a structured format, and it is easily within your vendor's capabilities to identify all unproduced emails associated with the emails you did produce. There is no undue burden associated with producing the missing information. Your vendor can easily identify the associated emails and attachments and produce them. There is no need to re-review for relevance given your production of an email thread concedes the relevance and responsiveness of the associated emails.

We have notified you repeatedly about the missing attachments since April of this year and have attempted to resolve this without need for court intervention. *See* 4/21/2023 J. Bova Letter at 2; 4/28/2023 J. Bova e-mail; 5/10/2023 J. Bova Letter at 6; 5/26/2023 A. Teng e-mail; 6/12/2023 S. Dirks e-mail. Defendants have also identified examples of the issue as a courtesy. *See, e.g.*, SGHT0030283, SGHT0030410, SGHT0030936, SGHT0031063, SGHT0130538, SGHT0160500. Your offer to continue evaluate any claims of missing attachments on a case-by-case basis is not workable given the late stage of discovery. Therefore, as we discussed on the call, the parties are at impasse with respect to Sight's withholding of email attachments. Attached is an amended joint motion for teleconference. Please let us know if you have any edits so we can get this on file.

# EXHIBIT 7

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

|  | 601 Lexington Avenue | |
|---|---|---|
| Nathaniel DeLucia | New York, NY 10022 | |
| To Call Writer Directly: | United States | Facsimile: |
| +1 212 909 3173 | +1 212 446 4800 | +1 212 446 4900 |
| nathaniel.delucia@kirkland.com | | |
|  | www.kirkland.com | |

June 27, 2023

**By E-mail**

Michelle Rhyu
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

> Re:  *Sight Sciences, Inc. v. Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc.*, C.A. No. 21-1317-GBW-SRF—Sight's Deficient Document Production

Dear Michelle:

I write regarding deficiencies in Sight Sciences's ("Sight's") document production that became apparent during Paul Badawi's deposition.  Sight must produce the documents identified below or be prepared to discuss on tomorrow's 3pm ET meet and confer.

***First***, Sight has produced only approximately 1,200 documents dated on or before 2017, and ***no*** documents dated before 2008.  But Mr. Badawi testified that:

- Paul and David Badawi communicated via email regarding their alleged conception in 2006-2008.  June 23, 2023 P. Badawi Rough Dep. Tr. 41:5-44:12.

- In the 2010-2011 timeframe, Sight employees communicated via email and saved documents on their computer.  *Id.* at 175:21-176:3.

- Sight saved documents to Dropbox and Basecamp before hiring a head of IT.  June 26, 2023 P. Badawi Rough Dep. Tr. 18:21-19:20.

- All documents and emails related to Sight exist and have not been deleted.  June 23, 2023 P. Badawi Rough Dep. Tr. 176:8-19.

## KIRKLAND & ELLIS LLP

Michelle Rhyu
June 27, 2023
Page 2

Moreover, the few documents Sight has produced confirm that additional, responsive documents have not been produced.  For example at least the following documents reference attachments, laboratory notebooks, and/or Dropbox or Basecamp that do not appear to have been produced or serached: SGHT0167815;  SGHT0167843;  SGHT0167976;  SGHT0167889; SGHT0167988;     SGHT0167813;     SGHT0167714;     SGHT0167792;     SGHT0160480; SGHT0161678;     SGHT0160490;     SGHT0160834;     SGHT0030775;     SGHT0030867; SGHT0030870;     SGHT0130538;     SGHT0167677;     SGHT0167679;     SGHT0167680; SGHT0167681;     SGHT0167939;     SGHT0167940;     SGHT0167942;     SGHT0167945; SGHT0167987;     SGHT0167688;     SGHT0167689;     SGHT0167690;     SGHT0167691; SGHT0167692;     SGHT0167695;     SGHT0167836;     SGHT0167712;     SGHT0167841; SGHT0167968;     SGHT0167835;     SGHT0167839;     SGHT0167948;     SGHT0167949; SGHT0167988;     SGHT0167989;     SGHT0031048;     SGHT0161706;     SGHT0161708; SGHT0167703;     SGHT0167707;     SGHT0167920;     SGHT0167922;     SGHT0167714; SGHT0167843;     SGHT0167967;     SGHT0167990;     SGHT0167969;     SGHT0167991; SGHT0167992;     SGHT0167972;     SGHT0167973;     SGHT0167993;     SGHT0031056; SGHT0167746;     SGHT0031059;     SGHT0161711;     SGHT0167792;     SGHT0167877; SGHT0167975;     SGHT0167976;     SGHT0167978;     SGHT0167994;     SGHT0167979; SGHT0167995;     SGHT0167813;     SGHT0167814;     SGHT0167815;     SGHT0167891; SGHT0167892;     SGHT0167982;     SGHT0167996;     SGHT0167983;     SGHT0167997; SGHT0167984;     SGHT0167998;     SGHT0160771;     SGHT0161745;     SGHT0160773; SGHT0161748;     SGHT0161754;     SGHT0160675;     SGHT0130967;     SGHT0131936; SGHT0161859; SGHT0031809; SGHT0135954; SGHT0149467; SGHT0149465.

*Second*, Mr. Badawi testified regarding the following documents which have not been produced:

- Documents Mr. Badawi brought with him to the deposition, including the documents marked as deposition exhibits 13-16.

- Emails Mr. Badawi exchanged with Kathy Chester to prepare him to testify as a corporate representative.  June 23, 2023 P. Badawi Rough Dep. Tr. 8:2-22, 11:7-12.

- Sight's Second grant submission to, and rejection from, the NIH related to Helix.  *Id.* at 155:13-23.

*Third*, Sight has repeatedly refused to produce product-specific cost allocation, claiming "that Sight Sciences does not account for its financials at the product level." *See* June 14, 2023 Armon Email to Counsel.  This appears to be false.  One of the documents Mr. Badawi brought with him to the deposition was an excel purportedly breaking down the external R&D costs from 2022-2023 related to Helix.  June 26, 2023 P. Badawi Rough Dep. Tr. at 26:14-27:7 (testifying regarding Exs. 15 and 16).  And Mr. Badawi testified that Sight could generate such product-

# KIRKLAND & ELLIS LLP

Michelle Rhyu
June 27, 2023
Page 3

specific cost allocations for Sight's other products, including OMNI. *Id.* at 32:17-24.  Sight must therefore produce product-specific cost allocations for OMNI.

Sincerely,

*/s/ Nathaniel DeLucia*

Nathaniel DeLucia

cc:      All counsel of record

# EXHIBIT 8

| From: | "David Badawi" <davidbadawi@gmail.com> |
| Sent: | Tue, 13 Apr 2010 19:26:18 +0000 (UTC) |
| To: | "Budillon, F." <fbudillon@admedes.com> |
| Cc: | "Paul Badawi" <pbadawi@yahoo.com> |
| Subject: | Re: (#490) Order confirmation | AB022966 || ^^ |

Florent,

Thank you for the very informative response. To answer your question of length of the braid, you are correct a 9-10mm EXPANDED braid is correct. How much longer it would be when compressed obviously depends on the compression. I assume you will be able to tell us how much it can be compressed--so that we can start shopping around for delivery cannulae?? Will you be able to tell us how long the stent will be when compressed to such an extent?? This will help me in planning.

As always, thank you.

