**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SIGHT SCIENCES, INC., | ) |
| | ) |
| Plaintiff, | ) **Redacted - Public Version** |
| | ) |
| v. | ) C.A. No. 21-1317-GBW-SRF |
| | ) |
| IVANTIS, INC., ALCON RESEARCH | ) |
| LLC, ALCON VISION, LLC, and ALCON | ) ██████████████ |
| INC., | ) |
| | ) |
| Defendants. | ) |

**LETTER TO THE HONORABLE JUDGE SHERRY R. FALLON
FROM KAREN E. KELLER**

OF COUNSEL:
Gregg LoCascio
Sean McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Austin C. Teng
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Laura Zhu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: July 18, 2023

Dear Judge Fallon:

Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision LLC, and Alcon, Inc. ("Defendants") respectfully request that the Court grant Defendants' motion to preclude Plaintiff from relying on Plaintiff's post-fact-discovery-close production of documents from Dr. Galanis on July 5, 2023, and to preclude any argument or testimony relating to the production. As Dr. Galanis confirmed at his deposition, Plaintiff made no effort to collect documents from Dr. Galanis or otherwise fulfill its discovery obligations during fact discovery. Then, at approximately 10:00 PM ET on July 5, 2023, one week after the close of discovery and 13.5 hours before the deposition of Dr. Galanis, Plaintiff elected to produce documents from Dr. Galanis that it believes are helpful to its induced infringement case. It then cited and quoted those documents in opening expert reports served last week. Plaintiff's sandbagging prevented Defendants from engaging in meaningful discovery relating to these documents and their subject-matter, and Plaintiff's lack of diligence should not be countenanced. Under Fed. R. Civ. P. 16 and/or 37(c)(1), Plaintiff should be precluded from relying on the untimely production and testimony regarding it.

## I.      Factual Background

Plaintiff disclosed Dr. John Galanis as an *expert* witness on May 3, 2023. (Ex. 1 (5/3/2023 email) at 1.) On May 23, 2023, Plaintiff amended its Initial Disclosures to add Dr. Galanis as a *fact* witness to be contacted through Sight's counsel, and stated he had "[k]nowledge of direct and induced infringement, including instructions given by Defendants and their agents regarding methods for implanting the Accused Product." (Ex. 2 (2d Am. Init. Discl.) at 4.) Defendants requested a fact deposition of Dr. Galanis. (Ex. 3 (5/25/2023 A. Teng email) at 14-15.) Plaintiff proposed that Defendants postpone Dr. Galanis's fact deposition until his expert deposition, or alternatively, that Defendants agree to limit the deposition to two hours given the alleged "narrow" scope of Dr. Galanis's relevant factual knowledge—which Plaintiff represented "relates to discussions with Defendants' sales representatives." (*Id.* (6/5/2023 L. Strosnick email) at 8.) At least by that date, Plaintiff should have sought documents relating to those "discussions." Dr. Galanis confirmed Plaintiff did not do so. (Ex. 4 (Galanis Tr.) at 43:4-7 ("Q. … I want to confirm, nobody asked you to collect documents in this case, correct? A. That is correct.").) Based on Plaintiff's representation of the narrow scope of Dr. Galanis's factual information, Defendants agreed to a three-hour deposition. (Ex. 5 (B. Verbus and J. Gonzalez emails) at 1-6.)

During fact discovery, Defendants diligently investigated the bases for Plaintiff's induced infringement allegations. Their Interrogatory No. 1, served April 22, 2022, asked "whether You allege that Defendant … contributorily infringed or infringes, and/or induced or induces infringement of each Asserted Claim, and Your factual and legal basis for Your contentions." (Ex. 6 at 7.) Plaintiff's response did not identify (1) Kenyon Catchings—the Alcon employee who allegedly texted Dr. Galanis in Plaintiff's July 5, 2023 production of texts—or (2) correspondence between Dr. Galanis and Mr. Catchings. (Ex. 7 at 8-11.) Nor did the Second Amended Complaint (D.I. 59) or Plaintiff's voluminous infringement contentions cited in Plaintiff's Rog 1 response.

Fact discovery closed June 29, 2023. (D.I. 93 at 2.) Plaintiff did not produce any documents from Dr. Galanis during fact discovery. Nor did it make any effort to find such documents. (Ex. 4 at 43:4-7.) Yet at 9:46 PM ET the night before the deposition, Plaintiff produced 16 photographs of text messages between Dr. Galanis and Mr. Catchings that were displayed on Dr. Galanis's

phone, and 2 video files. (Ex. 8 (7/5/2023 email); Ex. 9 (compilation of produced texts, GALANIS0000001–16).) That night, Defendants requested that Plaintiff withdraw its untimely production and disclaim any reliance on it. (Ex. 10 (7/5/2023 S. Boutsikaris email) at 11-12.) During the parties' meet-and-confer the next morning—a mere hour before the deposition was scheduled—Plaintiff stonewalled Defendants' requests to withdraw the production and disclaim reliance on it. (*Id.* (7/6/2023 B. Verbus email) at 9-10.) Because Plaintiff refused to reschedule the deposition and represented that proceeding with the deposition would not waive Defendants' rights to challenge the production, and because Dr. Galanis is a practicing physician, Defendants proceeded with the deposition. (*Id.*) But Defendants had planned for a three-hour deposition prior to learning about the Galanis production, which left Defendants little time to spare for questions about the untimely production. Plaintiff's counsel terminated the deposition partway through Defendants' questioning on the Plaintiff's untimely Galanis production. (Ex. 4 (Galanis Tr.) at 127:17-127:21, 130:4-7.) After meeting and conferring regarding Defendants' proposed motion to preclude, Plaintiff agreed to allow 90 additional minutes of deposition time of Dr. Galanis at a future date. (Ex. 10 (7/12/2023 D. Knight email) at 2.) But Plaintiff still refused to withdraw its reliance on the untimely production from its identified fact witness. To the contrary, Dr. Galanis's expert report served last week recites the content of the text messages (*i.e.*, those with "GALANIS" Bates numbers), quotes and pastes them in the report, and discusses the two videos produced with the text messages on July 5, 2023. (*See, e.g.*, Ex. 11 (Galanis Report) ¶¶ 43-48, 50, 59-63, 77-78.)

## II.     The Court Should Preclude Plaintiff from Relying on the Untimely Production and Preclude Any Argument or Testimony Relating to It

*First*, Plaintiff cannot show diligence to amend the Court's Scheduling Order setting a fact discovery deadline of June 29, 2023, and it should be precluded from relying on its production made in violation of that Order. *Second*, "[i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In analyzing motions under Rule 37(c)(1), courts in the Third Circuit consider the *Pennypack* factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). "The trial court's exclusion of [evidence] because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal absent a clear abuse of discretion." *Konstantopoulos*, 112 F.3d at 719 (affirming exclusion). Preclusion is warranted here.

### A.     Plaintiff's Untimely Production Was Not Substantially Justified, And Plaintiff Cannot Show Good Cause To Amend The Scheduling Order

Plaintiff's failure to produce the Galanis documents by the close of fact discovery was not substantially justified. Plaintiff had access to Dr. Galanis by "January or February" of 2023. (Ex. 4 (Galanis Tr.) at 11:18-12:8.) Plaintiff knew Dr. Galanis had information pertaining to alleged conversations with Defendants' personnel by May 23, 2023, when it identified him as a fact witness with knowledge of "instructions given by Defendants and their agents regarding methods for implanting the Accused Product." (Ex. 2 at 4.) Plaintiff should have interviewed Dr. Galanis and collected documents from him during fact discovery. It did not do so. (Ex. 4 (Galanis Tr.)

43:4-7.) And Plaintiff did not take the photographs of Dr. Galanis's phone until a week after the close of fact discovery. (*Id.* at 43:4-7, 95:13-96:6.) Plaintiff's production, without seeking leave of Court, was a flagrant disregard of this Court's scheduling order requiring "[a]ll fact discovery in this case shall be initiated so that it will be completed on or before June 29, 2023." (Dkt. 93 at 2.)

Plaintiff's primary justification—"[w]e actually only became aware of these documents yesterday [July 5th] afternoon" (Ex. 10 (7/6/2023 M. Rhyu email) at 11)—fails. Plaintiff "only became aware of these documents" on July 5th because ***it did not bother to look for them*** during fact discovery. (*Id.*) Courts routinely reject this excuse. *See, e.g., Bridgestone Sports Co. v. Acushnet* Co., C.A. No. 05-132, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) ("any lack of diligence by Acushnet is insufficient to excuse its delay"). And Plaintiff certainly cannot establish good cause to amend the Court's Scheduling Order. *Finjan, Inc. v. Rapid7, Inc.*, C.A. No. 18-1519, 2020 WL 5798545, at *5-6 (D. Del. Sep. 29, 2020) (In an order granting preclusion under Rule 37(c)(1), noting "[t]his motion could be viewed through the lens of a scheduling order violation" and holding "[a]pplying the good cause standard would not change the result here" because "Finjan could not show diligence and thus could not meet the good cause standard").

Plaintiff's other justifications fare no better. Plaintiff argues it is excused from complying with the Court's scheduling order because its untimely production is "akin to the defendants' production of Andy Rivero's documents before his deposition." (Ex. 10 (7/6/2023 M. Rhyu email) at 11.) But Defendants' production of Mr. Rivero's documents ***during fact discovery in response to Plaintiff's third-party subpoena*** bears no relation to Plaintiff's ***elective*** production of documents from its own fact witness ***after the close of fact discovery***. Plaintiff argues Defendants should have subpoenaed Dr. Galanis. (*Id.* at 6-7.) But if Plaintiff wanted to produce documents from Dr. Galanis to try to prove its case, it was required to do so by the court-ordered deadline, or seek leave of Court to produce fact-discovery documents outside the discovery period. Plaintiff did neither. Plaintiff also asserts that, because Dr. Galanis's texts were allegedly exchanged with an Alcon employee (Mr. Catchings), there is no prejudice. (*Id.* at 6-7.) This argument fails. Defendants have hundreds of sales representatives and employees—it is not reasonable or proportional to the needs of the case to expect Defendants to search the emails and text messages of every employee or contractor (and neither party produced text messages from party-employees). Nor did Defendants have a particular reason to conduct discovery from Mr. Catchings—the first ***mention*** of him in this case was when Plaintiff made the Galanis production on July 5, 2023.

## B.     Plaintiff's Production Was Not Harmless, And The *Pennypack* Factors Weigh In Favor Of Preclusion

Plaintiff's untimely production was not harmless, and each of the *Pennypack* factors also supports exclusion. Further, even if the *Pennypack* factors were a close call, and they are not, exclusion is warranted because "Courts applying the *Pennypack* factors in the case of sophisticated, complex litigation involving parties represented by competent counsel have been less indulgent in their application and more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone*, 2007 WL 521894, *4.

**1) Plaintiff's Untimely Production Is Prejudicial to Defendants**: Plaintiff's lack of diligence in producing the documents has prejudiced Defendants' ability to effectively conduct fact discovery. *Apotex, Inc. v. Cephalon, Inc.*, C.A. No. 2:06-2768, 2015 WL 12645745, at *2

(E.D. Pa. May 26, 2015) (finding "[p]rejudice is inherent when deadlines are disregarded in complex cases with extensive discovery," and noting "[s]cheduling orders are predicated upon the fact that there will be a point where the information gathering must end"). For example, Defendants were deprived of (1) the ability to identify witnesses to counter the subject matter of the documents, (2) the ability to serve interrogatories and requests for admissions relating to the documents, and (3) the ability to address the documents in their interrogatory responses. (Ex. 12 (6/29/2023 Resp. to Rog 5) at 43 ("Plaintiff has not provided details regarding how it understands Defendants induce or contribute to any direct infringement by others.").) Further, Plaintiff sandbagged Defendants by not making any reference to these documents or Mr. Catchings in its infringement contentions or its Response to Interrogatory No. 1, then relying on assertions regarding Mr. Catchings and the Galanis documents in expert reports (as discussed in more detail above in Section I). This particularized harm Defendants suffered because of Plaintiff's post-discovery production warrants preclusion. *See Archer v. Defs., Inc.*, No. 18-cv-470, 2021 WL 3033347, at *2 (D. Del. July 19, 2021) (precluding untimely production of data where "expert reports are due soon, and the [non-producing-party's] expert has been busy dissecting other (timely) data").

**2) and 3) The Prejudice Cannot Be Cured and Any Attempt to Do So Will Disrupt the Schedule:** Even if Plaintiff were willing to grant Defendants additional written discovery with respect to this production and the Court were to order it, that would not cure the prejudice. Expert discovery is ongoing. Opening expert reports have been served. To permit discovery into these documents and their subject-matter, the Court would need to reopen fact discovery and potentially permit supplements to expert reports. And this is no "cure," as it will force Defendants to incur additional costs to address Plaintiff's untimely production. Further, there is no remedy for Plaintiff's withholding of its alleged evidence of indirect infringement during the fact discovery period. Defendants had no opportunity during discovery to account for these documents and pursue a strategy regarding them. Plaintiffs may argue that they "cured" the prejudice by permitting Defendants to depose Dr. Galanis on the untimely production (after learning Defendants were taking the issue to the Court). (Ex. 10 (7/6/2023 and 7/12/2023 B. Verbus emails) at 3-4, 9-10.) But the additional deposition time fails to cure the other discovery-related harms identified here.

**4) Plaintiff's Bad Faith or Willfulness:** Plaintiff sandbagging Defendants by withholding the Galanis documents it now relies upon in its infringement expert report and failing to seek leave of Court for the production is evidence of bad faith. *Apotex*, 2015 WL 12645745, at *9 (finding "bad faith" and "gamesmanship" based on an "eleventh-hour production" where the producing party "could have easily sought leave of court to file additional materials and failed to do so"); *Archer*, 2021 WL 3033347, at *2 (excluding untimely production that was "grossly negligent" and noting the producing party "easily found these data when it wanted to").

**5) The Late-Produced Information Is Not Important:** Plaintiff's failure to interview Dr. Galanis during the discovery period confirms the withheld information is not important. And Plaintiff has other inducement theories it did disclose during discovery, which it addresses in Dr. Galanis's and other experts' reports. (*E.g.*, Ex. 11 (Galanis Rep.) ¶ 50 (discussing Andy Rivero's alleged "encourage[ment]" in addition to discussing Mr. Catchings).)

Respectfully submitted,
*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on July 18, 2023, this document was served on

zsightsciencesivantis@cooley.com and the persons listed below in the manner indicated:

### BY EMAIL

| | |
|---|---|
| Melanie K. Sharp | Michelle S. Rhyu, J.D., Ph.D. |
| James L. Higgins | David N. Murdter |
| Taylor E. Hallowell | Lauren Strosnick |
| YOUNG, CONAWAY, STARGATT & TAYLOR LLP | Alissa Wood |
| Rodney Square | Angela R. Madrigal |
| 1000 North King Street | Juan Pablo Gonzalez |
| Wilmington, DE 19801 | COOLEY LLP |
| (302) 571-6600 | 3175 Hanover Street |
| msharp@ycst.com | Palo Alto, CA 94305 |
| jhiggins@ycst.com | (650) 843-5000 |
| thallowell@ycst.com | rhyums@cooley.com |
| | dmurdter@cooley.com |
| Orion Armon | lstrosnick@cooley.com |
| COOLEY LLP | amwood@cooley.com |
| 1144 15th Street, Suite 2300 | jgonzalez@cooley.com |
| Denver, CO 80202 | amadrigal@cooley.com |
| (720) 566-4000 | |
| oarmon@cooley.com | Bonnie Fletcher Price |
| | COOLEY LLP |
| Dustin M. Knight | 1299 Pennsylvania Avenue, NW |
| COOLEY LLP | Suite 700 |
| 11951 Freedom Drive, 14th Floor | Washington, DC 20004 |
| Reston, VA 20190 | (202) 776-2099 |
| (703) 456-8024 | bfletcherprice@cooley.com |
| dknight@cooley.com | |

*/s/ Karen E. Keller*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO PRECLUDE**

Upon consideration of Defendants' Motion to Preclude, Defendants' Motion is

**GRANTED**.

The Court therefore **ORDERS** as follows:

1.  Plaintiff is precluded from relying on GALANIS0000001–18 or testimony

    relating to GALANIS0000001–18 in any manner in this litigation, including in

    a motion, at a hearing, in fact or expert discovery, or at trial.

SO ORDERED this _____ day of _____, 2023.

_____
United States Magistrate Judge

1

# EXHIBIT 1

| From: | Murdter, David |
|---|---|
| To: | #Alcon-SightSciences; SKIvantis |
| Cc: | z/Sight Sciences Ivantis; *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com |
| Subject: | Sight Sciences v. Ivantis - Expert Disclosures |
| Date: | Wednesday, May 3, 2023 2:09:58 PM |
| Attachments: | EAS |

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Counsel,

Pursuant to the Protective Order (Dkt. No. 69) entered by the court, Sight Sciences hereby discloses that it seeks to share material designated "Confidential" or "Highly Confidential – Attorneys' Eyes Only" with Dr. John Galanis and Dr. Richard Parrish. Dr. Galanis resides in St. Louis, MO and is currently employed by Galanis Cataract and Laser Eye Center. Dr. Galanis has provided testimony in the following cases:

**Walters v. Schwan's Food Service**
Cause # 17CG-CC00014
Circuit Court of Cape Girardeau County - State of Missouri
Testified by deposition on July 28, 2018

**Thomeczek v. Pepose Vision Inst.**
Case # 17SL-CC00398
Circuit Court of the County of St. Louis - State of Missouri
Testified by deposition on August 21, 2018
Testified in court on April 5, 2019

**Sellars v. Simmons**
Case # 2116-CV17911
Circuit Court of Jackson County, Missouri at Independence
Testified by deposition on September 27, 2022

Dr. Galanis does not have any current or past consulting relationships within the last five years.

Dr. Parrish resides in Miami, FL, and is currently employed by the University of Miami. Dr. Parrish has provided testimony in the following cases:

1

**Scotty Santos Diaz v. Centurion of Florida, LLC**
Case # 1:19-cv-24067
Southern District of Florida
Testified by deposition on January 31, 2022

Dr. Parrish does not have any current or past consulting relationships within the last five years.

Attached are current CVs for Dr. Parrish and Dr. Galanis, as well as their executed agreements to be bound by the Protective Order. Please confirm within seven (7) days whether Defendants object to the disclosure of confidential material to either Dr. Parrish or Dr. Galanis.

Thank you,
David

David Murdter
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
&#43;1 650 843 5881 office
dmurdter@cooley.com

www.cooley.com

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the inte

Attachments:

       Richard Parrish CV .pdf (528592 Bytes)

       Signed Protective Order.pdf (980774 Bytes)

       John Galanis CV.pdf (178522 Bytes)

       Protective Order signed JCG.pdf (6446856 Bytes)

       3bclean-control.bin (24316 Bytes)

# EXHIBIT 2

COIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C.A. No.:  21-1317-GBW-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF SIGHT SCIENCES, INC.'S**
**SECOND AMENDED INITIAL RULE 26(a)(1) DISCLOSURES**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiff Sight Sciences, Inc. ("Sight Sciences"), by its attorneys, hereby submits these Amended Initial Disclosures ("Disclosures"). Sight Sciences makes these disclosures based on its current understanding of the issues in the case and the information reasonably available at the time of these disclosures.  Sight Sciences' investigations are continuing and Sight Sciences expressly reserves the right to amend, modify, or supplement these disclosures based on additional information obtained through continued formal discovery from Defendants or through any other means.  By making these disclosures, Sight Sciences does not waive its right to object to the admissibility of information contained in these disclosures on any applicable basis.

**A.      INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION**

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), Sight Sciences discloses the name and, if known, the address and telephone number of each individual likely to have discoverable information that Sight Sciences may use to support its claims or defenses, unless solely for impeachment.  To the extent that Sight Sciences intends to rely on expert witnesses, it will identify those individuals in accordance with the schedule set by the Court.  Sight Sciences

does not consent to or authorize any communications by Defendants with Sight Sciences' employees, whether formerly or presently associated with or employed by Sight Sciences, and does not consent to or authorize any communication otherwise prohibited by all applicable rules of professional conduct.

