IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Redacted – Public Version** |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | ████████████████████ |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**LETTER TO THE HONORABLE SHERRY R. FALLON**
**FROM KAREN E. KELLER**

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)

OF COUNSEL:                                SHAW KELLER LLP
Gregg LoCascio                             I.M. Pei Building
Sean M. McEldowney                         1105 North Market Street, 12th Floor
Justin Bova                                Wilmington, DE 19801
Steven Dirks                               (302) 298-0700
Socrates L. Boutsikaris                    jshaw@shawkeller.com
KIRKLAND & ELLIS LLP                       kkeller@shawkeller.com
1301 Pennsylvania Avenue, N.W.             arussell@shawkeller.com
Washington, DC 20004                       nhoeschen@shawkeller.com
(202) 389-5000                             *Attorneys for Defendants*

Jeanne M. Heffernan
Kat Li
Austin C. Teng
Ryan J. Melde
Lydia B. Cash
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Laura Zhu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: August 8, 2023

Dear Judge Fallon:

Sight Sciences, Inc.'s ("Sight") current motion contradicts this Court's July 24, 2023 Order and Sight's own arguments in this case. Two weeks ago, Sight argued that excluding relevant evidence because it was produced after the close of fact was an "extreme sanction," warranted only after "a showing of willful deception or flagrant disregard[.]" D.I. 262 at 2 (quoting *Meyers v. Pennypack Woods Home Ownership Assn*., 559 F.2d 894, 904-05 (3d Cir. 1977)). Sight took this position because it waited to produce evidence after discovery ended and only ***a few hours*** before the deposition of the custodian of that evidence. The Court allowed that evidence, in large part because it found that any prejudice from the late production could be cured through a deposition, and there was no evidence of bad faith. D.I. 256.

That analysis also applies here, and the Court should permit Alcon's relevant evidence and deny Sight's Motion. While preparing to depose Paul Badawi, Sight's CEO, Alcon discovered that Mr. Badawi had communicated with Catherine Truitt, an Alcon employee, regarding a potential investment by Alcon into Sight. Surprisingly, however, Sight produced only a single document bearing Ms. Truitt's name, despite the fact that Mr. Badawi was an ESI custodian who testified he never deleted a single work-related email since 2006. *See* Ex. 1 ( June 23, 2023 Badawi Dep. Tr. at 188:10-12) ("I can say this to you, all of my Sight Sciences documents and emails exist, and nothing has been deleted. Nothing."); *see also* Ex. 2 (June 26, 2023 Badawi Dep. Tr. at 273:2–277:12). Because Sight sought a 30(b)(6) witness on a topic related to discussions between Alcon and Sight, Alcon amended its initial disclosures, listed Ms. Truitt as knowledgeable regarding those discussions, and offered her for deposition. Alcon then investigated whether Ms. Truitt had relevant documents and produced documents identified by Ms. Truitt as related to those discussions and Ms. Truitt's emails with Paul Badawi. Those 190 documents, all but five of which were sent to or from Sight Sciences or Mr. Badawi directly as CEO, were produced two weeks prior to Ms. Truitt's initially scheduled deposition date, giving Sight ample time to review. Now, Sight asks the Court to preclude Alcon's reliance on those documents, despite the fact that Sight should have produced the very same documents long before. Sight tilts at a prejudice argument, yet none exists. And if any prejudice did exist, it is the result of Sight's failure to produce documents during fact discovery, not Alcon's. The Court should deny Sight's motion.

## I.  Factual Background

Sight's "factual" background section is riddled with inaccuracies, suggesting that Alcon refused to produce the types of documents it recently produced. That is untrue. Contrary to Sight's assertions, at no point did Alcon refuse to produce documents responsive to RFP Nos. 156 and 157; rather, recognizing that RFP No. 156 appeared to ask for additional ESI custodians by listing seven individuals (all of whom are former employees), and that RFP No. 157 sought documents dated more than six years prior to the filing of the Complaint (without setting forth the required good cause), Defendants requested to meet and confer regarding the scope of these requests. During the meet-and-confer, Defendants asked Sight for additional information regarding the scope, context, and relevance of RFP Nos. 156 and 157 to determine whether Defendants would agree to produce potentially responsive documents despite the facial shortcomings of the requests. Sight agreed to follow up with such information, but in the follow-up correspondence, Sight simply stated that it considered RFP Nos. 156 and 157 "to be resolved." D.I. 264, Ex. 5. Sight sought

nothing further with respect to these RFPs; thus Alcon assumed Sight had dropped the issue. Yet Sight subsequently served a 30(b)(6) notice on May 4, 2023 seeking testimony regarding Alcon's "interactions… with Paul or David Badawi." *See* Ex. 3 (Sight's 30(b)(6) Notice to Alcon) at Topic No. 66.

Notably, Catherine Truitt, Senior Director, External Innovation and Corporate Strategy at Alcon, was not one of the individuals listed in RFP No. 156, and therefore, Alcon was unaware of her, which is not unsurprising given that Alcon employs thousands of individuals. It was not until preparing for the June 23 and 26, 2023 deposition of Paul Badawi, Sight's CEO (the head of a roughly 10 to 200-person company over the time period), that Defendants first became aware of Ms. Truitt, whose name appeared on a *single* document produced by Sight. *See* Ex. 4 (SGHT0130748); D.I. 264, Ex. 7. Upon discovering this information, Defendants promptly amended their Initial Disclosures to include Ms. Truitt and designated Ms. Truitt as the Alcon corporate designee on Sight's 30(b)(6) Topic 66 to Alcon, which asked for testimony regarding "[a]ll interactions You have had with Paul or David Badawi."[1] *See* D.I. 264, Exs. 6–8. Defendants also offered Ms. Truitt for deposition on July 27, immediately following her return from a previously scheduled trip to her native country of France with her family. *See* D.I. 264, Ex. 7. After Sight rejected Defendants' proffered July 27 deposition date and waited two weeks to propose an alternative, the parties agreed to hold Ms. Truitt's deposition on August 4. *See* Ex. 5 (July 7, 2023 email from N. Frank); D.I. 264, Ex. 3 at 2.

In the weeks that followed, Defendants worked diligently to locate and review any communications between Ms. Truitt and Paul Badawi and documents related to those discussions. Defendants produced 190 documents, 149 of which are emails and attachments that include Paul Badawi on the correspondence. Defendants produced those documents to Sight on July 21, 2023, two weeks before Ms. Truitt's agreed-upon deposition date. *See* D.I. 264, Ex. 3 at 1–2. Notably, these documents should have been produced *by Sight*, as Mr. Badawi was an ESI custodian, and the large majority of them hit on the parties' search terms. Of the remaining 41 documents in the production, all of which were located on an archive identified by Ms. Truitt that was produced in full, 36 appear to have been provided to Alcon by Sight. As Sight admits, only five documents in the production are Alcon internal documents, all of which are presentations directly related to the discussions between Alcon and Sight and information received from Sight. While Sight has overstated the size of the production as being "nearly 1000 pages," only 38 of the 828 pages produced were internal to Alcon.

Despite producing these documents two weeks prior to Ms. Truitt's agreed-upon deposition date, Sight requested the deposition be rescheduled to August 24, 2023, one week after rebuttal expert reports. *See* D.I. 264, Ex. 16.

## II.      Legal Standard

---

[1]   Defendants had not previously designated a witness on Topic 66, as Defendants were unaware of any interactions between the Badawis and Alcon, nor had Sight identified a knowledgeable witness.

"The exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Pennypack*, 559 F.2d at 905 (quoting *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir. 1977)). The *Pennypack* factors all favor denial of Sight's motion.

### A.    Factor No. 1 (Importance of the Information)

Sight's argument regarding importance is illogical because if the documents were not important, Sight would not have asked for them during discovery and would not now be moving the Court to preclude. In any event, the documents are relevant because they evidence a litigation-independent viewpoint regarding the value of the technology at issue in this case. *See, e.g.*, D.I. 264, Ex. 10. These communications thus rebut Sight's damages demands, weighing against their exclusion. And while Sight suggests that patent infringement relates only to Defendants' technology, that is nonsensical; of course Sight's Asserted Patents relate to Sight's technology, which it claims embodies its patents. *See* Ex. 6 (Pl.s Objs. & Resps. to Defs' Interrog. No. 14).

