IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SIGHT SCIENCES, INC.,

                Plaintiff,

v.

IVANTIS, INC., ALCON RESEARCH LLC, ALCON VISION, LLC, & ALCON INC.,

                Defendants.

C.A. No. 21-1317-GBW-SRF

## MEMORANDUM ORDER

In this patent infringement action between Plaintiff Sight Sciences, Inc. ("Plaintiff") and Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants"), Magistrate Judge Fallon held a *Markman* hearing and issued a Report and Recommendation (D.I. 134, the "Report") recommending that the Court adopt constructions for ten disputed claim terms in United States Patent Nos. 8,287,482 ("the '482 patent"), 9,370,443 ("the '443 patent"), 9,486,361 ("the '361 patent"), 10,314,742 ("the '742 patent"), and 11,389,328 ("the '328 patent," collectively, the "Asserted Patents"). Defendants filed objections requesting this Court to reject four constructions and adopt Defendants' proposals for those terms. D.I. 139 at 1. Plaintiff responded. D.I. 141.

The Court has reviewed the Report, Defendants' objections and Plaintiff's responses thereto, and has considered *de novo* the original claim construction briefing and supporting documents, as well as the transcript of the claim construction hearing. *See, e.g., St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.,* 691 F. Supp. 2d 538, 541-42 (D. Del. 2010); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3). For the following reasons,

1

Defendants' objections to the Report are **OVERRULED** and the recommended constructions are **ADOPTED**.

I.  **LEGAL STANDARD**

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted); *see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) ("A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention"). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. The Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.* The ultimate question of the proper construction of a patent is a question of law, although subsidiary fact-finding is sometimes necessary. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)).

"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1312–13). A person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

"When construing claim terms, the court first looks to, and primarily rely on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the

2

patent, which is usually dispositive." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013). "Other claims of the patent in question, both asserted and unasserted, can . . . be valuable" in discerning the meaning of a disputed claim term because "claim terms are normally used consistently throughout the patent," and so, "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314. In addition, "[d]ifferences among claims can also be a useful guide[.]" *Id.* For example, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15.

In addition to the claim, the Court should analyze the specification, which "is always highly relevant to the claim construction analysis ... [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)). And, the specification "is not a substitute for, nor can it be used to rewrite, the chosen claim language." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

The Court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history "can often inform the meaning of the claim

3

language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution[.]" *Phillips*, 415 F.3d at 1317.

In some cases, the Court "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Overall, while extrinsic evidence may be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (internal quotation marks and citations omitted).

## II. DISCUSSION

### a. "support"

The Report recommends construing "support" according to its plain and ordinary meaning, which is "a structure that props something open" or "a prop." D.I. 134 at 8. Defendants, however, maintain that the patents "repeatedly, consistently, and clearly define 'support'" as "occupying at least a portion of a central core of Schlemm's canal," arguing that disavowal supports deviating from plain and ordinary meaning. D.I. 139 at 1-2.

The Court agrees with the Report that "the intrinsic evidence supporting Defendant" narrower proposal falls short of a 'clear and unmistakable' disclaimer as required to limit the scope of the claims."[1] *See Thorner v. Sony Computer Ent'mt Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012). Although the specification discloses as preferred embodiments supports occupying at

---

[1] Deviating from plain and ordinary meaning requires lexicography or disavowal, *GE Lighting Sols., LLC v. Agilight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014), and Defendants do not argue lexicography.

4

least a portion of the central core of Schlemm's canal and disparages open-ended tubular supports that do not occupy the central core of the canal, such disparagement is not absolute and, as the Report found, "implies open-ended tubular supports may sometimes satisfy the goals of the claimed invention." D.I. 134 at 9-10.

Defendants argue that the Report errs by purportedly using an "impossible to achieve" standard to measure disavowal. D.I. 139 at 3. But the Report did not do so, rooting its analysis in the patents' disclosures. *See* D.I. 134 at 10 ("By stating that the support is not required to be open-ended and tubular, the specification implies that open-ended tubular supports fall within the scope of the invention."). Further, the Court agrees with the Report that limiting "support" consistent with Defendants' proposed construction would be "inconsistent with the Federal Circuit's admonition that the claims and embodiments in the specification are not always strictly coextensive." *Id.* at 11 (citing *Phillips,* 415 F.3d at 1323).

Defendants also appear to take issue with the Report's interpretation of element 95 in Figures 6A and 6B. D.I. 139 at 4. However, this Court agrees with the Report's conclusion that, "[n]othing in the specification provides any dimensions for the hollow center in element 95 or for the requisite thickness of the support's walls" so as to favor Defendants' construction. D.I. 134 at 13.

Finally, although Defendants dispute the Report's application of the claim differentiation doctrine, the Court discerns no error. Indeed, as the Report found, dependent claims 29, 60, and 86 of the '482 patent would be rendered superfluous if the claimed "support" in the independent claims included a limitation requiring the support to occupy at least a portion of the central core of Schlemm's canal. *Id.* at 13. Although Defendants characterize the claim differentiation doctrine as rebutted because it cannot be used to "broaden claims beyond their meaning in light of the

5

specification," D.I. 139 at 4, the Court disagrees in view of the intrinsic record, which recognizes that supports need not occupy a central core of Schlemm's canal. Thus, claim differentiation favors Plaintiff's construction.