David

On Tue, Apr 13, 2010 at 10:27 AM, Budillon, F. <fbudillon@admedes.com> wrote:

Hi David,

OK, with this in mind, let's focus on whether a braided or networked wire stent can be fabricated to the general specifications enumerated below:

1. We need to deliver a stent into a target canal [SC] with a diameter of 250 to 400 microns [varies from human to human] and based on personal, firsthand experimental data.
2. Because we are talking about a braided or networked design comprised of thinner wires, the stent will likely have to be placed in a protective cannula or catheter for delivery--unless you think this can be delivered over a guidewire
3. Based on specification #1 above, the maximum OD of the cannula for delivery of the stent should be 250 microns--and this means that the stent would have to be smaller than this WHEN compressed in the cannula. For example, if we assume a cannular wall thickness of 50 microns, the stent should be compressible to 150 microns [50*2=100um of cannula wall. Next, 250um minus 100um=150um cannula lumen=maximum OD of compressed stent].

Yes, the last stents we sent you, we could compress them to a diameter of 100 μm

4. We would like for the decompressed or expanded stent to assume an OD of around 250-350um. Note that a stent that is a little larger in OD than SC may actually be good, because it will stretch SC.

**5. Unlike a blood vessel where flow is purely longitudinal, fluid in this target canal in the human eye [Schlemm's canal] flows longitudinally AND laterally. Lateral flow from one porous wall across the canal into another porous wall on the other side is the most important and longitudinal flow is much less important [totally opposite to a blood vessel]. Understanding this is critical to our stent design where we want to MINIMIZE touching the walls of the target canal. I hope this makes sense.**
6. Final OD of expanded stent:250-350um.

250 or 350 μm? For 350 μm we could take more wires of 25 μm or maybe increase a little bit the wire diameter to 35 μm

Questions for you:
 1. Do my specs above make sense to you?

Yes it makes sense.

2. WHat do you think would be the best way to deliver such a stent?  Are you aware of a material, including memory alloys or polymers, that can be used for tubes [cannula] to deliver such a stent. For example, a semi rigid or flexible tube with an OD of 250um and a lumen of 150um? Is there someone at Admedes that could answer this question? The length of the cannula would be about 15 mm, and should be flexible, with the stent inside, and be able to be curved to a radius of 6mm. Even if it is semi-rigid with a radius of curvature of 6mm, that may be OK.

In my opinion, you can deliver the stent by pushing it from a catheter made of polymer.
you can ask some catheters there:
http://www.apextrusion.com/
http://www.precisionextrusion.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

SGHT0030283

http://www.medical-tubing.com
http://www.zeusinc.com/
http://www.microspecorporation.com/
http://www.vestainc.com/services/medical-device-manufacturing/medical-extrusion.aspx
http://www.htpmeds.com/
http://www.raumedic.de/

3. Is my assumption that this has to be delivered into SC via a protective sheath incorrect? Can this be delivered over a guidewire? If so, how could it be released when it has reached its destination?

For a guidewire, you would need some development in order to fix the stent on it and there are a lot of patents on them. The best way for a first trial should be the catheter. The Nitinol braid could be strong enough to expand itself after release.

4. The design that we would be looking for is something along the likes of the exchange we had above or the likes of attachments 2 and 3. Essentially anywhere from 3-6 wires [i would prefer 4, but I will leave that up to you for technical feasibility], that radiate outward to maintain a patency of 250-350um, but periodically approach the center of the lumen or are twisted together. We prefer this because it allows for longitudinal flow but also maximizes lateral flow as described in spec #5 above. So the idea is that as the wires radiate outward, they only tangentially touch the walls of the canal and then converge in to the center again-like a twisted chain. Does this make sense and can you do it?

6 wires is better for the stability of the stent.
OD between  250 and 350 µm. With 25µm wires it makes a mandrel of 150 µm and 250 µm. Let's try 250 µm
For the smaller diameter I would propose 50 µm to 100 µm. Here I don't know if 50 µm is possible
The distance between the 50 µm diameter and 250 µm diameter should be minimised, we will try our best. I think 0.25 mm should be possible.
Length of the braid: 9mm?

Regards,
Florent

--
David Y. Badawi, M.D.

Website: nwep.drviewer.com
Phone(C): 847 877 4288
Fax: 847 392 9252

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

SGHT0030284

# EXHIBIT 9

| From: | "David Badawi" <davidbadawi@gmail.com> |
| --- | --- |
| Sent: | Tue, 4 May 2010 16:14:30 +0000 (UTC) |
| To: | "Budillon, F." <fbudillon@admedes.com>; "Paul Badawi" <pbadawi@yahoo.com> |
| Subject: | Re: AW: (#490) Order confirmation | AB022966 || ^^ |

That's too bad that it didn't work on the first go around; nonetheless, thanks for the update-I hope this other approach fares well.
David

On Tue, May 4, 2010 at 9:26 AM, Budillon, F. <fbudillon@admedes.com> wrote:

> Hi David,
> we tried to grind the mandrel, it works but the braiding on it doesn't work at all. We are currently trying another method. The tool should be ready after tomorrow and I will send you an update afterwards.
> Regards,
> Florent

**Von:** David Badawi [mailto:davidbadawi@gmail.com]
**Gesendet:** Freitag, 30. April 2010 03:59
**An:** Budillon, F.
**Cc:** Paul Badawi
**Betreff:** Re: AW: (#490) Order confirmation | AB022966 || ^^

Excellent-thank you!

Sent from my iPhone

On Apr 29, 2010, at 10:37 AM, "Budillon, F." <fbudillon@admedes.com> wrote:

> Hi David,
> sorry I didn't come back to you. I was out of the office the last days.
> We have made some tests for the braid.
> The braid of 6x25μm with an OD of 300 μm should be OK.
> For the minimal OD, I don't think we can reach that. We are trying to get 150 μm, which makes an ID of 50 μm for the mandrel.
>
> I will tell you more as soon as I have result from the grinding of the mandrel. Then the braiding on the mandrel shoudn't take us much time.
>
> Regards,
> Florent

**Von:** David Badawi [mailto:davidbadawi@gmail.com]
**Gesendet:** Freitag, 16. April 2010 17:57
**An:** Budillon, F.; Paul Badawi
**Betreff:** Re: (#490) Order confirmation | AB022966 || ^^

By the way Florent, I hope I have conveyd this to you clearly. We would like the stent to be maximal OD for 1 mm or 2mm in length if necessary and then to narrow to the minimal OD for as short a distance as necessary-say 0.2mm or 0.3mm [as per our attached images from the beginning of this thread]. I realize you have practical limitations, but for example let's assume you can create a stent with a maximal OD of 350um and a minimal OD of 125um. If the 350um portion can be 1mm in length and the 125um portion can be 0.3mm in length, then that would be great to maintain patency. Does that make sense?
Also, after fabricating this stent, if we could obtain photos similar to the original prototype that you had sent us with measurements of max OD and min OD, that would be great.

Thanks,
David

On Fri, Apr 16, 2010 at 9:06 AM, Budillon, F. <fbudillon@admedes.com> wrote:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Hi David,
this is something I cannot answer right now because the structure of the braid changed and it will influence its length when compressed.
Approximately, I would say something like 50%.
Regards,
Florent

**Von:** David Badawi [mailto:davidbadawi@gmail.com]
**Gesendet:** Dienstag, 13. April 2010 21:26
**An:** Budillon, F.
**Cc:** Paul Badawi
**Betreff:** Re: (#490) Order confirmation | AB022966 || ^^

Florent,
Thank you for the very informative response. To answer your question of length of the braid, you are correct a 9-10mm EXPANDED braid is correct. How much longer it would be when compressed obviously depends on the compression. I assume you will be able to tell us how much it can be compressed--so that we can start shopping around for delivery cannulae?? Will you be able to tell us how long the stent will be when compressed to such an extent?? This will help me in planning.