Sight Sciences reserves the right to add or remove individuals from its disclosures and to object to the deposition or trial testimony of any individual identified in its disclosures, and to otherwise supplement its disclosures through the course of discovery. Accordingly, Sight Sciences identifies the following:

| Name | Address and Telephone | Subject Matter |
|------|----------------------|----------------|
| David Y. Badawi<br><br>*Named inventor of the Patents-in-Suit; founder and CTO of Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge regarding the conception and reduction to practice of the inventions disclosed by the Patents-in-Suit (as identified in Sight Sciences' operative Complaint). Knowledge of Ivantis's efforts to purchase intellectual property owned by Paul and David Badawi, including U.S. Pub. No. 2007/0298068. |
| Paul Badawi<br><br>*Named inventor of the Patents-in-Suit; founder and CEO of Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge regarding the conception and reduction to practice of the inventions disclosed by the Patents-in-Suit (as identified in Sight Sciences' operative Complaint). Knowledge regarding Sight Sciences' business, including Sight Sciences' sales, revenues, profits and the market in which Sight Sciences competes, including harm from infringement. Knowledge of Ivantis's efforts to purchase intellectual property owned by Paul and David Badawi, including U.S. Pub. No. 2007/0298068. |

| | | |
|---|---|---|
| Jim Rodberg<br><br>*Vice President of Finance and Corporate Controller, Interim CFO of Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge regarding Sight Sciences' business, including Sight Sciences' sales, revenues, profits and financial controls and financial statements. |
| Daniel O'Keeffe<br><br>*Vice President of R&D at Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge regarding Sight Sciences' design, development, specifications, and intended uses of Sight Sciences' stent products including the Helix. |
| Mark Papini<br><br>*Vice President of Glaucoma Sales at Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge of Sight Sciences' business, including sales of Sight Sciences products and competition between Sight Sciences and Defendants in the marketplace. |
| Tim Buckley<br><br>*Vice President of Pipeline Strategy and Surgical Marketing at Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge of Sight Sciences' business, including marketing of Sight Sciences products and competition between Sight Sciences and Defendants in the marketplace. |
| Chris Phelps<br><br>*Area Director Surgical Glaucoma (East) at Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge of sales of Sight Sciences products for treatment of glaucoma and competition between Sight Sciences and Defendants in the marketplace. |
| Aaron Capsel<br><br>*Vice President of Sales and Business Operations at Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge of Sight Sciences' business, including Sight Sciences' sales, revenues, profits and the market in which Sight Sciences competes, including harm from infringement. |
| Jaime Dickerson<br><br>*Vice President Strategic Clinical Evidence at Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge of protocols and submissions relating to investigations and trials pertaining to Sight Sciences' products. |

| Reay Brown<br><br>*Chief Medical Officer at Sight Sciences* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge of certain prior art stent products and related IP developed with Mary Lynch. |
|---|---|---|
| John C. Galanis<br><br>*Ophthalmologist* | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge of direct and induced infringement, including instructions given by Defendants and their agents regarding methods for implanting the Accused Product. |
| Dave Needleman<br><br>VP of OPS & Manufacturing Engineering at Sight Sciences | c/o Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304 | Knowledge of Sight Sciences manufacturing capacity for Sight's commercial products, its development, supply, and manufacturing agreements, and its product engineering operations. |
| Dave Van Meter<br><br>*President & CEO of Ivantis* | c/o Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, DC 20004 | Knowledge of the design, development, specifications, and intended use of the Accused Products. Knowledge of Ivantis's sales and marketing of the Accused Product, including Ivantis's revenues, costs, profits. Knowledge of Ivantis's efforts to purchase intellectual property owned by Paul and David Badawi, including U.S. Pub. No. 2007/0298068. Knowledge of Ivantis's acquisition by Alcon. |
| Brett Trauthen<br><br>*Chief Scientific Officer of Ivantis* | c/o Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, DC | Knowledge of the design, development, specifications, and intended use of the Accused Products.  Knowledge of Ivantis's efforts to obtain regulatory approval to market its products in the United States, and clinical trials involving the Accused Product. |
| Mike Chodzko<br><br>*Vice President of Marketing and Int'l Sales at Ivantis* | c/o Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, DC | Knowledge of Ivantis's sales, marketing, and promotion of the Accused Product. Knowledge regarding Ivantis's sales, revenues, and profits, as well as the market in which Defendants compete. |
| Frank Shields<br><br>*Vice President of US Sales at Ivantis* | c/o Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, DC | Knowledge of Ivantis's sales, marketing, and promotion of the Accused Product. Knowledge regarding Ivantis's sales, revenues, |

| | | and profits, as well as the market in which Ivantis competes. |
|---|---|---|
| Helene Spencer<br><br>*Vice President of Regulatory Affairs & Quality Assurance at Ivantis* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC | Knowledge of the design, development, specifications, and intended use of the Accused Products.  Knowledge of Ivantis's efforts to obtain regulatory approval to market its products in the United States, and clinical trials involving the Accused Product. |
| Richard Hope<br><br>*Vice President of Clinical & Medical Affairs at Ivantis* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC | Knowledge of the design, development, specifications, and intended use of the Accused Products.  Knowledge of Ivantis's efforts to obtain regulatory approval to market its products in the United States, and clinical trials involving the Accused Product. |
| James R. Shay<br><br>*Of Counsel, Shay Glenn LLP* | Shay Glenn LLP 2929 Campus Drive, Suite 225 San Mateo, CA 94403<br><br>(650) 287-2160 | Knowledge of Ivantis's efforts to purchase intellectual property owned by Paul and David Badawi, including U.S. Pub. No. 2007/0298068. |
| Doug Roeder<br><br>*Member of Ivantis Board of Directors* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | Knowledge of Ivantis's efforts to purchase intellectual property owned by Paul and David Badawi, including U.S. Pub. No. 2007/0298068. Knowledge of the acquisition of Ivantis by Alcon. |
| David J. Endicott<br><br>*CEO of Alcon* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | Knowledge of Alcon's acquisition of Ivantis and plans for the integration of Ivantis into the Alcon brand and portfolio.  Knowledge of Alcon's promotion, marketing, and sales of the Accused Product. |
| Cari Stone<br><br>*Vice President, Global Glaucoma at Alcon* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | Knowledge of Alcon's involvement in the manufacture, marketing, sale, and offer to sell the Accused Product, including Alcon's future plans regarding the same. Knowledge regarding Alcon's relationship with Ivantis. |
| Carrie Lennart | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. | Knowledge of Alcon's involvement in the manufacture, marketing, sale, and offer to sell the Accused |

| | | |
|---|---|---|
| *Surgical Glaucoma Manager at Alcon* | Washington, DC 20004 (202) 389-5000 | Product, including Alcon's future plans regarding the same. Knowledge regarding Alcon's relationship with Ivantis. |
| Theresa Klinge *Glaucoma Surgical Specialist at Ivantis* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | Knowledge of Alcon's involvement in the manufacture, marketing, sale, and offer to sell the Accused Product, including Alcon's future plans regarding the same. Knowledge regarding Alcon's relationship with Ivantis. |
| Dan Preast *Surgical Glaucoma Manager, Hydrus Microstent Sales at Alcon* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | Knowledge of Alcon's involvement in the manufacture, marketing, sale, and offer to sell the Accused Product, including Alcon's future plans regarding the same. Knowledge regarding Alcon's relationship with Ivantis. |
| Brooke Riddhagni Park *Surgical Glaucoma Manager at Alcon, Hydrus Microstent at Alcon* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | Knowledge of Alcon's involvement in the manufacture, marketing, sale, and offer to sell the Accused Product, including Alcon's future plans regarding the same. Knowledge regarding Alcon's relationship with Ivantis. |
| Carter Holland *Surgical Glaucoma Manager (Hydrus Microstent) at Alcon* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | Knowledge of Alcon's involvement in the manufacture, marketing, sale, and offer to sell the Accused Product, including Alcon's future plans regarding the same. Knowledge regarding Alcon's relationship with Ivantis. |
| Laurent Attias *Head of Corporate Development, Strategy, BD&L and M&A at Alcon* | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | Knowledge of Alcon's acquisition of Ivantis and plans for the integration of Ivantis into the Alcon brand and portfolio. |
| Any individuals or entities named by Ivantis in its initial disclosures, depositions, or discovery responses. | c/o Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, DC 20004 (202) 389-5000 | TBD |

**B.     DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND TANGIBLE THINGS**

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), Sight Sciences discloses the categories of documents, electronically stored information, and tangible things (collectively, "documents") that Sight Sciences may use to support its claims or defenses during this action include, without limitation, those relating to the following topics:

- the Patents-in-Suit, related patent applications, and prosecution file histories;

- conception and reduction to practice of the Patents-in-Suit;

- standing and ownership of the Patents-in-Suit;

- sales and financial data related to Sight Sciences' business;

- communications regarding Ivantis's efforts to purchase Sight Sciences' intellectual property;

- and documents analyzing the market in which Sight Sciences competes.

To the extent such documents exist, are in the possession of Sight Sciences, are not subject to any claim of privilege or work product or any third-party confidentiality restrictions, and are reasonably available for production, the documents are located at Sight Sciences' headquarters at 4040 Campbell Ave., Suite 100, Menlo Park, CA 94025, or at the offices of Sight Sciences' outside counsel, Cooley LLP, at 3175 Hanover St., Palo Alto, CA 94304.  Sight Sciences will make such documents available to Defendants, subject to Sight Sciences' objections, any protective order to be entered in this case, and the case schedule.

Sight Sciences reserves the right to add or remove documents from its Disclosures and to object to the production and/or use at trial of any documents described in its Disclosures.  Sight Sciences also reserves the right to rely on documents produced by Sight Sciences or third parties in this action to support its claims or defenses.

## C.    DAMAGES

Subject to the limitations of Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Sight Sciences seeks damages to compensate for the infringement, but in no event less than a reasonable royalty, for the use made of its inventions. Sight Sciences seeks damages due to lost profits on lost sales and/or market share, price erosion, and/or, at a minimum, a reasonable royalty, for Defendants' past and ongoing infringement of the Asserted Patents, and specifically for each infringing commercial manufacture, sale or offer for sale, or use of the Hydrus® Microstent in the United States and/or its territories, as well as infringement related to importation or exportation of the Hydrus Microstent to the extent an infringing act occurred in the United States and/or its territories, and injunctive relief prohibiting future infringement. Sight Sciences also seeks damages due to Defendants' inducement of others, including end user physicians who implant the Hydrus® Microstent, to infringe the Asserted Patents in the United States and/or its territories, as well as for Defendants' contributory infringement of the Asserted Patents. Sight Sciences also seeks pre- and post-judgment interest and enhanced damages, up to trebling of the damages award, due to the willfulness of Defendants' infringement, and an ongoing royalty in the event injunctive relief is not granted. Finally, Sight Sciences seeks a determination that this is an "exceptional case", based on Defendants' willful infringement and spoliation of evidence, which would entitle Sight Sciences to an award of its costs, expenses, and reasonable attorneys' fees.

Sight Sciences expects that its employees, Defendants' employees, and the third parties identified above will testify about the facts relating to the nature and extent of Defendants' and/or their customers' infringement, including the date of first infringement; Hydrus indications for use, infringing unit sales, revenues, market share, and pricing; and marketplace competition, including the circumstances in which physicians may substitute between Hydrus® Microstent and Sight

Sciences' OMNI Surgical System product. Sight Sciences further expects that its fact witnesses will testify about the existence and extent of competition between the Hydrus Microstent and OMNI Surgical System, sales of OMNI lost to Hydrus, OMNI indications for use, unit sales, revenues, market share, and pricing, and the effects of competition on Sight Sciences's business. Sight Sciences expects that its expert(s) will provide opinions regarding the nature and amount of Sight Sciences' damages, including lost profits on lost sales and market share and a reasonable royalty for all infringements that did not result in a lost sale for Sight Sciences.

Sight Sciences is entitled to damages due to lost profits on sales and/or market share in each instance where Defendants' infringement caused Sight Sciences to lose sales of its OMNI® Surgical System due to Defendants' infringement.  Sight Science's OMNI® Surgical System is FDA-approved "to reduce intraocular pressure in adult patients with primary open-angle glaucoma."  *See* https://www.accessdata.fda.gov/cdrh_docs/pdf20/K202678.pdf.  The Hydrus® Microstent is FDA-approved "for the reduction of intraocular pressure (IOP) in adult patients with mild to moderate primary open-angle glaucoma (POAG)."  *See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfPMA/pma.cfm?id=P170034.  Accordingly, every sale of the Hydrus® Microstent (which entered the market after the OMNI® Surgical System) could have gone to the OMNI® Surgical System.  Sight Sciences expects discovery to show that Sight Sciences is entitled to at least its market share percentage of Defendants' Hydrus® sales as lost profits damages.

Sight Sciences expects that discovery will reveal that (1) there exists demand for Hydrus® products practicing the patents-in-suit and for OMNI® products that directly compete with the infringing product, as evidenced at least by Defendants' and Sight Sciences's sales, profitability, and/or commercial success, (2) no acceptable non-infringing alternatives were available to

Defendants or their customers, as evidenced by the fact that Ivantis knew of Sight Sciences' Patents-in-Suit and chose to infringe notwithstanding Defendants' inability to purchase Sight's patent rights, (3) Sight Sciences would have had the manufacturing and marketing capacity to exploit the demand satisfied by the Hydrus, and (4) Sight Sciences' lost profits on lost sales as a result of Defendants' infringement are quantifiable to a reasonable degree of certainty. Because Sight Sciences' damages, costs, expenses, and fees are continually being incurred, because Defendants have not completed producing documents relevant to damages, depositions have not begun, and a computation of damages requires additional financial information about units of Hydrus Microstents sold, the profitability of those sales, Hydrus's market share, and Defendants' records of taking sales and market share at Sight Sciences' expense, a computation of damages is not possible at this time. Sight Sciences will provide a computation of lost profits damages in accordance with the scheduling order entered by the court and after it has obtained sufficient discovery from Defendants.

Under 35 U.S.C. § 284, Sight Sciences is entitled to damages adequate to compensate for Defendants' infringement and in no event less than a reasonable royalty. Sight Sciences expects that its employees, Defendants' employees, and third-parties will testify about the facts and circumstances underlying the calculation of reasonable royalty damages, and that its expert(s) will provide opinions regarding the nature and amount of reasonable royalties including but not limited to (i) the form of the royalty, e.g., lump-sum royalty, running royalty, per unit, or percentage of revenue; (ii) the determination of the royalty base related to the infringement; (iii) the determination of the reasonable royalty rate or amount(s); and (iv) the nature and extent of apportionment related to the royalty rate, the royalty base, and/or royalty amount. Sight Sciences further expects that its expert(s) will determine reasonable royalties using at least the *Georgia-*

*Pacific* framework (including a Hypothetical Negotiation construct as of the date of first infringement and consideration of the fifteen *Georgia-Pacific* Factors based on or understood in light of the facts and circumstances of the case) as well as potentially using other applicable methodologies including valuation methodologies and approaches such as the Market Approach, Income Approach, and Cost Approach; and/or Analytical Approach, and the consideration of comparable licenses (if any). For example, Sight Sciences expects that its experts will consider and address, among other issues, the terms and comparability of patent licenses that Defendants have taken from others such as Glaukos and the incremental economic benefits and value enjoyed by Defendants and their customers associated with the use of the patented inventions.

Sight Sciences' investigation into the relevant facts pertaining to its reasonable royalty damages is ongoing.  Defendants have yet to produce the information necessary to ascertain the date of the hypothetical negotiation, the total number of infringing Hydrus® devices that have been made, used, sold, offered for sale, imported or exported, and additional discovery is required for Sight Sciences to understand Defendants' licensing practices, the terms and conditions underlying the negotiation of patent license agreements to which Defendants are a party, and the sales and financial information for the Hydrus® product, which are necessary for Sight Sciences to fully assess the amount of reasonably royalty damages adequate to compensate Sight Sciences for Defendants' infringement of the Asserted Patents.  As such, Sight Sciences is presently unable to provide a computation of the reasonable royalty damages it seeks, but will do so at an appropriate time once it has received the discovery necessary to enable such a computation.

Finally, pursuant to 35 U.S.C. §§ 284 and 285, Sight Sciences is entitled to enhanced damages, up to three times the amount of any damages found or assessed, and an award of attorneys' fees and costs, because Defendants' infringement of the Patents-in-Suit has been and

continues to be willful, and because Defendants have engaged in wanton, malicious, and bad-faith behavior by knowingly infringing Sight Sciences' patents after Defendants' efforts to purchase the intellectual property underlying Sight Sciences' patents were rejected.

Sight Sciences incorporates herein by reference its responses to Interrogatory Nos. 5 and 6.

**D.    INSURANCE OR INDEMNITY AGREEMENTS**

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iv), Sight Sciences is presently unaware of any insurance agreements applicable to the asserted claims.

**E.    CONCLUSION**

These Disclosures are based on information reasonably available to Sight Sciences at this time, and by making these Disclosures: (i) Sight Sciences does not represent that it has identified every document, tangible thing, or witness possibly relevant to this lawsuit; (ii) Sight Sciences does not waive its right to object to the production of any document or tangible thing disclosed on the basis of privilege, the work-product doctrine, and/or any other valid objection; and (iii) Sight Sciences expressly reserves the right to amend, modify, or supplement these Disclosures as it learns new or different information.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

COOLEY LLP
Michelle S. Rhyu
David Murdter
Priyamvada Arora
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Orion Armon
1144 15th Street, Suite 2300
Denver, CO  80202-2686
(720) 566-4000

Allison E. Elkman
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
(202) 842-7800

Dated:  May 23, 2023                    *Attorneys for Sight Sciences, Inc.*

13

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on May 23, 2023, I caused a copy of

Plaintiff Sight Sciences, Inc.'s Second Amended Initial Rule 26(a)(1) Disclosures to be served on

the following counsel of record in the manner indicated below:

### BY E-MAIL

John W. Shaw
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

Gregg LoCascio
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
gregg.locascio@kirkland.com
justin.bova@kirkland.com
steven.dirks@kirkland.com
socrates.boutsikaris@kirkland.com

Kat Li
Jeanne M. Heffernan
Austin C. Teng
Ryan J. Melde
Kirkland & Ellis LLP
401 Congress Avenue
Austin, TX  78701
kat.li@kirkland.com
jheffernan@kirkland.com
austin.teng@kirkland.com
ryan.melde@kirkland.com

Ryan Kane
Nathaniel DeLucia
Laura Zhu
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
nathaniel.delucia@kirkland.com
laura.zhu@kirkland.com

_____ /s/ Melanie K. Sharp _____
Melanie K. Sharp (No. 2501)

30389875.1

# EXHIBIT 3
# (Excerpted)

| | |
|---|---|
| **From:** | Strosnick, Lauren |
| **To:** | Verbus, Brian A.; Teng, Austin C.; DeLucia, Nathaniel Louis; Armon, Orion; Bova, Justin; Rhyu, Michelle; Madrigal, Angela R.; *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com; Murdter, David; Vanderwall, Cameron C.; Wood, Alissa; Douglas, Jeannine; Gibbs, Tracy; z/Sight Sciences Ivantis; Radovanovich, Alyssa M. |
| **Cc:** | SKIvantis; #Alcon-SightSciences |
| **Subject:** | RE: Sight Sciences v. Ivantis - Deposition scheduling |
| **Date:** | Wednesday, June 14, 2023 7:39:50 PM |
| **Attachments:** | 2023.06.14 Stip to Extend Time_Cooley edits.docx |

> **This message is from an EXTERNAL SENDER**
> Be cautious, particularly with links and attachments.

Brian, please see our revisions to the stipulation in the attached.

Dr. Galanis will be located at the following address for his deposition: 231 S Bemiston Ave, Clayton (St. Louis), MO 63105.

Can you please let us know where Mr. Trauthen (Irvine), Mr. Schieber (Irvine), Mr. Chodzko (Orange County), and Mr. McAuley (Minneapolis) will be for their depositions, so we can prepare our notices?

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Wednesday, June 14, 2023 2:30 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Teng, Austin C. <austin.teng@kirkland.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

---

Lauren, please provide confirmation that we can add signatures and file, or any edits, by noon tomorrow.  Please also let us know where the witness will be for the deposition so we can prepare our notice.

Best,
Brian

**Brian A. Verbus**

--------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200

--------------------------------------------

brian.verbus@kirkland.com

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Monday, June 12, 2023 4:23 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Teng, Austin C. <austin.teng@kirkland.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Lauren, to advance this issue, attached is a draft joint stipulation.  Please let us know if you have any edits or if we can add signatures and file.

**Brian A. Verbus**

--------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200

--------------------------------------------

brian.verbus@kirkland.com

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Thursday, June 8, 2023 1:44 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Teng, Austin C. <austin.teng@kirkland.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>

**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Lauren, we can take the deposition of Dr. Galanis on July 6th beginning at 10:00 AM CT.  Please prepare a draft joint stipulation to take the deposition after the close of discovery and send to us for review.

**Brian A. Verbus**
--------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200
--------------------------------------------------
brian.verbus@kirkland.com

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Wednesday, June 7, 2023 3:45 PM
**To:** Verbus, Brian A. <brian.verbus@kirkland.com>; Teng, Austin C. <austin.teng@kirkland.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Hi Brian,

Dr. Galanis is not available for any full days other than June 29 within the discovery period.  He is available July 6 after 10am CT.

Thanks,
Lauren

Lauren Strosnick
Direct: +1 650 843 5065

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Tuesday, June 6, 2023 6:09 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Teng, Austin C. <austin.teng@kirkland.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>;

3

Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

Hi Lauren,

Regarding Dr. Galanis, we do not agree to take his fact deposition during expert discovery, and likewise cannot agree to a two-hour limitation on the deposition.  We previously offered June 23-24 as dates—if those work, please let us know.  If not, please provide alternate dates that will work in the fact discovery period.

We will follow up shortly regarding Mr. Chodzko.

Best,
Brian

**Brian A. Verbus**

---------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200
---------------------------------------------

brian.verbus@kirkland.com

---

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Tuesday, June 6, 2023 12:06 PM
**To:** Teng, Austin C. <austin.teng@kirkland.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>

**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Hi Austin,

Thanks – we will send a dial-in.  June 15 works for us for Mr. Mojica's deposition (please see the last paragraph of my email below, including the questions about Mr. Chodzko and Dr. Galanis).

Thanks,
Lauren

<span style="color:red">Lauren Strosnick</span>
Direct: +1 650 843 5065

---

**From:** Teng, Austin C. <austin.teng@kirkland.com>
**Sent:** Tuesday, June 6, 2023 7:49 AM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

[External]

---

Counsel,

We are available to continue the meet and confer tomorrow at 5 pm ET.

Please be prepared to address our request that Sight collect and produce documents from Reay Brown, Sight's Chief Medical Officer.  As we stated in our 5/26 email, we would expect Dr. Brown to be in possession of responsive, non-privileged materials for at least RFP Nos. 4, 6, 13, 17, 25-27, 31, 51, 58, 64-65, 68, 87-90, 92-94, yet Sight has not produced a single document with Dr. Brown as custodian.  Sight has an obligation to search for and produce relevant, responsive, non-privileged materials and it is not sufficient to state that Sight has produced documents from 10 custodians. 5/29 L. Strosnick email.  We requested to meet and confer on this issue but were not able to get to it on the parties' 6/5 discussion. During the meet and confer, please be prepared to give us your final position on this so we can get this in front of the court as soon possible, if necessary.

Additionally, as requested during David Badawi's deposition, please produce the unredacted version of the SBIR document plus its attachments. SGHT0026782-0026845.  If this is not the final

application that was submitted to the National Institutes of Health, please produce the final application that was submitted to the NIH, as demonstrated by SGHT0116857.

In addition, please let us know as soon as possible whether you can accommodate the scheduling change for the Mojica deposition, shifting it by one day to Thursday, June 15.

Regards,
Austin

**Austin Teng**
----------------------------------------------
**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101
----------------------------------------------
austin.teng@kirkland.com

---

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Monday, June 5, 2023 9:48 PM
**To:** DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Teng, Austin C. <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Counsel,

We propose the following days/times (with a preference for 4-8pm ET tomorrow) for our follow-up meet-and-confer to discuss Defendants' 5/24 objections to Sight's 30(b)(6) Topic Nos. 20, 34, 70, 73, and 77 to Ivantis (corresponding to Topic Nos. 19, 33, 68, 71, and 75 to Alcon), for which Defendants offered to meet and confer:

- Tues, 6/6 – noon-1pm, 2-3pm, or 4-8pm ET
- Wed, 6/7 – noon-2pm or 4:30-8pm ET

Please confirm your availability as soon as possible.  Below are Sight's positions regarding the relevance of Topic Nos. 20, 34, 70, 73, and 77:

- Topic 20 seeks corporate testimony regarding "[t]he facts and circumstances Relating to FDA regulatory approval of the Accused Product for use in patients, including but not limited to

Your pre-application communications and submissions, Your application for premarket approval of the Accused Product, and all post-approval communications and submissions Relating to post-approval studies, supplements, or labeling amendments." This Topic is highly relevant to the issues of direct and induced infringement; any representations by Defendants to the FDA regarding the structure and function of the Hydrus would be particularly relevant.

- Topic 34 seeks corporate testimony regarding "[t]he identities of all physician-consultants with whom You contract for work related to using the Hydrus Product, and the substantive work performed by such physician-consultants, including their production of videos regarding how to use the Hydrus Product." This Topic is also highly relevant to the issues of direct and induced infringement; for example, whether Defendants actively encouraged or directed said physician-consultants to use the Hydrus in an infringing manner.
- Topic 70 seeks corporate testimony regarding "[a]nalysis or valuations of acquisitions or potential acquisitions of companies or businesses Relating to MIGS devices and/or the Accused Products." This Topic is highly relevant to at least reasonable royalty damages, i.e., the amount Defendants would have paid to license the Asserted Patents as part of a hypothetical negotiation.
- Topic 73 seeks corporate testimony regarding "[a]ll communications regarding Sight Sciences, the Patents-in-Suit or this litigation that You have had with Your shareholders, agents, or the other Defendants in this lawsuit, including descriptions and assessments of the suit prior to Alcon's acquisition of Ivantis." This Topic is relevant to numerous issues in this litigation, including validity, infringement, willful infringement, and damages.
- Topic 77 seeks corporate testimony regarding "[a]ny communications You have had with Any third parties related to this litigation." This Topic is relevant to numerous issues in this litigation, including validity, infringement, willful infringement, and damages; examples of relevant third parties include investors, customers, physicians, and key opinion leaders.