### B.    Factor No. 2 (Prejudice or Surprise) and No. 4 (Possibility of Curing)

Sight cannot credibly make a showing of prejudice given the overwhelming majority of these documents are correspondence ***with Sight's own witness, Paul Badawi, the CEO and Co-Founder of Sight and co-inventor on all of the Asserted Patents in this case***. As Sight admits, all but five of the non-email documents were sent to or from Paul Badawi or Sight; thus, Sight should have already possessed these documents and should have produced them. *See Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017) ("because [Defendant] already had its own copies of the same documents, any untimely disclosure by [Plaintiff] was harmless"); *Crawford v. George & Lynch, Inc.*, 19 F. Supp. 3d 546, 552-53 (D. Del. 2013) (no prejudice when late-produced documents contained information already in the record). Sight's failure to produce these documents during fact discovery calls into question Sight's document preservation (given it believed since at least 2009 that Ivantis infringed) as well as the reasonableness of Sight's document collection, review, and production. *See* Ex. 1 (June 23, 2023 Badawi Dep. Tr. at 89:17–22). And while Sight complains that Alcon has selectively produced documents or not produced underlying documents, Alcon produced the entirety of the archive identified by Ms. Truitt. To the extent Sight has questions about the final assessments, they can ask Ms. Truitt. Thus, any prejudice to the Sight is cured by its ability to depose Ms. Truitt regarding the produced communications on August 24, by which time Sight will have had nearly five weeks to review the documents and prepare for Ms. Truitt's deposition. *Helios Software, LLC v. SpectorSoft Corp*., 2014 WL 3611321, at *2 (D. Del. July 18, 2014) (denying motion to exclude evidence in part because the prejudice could "be cured by a short deposition"); *Callwave Commc'ns, L.L.C. v. AT&T Mobility LLC,* 2015 WL 13730253 (D. Del. Dec. 17, 2015) (same).

Grasping at straws, Sight argues that any prejudice cannot reasonably be cured because it is too late to depose the authors of the produced internal Alcon presentations, including one Jennifer Brady. D.I. 264 at 3. That argument fails. Jennifer Brady was a third-party consultant, employed by MSL Group, who created the underlying presentation template. *See* Ex. 7 (Jennifer Brady LinkedIn Profile). Ms. Truitt is the custodian of the documents, has personal knowledge about them, and will testify about them as a 30(b)(6) witness. *See* D.I. 264, Exs. 6–8. As to the single

remaining presentation, Ms. Truitt is listed as the first author. *See* D.I. 264, Ex. 13 at IVANTIS_SS_00459004. Sight musters a complaint that it will not have the opportunity to depose the other four authors, but that rings hollow.[2]

### C.   Factor No. 3 (Likelihood of Disrupting Trial)

Trial will not be disrupted by the production of or reliance upon these documents. These communications and related documents were produced just weeks after the close of fact discovery. *See* D.I. 264, Ex. 3 at 1–2. Further, while the communications are unlikely to impact expert discovery, they were produced well in advance of the deadline for rebuttal expert reports (August 17, 2023), reply reports (September 7, 2023), and expert depositions, which have yet to be scheduled. Likewise, Defendants offered Ms. Truitt for deposition on July 27, 2023, well in advance of expert discovery deadlines. Sight chose not to accept that date, instead pushing Ms. Truitt's deposition until after rebuttal reports.

### D.   Factor No. 5 (Explanation) and 6 (Bad Faith or Willfulness)

Defendants were not willful in "failing" to disclose Ms. Truitt or by allegedly delaying production of responsive documents. Courts in the Third Circuit tend to reserve a finding of willfulness or bad faith "for clear, extreme examples of such conduct." *Novartis Pharms. Corp. v. Actavis, Inc.*, 2013 WL 7045056 at *11 (D. Del. Dec. 23, 2013); *Withrow v. Spears*, 967 F. Supp. 2d 982, 1006 (D. Del. Aug. 22, 2013) (denying exclusion of evidence where the record would not "support the type of heightened or 'egregious' showing required by the Circuit's case law"). Sight's unfounded lack-of-diligence argument cannot support the extreme remedy of excluding this critical evidence, as the Third Circuit has held that "'[l]ack of diligence' does not constitute bad faith." *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 793 (3d Cir. 1994).

Alcon is the world's largest ophthalmic company with approximately 25,000 employees, of which Ms. Truitt is but one. Because Ms. Truitt was not an ESI custodian, Defendants had no obligation to search her documents or email. Indeed, Defendants were unaware of Ms. Truitt's involvement until Mr. Badawi's deposition, after which Defendants promptly updated their Initial Disclosures and notified Sight that Ms. Truitt was going to testify regarding communications between Alcon and Sight. *See* D.I. 264, Exs. 6–8. Further, Defendants worked diligently to identify, collect, and produce those potential communications two weeks before Ms. Truitt's initially scheduled deposition, providing more than enough time to review these documents and prepare for Ms. Truitt's deposition. The Court should deny Sight's motion.

---

[2]   The cases cited by Plaintiff are inapposite. *See Bridgestone Sports Co., Ltd. v. Acushnet Co.*, 2007 WL 9811093, at *2 (D. Del. May 24, 2007) (prejudice where defendants sought to rely on results of a test but plaintiff could not cross-examine where physical samples and measurements had been lost or destroyed); *Liqwd, Inc. V. L'Oreal USA, Inc.*, 2019 WL 7945247, at *1-2 (D. Del. June 25, 2019) (prejudice where witnesses were disclosed well after the close of fact and expert discovery, deadline for dispositive motions had passed, and trial was only 30 days away); *Finch v. Hercules Inc.*, 1995 WL 785100, at *9-10 (D. Del. Dec. 22, 1995) (excluding trial witness and documents disclosed on eve of trial).

Respectfully submitted,

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)

cc:    Clerk of Court (by CM/ECF & Hand Delivery)
        All Counsel of Record (by CM/ECF & Email)

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on August 8, 2023, this document was served on

zsightsciencesivantis@cooley.com and the persons listed below in the manner indicated:

**BY EMAIL**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Dustin M. Knight
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190
(703) 456-8024
dknight@cooley.com

Michelle S. Rhyu, J.D., Ph.D.
Lauren Strosnick
Alissa Wood
Angela R. Madrigal
Juan Pablo Gonzalez
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
lstrosnick@cooley.com
amwood@cooley.com
jgonzalez@cooley.com
amadrigal@cooley.com

Bonnie Fletcher Price
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 776-2099
bfletcherprice@cooley.com

*/s/ Karen E. Keller*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

# EXHIBIT 1
# (excerpted)





# Transcript of Paul Badawi, Designated Representative

**Date:** June 23, 2023
**Case:** Sight Sciences, Inc. -v- Ivantis, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of Paul Badawi, Designated Representative                 1 (1 to 4)
Conducted on June 23, 2023

---

**Page 1**

```
 1              UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF DELAWARE

 3

 4   SIGHT SCIENCES, INC.,        )

 5         Plaintiff,             )

 6     VS.                        )  NO. 21-1317-GBW-SRF

 7   IVANTIS, INC., ALCON         )
     RESEARCH, LLC, ALCON VISION, )
 8   LLC, AND ALCON INC.,         )

 9         Defendants.            )
10   ----------------------------)

11

12

13

14

15

16            VOLUME I
17   IN-PERSON VIDEOTAPED DEPOSITION OF
             PAUL BADAWI
18     Designated Representative

19       FRIDAY, JUNE 23, 2023

20

21

22

23

24   STENOGRAPHIC REPORTER:  CHRISTA YAN, CSR NO. 14316, RPR

25
```

**Page 2**

```
 1   IN-PERSON APPEARANCES:

 2   FOR PLAINTIFF:
         COOLEY, LLP
 3       BY:  MICHELLE RHYU, ATTORNEY-AT-LAW
         3175 Hanover Street, Suite 300
 4       Palo Alto, California 94304-1130
         (650) 843-5000
 5       mrhyu@cooley.com

 6   FOR DEFENDANTS:
         KIRKLAND & ELLIS, LLP
 7       BY:  JEANNIE HEFFERNAN, ATTORNEY-AT-LAW
              NOAH FRANK, ATTORNEY-AT-LAW
 8            JUSTIN BOVA, ATTORNEY-AT-LAW
         601 Lexington Avenue
 9       New York, New York 10022
         (212) 446-4800
10       jheffernan@kirkland.com

11

12

13   IN-PERSON VIDEOGRAPHER:  LUCIEN NEWELL

14

15

16   REMOTE APPEARANCES:

17   JEREMY HAYDEN
     ADAM PIERSON
18   NATHANIEL DELUCIA

19

20

21

22              --oOo--

23

24

25
```

**Page 3**

```
 1              INDEX OF EXAMINATIONS

 2                                        PAGE

 3   MS. HEFFERNAN                          8

 4

 5

 6

 7

 8              --oOo--

 9

10

11

12

13   Witness's Signature                  263

14   Reporter's Certificate               264

15

16

17

18

19

20              --oOo--

21

22

23

24

25
```