Accordingly, the Court upon *de novo* review agrees with the Report's conclusions and Defendants' objections to the construction of "support" are overruled.

b. **"fluid may traverse the canal without substantial interference from the support" / "support does not substantially interfere with the [longitudinal / transmural] flow" / "does not significantly block fluid outflow"**

The Report recommends construing these terms as "the support does not significantly block either fluid outflow from the trabecular meshwork or fluid outflow to the collector channels," D.I. 134 at 21, without prejudice to Defendants reasserting indefiniteness at summary judgment, *id.* at 21 n.1. Defendants maintain the Court should find the "substantial interference limitation" indefinite now because the Report's construction—replacing "substantial interference" with "significantly block"—provides no reasonable certainty for when a claimed support "substantially interferes." D.I. 139 at 4-6.

At this stage in the litigation, Defendants have not met their burden to prove indefiniteness by clear and convincing evidence. *Sonix Tech. Co. v. Publications Int'l, Ltd.,* 844 F.3d 1370, 1377 (Fed. Cir. 2017). As the Report explained, "[t]erms of degree are not inherently indefinite" and "'a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.'" D.I. 134 at 22 (quoting *Sonix,* 844 F.3d at 1377). Here, having reviewed the intrinsic and extrinsic record, the Court agrees with Plaintiff that a skilled artisan would evaluate whether a support "substantially interferes" or "significantly blocks" fluid flow in the eye "by determining whether an increase in aqueous outflux (and therefore a decrease in IOP) has been achieved by the support." D.I. 141 at 4-5; D.I. 134 at 23-24 ("[T]he intrinsic record provides guidance on how much fluid outflow and how much of a reduction in [intraocular

6

pressure ([IOP[)] levels is considered tolerable by setting forth ranges of measurement for aqueous outflux and IOP."); *see also Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1364 (Fed. Cir. 2022); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1346 (Fed. Cir. 2018) ("All that is required is some standard for measuring the term of degree."). Indeed, as the Report explained, "both parties' experts confirm a skilled artisan would know how to determine whether a support substantially interferes with fluid outflow by testing the aqueous outflux and IOP metrics to establish the net effect of the support on outflow facility and IOP." D.I. 134 at 24 (citing D.I. 119, Ex. 19 at ¶ 25; Ex. 20 at 133:24-134:7; D.I. 120, Ex. 34 at 161:22-162:8).

Accordingly, the Court, having reviewed the record *de novo*, agrees with the Report's conclusions and Defendants' objections are overruled.[2] Plaintiff does not ask this Court to disturb the Report's recommendation that Defendants may raise indefiniteness at summary judgment, *see* D.I. 134 at 21 n.1, so the Court will not do so.

c. **"wherein when the support is [disposed/inserted] within a cylindrical section of the lumen of the canal having an internal wall surface area C, the support contacts less than 30% of [the surface area of] C"**

The Report recommends construing this term to mean "wherein when the support is disposed within a section of Schlemm's canal, the internal wall surface area C of that section is estimated by viewing the inside of Schlemm's canal as a slightly arcuate cylinder having length L, extending circumferentially from a first end X1 to a second end X2 of the support, and inside radius Ri, and the support contacts less than 30% of [the surface area of] C," D.I. 134 at 25, without prejudice to Defendants reasserting indefiniteness at summary judgment, *id.* at 26 n.2. Defendants

---

[2] The Court declines to address Defendants' remaining arguments not raised in the Joint Claim Construction Brief nor presented to the Magistrate Judge.

argue that the Report erred by "rewrite[ing] the claims to save them" from indefiniteness. D.I. 139 at 7-9.

Again, Defendants have not met their burden at this stage in the litigation to prove indefiniteness by clear and convincing evidence because a skilled artisan would be able to ascertain the meaning and scope of the "30% of C" limitation with reasonable certainty, particularly as the Report correctly concluded that the term "C" refers to an *estimate* of surface area contact, rather than *actual* surface contact and a skilled artisan "would know with reasonable certainty how to calculate an estimate of the surface area as required by the claims." D.I. 134 at 26-27. Indeed, "C" is defined by the specification, *see* D.I. 134 at 26-27 (citing D.I. 119, Ex. 1 at 11:16-20), a definition not contradicted by the prosecution history, *id.* at 28. Although Defendants' attempt to characterize the specification as describing an exemplary embodiment, Defendants' position is not persuasive in view of the fact that the specification later applies that definition of "C" to an exemplary embodiment in Figures 9A and 9B. *See* D.I. 134 at 26-27.

Accordingly, the Court, having reviewed the record *de novo*, agrees with the Report's conclusions, and Defendants' objections are overruled. Plaintiff does not ask this Court to disturb the Report's recommendation that Defendants may raise indefiniteness at summary judgment, *see* D.I. 134 at 26 n.2, so the Court will not do so.