As always, thank you.

David

On Tue, Apr 13, 2010 at 10:27 AM, Budillon, F. <fbudillon@admedes.com> wrote:

Hi David,

OK, with this in mind, let's focus on whether a braided or networked wire stent can be fabricated to the general specifications enumerated below:

1. We need to deliver a stent into a target canal [SC] with a diameter of 250 to 400 microns [varies from human to human] and based on personal, firsthand experimental data.
2. Because we are talking about a braided or networked design comprised of thinner wires, the stent will likely have to be placed in a protective cannula or catheter for delivery--unless you think this can be delivered over a guidewire
3. Based on specification #1 above, the maximum OD of the cannula for delivery of the stent should be 250 microns--and this means that the stent would have to be smaller than this WHEN compressed in the cannula. For example, if we assume a cannular wall thickness of 50 microns, the stent should be compressible to 150 microns [50*2=100um of cannula wall. Next, 250um minus 100um=150um cannula lumen=maximum OD of compressed stent].

Yes, the last stents we sent you, we could compress them to a diameter of 100 μm

4. We would like for the decompressed or expanded stent to assume an OD of around 250-350um. Note that a stent that is a little larger in OD than SC may actually be good, because it will stretch SC.

**5. Unlike a blood vessel where flow is purely longitudinal, fluid in this target canal in the human eye [Schlemm's canal] flows longitudinally AND laterally. Lateral flow from one porous wall across the canal into another porous wall on the other side is the most important and longitudinal flow is much less important [totally opposite to a blood vessel]. Understanding this is critical to our stent design where we want to MINIMIZE touching the walls of the target canal. I hope this makes sense.**
6. Final OD of expanded stent:250-350um.

250 or 350 μm? For 350 μm we could take more wires of 25 μm or maybe increase a little bit the wire diameter to 35 μm

Questions for you:
 1. Do my specs above make sense to you?

Yes it makes sense.

2. WHat do you think would be the best way to deliver such a stent?  Are you aware of a material, including memory alloys or polymers, that can be used for tubes [cannula] to deliver such a stent. For example, a semi rigid or flexible tube with an OD of 250um and a lumen of 150um? Is there someone at Admedes that could answer this question? The length of the cannula should be about 15 mm, and should be flexible, with the stent inside, and be able to be curved to a radius of 6mm. Even if it is semi-rigid with a radius of curvature of 6mm, that may be OK.

In my opinion, you can deliver the stent by pushing it from a catheter made of polymer.
you can ask some catheters there:
http://www.apextrusion.com/
http://www.precisionextrusion.com
http://www.medical-tubing.com
http://www.zeusinc.com/
http://www.microspecorporation.com/

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

http://www.vestainc.com/services/medical-device-manufacturing/medical-extrusion.aspx
http://www.htpmeds.com/
http://www.raumedic.de/

3. Is my assumption that this has to be delivered into SC via a protective sheath incorrect? Can this be delivered over a guidewire? If so, how could it be
   released when it has reached its destination?

For a guidewire, you would need some development in order to fix the stent on it and there are a lot of patents on them. The best way for a first trial should be
the catheter. The Nitinol braid could be strong enough to expand itself after release.

4.The design that we would be looking for is something along the likes of the exchange we had above or the likes of attachments 2 and 3. Essentially anywhere
   from 3-6 wires [i would prefer 4, but I will leave that up to you for technical feasibility], that radiate outward to maintain a patency of 250-350um,
   but periodically approach the center of the lumen or are twisted together. We prefer this because it allows for longitudinal flow but also
   maximizes lateral flow as described in spec #5 above. So the idea is that as the wires radiate outward, they only tangentially touch the walls of the
   canal and then converge in to the center again-like a twisted chain. Does this make sense and can you do it?

6 wires is better for the stability of the stent.
OD between 250 and 350 μm. With 25μm wires it makes a mandrel of 150 μm and 250 μm. Let's try 250 μm
For the smaller diameter I would propose 50 μm to 100 μm. Here I don't know if 50 μm is possible
The distance between the 50 μm diameter and 250 μm diameter should be minimised, we will try our best. I think 0.25 mm should be possible.
Length of the braid: 9mm?

Regards,
Florent


--
David Y. Badawi, M.D.

Website: nwep.drviewer.com
Phone(C): 847 877 4288
Fax: 847 392 9252


--
David Y. Badawi, M.D.

Website: nwep.drviewer.com
Phone(C): 847 877 4288
Fax: 847 392 9252


--
David Y. Badawi, M.D.


Partner at Northwest Eye Physicians

Website: nwep.drviewer.com
Phone(C): 847 877 4288
Fax: 847 392 9252

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    SGHT0030412

# EXHIBIT 10

**From:** "Shervin Korangy" <skorangy@gmail.com>

**Sent:** Sat, 27 Aug 2011 06:17:17 +0000 (UTC)

**To:** "David Badawi" <davidbadawi@gmail.com>; "Selnick, Jesse" <Selnick@blackstone.com>; paul@sightsciences.com

**Subject:** Re: [FWD: Your questions]

---

David - thanks for the reply. Its been motivating to Jesse and I to make sure the Badawi brothers create ophthalmic history here!!

Also, I hope you are a frequent user of our Alcon products. They are the best in the industry and we continue to strive to meet patient and physician needs through our innovation!!

Single malt and a couple cigars in 3 yrs after we get our European clinical data!!


On 8/27/11, David Badawi <davidbadawi@gmail.com> wrote:
> Hi Jesse,
> You know how it is--just wheelin, dealin, and healin. Seriously though, many
> thanks to you and Shervin for the huge and successful effort!
>
> I hope you are doing well--maybe we will all be in the same place one of
> these days to celebrate. I owe you and Shervin and Paul a good glass of
> single malt scotch.
>
> David
>
> On Fri, Aug 26, 2011 at 6:10 PM, Selnick, Jesse
> <Selnick@blackstone.com>wrote:
>
>> Sorry I just got excited to see an email with your brother on it. What's
>> up david?
>>
>>
>> ------------------------------
>> *From*: paul@sightsciences.com <paul@sightsciences.com>
>> *To*: Shervin Korangy <skorangy@gmail.com>; Selnick, Jesse
>> *Sent*: Fri Aug 26 19:09:03 2011
>> *Subject*: [FWD: Your questions]
>>
>> sherv, please feel free to select whatever you want from the comments
>> below
>> and attachments. honestly, if someone doesnt think good canaloplasty
>> clinical data is good, then it's hard to have a productive discussion.
>> it's
>> like when Ben Sharp was about to destroy someone in a biochemistry class
>> at
>> U of C, he premised his slaughter by saying "I need to assume that you are
>> logical...."
>>
>> -------- Original Message --------
>> Subject: Your questions
>> From: David Badawi <davidbadawi@gmail.com>
>> Date: Fri, August 26, 2011 2:14 pm
>> To: paul@sightsciences.com
>>
>> Hi Paul,
>> I received the feedback and questions from the glaucoma
>> specialist/investor

CONFIDENTIAL

>> that you mentioned. Great questions! The specialist pointed out that
>> canaloplasty does not routinely lower intraocular pressure to satisfactory
>> levels when compared to trabeculectomy. I have attached several
>> references-peer reviewed articles-to the contrary. Two points worth
>> considering:
>> 1. Canaloplasty does consistently lower pressure to satisfactory levels
>> (almost as close to trab but without the massive complications), but is
>> technically difficult to perform and gradual loss of suture tension may
>> limit its long-term efficacy-two shortcomings that we do NOT suffer from
>> with our approach.
>>
>> 2. Without oversimplifying this, anyone who does trabeculectomies knows it
>> is not a benign surgery-FULL of complications, and there is a real need
>> for
>> a safe alternative. That's why so few of the surgeries are done and so
>> many
>> patients are on more costly lifelong medications.
>>
>> In terms of most of the resistance to outflow being downstream from
>> Schlemm's canal, I suspect that there is a typo or misunderstanding there.
>> Research tells us that most resistance to outflow is at the
>> juxtacanlaicular
>> trabecular meshwork which would be PROXIMAL to Schlemm's rather than
>> distal.
>> Our Helix certainly addresses this issue by maximally restoring meshwork
>> surface area and its inherent porosity and lifting it up and away from the
>> outer walls of the canal.
>>
>> 'Trabeculectomy' surgery, which I presume the glaucoma specialist believes
>> in, means to 'cut the trabeculum.'  This is proximal to Schlemm's canal,
>> not
>> distal. Trabeculectomies work by cutting the proximal trabecular meshwork
>> and bypassing an often collapsed Schlemm's to allow fluid to drain in the
>> DISTAL low pressure conjunctival venous system (which likely follows
>> central
>> venous pressure--around 6-8mm Hg--a real good and low pressure).
>>
>> Like trabeculectomy, we target the source of the problem--the trabecular
>> meshwork and a collapsed Schlemm, but we lack the adverse reactions of
>> trabeculectomy making us a more attractive surgical option and a real
>> competitor to medications as well.
>>
>> Anyway, hope whtis helps. Happy to elaborate as needed.
>>
>> David
>>
>>
>>
>>
>>
>> ------------------------------
>> Please open the following attachment for important Blackstone disclaimer
>> information regarding this e-mail communication.
>>
>
>
>
> --
> David Badawi, M.D.
> Ophthalmologist,
> Northwest Eye Physicians
> 1588 North Arlington Heights Rd.
> Arlington Heights, Illinois 60004
>
> Phone: 847-392-9220

CONFIDENTIAL

SGHT0030937

# EXHIBIT 11

| | |
|---|---|
| **From:** | "Daniel O'Keeffe" <do.sightsciences@gmail.com> |
| **Sent:** | Mon, 21 Nov 2011 05:13:24 +0000 (UTC) |
| **To:** | paul@sightsciences.com; paul@sightsciences.com |
| **Cc:** | "David Badawi" <david@sightsciences.com>; "Stephen Pons" <sp.sightsciences@gmail.com> |
| **Subject:** | Re: [FWD: RE: memry quote] |

---

Paul,

I agree, the proximal end of the implant should be designed for the best clinical results.   Steve and I just spoke about the implant.  He noted that drawing note 6 states twists are to begin and end at the fenestrations.  The proximal and distal flat sections allow the manufacturer to hold the implant during heat setting.  We can modify the drawing to extend the twists to the very distal tip, but this change might present processing challenges.  I think the current design will be suitable for these first Memry parts, and we will design the tethering system around these constraints.  Let us know your thoughts.

Thanks,
Dan

On Nov 20, 2011, at 7:43 PM, <paul@sightsciences.com> <paul@sightsciences.com> wrote:

> Guys, we need to decide how far we want the twisting at the proximal end of the Helix. I think the distal end is fine as it is since David has had good experiences with delivery in cadaver eyes and we have already done some optimization there.

> David, could you confirm that, *setting delivery aside for the moment*, as much twisting as possible at the proximal end is beneficial and preferred as far as efficacy is concerned.

> Stephen/Dan, if David confirms that maximal twisting at the proximal end is ideal, then I suppose delivery system requirements will determine how much of the proximal tip of the implant must not be twisted.

> If everyone can pls comment by email as soon as possible that would be most efficient -- we'd like to get this order out tomorrow. We're all set with everything other than whether we need to modify the level of twisting at the proximal end of the implant from where it is now. Thanks

> Paul

>        -------- Original Message --------
> Subject: RE: memry quote
> From: "Sanchez, Mike" <Mike_Sanchez@Memry.com>
> Date: Fri, November 18, 2011 9:59 am
> To: "paul@sightsciences.com" <paul@sightsciences.com>
> Cc: "LaFond, Rich" <Rich_LaFond@Memry.com>, "Mingey, Stefania"
> <Stefania_Mingey@Memry.com>

>> Thanks Paul! We will review and get back to you.

>> If you need to chat over the weekend, feel free to give me a call.  Assuming the PO will come along with the final (for now) design.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Enjoy your weekend.

Mike

**From:** paul@sightsciences.com [mailto:paul@sightsciences.com]
**Sent:** Friday, November 18, 2011 12:17 PM
**To:** Sanchez, Mike
**Cc:** LaFond, Rich; Mingey, Stefania
**Subject:** RE: memry quote

Mike/Rich,

Please find 2 Helix documents attached -- a pdf of the design we're going with and the DXF file. I wanted to get these out to you asap to keep the process moving along smoothly. Please note that we will need to have an internal company discussion over the weekend about the twisting (or lack thereof) at the proximal and/or distal ends of the implant. We will have the final details of the design/order ironed out by Monday but this is definitely close to final if Memry wants to initiate its internal processes.

Thanks,

Paul

-------- Original Message --------
Subject: RE: memry quote
From: "Sanchez, Mike" <Mike_Sanchez@Memry.com>
Date: Thu, November 17, 2011 6:10 am
To: "paul@sightsciences.com" <paul@sightsciences.com>
Cc: "LaFond, Rich" <Rich_LaFond@Memry.com>, "Mingey, Stefania" <Stefania_Mingey@Memry.com>
Paul, Please see responses below in red. Hope this is helpful.

I will be in the air till ~3:30PM EST today.

**From:** paul@sightsciences.com [mailto:paul@sightsciences.com]
**Sent:** Wednesday, November 16, 2011 12:53 PM
**To:** Sanchez, Mike
**Cc:** LaFond, Rich; Mingey, Stefania
**Subject:** RE: memry quote

Mike,

Thanks for preparing the quote. Pls find a couple of initial questions below. I will follow-up tomorrow with some final engineering/quality questions before we go ahead and place the order.

1. The lead time is longer than we'd hoped for but I realize the first round includes tooling which will of course take some extra time. Any chance it could be done in 2-3 weeks? Most importantly, how long do you envision the cycle time from request for quote to part delivery for subsequent similar designs and/or repeat orders at design freeze? 3 weeks for the 1st run will be challenging yet possible since we are offering a best effort. Obviously, we will do our best yet will not sacrifice a quality part nor poor representation. We will need a DXF of the flat condition for laser cutting to hone in on the tooling. Cycle time for future orders will certainly improve when we know your schedule, future volumes and can run the raw sheet prior.

SGHT0031064

2. We'd like to confirm that Memry anticipates developing a process and tooling that will accommodate subsequent variations on this design since they all have the same basic underlying Helix scaffold. Could you pls confirm that tooling/engineering charges are non-recurring for minor variations of the Helix (e.g., for the 3 Helix diagrams already shared)?  As noted yesterday on my voice mail, this will depend upon the complexity of design changes. This will need to be reviewed upon each change/variation.

3. We're OK with best effort on these first parts since we'd more importantly like to learn from this iteration what your capabilities are with regard to our company and implants. Will Memry inspect to the dimensioned parameters on the print and provide data here? Yes, yet keep in mind that this adds a day or so to the lead time

4. Attached is the design we'd like to move forward with (Wave Wall Implant) as soon as we're ready to order. Seems as though you moved from .0107 on to .0101. Again: We wikk need the DXF.

Also, Stefania please find a draft of our credit application attached. Let me know if this is complete and I will go ahead and sign and pdf to you to keep things moving along.

I'll be back in touch with you tomorrow with any remaining questions. Thanks.

Best,

Paul


-------- Original Message --------
Subject: memry quote
From: "Sanchez, Mike" <Mike_Sanchez@Memry.com>
Date: Tue, November 15, 2011 4:58 am
To: "paul@sightsciences.com" <paul@sightsciences.com>
Cc: "LaFond, Rich" <Rich_LaFond@Memry.com>, "Mingey, Stefania"
<Stefania_Mingey@Memry.com>

   Sounds Great. I will let you know the best date and time later this week.

  It would be our preference to run 10 parts prior to submitting a quote for larger
           volumes. With that said, please see quote attached. Stef can get you set up
           with credit terms, etc. I have also attached our credit application.

Looking forward to your response. Please keep in mind that I will be in the air/airport
           most of today yet Rich and I can get on a call if need be later this week.

Talk to you soon.

Mike Sanchez
Director of Sales
Memry Corporation
484-241-5047
www.memry.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

From: Paul Badawi [mailto:paul@sightsciences.com]
Sent: Monday, November 14, 2011 3:53 PM
To: Sanchez, Mike
Cc: LaFond, Rich
Subject: Re: Question - Visit


Hi Mike,

I will be in town that week and would enjoy meeting in person. Both of those days look
     good for me - please let me know what day/time works best for you and Rich.
     Thanks

Paul

From: "Sanchez, Mike" <Mike_Sanchez@Memry.com>

Date: Mon, 14 Nov 2011 19:27:56 +0000

To: paul@sightsciences.com<paul@sightsciences.com>

Cc: LaFond, Rich<Rich_LaFond@Memry.com>

Subject: RE: Question - Visit


Paul,

As an update, we continue to review the drawings, etc. Please allow a few more days
     for us to finalize the quote.

Also, Rich Lafond (Dir of Engineering) and I will be in the Menlo Park area the week of
     12/5.  With that said, are you available for a meeting, lunch, coffee, etc. on
     Tuesday or Wednesday (6th / 7th)?


Mike
   From: paul@sightsciences.com [mailto:paul@sightsciences.com]
Sent: Friday, November 11, 2011 1:38 PM
To: Sanchez, Mike
Subject: RE: Question


Hi Mike, please find attached our implant in IGES format. Let me know if we can
     provide any further information at this stage.


Thanks,


Paul

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

SGHT0031066

# EXHIBIT 12

| | |
|---|---|
| **From:** | Shervin Korangy <skorangy@gmail.com> |
| **Sent:** | Tue, 28 Jun 2011 20:19:21 +0000 (UTC) |
| **To:** | paul@sightsciences.com |
| **Cc:** | Jesse Selnick <Selnick@blackstone.com> |
| **Subject:** | Re: [FWD: RE: FW: Glaucoma surgical device research diligence] |

can you forward the paper from the Dr that he sent to you?

On Tue, Jun 28, 2011 at 9:15 PM, <paul@sightsciences.com> wrote:
  i think he loves drowning in due diligence!

    -------- Original Message --------
    Subject: RE: FW: Glaucoma surgical device research diligence
    From: "Carter Meyer" <cmeyer@shdpartners.com>
    Date: Tue, June 28, 2011 12:10 pm
    To: <paul@sightsciences.com>
    Cc: "Andrew Offer" <aoffer@shdpartners.com>

    Paul,

    Thanks for the response.  Makes good sense.


    Carter Meyer
    Scientific Health Development, Ltd.
    2305 Cedar Springs, Suite 240
    Dallas, Texas 75201
    Phone:  (214) 303-1540
    Fax:    (214) 303-1597
    Email:  cmeyer@shdpartners.com


    _____
    **From:** paul@sightsciences.com [mailto:paul@sightsciences.com]
    **Sent:** Tuesday, June 28, 2011 11:58 AM
    **To:** Carter Meyer
    **Cc:** Andrew Offer
    **Subject:** RE: FW: Glaucoma surgical device research diligence

    Carter, glad that you've already found good times to speak with Dr. Sarkisian and Dr. Stamper. I am sure you will find their views helpful.

    Dr. Grover makes some very fair points that are good to ask any implantable company. It's something we had thought through at length in our early days when we were forming the company. There are really 2 ways to look at the physiology we are addressing to get comfortable with the eye's response: 1) the physiology of the trabeculocanalicular outflow anatomy in particular (theoretical view) and 2) extensive clinical experience with implants within Schlemm's canal (hard data)

    With regard to the trabecular outflow physiology, we need to keep in mind that while the vascular tissues of the eye, like vascular tissues anywhere else in the body, do have a 'brisk healing response', avascular tissues notoriously do not. That is why LASIK (laser vision correction) of the cornea, an avascular tissue, does not scar, and patients enjoy lifelong good vision. Ulcers that form on the sclera, also relatively avascular, do not heal well unless you drape vascular conjunctiva on them. Likewise, in our case, the trabecular meshwork is avascular and embedded in avascular sclera, and thus scarring should be minimal. In terms of blood reflux, some blood often ends up in the anterior chamber post-trauma or post-op; this is called hyphema. It dissolves typically within days and because it is treated with the same steroid eye drops used after most eye surgeries, scarring does not occur and permanent clots do not occur.

    The more important point, I think, is that extensive clinical data exists to support the physiological background information above. Glaukos has a titanium implant that resides within the canal. Their FDA data on hundreds of patients implanted demonstrates the biocompatibility of titanium implants within Schlemm's canal. Moreover, tube-based supports that are wall-based, like the iStent, naturally have more contact with the wall and would be more likely to elicit an inflammatory response (unlike our core-based titanium Helix which contacts the inner lumen of the canal minimally). Again, this has not been a problem for Glaukos and should not be a problem for us. Finally, no appreciable scarring has been demonstrated with canaloplasty either. In that case, their 20 micron suture is applying much more force per unit area on the inner lumen than our Helix which disperses the forces required to restore canal patency.

    Hope this is helpful. Happy to discuss if you have any follow-up questions.

    Paul

      -------- Original Message --------
      Subject: FW: Glaucoma surgical device research diligence
      From: "Carter Meyer" <cmeyer@shdpartners.com>
      Date: Tue, June 28, 2011 7:23 am
      To: <paul@sightsciences.com>
      Cc: "Andrew Offer" <aoffer@shdpartners.com>

      Paul,

CONFIDENTIAL

SGHT0130538

We met with Dr. Grover on Friday who was quite helpful. He followed up with his thoughts (the last page of the word document) as well as a few publications that were relevant to our discussion. I thought you might find this helpful and/or interesting. I am not terribly concerned with his comments regarding competition, it is hard to convey the differences and advantages in a short meeting. I would be interested in your thoughts regarding scarring and clotting potential. FYI, we are speaking with Dr. Sarkisian in about 10 minutes and Dr. Stamper later today.

Thanks.


Carter Meyer
Scientific Health Development, Ltd.
2305 Cedar Springs, Suite 240
Dallas, Texas 75201
Phone: (214) 303-1540
Fax: (214) 303-1597
Email: cmeyer@shdpartners.com

-----Original Message-----
From: Andrew Offer
Sent: Monday, June 27, 2011 4:47 PM
To: Carter Meyer
Subject: FW: Glaucoma surgical device research diligence


-----Original Message-----
From: dgrover@glaucomaassociates.com
[mailto:dgrover@glaucomaassociates.com]
Sent: Monday, June 27, 2011 4:42 PM
To: Andrew Offer
Subject: RE: Glaucoma surgical device research diligence

Hi Andrew

I hope this email finds you well. I have completed my research. I am attaching the following documents. I will actually be sending you two emails.

This email will include an executive summary of my findings as well as my invoice.

My second email will include all of the background research papers I found on the subject (if you guys want any specific advice on a certain part of any article please let me know).

I hope this is helpful. Please let me know if you have any questions.

Thanks
Davinder

-----------
Davinder S. Grover, MD, MPH
Glaucoma Associates of Texas
214.360.0000
214.360.0083 (fax)

CONFIDENTIAL

SGHT0130539

# EXHIBIT 13

| | |
|---|---|
| **From:** | "David Badawi" <davidbadawi@gmail.com> |
| **Sent:** | Tue, 8 Jun 2010 19:42:40 +0000 (UTC) |
| **To:** | "Feix, I." <ifeix@admedes.com> |
| **Cc:** | "Paul Badawi" <pbadawi@yahoo.com> |
| **Subject:** | Re: (#490) Glaucoma Implant || ^^ |

Hi Ines,

I think, yes, it should be electropolished. Since I have your attention at this moment, I would like to ask you a question: If I decide to request a part that is 175 um wide (versus 250um), 50um thick, and 10millimeters long, what is the process? In other words, do you have NiTi AND Titanium ribbon precursors in house, or do you need to get those elsewhere before you can fabricate a part that is a little thinner? I ask this because I will try your part in human cadaver eyes as soon as I receive them-if they are too wide, I will ask for a thinner part. I am simply trying to increase the efficiency of the process-suggestions? Thanks again for your prompt and useful replies.

David

On Tue, Jun 8, 2010 at 11:29 AM, Feix, I. <ifeix@admedes.com> wrote:

> HI David,
>
> thank you for your PO. I am not sure about the surface finish. Is it right that you wnat the parts to be electropolished?
>
> Ines

---

**Von:** David Badawi [mailto:davidbadawi@gmail.com]
**Gesendet:** Dienstag, 8. Juni 2010 03:21
**An:** Feix, I.
**Cc:** Paul Badawi
**Betreff:** Re: (#490) Glaucoma Implant || ^^

Ines,

Thanks for getting back to me. I wanted to make one final addition to the design:

Is it possible to make BOTH ends of the part blunt as shown in the earlier attachment I sent you?

To review, we need a part that is approximately 10mm in length (10,000 um), 250um in width, and 50um thick, with multiple fenestrations, and 2 blunt ends. It needs to be periodically twisted as earlier described. I am happy you will try with both NiTI and TItanium.

Please let me know if you have any questions. Thanks again.

David

On Mon, Jun 7, 2010 at 9:34 AM, Feix, I. <ifeix@admedes.com> wrote:

> David,
>
> I have now ordered Titanium sheet. I think we can also make the parts from this material. We cannot really tell how good the heat treatment will work. We have to try it. If it turns out to be more challenging we will modify the tooling and/or the drawing. You will get our quotation very soon.
>
> Sorry for the delay!
> Ines

---

**Von:** David Badawi [mailto:davidbadawi@gmail.com]
**Gesendet:** Sonntag, 6. Juni 2010 03:18

CONFIDENTIAL

SGHT0160500

**An:** Feix, I.
**Betreff:** Re: (#490) Glaucoma Implant || ^^

Hello Ines,
I am following up on my last email. Are you waiting for additional information from me or are we proceeding. Please let me
know at what point we are at. THanks, and have a great weekend.

David


On Sun, May 30, 2010 at 12:31 PM, David Badawi <davidbadawi@gmail.com> wrote:

Hello Ines,
Thanks for your reply. I like your proposal #3 most of all. I have attached an image that has my ideas and it ALSO has
questions that I have for you. Please review and let me know your thoughts prior to final fabrication. In terms of number
of parts, I would say that we need two or three. However, Paul and I will let you know the final answer shortly. I hope that
does not delay our progress since we need to keep moving on this.

Please let me know as soon as you can so we can move forward.

David

On Wed, May 26, 2010 at 7:06 AM, Feix, I. <ifeix@admedes.com> wrote:

Hi David,

Sorry for my late answer. I have prepared a simple drawing with your 3 different proposals for the hole size. I am not sure about the quantity of
holes. You wrote that there will be 10 or 20 holes. But in all cases there seem to be much more holes as the whole part has got the length of
10mm. Or do you need a much thicker connector width between the holes?

In general we can try to build both of the geometries you had shown us in your word doc (right and left hand). I think we can build a tooling to
control well the periodicity of the twisting. I would like to start with the preparation of the offer, could you please let me know how many parts you
will need?

Regards, Ines

.....................................................................................................................................................................

**Von:** David Badawi [mailto:davidbadawi@gmail.com]
**Gesendet:** Freitag, 21. Mai 2010 04:14
**An:** Feix, I.
**Cc:** Paul Badawi
**Betreff:** Re: (#490) Glaucoma Implant || ^^

Hi Ines,
To answer your questions:
1. Yes, in terms of dimensions, I mean 50um thick, 250um wide, and 10mm long.
2. In terms of number of holes, I was thinking something like 20 holes each with a diameter of 50um or 10 holes with a
   diameter of 100um
3. The length of the part is 10mm
4. You say the geometry to the left would be easier--are you saying that you can twist it or am I misunderstanding it. Please
   not that I am not fixated on exactly 90 degrees, but twisting it would be nice; can you control the periodicity of twisting
   well?

I will look into the dxw/dwg capability that we have. By the way could you fashion the same part out of titanium rather than
   NiTi?

Best,
David

On Thu, May 20, 2010 at 4:11 AM, Feix, I. <ifeix@admedes.com> wrote:

Hi David,

CONFIDENTIAL

SGHT0160501

Florent has forwarded me your inquiry about the laser cut flat parts. I saw in the attached pdf that you need a part with several holes in it. You also write that the dimensions are 50µm x 250µm x 10.000µm. I am assuming that the thickness of the sheet would be 50µm and the width 250µm. What about the length of the part? Is it 10mm so that we will have 40 holes in it?
We have in our stocks Niti sheets with thickness 50µm. I think it would be easier to form the geometry on the left of the pdf. I am not sur how to get this 90° angle on the geometry on the right side.

Do you have a drawing (dxf or dwg) of the geomtries?


Regards, Ines

----

**Von:** Budillon, F.
**Gesendet:** Dienstag, 18. Mai 2010 20:29
**An:** David Badawi
**Cc:** Paul Badawi; Steiner, R.
**Betreff:** AW: (#490) Glaucoma Implant || ^^

Hi David,
about your remarks and questions:
1. Why would have titan better chance than Nitinol? Is Nitinol too elastic? Do you want something less flexible? A braid is anyway quite flexible, also with rigid materials
2. Two wires together won't be stable enough. You'll have better chance with ribbons. In my opinion, it could work with ribbon when we weld the wires together, but with 25 µm wires, it cannot work
3. I cc Ralf Steiner who is responsible for the samples made with laser technology. He can discuss it with you
4. I will let Ralf answer that himself

About the #2 again, you made the suggestion of using 50 µm wires. I will try the configuration 6x50 µm wires. The braid will have more stability than with the 25 µm wires. I'll come back to you as soon as I have results.


Regards,
Florent

----

**Von:** David Badawi [mailto:davidbadawi@gmail.com]
**Gesendet:** Donnerstag, 13. Mai 2010 00:29
**An:** Budillon, F.
**Cc:** Paul Badawi
**Betreff:** Re: (#490) Glaucoma Implant || ^^

Hi Florent,
Please see attached PDF.


Thanks again,
David

On Wed, May 12, 2010 at 12:25 PM, Budillon, F. <fbudillon@admedes.com> wrote:

Hi David and Paul,
we made a lot of tests and until now we didn't get good results.
Enclosed a picture of our last trial. We used 6 wires of 25 µm, braided on a 250 µm mandrel, in order to get the OD of 350 µm.
We tried to make a some position the diameter of the braid smaller but this didn't give us a good braid structure.
The reason in my opinion is that 6 wires of 25 µm on 250 µm is not enough for the braid to be stable enough. When we want to "crimp" the braid on a smaller diameter the wire don't stay at their "place". I hope I was clear enough for you to understand.

I see two alternatives:
- we make the braid with more wires, i.e. 8 wires of 25 µm. This one we are currently trying it and I will give you updates as soon as possible.
- we let the braid with an OD of 350 µm and we don't reduce the braid diameter.

Due to local holidays, please note that we shall be closed on May 13th and 14th.


Regards,
Florent

CONFIDENTIAL                                                                        SGHT0160502

--
David Y. Badawi, M.D.


Partner at Northwest Eye Physicians

Website: nwep.drviewer.com
Phone(C): 847 877 4288
Fax: 847 392 9252


--
David Y. Badawi, M.D.


Partner at Northwest Eye Physicians

Website: nwep.drviewer.com
Phone(C): 847 877 4288
Fax: 847 392 9252


--
David Y. Badawi, M.D.


Partner at Northwest Eye Physicians

Website: nwep.drviewer.com
Phone(C): 847 877 4288
Fax: 847 392 9252


--
David Y. Badawi, M.D.


Partner at Northwest Eye Physicians

Website: nwep.drviewer.com
Phone(C): 847 877 4288
Fax: 847 392 9252


--
David Y. Badawi, M.D.


Partner at Northwest Eye Physicians

Website: nwep.drviewer.com
Phone(C): 847 877 4288

CONFIDENTIAL

# EXHIBIT 14

1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004
**T** +1 202 389 5235
**F** +1 202 389 5200
------------------------------------------------------------
noah.frank@kirkland.com

---

**From:** Frank, Noah S. <noah.frank@kirkland.com>
**Sent:** Tuesday, June 20, 2023 7:47 AM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Wood, Alissa <amwood@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; Rhyu, Michelle <RHYUMS@cooley.com>; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Document Production Deficiencies

Counsel,

Defendants have for months repeatedly asked Sight to produce all missing attachments from its productions. *See* 4/21/2023 J. Bova Letter at 2; 4/28/2023 J. Bova e-mail; 5/10/2023 J. Bova Letter at 6; 5/26/2023 A. Teng e-mail; 6/12/2023 S. Dirks e-mail. Despite your assertions to the contrary, it is not Defendants' burden to locate all missing attachments in Sight's deficient production; Defendants identified examples of the issue as a courtesy. Sight's "investigation" of the missing attachments issue, in which Sight merely reviewed the two example documents that reference attachments being sent and "locat[ed] some or all of the attachments," does nothing to resolve Defendants' concerns about the pervasiveness of this issue. To date, Sight still has not (1) explained why these attachments were missing, (2) identified and produced other missing attachments, or (3) confirmed that it investigated whether there are additional missing attachments beyond those identified. Indeed, there are many more examples of missing attachments. *See, e.g.,* SGHT0030283, SGHT0030410, SGHT0030936, SGHT0031063, SGHT0130538, SGHT0160500. Defendants emphasize that this list is merely exemplary and it is not Defendants' obligation to identify each and every missing attachment.

To further illustrate Defendants' concerns, Sight's production contains incomplete email threads. For example, an email dated 12/30/2015 (SGHT0032220) poses a question to Paul Badawi and Sight has not produced any email response. As with the missing attachments above, this is only exemplary and Sight has an obligation to produce complete email threads for responsive emails.

Given Mr. Badawi's upcoming deposition, please confirm by Tuesday, June 20 that Sight will produce the missing email response and attachments already identified by Wednesday, June 21. Please also confirm that Sight will investigate why these issues occurred and whether there are other missing attachments and missing emails from threads, and provide explanations by Wednesday, June 21.

Defendants' continual discovery of the incomplete state of Sight's production is highly prejudicial. If Sight does not agree to provide explanations regarding these issues by Wednesday, June 21, please provide your availability to meet and confer that day.

Regards,

**Noah Frank**

---------------------------------------------------

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7570
**F** +1 617 385 7501

1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004
**T** +1 202 389 5235
**F** +1 202 389 5200

---------------------------------------------------

noah.frank@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT 15

| | |
|---|---|
| **From:** | Frank, Noah S. |
| **To:** | Strosnick, Lauren; Rhyu, Michelle; Merideth, Vicki; cvilloslada@ycst.com; Armon, Orion; Gibbs, Tracy; Wood, Alissa; z/Sight Sciences Ivantis; Murdter, David; Douglas, Jeannine; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com; *msharp@ycst.com; Vanderwall, Cameron C. |
| **Cc:** | SKIvantis@shawkeller.com; #Alcon-SightSciences |
| **Subject:** | RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Document Production Deficiencies |
| **Date:** | Thursday, June 22, 2023 1:51:28 PM |

Lauren,

Far from being "unfounded," our concerns are evident based on both the deficiencies we have identified, as well as your response, which calls into question the "reasonableness" of Sight's document collection, review, and production. From your email, it appears that Sight believes it can withhold responsive documents from within a family simply because they were not attached to the latest-in-time email. It is also unclear what definition of "family" Sight has been using to collect and review documents.

While Sight has explained what it did to rectify this particular instance, it has not explained why this occurred in the first place. Nor has Sight explained whether it even investigated the cause of this issue. We are available to meet and confer today at 1 pm pacific. Please also be prepared to discuss the missing email response from Paul Badawi on 1/13/2016 that I raised yesterday.

Regards,

**Noah Frank**

--------------------------------------------------
**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7570
**F** +1 617 385 7501

1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004
**T** +1 202 389 5235
**F** +1 202 389 5200
--------------------------------------------------
noah.frank@kirkland.com

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Thursday, June 22, 2023 9:55 AM
**To:** Frank, Noah S. <noah.frank@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Wood, Alissa <amwood@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Document Production Deficiencies

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

Counsel,

Your concerns regarding alleged "missing attachments" are unfounded.  As an initial matter, your description of these documents as having "missing attachments" is a misnomer – the two documents you initially identified are not in fact missing attachments; it is clear from the face of each document that there is no attachment to the last-in-time email.  The same is true for the six additional documents you identified on 6/20.  Instead, we understand your concern to be about earlier emails in the chain that reference attachments being sent.  We therefore searched Sight's documents for the emails referencing attachments in SGHT0031048 and SGHT0031051, and located some or all of the attachments that we will produce by tomorrow.  Specifically, here are the steps we took with respect to these two documents:

- We identified that the previous emails referencing attachments were all sent from the paul@sightsciences.com address;
- We searched previously-collected ESI as well as original sources in an effort to locate these messages as the last-in-time sent versions including the attachments;
- We also searched other contemporaneous messages, and identified communications with Stephen Pons that reflect Paul Badawi as an intermediary passing along the attachments;
- We identified contemporaneous standalone documents or messages from Stephen Pons that include attachments corresponding to the documents referenced in the original threads, and will produce those documents this week.

We will undertake a similar investigation for the six additional documents you identified yesterday.

Sight rejects your unfounded allegations regarding the completeness of its production.  Sight has undertaken a reasonable collection, review, and production of ESI (including email) based on responsiveness to the issues in this case and Defendants' requests for production, and we have investigated your follow-up questions in good faith.  Sight has produced families associated with responsive documents, but the obligation to produce families does not include locating referenced attachments that are not part of those families.  While we are willing to perform a reasonable number of searches for specific attachments that you identify, there is no requirement or agreement in this case for the parties to search for attachments referenced in emails that are not part of responsive families.

We are happy to meet and confer to discuss this issue further as needed.

Thanks,
Lauren

Lauren Strosnick
Direct: +1 650 843 5065

# EXHIBIT 16

| From: | Strosnick, Lauren |
|---|---|
| To: | DeLucia, Nathaniel Louis; Frank, Noah S.; Teng, Austin C.; Rhyu, Michelle; Merideth, Vicki; cvilloslada@ycst.com; Armon, Orion; Gibbs, Tracy; Wood, Alissa; z/Sight Sciences Ivantis; Murdter, David; Douglas, Jeannine; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com; *msharp@ycst.com; Vanderwall, Cameron C. |
| Cc: | SKIvantis@shawkeller.com; #Alcon-SightSciences; Mecham, Ross D |
| Subject: | RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Document Production Deficiencies |
| Date: | Friday, July 7, 2023 1:06:58 PM |

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Nathaniel,

We confirm that Sight already collected, reviewed, and produced documents collected from Paul and David Badawi's files saved on Dropbox.  We are still working on your remaining requests, and will provide an update in due course, but as stated in my June 28 email below:

- We are investigating whether there are additional Basecamp repositories that constitute custodial ESI of Paul and David Badawi or non-custodial ESI of Sight Sciences and that have *not* already been collected and contain non-duplicative information. To the extent they exist and have non-duplicative information, we will apply the parties' keyword searches to that data and produce responsive documents.
- We are investigating the Bates-numbered documents listed on page 2 of your letter and will produce referenced attachments, lab notebooks, and/or Dropbox or Basecamp documents, to the extent such documents exist and can be located after a reasonable search.
- Sight will produce the Badawi deposition documents identified on page 2 of your letter, to the extent they have not already been produced.
- Sight will produce product-specific cost allocations for OMNI to the extent such records exist and can be generated from Sight's financial system.

Below are our responses to the additional points raised in your 6/27 letter:

- Defendants' concerns about the dates of Sight's produced documents are misplaced.  First, Sight's 6/22/23 privilege log has 387 entries dated before 2017—in stark contrast to Defendants' 6/16/23 privilege log, which has only 26 entries before 2017 (all of which appear to be from Shay Glenn's files).  Second, the email communications between Paul and David Badawi in 2006-2008 relate to invention disclosure preparation and are reflected in the privilege log.
- Exhibits 13-16 to Paul Badawi's deposition were specifically created for the 30(b)(6) deposition preparation and did not exist prior to that.  Nonetheless, as noted above, Sight will produce Exhibits 13-16.
- Regarding the product-specific cost allocations, the fact that Sight is ***able*** to generate such documents does not mean that Sight has an obligation to generate them for this litigation.  Nonetheless, as noted above, Sight will produce product-specific cost allocations for OMNI to the extent such records exist and can be generated from Sight's financial system.

Thanks,
Lauren

# EXHIBIT 17

| | |
|---|---|
| **From:** | Teng, Austin C. |
| **To:** | Strosnick, Lauren; Frank, Noah S.; Rhyu, Michelle; Merideth, Vicki; cvilloslada@ycst.com; Armon, Orion; Gibbs, Tracy; Wood, Alissa; z/Sight Sciences Ivantis; Murdter, David; Douglas, Jeannine; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com; *msharp@ycst.com; Vanderwall, Cameron C. |
| **Cc:** | SKIvantis@shawkeller.com; #Alcon-SightSciences; Mecham, Ross D; Wood, Alissa |
| **Subject:** | RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Document Production Deficiencies |
| **Date:** | Friday, June 23, 2023 2:05:58 PM |

Counsel,

We are available from 5-6 pm ET for a meet and confer and will circulate a dial-in.

**Austin Teng**

------------------------------------------------------

**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101

------------------------------------------------------

austin.teng@kirkland.com

---

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Friday, June 23, 2023 11:19 AM
**To:** Frank, Noah S. <noah.frank@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Wood, Alissa <amwood@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>; Mecham, Ross D <rmecham@cooley.com>; Wood, Alissa <amwood@cooley.com>
**Subject:** RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Document Production Deficiencies

---

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

---

Counsel,

We are available to meet-and-confer regarding this issue at 5pm ET today.  If that works, please send a dial-in.  For clarity, we have applied the definition of "family" set forth in the parties' ESI Order – "a group of documents that are maintained as a single unit in the ordinary course of business (*e.g.*, an email and its attachments)."  D.I. 49, ¶ 3.b.  Contrary to your assertions, an attachment is only part of the document family when its parent document is the last-in-time (LIT) email in the email chain. Your concerns thus remain unfounded.  Our e-discovery attorney assigned to this case will join the

call to assist with any technical questions.

Please also be prepared to discuss the deficiencies in Defendants' document productions summarized in our attached email from 6/21.

Thanks,
Lauren

Lauren Strosnick
Direct: +1 650 843 5065

**From:** Frank, Noah S. <noah.frank@kirkland.com>
**Sent:** Thursday, June 22, 2023 11:51 AM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Wood, Alissa <amwood@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Document Production Deficiencies

**[External]**

Lauren,

Far from being "unfounded," our concerns are evident based on both the deficiencies we have identified, as well as your response, which calls into question the "reasonableness" of Sight's document collection, review, and production. From your email, it appears that Sight believes it can withhold responsive documents from within a family simply because they were not attached to the latest-in-time email. It is also unclear what definition of "family" Sight has been using to collect and review documents.

While Sight has explained what it did to rectify this particular instance, it has not explained why this occurred in the first place. Nor has Sight explained whether it even investigated the cause of this issue. We are available to meet and confer today at 1 pm pacific. Please also be prepared to discuss the missing email response from Paul Badawi on 1/13/2016 that I raised yesterday.

Regards,

Noah Frank
-----------------------------------------------
KIRKLAND & ELLIS LLP
200 Clarendon Street, Boston, MA 02116
T +1 617 385 7570