On this follow-up meet-and-confer, please also be prepared to:
- Provide a date certain by which you will provide the privilege log of the Shay Glenn materials transferred to Alcon in June 2022;
- Provide dates for the depositions of Mr. McAuley and Mr. Shay;
- Provide your final position regarding the McAuley document request subpoena, and clarify whether and when Mr. McAuley was employed by Ivantis;
- Provide your final position regarding whether you will provide a corporate witness for 30(b)(6) Topics 5, 6, 32, 71, and 72; and
- Discuss Mr. Teng's 6/2 letter regarding clawback of Cari Stone materials.

As noted on today's meet-and-confer, it is critical that the parties reach closure on these issues as soon as possible, given the impending close of fact discovery and the amount of time already passed since the parties' initial discussion of certain issues. For example, it has been nearly **3 weeks** since the parties' 5/16 meet-and-confer where you stated you would provide your positions regarding the Shay Glenn materials, the narrowed McAuley document request subpoena, and dates for the McAuley and Shay depositions. Defendants' delay is prejudicing Sight's ability to discover facts relevant to, *inter alia*, its willful infringement claim and Ivantis's spoliation of evidence.

Regarding deposition scheduling, we confirm that we can take Brandon Mojica's deposition on June

15.  As discussed, please confirm whether Mr. Chodzko is available on June 12, 13, or 14; alternatively, please confirm that Defendants will not rely on his knowledge at trial.  Please let us know whether you will reconsider taking Dr. Galanis's deposition during the expert deposition stage (regarding both his expert and factual knowledge) in light of our discussion today that the scope of Dr. Galanis's relevant factual knowledge relates to discussions with Defendants' sales representatives.  Alternatively, if you would like to proceed with his deposition on this narrow topic, please let us know if you agree to limit that deposition to 2 hours.  Such an agreement would facilitate scheduling.

Thanks,
Lauren

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>
**Sent:** Friday, June 2, 2023 3:26 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Teng, Austin C. <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

---

Lauren,

Monday (6/5) at 11:30 am - 12:30 pm ET works for us.  Please circulate a dial-in.  Please also be prepared to discuss the issues raised in Mr. Teng's May 26, 2023 email, and your refusal to produce responsive documents from Dr. Brown.

Thanks,
Nathaniel

---

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Thursday, June 1, 2023 8:13 PM
**To:** DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Teng, Austin C. <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin

<justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya
<PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com
<msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com
<jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C.
<cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine
<jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis
<zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-
SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Nathaniel and Shaw Keller team,

We are available to meet and confer regarding the issues in our 5/29 email on the following
days/times (including weekend dates given limited counsel availability during the weekdays due to
depositions):

- Friday, 6/2 –11am-1:30pm ET
- Saturday, 6/3 – 11am-2pm ET
- Sunday, 6/4 – 11am-2pm ET
- Monday, 6/5 – 11am-12:30 or 1:30-2pm ET

Please let us know when works for you. We would appreciate a response as soon as possible, given
that we have reached out to you about various discovery issues on at least six separate occasions
since the parties' May 16 meet-and-confer over two weeks ago. (*See* emails from 5/18, 5/22, 5/24,
5/26, 5/29, 5/31 emails.)

We expect that local counsel and a decision-maker for Defendants will be present on this meet-and-
confer.

Thanks,
Lauren

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>
**Sent:** Thursday, June 1, 2023 11:42 AM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Teng, Austin C. <austin.teng@kirkland.com>;
Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle
<RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R.
<AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E.
<THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David
<dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa
<amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy
<tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich,

Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

Lauren,

We are not available today to meet and confer.  Please let us know your availability tomorrow (6/2) and Monday (6/5), and we will get back to you.

Thanks,
Nathaniel

---

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Wednesday, May 31, 2023 12:58 PM
**To:** Teng, Austin C. <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Counsel,

Sight confirms that it will sequester the documents you have identified below pursuant to FRCP 26(b)(5)(B) until our dispute regarding your claim of privilege is resolved.  We are available to meet and confer any time today, or tomorrow (6/1) at 8-9am PT, to discuss this issue and the other issues outlined in our 5/29 email.  Please let us know when you are available.

Thanks,
Lauren

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** Teng, Austin C. <austin.teng@kirkland.com>
**Sent:** Tuesday, May 30, 2023 7:28 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin

<justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

Counsel,

We are alarmed by your continued disregard for the Protective Order in this case regarding the claw-back of inadvertently produced privileged documents and demand your immediate compliance.

We notified you on May 25 that IVANTIS_SS_00222500, IVANTIS_SS_00222501, and IVANTIS_SS_00300832 were privileged and had been inadvertently produced in this case. (Email from A. Teng to Cooley dated 5/25/2023.)

After being notified that privileged documents had been inadvertently produced, Sight was obligated to "promptly return, sequester, or destroy the specified information and any copies it has," "not use or disclose the information until the claim is resolved," and "take reasonable steps to retrieve the information if the party disclosed it before being notified." Fed. R. Civ. P. 26(b)(5)(B); *accord* D69 ("Fed. R. Civ. P. 26(b)(5)(B) governs the proper procedure for the notification and return of Privileged Information when identified by the Producing Party.").

Your email response from last night does not return or confirm destruction of the specified information and any copies you have.  Instead, your email flouts the required procedure by ***re-accessing and quoting*** language from the "Attorney Notes" column of the clawed-back spreadsheets, further discloses the information ***by copying twelve others*** of Sight Sciences' counsel ***and a listserv***, and improperly ***uses*** the clawed-back information to argue why Sight does not believe the information is privileged.

Sight was not permitted to further access, use, and proliferate the spread of the privileged information in violation of the Protective Order and Federal Rules of Civil Procedure.

Please immediately confirm that Sight will comply with the PO and destroy these documents and any copies, including any references to the information in your discovery responses and your email from last night.  Please also notify us of every individual who received a copy of the information and confirm that they have destroyed it.

Ivantis and Alcon reserve all rights to raise this troubling issue with the Court.

11

Regards,
Austin

**Austin Teng**

------------------------------------------------

**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101

------------------------------------------------

austin.teng@kirkland.com

---

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Monday, May 29, 2023 10:07 PM
**To:** Teng, Austin C. <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin
<justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya
<PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com
<msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com
<jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C.
<cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine
<jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis
<zSightSciencesIvantis@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-
SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Counsel,

Please let us know when you are available for a meet-and-confer on **Wednesday, May 31**, regarding
the following issues:

- The Shay Glenn files transferred to Alcon in June 2022, which are responsive to at least RFP 3
  served over a year ago
- Whether you will provide the below privilege log entries in connection with the narrowed
  document requests to Steve McAuley identified in our 5/10 email and copied below for your
  convenience:
    - Privilege log entries for any document preservation notice relating to Sight
    - Privilege log entries for any documents or communications relating to the Asserted Patents
- Dates for depositions of Steve McAuley and Jim Shay on the non-privileged core issues
  identified in our 5/10 email and copied below for your convenience:
    - Jim Shay
        - The fact of whether and/or when Mr. Shay or others at his firm first became aware of Sight's
          U.S. Patent Appl. No. 11/475,523; U.S. Publ. No. 2007/0298068; 8,287,482; 9,370,443;
          9,486,361; 10,314,742; and/or 11,389,328
        - Mr. Shay's communications and interactions with Paul Badawi regarding any of the above-
          referenced application, publication, and/or patents
        - The fact of whether Mr. Shay or others at his firm monitored any of the above-referenced

12

application, publication, and/or patents

- ■ The fact of whether Mr. Shay or others at his firm communicated with Ivantis regarding Sight's patent portfolio, including when such communications occurred, how many times, to whom, and the nature of any such communications (e.g., call, document, meeting)
- ■ The fact of whether and/or when Mr. Shay or others at his firm prepared freedom to operate opinions relating to the above-referenced application, publication, and/or patents
- ○ Steve McAuley
  - ■ The fact of whether and/or when Mr. McAuley first became aware of Sight's U.S. Patent Appl. No. 11/475,523; U.S. Publ. No. 2007/0298068; 8,287,482; 9,370,443; 9,486,361; 10,314,742; and/or 11,389,328
  - ■ The fact of whether Mr. McAuley monitored any of the above-referenced application, publication, and/or patents
  - ■ The fact of whether Mr. McAuley communicated with Ivantis regarding Sight's patent portfolio, including when such communications occurred, how many times, to whom, and the nature of any such communications (e.g., call, document, meeting)
  - ■ The fact of whether and/or when Mr. McAuley prepared freedom to operate opinions relating to the above-referenced application, publication, and/or patents
- • Defendants' 5/24 responses and objections to Sight's 30(b)(6) deposition notices to Ivantis and Alcon
- • Defendants' 5/25 clawback of IVANTIS_SS_00222500, IVANTIS_SS_00222501, IVANTIS_SS_00300832
  - ○ The "Attorney Notes" stating **[quote redacted to avoid further copies]** is a non-privileged fact that does not reflect attorney-client communications. To the extent you contend any other portion of these documents is privileged, please identify such portion(s).
- • Defendants' 5/26 request for production of documents collected from Dr. Reay Brown
  - ○ On a previous meet-and-confer regarding Sight's RFP 156, Defendants refused to collect documents from the identified Alcon individuals, stating that this would be an end run-around Delaware's Paragraph 3 procedures for identifying the 10 custodians most likely to have discoverable information. Likewise, here, Sight already identified and collected documents from 10 custodians pursuant to Paragraph 3 of the Delaware Default Standard, and Defendants' request 4 weeks prior to the close of fact discovery is contrary to this established procedure. Additionally, to the extent Dr. Brown was involved in Sight Sciences' business in areas that were subject to discovery in this matter, Sight's search of non-custodial data sources would have captured any responsive documents or correspondence involving Dr. Brown. Accordingly, Sight will not undertake an additional collection of documents from Dr. Brown.

Please also confirm whether Kirkland will represent Mr. Rivero and/or Dr. Sheybani in connection with their deposition subpoenas served last week.

Additionally, we confirm that no one on Cooley's distribution list is involved in patent prosecution as defined in the PO (see 4/25 S. Dirks Email), and Cooley will continue to copy the Kirkland and Shaw Keller distribution lists on all correspondence going forward. Accordingly, we understand that Kirkland will copy zsightsciencesivantis@cooley.com on all correspondence going forward. Please confirm.

13

Thanks,
Lauren

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** Strosnick, Lauren
**Sent:** Friday, May 26, 2023 1:48 PM
**To:** 'Teng, Austin C.' <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Counsel,

With EOD approaching on the East Coast, we wanted to follow up on the third party subpoena issues noted in our 5/24 email below.  Shay Glenn's counsel has been inquiring about whether we need to keep them involved in this matter.  On the parties' 5/16 meet-and-confer, you stated you would get back to us on the Shay Glenn documents as well as the dates for the Jim Shay and Steve McAuley depositions.  We followed up on 5/18, 5/22, and 5/24, but have received no response.  Please confirm as soon as possible and no later than **EOD Tuesday, 5/30**, whether you will provide the requested productions or privilege log entries for the Shay Glenn documents, as well as the requested privilege log entries for the narrowed document requests to Steve McAuley (see 5/10 and 5/12 emails).  Please also provide dates for the Jim Shay and Steve McAuley depositions by EOD Tuesday.

David Murdter will attend Mr. Hadba's deposition on Wednesday.

We intend to have Dr. Galanis include his factual knowledge in his expert report.  We propose that Defendants depose Dr. Galanis during the expert deposition stage regarding both his expert and factual knowledge.  Please confirm whether you agree.

Thanks,
Lauren

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** Teng, Austin C. <austin.teng@kirkland.com>
**Sent:** Thursday, May 25, 2023 4:26 PM

14

**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

Counsel,

Below are a few updates regarding deposition scheduling:

- For Mr. Hadba's deposition on Wednesday, please let us know the name(s) of the attorney(s) attending in person and any dietary restrictions they may have.
- <mark>In light of your recently-amended initial disclosures, please provide dates for a fact deposition of John Galanis.</mark>
- We confirm that the depositions for Hadba, Weems, Kimball, Mojica, and Ainetchian depositions will occur at Kirkland's Dallas office.
- Ms. Stone's deposition will take place at Sheppard Mullin's Orange County office.
- We will follow up regarding whether Mr. Chodzko has any other availability.
- We confirm Mr. Capsel's deposition tomorrow (5/26) will begin at 9 AM MT.

Regards,
Austin

**Austin Teng**

------------------------------------------------
**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101
------------------------------------------------

austin.teng@kirkland.com

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Wednesday, May 24, 2023 10:58 PM
**To:** Teng, Austin C. <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C.

<cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine
<jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-
SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Counsel,

We accept June 20 for Todd Abraham, with an 8:00am PT start time.  Please provide alternate dates
for Mr. Chodzko.

Regarding locations, please confirm that the Hadba, Weems, Kimball, Mojica, and Ainetchian
depositions will occur at Kirkland's Dallas office.  Please also provide the location for the Stone
deposition at your earliest convenience.  As noted previously, the Capsel deposition will occur at
Cooley's Denver office; the Needleman, O'Keeffe, Buckley, and Paul Badawi depositions will occur at
Cooley's Palo Alto office; the David Badawi deposition will occur at Cooley's Chicago office; and the
Selnick deposition will occur at Cooley's NYC office.  We will provide locations for the Rodberg,
Phelps, Brown, and Papini depositions in due course.

Additionally, please advise by **Friday, May 26,** a date certain by which you will provide updates on
(1) Shay Glenn's June 2022 transfer of files to Alcon (*see* our 5/12, 5/18, and 5/22 emails), (2) the
narrowed document requests for Steve McAuley (*see* our 5/10 and 5/12 emails), and (3) deposition
dates for Jim Shay and Steve McAuley (*see* our 5/10, 5/12, 5/18, and 5/22 emails).

Thanks,
Lauren

Lauren Strosnick
Direct: +1 650 843 5065

**From:** Strosnick, Lauren
**Sent:** Monday, May 22, 2023 4:11 PM
**To:** 'Teng, Austin C.' <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova,
Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya
<PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com
<msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com
<jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C.
<cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine
<jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-
SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Counsel,

Please confirm you will produce the purchase price allocation(s) and valuation(s) responsive to RFP

90, as discussed on the May 16 meet-and-confer, no later than this Wednesday, May 24, in advance of the first UTC witness deposition (Chuck Marshall).  Please also provide an update by May 24 regarding Shay Glenn's June 2022 transfer of files to Alcon, including our request for you to search those files for at least Sight, Badawi, the Patents-in-Suit, and any related patent applications and publications, and produce any resulting non-privileged documents responsive to Sight's RFPs.

Thank you for the updates regarding depositions.  We will get back to you as soon as we can on Chodzko, Kimball, and Abraham, and will look for your dates for Shay and McAuley.

Thanks,
Lauren

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** Teng, Austin C. <austin.teng@kirkland.com>
**Sent:** Monday, May 22, 2023 10:42 AM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

Counsel,

We have several updates:
- Mike Chodzko is available for deposition on June 7 in Orange County, CA.
- As a reminder regarding Jasmine Ainetchian's deposition, she has a hard stop at 5:30 pm CT.
- We confirm Reay Brown for June 29.
- David Kimball will be available in Dallas on June 13 instead of Irvine.
- Regarding Todd Abraham, we do not agree to your conditions for the June 20 offered date. If June 16 and the proposed June 20 schedule are unworkable, we can look into additional dates beyond the discovery period.  Please let us know.

Best regards,
Austin

**Austin Teng**
-------------------------------------------------

**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101

--------------------------------------------------

austin.teng@kirkland.com

---

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Thursday, May 18, 2023 1:30 PM
**To:** Teng, Austin C. <austin.teng@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

Counsel,

We write to memorialize and follow up on a few items discussed during the 5/16 meet-and-confer:

- Please confirm in writing that you accept June 29 for Reay Brown
- We look forward to receiving proposed dates for Mike Chodzko, Jim Shay, and Steve McAuley
- Regarding the deposition of Todd Abraham: June 16th is unworkable because the attorney responsible for Mr. Abraham is also responsible for Ms. Ainetchian, who is appearing that same day. As to June 20th, Sight remains concerned that a hard stop at 2:30 pm PT could unfairly limit Sight's time on the record with the deponent. If Defendants are willing to agree (1) to an 8 am start time on June 20, and (2) that if Sight is unable to finish its questioning of Mr. Abraham due to the abbreviated day, that Sight may hold open the deposition and finish on a subsequent day, then Sight can accept June 20 for Mr. Abraham. If Defendants do not agree to these conditions, please provide an alternative day other than June 16 for either Mr. Abraham or Ms. Ainetchian.
- In light of your representations (and subject to the understanding that defendants will not call Mr. Attias as a witness at any trial or hearing in this matter), we accept Weems in lieu of Attias and will take that deposition on June 6
- We look forward to receiving your position regarding the Matthew Wolf deposition subpoena this week
- We look forward to your responses to our questions regarding Shay Glenn's June 2022 transfer of materials to Alcon
- Regarding Sight's 5/1 interrogatory responses:
  - Rog 12:  Sight further points Defendants to SGHT0166268 under Rule 33(d), as discussed during the meet-and-confer and will provide a supplement in due course.
  - Rog 13:  Sight will supplement its response to identify manufacturers of Helix prototypes.  Regarding your request for identification of the specific outside funding

sources for the Helix, please explain the relevance of this to the claims and defenses at issue.

- Rog 14:  Please provide any case law authority for your position that Sight must provide an element-by-element analysis, as requested in advance of the meet-and-confer.
- Rog 18:  Sight is investigating the issues raised during the conferral and expects to supplement its response to this interrogatory.

- As to deposition logistics, we confirm that the party furnishing a witness will provide a deposition location.  We will provide deposition locations for next week's depositions later today or tomorrow.
- Please assume that all depositions of witnesses furnished by Sight Sciences will be available to begin at 9 AM local time unless another time is agreed in advance.
  - Richard Plank's wife's birthday is on May 23, and he is taking her to a concert that evening, so his deposition must end by 4 PM local time. He is available to begin as early as 7 AM local time if you wish to start earlier.

Thanks,
Lauren

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** Teng, Austin C. <austin.teng@kirkland.com>
**Sent:** Thursday, May 18, 2023 8:15 AM
**To:** Armon, Orion <oarmon@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>
**Cc:** SKlvantis <SKlvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

---

Orion,

We agree that each side will provide a location for all of the witnesses it represents.

**Austin Teng**

---------------------------------------------
**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101
---------------------------------------------
austin.teng@kirkland.com

19

# Remainder of E-mail Chain Not Included

# EXHIBIT 4
# (Excerpted)



CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Transcript of Dr. John Galanis

**Date:** July 6, 2023
**Case:** Sight Sciences, Inc. -v- Ivantis, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

## Page 1

```
 1          UNITED STATES DISTRICT COURT
 2          FOR THE DISTRICT OF DELAWARE
 3
 4   SIGHT SCIENCES, INC.,
 5          Plaintiff,
 6     VS.                   NO. 21 1317 GBW SRF
 7   IVANTIS, INC., ALCON
     RESEARCH, LLC, ALCON VISION,
 8   LLC, AND ALCON INC.,
 9          Defendants.
10
11
12
13          C O N F I D E N T I A L
14          FOR ATTORNEYS' EYES ONLY
            REMOTE VIDEOTAPED DEPOSITION OF
15               DR. JOHN GALANIS
16          THURSDAY, JULY 6, 2023
17
18
19
20
21
22
23
24   STENOGRAPHIC REPORTER:  CHRISTA YAN, CSR NO. 14316, RPR
25
```

## Page 2

```
 1   APPEARANCES:
 2   FOR PLAINTIFF:
        COOLEY, LLP
 3      BY:  DUSTIN KNIGHT, ATTORNEY AT LAW
        3175 Hanover Street, Suite 300
 4      Palo Alto, California 94304 1130
          650  843 5000
 5      mrhyu@cooley.com
        dknight@cooley.com
 6
 7   FOR DEFENDANTS:
        KIRKLAND & ELLIS, LLP
 8      BY:  SOCRATES BOUTSIKARIS, ATTORNEY AT LAW
             BRIAN VERBUS, ATTORNEY AT LAW
 9      601 Lexington Avenue
        New York, New York 10022
10        212  446 4800
        jheffernan@kirkland.com
11
12
13   ALSO PRESENT:
14   CRYSTAL ALEXANDER, The Technician
     MANITA JOSEPH, The Videographer
15
16
17              oOo
18
19
20
21
22
23
24
25
```

## Page 3

```
 1          INDEX OF EXAMINATIONS
 2                                         PAGE
 3   MR. BOUTSIKARIS                        7
 4
 5
 6
 7
 8
 9
10              oOo
11
12
13
14
15
16   Witness's Signature                   132
17   Reporter's Certificate                133
18
19
20
21
22
23              oOo
24
25
```

## Page 4

```
 1              E X H I B I T S
 2   EXHIBIT     FOR IDENTIFICATION          PAGE
 3   Exhibit 1   John Galanis CV OCR Flat.pdf        17
 4   Exhibit 2   Photo GALANIS0000001 OCR Flat.pdf   95
 5   Exhibit 3   Photo GALANIS0000003 OCR Flat.pdf   112
 6   Exhibit 4   Photo GALANIS0000002 OCR Flat.pdf   114
 7   Exhibit 5   Photo GALANIS0000004 OCR Flat.pdf   122
 8   Exhibit 6   Photo GALANIS0000009 OCR Flat.pdf   122
 9   Exhibit 7   Photo GALANIS0000010 OCR Flat.pdf   125
10
11
12
13
14
15
16              oOo
17
18
19
20
21
22
23
24
25
```

**Page 5**

1    BE IT REMEMBERED that on THURSDAY, the 6TH DAY OF
2    JULY, 2023, at the hour of 8:38 A.M., Pacific Standard
3    Time, of said day, before me via video conference, CHRISTA
4    YAN, a Certified Shorthand Reporter, State of California,
5    appeared via video conference DR. JOHN GALANIS, who was
6    examined as a witness in said cause; that said transcript
7    format was prepared in accordance with California Code of
8    Regulations Section 2473.

13                    oOo

**Page 6**

1    THE VIDEOGRAPHER: Here begins Media Number 1 in the
2    videotaped deposition of Dr. John Galanis in the matter of
3    Sight Sciences, Inc., v. Ivantis, Inc., et al., in the
4    United States District Court for the District of Delaware,
5    Case Number 21-1317-GBW-SRF.
6    Today's date is July 6th, 2023. The time on the
7    video monitor is 8:38 a.m. The remote videographer for
8    today is Manita Joseph representing Planet Depos. All
9    parties of this video deposition are attending remotely.
10    Would counsel please voice identify themselves
11    and state whom they represent.
12    MR. BOUTSIKARIS: Morning. Socrates Boutsikaris,
13    Kirkland & Ellis, representing defendants in the case.
14    With me is Brian Verbus, also from Kirkland & Ellis
15    joining by Zoom.
16    And before we begin, I just want to state for the
17    record that we are proceeding with this deposition subject
18    to our objection to the untimely production made last
19    night and reserve all rights, including to preclude
20    testimony and reliance on that production and to seek
21    additional time.
22    MR. KNIGHT: Good morning. This is Dustin Knight with
23    Cooley on behalf of Dr. John Galanis.
24    And just to respond opposing counsel's
25    representation, we disagree that last night's production

**Page 7**

1    was untimely. And we reserve all rights to contest
2    opposing counsel's arguments attempting to preclude
3    testimony on last night's production as well as seeking
4    additional time.
5    THE VIDEOGRAPHER: The court reporter today is Christa
6    Yan representing Planet Depos. The witness will now be
7    sworn.
8                    DR. JOHN GALANIS,
9    the Witness, called on behalf of the Defendants, being
10    duly sworn to state the truth, the whole truth, and
11    nothing but the truth, testified on oath as follows:
12                    EXAMINATION
13    BY MR. BOUTSIKARIS:
14    Q    Good morning, Dr. Galanis. My name is Socrates
15    Boutsikaris, and I'll be taking your deposition today.
16    A    **Good morning.**
17    Q    Could you please state and spell your name for
18    the record?
19    A    **John Galanis, J-o-h-n, last name G-a-l-a-n-i-s.**
20    Q    And, Dr. Galanis, where are you currently
21    located?
22    A    **St. Louis, Missouri.**
23    Q    Have you ever been deposed before?
24    A    **Yes.**
25    Q    How many times?

**Page 8**

1    A    **I'm estimating 20, 25. I do a fair amount of**
2    **medical malpractice work.**
3    Q    Okay. So you're familiar with the ground rules
4    for a deposition, but just as a quick reminder, I'll go
5    over these before we begin. So if you need a break at any
6    point today, please just let me know. I would only ask
7    that if there's a question pending, you answer that
8    question and then we take a break.
9    A    **All right.**
10    Q    If you don't understand a question, please let me
11    know. Otherwise, I'll assume you understood the question.
12    Okay?
13    A    **Okay.**
14    Q    If there is something that's unclear, something
15    you would like me to clarify, I want you to let me know
16    that. Okay?
17    A    **Okay.**
18    Q    Is there any reason that you cannot give complete
19    and accurate answers at this deposition today?
20    A    **I don't believe so, no. No.**
21    Q    Is there anyone in the room with you right now?
22    A    **Yes. Mr. Knight is to my right here.**
23    Q    Okay. And is that it?
24    A    **Yes, sir.**
25    Q    Do you agree to let me know if anyone enters the

Transcript of Dr. John Galanis
Conducted on July 6, 2023

**9**

1  deposition?
2     A   I agree.
3     Q   Do you agree not to communicate with anyone
4  concerning the substance of your testimony during this
5  deposition?
6     A   I do agree.
7     Q   Do you have any programs open on your computer
8  other than Zoom?
9     A   No, I do not.
10    Q   Do you agree not to open any other programs
11 during the deposition?
12    A   I do.
13    Q   Do you have a mobile phone or a similar device
14 nearby?
15    A   I do.
16    Q   Do you agree not to use your phone or the similar
17 device while we're on the record?
18    A   I do.
19    Q   Do you have any paper documents with you today?
20    A   No.
21    Q   You understand that you're here to testify today
22 in your individual capacity?
23    A   I do.
24    Q   Did you do anything to prepare for today's
25 deposition?

**10**

1     A   I looked at some of the materials provided by
2  me -- to me by the attorneys at Cooley. Just briefly
3  reviewed to be familiar with the substance of their
4  information.
5     Q   And you said you met with attorneys from
6  Cooley. Do you have names that you met with?
7     A   Well, last evening I met with Mr. Knight. In the
8  past I have been on Zoom meetings with Mr. Knight as well
9  as Mr. González, Juan Pablo González, Michelle Rhyu, as
10 well as Mr. Armon, Orion Armon.
11    Q   And how many meetings have you had with counsel
12 in preparation for your deposition?
13    A   In preparation for the deposition, just
14 one yesterday afternoon.
15    Q   And for how long did you meet with counsel
16 yesterday?
17    A   Approximately three hours.
18    Q   Did you meet with anyone from Sight Sciences in
19 preparation for your deposition?
20    A   No.
21    Q   And what did you do exactly to prepare for your
22 deposition today when you met with counsel?
23    MR. KNIGHT: Dr. Galanis, I would caution you not to
24 divulge in privileged communications with attorneys, but
25 you can answer the question.

**11**

1     THE WITNESS: Just reviewed the facts of the case with
2  counsel, and then certain questions that I might be asked,
3  went over the ground rules of the deposition. That was
4  pretty much the extent of our meeting.
5     THE STENOGRAPHIC REPORTER: Hi, Counsel, Mr. Knight, I
6  think you may need to mute yourself because I think
7  because you're in the same room, I'm hearing a little bit
8  of echoing.
9     MR. KNIGHT: (Indicating.)
10    THE STENOGRAPHIC REPORTER: Thank you.
11 BY MR. BOUTSIKARIS:
12    Q   Dr. Galanis, did you meet with any experts in
13 preparation for your deposition?
14    A   No.
15    Q   Did you discuss your deposition with any
16 colleagues of yours?
17    A   No.
18    Q   When did you first become aware of this
19 litigation?
20    A   I believe it was January or February of this
21 year, 2023.
22    Q   Could you give me an understanding of how you
23 came to learn about the litigation?
24    MR. KNIGHT: Dr. Galanis, I would caution you that any
25 communications with counsel are subject to privilege, but

**12**

1  if you have an independent factual basis for answering
2  counsel's question, please go ahead and answer it.
3     THE WITNESS: I believe I got an email from I think it
4  was ATS Expert. They connect experts with attorneys and
5  said I might be a good fit for the case. They arranged a
6  Zoom call with Mr. Armon and Ms. Rhyu. I discussed my
7  qualifications. They seemed to appear that they wanted to
8  engage me for this work.
9  BY MR. BOUTSIKARIS:
10    Q   What materials did you review that were provided
11 by Cooley?
12    A   I believe they provided --
13    MR. KNIGHT: Objection; privileged.
14    I will instruct you not to answer.
15    THE WITNESS: I will not answer on the advice of
16 counsel.
17 BY MR. BOUTSIKARIS:
18    Q   Did any of the documents that you reviewed that
19 were provided to you by Cooley refresh your recollection
20 about the contents of those documents?
21    A   I'm sorry, could you restate that question? Not
22 sure exactly what you're asking me.
23    Q   Did any of the documents that you reviewed that
24 were provided to you by Cooley refresh your recollection
25 about the contents of those documents?

**41**

1  three implants in one day. At that time it was his
2  suggestion that we use the viscoelastic to deepen the
3  chamber.
4      Q   Do you recall what kind of viscoelastic you used?
5      A   I typically use Amvisc, and I would believe
6  that's what we used on that particular occasion.
7      Q   And do you recall the date of this occasion?
8      A   Not a specific date. I would say it would be in
9  the 2020 time frame.
10     Q   Why specifically did Mr. Keller come visit you
11  that day?
12     A   Specifically to come with me to surgery, to make
13  some suggestions as far as technique and suggestions
14  regarding PRLs and tips on how to implant the device.
15     Q   What specifically did Mr. Keller tell you about
16  using Hydrus with visco delivery?
17     MR. KNIGHT: Objection; asked and answered.
18     But go ahead.
19     THE WITNESS: He said to use the viscoelastic to
20  deepen the anterior chamber, to improve visualization and
21  more room for instrumentation.
22  BY MR. BOUTSIKARIS:
23     Q   Before he said that to you, did you ask him about
24  using Hydrus with visco delivery?
25     A   No.

**42**

1      Q   Did you ask if using Hydrus with visco delivery
2  was FDA approved?
3      A   No.
4      Q   What happened after this case where you met with
5  Mr. Keller?
6      A   We completed the surgery successfully. I told
7  him that I would see how the, you know, the patients did
8  postoperatively, and if I felt that I wanted to proceed, I
9  would -- with additional cases, I would let him know.
10     Q   Did you purchase any Hydrus Microstents as a
11  result of this case?
12     A   So I don't purchase the -- any of the stents or
13  any of the things in the surgery center. You know, we
14  have a number of surgeons, and some of us use different
15  devices. So the surgery center has a consignment of a
16  number of different devices, and the doctors will schedule
17  cases and whatever case -- whatever implant they require
18  will be delivered or, you know, pulled from the shelf. So
19  we don't pull the devices. The surgery center does.
20     Q   Counsel, would you be able to take a short break?
21     MR. KNIGHT: That works for us.
22     THE WITNESS: Sure.
23     THE VIDEOGRAPHER: We're going off the record at
24  9:52 a.m.
25     (Recess taken.)

**43**

1      THE VIDEOGRAPHER: We're back on the record at
2  10:08 a.m.
3  BY MR. BOUTSIKARIS:
4      Q   Dr. Galanis, earlier we spoke, and I want to
5  confirm, nobody has asked you to collect documents in this
6  case, correct?
7      A   That is correct.
8      Q   When were you notified you were being identified
9  as a fact witness?
10     A   Approximately seven to ten days ago.
11     Q   So the first time you learned that you were going
12  to be identified as a fact witness in this litigation was
13  seven to ten days ago; is that right?
14     A   That's correct. I think we had a video Zoom
15  call. Mr. Knight was involved, and he explained the
16  difference between a, you know, fact deposition versus the
17  expert, yes. That's correct.
18     Q   Have you received a litigation hold memo?
19     A   I have not.
20     Q   Have you deleted any documents since you have
21  been identified as a fact witness?
22     A   No.
23     Q   Have you deleted any text messages?
24     A   I've deleted some that were not relevant to this
25  case.

**44**

1      Q   Thanks for clarifying.
2      So back before we took a break, we were talking
3  about your interactions with Mr. Keller.
4      A   Correct.
5      Q   To be clear, the visco delivery that Mr. Keller
6  and you were talking about was in the anterior chamber; is
7  that correct?
8      A   That is correct.
9      Q   And the anterior chamber is separate from
10  Schlemm's canal?
11     A   It is.
12     Q   Did Mr. Keller ever discuss with you injecting
13  visco delivery into Schlemm's canal?
14     A   No.
15     Q   Have you ever personally used Hydrus with -- in
16  conjunction with delivering viscoelastic into Schlemm's
17  canal during a procedure?
18     A   I'm sorry, could you repeat that question?
19     Q   Did Mr. Keller ever discuss with you injecting
20  viscoelastic into Schlemm's canal?
21     A   No.
22     Q   Have you ever personally used Hydrus with visco
23  delivery in a procedure?
24     A   Yes.
25     Q   And more specifically, have you ever personally

Transcript of Dr. John Galanis
Conducted on July 6, 2023

93

1    MR. KNIGHT:  Objection; incomplete hypothetical.
2    THE WITNESS:  Well, if it didn't offer a benefit, I
3 wouldn't offer it in the first place.
4 BY MR. BOUTSIKARIS:
5    Q   Is it wrong to take credit for other people's
6 innovation?
7    **A   In general, sure, it would be wrong to take**
8 **credit for something someone else did.**
9    Q   Should doctors be prohibited from providing what
10 they believe to be the best treatment?
11    MR. KNIGHT:  Objection; calls for expert testimony,
12 speculation.
13    THE WITNESS:  Should we be prohibited in providing the
14 best treatment?  No.
15 BY MR. BOUTSIKARIS:
16    Q   It would be in the public's interest to have as
17 many safe and effective treatments on the market as
18 possible, right?
19    MR. KNIGHT:  Objection; calls for expert testimony,
20 calls for a legal conclusion, speculation.
21    THE WITNESS:  Well, we certainly need an adequate
22 amount of safe and effective procedures.  I don't think we
23 need a redundancy of them.
24    MR. BOUTSIKARIS:  So I'm now going to talk about the
25 documents that were produced last night.  So counsel,

94

1 again, repeats for the record that it's our position that
2 these documents are not admissible and that the production
3 was improper.  We are proceeding, but reserve all rights
4 to move to the Court for relief with respect to this
5 production.
6      So before Sight produced these documents last
7 night, we had agreed to three hours.  And that is what we
8 prepared for today.  Obviously, if we need more time, in
9 light of the production from last night, we ask that
10 counsel allows that.
11      Can you confirm, Counsel, that you'll extend time
12 to ask questions about these documents should we need it?
13    MR. KNIGHT:  Counsel is not prepared to confirm or
14 deny on the record.  We can take this issue offline to
15 discuss further, consistent with the parties' discussion
16 during the meet and confer prior to the deposition.
17    MR. BOUTSIKARIS:  Okay.  We'll proceed, and then we'll
18 see where this takes us.
19 BY MR. BOUTSIKARIS:
20    Q   Will you please pull up the document that's
21 marked as -- or that has the Bates stamp Galanis 000001?
22    THE TECHNICIAN:  Yes, stand by, Counsel.
23    MR. BOUTSIKARIS:  Please let me know when you have
24 this available and can see it.
25    THE STENOGRAPHIC REPORTER:  Is this being marked next

95

1 in order, Counsel?
2    MR. BOUTSIKARIS:  Yes, please mark this as Exhibit 2.
3      (Whereupon Deposition Exhibit 2 was
4      marked for identification.)
5    THE TECHNICIAN:  Yes, it will be marked as Exhibit 2.
6 And it is shared in chat, and I will be sharing it on the
7 screen as well.  And Dr. Galanis does have control.
8    THE WITNESS:  I do see the image.
9 BY MR. BOUTSIKARIS:
10    Q   Can you please rotate the figure so that we can
11 read it easily?
12    **A   Just a moment -- there we go, sorry.**
13    Q   Dr. Galanis, is this a picture of your phone?
14    **A   Yes, it is.**
15    Q   Who took this picture?
16    **A   Counsel and Mr. Knight did, yesterday afternoon.**
17    Q   Around what time was the picture taken?
18    **A   Oh, approximately --**
19    MR. KNIGHT:  Objection; the document speaks for
20 itself.
21    THE WITNESS:  The phone says 3:25 p.m.
22 BY MR. BOUTSIKARIS:
23    Q   Why was the picture taken?
24    **A   That would be up to my counsel to answer.  I**
25 **suppose that they felt it was relevant to this case.**

96

1    Q   Well, I'm asking you why you think the picture
2 was taken.
3    **A   Oh, I think they believe it was relevant to --**
4    MR. KNIGHT:  Objection; attorney-client privilege.
5      The witness is instructed not to answer.
6    THE WITNESS:  I'll defer to counsel on that.
7 BY MR. BOUTSIKARIS:
8    Q   Who is CK?
9    **A   I don't see CK here.**
10    Q   So at the top of the image that shows your
11 phone --
12    **A   Oh, I see, sorry.  CK would be Kenyon Catchings.**
13 **I guess his initials are reversed there.**
14    Q   And Mr. Catchings is the individual who we spoke
15 about earlier; is that correct?
16    **A   Yes, sir.**
17    Q   And what is your understanding of Mr. Catchings's
18 employer?
19    MR. KNIGHT:  Objection; vague.
20    THE WITNESS:  My understanding, that he is employed by
21 or has a contractual relationship in some manner with
22 Alcon.
23 BY MR. BOUTSIKARIS:
24    Q   But you're not aware of that relationship as
25 we've discussed earlier, correct?

Transcript of Dr. John Galanis
Conducted on July 6, 2023

97

1    A   I certainly have not seen any contract between
2  those two parties.  Although, I would have to say that my
3  rational supposition would be an individual promoting a
4  product for a company would have some sort of contractual
5  relationship with them.
6    Q   Okay.  And, again, as you testified earlier, this
7  is just an assumption you made?
8    A   That is correct.  It is an assumption I made.
9    Q   So this chain, this text chain on your phone has
10  a thanks at the top; is that right?
11    A   It has -- I'm sorry, has what at the --
12    Q   Says thanks at the top?
13    A   Oh, thanks, yes, mm-hmm.
14    Q   It looks like there's more material above it --
15  you can just make out the bottom of the gray bubble.  Do
16  you see that?
17    A   Yes, I do.
18    Q   Why did you start the production there?
19    A   I did not.  I gave my phone to counsel who
20  manipulated the image.
21    Q   So counsel manipulated your text messages and
22  selected just this frame out of the entirety of the text
23  thread between you and Mr. Catchings; is that right?
24    MR. KNIGHT:  Objection; speculation, attorney-client
25  privilege.

98

1      The witness is instructed not to answer.
2  BY MR. BOUTSIKARIS:
3    Q   Are you going to follow the advice of counsel?
4    A   I'm sorry, what did you say, that last sentence,
5  please?
6    Q   Are you going to follow --
7    A   Yes, I am.  I am going to follow the advice of
8  counsel, yes, sir.
9    Q   So could you please confirm that above this text
10  message that says thanks at the top, that there are more
11  texts before that, correct?
12    A   Yes, I can confirm that.
13    Q   Can you confirm that these texts above thanks in
14  this image have -- they have not been pictures that have
15  been taken of those text messages; is that right?
16    A   To my knowledge, there was just one photograph
17  taken.
18    Q   Is that the photograph that we're looking at?
19    A   Yes.
20    Q   What text messages appear above thanks in this
21  text thread?
22    A   I don't know -- I don't have a recollection of
23  that at this moment.
24    Q   Do you have an idea, roughly, of how many text
25  messages there might be between you and Mr. Catchings

99

1  above the thanks in this image here?
2    A   Estimate, in November, I would say maybe two or
3  three.  But it's, again, that's frankly, a rough estimate
4  or a guess.
5    Q   Would it be ten?
6    A   I doubt it would be that many, quite honestly.
7    Q   Have you ever deleted any text messages between
8  you and Mr. Catchings?
9    A   I deleted a couple last night.  I -- yeah.  But
10  mostly just the ones we just did last night.  He -- I sent
11  them the video, and he said have you ever done that.
12      And I go, yeah, we have.
13    Q   I'm sorry, you said that you deleted text
14  messages between you and Mr. Catchings last night?
15    A   I had some from last night, that I deleted.
16  But... because I inadvertently sent him this video here.
17  And so I deleted a couple of texts from that time.
18    Q   Why did you delete the pictures or video --
19    A   Because -- (simultaneous cross talk.)
20    Q   Strike that.
21      Let me reask the question.  Why did you delete
22  those text messages that you sent to Mr. Catchings?
23    A   Because I inadvertently sent him that video, and
24  I was actually trying to send it to counsel.  I was trying
25  to send that video.  He said, gee, can you send that to

00

1  me.  So I inadvertently sent it to Kenyon.  So I just
2  deleted it.
3    Q   So you sent the video that we're looking at here
4  in Galanis 1, you sent that video to counsel yesterday?
5    A   No.  He texted me and said, can you send it to
6  me, and —
7    MR. KNIGHT:  Objection; privileged.
8      The witness is instructed not to answer.
9    MR. VERBUS:  When he sent a video to you is not
10  privileged.  It's just a date.
11    MR. KNIGHT:  He was divulging communications between
12  his counsel and him, which is privileged.
13    MR. VERBUS:  Okay.  Well let's limit the answer then
14  to the date and time at which he provided that video to
15  counsel.
16    THE WITNESS:  So I provided the -- counsel texted me
17  and said can you send me the video link.  So I copied the
18  video link and inadvertently sent it to -- in this text
19  box, to Mr. Catchings.  And I thought, well, that's not
20  what I wanted to do.
21      So later on, counsel sent me an email, can you
22  confirm these are the ones on your phone.
23      I said yes.
24  BY MR. BOUTSIKARIS:
25    Q   So why did you delete the text message then?

Transcript of Dr. John Galanis
Conducted on July 6, 2023

32 (125 to 128)

25

1  product. I don't think he's doing a study per se. I
2  think he wants to know that I'm happy.
3      Q   Is Mr. Catchings giving you instructions or
4  receiving information from you about the product?
5      MR. KNIGHT: Objection; compound.
6      THE WITNESS: No. He's receiving my feedback of how
7  happy I am with how the product has performed.
8  BY MR. BOUTSIKARIS:
9      Q   Is a question about post-op for an off-label use
10 of a device something that would be relevant to collecting
11 data to pursue a new indication for a device?
12     MR. KNIGHT: Objection; speculation.
13     THE WITNESS: First of all, I don't think he was
14 collecting any data. He was asking me how did the post-op
15 look. And my answer would be the post-op looked fine. So
16 I don't think he's really -- that's not a data set.
17 That's just my impression, am I happy with how the
18 patients are doing.
19 BY MR. BOUTSIKARIS:
20     Q   Will you please mark as Exhibit 7 the document
21 with the Bates stamp Galanis 0000010.
22         (Whereupon Deposition Exhibit 7 was
23         marked for identification.)
24     THE TECHNICIAN: Stand by, Counsel.
25     MR. KNIGHT: Madam Court Reporter, can we have a time

26

1  check on the record?
2      THE STENOGRAPHIC REPORTER: I believe our
3  videographer, Manita, has that info for you right now.
4      THE VIDEOGRAPHER: One moment, please, Counsel.
5  BY MR. BOUTSIKARIS:
6      Q   Dr. Galanis, what was the date of this text
7  message that was on your phone when it was photographed?
8      A   Please enlarge that for me.
9          So, yeah, scroll down. That would be just
10 Tuesday, December 8th -- excuse me, 6th. And then
11 Thursday, December 8th.
12     Q   Did you discuss your Hydrus cases with
13 Dr. Catchings in response to his December 6th text?
14     A   Mr. Catchings. I don't recall specifically, no.
15 And being that I didn't respond to that text, it doesn't
16 look like I doubt that I did.
17     THE VIDEOGRAPHER: Sorry, to interrupt, Counsel. Time
18 is 3 hours and 13 minutes, just about.
19     MR. KNIGHT: Okay. Counsel, if you have a couple
20 questions to wrap it up on this exhibit, that's fine, but
21 I think we'll have to conclude the deposition afterward.
22     MR. VERBUS: Well, Counsel, as you know, we planned
23 this deposition. And we actually requested more than
24 three hours of time. Our position was you put this
25 witness on your initial disclosures. So we were entitled

27

1  to the full seven hours. We compromised with you at three
2  hours, but we got 18 additional documents at 10:30 p.m.
3  Eastern time last night. So we need additional time with
4  the witness to address those documents, which is what your
5  counsel said they wanted us to do on the meet and confer
6  this morning.
7          So are you going to give us more time today? Or
8  are you going to give us more time in the future before
9  his expert deposition? We are not going to agree to wait
10 until his expert deposition to conclude his fact
11 deposition.
12     MR. KNIGHT: Counsel, I'm not prepared to provide you
13 with additional time today. And we can further discuss
14 whether the additional time would be merited in the future
15 outside of the expert deposition, when we have all members
16 of our team and your team present to discuss.
17     MR. VERBUS: So to be clear, are you going to stop the
18 deposition today before we can get through the documents
19 that you produced at 10:30 p.m. last night?
20     MR. KNIGHT: That is correct. We are stopping the
21 deposition now.
22     MR. VERBUS: Okay. Are you going to let us finish
23 our -- the questions that we have on this specific exhibit
24 that we have up?
25     MR. KNIGHT: Yes. Yes, you can finish the

28

1  questioning.
2      MR. VERBUS: Okay. So we'll do that. And then just
3  so the record is clear, in addition to leaving the
4  record -- or the deposition open, for the reason we stated
5  earlier, in connection with the failure to produce all of
6  the texts in chain, we are likewise going to be leaving
7  the deposition open because we didn't have sufficient time
8  to ask questions relating to all of the documents that we
9  got last night.
10         And that is of course, pending any court ruling
11 on whether Sight can rely on those documents in the first
12 place.
13     MR. KNIGHT: And for the record, we disagree that
14 defendants are entitled to additional time to probe the
15 documents that were produced yesterday. Three hours is
16 what was agreed upon. And for the reasons that we stated
17 on the meet and confer, we believe that these three hours
18 are appropriate. But we are willing to further discuss
19 additional time to the extent that it makes sense in a
20 subsequent meet and confer between the parties.
21     MR. VERBUS: All right. Well, why don't we wrap up
22 our questions on this exhibit. And if at that point, you
23 are stopping the deposition, say so on the record so it's
24 clear. And then we will follow up with you.
25     MR. KNIGHT: Okay. Counsel can proceed.

Transcript of Dr. John Galanis
Conducted on July 6, 2023

29

1  BY MR. BOUTSIKARIS:
2    Q   So the question that was pending was did you
3  discuss your Hydrus cases with Dr. Catchings in response
4  to his December 6th text.
5    A   Mr. Catchings.  His December 6th text being, Do
6  you have five minutes today to talk about your Hydrus
7  case.  I do not recall specifically on that particular day
8  whether we had a discussion or not.
9    Q   So you can't say whether you did or you did not?
10   A   I do not recall any specific conversation, no.
11 Certainly not by text.  No.  At the time, I was giving it
12 very little thought.  I don't recall.
13   Q   What did you understand Mr. Catchings to mean
14 when he says he, quote, Will make sure that your office
15 only bills for the iStent and OMNI?
16   A   So on that particular case, we had difficulty
17 placing the Hydrus.  So I stopped the Hydrus procedure,
18 and I put an iStent.  So Mr. Catchings was saying, you
19 know, so we had a Hydrus which we did not implant.  And so
20 the question is, you know, generally speaking, they would
21 want the payment for that even though we didn't use it.
22 So he sort of, I suppose, gave -- I'm speculating here,
23 but he gave us credit for that.  And he said your office,
24 meaning my office, would bill for the OMNI and the iStent
25 which is the procedures that we ended up performing even

30

1  though we initially were going to do a Hydrus OMNI.
2       But because of technical surgical reasons, it was
3  easier to do the iStent.
4       MR. BOUTSIKARIS:  Okay.  I'm going to move on to the
5  next document now.  Will counsel permit me to proceed?
6       MR. KNIGHT:  No, we're going to stop the deposition
7  now.
8       MR. VERBUS:  Okay.  We understand your position.
9  We've stated ours both here and during the meet and confer
10 this morning.  So we will follow up and bottom out on
11 these issues.  Hopefully we can resolve some of them
12 without the need to go to the Court.
13      MR. KNIGHT:  Agreed.  We look forward to the further
14 conversations, Counsel.
15      THE STENOGRAPHIC REPORTER:  Mr. Knight, I want to
16 confirm you are ordering a rough and five business day
17 final?
18      MR. KNIGHT:  Could we have the rough draft rush?
19      THE STENOGRAPHIC REPORTER:  It's immediate.  And you
20 want the five business day final?
21      MR. KNIGHT:  Yes, that's fine.
22      THE STENOGRAPHIC REPORTER:  And, Mr. Verbus, we have
23 your standing order.
24      Go ahead, Ms. Videographer.
25      THE VIDEOGRAPHER:  This marks the end of the

3

1  deposition of Dr. John Galanis.  We are going off the
2  record at 1:08 p.m.
3       (WHEREUPON THE DEPOSITION WAS
4       CONCLUDED AT 1:08 P.M.)

32

Pease be adv sed I have ead the
fo ego ng depos t on, pages th ough
2  34, nc us ve
3  I he eby state the e a e

(Check one)_____ no co ect ons

_____ co ect ons pe attached

_____

DR JOHN GALANIS

--oOo--

33

```
1              R PORT R'S C RT F CAT
2
3        , Christa Yan, CSR No  14316, do hereby dec are
4        That, prior to being examined, the witness named in
     the oregoing proceeding was by me du y sworn pursuant to
5    Section 30( )(1) o  the Federa  Ru es o  Civi  Procedure,
     and the proceeding is a true record o  the testimony given
6    by the witness as accurate y as possib e   That said
     proceeding was taken down by me stenographica  y at the
7    time therein named and therea ter reduced to text under my
     direction
8
         That said witness was requested to review the
9    transcript and make any changes to the transcript as a
     resu t o  that review pursuant to Section 30(e) o  the
10   Federa  Ru es o  Civi  Procedure
         No changes have been provided by the witness
11   during the period a  owed
         The changes made by the witness are appended to
12   the transcript
         No request was made that the transcript be
13   reviewed pursuant to Section 30(e) o  the Federa  Ru es o
     Civi  Procedure
14
         urther dec are that   have no interest in the
15   event o  the action   dec are under pena ty o  perjury
     under the  aws o  the United States o  America that the
16   oregoing is true and correct
17      W TN  SS my hand this 12th day o  Ju y 2023
18
19
20
21
         Christa Yan, CSR NO  14316
22
23
24
25
```

# EXHIBIT 5

| From: | Gonzalez, Juan Pablo |
|---|---|
| To: | Verbus, Brian A.; Strosnick, Lauren; Armon, Orion; Rhyu, Michelle; Madrigal, Angela R.; *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com; Murdter, David; Vanderwall, Cameron C.; Wood, Alissa; Douglas, Jeannine; Gibbs, Tracy; z/Sight Sciences Ivantis; Radovanovich, Alyssa M. |
| Cc: | SKIvantis; #Alcon-SightSciences |
| Subject: | RE: Sight Sciences v. Ivantis -- Sheybani Subpoena |
| Date: | Friday, June 16, 2023 4:33:10 PM |

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Brian,

Thank you for your response. Sight Sciences maintains that Ivantis' position regarding the disparity between Dr. Galanis and Dr. Sheybani is unfounded, and that, in any event, the scope of Dr. Sheybani's relevant factual knowledge to the present matter exceeds Dr. Galanis'. However, in the spirit of judicial economy and to avoid needless motion practice, Sight Sciences will limit Dr. Sheybani's deposition to two hours on the record with the understanding that Ivantis will limit Dr. Galanis' deposition to three hours on the record. Without presently committing to any extension, Sight Sciences will be open to discussing extending Dr. Galanis' expert deposition if three hours on the record for his factual deposition prove insufficient.

Assuming this is acceptable to Ivantis, please provide Dr. Sheybani's availability for deposition.
All the best,
Juan Pablo

Juan Pablo González
+1 650 843 5095 office
jgonzalez@cooley.com

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Friday, June 16, 2023 10:44 AM
**To:** Gonzalez, Juan Pablo <jgonzalez@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis -- Sheybani Subpoena

**[External]**

Juan Pablo,

1

We disagree, for all the reasons I stated below and will not reiterate here, and your assertions below do not change that.  You indicated that you will agree to provide Dr. Galanis for a three hour fact deposition, and that if three hours proves insufficient, you are open to increasing the duration of his expert deposition to account for that.  With that representation, we can agree to a three hour fact deposition of Dr. Galanis on July 6th, and if additional time is needed we will reach out to coordinate that.

Dr. Sheybani's position has not changed.  The deposition will be a substantial disruption to his professional responsibilities, but he has offered two hours on the record as a compromise.  Please confirm your agreement.  If you will not agree, Dr. Sheybani reserves all rights, including to file a motion to quash or limit the subpoena.

Best,
Brian

**Brian A. Verbus**

------------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200

------------------------------------------------

brian.verbus@kirkland.com

---

**From:** Gonzalez, Juan Pablo <jgonzalez@cooley.com>
**Sent:** Friday, June 16, 2023 12:18 AM
**To:** Verbus, Brian A. <brian.verbus@kirkland.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis -- Sheybani Subpoena

Brian,

Defendants' focus on Dr. Sheybani's status as a third-party witness to dispute his parity with Dr. Galanis is misplaced, and misrepresents Dr. Sheybani's longstanding professional relationship with Ivantis. Defendants' documents demonstrate that Dr. Sheybani has been under contract with Ivantis (*e.g.*, IVANTIS_SS_00100347), has been designated as a Glaucoma KOL (*e.g.*, IVANTIS_SS_00413197), and has been used by Ivantis to train physicians regarding the proper use of the Hydrus (*e.g.*, IVANTIS_SS_00004716; IVANTIS_SS_00110718). The very fact that Counsel for Ivantis is representing

Dr. Sheybani speaks to the nature of Dr. Sheybani's relationship with Ivantis.

In contrast, Dr. Galanis' relevance as a fact witness is limited to his interaction with Ivantis sales representatives as an Ivantis customer, and his experience implanting the Hydrus outside the scope of any formal relationship with Ivantis. Thus, the scope of Dr. Sheybani's engagement with Ivantis far exceeds that of Dr. Galanis'.

Accordingly, Sight Sciences reiterates its objection to Ivantis' insistence to limit Dr. Sheybani's time on the record to a greater degree than Dr. Galanis', especially when Ivantis will have full opportunity to depose Dr. Galanis during expert discovery. Sight Sciences once again suggests that the parties agree to limit the depositions of both Dr. Sheybani and Dr. Galanis to three hours on the record. If three hours on the record prove insufficient, the parties can explore increasing the length of Dr. Galanis' expert deposition.

All the best,
Juan Pablo


**Juan Pablo González**
+1 650 843 5095 office
jgonzalez@cooley.com

---

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Wednesday, June 14, 2023 7:08 PM
**To:** Gonzalez, Juan Pablo <jgonzalez@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis -- Sheybani Subpoena

**[External]**

---

Juan Pablo,

Thank you for the response.  However, it does not address the distinction I raised in my email. Despite Sight's suggestion that there is parity between Dr. Galanis and Dr. Sheybani, these are two distinct issues.  Dr. Galanis is a person identified by Sight Sciences as a potential fact witness at trial in its initial disclosures.  Dr. Sheybani, on the other hand, is a third-party subpoenaed by Sight.

While we appreciate Sight's suggestion that "two hours on the record is sufficient for Ivantis to

3

depose Dr. Galanis regarding any factual testimony he may offer at trial," and while that may well end up being the case, that is not Sight's call to make.  As I said below, we will do our best to be efficient with his deposition and do not currently anticipate using a full seven hours, but we do not agree to limit his deposition to two hours.  In an effort to compromise and bring this issue to a close, we can agree to limit his deposition to five hours on the record.  And assuming Sight's representation is correct, our expectation is that we will not use all five hours.

With respect to Dr. Sheybani, we are hopeful we can reach agreement without the need for motion practice.  To that end, please confirm you agree to limit his deposition to two hours on the record, as anything beyond that would impose an undue burden on third-parties.  Once we have your agreement, we will coordinate with Dr. Sheybani to provide potential dates and times.  If you will not agree, Dr. Sheybani reserves all rights, including to file a motion to quash or limit the subpoena.

Best,
Brian

**Brian A. Verbus**

-------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200

-------------------------------------------

brian.verbus@kirkland.com

---

**From:** Gonzalez, Juan Pablo <jgonzalez@cooley.com>
**Sent:** Wednesday, June 14, 2023 4:48 PM
**To:** Verbus, Brian A. <brian.verbus@kirkland.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis -- Sheybani Subpoena

Brian,

Sight Sciences disagrees with Ivantis' characterization of Dr. Galanis' relevant factual testimony. As Sight Sciences already pointed out, Ivantis will have full opportunity to depose Dr. Galanis during expert discovery regarding any opinion he may offer at trial.

Like Dr. Sheybani, Dr. Galanis' relevant factual testimony is limited in scope and ought to be subject

4

to similar constraints. Sight Sciences believes that two hours on the record is sufficient for Ivantis to depose Dr. Galanis regarding any factual testimony he may offer at trial.

Recognizing your concern that 2 hours may not be sufficient, we propose that both Dr. Sheybani and Dr. Galanis' depositions be limited to three hours on the record.

All the best,
Juan Pablo

Juan Pablo González
+1 650 843 5095 office
jgonzalez@cooley.com

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Tuesday, June 13, 2023 7:22 AM
**To:** Gonzalez, Juan Pablo <jgonzalez@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis -- Sheybani Subpoena

[External]

Juan Pablo,

Thank you for confirming the 6/16 deadline for Dr. Sheybani's objections and responses. With respect to the 2-hour limitation, we do not agree to condition a 2-hour limitation for Dr. Sheybani's deposition on a corresponding limitation on the deposition time for Dr. Galanis. Sight Sciences supplemented its initial disclosures to add Dr. Galanis on May 23, 2023, presumably because it anticipates calling him to offer factual testimony at trial. Defendants subsequently asked for dates for his deposition, and we are entitled to take it without limitation. We do recognize he is a practicing doctor, will do our best to be efficient with that deposition, and do not currently anticipate using a full seven hours. But we cannot agree to a 2-hour limitation on the deposition of a witness Sight has indicated it may call at trial.

In contrast, Dr. Sheybani is a third-party physician and professor whom Sight subpoenaed. Pursuant to Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and given Dr. Sheybani is a practicing doctor and professor, the two-hour limitation is necessary to do so here.

5

Please confirm you agree to a 2-hour limitation on Dr. Sheybani's deposition without separate conditions.

Best,
Brian

**Brian A. Verbus**

-----------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200

-----------------------------------------------

brian.verbus@kirkland.com

---

**From:** Gonzalez, Juan Pablo <jgonzalez@cooley.com>
**Sent:** Monday, June 12, 2023 7:05 PM
**To:** Verbus, Brian A. <brian.verbus@kirkland.com>; Strosnick, Lauren <lstrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@cooley.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis -- Sheybani Subpoena

Counsel,

Sight Sciences agrees to an extension for Dr. Sheybani to serve objections and responses to the subpoena by June 16, 2023.

Furthermore, Sight Sciences will also agree to limit Dr. Sheybani's deposition to two hours on the record on condition that Ivantis offers the same courtesy to Dr. Galanis, who is also a practicing physician and who Ivantis will have the opportunity to depose during expert discovery.

All the best,
Juan Pablo

**Juan Pablo González**
+1 650 843 5095 office
jgonzalez@cooley.com

---

6

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Thursday, June 8, 2023 3:15 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; Armon, Orion <oarmon@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** Sight Sciences v. Ivantis -- Sheybani Subpoena

**[External]**

Counsel,

Kirkland represents Dr. Sheybani in connection with the subpoena you served on him in this case. Please direct all correspondence relating to that subpoena to us.

As an initial matter, please confirm you agree to an extension for Dr. Sheybani to serve objections and responses to the subpoena to June 16, 2023.

With respect to the deposition, Dr. Sheybani is not available on June 28, 2023. As you know, Dr. Sheybani is a practicing physician, university professor, and non-party to this Action. Please confirm Sight Sciences agrees to limit his deposition to two hours on the record. With that confirmation, we will coordinate with Dr. Sheybani to propose new dates for the deposition.

Best,
Brian

**Brian A. Verbus**

--------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200
--------------------------------------------

brian.verbus@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-VAC-SRF |
| | ) | |
| IVANTIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT IVANTIS INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-7)

Pursuant to Federal Rules of Civil Procedure Rules 26 and 33 and the Local Rules of The District Court for the District of Delaware, Defendant Ivantis, Inc. ("Ivantis" or "Defendant") hereby requests that Plaintiff Sight Sciences, Inc. ("Sight Sciences" or "Plaintiff") answer the following interrogatories within thirty (30) days of service. These interrogatory requests are deemed to be continuing and impose upon Plaintiff the obligations stated in Federal Rule 26.

## DEFINITIONS

1.      "Ivantis" or "Defendant," shall mean Ivantis, Inc., its present and former officers, directors, employees, counsel, agents, consultants, and representatives, and includes affiliates, assignees, predecessors in interest, or successors in interest.

2.      "Sight Sciences," "Plaintiff," "You," or "Your" shall mean to Plaintiff Sight Sciences, Inc., its present and former officers, directors, employees, counsel, agents, consultants, representatives, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on their behalf, including without limitation any inventors of the Asserted Patents.

3.      "This Case" or "This Action" refers to the above-captioned action, *Sight Sciences, Inc. v. Ivantis, Inc.*, No. 21-cv-1317-VAC (D. Del.).

4.      "Complaint" refers to the Complaint filed in This Action (Dkt. 1) on September 16, 2021, and any amendments thereto, including Sight Sciences' First Amended Complaint (Dkt. 19), filed on December 15, 2021.

5.      "Ivantis' Counterclaims" refer to the Counterclaims (Dkt. 22) filed by Defendant in This Action, and any amendments thereto.

6.      "Asserted Patents" means U.S. Patent Nos. 8,287,482; 9,370,443; 9,486,361; and 10,314,742 and the respective patent applications, including any applications to which they claim priority, that led to each as well as any other patent that Sight Sciences contends Ivantis infringes.

7.      "Hydrus" shall mean the Ivantis Hydrus® Microstent, as identified in the Complaint.

8.      "Accused Products" shall mean the Hydrus and any other device or system that Sight Sciences alleges infringes the Asserted Patents in This Action.

9.      "Asserted Claim" means each claim of the Asserted Patents that Sight Sciences alleges, in the Complaint or in subsequent pleadings or disclosures, is infringed by one or more of the Accused Products, either directly or indirectly.

10.     "Identify" and "Identity" and "Identification" shall mean as follows:

(a)     When used in these interrogatories with respect to a natural person, "Identify" or "Identity" or "Identification" shall mean to set forth his or her (i) full name, together with any known aliases or nicknames; (ii) present address or, if unknown, the last known address and the date when such person is last known or believed to have resided at that address; (iii) present known business and residence telephone number or, if unknown,

the last known business and residence telephone number and date when such person is last known or believed to have had that telephone number; and (iv) the present known employer, employment position or title, and business address or, if unknown, the last known information in each of these respects.

(b)    When used in these interrogatories with respect to an entity, "Identify" or "Identity" or "Identification" shall mean to set forth its (i) full name; (ii) a description of the type of entity (e.g., corporation, partnership, unincorporated association, etc.); and (iii) its present or last known business address and telephone number.

(c)    When used in these interrogatories with respect to a Document, "Identify" or "Identity" or "Identification" shall mean to set forth sufficient detail to enable Defendant to locate the Document, including (i) its nature or type (e.g., letter, memorandum, report, invoice, bill of lading, etc.); (ii) the date appearing on such Document, or if no date appears thereon, the approximate Date the Document was prepared; (iii) its author(s), including every person who prepared any portion of the Document; (iv) its addressee(s) and all recipients of a copy; (v) its title and general subject matter; and (vi) the present location and custodian of the original and each non-identical copy thereof, or, if unknown, the last known location and custodian of each; (vii) its Bates number range; (viii) if such Document existed at one time but does not presently exist, the reason why it no longer exists and the identity of the last Person known to have custody of it; and (ix) if the Document is in a language other than English, whether a partial or complete English translation of the Document exists.

(d)    When used in these interrogatories with respect to a Thing that is not a Document (including any products manufactured, developed, sold, or imported by You),

"Identify" or "Identity" or "Identification" shall include, to the extent known or obtainable, sufficient detail to enable Defendant to locate the Thing, including (a) the product names, product numbers, version numbers, and revision numbers; (b) the dates when the Thing first was introduced for sale and first was sold; and (c) all team names or project titles used in connection with the design, development, testing, or engineering of that tangible Thing.

11.    "Person" shall mean any natural person, alive or deceased, and any business, legal or governmental entity or association.

12.    "Document" shall mean all materials, as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, any handwritten, printed, typed, recorded photographic, and computer-generated materials of any kind or nature, however produced or reproduced, as well as material stored electronically, electromagnetically, mechanically, optically, and electronic recordings or transcripts thereof, and includes drafts, revisions of drafts, preliminary and preparatory materials, originals, copies, emails, attachments, exhibits, removable notes, and all translations and summaries thereof.

13.    "Thing" is defined to be synonymous in meaning and equal in scope to the usage of the term "tangible things" in Federal Rule of Civil Procedure 34(a)(1)(B). This meaning includes any tangible object of any kind and nature other than a Document, including prototypes, models, and physical specimens thereof.

14.    "Prior Art" shall mean the subject matter described in 35 U.S.C. §§ 102 or 103, including without limitation all patents, patent applications, printed publications, Documents, things, or activities, including public uses, disclosures, sales or offers to sell, or any other information described in 35 U.S.C. §§ 102 or 103 that could relate to the validity of the Asserted Patents.

15.     "Date" means the exact day, month, and year, if ascertainable, or, if not, the closest approximation thereto that can be made by means of a relationship to other events, locations, or matters. Identify each instance in which the given date is an approximation, and state Your bases for making such approximation.

16.      "Employee" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the designated entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

17.     The terms "concerning" and "relating to" shall mean, in whole or in part, referring to, describing, evidencing, constituting, containing, comprising, referring to, embodying, connected to, reflecting, analyzing, showing, discussing, identifying, illustrating, stating, regarding, supporting, refuting, rebutting, responding to, commenting on, evaluating, about, in respect of, mentioning, dealing with, or in any way pertaining to, either explicitly or implicitly.

18.     The singular form of each word shall be interpreted in the plural, and vice versa, so as to give each request the broadest possible scope.

19.     Regardless of the tense employed, all verbs shall be read as applying to past, present, and future as necessary to make any phrase more, rather than less, inclusive.

20.     The conjunctives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

21.     "State," "describe," and "describe in detail" mean to state and describe, with specificity, each and every fact, ultimate fact, circumstance, incident, act, omission, event, date, and/or legal contention pertaining to the matter(s) inquired into in the interrogatory.

## **INSTRUCTIONS**

1.      If You assert a claim of privilege in objecting to any Interrogatory or any portion thereof, You shall provide the following information with respect to that portion of the Interrogatory as to which You assert the claim of privilege: (a) the basis on which You claim the privilege; (b) the type of information withheld; (c) the general subject-matter of the information withheld.

2.      If You have a good faith objection to any interrogatory or any part thereof, You shall state the specific nature of the objection and whether it applies to the entire interrogatory or to a part of the interrogatory. If You object to any part of an interrogatory, You should identify the part objected to and provide a response to the remaining unobjectionable part. All grounds for an objection to an Interrogatory shall be stated with specificity.

3.      If You object to any Interrogatory on the ground that it is vague and/or ambiguous, identify the particular words, terms, or phrases that You assert make such request vague and/or ambiguous and specify the meaning You actually attribute to such words, terms, or phrases for purposes of Your response.

4.      If You claim that Information requested or required in response to a given Interrogatory is also responsive to another interrogatory, You may not answer the interrogatory by referring to the answer to another interrogatory unless the answer to the interrogatory being referred to supplies a complete and accurate response to the interrogatory being answered.

5.      If any Document is produced in response to an interrogatory below, then pursuant to Federal Rule of Civil Procedure Rule 33(d), designate the interrogatory or interrogatories to which each such document responds and identify the document by Bates number.

6.      These Interrogatories are continuing in nature. If, after answering the Interrogatories, You obtain or become aware of any information or answers that are responsive to

these Interrogatories, You shall promptly amend or supplement the answers to these Interrogatories as required under Federal Rule 26(e).

7.      If You cannot answer the Interrogatories in full after exercising due diligence to secure the full information to do so, state an answer to the extent possible, specifying the reasons for Your inability to answer the remainder, and stating whatever information or knowledge You have concerning the unanswered portion.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

For each Accused Product You contend has infringed or is infringing, explain the factual and legal basis for Your contention that such Accused Product infringed or infringes each Asserted Claim, including providing a claim chart detailing how each element of each Asserted Claim allegedly covers the Accused Product, identification of any limitations allegedly satisfied under the doctrine of equivalents, and whether You allege that Defendant directly infringed or infringes, contributorily infringed or infringes, and/or induced or induces infringement of each Asserted Claim, and Your factual and legal basis for Your contentions, including who the alleged direct infringers are for any indirect infringement allegations.

### **INTERROGATORY NO. 2:**

For each claim of the Asserted Patents, explain in detail each objective indicia of nonobviousness, if any, that You contend supports the validity of each claim, including any alleged commercial success and nexus to the claimed subject matter, any alleged long-felt need in the art for the claimed subject matter, any alleged failure of others to solve the problems addressed by the claimed subject matter, any alleged skepticism or disbelief by any Person relating to the claimed subject matter, any alleged positive recognition in the industry for the claimed subject matter, any

alleged copying of the claimed subject matter, and any alleged unexpected results produced by the claimed subject matter.

**INTERROGATORY NO. 3:**

Identify the priority date that Sight Sciences alleges each claim of each Asserted Patent is entitled to and the complete factual and legal bases for Your assertions that each claim of each Asserted Patents is entitled to that priority date.

**INTERROGATORY NO. 4:**

For each Asserted Claim, state when You contend that Ivantis's alleged infringement began and explain how You first became aware of the alleged infringement by each Accused Product.

**INTERROGATORY NO. 5:**

Describe all factual and legal bases for Your claim that Sight Sciences is entitled to monetary relief, including but not limited to damages, from Ivantis, including each legal theory under which such monetary relief is sought and the calculations supporting all monetary relief that You claim.

**INTERROGATORY NO. 6:**

State the complete factual and legal bases for Your contention that Ivantis willfully infringed the Asserted Patents as alleged in Sight Sciences First Amended Complaint, and describe in detail the facts that support each basis, including but not limited to the complete factual and legal bases for Sight Sciences' contention that Ivantis had knowledge or was "willfully blind to the existence of the Asserted Patents" as asserted in the Complaint.  *See* Dkt. 19, at ¶¶ 25, 30.

**INTERROGATORY NO. 7:**

Identify each Person or entity that You, any prior assignee of the Asserted Patents, or anyone else You are aware of, have communicated with in an attempt to license, sell, or assign any part of the Asserted Patents, including any offer to license, sell, or assign and any negotiations or discussions regarding a license or sale of the Asserted Patents, and (i) describe the substance and result of those communications, offers, negotiations and/or discussions; (ii) identify all Documents relating to such communications, offers, negotiations and/or discussions; and (iii) identify all licenses, assignments, agreements, and/or contracts relating to the Asserted Patents.

|  |  |
|---|---|
|  | /s/ Andrew E. Russell |
|  | John W. Shaw (No. 3362) |
|  | Andrew E. Russell (No. 5382) |
|  | Nathan Hoeschen (No. 6232) |
| OF COUNSEL: | SHAW KELLER LLP |
| Gregg LoCascio | I.M. Pei Building |
| Justin Bova | 1105 North Market Street, 12th Floor |
| KIRKLAND & ELLIS LLP | Wilmington, DE 19801 |
| 1301 Pennsylvania Avenue, N.W. | (302) 298-0700 |
| Washington, DC 20004 | jshaw@shawkeller.com |
| (202) 389-5000 | nhoeschen@shawkeller.com |
|  | *Attorneys for Defendant* |
| Kat Li |  |
| KIRKLAND & ELLIS LLP |  |
| 401 Congress Avenue |  |
| Austin, TX  78701 |  |
| (512) 678-9100 |  |
|  |  |
| Ryan Kane |  |
| KIRKLAND & ELLIS LLP |  |
| 601 Lexington Avenue |  |
| New York, NY 10022 |  |
| (212) 446-4800 |  |

Dated: April 22, 2022

## CERTIFICATE OF SERVICE

I, Andrew E. Russell, hereby certify that on April 22, 2022, this document was served on

the persons listed below in the manner indicated:

**BY EMAIL**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Michelle S. Rhyu, J.D., Ph.D.
David N. Murdter
Deepa Kannappan
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
dmurdter@cooley.com
dkannappan@cooley.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

10

# EXHIBIT 7
# (Excerpted)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.: 21-1317-GBW-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | █████████████████ |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

**SIGHT SCIENCES, INC.'S**
**THIRD SUPPLEMENTAL RESPONSES AND OBJECTIONS TO**
**DEFENDANT IVANTIS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-2, 4-7)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Sight

Sciences, Inc. ("Plaintiff" or "Sight Sciences") hereby supplements its responses to Defendant

Ivantis, Inc.'s ("Defendant" or "Ivantis") First Set of Interrogatories (the "Interrogatories")

served on April 22, 2022. On August 1, 2022, Sight Sciences served a Second Amended

Complaint adding Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively,

"Alcon") as defendants. D.I. 59. Thus, "Defendants" as used herein refers to Ivantis and Alcon

collectively.

**GENERAL RESPONSES**

1.      Sight Sciences' response to the Interrogatories is made to the best of Sight

Sciences' present knowledge, information, and belief. This response is at all times subject to

such additional or different information that discovery or further investigation may disclose and,

while based on the present state of Sight Sciences' recollection, is subject to such refreshing of

recollection, and such additional knowledge of facts, as may result from Sight Sciences' further

discovery or investigation.

2.      Sight Sciences reserves the right to make any use of, or to introduce at any

19.     Sight Sciences objects to each of the instructions in paragraphs 18-20 of Defendants' Interrogatories regarding the use of the singular versus the plural, "any" versus "all," and the words "and" and "or." Defendants' usage statements would render the task of interpreting Defendants' Interrogatories unduly burdensome and would render Defendants' Interrogatories vague, ambiguous, unintelligible, and compound. Sight Sciences will respond to each Interrogatory according to its ordinary meaning, without reference to Defendants' usage statements.

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

Without waiving or limiting in any manner any of the foregoing General Objections, but rather incorporating them into each of the following responses to the extent applicable, Sight Sciences responds to the specific Interrogatories in Defendants' First Set of Interrogatories as follows:

### INTERROGATORY NO. 1

For each Accused Product You contend has infringed or is infringing, explain the factual and legal basis for Your contention that such Accused Product infringed or infringes each Asserted Claim, including providing a claim chart detailing how each element of each Asserted Claim allegedly covers the Accused Product, identification of any limitations allegedly satisfied under the doctrine of equivalents, and whether You allege that Defendant directly infringed or infringes, contributorily infringed or infringes, and/or induced or induces infringement of each Asserted Claim, and Your factual and legal basis for Your contentions, including who the alleged direct infringers are for any indirect infringement allegations.

### RESPONSE TO INTERROGATORY NO. 1

Sight Sciences incorporates by reference its General Responses and Objections. Sight Sciences objects to this Interrogatory as premature because the Court has not yet entered a claim construction order in this case, and thus the scope of the Asserted Claims is not yet defined. Sight Sciences further objects to this Interrogatory as premature because it seeks Sight Sciences' infringement contentions in advance of the deadline provided by the operative Scheduling Order,

and before Defendant has produced core technical documents relating to the Accused Product. Sight Sciences will disclose its infringement contentions in accordance with the Scheduling Order entered by the Court.  Sight Sciences further objects to this Interrogatory as prematurely seeking expert testimony, which Sight Sciences will likewise disclose in accordance with the operative Scheduling Order. Sight Sciences further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from discovery. Sight Sciences further objects to this Interrogatory to the extent it seeks information outside of Sight Sciences' possession, custody, or control.

Subject to the foregoing general and specific objections, Sight Sciences responds as follows:

Sight Sciences incorporates by reference its First Amended Complaint (D.I. 19), which provides the basis for Defendant's infringement of the Asserted Patents and includes exemplary claim charts.

Discovery is in an early phase, and Sight Sciences' ability to provide a complete response to this Interrogatory is inhibited, in part, by the lack of technical documents produced by Defendant thus far. Sight Sciences reserves the right to supplement its response to this Interrogatory in view of discovery provided by Defendant, including Defendant's interrogatory responses, witness testimony, and document productions, as well as any discovery obtained from third parties. Notwithstanding the limited information presently available to Sight Sciences, Sight Sciences further responds as follows.

Defendant is liable for direct infringement of the Asserted Patents pursuant to 35 U.S.C. § 271(a) literally or by equivalents through Defendant's unauthorized making, selling, offering to

sell, using and/or importing of the Accused Product within the United States during the relevant damages period.

Defendant is also liable for indirect infringement by inducement under 35 U.S.C. § 271(b) literally or by equivalents by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendant's partners, clients, customers, and end users, whose use of the Accused Products constitutes direct infringement of the Asserted Claims of the Asserted Patents.  Defendant's actions that aid and abet others, such as its partners, clients, customers, and end users to infringe include advertising and distributing the Accused Products and providing instruction materials, training, and services regarding the Accused Products. Sight Sciences presently contends that Defendant have induced others to infringe one or more of the claims of the '482, '361, and '742 patents since at least the date of the first commercial offer for sale of the Accused Product.

Defendant is also liable for contributory infringement under 35 U.S.C § 271(c) for offering to sell and selling in the United States the Accused Product to be especially made or adapted for use to infringe the Asserted Patents, including the claimed methods of the '482, '361, and '742 patents. The Accused Product is a material component for use in practicing the Asserted Patents, is specifically made for use in practicing the Asserted Patents, and is not staple article of commerce suitable for substantial non-infringing use.

Discovery is ongoing and Sight Sciences reserves the right to amend, supplement or otherwise change its response to this Interrogatory, including by asserting additional theories, arguments, contentions, or other evidence uncovered during fact and expert discovery.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**

Subject to the foregoing general and specific objections, Sight Sciences additionally

responds as follows:

Sight Sciences incorporates by reference its Second Amended Complaint (D.I. 59), as well as its Corrected Initial Infringement Contentions, dated August 26, 2022.

Sight Sciences will provide its final infringement contentions and supplement its response to this Interrogatory in accordance with the Second Amended Scheduling Order (D.I. 93), or any modifications thereto.

Discovery is ongoing and the parties have not received a claim construction order.  Sight Sciences reserves the right to amend, supplement or otherwise change its response to this Interrogatory, including by asserting additional theories, arguments, or contentions, after the Court enters a claim construction order, and in light of evidence uncovered during fact and expert discovery.

**INTERROGATORY NO. 2**

For each claim of the Asserted Patents, explain in detail each objective indicia of nonobviousness, if any, that You contend supports the validity of each claim, including any alleged commercial success and nexus to the claimed subject matter, any alleged long-felt need in the art for the claimed subject matter, any alleged failure of others to solve the problems addressed by the claimed subject matter, any alleged skepticism or disbelief by any Person relating to the claimed subject matter, any alleged positive recognition in the industry for the claimed subject matter, any alleged copying of the claimed subject matter, and any alleged unexpected results produced by the claimed subject matter.

**RESPONSE TO INTERROGATORY NO. 2**

Sight Sciences incorporates by reference its General Responses and Objections. Sight Sciences objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, this Interrogatory seeks information that is not related to any claim or defense at issue in this litigation to the extent it seeks information pertaining to claims of the Asserted Patent that are not being asserted against the Accused Product.  Sight Sciences further objects to this Interrogatory as prematurely seeking information that is more

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

COOLEY LLP
Michelle S. Rhyu
David Murdter
Priyamvada Arora
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Orion Armon
1144 15th Street, Suite 2300
Denver, CO  80202-2686
(720) 566-4000

Allison E. Elkman
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
(202) 842-7800

Dated:  May 19, 2023                    *Attorneys for Sight Sciences, Inc.*

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on May 19, 2023, I caused a copy of Sight Sciences, Inc.'s Third Supplemental Responses and Objections to Defendant Ivantis, Inc.'s First Set of Interrogatories (Nos. 1-2, 4-7) to be served on the following counsel of record in the manner indicated below:

**BY E-MAIL**

John W. Shaw
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

Gregg LoCascio
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
gregg.locascio@kirkland.com
justin.bova@kirkland.com
steven.dirks@kirkland.com
socrates.boutsikaris@kirkland.com

Kat Li
Jeanne M. Heffernan
Austin C. Teng
Ryan J. Melde
Kirkland & Ellis LLP
401 Congress Avenue
Austin, TX  78701
kat.li@kirkland.com
jheffernan@kirkland.com
austin.teng@kirkland.com
ryan.melde@kirkland.com

Ryan Kane
Nathaniel DeLucia
Laura Zhu
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
nathaniel.delucia@kirkland.com
laura.zhu@kirkland.com

/s/ Melanie K. Sharp
Melanie K. Sharp (No. 2501)

30389780.1

# EXHIBIT 8

| From: | Douglas, Jeannine |
|---|---|
| To: | *jshaw@shawkeller.com; arussell@shawkeller.com; nhoeschen@shawkeller.com; LoCascio, Gregg F.; Bova, Justin; Dirks, Steven; Li, Kat; Teng, Austin C.; Heffernan, Jeannie; Melde, Ryan James; Kane, Ryan; Zhu, Laura; Merideth, Vicki; Boutsikaris, Socrates L.; DeLucia, Nathaniel Louis; Frank, Noah S.; Verbus, Brian A.; Rambeau, Jake; SKIvantis@shawkeller.com; #Alcon-SightSciences |
| Cc: | *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com; Villoslada, Caroline; mgassaway@ycst.com; Rhyu, Michelle; Armon, Orion; Strosnick, Lauren; Murdter, David; Wood, Alissa; Gibbs, Tracy; z/Sight Sciences Ivantis |
| Subject: | RE: Sight Sciences v. Ivantis, No. 21-1317-GBW-SRF - Galanis Document Production |
| Date: | Wednesday, July 5, 2023 9:46:26 PM |

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Counsel,

On behalf of John Galanis, in the above referenced matter, please see the link below to download the document production.

https://liquidfiles.cooley.com/link/zv2ajbCYqKnfIPl6lm3tzk

The formal production with affixed Bates is forthcoming.

Please let me know if you should have any issues accessing the documents.

Sincerely,

**Jeannine Douglas**
Paralegal Specialist
Cooley LLP
3175 Hanover Street ¨ Palo Alto, CA 94304-1130
Direct: 650-843-5495 ¨ Fax: 650-849-7400
Email: jdouglas@cooley.com ¨ www.cooley.com

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT 9

3:25

Thanks!

Fri, Nov 11 at 1:29 PM



I Paul Singh, MD

**Combination Viscodilation Using the Omni Device and Hydrus Stent During Cataract...**

eyetu.be

Here is the video with combining canaloplasty/ viscodilation with Hydrus. When would you like to try out this combination? I can check with Your surgical coordinators with your approval.

Fri, Nov 11 at 3:39 PM

Sure

iMessage

GALANIS0000001

GALANIS0000002

3:25

**CK**
Kenyon ›

with Your surgical coordinators with your approval.

Fri, Nov 11 at 3:39 PM

Sure

Great!  I'll follow up with them next week and see what dates we can come up with. Have a great weekend!

Mon, Nov 14 at 4:34 PM

I see that you have a Hydruscase on Thursday. Do you have any availability to do the wet lab and I tactic tomorrow morning or Wednesday?

How long will it take?  Do we need the microscope?  Can we just do it Thursday morning?

For you I could probably cut it down to about 45 minutes. Unfortunately I am in cases with a new surgeon Thursday

iMessage

GALANIS0000003

GALANIS0000004



GALANIS0000005



**Combination Viscodilation Using the Omni Device and Hydrus Stent During Cataract...**
eyetu.be

Here is the video with combining canaloplasty/ viscodilation with Hydrus. When would you like to try out this combination? I can check with Your surgical coordinators with your approval.

GALANIS0000006



CK
Kenyon

with Your surgical coordinators with your approval.

Fri, Nov 11 at 3:39 PM

Sure

Great! I'll follow up with them next week and see what dates we can come up with. Have a great weekend!

Mon, Nov 14 at 4:34 PM

I see that you have a Hydruscase on Thursday. Do you have any availability to do the wet lab and I tactic tomorrow morning or Wednesday?

How long will it take? Do we need the microscope? Can we just do it Thursday morning?

For you I could probably cut it down to about 45 minutes. Unfortunately I am in cases with a new surgeon Thursday

iMessage

GALANIS0000007

3:25

**CK**

Kenyon >

How long will it take?  Do we need a microscope?  Can we just do it Thursday morning?

For you I could probably cut it down to about 45 minutes. Unfortunately I am in cases with a new surgeon Thursday morning but should be able to get to your surgery center by 10:30 AM. I could use my backpack scope.

I could do Wednesday at noon.

I'll be there and will focus more on the actual procedure. Are you doing it with Omni or Streamline?  I have not done any with Streamline yet.

Omni

Perfect!  Makes it easier since I've seen many of those procedures. See you Wednesday!

iMessage

GALANIS0000008

3:25

CK

Kenyon

I've seen many of those procedures. See you Wednesday!

Thu, Nov 17 at 9:19 AM

How are you doing schedule wise?  Running 1 hour behind here but in my last case.

30 minutes behind

👍 I'll be on my way soon

Thu, Nov 17 at 11:03 AM

Here.

Tue, Nov 22 at 8:14 AM

I will be there for the Hydrus case scheduled at 9 AM.

Wed, Nov 23 at 9:24 AM

How did your Hydrus post op look?  Was going to check in with you in person today but back in the OR today.

iMessage



GALANIS0000010

3:26

CK
nyon

Denise know to and will make sure that your office only bills for the iStent and Omni.

Thanks!

Mon, Dec 12 at 12:41 PM

I'll see you tomorrow morning at 7:00am. Here is a brief 2 minute video with Dr. Singh walking through the Hydrus implant and his approach when he feels a little resistance while he is advancing the stent. Let me know if you have any questions. Thanks!

Sat, Dec 31 at 11:14 AM

I'm so sorry for your loss. Praying for you and your lifelong friend's family. Safe travels back to St. Louis.

Wed, Jan 18 at 3:47 PM

I am planning on attending your Hydrus cases tomorrow. Here is a video that goes over a few of the steps of the Hydrus

iMessage

GALANIS0000011



Hydrus Microstent Placement Tips

eyetu.be

GALANIS0000012



GALANIS0000013

3:26

**CK**

Kenyon ›

Thu, J___ at 10:26 AM

Just checking to see how your Hydrus case went this morning.

Actually, I was in a big hurry to get to an appointment so I put in an I-Stent.

😔 I do appreciate your support though. I'll see you next week at lunch on 2/1!

Thu, Feb 9 at 6:59 AM

Hello

Thu, Feb 9 at 10:25 AM

The cases I'm in are running behind. Please let me know how the new combo works out on your 10:30am case. Thanks!

Wed, Feb 15 at 2:55 PM

Just checking to see if you're doing a streamline Hydrus case tomorrow.

iMessage

GALANIS0000014



3:27

CK

Wed, Feb 15 at 4:04 PM

At 10:10 we're going to do a Hydrus /Streamline

Ok. I'll plan on coming to that case. Thanks for the heads up!

Thu, Feb 16 at 2:02 PM

Thanks again for letting me observe your combo case!  I'm also going to start working on my tennis game so I can be ready to at least hit balls with you.

Let me know when you're ready and will do it

👍🏽

Tue, Feb 21 at 5:40 PM

Quick question. My Alcon academic manager is looking for some combination cases and was wondering if he can

iMessage

GALANIS0000015



GALANIS0000016

# EXHIBIT 10

| From: | Knight, Dustin M |
|---|---|
| To: | Verbus, Brian A.; Rhyu, Michelle; Boutsikaris, Socrates L.; Merideth, Vicki; cvilloslada@ycst.com; Armon, Orion; Gibbs, Tracy; Strosnick, Lauren; Wood, Alissa; Murdter, David; Douglas, Jeannine; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com; *msharp@ycst.com; z/Sight Sciences Ivantis; Fletcher Price, Bonnie |
| Cc: | SKIvantis@shawkeller.com; #Alcon-SightSciences |
| Subject: | RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions |
| Date: | Wednesday, July 12, 2023 3:54:29 PM |

---

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Brian,

Dr. Galanis is available to continue his deposition at 4:30PM CT on either 7/25 or 7/27.  Please let us know if either timeslot will work for Defendants.

Best,
Dustin

**Dustin Knight**
Office: +1 703 456 8024 • Fax: +1 703 456 8100 • Cell: +1 571 643 5164
Email: dknight@cooley.com • www.cooley.com

---

**From:** Knight, Dustin M <dknight@cooley.com>
**Sent:** Wednesday, July 12, 2023 1:22 PM
**To:** Verbus, Brian A. <brian.verbus@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

We will try. Dr. Galanis is traveling over the next couple of days, but we have already reached out for his availability.

**Dustin Knight**
Office: +1 703 456 8024 • Fax: +1 703 456 8100 • Cell: +1 571 643 5164
Email: dknight@cooley.com • www.cooley.com

---

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Wednesday, July 12, 2023 1:19 PM
**To:** Knight, Dustin M <dknight@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>;

cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>;
Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David
<dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com;
thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com
<msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price,
Bonnie <BFletcherPrice@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

**[External]**

Thank you, Dustin.  Can you provide us proposed dates for the continued deposition of Dr. Galanis
by tomorrow?

Best,
Brian

**Brian A. Verbus**
------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200
------------------------------------------
brian.verbus@kirkland.com

**From:** Knight, Dustin M <dknight@cooley.com>
**Sent:** Wednesday, July 12, 2023 11:38 AM
**To:** Verbus, Brian A. <brian.verbus@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>;
Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki
<vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>;
Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa
<amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine
<jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com
<jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis
<zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

Brian,

Thank you for clarifying your reasons for requesting an earlier time to conclude the fact deposition
for Dr. Galanis, and for laying out your concerns on the 60-minute timeframe. We can accommodate
both requests, providing 90 minutes per your original request as to questioning limited to these
sixteen documents.  We have asked Dr. Galanis for his availability on or before August 9, 2023 and
will revert soon when we are able to tack down specific dates and times.

Sight maintains that its July 5, 2023 production was timely and proper for the reasons set forth in our prior communications.  Similarly, this email is without prejudice to Sight advancing that position with the Court, should the need arise.

Best,
Dustin

**Dustin Knight**
Office: +1 703 456 8024 • Fax: +1 703 456 8100 • Cell: +1 571 643 5164
Email: dknight@cooley.com • www.cooley.com

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Wednesday, July 12, 2023 12:00 PM
**To:** Knight, Dustin M <dknight@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

**[External]**

Dustin,

Thank you for the response, and we are hopeful the parties can reach an agreement with respect to the continued fact deposition of Dr. Galanis without burdening the Court.  While we appreciate your offer, we cannot agree to it for at least two reasons.

***First***, as to timing, we cannot agree to wait to complete the fact deposition of Dr. Galanis until after expert reports are submitted unless Sight confirms today that it will not cite to or rely upon the Galanis production, or the partial testimony of Dr. Galanis regarding that production, in any of its expert reports or depositions (which Defendants maintain would be improper in any event, as we've already discussed and regarding which we've reached an impasse).  Doing so would require our experts to submit reports addressing documents about which we have not completed fact discovery, which would be highly prejudicial to Defendants.  If Sight intends to have its experts cite to or rely upon any of the Galanis production or testimony about that production, the continued deposition must take place no later than August 9, 2023, to enable Defendants' experts to have access to that deposition transcript in advance of the August 17th rebuttal expert report deadline.  Please either confirm (1) Sight will not cite to or rely upon in any manner the Galanis production documents or testimony about those documents in any expert report or expert deposition, or (2) provide dates for a continued deposition of Dr. Galanis on or before August 9, 2023.

3

**Second**, while we anticipate 60 minutes should be sufficient to complete the questioning, in the event it is not we are concerned that Sight will use its below proposal to, yet again, stop the deposition of Dr. Galanis before we can complete questioning on Sight's untimely production.  Given that we have compromised by agreeing to limit the scope of the continued deposition to questions relating to Sight's untimely production, we do not believe an arbitrary 60-minute cap is appropriate.  Please confirm that Sight agrees that Defendants may conduct a continued fact deposition of Dr. Galanis—limited to questions relating to the July 5, 2023 Galanis production—without a 60-minute time limitation.

Given the timing of expert reports, please provide your response by close of business today so that if the parties are at an impasse we can promptly raise this issue with the Court.  If a teleconference would be helpful to discuss any of these issues, we are available to speak with you today.

Defendants maintain that the July 5, 2023 production is untimely and improper, and that Sight should be precluded from relying upon that production in any manner.  This email is without prejudice to Defendants advancing that position with the Court.

Best,
Brian

**Brian A. Verbus**

-----------------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200

-----------------------------------------------------

brian.verbus@kirkland.com

---

**From:** Knight, Dustin M <dknight@cooley.com>
**Sent:** Wednesday, July 12, 2023 5:28 AM
**To:** Verbus, Brian A. <brian.verbus@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

Brian,

We conferred internally and can agree to permit Defendants an additional 60 minutes with Dr. Galanis for fact questions on the limited topic of the text string with Mr. Catchings and the two videos that Mr. Catchings provided to Dr. Galanis.  To minimize the inconvenience to Dr. Galanis, and expenses to the parties, we propose that

Defendants conduct this additional hour of fact questioning at the time that Dr. Galanis would ordinarily sit for his expert deposition, and we are willing to extend the time that Dr. Galanis will sit for deposition that day to eight hours.  Please let us know if Defendants are amenable to this arrangement.

For the parties' document production issues that you mentioned as "moot" on the meet-and-confer, we agree that these issues need not be raised with the Court.

Regards,
Dustin

**Dustin Knight**
Office: +1 703 456 8024 • Fax: +1 703 456 8100 • Cell: +1 571 643 5164
Email: dknight@cooley.com • www.cooley.com

---

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Monday, July 10, 2023 5:06 PM
**To:** Knight, Dustin M <dknight@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

**[External]**

Dustin, following up on the below, please let us know your availability to meet and confer tomorrow.

Thanks,
Brian

**Brian A. Verbus**
------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200
------------------------------------
brian.verbus@kirkland.com

---

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Sunday, July 9, 2023 12:35 PM
**To:** Knight, Dustin M <dknight@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>;

Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

Dustin,

We disagree with your arguments and positions below.  We are unable to meet and confer on Monday, but we are available on Tuesday from 11:00-2:00 ET and 3:30-5:30 ET.  Please let us know what works for you in those windows.

Best,
Brian

**Brian A. Verbus**
------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200
------------------------------------------
brian.verbus@kirkland.com

---

**From:** Knight, Dustin M <dknight@cooley.com>
**Sent:** Friday, July 7, 2023 4:13 PM
**To:** Verbus, Brian A. <brian.verbus@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

Counsel:

As we discussed on yesterday's meet-and-confer and Dr. Galanis testified during his deposition, we became aware of the documents produced on July 6th mere hours before production, and we acted immediately to provide these fourteen images and two videos to Defendants once we learned of their existence.  As you know, these documents were between Dr. Galanis and Defendants' sales representative Mr. Catchings, *i.e.*, information that Defendants knew or should have known about yet did not produce in this litigation. We were under no obligation to provide Defendants with these

documents, let alone search for them, as Dr. Galanis is a third party to this litigation and Defendants never served a subpoena on Dr. Galanis, either to sit for deposition or for the production of documents.

Nor was the production untimely. As we discussed on the meet-and-confer, the parties jointly agreed to hold the deposition after the close of fact discovery, after Defendants refused to take his fact deposition on June 29 as Sight offered. Consistent with that agreement, we met with Dr. Galanis to prepare for his deposition in the ordinary course, and it was then that we learned of the documents. Defendants are not prejudiced by the timing of the production of Dr. Galanis' correspondence <u>with their own sales representative</u>, which Defendants should have produced in response to at least Sight's Request For Production No. 38, served in April 2022, that requests "[a]ll documents and communications with physicians concerning use of the Hydrus product." It is Defendants who failed in their obligation to provide Sight with this information during the fact discovery period.

Counsel also cannot reasonably complain about the timeliness of the production in view of its repeated late productions, made on the eve of depositions, including:

- emails and text messages less than 17 hours before the start of Andy Rivero's deposition;
- 92 documents on Saturday at midnight ET over a holiday weekend just prior to the deposition of Jim Shay;
- 12 documents on Saturday around 4pm ET over a holiday weekend just one business day before the start of the deposition of Doug Roeder; and
- Yesterday's Sheybani production after being served a subpoena on May 25th and extending the deadline for his responses to June 16th.

Counsel had ample notice of the foregoing depositions and, in contrast to Dr. Galanis, Mr. Rivero and Delphi Ventures had been served by Sight with document subpoenas, triggering an obligation to search and produce documents in a timely manner. And, the 92 documents relating to Mr. Shay's deposition had been in Alcon's possession since June 2022 and were responsive to document requests served in April 2022. In light of the reasonable cooperation that this Court expects, we accommodated Defendants' delays and lack of diligence without burdening the Court. It is incumbent on Defendants to cooperate reciprocally.

As to the purported "selective production," we note as we did during Dr. Galanis' deposition that Counsel's attempt to conduct discovery with a third-party witness during the deposition was improper, particularly when Defendants served no subpoena requesting documents from Dr. Galanis as a third-party witness. Counsel repeatedly, brazenly, and improperly sought privileged attorney-client communications and attorney work product throughout the deposition. Further, Counsel cannot now complain that this production is "incomplete" when Counsel failed to provide complete texts between Mr. Rivero and Ms. Sabrina Sardinia and contends its own production is sufficient.

The possibility of additional texts between Dr. Galanis and Mr. Catchings—texts that Defendants should already have—does not justify Defendants' request for additional time with Dr. Galanis in advance of his expert deposition. The parties agreed in advance to a three-hour limit to Dr. Galanis'

deposition in exchange for a two-hour limit to Dr. Sheybani's deposition, which is set for Monday.  As a matter of professional courtesy, we permitted Counsel an additional 10-15 minutes to question Dr. Galanis yesterday, beyond the agreed-upon three hours.  Counsel had sufficient time to question Dr. Galanis on the fourteen images and two videos and other factual matters, and it was Counsel's decision as to how to use the time it agreed to —which it chose to expend pursuing privileged information and premature expert testimony (as repeatedly and clearly reflected in the record).  We will highlight this improper questioning for the Court's consideration, if judicial intervention is required to resolve this dispute.

During our meet-and-confer, you did not request and we did not agree to provide Counsel with additional time for Dr. Galanis' deposition yesterday. Defendants will have another opportunity to depose Dr. Galanis during his expert deposition, and may elect to use part of that time to ask the questions about his factual knowledge that should have been asked yesterday, but instead was misspent asking for premature expert opinions and privileged information.  We likely will not make Dr. Galanis available a second time prior to his expert deposition, but we will review the transcript and discuss the issue on the meet and confer.

While we disagree that we are under any obligation to produce any remaining texts between Dr. Galanis and Mr. Catchings, particularly when this information was available to Defendants during fact discovery, we will nevertheless investigate.  We likewise request that Mr. Rivero similarly investigate and provide all relevant texts between himself and Ms. Sabrina Sardinia responsive to the subpoena served on Mr. Rivero.  In addition, Mr. Rivero testified that he had provided relevant documents to Defendants' counsel shortly after the filing of this lawsuit.  It is evident you have not produced those documents, even though they were clearly in Defendants' possession, custody or control.  Please confirm that you will produce those documents immediately.

We are not available today but can be available to meet-and-confer from 10am-1pm PT on Monday, July 10.  Please provide an invite.


Regards,
Dustin


**Dustin Knight**
Office: +1 703 456 8024 • Fax: +1 703 456 8100 • Cell: +1 571 643 5164
Email: dknight@cooley.com • www.cooley.com

---

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Friday, July 7, 2023 2:58 PM
**To:** Rhyu, Michelle <RHYUMS@cooley.com>; Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>; Knight, Dustin M <dknight@cooley.com>

**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

**[External]**

Counsel,

We have not received your response to the below email.  Please provide it today.

Best,
Brian

**Brian A. Verbus**
------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200
------------------------------------------------
brian.verbus@kirkland.com

**From:** Verbus, Brian A. <brian.verbus@kirkland.com>
**Sent:** Thursday, July 6, 2023 9:19 PM
**To:** 'Rhyu, Michelle' <RHYUMS@cooley.com>; Boutsikaris, Socrates L.
<socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>;
cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>;
Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David
<dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com;
thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com
<msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price,
Bonnie <BFletcherPrice@cooley.com>; Knight, Dustin M <dknight@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

Counsel,

Thank you for meeting and conferring with us today.  Local counsel from both sides attended, and
we reached an impasse with respect to Sight's production of documents by Dr. Galanis on July 5,
2023.  We disagree with your assertion that Sight's elective production of documents from Dr.
Galanis—a fact witness Sight identified on its initial disclosures six weeks ago—after the close of fact
discovery has any relation to Defendants' production of documents from Andy Rivero during the fact
discovery period in response to Sight's subpoena.  On the meet and confer, as in your email below,
you stated that you were not aware of these documents until yesterday.  Sight's lack of diligence in
conducting discovery from its own fact witness does not excuse its production after the close of fact
discovery.  We will therefore bring this issue to the Court.

Because you refused to reschedule the deposition of Dr. Galanis, and because Dr. Galanis is a

9

practicing physician, we elected to proceed with the deposition today.  We indicated on the record, as we did during the meet and confer, that we reserve all rights to move the court to preclude any reliance by Sight on its untimely document production.

During the deposition, two additional issues arose.  First, on the meet and confer this morning, counsel for Sight indicated we should proceed with questioning the witness on the documents produced last night, and that this would not be a waiver of Defendants' position that the production is improper.  However, we had planned for a 3-hour deposition *before* we got the production last night.  We got through a portion of the documents in the agreed-upon time for the deposition, but counsel for Sight stopped the deposition without agreeing on the record to permit additional time so that we could conclude the questioning on those documents.  We therefore left the deposition open.  As we stated on the record, we are hopeful we can resolve this issue without court intervention.  Please confirm that Sight will make Dr. Galanis available for an additional 90 minutes of fact deposition in advance of his expert deposition and as soon as reasonably practicable for the purpose of allowing Defendants to conclude questioning on the documents produced late last night.  If you will not do so, please provide your availability to meet and confer so we can bring this issue to the attention of the Court.

Second, in addition to being untimely and improper, it is clear that Sight's selective production of texts from Dr. Galanis is incomplete.  During the deposition, Dr. Galanis testified that there were text exchanges with Mr. Catchings prior to the exchanges produced by Sight's counsel.  When we asked Dr. Galanis to hold up his phone and scroll up in the thread starting from the location at which Sight's production begins, counsel refused to allow the witness to do so, and indicated we should follow up with Sight off the record.  We are doing so now for efficiency purposes, and without waiver of our objection to the production.  We maintain that the production is improper in its entirety. But in the event the Court permits Sight to rely on any of it, it is incomplete. Before we resume the fact deposition of Dr. Galanis, please confirm that counsel for Sight will produce the entirety of Dr. Galanis's text correspondence with Mr. Catchings.  If you will not do so, please provide your availability to meet and confer on that issue.

Please provide your response and, if necessary, your availability to meet and confer, by 2:00 PM ET tomorrow.

Best,
Brian

**Brian A. Verbus**

----------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3775
**F** +1 312 862 2200

----------------------------------------------

brian.verbus@kirkland.com

**From:** Rhyu, Michelle <RHYUMS@cooley.com>

10

**Sent:** Thursday, July 6, 2023 8:56 AM
**To:** Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>; Knight, Dustin M <dknight@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** Re: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

Socrates,
We haven't received your dial In information. Do you intend to proceed with the meet and confer in 5 minutes?
Michelle

Sent from my iPhone


On Jul 6, 2023, at 5:39 AM, Rhyu, Michelle <RHYUMS@cooley.com> wrote:

Dear Socrates,
We actually only became aware of these documents yesterday afternoon and promptly moved to produce.  This is akin to the defendants' production of Andy Rivero's documents the day before his deposition.  We will not withdraw, and if you choose not to proceed with the fact deposition today, we will assume you will ask questions regarding his factual knowledge during his expert deposition.

We are available at 10 AMET to meet and confer on the subject.  In the meantime, please identify how you believe this third party's document is responsive to Defendants' discovery requests.

Please send a meeting invitation.
Michelle


**From:** Boutsikaris, Socrates L. <socrates.boutsikaris@kirkland.com>
**Sent:** Wednesday, July 5, 2023 8:26 PM
**To:** Rhyu, Michelle <RHYUMS@cooley.com>; Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com

11

<[jhiggins@ycst.com](mailto:jhiggins@ycst.com)>; [*msharp@ycst.com](mailto:*msharp@ycst.com) <[msharp@ycst.com](mailto:msharp@ycst.com)>; z/Sight Sciences Ivantis <[zSightSciencesIvantis@cooley.com](mailto:zSightSciencesIvantis@cooley.com)>; Fletcher Price, Bonnie <[BFletcherPrice@cooley.com](mailto:BFletcherPrice@cooley.com)>; Knight, Dustin M <[dknight@cooley.com](mailto:dknight@cooley.com)>
**Cc:** [SKIvantis@shawkeller.com](mailto:SKIvantis@shawkeller.com); #Alcon-SightSciences <[Alcon-SightSciences@kirkland.com](mailto:Alcon-SightSciences@kirkland.com)>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

**[External]**

Counsel,

This production is untimely and improper. On May 3, 2023, Sight disclosed Dr. Galanis as an expert witness in this case. Then six weeks ago, on May 23, 2023, **_Sight_** amended its Initial Disclosures to add Dr. Galanis as a fact witness, indicated that Dr. Galanis should be contacted through Sight's counsel, and stated that he had alleged "Knowledge of direct and induced infringement, including instructions given by Defendants and their agents regarding methods for implanting the Accused Product." But in the next 5 weeks of fact discovery, Sight produced **_not a single document_** from its witness Dr. Galanis. Fact discovery then closed on June 29, 2023. Now, at 10:00 PM ET the night before Dr. Galanis's deposition, Sight produced documents from Dr. Galanis that it had access to at least as early as May 23, 2023. Please confirm by 9:00 AM ET tomorrow morning that Sight will withdraw this production and disclaim any reliance on it. If Sight will not do so, please provide us with Sight's availability to meet and confer tomorrow, so that we can promptly bring this issue to the Court's attention.

In view of the above, we cannot proceed with Dr. Galanis's deposition until Sight either confirms it will withdraw reliance on this production in its entirety or the issue is resolved by the Court. Unless we get such confirmation by 9:00 AM ET tomorrow, we will not be proceeding with the deposition of Dr. Galanis tomorrow, and will coordinate with you to reschedule deposition after this discovery issue is resolved.

Best,
Socrates

### Socrates L. Boutsikaris

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W. Washington DC 20004
**T** +1 202 389 3140  **M** +1 202 746 9628
**F** +1 202 389 5200

[socrates.bouts karis@kirkland.com](mailto:socrates.boutskaris@kirkland.com)

**From:** Rhyu, Michelle <[RHYUMS@cooley.com](mailto:RHYUMS@cooley.com)>
**Sent:** Wednesday, July 5, 2023 6:04 PM

12

**To:** Merideth, Vicki <vicki.merideth@kirkland.com>; cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>; Knight, Dustin M <dknight@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

Dear Counsel,
We were informed that Dr. Galanis had to add a surgery to his schedule tomorrow morning and thus will not be available to start until **10:30AM CT**.

Please relay to the counsel responsible for defending tomorrow's deposition.
Thanks,
Michelle

---

**From:** Merideth, Vicki <vicki.merideth@kirkland.com>
**Sent:** Wednesday, July 5, 2023 2:47 PM
**To:** cvilloslada@ycst.com; Armon, Orion <oarmon@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Murdter, David <dmurdter@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; mgassaway@ycst.com; Rhyu, Michelle <RHYUMS@cooley.com>; thallowell@ycst.com; *jhiggins@ycst.com <jhiggins@ycst.com>; *msharp@ycst.com <msharp@ycst.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Fletcher Price, Bonnie <BFletcherPrice@cooley.com>; Knight, Dustin M <dknight@cooley.com>
**Cc:** SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1317-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc., et al. - Depositions

[External]

---

Counsel,

Below is the Zoom information for tomorrow's deposition:

497045 - Dr. John Galanis - Sight Sciences, Inc. -v- Ivantis, Inc., et al. - 7/6/2023 - 10:00AM CT

13

Meeting Link: [https://planetdepos.zoom.us/j/93127973149](https://planetdepos.zoom.us/j/93127973149)

**Meeting ID: 931 2797 3149**

**Passcode: 568500**

**Call in #: 646 931 3860**

**Meeting ID: 931 2797 3149**

**Passcode: 568500**

Thank you.

**Vicki Merideth**

Senior Paralegal

------------------------------------------------

**KIRKLAND & ELLIS LLP**

401 Congress Avenue, Austin, TX 78701

**T** +1 512 678 9180

**F** +1 512 678 9101

------------------------------------------------

[vicki.merideth@kirkland.com](mailto:vicki.merideth@kirkland.com)

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to [postmaster@kirkland.com](mailto:postmaster@kirkland.com), and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to [postmaster@kirkland.com](mailto:postmaster@kirkland.com), and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

14

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT 11 (Excerpted)

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY
9604

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SIGHT SCIENCES, INC., ) | |
| ) | C. A. No.: 21-1317-GBW-SRF |
| Plaintiff, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, ) | |
| ALCON VISION, LLC AND ALCON INC., ) | |
| ) | |
| Defendants. ) | |

**OPENING EXPERT REPORT OF DR. JOHN GALANIS ON INFRINGEMENT OF
UNITED STATES PATENT NOS. 9,486,361; 10,314,742; AND 11,389,328**

Dated: July 13, 2023

Respectfully submitted,

Dr. John Galanis

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION, BASIS FOR OPINIONS, AND SUMMARY ................1

    A.  Qualifications and Experience ......................................................1

    B.  Materials Considered ....................................................................2

    C.  Summary of Opinions ...................................................................2

II.  LEGAL STANDARDS .............................................................................4

    A.  Literal Infringement .....................................................................5

    B.  Induced Infringement ...................................................................6

    C.  Contributory Infringement ...........................................................6

III.  TECHNOLOGY BACKGROUND ...........................................................7

IV.  PATENTS-IN-SUIT ................................................................................7

    A.  '361 Patent ....................................................................................8

    B.  '742 Patent ....................................................................................9

    C.  '328 Patent ....................................................................................9

V.  PERSON OF ORDINARY SKILL IN THE ART ("POSA") ....................10

VI.  CLAIM CONSTRUCTION ....................................................................12

VII.  SUMMARY OF ACCUSED METHODS ...............................................13

VIII.  PERSONAL KNOWLEDGE OF INDUCEMENT ...................................13

IX.  THE ACCUSED METHODS INFRINGE THE ASSERTED CLAIMS .................................................................................................16

    A.  '361 Patent ..................................................................................16

        1.  Claim 1 ............................................................................17

            i.  "A method for reducing intraocular pressure, comprising:" (Claim 1[pre]) ...........................17

            ii.  "delivering a high viscosity fluid into Schlemm's canal; and" (Claim 1[b]) ................................18

            iii.  "introducing a tubular cannula having a lumen at least partially within Schlemm's canal;" (Claim 1[a]) ..............................................................38

# TABLE OF CONTENTS
(continued)

Page

    iv.    "inserting a support into Schlemm's canal by passing the support through the tubular cannula," (Claim 1[c]) ....................................................41

    v.    "wherein the support comprises an arcuate member," (Claim 1[d]) ..............................................44

    vi.    "wherein at least a portion of the arcuate member has a radius of curvature smaller than a radius of curvature of Schlemm's canal, and" (Claim 1[e]) .........45

    vii.    "wherein the support comprises at least one fenestration." (Claim 1[f]) .............................................45

  2.    Claim 2: "The method of claim 1, wherein the delivered fluid dilates the canal." ...........................................................46

  3.    Claim 3: "The method of claim 1, wherein the high viscosity fluid is sodium hyaluronate." ...................................46

  4.    Claim 9: "The method of claim 1, wherein at least a portion of the support extends out of Schlemm's canal and into the trabecular meshwork." .........................................48

B.    '742 Patent .............................................................51

  1.    Claim 1 ............................................................52

    i.    "A method for treating an eye condition, comprising:" (Claim 1[pre]) .........................................52

    ii.    "implanting a support within Schlemm's canal," (Claim 1[a]) ...............................................53

    iii.    "wherein the support comprises an arcuate member," (Claim 1[b]) ..............................................55

    iv.    "wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal" (Claim 1[c]) ................55

    v.    such that at least a portion of the arcuate member extends out of Schlemm's canal." (Claim 1[d]) .............55

## TABLE OF CONTENTS
(continued)

2.     Claim 19: "The method of claim 1, further comprising preloading the support into an introducer and delivering the support from the introducer into Schlemm's canal." .........56

3.     Claim 20: "The method of claim 19, wherein the support is delivered from the introducer using a pusher."...................59

C.     '328 Patent................................................................................63

1.     Claim 1 ...............................................................................64

    i.     "A method for reducing intraocular pressure in a patient using a support and an introducer comprising a cannula, comprising:" (Claim 1[pre])......64

    ii.     "positioning a distal end of the cannula at or near Schlemm's canal," (Claim 1[a])....................................65

    iii.     "wherein the support is located in a lumen of the cannula; and" (Claim 1[b]) .............................................67

    iv.     "pushing the support distally out of the distal end of the cannula to insert the support circumferentially within Schlemm's canal," (Claim 1[c])..................................................................................71

    v.     "wherein the support comprises an arcuate member," (Claim 1[d]) ...................................................74

    vi.     "wherein at least a portion of the arcuate member has a radius of curvature Rsupp smaller than the radius of curvature of Schlemm's canal" (Claim 1[e])..................................................................................75

    vii.     "such that at least a portion of the arcuate member extends out of Schlemm's canal." (Claim 1[f]) .............75

2.     Claim 2: "The method of claim 1, wherein the patient has glaucoma." ................................................................................75

3.     Claim 4: "The method of claim 1, further comprising dilating Schlemm's canal prior to inserting the support."........76

4.     Claim 5: "The method of claim 4, wherein Schlemm's canal is dilated by injecting fluid into the canal." ...................76

**TABLE OF CONTENTS**
(continued)

Page

5.    Claim 18: "The method of claim 1, wherein the support extends about one quarter of the way around Schlemm's canal after insertion into the canal." ....................................... 76

**X**.    ADDITIONAL EVIDENCE OF INDIRECT INFRINGEMENT .............. 80

███████████████████████████████████████████

> ## IVANTIS_SS_00041120 at 41139.
>
> **15. PHYSICIAN TRAINING**
>
> Physician training by certified Ivantis personnel is required prior to use of the Hydrus Microstent. Training consists of three segments: didactic session including video session; wet-lab simulation of implantation of Hydrus Microstent in human anterior segment tissue; and supervised Hydrus Microstent implantation in clinical cases until implantation proficiency is demonstrated.
>
> Contact your Ivantis Representative for more information regarding training for Hydrus Microstent.

42. ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ ████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████ ██

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

43. I participated in this mandatory certification training starting in November 2022 and guided by an Alcon sales representative for my region, Mr. Kenyon Catchings.

---

[3] IVANTIS_SS_00001130 at 1131.

[4] *Id.*

[5] *Id.*

44.     In the fall of 2022, Mr. Kenyon Catchings approached me about starting to use the Hydrus glaucoma implant.  I told him that I had implanted several Hydrus implants in 2020 with his predecessor, Mr. Vernon Keller.  I told Mr. Catchings that I found the implantation technique for the Hydrus more challenging than placement of the iStent®.

45.     Mr. Catchings responded that he knew of several surgeons who were using the OMNI device prior to placement of the Hydrus.  He said that these surgeons felt that viscodilation of Schlemm's canal with OMNI made subsequent placement of the Hydrus easier.

46.     After our initial conversation, Mr. Catchings provided a video of the Combined Procedure technique by Paul Singh M.D, a paid Ivantis consultant, using OMNI and then Hydrus.  Mr. Catchings stated that, prior to doing my first Hydrus case in the operating room, that I would need to complete a "wet lab" which we scheduled for Wednesday November 16th, 2022.  The "wet lab" consisted of Mr. Catchings coming to my office with an eye model and a surgical microscope.  He instructed me on the recommended technique on implanting the Hydrus and we agreed that Mr. Catchings would accompany me in the operating room on Thursday December 17th for my first Hydrus cases.

47.     Mr. Catchings continued to be present in the operating room on subsequent occasions when I was implanting a Hydrus.  After observing me

successfully complete approximately five to seven Hydrus implant cases Mr. Catching stated that I was now "certified."  He no longer routinely comes to the operating room for my Hydrus surgeries.

48.    I had prior experience using the OMNI device as a stand-alone glaucoma procedure, but not in combination with implanting the Hydrus Microstent. Mr. Catchings was the first to suggest the possibility of combining OMNI with Hydrus in a single procedure, and after reviewing Dr. Singh's video that he passed on and discussing with him further, I scheduled a case.  The combination worked well, and I now routinely use the Combined Procedure with OMNI and Hydrus procedure on the majority of my cataract patients who also have glaucoma.  Mr. Catchings later stated in early 2023 that he had not seen a Combined Procedure using Streamline and Hydrus, and he accompanied me to the operating room where he observed me do such a case.

## IX.    THE ACCUSED METHODS INFRINGE THE ASSERTED CLAIMS

### A.    '361 Patent

49.    I understand that Sight has asserted claims 1-3 and 5-9 of the '361 Patent against the Defendants' encouraged Combined Procedure.  I have been asked to provide my opinions as to a subset of these method claims, namely claims 1-3 and 9 of the '361 Patent.

50.    It is my opinion that Defendants induce (*e.g.*, instruct, direct, train,

promote, encourage, and/or suggest) third parties to use a Combined Procedure by injecting viscoelastic into Schlemm's canal using a viscoelastic delivery device, *e.g.*, OMNI, Streamline, iTrack, and the Rivero Viscodilation Cannula,  and then implanting the Hydrus Microstent.  Specifically, clinicians who perform the Combined Procedures as encouraged by Defendants' agents (*e.g.*, Mr. Catchings, Mr. Rivero) and/or through videos endorsed and/or sponsored by Defendants (*e.g.*, combination procedures from Dr. Singh) directly infringe each and every element of the asserted method claims 1-3 and 9 of the '361 Patent for the reasons discussed below.

51.    I base my opinions on, among other things, my review of the Hydrus Microstent Instructions For Use, Hydrus Microstent documentation provided by Defendants during fact discovery, deposition transcripts, the opening expert report on infringement of Dr. Crawford Downs and his conclusions regarding the Hydrus Microstent, and my decades of surgical experience implanting MIGS devices, including approximately thirty Hydrus Microstents since November 2022.

### 1.    Claim 1

#### i.    "A method for reducing intraocular pressure, comprising:" (Claim 1[pre])

52.    I understand from counsel that the preamble is typically not an element of a claim.  Nevertheless, in my opinion Defendants' surgical instructions for implanting the Hydrus Microstent disclose a "**method for reducing intraocular**

**pressure**."   According to its Instructions For Use, the Hydrus Microstent is "indicated for use in conjunction with cataract surgery <u>for the reduction of intraocular pressure</u> (IOP)" for glaucoma patients.[6]

53.    The method of claim 1 recites several steps that result in implanting a Hydrus Microstent into Schlemm's canal.   In my analysis that follows, I have ordered these steps in the manner that a clinician would apply them in the Combined Procedure—*i.e.*, claim 1[b], claim 1[a], and then claim 1[c].

### ii.    "delivering a high viscosity fluid into Schlemm's canal; and" (Claim 1[b])

54.    Defendants encourage a Combined Procedure that calls for clinicians to deliver a high viscosity fluid into Schlemm's canal.   While this step is not specifically described in the Hydrus Directions For Use, Defendants' field representatives and paid consultants nevertheless encourage clinicians to use a viscoelastic delivery system to deliver high viscosity fluid into Schlemm's canal, such as the OMNI, Streamline, Rivero Viscodilation Cannula (RVC), and Ellex iTrack devices.

55.    All four procedures involve delivery of viscoelastic into Schlemm's canal. Viscoelastic is a "**high viscosity fluid**" used in ophthalmic surgery to inflate or prop open anatomical structures of the eye.[7]   For example, viscoelastic is used to

---

[6] IVANTIS_SS_00041120 at 41122 (underlining added).
[7] Viscoelastic fluids are defined by having both high viscosity and elasticity.

███████████████████████████████████████████

dilate Schlemm's canal until a clinician may introduce a cannula for advancing a MIGS device into the canal.  Viscoelastic also lubricates the incision site in the trabecular meshwork to ease insertion of a MIGS device into the canal.  Common viscoelastic brands used in ophthalmic surgery include Healon PRO or Healon GV PRO from Johnson & Johnson Vision, Amvisc from Bausch & Lomb, or PROVISC from Alcon.[8]

56.     Below I set forth how use of any of the OMNI, Streamline, RVC, and/or iTrack devices, in concert with the Hydrus Microstent, satisfies this step of the claimed method.

## OMNI DEVICE

57.     I am informed and understand that Defendants encourage a Combined Procedure using Hydrus and OMNI.  This is consistent with my personal experience as an ophthalmic surgeon.  During my mandatory Hydrus certification training, the Alcon field representative assigned to my sales region, Mr. Kenyon Catchings, encouraged me to use the OMNI viscodilation procedure before inserting the Hydrus Microstent into Schlemm's canal.  The OMNI viscodilation procedure "**deliver[s] a high viscosity fluid into Schlemm's canal**."

58.     As I discussed earlier, ████████████████████████████████████

███████████████████████████████████████████████████████████

_____

[8] SGHT0085313.



59.    As I stated above, I completed the mandatory Hydrus certification program in late 2022 with Alcon's sales representative for my region, Mr. Kenyon Catchings. ██████████████████████████████████████████████ ████████████████████████████████████ within a week of conducting the ██████ component of the certification training Mr. Catchings sent me a link to a surgical video from Dr. Paul Singh, a paid Ivantis consultant,[11] for using OMNI in conjunction with the Hydrus hand-delivery system for implanting the Hydrus Microstent.[12] Dr. Singh is a thought-leader within glaucoma ophthalmology, and a POSA receiving a text from Defendants' sales representative sharing this video

---

[9] IVANTIS_SS_00001130 at 1131.
[10] *Id.*
[11] Deposition of Dave Van Meter ("Van Meter Depo. Tr.") at 291:7-293:21.
[12] GALANIS00000017.    Available   at   https://eyetube.net/videos/combination-viscodilation-using-the-omni-device-and-hydrus-stent-during-cataract-surgery.

would interpret that action as encouraging the clinician to use the procedure in the video—as I did.

| GALANIS0000001. |
| --- |
|  |

60.    The procedure in Dr. Singh's video discusses first using an OMNI device that will release viscoelastic directly into Schlemm's canal prior to insertion of the Hydrus Microstent:

> I'm going to place my OMNI device through the small 1.5 keratome incision.   And with the OMNI device, I think it's important to not be quite as parallel to the nasal angle. You actually want to be more in a 45-degree angle; here I'm more parallel. You can see that blue thread coming out more shiny, which means I'm not in Schlemm's canal, so I'm going to actually point more 45 degrees towards the nasal angle. Now I can see the nylon thread in Schlemm's canal, kind of dull appearing. **Advance the wheel until it locks and then release it or rewind it, and releasing viscoelastic as I'm coming back out, that's dilating Schlemm's canal.** Now I'm going to place the Hydrus which scaffolds Schlemm's canal through the same opening. It's the same type of procedure here. I'm going to advance the wheel here it's going to

place that Hydrus stent – nitinol stent-through Schlemm's canal, scaffolding the Schlemm's canal and also the TM bypass with that snorkel in the anterior chamber. So that's a beautiful combination of technologies here to maximize outflow by scaffolding and flushing the system out.[13]

61.   The Combined Procedure involving OMNI and Hydrus discussed in Dr. Singh's video includes the step of "**delivering a high viscosity fluid into Schlemm's canal**."  This is confirmed by the OMNI Instructions For Use, which describe that "[t]he OMNI Surgical System ('OMNI') is a single-handed, manually operated device designed to provide controlled delivery of viscoelastic fluid into Schlemm's canal."[14]  The OMNI device is a hand-delivery system that includes a cannula, where a microcatheter extends from the cannula and secretes viscoelastic fluid upon retraction.

| SGHT0085313 at 85314. |
| --- |



---

[13] GALANIS0000017 at 0:21-1:15 (emphasis added).
[14] SGHT0085313.

62.     The Directions For Use specifically describe the procedure that Dr. Singh narrated in his instructional video, involving: (1) inserting the OMNI cannula into a corneal incision and piercing the trabecular meshwork, (2) advancing a microcatheter into Schlemm's canal, and (3) slowly retracting the microcatheter out of the canal and back into the cannula, releasing viscoelastic from the tip of the microcatheter to provide transluminal viscodilation.[15]

63.     Dr. Singh's video provides a visualization of the (blue) microcatheter of the OMNI retracting into the cannula and releasing viscoelastic in its wake.

**GALANIS0000017 at 0:47.**



64.     In my clinical practice, I performed the Combined Procedure using OMNI and Hydrus, including the step of first using OMNI to inject viscoelastic into Schlemm's canal prior to insertion of the Hydrus Microstent. I can confirm, based on my experience in this procedure, that the OMNI device practices the step of "**delivering a high viscosity fluid into Schlemm's canal**."

---

[15] SGHT0085313 at 85323-25 (section 3).

## RIVERO VISCODILATION CANNULA (RVC)

65.    I am also informed and understand that Defendants encourage a Combined Procedure using Hydrus and an RVC.  I understand that Mr. Rivero was an independent sales representative and an agent of Ivantis.[16]  I further understand that he designed the RVC specifically to assist clinicians who had difficulty (as I originally did) smoothly implanting the Hydrus Microstent and sought to bundle its sale with that the Hydrus Microstent.[17]

---

[16] Deposition of Andres Rivero ("Rivero Depo. Tr.") at 142:4-8.
[17] *Id.*, at 80:5-10.

████████████████████████████████████████

handpiece and as this takes place the viscoelastic is injected into the canal using the Ophthalmic ViscoInjector.[32]

76.     The "Mechanism Of Action" in the 510(k) summary describes the surgical steps for using iTrack that clearly demonstrate its use to "**deliver[] a high viscosity fluid into Schlemm's canal**."   After connecting a microcatheter to its "ViscoInjector," the iTrack handheld ophthalmic cannula is primed with viscoelastic fluid (a high viscosity fluid) from a cartridge retained with the ViscoInjector.[33]   The clinician "holds the handheld ophthalmic cannula like a pen and aligns the catheter into the scleral dissection and into the ostium of the Schlemm's canal."[34]   After advancing the microcatheter inside the ostium of Schlemm's canal by sliding forward a manually controlled actuator on the handheld ophthalmic cannula, the clinician then withdraws the microcatheter from the Schlemm's canal by sliding the actuator back.[35]   As the microcatheter is withdrawn from Schlemm's canal, "viscoelastic is delivered into canal space by manual clockwise rotation of the knob on the ViscoInjector"—delivering high viscosity fluid into the canal.[36]

## STREAMLINE DEVICE

77.     I am also informed and understand that Defendants encourage a

---

[32] *Id*. at SGHT0168313 (underlining added).
[33] *Id.* at SGHT0168318.
[34] *Id*.
[35] *Id*.
[36] *Id*.

Combined Procedure using Hydrus and Streamline.  Mr. Catchings described to me in our communications in November 14, 2022 that he had seen that I had a Hydrus case on November 17, where he suggested that the Hydrus implantation procedure could be done with either OMNI or Streamline, and that he had not done any cases with Streamline yet.[37]  He also indicated that he was interested in this new combination again in February 9, 2023 texts with me, again checking in with me on February 15, 2023 to see if I was "doing a streamline Hydrus case" the next day.[38] He eventually observed the combination, and at his request his Alcon academic manager Charlie Green also observed my combination cases.[39]

78.    Ultimately, Defendants encouraged clinicians to use canaloplasty devices like OMNI and iTrack by sponsoring dinners and holding presentations that include video demonstrations of the Combined Procedures[40] and/or having their sales representatives provide Combined Procedure surgical technique videos[41] with Hydrus and one of these devices.  Streamline is also a canaloplasty device used to inject viscoelastic into Schlemm's canal, similar to OMNI and iTrack.

79.    I have also used the Streamline Surgical System in clinical practice with the Hydrus and attest that it "**deliver[s] a high viscosity fluid into Schlemm's**

---

[37] GALANIS00000002; GALANIS00000003.

[38] GALANIS00000014.

[39] GALANIS00000015; GALANIS00000016.

[40] *See* IVANTIS_SS_00456049.

[41] *See* GALANIS00000017.

canal."

80.   A representation of the device is reproduced below.



81.   According to its Instructions For Use, the Streamline is a "single-use disposable cannula for use during ophthalmic surgical procedures to deliver small amounts of ophthalmic viscoelastic fluid" and includes an "inner cutting cannula … intended to create incisions in the trabecular meshwork tissue."[42]  The Instructions For Use also describe how the Streamline cannula may be inserted through a corneal incision, pierce the trabecular meshwork, and inject viscoelastic directly into Schlemm's canal.

---

[42] SGHT0147894.

# EXHIBIT 12 (Excerpted)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, ALCON VISION, LLC, and ALCON INC., | ) | ███████████████ |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF SIGHT SCIENCES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-6)

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as all applicable local rules and this Court's Orders, Defendants Ivantis, Inc. ("Ivantis"), Alcon Research, LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants") hereby make the following objections and responses to the First Set of Interrogatories (Nos. 1–6), which were served by Plaintiff Sight Sciences, Inc. ("Sight") on April 18, 2022 ("Interrogatories").[1]

### OBJECTIONS TO SIGHT'S DEFINITIONS AND INSTRUCTIONS

1.     Defendants object to Sight's Instructions and Definitions to the extent they purport to impose upon Defendants discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

---

[1]   Alcon Research, LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Alcon Defendants") agreed to respond to Sight Sciences' First Set of Interrogatories by October 17, 2022.

████████████████████

| Study Title | Date Initiated | Date Completed | Locations |
|---|---|---|---|
| ██████████████ | ████ | ████ | ████ |
| ██████████████ | ████ | ████ | ████ |
| ██████████████ | ████ | ████ | ████ |
| ██████████████ | ████ | ████ | ████ |
| ██████████████ | ████ | ████ | ██████ |
| ██████████████ | ████ | ████ | ██████ |

Defendants' investigation is ongoing, and Defendants reserve the right to supplement, revise, or amend this response as discovery and Defendants' investigation in this Action proceed.

**INTERROGATORY NO. 5:**

Describe the factual and legal basis for Your First Defense (Non Infringement) in Your Answer to the Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 5:**

Ivantis objects to the extent that this Interrogatory prematurely seeks invalidity contentions, non-infringement contentions, and claim construction positions. Ivantis further objects to this

R$_{supp}$ is about 40% smaller than the radius of curvature of Schlemm's canal" (claim 12) or "wherein R$_{supp}$ is about 50% smaller than the radius of curvature of Schlemm's canal" (claim 13) or "wherein R$_{supp}$ is about 3 mm" (claim 14) because it has not shown how the inlet portion of the Hydrus Microstent that Plaintiff relies on satisfies the limitation. Plaintiff has not shown when infringement occurs for the limitation "wherein when the support is disposed within a cylindrical section of the lumen of the canal having an internal wall surface area C, the support contacts less than 30% of the C" (*see, e.g.*, claim 21) because the claim is indefinite. Indeed, Plaintiff does not set forth with any particularity how it calculates the percentage of internal wall surface area C that Hydrus contacts, and therefore falls short of satisfying its burden.

## 6/29/2023 SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

Defendants hereby incorporate by reference their previous objections and responses to this Interrogatory as if fully set forth herein. Subject to the foregoing general and specific objections, and without waiving any such objections, Defendants further respond that at least for the following reasons, Defendants do not infringe any valid asserted claim of the Patents-in-Suit (to the extent Plaintiff's contentions and allegations regarding the claim limitations can be understood):

Plaintiff only alleges Defendants literally infringe each asserted claim of the Patents-in-Suit. To prove literal infringement, the patentee must prove "that every element and limitation in a correctly construed claim is embodied in the accused system." *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010). Plaintiff fails to establish that Defendants literally infringe the asserted claims because Plaintiff has failed to establish that the accused Hydrus and packaging meets every limitation of the asserted claims.

Plaintiff has not provided details regarding how it understands Defendants induce or contribute to any direct infringement by others. "To prove inducement of infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015). "[T]he [party alleging infringement] has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements. The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). "To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aid[ed] and abett[ed] another's direct infringement…. However, knowledge of the acts alleged to constitute infringement is not enough. The mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Id.* at 1305 (internal quotations and citations omitted). Proving induced infringement "requires proof that the [alleged infringer] knew the acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642 (2015) (emphasis added) (noting that an alleged infringer is not liable for induced infringement where the alleged infringer reasonably reads the patent claims differently from the patent owner). Defendants do not induce and have not induced infringement of the Patents-in-Suit because Defendants do not specifically intend for another party to infringe the Patents-in-Suit and do not know that any other party's acts constitute infringement. Defendants have not taken any affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement.

To establish contributory infringement, the patent owner must show: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Plaintiff has not provided any details for its contributory infringement allegation. And as explained below, Plaintiff fails to show any direct infringement in support of its induced or contributory infringement allegations.

Defendants reserve the right to supplement and amend their responses to this contention interrogatory as the case progresses and as Plaintiff provides more information regarding the bases for its own contentions. The explanations provided below are not intended to represent the entire scope of Defendants' non-infringement of the Patents-in-Suit, but merely illustrate examples of manners in which the Patents-in-Suit are not infringed.

> (a)     **U.S. Patent No. 8,287,482 ('482 Patent)**

Plaintiff has the burden to show that the Defendants practice every limitation of the asserted claims or that Hydrus satisfies every limitation of the asserted claims. Plaintiff has not satisfied its burden. For example, Plaintiff has not shown when infringement occurs for the limitation "fluid may traverse the canal without substantial interference from the support" (*see, e.g.*, claim 1, 32, 63) because the claim is indefinite. Plaintiff has not shown when infringement occurs for the limitation "wherein when the support is disposed within a cylindrical section of the lumen of the canal having an internal wall surface area C, the support contacts less than 30% of the C" (*see, e.g.*, claim 1, 32, 63) because the claim is indefinite. Plaintiff does not set forth with any particularity how it calculates the percentage of internal wall surface area C that Hydrus Microstent contacts, and therefore falls short of satisfying its burden. Plaintiff has not shown that the Hydrus Microstent infringes the limitation "only a portion of the exterior surface of the support contacts

As to objections and contentions only,

/s/ Kat Li
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
Attorneys for Defendant

OF COUNSEL:
Gregg LoCascio
Justin Bova
Steven Dirks
Socrates Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Kat Li
Jeanne M. Heffernan
Austin Teng
Ryan Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Laura Zhu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Dated: June 29, 2023

## CERTIFICATE OF SERVICE

I, Kat Li, hereby certify that on June 29, 2023, this document was served on the persons

listed below in the manner indicated:

**BY EMAIL**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Bonnie Fletcher Price
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800
bfletcherprice@cooley.com

Dustin M. Knight
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190
(703) 456-8000
dknight@cooley.com

Michelle S. Rhyu
David Murdter
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
dmurdter@cooley.com
lstrosnick@cooley.com
amwood@cooley.com
cvanderwall@cooley.com

_/s/ Kat Li_____
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

_Attorney for Defendants_