**Page 4**

```
 1              E X H I B I T S
 2   EXHIBIT     FOR IDENTIFICATION        PAGE
 3   Exhibit 1  -  Defendants' Notice of Deposition   10
 4       of Plaintiff Pursuant to 30(b)(6)
 5   Exhibit 2  -  Message from Mika Mayer sent       99
 6       Friday December 19, 2008
 7       Subject Badawi Application
 8       SGHT0029569
 9   Exhibit 3  -  Message from Paul Badawi sent     120
10       Thursday December 18, 2008
11       Subject Re: Fw: Badawi Patent
12       Application SGHT0116268
13   Exhibit 4  -  Grant Application Package         138
14       Grants Gov SGHT0026782
15   Exhibit 5  -  Summary Statement, Application    158
16       Organization Sight Sciences, Inc.
17       SGHT0116857
18   Exhibit 6  -  Message to David Badawi sent      172
19       Thursday November 17, 2011
20       Subject Re: NEI, Attachment
21       SGHT0032598
22   Exhibit 7  -  Message from David Badawi sent    197
23       Saturday September 17, 2011
24       Subject Fwd: Google Alert Ivantis
25       SGHT0031043
```

Transcript of Paul Badawi, Designated Representative
Conducted on June 23, 2023

2 (5 to 8)

---

**5**

E X H I B I T S Cont'd

| EXHIBIT | FOR IDENTIFICATION | PAGE |
|---|---|---|
| Exhibit 8 - | Message from Walter Fabisiak sent | 203 |
| | Wednesday March 23, 2011 | |
| | Subject Re: Sight Sciences | |
| | SGHT0030772 | |
| Exhibit 9 - | Message from Paul Badawi sent | 208 |
| | Thursday October 8, 2015 | |
| | Subject Re: Follow Up From Today's | |
| | Call SGHT0130748 | |
| Exhibit 10 - | Message from Paul Badawi sent | 218 |
| | Monday June 11, 2012 | |
| | Subject Fwd: Good News | |
| | SGHT0131933 | |
| Exhibit 11 - | Sight Sciences, May 6, 2023 | 247 |
| | Announces 12-Month Results | |
| Exhibit 12 - | Message from Alison Harvey sent | 256 |
| | Friday October 7, 2022 | |
| | Subject Shan Fan IIT Update | |
| | SGHT0033627 | |

--oOo--

---

**6**

1 BE IT REMEMBERED that on FRIDAY, the 23RD DAY OF
2 JUNE, 2023, at the hour of 9:06 A.M., of said day, at
3 3175 Hanover Street, Palo Alto California, 94304, before
4 me personally, CHRISTA YAN, a Certified Shorthand
5 Reporter, State of California, personally appeared PAUL
6 BADAWI, Designated Representative who was examined as a
7 witness in said cause;
8 That said transcript format was prepared in accordance
9 with California Code of Regulations Section 2473.
10
11
12
13
14
15
16
17 --oOo--
18
19
20
21
22
23
24
25

---

**7**

1 THE VIDEOGRAPHER: Here begins Media Number 1 in the
2 videotaped deposition of Paul Badawi in the matter of
3 Sight Sciences, Inc., vs. Ivantis, Inc., et al., in the
4 United States District Court for the District of Delaware,
5 Case Number 211317VACSRF.
6 Today's date is June 23rd, 2023. The time on the
7 video monitor is 9:06 a.m., Pacific Standard Time. The
8 videographer today is Lucien Newell representing Planet
9 Depos. This video deposition is taking place at 3175
10 Hanover Street, Palo Alto California, 94304.
11 Would counsel please voice identify themselves
12 and state whom they represent.
13 MS. HEFFERNAN: Jeannie Heffernan, Kirkland & Ellis
14 representing the Defendants in the case. With me are Noah
15 Frank and Justin Bova. Nathaniel DeLucia's on Zoom and
16 Adam Pierson is here by Zoom. He's in-house counsel for
17 Alcon.
18 MS. RHYU: Michelle Rhyu of the Cooley firm on behalf
19 of Sight Sciences and the witness.
20 MR. HAYDEN: Jeremy Hayden, Chief Legal Officer of
21 Sight Sciences.
22 THE VIDEOGRAPHER: Okay. The court reporter today is
23 Christa Yan representing Planet Depos. The witness will
24 now be sworn.
25 PAUL BADAWI,

---

**8**

1 the Witness, called on behalf of the Defendants, being
2 duly sworn to state the truth, the whole truth, and
3 nothing but the truth, testified on oath as follows:
4 EXAMINATION
5 BY MS. HEFFERNAN:
6 Q Good morning, Mr. Badawi.
7 A Good morning.
8 Q Will you please state your name, your full name
9 for the record?
10 A Paul Badawi.
11 Q And where do you live?
12 A I live in Atherton, California.
13 Q What's your address?
14 A 64 Irving Avenue.
15 Q And what is your business address?
16 A 4040 Campbell Avenue, Menlo Park, California.
17 Q Have you ever been deposed before?
18 A I have not.
19 Q Okay. I'm sure you've gone over it with your
20 counsel, but you and I need to take turns speaking so the
21 court reporter can get a clean record. Okay?
22 A Okay.
23 Q And you do need to answer verbally so that the
24 court reporter can take down your answer. Okay?
25 A Okay.

---

Transcript of Paul Badawi, Designated Representative
Conducted on June 23, 2023

23 (89 to 92)

89

1 and litigation, you know, that's -- that comes into effect
2 only if something makes it to commercialization. You
3 wouldn't litigate on something precommercial. So I think
4 again, I think it was 2018 when Hydrus was launched.
5    Q   Why wouldn't you litigate on something before
6 it's commercially launched?
7    MS. RHYU:  And there, I just instruct you not to
8 reveal the substance of any communications with counsel.
9 If you have a separate understanding, if you extract out
10 your communications with counsel, you can answer that
11 question, go ahead.  Otherwise, I instruct you not to
12 answer.
13    THE WITNESS:  That's just my understanding of
14 infringement litigation is when, you know, something is
15 commercial and... that's just my understanding of it.
16 BY MS. HEFFERNAN:
17    Q   In terms of seeing and looking at the Hydrus and
18 thinking that it was covered by your claims, when did you
19 first draw that conclusion or have that impression?
20    A   I think it was pretty early on. And I can't
21 recall the exact moment, but it was pretty early on when I
22 first saw it. I don't know if it was 2008 or 2009.
23    Q   Do you remember in connection with -- strike
24 that.
25       Do you remember how you became aware of Hydrus

90

1 during that time frame?
2    A   There are different possibilities. It was so
3 long ago. It could have been, it could have been
4 something I saw online. It could have been a press
5 release on a development around it or a fundraising or...
6 I can't -- I can't remember exactly how.
7       But I think it was around that, that time frame.
8    Q   Was that -- did you come to the conclusion that
9 Hydrus was covered by your claims -- or sorry, when you
10 came to the conclusion that Hydrus was covered by your
11 claims in that 2008, 2009 time frame, did you think about
12 bringing litigation?
13    MS. RHYU:  Objection; assumes facts and misstates the
14 prior testimony.
15    THE WITNESS:  No. I think, you know, invention, when
16 I looked at it, I thought that it's, you know, it's
17 something that looks like what we invented.
18 BY MS. HEFFERNAN:
19    Q   Right.
20       Did you think about telling Ivantis, the owner of
21 the Hydrus, the company that owns the Hydrus, about that?
22    A   I didn't. I don't think I -- I don't think I
23 thought about calling them and saying hello. But I
24 think -- I think the first interaction was actually the
25 Ivantis folks or their patent attorney or board member

91

1 investor, I think, reaching out to us maybe.
2    Q   And do you recall whether you had already known
3 of Hydrus and the belief that it -- it fell within the
4 scope of your claims prior to that meeting that you had?
5    MS. RHYU:  Assumes facts.
6    THE WITNESS:  Can you repeat the question?
7 BY MS. HEFFERNAN:
8    Q   Do you recall whether you had already known of
9 Hydrus and had the belief that it fell within the scope of
10 your claims prior to that meeting that you had in the
11 2008, 2009 time frame with the investor in Ivantis?
12    MS. RHYU:  Assumes facts.
13    THE WITNESS:  Yeah, again, all I -- what I recall
14 thinking was it looks like what I see in front of me, is
15 what we invented in 2006. So... is that answering your
16 question?
17 BY MS. HEFFERNAN:
18    Q   Partly. Yeah. And so I'm wondering whether you
19 came to that conclusion before you had the meeting with
20 Ivantis's investor.
21    A   I think they -- I think they wanted to have the
22 meeting because they knew of our invention.
23    Q   I'm asking about your knowledge. Not asking you
24 to speculate about why Ivantis wanted to hold a meeting.
25 So my question was, whether you had come to the conclusion

92

1 that Hydrus was covered by your invention, whether you
2 came to that conclusion before you had the meeting with
3 Ivantis's investor.
4    A   I don't -- I don't think I -- I wouldn't be
5 the -- coming to a conclusion, I don't know if that's how
6 I would characterize. That's... again, I -- that's a --
7 that's a bigger, bigger analysis to arrive at a
8 conclusion, but I looked at it again, me personally,
9 looked at it. I know what we invented in 2006. And in
10 looking at it, it seemed to me that it was, you know,
11 trying to achieve what we invented if you just look at,
12 look at its design.
13    Q   All right. Did you call that to Ms. Mayer's
14 attention?
15    MS. RHYU:  I instruct you not to answer.
16    THE WITNESS:  Yeah, I guess that's -- yeah. And,
17 yeah, I won't answer.
18 BY MS. HEFFERNAN:
19    Q   You're going to follow your counsel's
20 instruction?
21    A   I'm guessing I can, yes.
22    Q   Not can you, but are you?
23    A   Yeah.
24    Q   Are you following your counsel's instruction?
25    A   Sure.

Transcript of Paul Badawi, Designated Representative
Conducted on June 23, 2023

47 (185 to 188)

185

1   cross talk.)
2       THE STENOGRAPHIC REPORTER: Sorry. You're talking
3   over one another.
4       MS. HEFFERNAN: Sorry. Thanks, Christa.
5       THE WITNESS: Okay. Maybe this is Outlook. If you
6   know this is Outlook, then it's Outlook.
7   BY MS. HEFFERNAN:
8       Q   I mean, I'm not going to represent that to you.
9   I was just asking you.
10      A   I don't know.
11      Q   So GoDaddy is an ISP provider. Were they hosting
12  your Sight Sciences website at the time?
13      **A   If we had one. I don't remember when we first**
14  **started —**
15      Q   Okay.
16      **A   — a website.**
17      Q   How were you storing documents at the time?
18      MS. RHYU: Again, this is outside the scope of the
19  30(b)(6) testimony.
20      THE WITNESS: Well, I'm thinking about the email.
21  Documents themselves?
22  BY MS. HEFFERNAN:
23      Q   Any documents.
24      **A   Oh, my computer for sure. I had a laptop.**
25      Q   Okay. And what filing system were you using on

186

1   your computer?
2       **A   Word.**
3       Q   So you were using Word as a document processing
4   application, yeah?
5       **A   Yeah, and we would store files and...**
6       Q   Where would you store files, on a folder on your
7   desktop?
8       **A   Yeah, desktop. I'd often have stuff on the**
9   **desktop then in folders within — right, some documents on**
10  **the desktop itself and then some buried within folders.**
11      Q   Okay. And would you save your emails related to
12  clinical trials and applying for funding and interactions
13  with investors and the like?
14      **A   Yeah, I save everything.**
15      Q   Okay. And where would you save it, like emails,
16  would you folder your emails related to Sight Sciences
17  topics?
18      **A   Oh, I just leave them. I leave them in the**
19  **inbox, and then those inboxes, when they grow so big it**
20  **starts getting slow, so then I would move a lot of those**
21  **emails, like years of emails, into archive. So on my**
22  **current computer, that has years and years and years of**
23  **emails, the older stuff are — they're in like inbox**
24  **archives, sent archive.**
25      Q   Okay. Do you -- do you have those archives going

187

1   all the way back to, you know, 2008, 2009, 2006?
2       **A   I think early, those earlier years was — I think**
3   **it was mostly Yahoo for me.**
4       Q   Okay.
5       **A   And then at some point, we got a Sight Sciences**
6   **email address — you know what? It must have been before**
7   **when we closed the Series A. I think, I think as we were**
8   **closing in on financing or having, you know, more**
9   **discussions with investors, I think we — and we had named**
10  **the company, that we wanted to set up an actual Sight**
11  **Sciences address so...**
12      Q   Okay.
13      **A   So —**
14      Q   How would you share documents with David and Dan
15  around this time? Did you have a shared drive on a
16  network server that you could all access and exchange
17  documents on?
18      **A   I can't recall. I think we all had our**
19  **computers. I think I used to send documents via email.**
20  **Like we would create documents and send them to one**
21  **another via email. That's my recollection.**
22      Q   You don't still have your computer from 2011, do
23  you?
24      **A   I don't know if that was part of this, I think**
25  **computers were collected. I don't know.**

188

1       Q   So you still have your computer from 2011?
2       **A   I don't know which one was collected. But I**
3   **believe — I believe all the emails, everything was —**
4   **everything has been copied like over, I believe. So I**
5   **think if I go on my Outlook today, I can go back all the**
6   **way.**
7       Q   Okay.
8       **A   And then I think all the files, like, you know,**
9   **you get a new computer, you just mirror everything over.**
10      **So I can say this to you, all of my Sight**
11  **Sciences documents and emails exist, and nothing has been**
12  **deleted. Nothing.**
13      Q   Okay. Is the same true -- would you know if the
14  same is true for your brother, David Badawi?
15      **A   I would believe.**
16      MS. RHYU: Calls for speculation.
17      THE WITNESS: Yeah.
18      MS. HEFFERNAN: The question was do you know, and so
19  that doesn't call for speculation. I asked him if he
20  knows.
21  BY MS. HEFFERNAN:
22      Q   So you can answer.
23      **A   I would believe so, but you'd have — I mean,**
24  **you'd have to ask him. I would think so.**
25      Q   Okay.

# EXHIBIT 2
# (excerpted)





# Transcript of Paul Badawi, Designated Representative, Volume 2

**Date:** June 23, 202S

**Case:** i ght ci sgensel , .ns- vav .al ncj , .ns-, ecl 8

**Planet Depos**

**Phone:** 444-7SS-S636

**Email:** crl nl srcpd @p8 nec depol -som

**www.planetdepos.com**

Transcript of Paul Badawi, Designated Representative, Volume 2
Conducted on June 26, 2023

1 (too 4) to25

---

**266**

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF DELAWARE

 3

 4   SIGHT SCIENCES, INC.,    )

 5        Plaintiff,          )

 6   VS.                      )   NO. 21-1317-GBW-SRF

 7   IVANTIS, INC., ALCON     )
     RESEARCH, LLC, ALCON VISION, )
 8   LLC, AND ALCON INC.,     )

 9        Defendants.         )
     _____  )
10

11

12

13

14          ██  ████████████████

15          ████████████████████
                 VOLUME II
16          IN-PERSON VIDEOTAPED DEPOSITION OF
17                   PAUL BADAWI
18              Designated Representative

19              MONDAY, JUNE 26, 2023

20

21

22

23

24

25   STENOGRAPHIC REPORTER:  CHRISTA YAN, CSR NO. 14316, RPR
```

---

**267**

```
 1   IN-PERSON APPEARANCES:

 2   FOR PLAINTIFF:
        COOLEY, LLP
 3      BY:  MICHELLE RHYU, ATTORNEY-AT-LAW
        3175 Hanover Street, Suite 300
 4      Palo Alto, California 94304-1130
        (650) 843-5000
 5      mrhyu@cooley.com

 6   FOR DEFENDANTS:
        KIRKLAND & ELLIS, LLP
 7      BY:  JEANNIE HEFFERNAN, ATTORNEY-AT-LAW
        601 Lexington Avenue
 8      New York, New York 10022
        (212) 446-4800
 9      jheffernan@kirkland.com

10

11

12   IN-PERSON VIDEOGRAPHER:  JOE RAMIREZ

13

14

15   REMOTE APPEARANCES:

16   JEREMY HAYDEN, in-house counsel, Sight Sciences
     ADAM PIERSON, in-house counsel, Alcon
17   NATHANIEL DELUCIA, Attorney with Kirkland Ellis
     NOAH FRANK, Attorney with Kirkland Ellis
18   JUSTIN BOVA, Attorney with Kirkland Ellis

19

20

21                    --oOo--

22

23

24

25
```

---

**268**

```
 1              INDEX OF EXAMINATIONS

 2                                         PAGE

 3   MS. HEFFERNAN                         272

 4   MS. RHYU                              381

 5

 6

 7

 8

 9                    --oOo--

10

11

12

13

14   Witness's Changes or Corrections     385

15   Reporter's Certificate               387

16

17

18

19

20                    --oOo--

21

22

23

24

25
```

---

**269**

```
 1                E X H I B I T S

 2   EXHIBIT       FOR IDENTIFICATION       PAGE

 3   Exhibit 13 -  Paul Badawi Notes         294

 4   Exhibit 14 -  OMNI Regulatory Timeline  295

 5   Exhibit 15 -  Helix Data FY22-23 Pivot  295

 6   Exhibit 16 -  Helix Data FY22-23 Helix Data  297

 7

 8

 9

10

11                    --oOo--

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Transcript of Paul Badawi, Designated Representative, Volume 2     t (t83 4) t895
Conducted on June 26, 2023

---

270

```
1      BE IT REMEMBERED that on MONDAY, the 26TH DAY OF
2   JUNE, 2023, at the hour of 9:14 A.M., of said day, at
3   3175 Hanover Street, Palo Alto California, 94304, before
4   me personally, CHRISTA YAN, a Certified Shorthand
5   Reporter, State of California, personally appeared PAUL
6   BADAWI, Designated Representative, who was examined as a
7   witness in said cause; that said transcript format was
8   prepared in accordance with California Code of Regulations
9      Section 2473.
10
11
12
13
14
15
16          --oOo--
17
18
19
20
21
22
23
24
25
```

---

271

1      THE VIDEOGRAPHER: Here begins Media Number 1 in the
2   videotaped deposition of Paul Badawi in the matter of
3   Sight Sciences, Inc., vs. Ivantis, Inc., et al., in the
4   United States District Court for the District of Delaware,
5   Case Number 21-1317-GBW-SRF. Today's date is June 26,
6   2023. The time on the video monitor is 9:14 a.m., Pacific
7   Standard Time.
8          The videographer today is Joe Ramirez
9   representing Planet Depos. This video deposition is
10   taking place at Cooley LLP, Palo Alto. Would counsel
11   please voice identify themselves and state whom they
12   represent.
13      MS. HEFFERNAN: Jeannie Heffernan of Kirkland & Ellis
14   for the Defendants, and with me on the Zoom are Noah
15   Frank, Justin Bova and Nathaniel DeLucia, also of Kirkland
16   & Ellis, and Adam Pierson of Akon.
17      MS. RHYU: Michelle Rhyu of Cooley representing Sight
18   Sciences and the witness, and with me on Zoom is our
19   in-house counsel Jeremy Hayden.
20      THE VIDEOGRAPHER: The court reporter today is Christa
21   Yan representing Planet Depos. The witness will now be
22   sworn.
23          PAUL BADAWI,
24   the Witness, called on behalf of the Defendants, being
25   duly sworn to state the truth, the whole truth, and

---

272

1   nothing but the truth, testified on oath as follows:
2          EXAMINATION
3   BY MS. HEFFERNAN:
4      Q   Good morning, Mr. Badawi. Welcome back.
5      A   Good morning, thank you.
6      Q   Do you understand that you have been under oath
7   since you took the oath on Friday morning?
8      A   Yes.
9      Q   Did you discuss your testimony with anyone?
10      A   No.
11      Q   Did you do anything to prepare for today's
12   deposition? I mean this part of the deposition, apart
13   from what we discussed on Friday.
14      A   No.
15      Q   So nothing, no additional preparation over the
16   weekend?
17      A   No.
18      Q   Okay. Did you search for any documents over the
19   weekend?
20      A   I don't believe... I don't think so.
21      Q   What are you a little confused about?
22      A   Well, busy weekend. So... I'd like to answer
23   accurately. I don't think I did.
24      Q   Okay. Did you review any documents over the
25   weekend for today's deposition?

---

273

1      A   I don't think I did.
2      Q   Does Sight Sciences have a document retention
3   policy?
4      A   We do.
5      Q   And is that a formal written policy?
6      A   I'd have to check with our IT, head of IT. But I
7   believe, I believe we do have a formal policy.
8      Q   Okay. When was that policy put into place?
9      A   As it relates to this litigation?
10      Q   No.
11          Just in general, document retention policy. When
12   was the first document retention policy put into place?
13      A   I can't recall. I... I mean, I know just a
14   general, general matter, we keep all of our documents.
15      Q   Forever?
16      A   Yeah, I mean, we don't, we don't (indecipherable
17   utterance) delete documents. So...
18      THE STENOGRAPHIC REPORTER: We don't what?
19      THE WITNESS: Delete documents.
20   BY MS. HEFFERNAN:
21      Q   You've never deleted an email that you've
22   received ever in the course of your work?
23      A   No, I have, I have. I generally try to keep all
24   of my work emails. I delete spam. You know, I delete,
25   yeah, stuff that I think is not pertinent to work.

---

**274**

1    Q   What is Sight Sciences document retention policy
2  for emails?
3    A   We have them — I mean, you know, they're on —
4  all of our emails are on our computers, and there's a
5  backup.  We have a very, very strong head of IT, who's
6  very well organized.  I think they're all — everything is
7  backed up, maybe even redundantly.  But certainly, I think
8  OneDrive, I believe, is the backup.  So he's got — he's
9  got everything.  He's very, very well experienced, very
10 happy when we could build out this team, to do it more
11 professionally.
12        And, yeah, I think you should have full
13 confidence that we have all of our records.
14    Q   You --
15    MS. RHYU:  I'll note for the record that this is
16 outside the scope of 30(b)(6) testimony.  This is personal
17 testimony.
18 BY MS. HEFFERNAN:
19    Q   So you have every record of the company since
20 2006; is that correct?
21    A   No.  I mean, that's — that's — I can't say
22 that.  Generally, the intent is to keep everything that's
23 pertinent to work.  We haven't proactively like deleted
24 anything.  We delete some things I think is not pertinent
25 to work, again, but just generally, I don't want to make a

**275**

1  statement that there's like nothing ever... because I
2  can't.  You know, that's 15, 16, 17 years.
3        Has an email, you know... but, you know, nothing,
4  I can't think of anything pertinent, specific to this, for
5  example.
6    Q   What is the retention period for emails, are you
7  telling me it's forever, it's permanent?
8    A   I think so.  I mean, so I think in going back for
9  this exercise, as we went back in our records, I'm pretty
10 sure like once I had started a Sight Sciences email, that
11 those emails are all there.  I don't know, with 2010.
12 2011.
13    Q   So my question's a little different.  It's not
14 whether you could go back and find some emails from 2010.
15        My question is, you stated that there is a formal
16 document retention policy in place at Sight Sciences.  And
17 my question is, according to that policy, what is the
18 document retention period for emails, is it permanent?
19    A   Oh, I haven't read that policy.  I haven't read
20 that policy.
21    Q   Okay.
22    A   I would...
23    MS. RHYU:  And I'll just clarify, I said that this
24 testimony is outside the scope of 30(b)(6) testimony.  And
25 I intended for that statement to apply to this line of

**276**

1  questioning, not just the particular question --
2    THE WITNESS:  I'd just like to add, I haven't read it
3  right now in preparation for this to speak to every, every
4  detail in that policy.
5  BY MS. HEFFERNAN:
6    Q   When was that policy put in place?
7    MS. RHYU:  Asked and answered.
8    THE WITNESS:  Well, I know there was a document
9  retention policy put in place specifically around this
10 litigation.
11 BY MS. HEFFERNAN:
12    Q   So that's a different thing.  That's -- that's
13 sort of a document preservation notice or hold.
14    A   Okay.
15    Q   I'm talking about ordinary course of business,
16 irrespective of this litigation.  A document retention
17 policy.  Do you understand the difference between those
18 two things?
19    A   Yes, that was helpful.
20    Q   Okay.  So thinking not about a document
21 preservation notice in connection with this litigation.
22    A   Okay, yeah.
23    Q   But thinking about a document retention policy,
24 do you have one at Sight Sciences?
25    MS. RHYU:  Asked and answered.

**277**

1    THE WITNESS:  I'd like to -- I'd like to speak with
2  our head of IT.  But, you know, everything, everything is
3  backed up.  So...
4  BY MS. HEFFERNAN:
5    Q   Do you have like a written formal policy that has
6  by category of document or information what the retention
7  period is?
8    A   I don't -- I can't -- I don't know.
9    Q   Okay.
10    A   But, but with everything backed up, and we don't
11 delete stuff.  So... I think, confident that our records
12 are there.
13    Q   Okay.  Thinking about a document preservation
14 notice or hold notice, is one in place at Sight Sciences
15 for this litigation?
16    A   There is, yes.
17    Q   Okay.  And when was that put into place?
18    A   I think it was in and around the time when we
19 believed litigation would be imminent.
20    MS. RHYU:  This line of questioning is also outside
21 the scope of corporate testimony.
22 BY MS. HEFFERNAN:
23    Q   And what do you mean when you say we believed
24 litigation would be imminent?
25    A   It means, you know, when we thought -- there was

EXHIBIT 3
(excerpted)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.:  21-1317-GBW-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF SIGHT SCIENCES, INC.'S NOTICE OF DEPOSITION
OF ALCON INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, counsel for Plaintiff Sight Sciences, Inc. ("Plaintiff" or "Sight") will take the deposition

by oral examination of Defendant Alcon Inc. ("Defendant" or "Alcon"), on the topics set forth in

the attached Exhibit A, through one or more officers, directors, agents, or other persons designated

by Alcon to testify on its behalf.

Sight requests that Alcon provide any objections within ten (10) business days of this

notice.  Sight also requests that Alcon provide written notice at least five (5) business days in

advance of the deposition of: (1) the name(s) of each designee who has consented to testify on

behalf of Alcon; (2) the job title of each such person; and (3) the topic(s) set forth in Exhibit A on

which each such person will testify.

The deposition will take place before an officer duly authorized by law to administer oaths

commencing at 9AM ET on June 15, 2023 at Young Conaway Stargatt & Taylor LLP, Rodney

Square, 1000 North King Street, Wilmington, Delaware 19801, unless an alternative date or dates

and location mutually convenient for both parties is confirmed in writing.  The testimony will be

recorded by any means permitted by the Federal Rules of Civil Procedure, including, without

limitation, stenographically, by video, and/or by instant visual display of testimony using LiveNote software or equivalent technology.  The deposition will continue from day to day until completed, with such adjournments as to time and place as may be necessary.

The deposition will be taken for the purposes of discovery and all other purposes permitted by the Federal Rules of Civil Procedure.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)

COOLEY LLP | 1000 North King Street
Michelle S. Rhyu | Wilmington, DE  19801
David Murdter | (302) 571-6600
Priyamvada Arora | msharp@ycst.com
Lauren Strosnick | jhiggins@ycst.com
Alissa Wood | thallowell@ycst.com
3175 Hanover Street |
Palo Alto, CA  94304-1130 |
(650) 843-5000 | *Attorneys for Sight Sciences, Inc.*

Orion Armon
1144 15th Street, Suite 2300
Denver, CO  80202-2686
(720) 566-4000

Allison E. Elkman
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
(202) 842-7800

Dated:  May 4, 2023

2

known address and telephone number; (iii) all known email addresses; and (iv) last known title.

16.     "Identify," "Identifies," and "Identification" when used with respect to any legal entity, such as a corporation, company, or person other than a natural person, mean that the following information shall be provided: (i) the entity's name; (ii) the place of incorporation or organization; (iii) the principal place of business; and (iv) the nature of the business conducted by that legal entity.

17.     "Any" shall be understood to include and encompass "all" and/or "each" and vice versa, as necessary to bring within the scope of the Request all information that might otherwise be construed to be outside of its scope.

18.     "And/Or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Topic any information that might otherwise be construed to be outside its scope.

## DEPOSITION TOPICS

1.     Your organizational structure as it relates to the Accused Products, including the identity and roles of the departments, groups, or personnel involved in conception, design, development, manufacturing, testing, regulatory submissions, sales (including sales team training and outreach to physicians), marketing and distribution (nationally and internationally), finance, mergers and acquisitions, and patent and legal departments.

2.     The corporate relationship between each Defendant to this lawsuit from 2015 to present, and the role of each Defendant with respect to the Accused Product.

3.     Information regarding how the Company maintains Documents, including those related to: conception, design, development, testing, regulatory submissions, sales, outreach to physicians, marketing and distribution (nationally and internationally), finance, mergers and

infringement.

62.     The terms You would have sought from Sight for a license to Any of the Patents-in-Suit, Any information that would have affected the royalty that You would have negotiated for such a license, and the royalty You would pay for such a license if one were offered.

63.     Your knowledge of Sight's patent applications and patents, including but not limited to the Patents-in-Suit, including (i) the earliest date and the circumstances by which You first became aware of the existence of Any patent owned by Sight or Any patent application filed by Sight; (ii) the earliest date and the circumstances by which You first became aware of the existence of each of the Patents-in-Suit and of the patent application to which the Patents-in-Suit claim priority (U.S. App. No. 11/475,523), which was published as U.S. Publ. No. 2007/0298068; (iii) the earliest date and the circumstances by which You first became aware of a risk that Any of Your products or services infringed the Patents-in-Suit or Any other patent owned by Sight; and (iv) Any consideration, analysis, study, examination, reverse engineering, or copying of Sight's patents, including the Patents-in-Suit, by You or Any Person or entity acting on Your behalf.

64.     Any analyses You have conducted pertaining to the valuation of the Accused Products and/or Any of the Patents-in-Suit, including Any patent licenses or agreements that You contend are relevant to the value of the Accused Products or Patents-in-Suit.

65.     Your understanding of Sight's development of devices embodying the Patents-in-Suit.

66.     All interactions You have had with Paul or David Badawi.

67.     Your policies, procedures, or programs Relating to licensing or use of intellectual property or patents to or from third parties.

68.     Analysis or valuations of acquisitions or potential acquisitions of companies or

13

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on May 4, 2023, I caused a copy of

Plaintiff Sight Sciences, Inc.'s Notice of Deposition of Alcon Inc. Pursuant to Fed. R. Civ. P.

30(B)(6) to be served on the following counsel of record in the manner indicated below:

**BY E-MAIL**

John W. Shaw
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

Gregg LoCascio
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
gregg.locascio@kirkland.com
justin.bova@kirkland.com
steven.dirks@kirkland.com
socrates.boutsikaris@kirkland.com

Kat Li
Jeanne M. Heffernan
Austin C. Teng
Ryan J. Melde
Kirkland & Ellis LLP
401 Congress Avenue
Austin, TX  78701
kat.li@kirkland.com
jheffernan@kirkland.com
austin.teng@kirkland.com
ryan.melde@kirkland.com

Ryan Kane
Laura Zhu
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
laura.zhu@kirkland.com

_/s/ Melanie K. Sharp_
Melanie K. Sharp (No. 2501)

30352047.1

# EXHIBIT 4

| From: | "Paul Badawi" <Paul@sightsciences.com> on behalf of <paul@sightsciences.com> |
|---|---|
| Sent: | Thu, 8 Oct 2015 21:10:35 +0000 (UTC) |
| To: | "Truitt, Catherine" <catherine.truitt@alcon.com> |
| Subject: | RE: Follow up from today's call - Sight Science-Alcon |
| Attachments: | Sight Sciences Intellectual Property.pdf;Sight Sciences Company Update (Alcon).pdf |

Hi Cathy,

If you are still unable to access the Dropbox link, I am attaching two smaller files to this email that don't have any images (so that the file sizes are acceptable for email). Please feel free to call me anytime at 415-889-0550 if you have any questions.

Best regards,

Paul

-------- Original Message --------
Subject: RE: Follow up from today's call - Sight Science-Alcon
From: "Truitt, Catherine" <catherine.truitt@alcon.com>
Date: Thu, October 08, 2015 1:12 pm
To: "paul@sightsciences.com" <paul@sightsciences.com>

HI Paul,

I did receive the link, but I get the following message:



I'll check into the problem to see if it may come from my end.
Cathy

From: paul@sightsciences.com [mailto:paul@sightsciences.com]
Sent: Thursday, October 08, 2015 3:00 PM
To: Truitt, Catherine
Subject: RE: Follow up from today's call - Sight Science-Alcon

Hi Cathy,

It was very nice speaking with you yesterday. You should have received an email with a Dropbox link to our company update. Could you please confirm receipt at your convenience. Thank you.

Best regards,

Paul

-------- Original Message --------
Subject: Follow up from today's call - Sight Science-Alcon
From: "Truitt, Catherine" <catherine.truitt@alcon.com>
Date: Wed, October 07, 2015 1:32 pm
To: "'paul@sightsciences.com" <paul@sightsciences.com>

Dear Paul,

It was nice speaking with you and your team this morning. As discussed, I look forward to receiving an updated presentation of TRAB360 and VISCO360, including but not limited to:

- any clinical data you have that support efficacy and safety

SGHT0130748

- update on patents
- revenues to date
- forecast including assumptions
- COGS and margins
- your closest competitors on the market or in development as you see them
- a sense of how much market share you have compared to your main competitors would also be helpful as well

Please let me know if you can provide this by tomorrow morning.  In order to be ready for the next GFT meeting that Laurent mentioned earlier today, I need to have the slide deck finalized by this Friday close of business, so we are on a very short timeline.

We have a CDA in place with an expiration date of 1/10/2019 (here attached), so I think we are good to go.
Thank you for your collaboration.
Cathy

Catherine Truitt, Ph.D.
Associate Director / Sr Technology Identification Lead
Search & Evaluation / Business Development & Licensing

6201 South Freeway, Fort Worth, TX 76134-2099, USA
Office  (817) 615-5348
Cell: (682) 351-0743

Alcon
a Novartis company

# EXHIBIT 5

| From: | Frank, Noah S. |
|---|---|
| To: | Strosnick, Lauren; Teng, Austin C.; DeLucia, Nathaniel Louis; Armon, Orion; Bova, Justin; Rhyu, Michelle; Madrigal, Angela R.; *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com; Murdter, David; Wood, Alissa; Douglas, Jeannine; Gibbs, Tracy; z/Sight Sciences Ivantis; Radovanovich, Alyssa M. |
| Cc: | SKIvantis; #Alcon-SightSciences |
| Subject: | RE: Sight Sciences v. Ivantis - Deposition scheduling |
| Date: | Friday, July 7, 2023 9:48:02 AM |

Counsel,

We confirm a start time of 10am CT / 8am PT for Mr. McAuley's remote deposition. He will be sitting in Minneapolis.

We provided Ms. Truitt's availability almost two weeks ago and you rejected the offered date but suggested no alternate dates. Please provide dates the week of July 31 when you are available.

Regards,

Noah Frank

-------------------------------------------------
**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7570
**F** +1 617 385 7501

1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004
**T** +1 202 389 5235
**F** +1 202 389 5200
-------------------------------------------------
noah.frank@kirkland.com

---

**From:** Strosnick, Lauren <lStrosnick@cooley.com>
**Sent:** Thursday, July 6, 2023 4:31 PM
**To:** Teng, Austin C. <austin.teng@kirkland.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

---

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

Counsel,

We intend to take Mr. McAuley's deposition remotely on Tuesday, July 11.  Please confirm that he will be sitting in Minneapolis for his deposition, and that a start time of 10am CT / 8am PT works.

Additionally, please provide Catherine Truitt's availability for deposition in August.  (See 6/26/23 N. Frank Email.)

Thanks,
Lauren

**Lauren Strosnick**
Direct: +1 650 843 5065

---

**From:** Teng, Austin C. <austin.teng@kirkland.com>
**Sent:** Wednesday, July 5, 2023 2:56 PM
**To:** Strosnick, Lauren <lStrosnick@cooley.com>; DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Bova, Justin <justin.bova@kirkland.com>; Rhyu, Michelle <RHYUMS@cooley.com>; Arora, Priya <PArora@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Murdter, David <dmurdter@cooley.com>; Vanderwall, Cameron C. <cvanderwall@cooley.com>; Wood, Alissa <amwood@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Radovanovich, Alyssa M. <ARadovanovich@ycst.com>
**Cc:** SKIvantis <SKIvantis@shawkeller.com>; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: Sight Sciences v. Ivantis - Deposition scheduling

**[External]**

---

Counsel,

Pursuant to the Judge Fallon's July 3, 2023 Order, Defendants designate Stephen McAuley on the limited scope of Topics Iv-71/Al-69 and Iv-72/Al-70 regarding "whether and when any FTO analyses regarding the Asserted Patents with respect to the Accused Products occurred."

Best regards,
Austin

**Austin Teng**
------------------------------------------------
**KIRKLAND & ELLIS LLP**
401 Congress Avenue, Austin, TX 78701
**T** +1 512 355 4351  **M** +1 214 444 8364
**F** +1 512 678 9101
------------------------------------------------

# EXHIBIT 6
## (excerpted)



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SIGHT SCIENCES, INC.,         )
                                    )         C. A. No.:  21-1317-GBW-SRF
       Plaintiff,         )
                                    )         **JURY TRIAL DEMANDED**
         v.            )
                                    )
IVANTIS, INC., ALCON RESEARCH LLC,  )
ALCON VISION, LLC AND ALCON INC.,   )
                                  )
       Defendants.     )

**PLAINTIFF SIGHT SCIENCES, INC.'S OBJECTIONS AND RESPONSES
TO DEFENDANTS' THIRD SET OF INTERROGATORIES (NOS. 11-18)**

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Judicial District, Plaintiff Sight Sciences, Inc. ("Sight Sciences") hereby responds to Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc.'s ("Defendants") Third Set of Interrogatories (Nos. 11-18), dated March 31, 2023.

**GENERAL RESPONSES**

1. Sight Sciences' response to the Interrogatories is made to the best of Sight Sciences' present knowledge, information, and belief. This response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Sight Sciences' recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Sight Sciences' further discovery or investigation.

2. Sight Sciences reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to the Interrogatories but discovered subsequent to the date of this response, including, but not limited to, any such information or documents obtained in discovery in this action.

1

Sight Sciences will respond to each Interrogatory according to its ordinary meaning, without reference to Defendants' usage statements.

## SPECIFIC OBJECTIONS AND RESPONSES

Without waiving or limiting in any manner any of the foregoing General Objections, but rather incorporating them into each of the following responses to the extent applicable, Sight Sciences responds to the specific Interrogatories in Defendants' Third Set of Interrogatories as follows:

**INTERROGATORY NO. 11:**

In light of Your response to Defendants' Interrogatory Number 4 stating that "Ivantis's infringement began as of the date of the first commercial offer for sale of the Accused Product" for the '482, '443, and '361 patents and "as of the date of issuance of the '742 patent" for the '742 patent, explain in detail why Sight Sciences, Inc. did not file this case until September 16, 2021 against Ivantis, Inc. for alleged infringement of the '482, '443, '361, and '742 patents. Your answer should also include an Identification of the Person(s) most knowledgeable about Your answer and an Identification of Documents that relate to or support Your answer.

**RESPONSE TO INTERROGATORY NO. 11:**

Sight Sciences incorporates by reference its General Responses and Objections.  Sight Sciences further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection from discovery, or to the extent it seeks a legal conclusion or legal analysis and would implicate the mental impressions of counsel to provide a proper response.

Subject to the foregoing general and specific objections, Sight Sciences responds as follows:

Sight Sciences made an initial public offering ("IPO") of stock in mid-July, 2021. Prior to its IPO, ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

cadaver, animal, and human testing, including but not limited to versions that may have varying dimensions or that reside entirely within Schlemm's canal or that extend into and through the trabecular meshwork, or that are drug eluting. ███████████████████████████

████████████████████████████████████████████████████.

The Sight Sciences individuals materially involved in these efforts were Paul Badawi, David Badawi, and Dan O'Keeffe.

Pursuant to Federal Rule of Civil Procedure 33(d), Sight Sciences further identifies the following exemplary documents from which information responsive to this Interrogatory may be ascertained:   SGHT0008228-265;  SGHT0024384-433;  SGHT0032673-702;  SGHT0135731; SGHT0024316-333;      SGHT0024334-383;      SGHT0131937-981;      SGHT0131989-039; SGHT0132041-090;      SGHT0132125-174;      SGHT0135732-782;      SGHT0022881-883; SGHT0026411-414; SGHT0160170-SGHT0161677.

Discovery is ongoing and Sight Sciences reserves the right to amend, supplement or otherwise change its response to this Interrogatory, including by asserting additional theories, arguments, contentions, or other evidence uncovered during fact and expert discovery.

**INTERROGATORY NO. 14:**

Explain in detail all of Your factual and legal bases for why You contend the Helix Microstent is a Covered Product, describing your contention for each Asserted Claim on a claim-by-claim and element-by-element basis.

**RESPONSE TO INTERROGATORY NO. 14:**

Sight Sciences incorporates by reference its General Responses and Objections.  Sight Sciences further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection from discovery, or to the extent it seeks a legal conclusion or legal analysis and would implicate the mental impressions of counsel to provide a proper response.  Sight Sciences further objects that this Interrogatory seeks information that is irrelevant to the claims and defenses at issue in this case.  Sight Sciences further objects that this Interrogatory is overbroad, unduly

burdensome, and not proportional to the needs of the case, including to the extent it calls for a "claim-by-claim and element-by-element" analysis as to why the Helix Microstent is a Covered Product. *See, e.g.*, *Leader Techs. Inc. v. Facebook Inc.*, C.A. No. 08-862-JJF-LPS, 2009 WL 3021168, at *2 (D. Del. Sept. 4, 2009) ("[I]t would be unduly burdensome to require [Plaintiff], as the patentee, to produce detailed claim charts showing precisely how its products practice each of the asserted claims. This case is fundamentally about whether [Defendant] infringes [Plaintiff']s patent, not about whether Plaintiff practices its own patent."); *Beckman Coulter, Inc. v. Sysmex Am., Inc.*, C.A. No. 18-6563, 2019 WL 10250941, at *2-3 (D. Del. Aug. 12, 2019) (holding that it was not proportional to the needs of the case to require patentee to provide a "burdensome claim by claim analysis" of its own products).

Subject to the foregoing general and specific objections, Sight Sciences responds as follows:

Sight Sciences has used the term "Helix" generally to refer to a series of prototype supports. Prototype designs have included ███████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

*See*, *e.g.*, SGHT0160201; SGHT0160313; SGHT0160349-355; SGHT0160358; SGHT0160395; SGHT0160444; SGHT0161641. ██████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████



Discovery is ongoing and Sight Sciences reserves the right to amend, supplement or otherwise change its response to this Interrogatory as the company's stent development process continues.

**INTERROGATORY NO. 15:**

Describe in detail Your licensing policy/policies or marketing program(s) concerning the Asserted Patents, including, for example, documents, reports, or presentations that outline the circumstances under which you license Your Intellectual Property. Your answer should also include an Identification of the Person(s) most knowledgeable about Your answer and an Identification of Documents that relate to or support Your answer.

**RESPONSE TO INTERROGATORY NO. 15:**

Sight Sciences objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from discovery, or to the extent it seeks a legal conclusion or legal analysis and would implicate the mental impressions of counsel to provide a proper response.

Sight Sciences objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that Defendants' invalidity contentions purport to identify "exemplary" evidence of its licensing policy/policies or marketing program(s).

Sight Sciences objects that this Interrogatory is compound and consists of multiple subparts, and Sight Sciences reserves the right to object to this and future interrogatories on the ground that Defendants have exceeded the permissible number of interrogatories.

Subject to the foregoing general and specific objections, Sight Sciences responds as follows:

and

capacity include Paul Badawi, Mark Papini, and Sam Park.  Sight Sciences additionally reserves the right to rely upon the opinion testimony of one or more lay or expert witnesses.

Discovery is ongoing and Sight Sciences reserves the right to amend, supplement or otherwise change its response to this Interrogatory, including by asserting additional theories, arguments, contentions, or other evidence uncovered during fact and expert discovery.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

COOLEY LLP
Michelle S. Rhyu
David Murdter
Priyamvada Arora
Lauren Strosnick
Alissa Wood
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Orion Armon
1144 15th Street, Suite 2300
Denver, CO  80202-2686
(720) 566-4000

Allison E. Elkman
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
(202) 842-7800

*Attorneys for Sight Sciences, Inc.*

Dated: May 1, 2023

27

## <u>CERTIFICATE OF SERVICE</u>

I, Melanie K. Sharp, Esquire, hereby certify that on May 1, 2023, I caused a copy of

Plaintiff Sight Sciences, Inc.'s Objections and Responses to Defendants' Third Set of

Interrogatories (Nos. 11-18) to be served on the following counsel of record in the manner

indicated below:

**<u>BY E-MAIL</u>**

John W. Shaw
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

Gregg LoCascio
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
gregg.locascio@kirkland.com
justin.bova@kirkland.com
steven.dirks@kirkland.com
socrates.boutsikaris@kirkland.com

Kat Li
Jeanne M. Heffernan
Austin C. Teng
Ryan J. Melde
Kirkland & Ellis LLP
401 Congress Avenue
Austin, TX  78701
kat.li@kirkland.com
jheffernan@kirkland.com
austin.teng@kirkland.com
ryan.melde@kirkland.com

Ryan Kane
Laura Zhu
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
laura.zhu@kirkland.com

*/s/ Melanie K. Sharp*
Melanie K. Sharp (No. 2501)

30342432.1

# EXHIBIT 7

## Contact

www.linkedin.com/in/jennifer-jenn-brady-920651 (LinkedIn)

## Top Skills

Marketing

Advertising

Outlook

## Certifications

Confronting Bias: Thriving Across Our Differences

# Jennifer "Jenn" Brady

Project Management, Operational Support, Marketing Coordinator

Atlanta, Georgia, United States

## Summary

Profile:  Detail-oriented and deadline focused office manager, executive/team administrator and creative services/project/marketing coordinator, project administration and operations management. Excels at performing multiple roles to meet the ever-changing needs for the company, client/consumer/constituents and team needs.

Operations Software: Microsoft Word, Excel, PowerPoint, Outlook and SharePoint, WorkPlace accounting software, GreaterGiving, IBM Lotus Notes, Google Business Apps, FreshBooks, Concur Travel and Expenses, Basecamp and Dropbox.

Contact:  678-429-4619, jebatlanta@yahoo.com

_____

## Experience

**UCB**
U.S. Bone Health Mission Team Assistant, Logistics & Marketing Support
September 2020 - Present (3 years)
Atlanta, Georgia, United States

**Arthritis Foundation**
Consumer Health & Impact Specialist
September 2018 - April 2020 (1 year 8 months)
Atlanta, GA

• Managed/tracked $5 million annual budget for the Consumer Health and Impact department.

• Provided project management and operational support for the Consumer Health & Impact department.

• Interacted with Senior Management, the home office and regional offices in order to direct flow of incoming and outgoing information and materials.

• Principle responsibilities included:

o Accounting, reporting and budget tracking, department's purchasing agent, consumer publication and product inventory management, processed/ responded to consumers service inquiries.

o Key event, activity support and project coordination for: Juvenile Arthritis (JA) Conferences, JA Camps, Conference of Champions, American College of Rheumatology Annual Meeting and the annual Arthritis Champions Scholarship.

ARPR
Office and Operations Manager
November 2015 - October 2017 (2 years)
Greater Atlanta Area

• Office and Operations Management: meeting and event planning, vendor management, organized office operations and procedures, IT coordination, data management and travel logistics.
• Executive/Administrative Assistant: provided support to the CEO, Senior Leadership team and all employees.
• Marketing and Sales Administration: ensured content marketing calendar was executed on-time and supported leadership team with CRM database.

McKinsey & Company
Executive Assistant and Project Coordinator
April 2014 - November 2015 (1 year 8 months)
Greater Atlanta Area

• Executive Assistant to the Director of Global Partner Learning and Development and to the Manager of North America Finance; scheduled and maintained calendar items including meetings, conference calls, video conferences and travel logistics; expense reporting.
• Partner Learning and Development Global Team Coordinator: Monitored activities to ensure project objectives were met within established time frames and budgets.
• Produced/edited presentations using the McKinsey format and brand standards; collaborated with internal visual graphics department and office services to ensure accuracy and project deadlines were met.

MSLGROUP
Consumer Project Coordinator and Administrator
2006 - March 2014 (8 years)
Greater Atlanta Area

• Provided project-based and ongoing coordination for multiple VPs, supervisors, team members and client projects. Responsibilities included: project/event planning and execution, campaign content tracking/monitoring and analysis, subject matter and vetting research.
• Assisted new business development team with creating client presentations and performed extensive brand, industry, media audits and target audience research.
• Supported creative services with developing client presentations, guaranteed corporate brand guidelines were maintained, researched and organized stock photography, tracked budgets, and interacted with freelancers and vendors to ensure deadlines were met.
• Managed marketing incentive program budgets, processed requests, tracked expenditures and distributions.

### Media Dimensions
Advertising Coordinator
2004 - 2005 (1 year)
Greater Atlanta Area

• Managed creative, traffic and general instruction for radio, television, print and outdoor media buys for State Farm, United Community Bank and Nationwide Furniture.
• Served as day-to-day client and vendor relationship manager; managed daily, weekly and monthly status reports with multiple clients sharing project timelines and budget updates.

### Realm, Inc
Co-op Advertising Manager
1997 - 2002 (5 years)
Greater Atlanta Area

• Managed over 500 indirect distribution partner accounts participating in the BellSouth Telecommunications Co-op Advertising Program; administered legal compliance, campaign quality assurance, enforced branding/visual guidelines and approval for all co-op advertising and marketing activities.
• Managed client database which tracked, analyzed and reported data regarding co-op revenue earned, reimbursements, quarterly forfeitures and balances for each indirect distribution partner company's account on a monthly, ongoing basis.

### Millard-Wayne, Inc. (InfoCure)
Marketing, Sales and Administrative Assistant
1995 - 1997 (2 years)

Greater Atlanta Area

• Provided direct administrative support to the marketing, sales and technical departments and key clients using MIMS software within hospitals, medical facilities and physician offices located throughout the U.S.
• Assisted with new business activities including research, proposal creation and travel logistics.

Orlando Magic NBA Team
Staff Artist and Team Sales Assistant
1992 - 1995 (3 years)

• Generated all art for screen-printing department. Supported production and sales teams to ensure on-time delivery of all projects and team uniforms.
• Interacted with college, high school, and youth sports programs throughout Central Florida to promote the Orlando Magic within the community, which included volunteer work with numerous non-profit and charitable organizations.

———

## Education

Flagler College
Bachelors, Graphic Design, Communications

Winter Park High School