**d. "wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal [such that at least a portion of the arcuate member extends out of Schlemm's canal]"**

The Report recommends construing this term according to its plain and ordinary meaning, which is "at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal (which persons of ordinary skill in the art knew or could measure) [such that at least a portion of the arcuate member extends out of Schlemm's canal]," D.I. 134 at 29-30, without prejudice to Defendants reasserting indefiniteness at summary judgment, *id.* at 30

8

n.3. Defendants maintain the Court should find the "radius of curvature limitation" indefinite now because there is "no objective guidance in the specification for how to make that measurement for the portion of the arcuate member or how to make the comparison to Schlemm's canal (given its intra-person and inter-person variations)." D.I. 139 at 9.

Again, Defendants have not met their burden at this stage to prove indefiniteness by clear and convincing evidence because a skilled artisan would be able to ascertain the meaning and scope of the "radius of curvature limitation" with reasonable certainty. The specification "provides an exemplary range for the radius of curvature of the arcuate member between 3 mm and 8 mm, and the claim language provides an additional parameter by requiring that the radius of curvature of the arcuate member must be smaller than the radius of curvature of Schlemm's canal." D.I. 134 at 31 (citing D.I. 119, Ex. 4 at 12:33-39, cl. 1); *see also* D.I. 119, Ex. 19 at ¶¶ 39-40; *Id.*, Ex. 4 at 12:30-39. This Court agrees that "[w]hile the range disclosed in the specification is not limiting, it provides objective guidance to a person of ordinary skill in determining the scope of the claims when considered in the context of the radius of curvature of Schlemm's canal." D.I. 134 at 31.

Defendants appear to suggest that the Report "improper[ly]" construed the claims in light of the accused device by "citing Defendants' accused product documents as evidence that one can ascertain both the [radius of curvature] of the canal and that of a device." D.I. 139 at 9. Although the Report observed that Defendants have been able to ascertain "both the radius of curvature of Schlemm's canal and that of a device inserted into the canal having a smaller radius so that the device protrudes into the anterior chamber," D.I. 134 at 32-33, the Report explicitly explained how it properly considered that evidence: "Although these features of the accused product do not guide the court's chosen construction of the disputed term, they do support a conclusion that the term is not indefinite," *id.* at 33. Accordingly, Defendants' contrary characterizations are not correct.

9

Finally, Defendants' reliance on *Saso Golf, Inc. v. Nike, Inc.*, 843 F. App'x 291 (Fed. Cir. 2021) does not persuade this Court to find the disputed term indefinite at this stage. As the Report explained:

> [I]n *Saso,* the Federal Circuit focused on the fact that the sides of the golf club were 'more complex than a segment of a perfect circle,' and the experts did not consider the 'toe' and 'heel' portions of the club to have a single definition or established boundaries. Here, in contrast, the specification illustrates the portions of an arcuate member having a radius of curvature as portions of a perfect circle. And Plaintiffs expert testified that any portion of the arcuate member having a radius of curvature smaller than Schlemm's canal would satisfy the claim language.

D.I. 134 at 33 (internal citations omitted). Although Defendants argue that the Report errs by "rel[ying] on the arcuate members of Figs. 11A-D as depicting a [radius of curvature] of a perfect circle [when] . . . the asserted patents are not limited to 'perfect circles', as the complex shapes in Figs. 6A-B, 8A-H demonstrate," D.I. 139 at 9, the Court agrees with Plaintiff that the shapes in Figures 6A-B and 8A-H are not arcuate members. D.I. 141 at 9-10. The Court will not consider Defendants remaining arguments pertaining to the "innermost edge or the outermost edge" of a support and the labeling of in Figures 11A-C, D.I. 139 at 9-10, as they have been forfeited.[3]

Accordingly, having reviewed the record *de novo*, the Court agrees with the Report's conclusions, and Defendants' objections are overruled. Plaintiff does not ask this Court to disturb the Report's recommendation that Defendants may raise indefiniteness at summary judgment, *see* D.I. 134 at 30 n.3, so the Court will not do so.

---

[3] This Court does not consider new arguments raised for the first time at a *Markman* hearing. *See Persawvere, Inc. v. Milwaukee Elec. Tool Corp.*, C.A. No. 21-400-GBW, 2023 WL 2140033, at *5 (D. Del. Feb. 21, 2023); *see also United States v. Dowdell*, 70 F.4th 134, 140-42 (3d Cir. 2023) (distinguishing between waiver and forfeiture); *Mirtech, Inc. v. Agrofresh, Inc.*, C.A. No. 20-1170-RGA, 2023 WL 3996618, at *4 (D. Del. June 14, 2023) (same).

\* \* \*

NOW THEREFORE, IT IS **HEREBY ORDERED** on August 17, 2023 that:

2. Defendant's Objections (D.I. 139) to the Report are **OVERRULED**;

3. The Report is **ADOPTED**; and

4. The parties shall submit for the Court's signature no later than August 24, 2023 a Claim Construction Order consistent with this Memorandum Order and the Magistrate Judge's claim constructions to which the parties did not object.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE