IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SIGHT SCIENCES, INC.,            )
                                 )   C. A. No.:  21-1317-GBW-SRF
          Plaintiff,             )
                                 )   **JURY TRIAL DEMANDED**
     v.                          )
                                 )   ███████████████████████
IVANTIS, INC., ALCON RESEARCH LLC, )
ALCON VISION, LLC AND ALCON INC., )
                                 )   **Redacted - Public Version Filed on:**
          Defendants.            )   **October 26, 2023**

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS
FROM MELANIE K. SHARP IN SUPPORT OF
SIGHT SCIENCES, INC.'S MOTION TO STRIKE DEFENDANTS'
NEW AND UNTIMELY OBVIOUSNESS-TYPE DOUBLE PATENTING DEFENSE**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

COOLEY LLP
Michelle S. Rhyu
Jeffrey Karr
Lauren Strosnick
Alissa Wood
Juan Pablo González
Angela R. Madrigal
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Orion Armon
1144 15th Street, Suite 2300
Denver, CO  80202-2686
(720) 566-4000

Dustin M. Knight
Joseph Van Tassel
Reston Town Center
11951 Freedom Drive, 14th Floor
Reston, VA  20190-5656
(703) 456-8000

Bonnie Fletcher Price
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
(202) 842-7800

*Attorneys for Sight Sciences, Inc.*

Dated:  October 19, 2023

Dear Judge Williams:

Sight Sciences, Inc. ("Sight") moves to strike Defendants' obviousness-type double patenting ("ODP") defense, which was disclosed in Defendants' Third Supplemental Invalidity Contentions served on October 12, 2023, because it is untimely, forfeited, and highly prejudicial.

## I.      FACTUAL BACKGROUND

On October 2, 2023, seven months after the deadline for amending pleadings (D.I. 93 at 1), Defendants sent a letter to Sight asserting for the first time that U.S. Patent Nos. 9,486,361 ("'361 patent") and 9,370,443 ("'443 patent") are invalid for ODP and demanding that Sight file terminal disclaimers for these patents against U.S. Patent Nos. 10,314,742 ("'742 patent") and 11,389,328 ("'328 patent"). (Ex. 1 (10/2/2023 DeLucia Ltr.).)  Sight declined, noting that Defendants waived the ODP defense by failing to plead it in their Answer or Counterclaims.  (Ex. 2 (10/2-8/2023 Email Chain) at 10/6/2023 M. Rhyu Email (citing cases); *see also id.* at 10/8/2023 M. Rhyu Email.) On October 12, Defendants asserted the ODP defense in their Third Supplemental Invalidity Contentions (Ex. 3 (10/12/2023 Third Suppl. Cont.) at Section VIII), and simultaneously filed an ODP motion for summary judgment (Ex. 4 (D.I. 296) at Motion No. 4) with an accompanying opening brief (Ex. 5 (D.I. 297) at pp. 2, 4, § III.D) and statement of facts (Ex. 6 (D.I. 299)).

## II.     THE NEW ODP DEFENSE IS UNTIMELY AND FORFEITED

The Court should strike Defendants' ODP defense as forfeited because it was not pleaded in Defendants' Answer or Counterclaims.  (D.I. 77 at 25-39.)  *E.g.*, *Mirtech, Inc. v. Agrofresh, Inc.*, C.A. No. 20-1170-RGA, 2023 WL 3996618, at *4 (D. Del. June 14, 2023) (citing *United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023)) (holding that an argument is forfeited when a party fails to timely raise it).  The deadline to amend pleadings passed on March 2, 2023, and Defendants have not sought leave to amend their pleadings, nor would they have good cause to do so at this late stage of the case.  (D.I. 93 at 1; Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P. 15(a)(2).)  Even Defendants' invalidity contentions served at the close of fact discovery omitted the ODP defense (*See generally* Ex. 7 (6/29/2023 Second Suppl. Cont.)).   The defense is also absent from Defendants' interrogatory responses (Ex. 8 (6/29/2023 Second Suppl. Responses to Second Set of Interrogatories) at 35-39 (No. 13)).

Defendants' Second Defense, a non-specific and conclusory assertion of all patent invalidity defenses (D.I. 77 at 25), does not avoid forfeiture.  *See, e.g.*, *Engineered Prods. Co. v. Donaldson Co., Inc.*, 147 F. App'x 979, 986-88 (Fed. Cir. 2005) (reversing and finding waiver of ODP defense disclosed "long after" deadline for amending pleadings and shortly before trial where invalidity was pleaded generally but ODP not specifically disclosed as a defense); *cf. Engineered Prods. Co. v. Donaldson Co., Inc.*, 225 F. Supp. 2d 1069, 1082-83 (N.D. Iowa 2022) (noting defendant argued no waiver because it alleged, generally, that patent was invalid as a defense); *see also Server Tech., Inc. v. Schneider Elec. IT Corp.*, No. 3:06-cv-0698, 2017 WL 7596922, at *1-2 (D. Nev. Dec. 8, 2017) (dismissing ODP defense due to waiver resulting from untimely disclosure).

ODP is "not a new defense."  *Engineering Prods.*, 147 F. App'x at 988.  It is a longstanding, judicially-created doctrine that Defendants have undoubtedly been aware of since the inception of this case.  *E.g.*, *In re Longi*, 759 F.2d 887, 892-95 (Fed. Cir. 1985).  Defendants also cannot

credibly argue that before *In re Cellect, LLC*, 81 F.4th 1216 (Fed. Cir. 2023) ("*In re Cellect*"), they were unaware that ODP may apply to "earlier-filed patents with later expiration dates (as a result of [patent term adjustment]) than that of other patents in the family" (*see* Ex. 3 (10/12/2023 Third Suppl. Cont.) at 91). Nearly ten years ago, the Federal Circuit held that a later-expiring patent was invalid for ODP over an earlier-expiring patent in the same family, and expressly noted that ODP applied to different patent terms "due to examination delays at the PTO." *AbbVie Inc. v. Mathilda and Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1373, 1381 (Fed. Cir. 2014) ("*AbbVie*") (citing "35 U.S.C. § 154(b) (patent term adjustments)"). Soon after, a court applied *AbbVie* and held that a later-expiring patent was invalid for ODP over an earlier-expiring patent in the same family, where the later-expiring patent had received a patent term adjustment ("PTA") under §154(b). *Magna Elecs., Inc. v. TRW Auto. Holding Corp.*, No. 1:12-cv-654, 2015 WL 11430786 (W.D. Mich. Dec. 10, 2015).

Here, the '361 and '443 patents received PTA under §154(b). (D.I. 59, Ex. C ('361 patent) at 1 (577 days); *id.*, Ex. B ('443 patent) at 1 (868 days).) Based on *AbbVie* and *Magna*, Defendants should have been aware seven years before the outset of this case of any alleged ODP issue relating to the '361 and '443 patents (*i.e.*, earlier-filed patents with later expiration dates due to PTA). Defendants were put on notice again in May 2022 when the first appellate brief was filed in *In re Cellect*. (Ex. 9 (No. 22-1293, D.I. 22 (May 16, 2022)); *see also Robocast, Inc. v. YouTube, LLC*, C.A. No. 22-304-RGA, 2022 WL 16922035, at *3-4 (D. Del. Nov. 14, 2022) (deferring ruling on motion to dismiss based on ODP due to the "open issue that is currently before the Federal Circuit" in *In re Cellect*); Ex. 10 (*In the Matter of Certain Video Processing Devices and Prods. Containing Same*, Inv. No. 337-TA-1323), at 30-35 (section titled "A Later Expiration Due to PTA Does Not Preclude Double Patenting"); *id.* at 32 n.3 (taking notice of *In re Cellect*).[1]

It is indisputable that ODP is "not a new defense." *Engineering Prods.*, 147 F. App'x at 988. Defendants forfeited any ODP defense in this case by failing to timely and specifically plead it.

## III.   THE NEW ODP DEFENSE SHOULD BE STRICKEN UNDER *PENNYPACK*

Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Defendants' invalidity contentions are disclosures subject to Rule 26(a)." *Chervon (HK) Ltd. v. One World Techs., Inc.*, C.A. No. 19-1293-GBW, 2023 WL 2372938, at *1 (D. Del. Mar. 6, 2023). Courts in this Circuit apply the *Pennypack* factors when considering whether to exclude evidence under Rule 37: "(1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence." *Intell. Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 12-139, 2017 WL 478565, at *1 (D. Del. Jan. 31, 2017) (citing *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904-05 (3d Cir. 1977)).

---

[1] The *Allergan* case cited by Defendants is inapplicable. (Ex. 1 (10/2/2023 DeLucia Ltr) at 1; Ex. 3 (10/12/2023 Third Suppl. Cont.) at 91.) In that case, there was no assertion that the ODP defense was untimely or forfeited. *See generally Allergan USA, Inc. v. MSN Lab. Private Ltd.*, C.A. No. 19-1727-RGA, 2023 WL 6295496, at *22 (D. Del. Sept. 27, 2023).

Here, every *Pennypack* factor weighs in favor of striking Defendants' new ODP defense.

**Factor 1:  The New ODP Defense is Not Important.**  Defendants' new ODP defense is not "critical" in view of the numerous other defenses they are asserting.  *See Archer v. Defs., Inc.*, C.A. No. 18-470, 2021 WL 3033347, at *2 (D. Del. July 19, 2021) (excluding evidence that was not "critical" or "necessary" to defendant's defenses).  (*See generally* Ex. 3 (10/12/2023 Third Suppl. Cont.) (asserting invalidity under §§102, 103, 112 ¶2, 112 ¶1, 112 ¶4).)  If the ODP defense were truly important, Defendants would have asserted this longstanding doctrine of invalidity in their Answer and Counterclaims over a year ago.  Factor 1 favors exclusion.

**Factors 2 and 4:  The New ODP Defense is Highly Prejudicial and Surprising to Sight and this Prejudice Cannot be Cured.**  Defendants first disclosed the ODP defense three months *after* the close of fact discovery and the week *after* the close of expert discovery.  (*See* D.I. 93 at 18; Ex. 1 (10/2/2023 DeLucia Ltr.).)  No written discovery was exchanged on this issue and Sight has not had the opportunity to develop evidence or to elicit testimony from fact or expert witnesses regarding whether the asserted claims are patentably distinct over the earlier-expiring patents' claims.  (Ex. 2 (10/2-8/2023 Email Chain) at 10/8/2023 M. Rhyu Email.)  ODP requires a claim-to-claim obviousness analysis that implicates both fact and expert issues.  *E.g.*, *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992) ("[D]ouble patenting [] must be evaluated, like any other ground of invalidity, against individual claims.").  There can be no question that, after litigating this case for over two years and completing fact and expert discovery, Defendants' untimely ODP defense is highly prejudicial and surprising to Sight.  (*E.g.*, Ex. 11 (*Fairchild Semiconductor Corp. v. Power Integrations Inc.*, C.A. No. 12-540-LPS, D.I. 162 (D. Del. Oct. 22, 2014) (Oral Order) (granting motion to strike untimely invalidity contentions after the close of fact discovery); *Sysmex Corp. v. Beckman Coulter, Inc.*, C.A. No. 19-1642-GBW, 2022 WL 7008282, at *3 (D. Del. Oct. 12, 2022) ("The introduction of new invalidity defenses after deposition of expert witnesses had ended prejudices [plaintiff].").  Fact and expert discovery are over, so the unfair prejudice to Sight can only be cured by excluding the ODP defense.  *E.g.*, *Sysmex*, 2022 WL 7008282, at *3.  Factors 2 and 4 favor exclusion.

**Factor 3:  The New ODP Defense Would Disrupt Trial.**  Fact and expert discovery are complete and the parties are briefing summary judgment and *Daubert* motions.  (D.I. 93 at 18.)  It is too late to reopen fact and expert discovery without disrupting trial. Factor 3 favors exclusion.

**Factors 5 & 6:  Defendants have No Valid Explanation for the Failure to Disclose and Did Not Act in Good Faith.**  As noted, Defendants should have been on notice of the ODP doctrine's potential applicability to patents in the same family that have different expiration dates due to Patent Office PTA, since the Federal Circuit decided *AbbVie* in 2014—seven years before the start of this case in September 2021.  (*See supra* § II.)  Defendants have no legitimate explanation for failing to seek leave of court to amend their Answer and Counterclaims, or for their failure to raise this defense until after the close of fact and expert discovery.  At the very least, the issues in *In re Cellect* were public by May 2022, when the first appeal brief was filed.  (*Id.*)  By waiting until after the close of fact and expert discovery to raise the ODP defense for the first time, Defendants' conduct has "some smack of gamesmanship."  *See Engineered Prods.*, 147 F. App'x at 988.

The well-established doctrine of forfeiture and all of the *Pennypack* factors favor striking Defendants' new ODP defense.

Respectfully,

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

cc:      All Counsel of Record (by e-mail)
          Clerk of the Court (via CM/ECF and Hand Delivery)

30886417.1

# EXHIBIT 1

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022
United States

Nathaniel DeLucia
To Call Writer Directly:
+1 212 909 3173
nathaniel.delucia@kirkland.com

+1 212 446 4800

Facsimile:
+1 212 446 4900

www.kirkland.com

Oct. 2, 2023

Michelle Rhyu
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

Re: *Sight Sciences, Inc. v. Ivantis, Inc., et al.*, 1:21-cv-01317-GBW-SRF (D. Del.)

Counsel,

The Federal Circuit recently held that whether a patent is invalid for obviousness-type double patenting is to be determined based on the expiration date of the patent after any patent term adjustments have been added. *See In re: Cellect, LLC*, 2023 WL 5519716, at *9 (Fed. Cir. Aug. 28, 2023) (affirming unpatentability of patents for obviousness-type double patenting). At least one Court in this district has since found a patent invalid for obviousness-type double patenting under *In re Cellect*. *See Allergan USA, Inc., et al. v. MSN Lab. Private Ltd., et.al.*, No. CV 19-1727-RGA, 2023 WL 6295496, at *22 (D. Del. Sept. 27, 2023).

U.S. Patent Nos. 9,486,361 and 9,370,443 are invalid for obviousness-type double patenting under *In re Cellect* and *Allergan* absent properly filed terminal disclaimers. As you are aware, the '742 patent and '328 patent expire in May 2027, but the '361 and '443 patents expire in January and November 2028, respectively. The claims of the '361 and '443 patents are not patentably distinct from the claims of the '742 and '328 patents, as Sight has repeatedly told the Patent Office. *E.g.*, '328 Patent File History at May 19, 2022 Response to Non-Final Office Action (filing terminal disclaimer for the '328 patent over the '443 and '361 patents in response to obviousness-type double patenting rejection); '742 Patent File History at Dec. 10, 2018 Response to Non-Final Office Action (filing terminal disclaimer for the '742 patent over the '443 and '361 patents in response to an obviousness-type double patenting rejection); *Ivantis, Inc., et. al v. Sight Sciences, Inc.*, IPR2022-01529, Paper 6 (POPR) at 19-21 (arguing that the "similar scope" of the '443 patent claims to the '742 and '328 patent claims supported denial under § 325(d), pointing to, among other things, a comparison of the claim language and examiner's obviousness-type double patenting rejection during prosecution); *Ivantis, Inc., et. al v. Sight Sciences, Inc.*, IPR2022-01540, Paper 6 (POPR) at 9, 22-24 (same with respect to the '361 patent claims and the '328 patent claims). Sight must therefore file terminal disclaimers for the '361 and '443 patents, disclaiming

## KIRKLAND & ELLIS LLP

Michelle Rhyu
Oct. 2, 2023
Page 2

any patent term beyond the expiration of the '742 and '328 patents, or they are invalid for obviousness-type double patenting under *In re Cellect* and *Allergan*.

Please confirm by 5 pm ET Thursday, Oct. 5, 2023 that, by Thursday, Oct. 19, 2023, Sight will file terminal disclaimers for the '361 and '443 patents so that these patents' terms will not extend beyond the terms of the '328 and '742 patents.  If you do not agree to do so, please provide your availability to meet and confer this week.

Sincerely,

*/s/ Nathaniel DeLucia*

Nathaniel DeLucia

# EXHIBIT 2

**Strosnick, Lauren**

| | |
|---|---|
| **From:** | Rhyu, Michelle |
| **Sent:** | Sunday, October 8, 2023 4:59 PM |
| **To:** | DeLucia, Nathaniel Louis; Armon, Orion; Douglas, Jeannine; Knight, Dustin M; Van Tassel, Joseph E.; Karr, Jeffrey; Strosnick, Lauren; Wood, Alissa |
| **Cc:** | *msharp@ycst.com; Hallowell, Taylor E.; *jhiggins@ycst.com; Villoslada, Caroline; mgassaway@ycst.com; Gonzalez, Juan Pablo; Gibbs, Tracy; z/Sight Sciences Ivantis; Madrigal, Angela R.; SKIvantis@shawkeller.com; #Alcon-SightSciences |
| **Subject:** | RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Correspondence |

Dear Nathaniel,

Defendants waived any obviousness-type double patenting defense, as noted below. Defendants failed to plead the defense, and their interrogatory responses and invalidity contentions contain no mention of the defense.  Contrary to your argument below, Defendants' second defense, a non-specific and conclusory mention of all of patent law, does not rescue Defendants from waiver.  Nor does the *In re Cellect* Federal Circuit decision on a defense well known to counsel (even ignoring that the decision was well over a month ago, before expert depositions began).  And Defendants have not sought, let alone been granted, any amendment of the pleadings or extension of the scheduling order to assert a new defense at this late date, after fact and even expert discovery have closed.

Because Defendants failed to assert any OTDP defense in their answer or counterclaims, no written discovery was ever exchanged on this issue, and we were not given the opportunity to elicit testimony from fact or expert witnesses regarding whether the asserted claims were patentably distinct over the earlier expiring patents' claims.  Fact and expert discovery are over, and it is now too late to be interjecting new issues into the case. Accordingly, we will not be responding to your demand.

Michelle

---

**From:** DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>
**Sent:** Friday, October 6, 2023 3:10 PM
**To:** Rhyu, Michelle <RHYUMS@cooley.com>; Armon, Orion <oarmon@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Knight, Dustin M <dknight@cooley.com>; Van Tassel, Joseph E. <jvantassel@cooley.com>; Karr, Jeffrey <jkarr@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>
**Cc:** *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Villoslada, Caroline <CVilloslada@cooley.com>; mgassaway@ycst.com; Gonzalez, Juan Pablo <jgonzalez@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Correspondence

**[External]**

---

Michelle,

Thank you for your response. What is Plaintiff's basis for contending that the '361 and '443 patents are not invalid for obviousness-type double patenting absent a terminal disclaimer?  And Defendants have not waived the argument that

the '361 and '443 patents are invalid for obviousness-type double patenting: Defendants' second defense is that the "Patents-in-Suit are invalid for failure to satisfy one or more of the conditions and requirements of patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including … any of the judicially created doctrines of invalidity," i.e., obviousness-type double patenting.  *See* Dkt. 77 at 25 (Second Defense); *In re: Cellect, LLC,* 2023 WL 5519716, at *7 (Fed. Cir. Aug. 28, 2023) ("ODP is a judicially created doctrine that has its roots in 35 U.S.C. § 101").  Moreover, *In re Cellect* was only decided a little over a month ago.  In any event, Defendants are available to meet and confer Tuesday at 2 pm ET.  We will circulate an invite.

Thanks,
Nathaniel

---

**From:** Rhyu, Michelle <RHYUMS@cooley.com>
**Sent:** Friday, October 6, 2023 11:00 AM
**To:** DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>; Armon, Orion <oarmon@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Knight, Dustin M <dknight@cooley.com>; Van Tassel, Joseph E. <jvantassel@cooley.com>; Karr, Jeffrey <jkarr@cooley.com>; Strosnick, Lauren <lStrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>
**Cc:** *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Villoslada, Caroline <CVilloslada@ycst.com>; mgassaway@ycst.com; Gonzalez, Juan Pablo <jgonzalez@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** RE: C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Correspondence

Dear Nathaniel,

This is responsive to your letter of October 2, 2023, demanding that Sight file terminal disclaimers for the '361 and '443 patents.  We do not agree with your assertion that these patents are invalid for obviousness-type double patenting or that Sight must file terminal disclaimers.  Moreover, Defendants waived the defense by failing to plead it in their answer or counterclaims. *See, e.g., Engineered Products Co. v. Donaldson Co., Inc.,* 147 Fed.Appx. 979 (2005) (finding waiver of defense due to untimely disclosure and reversing district court); *Server Technology, Inc. v. Schneider Electric IT Corporation,* 2017 WL 7596922, at *2 (D. Nev. Dec. 8, 2017) (dismissing obviousness-type double patenting defense due to waiver resulting from untimely disclosure). The deadline for amending pleadings passed over seven months ago on March 2, 2023.

We are unavailable for a meet and confer this week, but are available next week, Monday at 12-1:30PT/3-4:30ET or Tuesday 11-1PT/2-4ET.

Michelle

**Michelle S. Rhyu, J.D., Ph.D.**
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Direct: (650) 843-5505 • Fax: (650) 849-7400
www.cooley.com
**Bio:** https://www.cooley.com/people/michelle-rhyu

**From:** DeLucia, Nathaniel Louis <nathaniel.delucia@kirkland.com>
**Sent:** Monday, October 2, 2023 5:55 PM
**To:** Armon, Orion <oarmon@cooley.com>; Douglas, Jeannine <jdouglas@cooley.com>; Knight, Dustin M <dknight@cooley.com>; Van Tassel, Joseph E. <jvantassel@cooley.com>; Karr, Jeffrey <jkarr@cooley.com>; Strosnick, Lauren <lstrosnick@cooley.com>; Wood, Alissa <amwood@cooley.com>; Rhyu, Michelle <RHYUMS@cooley.com>
**Cc:** *msharp@ycst.com <msharp@ycst.com>; Hallowell, Taylor E. <THallowell@ycst.com>; *jhiggins@ycst.com <jhiggins@ycst.com>; Villoslada, Caroline <CVilloslada@ycst.com>; mgassaway@ycst.com; Gonzalez, Juan Pablo <jgonzalez@cooley.com>; Gibbs, Tracy <tgibbs@cooley.com>; z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>; Madrigal, Angela R. <AMadrigal@cooley.com>; SKIvantis@shawkeller.com; #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>
**Subject:** C.A. No. 21-1217-GBW-SRF Sight Sciences, Inc. v. Ivantis, Inc. et al. - Correspondence

[External]

Counsel,

Please see the attached correspondence.

Thanks,

**Nathaniel DeLucia**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3173
**F** +1 212 446 4900

nathaniel.delucia@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 3
# EXCERPTED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., | ) | **JURY TRIAL DEMANDED** |
| ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC and | ) | |
| ALCON INC. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' THIRD SUPPLEMENTAL INITIAL INVALIDITY CONTENTIONS (10/12/2023)</u>

Pursuant to Paragraph 9 of the Amended Scheduling Order (D.I. 65), Defendants Ivantis, Inc, Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants"), by their undersigned counsel, provide the following supplemental initial invalidity contentions to Plaintiff Sight Sciences, Inc. ("Sight") for each Asserted Claim of U.S. Patent Nos. 8,287,482 (the "'482 Patent"); 9,370,443 (the "'443 Patent"); 9,486,361 (the "'361 Patent"); 10,314,742 (the "'742 Patent"); and 11,389,328 (the "'328 Patent") (collectively, the "Asserted Patents").

These contentions and disclosures are preliminary, and Defendants reserve the right to amend or supplement these contentions and disclosures based on fact and expert discovery, after claim terms are construed, and as permitted by the Court's rules and orders. These contentions and disclosures are subject to correction for inadvertent errors or omissions, if any.

Sight Sciences contends that Defendants infringe the following claims (the "Asserted Claims") of the Asserted Patents:

members of the genus, particularly because the specification provides virtually no limits on the structural features. *Id.* Additionally, the '742 specification at most indicates that the alleged invention is used to reduce intraocular pressure, not generically "treating an eye condition."[6]

## VII.   FAILURE TO FURTHER LIMIT

Claim 57 of the '443 patent is invalid for failing to comply with the requirements of 35 U.S.C. § 112 ¶ 4. Claim 57, which depends upon claim 1, recites that "the support does not substantially interfere with transmural flow *into and out of* Schlemm's canal." Claim 1 already requires "the support does not substantially interfere with transmural flow *across* Schlemm's canal." Nothing in the specification explains how "into and out of" differs from "across." Thus, Claim 57 contains no additional limitations that Claim 1 does not already recite, and is invalid. *See Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006). Similarly, claim 56 of the 443 patent is invalid under the R&R's construction as failing to further limit independent claim 1.

Similarly, claim 15 of the '482 patent is invalid for failing to comply with the requirements of 35 U.S.C. § 112 ¶ 4. Claim 15, which depends upon claim 1, recites that "the support has a unitary structure." If "has" is interpreted in its ordinary sense to mean that the support must have at least one component that has a unitary structure, but it may have other separate or connectable components, then "unitary structure" does not limit the support.

## VIII.   OBVIOUSNESS-TYPE DOUBLE PATENTING

Obviousness-type double patenting ("ODP") "is a judicially-created doctrine designed to prevent claims in separate applications or patents that do not recite the 'same' invention, but nonetheless claim inventions so alike that granting both exclusive rights would effectively extend

---

[6] For similar reasons that the '742 preamble does not satisfy the written description requirement, to the extent the preamble is limiting, claim 1 of the '742 is not enabled because a POSITA would not be able to make and use the invention without undue experimentation.

the life of patent protection." *In re Hubbell,* 709 F.3d 1140 (Fed. Cir. 2013). A patent is invalid for ODP if its claims "are not patentably distinct from claims in a commonly owned earlier patent.'" *Pfizer, Inc.,* 518 F.3d at 1363. A claim is not patentably distinct "if the later claim is obvious over, or anticipated by, the earlier claim." *Eli Lilly & Co. v. Barr Lab'ys, Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001). "For a patent to qualify as an [ODP] reference, its expiration date must fall before that of the challenged patent." *Allergan USA, Inc., et al. v. MSN Lab. Private Ltd., et.al*., No. CV 19-1727-RGA, 2023 WL 6295496, at \*22 (D. Del. Sept. 27, 2023).

On August 28, 2023, the Federal Circuit held that "the expiration date used for an ODP analysis where a patent has received [a patent term adjustment (PTA)] is the expiration date after the PTA has been added." *In re: Cellect, LLC*, 81 F.4th 1216, 1226 (Fed. Cir. 2023); *see also Allergan*, 2023 WL 6295496, at \*21 (D. Del. Sept. 27, 2023) (noting that the Federal Circuit only "recently addressed the issue of how ODP is applied to a patent that has received PTA" in *Cellect*). Thus ODP now applies to earlier-filed patents with later expiration dates (as a result of PTA) than that of other patents in the family. Indeed, this District has recently applied *Cellect* to find an earlier-filed but later-expiring patent due to a PTA invalid for ODP. *Allergan*, 2023 WL 6295496, at \*22.

The '361 and '443 Asserted Claims are invalid for ODP. The '361 and '443 patents expire after the '742 and '328 patents: the '328 and '742 patents expire in May 2027, while the '361 and '443 patents expire in January and November of 2028, respectively. *See* '361, '443, '328, '742 patents, at cover; Jarosz Op. Rpt. at ¶¶28, 29, 31, 33.

The '361, '443, '328, and '742 patents are also not patentably distinct, as comparison of their claims confirms:

| '361 Patent | '328 Patent |
|---|---|
| 1. A method for reducing intraocular pressure, comprising:<br>introducing a tubular cannula having a lumen at least partially within Schlemm's canal;<br>delivering a high viscosity fluid into Schlemm's canal; and<br>inserting a support into Schlemm's canal by passing the support through the tubular cannula, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than a radius of curvature of Schlemm's canal, and wherein the support comprises at least one fenestration. | 1. A method for reducing intraocular pressure in a patient using a support and an introducer comprising a cannula, comprising:<br>positioning a distal end of the cannula at or near Schlemm's canal, wherein the support is located in a lumen of the cannula; and<br>pushing the support distally out of the distal end of the cannula to insert the support circumferentially within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature Rsupp smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal.<br>4. The method of claim 1, further comprising dilating Schlemm's canal prior to inserting the support.<br>5. The method of claim 4, wherein Schlemm's canal is dilated by injecting fluid into the canal.<br>22. The method of claim 1, wherein the support comprises at least one fenestration.<br>23. The method of claim 1, wherein the support comprises a plurality of fenestrations. |
| 2. The method of claim 1, wherein the delivered fluid dilates the canal. | 4. The method of claim 1, further comprising dilating Schlemm's canal prior to inserting the support.<br>5. The method of claim 4, wherein Schlemm's canal is dilated by injecting fluid into the canal. |
| 3. The method of claim 1, wherein the high viscosity fluid is sodium hyaluronate. | 4. The method of claim 1, further comprising dilating Schlemm's canal prior to inserting the support.<br>5. The method of claim 4, wherein Schlemm's canal is dilated by injecting fluid into the canal. |
| 5. The method of claim 1, wherein the support contacts the interior wall of the canal at least at three points. | 21. The method of claim 1, wherein when the support is inserted within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of the surface area of C. |
| 6. The method of claim 1, wherein the support does not substantially interfere with longitudinal flow along the canal. | 7. The method of claim 1, wherein the support does not significantly block fluid outflow to the collector channels after insertion into Schlemm's canal. |

| '361 Patent | '328 Patent |
|---|---|
| | 8. The method of claim 1, wherein the support does not significantly block fluid outflow from the trabecular meshwork after insertion into Schlemm's canal. |
| 7. The method of claim 1, wherein the support does not substantially interfere with transmural flow across the inner wall of the canal. | 7. The method of claim 1, wherein the support does not significantly block fluid outflow to the collector channels after insertion into Schlemm's canal. 8. The method of claim 1, wherein the support does not significantly block fluid outflow from the trabecular meshwork after insertion into Schlemm's canal. |
| 8. The method of claim 1, wherein the support does not substantially interfere with transmural flow across the outer wall of the canal. | 7. The method of claim 1, wherein the support does not significantly block fluid outflow to the collector channels after insertion into Schlemm's canal. 8. The method of claim 1, wherein the support does not significantly block fluid outflow from the trabecular meshwork after insertion into Schlemm's canal. |
| 9. The method of claim 1, wherein at least a portion of the support extends out of Schlemm's canal and into the trabecular meshwork. | 1. A method for reducing intraocular pressure in a patient using a support and an introducer comprising a cannula, comprising: positioning a distal end of the cannula at or near Schlemm's canal, wherein the support is located in a lumen of the cannula; and pushing the support distally out of the distal end of the cannula to insert the support circumferentially within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature Rsupp smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal. 14. The method of claim 1, wherein $R_{supp}$ is about 3 mm. 15. The method of claim 1, wherein $R_{supp}$ is about 4 mm. 16. The method of claim 1, wherein $R_{supp}$ is about 5 mm. |

| '443 Patent | '742 Patent |
|---|---|
| 1. A device for reducing intraocular pressure in an eye having a Schlemm's canal and a trabecular meshwork, comprising: a support implantable circumferentially within Schlemm's canal and configured to maintain the patency of at least a portion thereof, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal so that at least a portion of the arcuate member is configured to extend out of Schlemm's canal and into the trabecular meshwork and wherein the support does not substantially interfere with transmural flow across Schlemm's canal, and wherein when the support is disposed within a cylindrical section of the lumen of the canal having an internal wall surface area C, the support contacts less than 30% of C. | 1. A method for treating an eye condition, comprising: implanting a support within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal. 13.The method of claim 1, wherein when the support is disposed within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of C. 17. The method of claim 1, wherein the support does not substantially interfere with longitudinal flow along Schlemm's canal. 18. The method of claim 1, wherein the support does not substantially interfere with transmural flow into and out of Schlemm's canal. |
| 8. The device of claim 1 wherein the support has at least one fenestration. | 2. The method of claim 1, wherein the support has at least one fenestration. |
| 11. The device of claim 1 wherein the support has a circumference equal to about half or less than half of the circumference of Schlemm's canal. | 3. The method of claim 1, wherein the support has a length equal to about a quarter or less than a quarter of the circumference of Schlemm's canal. |
| 12. The device of claim 1 wherein the support has a circumference equal to about a quarter or less than a quarter of the circumference of Schlemm's canal. | 3. The method of claim 1, wherein the support has a length equal to about a quarter or less than a quarter of the circumference of Schlemm's canal. |
| 21. The device of claim 1 wherein at least a portion of the support is made from a shape memory material. | 6. The method of claim 1, wherein at least a portion of the support is made from a shape memory material. 7. The method of claim 6, wherein the shape memory material comprises a shape memory alloy. |
| 23. The device of claim 21 wherein the shape memory material comprises a shape memory alloy. | 6. The method of claim 1, wherein at least a portion of the support is made from a shape memory material. 7. The method of claim 6, wherein the shape memory material comprises a shape memory alloy. |

| '443 Patent | '742 Patent |
|---|---|
| 24. The device of claim 23 wherein the shape memory alloy comprises a nickel titanium alloy. | 6. The method of claim 1, wherein at least a portion of the support is made from a shape memory material.<br>7. The method of claim 6, wherein the shape memory material comprises a shape memory alloy.<br>8. The method of claim 7, wherein the shape memory alloy comprises a nickel titanium alloy. |
| 27. The device of claim 1 wherein at least a portion of the support is made from a biocompatible metal. | 9. The method of claim 1, wherein at least a portion of the support is made from a biocompatible metal. |
| 42. The device of claim 1 wherein the support is configured to contact a wall of Schlemm's canal at least at two points. | 2. The method of claim 1, wherein the support has at least one fenestration.<br>12. The method of claim 1, wherein at least a portion of the support is porous.<br>13. The method of claim 1, wherein when the support is disposed within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of C. |
| 43. The device of claim 42 wherein the support is configured to contact a wall of Schlemm's canal at least at three points. | 2. The method of claim 1, wherein the support has at least one fenestration.<br>12. The method of claim 1, wherein at least a portion of the support is porous.<br>13. The method of claim 1, wherein when the support is disposed within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of C. |
| 46. The device of claim 1 wherein at least a portion of the support is porous. | 12. The method of claim 1, wherein at least a portion of the support is porous. |
| 52. The device of claim 1 wherein the support is flexible. | 15. The method of claim 1, wherein the support is flexible. |
| 54. The device of claim 1 wherein the support has a cross-sectional diameter of about 50 microns to about 500 microns. | 1. A method for treating an eye condition, comprising: implanting a support within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal. |

| '443 Patent | '742 Patent |
|---|---|
| | 16. The method of claim 1, wherein the support is rigid. |
| 55. The device of claim 1 wherein the support has a cross-sectional diameter of about 190 microns to about 370 microns. | 1. A method for treating an eye condition, comprising: implanting a support within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal.<br>16. The method of claim 1, wherein the support is rigid. |
| 56. The device of claim 1 wherein the support does not substantially interfere with longitudinal flow along Schlemm's canal. | 17. The method of claim 1, wherein the support does not substantially interfere with longitudinal flow along Schlemm's canal.<br>18. The method of claim 1, wherein the support does not substantially interfere with transmural flow into and out of Schlemm's canal. |
| 57. The device of claim 1 wherein the support does not substantially interfere with transmural flow into and out of Schlemm's canal. | 17. The method of claim 1, wherein the support does not substantially interfere with longitudinal flow along Schlemm's canal.<br>18. The method of claim 1, wherein the support does not substantially interfere with transmural flow into and out of Schlemm's canal. |
| 58. A kit for reducing intraocular pressure in an eye having a Schlemm's canal and a trabecular meshwork comprising: a support implantable circumferentially within Schlemm's canal and configured to maintain the patency of at least a portion thereof, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal so that at least a portion of the arcuate member is configured to extend out of Schlemm's canal and into the trabecular meshwork and wherein the support does not substantially interfere with transmural flow across Schlemm's canal, and wherein when the support is disposed within a | 1. A method for treating an eye condition, comprising: implanting a support within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal.<br>13. The method of claim 1, wherein when the support is disposed within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of C.<br>17. The method of claim 1, wherein the support does not substantially interfere with longitudinal flow along Schlemm's canal. |

| '443 Patent | '742 Patent |
|---|---|
| cylindrical section of the lumen of the canal having an internal wall surface area C, the support contacts less than 30% of C; and an introducer for delivering the support. | 18. The method of claim 1, wherein the support does not substantially interfere with transmural flow into and out of Schlemm's canal.<br>19. The method of claim 1, further comprising preloading the support into an introducer and delivering the support from the introducer into Schlemm's canal. |
| 59. The kit of claim 58 further comprising instructions on using the kit. | 1. A method for treating an eye condition, comprising: implanting a support within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal. |
| 70. The kit of claim 58 wherein the support is preloaded into the introducer. | 19. The method of claim 1, further comprising preloading the support into an introducer and delivering the support from the introducer into Schlemm's canal. |
| 71. The kit of claim 58 wherein the introducer comprises a pusher. | 20. The method of claim 19, wherein the support is delivered from the introducer using a pusher. |

Sight itself repeatedly confirmed the claims are not patentably distinct to the PTO during prosecution of the '328 and '742 patents. The Examiner rejected the then-pending claims of those patents for ODP because they were "not patentably distinct from" the claims of the '361 and '443 patents. *See* '328 and '742 File Histories. Sight filed terminal disclaimers for the '328 and '742 patents to overcome the Examiner's ODP rejections, which "is a strong clue that the claims … are patentably indistinct." *Id.*; *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 F. App'x 1024, 1035 (Fed. Cir. 2018).

Sight then doubled down on the similarity of claims when it asked the PTAB to deny institution of Defendants' petitions for *inter partes* review ("IPR") of the '361 and '443 patents.

Sight argued that the PTAB should exercise its discretion to deny institution because Defendants' prior art had purportedly been before the PTO during prosecution of the '328 and '742 patents, and those patents' claims were of "similar scope" to the '361 and '443 patents' claims. IPR2022-01540, POPR at 9–10, 22–24. IPR2022-01529, POPR at 19–21. To convince the PTAB that these claims were of "similar scope," Sight adopted the Examiner's statement that "[a]lthough the claims at issue are not identical, *they are not patentably distinct from each other*." *Id*. Indeed, Sight charted for the PTO the similarity of exemplar claims in the '361, '443, '328, and '742 patents. *Id*. Sight is bound by its representations to the PTO; it cannot "argue[] one way in order to maintain [its] [claims'] patentability and in a different way against accused infringers." *Aylus Networks, Inc. v. Apple Inc*., 856 F.3d 1353 (Fed. Cir. 2017).

## IX.   DOCUMENT PRODUCTION

Copies of the prior art referenced in Defendants' Corrected Initial Invalidity Contentions were produced with production numbers: IVANTIS_SS_00001298 - IVANTIS_SS_00003153.

Documents produced with Defendant's First Supplemental Initial Invalidity Contentions (9/22/2022) have the following production numbers: IVANTIS_SS_00003154 - IVANTIS_SS_00003172.

Documents produced with Defendants' Second Supplemental Initial Invalidity Contentions (6/29/2023) have the following production numbers: IVANTIS_SS_00456059-IVANTIS_SS_00456154.

Dated: October 12, 2023

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Noah S. Frank
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeannie M. Heffernan
Kat Li
Austin C. Teng
Ryan J. Melde KIRKLAND
& ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Laura Zhu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jake Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

*/s/ Kat Li*                              
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants*

99

## CERTIFICATE OF SERVICE

I, Kat Li, hereby certify that on October 12, 2023, this document was served on the

persons listed below in the manner indicated:

**BY EMAIL**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Bonnie Fletcher Price
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800
bfletcherprice.com

Dustin M. Knight
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190
(703) 456-8000
dknight@cooley.com

Dated: October 12, 2023

Michelle S. Rhyu
David Murdter
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
dmurdter@cooley.com
lstrosnick@cooley.com
amwood@cooley.com
cvanderwall@cooley.com

*/s/ Kat Li*
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

*Attorney for Defendants*

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIGHT SCIENCES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 21-1317-GBW-SRF |
| | ) |
| IVANTIS, INC., ALCON RESEARCH | ) |
| LLC, ALCON VISION, LLC, and ALCON | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTIONS (NOS. 1-4) FOR SUMMARY JUDGMENT
OF INVALIDITY OF CERTAIN ASSERTED CLAIMS**

Pursuant to Federal Rule of Civil Procedure 56, Defendants Ivantis, Inc., Alcon Research

LLC, Alcon Vision, LLC and Alcon Inc. ("Defendants") respectfully move as follows:

- Motion No. 1: Defendants move for summary judgment of invalidity for lack of enablement;

- Motion No. 2: Defendants move for summary judgment of invalidity for lack of written description;

- Motion No. 3: Defendants move for summary judgment of indefiniteness; and

- Motion No. 4: Defendants move for summary judgment of invalidity for obviousness-type double patenting.

The grounds for these motions are fully set forth in Defendants' Opening Brief in Support of its

Motions for Summary Judgment.

WHEREFORE, Defendants respectfully request that the Court grant these motions and

enter the attached proposed order.

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: October 12, 2023

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

# EXHIBIT 5
# EXCERPTED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | ███████████████ |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

OF COUNSEL:
Gregg LoCascio
Sean McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: October 12, 2023

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      Nature and Stage of Proceedings ........................................................ 2

II.     Summary of the Argument.................................................................. 2

III.    Argument .......................................................................................... 4

      A.      <u>Motion 1</u>: The Block Limitation Claims Are Invalid for Lack of Enablement Because the Universe of Supports That Could Potentially Achieve the Claimed Function Is Infinite and Undue Experimentation Would be Required to Determine the Full Scope .................................... 4

      B.      <u>Motion 2</u>: The Block Limitation Claims Are Invalid for Lack of Written Description Because the Specification Does Not Demonstrate That the Inventors Actually Invented the Full Scope of Supports That Achieve The Claimed Function.............................................................................. 14

      C.      <u>Motion 3</u>: The Block Limitation Claims Are Indefinite Because Sight's Shifting Interpretations of the Claim Language Show That a POSA Would Not Reasonably Be Able to Determine the Scope of the Claims ........................ 18

      D.      <u>Motion 4</u>: The '361 and '443 Patents Are Invalid for Obviousness-Type Double Patenting Because They Are Obvious Variants of the Earlier-Expiring '328 and '742 Patents and Impermissibly Extend the Alleged Inventions' Lifetime............................................................................. 20

IV.     Conclusion ....................................................................................... 24

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re '318 Pat. Infringement Litig.*,
    583 F.3d 1317 (Fed. Cir. 2009) ................................................................................8

*Abdou v. Alphatec Spine, Inc.*,
    No. 12-cv-1804 BEN (RBB), 2014 WL 6611422 (S.D. Cal. Nov. 19, 2014) ........................20

*Allergan USA, Inc., et al. v. MSN Lab. Private Ltd., et.al.*,
    No. CV 19-1727-RGA, 2023 WL 6295496 (D. Del. Sept. 27, 2023) ....................................21

*Amgen Inc. v. Sanofi*,
    598 U.S. 594 (2023) ................................................................................ *passim*

*Amgen Inc. v. Sanofi, Aventisub LLC*,
    987 F.3d 1080 (Fed. Cir. 2021) .................................................................5, 6, 12

*Aquatic AV, Inc. v. Magnadyne Corp.*,
    No. C 14-01931-WHA, 2015 WL 926425 (N.D. Cal. Feb. 25, 2015) ....................................20

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) .................................................................. *passim*

*Auto. Techs. Int'l v. BMW of N. Am.*,
    501 F.3d 1274 (2007) ................................................................................14

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017) ................................................................................24

*Baxalta Inc. v. Genentech, Inc.*,
    No. 2022-1461, 2023 WL 6135930 (Fed. Cir. Sept. 20, 2023) .........................................6, 12

*Billups-Rothenberg, Inc. v. Assoc. Reg'l & Univ. Pathologists, Inc.*,
    642 F.3d 1031 (Fed. Cir. 2011) ................................................................................15

*Bombardier Rec. Prods. Inc. v. Arctic Cat Inc.*,
    785 F. App'x 858 (Fed. Cir. 2019) ................................................................................19

*In re: Cellect, LLC*,
    81 F.4th 1216 (Fed. Cir. 2023) ................................................................................4, 21, 24

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
    636 F.3d 1341 (Fed. Cir. 2011) ................................................................................3, 15

*Eli Lilly & Co. v. Barr Labs., Inc.*,
    251 F.3d 955 (Fed. Cir. 2001)...........................................................................20

*In re Fisher*,
    427 F.2d 833 (CCPA 1970) ..........................................................................8, 10

*Genentech, Inc. v. Novo Nordisk A/S*,
    108 F.3d 1361 (Fed. Cir. 1997)........................................................................14

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008).........................................................................19

*In re Hubbell*,
    709 F.3d 1140 (Fed. Cir. 2013)........................................................................20

*Idenix Pharms. LLC v. Gilead Scis. Inc.*,
    941 F.3d 1149 (Fed. Cir. 2019)..........................................................10, 12, 13, 17

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*,
    752 F. App'x 1024 (Fed. Cir. 2018) ...................................................................23

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)........................................................................18

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
    10 F.4th 1330 (Fed. Cir. 2021) ...................................................................15, 16

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    481 F.3d 1371 (Fed. Cir. 2007).....................................................................7, 13

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)......................................................................................18

*Novo Nordisk Pharms., Inc. v. Bio-Technology Gen. Corp.*,
    424 F.3d 1347 (Fed. Cir. 2005)........................................................................13

*Ormco Corp. v. Align Tech., Inc.*,
    498 F.3d 1307 (Fed. Cir. 2007)........................................................................13

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997)........................................................................16

*Trs. of Boston Univ. v. Everlight Elecs. Co.*,
    896 F.3d 1357 (Fed. Cir. 2018)..........................................................................6

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988)......................................................................6, 14

*Wyeth & Cordis Corp. v. Abbott Labs.*,
    720 F.3d 1380 (Fed. Cir. 2013)............................................................................................12

**Statutes**

35 U.S.C. § 112............................................................................................................14, 18, 20

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................18

lacks the basic information that would have allowed a skilled artisan to (1) make and use the full scope of the invention without undue experimentation, which renders the claims invalid for lack of enablement; (2) recognize the inventors actually possessed all supports that achieve the "does not significantly block" function encompassed by the claims, which renders the claims invalid for lack of written description; or (3) be reasonably certain whether or not a given "support" "does not significantly block" flow when implanted, which renders the claims invalid for indefiniteness. Summary judgment is the appropriate time to invalidate these functional claims and narrow the issues for trial. There is no genuine dispute that the common specification is no more than a trial-and-error research plan for an unpredictable problem requiring immense resources and time for a person of ordinary skill to solve: it contains no functional examples, no representative "supports," and no common structural features to distinguish a support that "does not significantly block" flow from one that does. Discovering a solution to this kind of functional problem requires "undue experimentation," robbing the public of the make-and-use benefit it is supposed to receive in exchange for granting a limited monopoly. The claims should be held invalid as a matter of law.

In addition, Sight seeks to impermissibly extend its patent monopoly by not limiting the terms of the '361 and '443 patents to the expiration dates of the related '328 and '742 patents, whose claims Sight admits are not patentably distinct from the '361 and '443 patents. This is obviousness-type double patenting ("ODP"), which is a separate, independent basis for summary judgment of invalidity of the '361 and '443 patents.

## I.     NATURE AND STAGE OF PROCEEDINGS

Sight Sciences, Inc. filed this suit on September 16, 2021. Fact discovery closed June 29, 2023, and expert discovery closed September 28, 2023. Trial is scheduled to begin April 8, 2024.

## II.    SUMMARY OF THE ARGUMENT

1.     ***Motion 1: Enablement.*** The Block Limitation claims are invalid for lack of

indefinite. The Court's construction replaces one relative term of degree ("substantially") with another ("significantly"), and a POSA would not have been reasonably certain of the scope of the claims. Indeed, the claimed "support" may achieve the result in some patients but not others. And although the Court adopted Sight's reasoning when it construed the "does not significantly block" term, tying it to an "increase in aqueous outflux (and therefore a decrease in [intraocular pressure] [in the eye,]" D.I. 273 at 6, Sight's expert now requires that one show that fluid in the eye (aqueous humor) flows through specific tissue (the trabecular meshwork) to meet the claim. But the specification has no guidance for how to determine *where* the fluid flows. This added requirement that cannot be measured injects more uncertainty and confirms the claims are indefinite.

4.     ***Motion 4: Obviousness-type double patenting.*** The '361 and '443 Asserted Claims are invalid for yet another reason: ODP. Sight does not dispute that these patents expire after the '328 and '742 patents, or that Sight has not filed a terminal disclaimer for these patents. ODP CSoF at ¶¶1–4, 6. And Sight has previously admitted these claims are not patentably distinct. ODP CSoF at ¶¶5,7–10. A side-by-side comparison of the claims confirms this. Appendix X. The '361 and '443 patents are therefore invalid for ODP. *In re: Cellect, LLC*, 81 F.4th 1216, 1226 (Fed. Cir. 2023).

## III.     ARGUMENT

### A.     <u>Motion 1</u>: The Block Limitation Claims Are Invalid for Lack of Enablement Because the Universe of Supports That Could Potentially Achieve the Claimed Function Is Infinite and Undue Experimentation Would be Required to Determine the Full Scope

Fifty-five of the eighty-six Asserted Claims cover any "support" defined not by the support's structure but its ***functionality*** (*i.e.*, by the result it achieves when implanted in the eye). The claims ***functionally*** restrict the invention to a support that "does not significantly block" fluid flow. D.I. 287. Courts routinely find that such broad functional limitations "pose high hurdles in

"blocking." Ex. 18, Tanna Rpl. Rep. ¶¶ 537-39. Moreover, Sight only adopted this new construction in an obvious attempt to avoid myriad prior art that disclosed Schlemm's canal implants that reduce IOP and increase aqueous outflow. *Compare* Ex. 14, Downs Op. Rep. ¶ 97 (relying on Hydrus experimental data showing increased outflow facility), *with* Ex. 15, Downs Reb. Rep. ¶ 147. In any event, Sight's "cascade of ever-changing meanings…introduces the very imprecision Section 112 prohibits." *Aquatic AV, Inc. v. Magnadyne Corp.*, No. C 14-01931-WHA, 2015 WL 926425, at * 2 (N.D. Cal. Feb. 25, 2015).

**Third**, Sight argues that the **length** of a bypass device affects whether the membrane-specific fluid flow will occur across the trabecular meshwork, compounding the uncertainty of the scope of the claims. Ex. 15, Downs Reb. Rep. ¶ 170 (arguing that fluid may not flow "near the inlet of the bypass stent," but that "is not likely to hold further away from the bypass stent inlet"). Nothing in the Asserted Patents provides guidance regarding what lengths of a "support" "significantly block" flow and what lengths do not. This "absence of identified boundaries in terms of proximity, distance, or location" further demonstrates that a POSA would not have been reasonably certain about the scope of the claims, which are therefore indefinite. *Abdou v. Alphatec Spine, Inc.*, No. 12-cv-1804 BEN (RBB), 2014 WL 6611422, at *8 (S.D. Cal. Nov. 19, 2014).

   **D.**   **Motion 4**: **The '361 and '443 Patents Are Invalid for Obviousness-Type Double Patenting Because They Are Obvious Variants of the Earlier-Expiring '328 and '742 Patents and Impermissibly Extend the Alleged Inventions' Lifetime**

ODP "is a judicially-created doctrine designed to prevent claims in separate applications or patents that do not recite the 'same' invention, but nonetheless claim inventions so alike that granting both exclusive rights would effectively extend the life of patent protection." *In re Hubbell*, 709 F.3d 1140 (Fed. Cir. 2013). A patent is invalid for ODP if its claims "are not patentably distinct from claims in a commonly owned earlier patent." *Pfizer, Inc.*, 518 F.3d at 1363. A claim is not patentably distinct "if the later claim is obvious over, or anticipated by, the earlier claim." *Eli Lilly*

*& Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001). "For a patent to qualify as an [ODP] reference, its expiration date must fall before that of the challenged patent." *Allergan USA, Inc., et al. v. MSN Lab. Private Ltd., et.al.*, No. CV 19-1727-RGA, 2023 WL 6295496, at *22 (D. Del. Sept. 27, 2023). On August 28, 2023, the Federal Circuit held that "the expiration date used for an ODP analysis where a patent has received [a patent term adjustment (PTA)] is the expiration date after the PTA has been added." *In re: Cellect, LLC*, 81 F.4th 1216, 1226 (Fed. Cir. 2023). Thus ODP now applies to earlier-filed patents with later expiration dates than other patents in the family because of PTA. Indeed, this District has recently applied *Cellect* to find an earlier-filed but later-expiring patent due to a PTA invalid for ODP. *Allergan*, 2023 WL 6295496, at *22.

There is no dispute that the '361 and '443 patents expire after the '742 and '328 patents: the '328 and '742 patents expire in May 2027, while the '361 and '443 patents expire in January and November of 2028, respectively, as illustrated by Appendix Y below.[6] Exs. 2-5 ('443, '361, '742, '328 patents) at cover; Ex. 10, Jarosz Op. Rep. at ¶¶28, 29, 31, 33; Appendix Y.



---

[6] The '361, '443, '328, and '742 patents are part of the same family, sharing the same priority date, and therefore would typically expire at the same time. However, as illustrated in Appendix Y, these patents received PTAs that cause them to expire at different times, resulting in an impermissible windfall to the terms of the '361 and '443 patents.

There is also no genuine dispute that the claims of the '361, '443, '328, and '742 patents are not patentably distinct, as a simple comparison of their claims confirms:

| '361 Patent | '328 Patent |
|---|---|
| 1. A method for reducing intraocular pressure, comprising: introducing a tubular cannula having a lumen at least partially within Schlemm's canal; delivering a high viscosity fluid into Schlemm's canal; and inserting a support into Schlemm's canal by passing the support through the tubular cannula, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than a radius of curvature of Schlemm's canal, and wherein the support comprises at least one fenestration. | 1. A method for reducing intraocular pressure in a patient using a support and an introducer comprising a cannula, comprising: positioning a distal end of the cannula at or near Schlemm's canal, wherein the support is located in a lumen of the cannula; and pushing the support distally out of the distal end of the cannula to insert the support circumferentially within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature $R_{supp}$ smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal. 4. The method of claim 1, further comprising dilating Schlemm's canal prior to inserting the support. 5. The method of claim 4, wherein Schlemm's canal is dilated by injecting fluid into the canal. 22. The method of claim 1, wherein the support comprises at least one fenestration. 23. The method of claim 1, wherein the support comprises a plurality of fenestrations. |

| '443 Patent | '742 Patent |
|---|---|
| 1. A device for reducing intraocular pressure in an eye having a Schlemm's canal and a trabecular meshwork, comprising: a support implantable circumferentially within Schlemm's canal and configured to maintain the patency of at least a portion thereof, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal so that at least a portion of the arcuate member is configured to extend out of Schlemm's canal and into the trabecular | 1. A method for treating an eye condition, comprising: implanting a support within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal. 13. The method of claim 1, wherein when the support is disposed within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of C. |

| '443 Patent | '742 Patent |
|---|---|
| meshwork and wherein the support does not substantially interfere with transmural flow across Schlemm's canal, and wherein when the support is disposed within a cylindrical section of the lumen of the canal having an internal wall surface area C, the support contacts less than 30% of C. | 17. The method of claim 1, wherein the support does not substantially interfere with longitudinal flow along Schlemm's canal. 18. The method of claim 1, wherein the support does not substantially interfere with transmural flow into and out of Schlemm's canal. |

*See also* Appendix X (charts comparing of all asserted claims of the '361 and '443 patents).

Indeed, Sight itself repeatedly confirmed the claims are not patentably distinct to the PTO during prosecution of the '328 and '742 patents. The Examiner rejected the then-pending claims of those patents for ODP because they were "not patentably distinct from" the claims of the '361 and '443 patents. ODP CSoF at ¶¶ 5, 7. Sight filed terminal disclaimers for the '328 and '742 patents to overcome the Examiner's ODP rejections, which "is a strong clue that the claims … are patentably indistinct." *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 F. App'x 1024, 1035 (Fed. Cir. 2018); ODP CSoF at ¶¶ 5, 7.

Sight then doubled down on the similarity of claims when it asked the PTAB to deny institution of Defendants' petitions for *inter partes* review ("IPR") of the '361 and '443 patents. Sight argued that the PTAB should deny institution because Defendants' prior art had been before the PTO during prosecution of the '328 and '742 patents, and those patents' claims were of "similar scope" to the '361 and '443 patents' claims. ODP CSoF at ¶¶8–10. To convince the PTAB that these claims were of "similar scope," Sight adopted the Examiner's holding that "[a]lthough the claims at issue are not identical, ***they are not patentably distinct from each other***." *Id*. Indeed, Sight charted for the PTO the similarity of exemplar claims in the '361, '443, '328, and '742 patents—making virtually identical comparisons as Defendants' chart above. *Id*. Sight is bound by its representations to the PTO; it cannot "argue[] one way in order to maintain [its] [claims'] patentability and in a different way against accused infringers." *Aylus Networks, Inc. v. Apple Inc*.,

856 F.3d 1353 (Fed. Cir. 2017).

No genuine dispute of material fact therefore exists, and the '361 and '443 patents are invalid for ODP. *Cellect*, 81 F.4th at 1226 (when "the claims of a later-expiring patent would have been obvious over the claims of an earlier-expiring patent owned by the same party…absent a terminal disclaimer, the later-expiring claims are invalid."). Accordingly, the Court should grant summary judgment that the '361 and '443 patents are invalid for ODP.

## IV.   CONCLUSION

Defendants respectfully request that the Court grant summary judgment that the Block Limitation claims are invalid and that the '361 and '443 patents are invalid for obviousness-type double patenting for the reasons presented above.

/s/ Andrew E. Russell

| | |
|---|---|
| OF COUNSEL: | John W. Shaw (No. 3362) |
| Gregg LoCascio | Karen E. Keller (No. 4489) |
| Sean McEldowney | Andrew E. Russell (No. 5382) |
| Justin Bova | Nathan R. Hoeschen (No. 6232) |
| Steven Dirks | SHAW KELLER LLP |
| Socrates L. Boutsikaris | I.M. Pei Building |
| KIRKLAND & ELLIS LLP | 1105 North Market Street, 12th Floor |
| 1301 Pennsylvania Avenue, N.W. | Wilmington, DE 19801 |
| Washington, DC 20004 | (302) 298-0700 |
| (202) 389-5000 | jshaw@shawkeller.com |

OF COUNSEL:
Gregg LoCascio
Sean McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: October 12, 2023

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Andrew E. Russell, hereby certify that on October 12, 2023, this document was served

on zsightsciencesivantis@cooley.com and the persons listed below in the manner indicated:

### BY EMAIL

| | |
|---|---|
| Melanie K. Sharp | Michelle S. Rhyu, J.D., Ph.D. |
| James L. Higgins | Lauren Strosnick |
| Taylor E. Hallowell | Alissa Wood |
| YOUNG, CONAWAY, STARGATT & TAYLOR LLP | Angela R. Madrigal |
| Rodney Square | Juan Pablo Gonzalez |
| 1000 North King Street | Jeffrey Karr |
| Wilmington, DE 19801 | COOLEY LLP |
| (302) 571-6600 | 3175 Hanover Street |
| msharp@ycst.com | Palo Alto, CA 94305 |
| jhiggins@ycst.com | (650) 843-5000 |
| thallowell@ycst.com | rhyums@cooley.com |
| | lstrosnick@cooley.com |
| Orion Armon | amwood@cooley.com |
| COOLEY LLP | jgonzalez@cooley.com |
| 1144 15th Street, Suite 2300 | amadrigal@cooley.com |
| Denver, CO 80202 | jkarr@cooley.com |
| (720) 566-4000 | |
| oarmon@cooley.com | Bonnie Fletcher Price |
| | COOLEY LLP |
| Dustin M. Knight | 1299 Pennsylvania Avenue, NW |
| Joseph Van Tassell | Suite 700 |
| COOLEY LLP | Washington, DC 20004 |
| 11951 Freedom Drive, 14th Floor | (202) 776-2099 |
| Reston, VA 20190 | bfletcherprice@cooley.com |
| (703) 456-8024 | |
| dknight@cooley.com | |
| jvantassell@cooley.com | |

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700a
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' CONCISE STATEMENT OF FACTS IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR
<u>OBVIOUSNESS-TYPE DOUBLE PATENTING</u>**

OF COUNSEL:
Gregg LoCascio
Sean McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: October 12, 2023

1.  U.S. Patent No. 8,287,482 ("'482 Patent") issued from Application No. 12/695,053, filed January 27, 2010, and is a continuation of application No. 11/475,523, filed June 26, 2006, now U.S. Patent No. 7,909,789 ("'789 Patent"). Ex. 1, '482 Patent, cover; Appendix Y. The '482 Patent is subject to patent term adjustments of 305 days under 35 U.S.C. § 154(b) and expires on April 27, 2027. Ex. 1, '482 Patent, cover; Ex. 10, Jarosz Op. Rep. at ¶27; Appendix Y.

2.  U.S. Patent No. 9,370,443 ("'443 Patent") issued from Application No. 13/025,112, filed February 10, 2011, and is a divisional of the '789 Patent. Ex. 2, '443 Patent, cover; Appendix Y. The '443 Patent is subject to patent term adjustments of 868 days under 35 U.S.C. § 154(b) and expires on November 10, 2028. Ex. 2, '443 Patent, cover; Ex. 10, Jarosz Op. Rep. at ¶28; Appendix Y.

3.  U.S. Patent No. 9,486,361 ("'361 Patent") issued from Application No. 13/445,816, filed June 12, 2012, is a continuation of application No. 12/695,053, filed January 27, 2010, now U.S. Patent No. 8,287,482 ("'482 Patent"), which is a continuation of the '789 patent. Ex. 3, '361 Patent, cover; Appendix Y. The '361 Patent is subject to patent term adjustments of 577 days under 35 U.S.C. § 154(b) and expires on January 24, 2028. Ex. 3, '361 Patent, cover; Ex. 10, Jarosz Op. Rep. at ¶29; Appendix Y.

4.  U.S. Patent No. 10,314,742 ("'742 Patent") issued from Application No. 15/182,165, filed June 14, 2016, and is a continuation of the '443 Patent. Ex. 4, '742 Patent, cover; Appendix Y. The '742 Patent is subject to patent term adjustments of 329 days under 35 U.S.C. § 154(b), and a terminal disclaimer, and expires on May 21, 2027. Ex. 4, '742 Patent, cover; Ex. 10, Jarosz Op. Rep. at ¶31; Appendix Y.

5.  During prosecution of the '742 Patent, Sight filed a terminal disclaimer to overcome the Examiner's double patenting rejection, disclaiming the terminal part of the '742 Patent's term, which would extend beyond the expiration dates of the '361 and '443 Patents. Ex. 6, '742 Patent File History at August 9, 2018 Non-Final Rejection; Ex. 7, '742 Patent File History at December 10, 2018 Response to Non-Final Office Action.

6.  U.S. Patent No. 11,389,328 ("'328 Patent") issued from Application No. 16/413,466, filed May 15, 2019, and is a continuation of the '742 Patent. Ex. 5, '328 Patent, cover; Appendix Y. The '328 Patent is subject to patent term adjustments of 656 days under 35 U.S.C. § 154(b), and a terminal disclaimer, and expires on May 21, 2027. Ex. 5, '328 Patent, cover; Ex. 10, Jarosz Op. Rep. at ¶33; Appendix Y.

7.  During prosecution of the '328 Patent, Sight filed a terminal disclaimer to overcome the Examiner's double patenting rejection, disclaiming the terminal part of the '328 Patent's term, which would extend beyond the expiration dates of the '361, '443, 742, and 789 Patents. Ex. 8, '328 Patent File History at April 26, 2022 Non-Final Rejection; Ex. 9, '328 Patent File History at May 19, 2022 Response to Non-Final Office Action.

8.  Defendants filed petitions for *inter partes* review ("IPR") against the '361 and '443 Patents. Ex. 62, IPR2022-01540, Paper 2 (Petition) at 1; Ex. 61, IPR2022-01529, Paper 2 (Petition) at 1.

9.  Sight stated to the Board that the Board should exercise its discretion to deny institution of Defendants' IPRs under 35 U.S.C. § 325(d) because the same or substantially the same prior art was previously presented to the Patent Office. Ex. 64, IPR2022-01540, Paper 6 (POPR) at 9–13, 22–24; Ex. 63, IPR2022-01529, Paper 6 (POPR) at 14–21.

10. Sight represented to the Board that the claims of the '361 and '443 Patents were of "similar scope" to the '328 and '742 Patents, charted exemplary claims of the '361, '443, '328 and '742 Patents, and pointed to the Examiner's determination during prosecution of the '328 and '742 Patents that claims of the '328 and '742 Patents were "not patentably distinct from" claims of the '361 and '443 Patents. Ex. 63, IPR2022-01529, POPR at 19–21; Ex. 64, IPR2022-01540, POPR at 22–24.

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: October 12, 2023

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

4

**CERTIFICATE OF SERVICE**

I, Andrew E. Russell, hereby certify that on October 12, 2023, this document was served

on zsightsciencesivantis@cooley.com and the persons listed below in the manner indicated:

**BY EMAIL**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Dustin M. Knight
Joseph Van Tassell
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190
(703) 456-8024
dknight@cooley.com
jvantassell@cooley.com

Michelle S. Rhyu, J.D., Ph.D.
Lauren Strosnick
Alissa Wood
Angela R. Madrigal
Juan Pablo Gonzalez
Jeffrey Karr
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
lstrosnick@cooley.com
amwood@cooley.com
jgonzalez@cooley.com
amadrigal@cooley.com
jkarr@cooley.com

Bonnie Fletcher Price
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 776-2099
bfletcherprice@cooley.com

5

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700a
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., | ) | **JURY TRIAL DEMANDED** |
| ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC and | ) | |
| ALCON INC. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' SECOND SUPPLEMENTAL INITIAL INVALIDITY CONTENTIONS</u>**
**<u>(6/29/2023)</u>**

Pursuant to Paragraph 9 of the Amended Scheduling Order (D.I. 65), Defendants Ivantis, Inc, Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants"), by their undersigned counsel, provide the following supplemental initial invalidity contentions to Plaintiff Sight Sciences, Inc. ("Sight") for each Asserted Claim of U.S. Patent Nos. 8,287,482 (the "'482 Patent"); 9,370,443 (the "'443 Patent"); 9,486,361 (the "'361 Patent"); 10,314,742 (the "'742 Patent"); and 11,389,328 (the "'328 Patent") (collectively, the "Asserted Patents").

These contentions and disclosures are preliminary, and Defendants reserve the right to amend or supplement these contentions and disclosures based on fact and expert discovery, after claim terms are construed, and as permitted by the Court's rules and orders. These contentions and disclosures are subject to correction for inadvertent errors or omissions, if any.

Sight Sciences contends that Defendants infringe the following claims (the "Asserted Claims") of the Asserted Patents:

| Asserted Patent | Asserted Claims |
|---|---|
| '482 Patent | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80[1] |
| '443 Patent | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| '361 Patent | 1–3, 5–9 |
| '742 Patent | 1–3, 6–9, 12–13, 15, 17–20 |
| '328 Patent | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |

Defendants contend that the Asserted Claims are invalid and not infringed.

Defendants' supplemental invalidity contentions (i) list specific examples of where the prior art discloses, either expressly or inherently, each limitation of the Asserted Claims and (ii) identify examples of combinations of prior art that render the Asserted Claims obvious. These citations are substantial, but they are not intended to be exhaustive. Defendants may rely on uncited portions of the cited prior art and offer expert testimony to explain and provide context for the prior art. The citation of certain exemplary obviousness combinations does not exclude other combinations. The obviousness combinations are not intended to be exhaustive.

For any claim limitation that Sight Sciences may contend is not disclosed in the cited prior art, Defendants reserve the right to assert that the limitation is inherent, the limitation would have been obvious to a person of ordinary skill in the art (hereinafter, "POSITA"), or that the limitation is disclosed in other prior art that may be combined with the cited prior art.

These supplemental initial invalidity contentions and accompanying documents reflect information possessed by Defendants and their attorneys at the present time, without the benefit

---

[1] Sight listed Claims 51, 60, and 86 of U.S. Patent No. 8,287,482 as Asserted Claims in Sight's Corrected Initial Infringement Contentions served August 26, 2022. Sight confirmed by e-mail on August 27, 2022 that it is not asserting Claims 51, 60, or 86 of the '482 patent. Defendants, therefore, do not provide Initial Invalidity Contentions regarding these claims.

of a claim construction order from the Court. As such, these contentions are based, at least in part, upon Sight's apparent constructions of the Asserted Claims of the Asserted Patents in light of Sight Sciences' Initial Infringement Contentions, served on August 2, 2022, and at least in part on Judge Fallon's Report and Recommendation. Nothing herein, however, should be construed as an admission or acquiescence by Defendants that Sight's apparent application of the claims is correct. Defendants deny infringement and expressly reserve the right to propose alternative constructions to those that Sight advocates or suggests, expressly or by inference, to rebut Sight's actual claim construction positions.

Additional discovery may further support these supplemental invalidity contentions with respect to the Asserted Patents. Defendants have not, for example, received all relevant and responsive documents from Sight or document productions and deposition testimony from third parties that are likely to have additional relevant and responsive information and materials. Accordingly, these supplemental initial invalidity contentions are made without prejudice to Defendants' right to supplement and amend as more information becomes available.

Additional prior art may become relevant depending on the claim construction positions that Sight hereafter asserts and the constructions that the Court adopts. Defendants' ongoing investigations may also uncover additional prior art, and Defendants further reserve the right to rely upon additional combinations of references under 35 U.S.C. § 103 in response to arguments that Sight may hereafter raise. For example, Defendants are currently unaware of the extent to which Sight may contend that elements of the claims of the Asserted Patents are not disclosed in the art that Defendants present herein or Sight's basis for so contending. Defendants therefore reserve the right to supplement or modify these contentions based on further discovery and in a manner consistent with the Federal Rules of Civil Procedure and the Court's Local Rules.

In addition to the below claim charts, Defendants further incorporate by reference the petitions identified below, including the identified grounds and all supporting exhibits:

- *Ivantis, Inc. v. Sight Sciences, Inc.*, IPR2022-01529 (U.S. Patent No. 9,370,443), Patent Trial and Appeal Board

- *Ivantis, Inc. v. Sight Sciences, Inc.*, IPR2022-01530 (U.S. Patent No. 10,314,742), Patent Trial and Appeal Board

- *Ivantis, Inc. v. Sight Sciences, Inc.*, IPR2022-01533 (U.S. Patent No. 8,287,482), Patent Trial and Appeal Board

- *Ivantis, Inc. v. Sight Sciences, Inc.*, IPR2022-01540 (U.S. Patent No. 9,486,361), Patent Trial and Appeal Board

The following disclosures are made subject to and without waiving any of the foregoing.

## I.    ASSERTED CLAIMS NOT ENTITLED TO PRIORITY

The Asserted Patents each claim priority to United States Patent Application No. 11/475,523, filed on June 26, 2006, now issued as United States Patent No. 7,909,789. Accordingly, Sight contends that each Asserted Claim of the Asserted Patents "is entitled to a priority date of June 26, 2006, because Sight constructively reduced to practice the invention of each asserted claim by filing of Application No. 11/475,523 with the Patent Office." Sight's Aug. 23, 2022 Supplemental Response to Ivantis' First set of Interrogatories No. 3.

Each Asserted Claim recites the term "support," which the Asserted Patents make clear means one that "occupies at least a portion of a central core of Schlemm's canal." *See, e.g.*, '482 patent at 2:59-61; '443 patent at 2:61-63; '361 patent at 2:64-66; '742 patent at 64-66; '328 patent at 2:66-3:1. The original claims of the parent Application No. 11/475,523, to which each Asserted Patent either directly or indirectly claims priority, also recited the limitation "occupies at least a portion of a central core of Schlemm's canal." June 26, 2006 Claims. Similarly, each instance of "support" in the original specification as filed for Application No. 11/475,523 discussing its orientation within the canal describes it as occupying at least a portion of a central core of

Schlemm's canal. June 26, 2006 Specification, *e.g.*, ¶¶ 9. 17, 18, 38, 54, 63, 70.  Thus, the claimed "support" must be one that "occupies at least a portion of a central core of Schlemm's canal." Sight's initial infringement contentions, however, appear to broadly construe the Asserted Claims to encompass a support that does not occupy at least a portion of a central core of Schlemm's canal.

To the extent the support is not construed to mean that it must occupy at least a portion of the central core of Schlemm's canal, the claims reciting a broader "support" are not entitled to the June 26, 2006 priority date. Instead, the claims reciting "support" without the central core language are entitled to a priority date no earlier than the following, which represent the first time the term "support" appeared in claim language without the central core language:

| '482 Patent | January 27, 2010 |
| '443 Patent | N/A[2] |
| '361 Patent | January 27, 2010 (due to its priority claim to the application that became the '482 patent) |
| '742 Patent | June 14, 2016 |
| '328 Patent | N/A[3] |

---

[2] Each independent claim originally filed with the application that became the '443 patent included the "wherein the support occupies at least a portion of a central core of Schlemm's canal."  *See* Feb. 20, 2011 Amendments to the Claims, cls. 1, 53, 77, 79, 84, 88, 89, 90, 92, and 98.  It was not until January 13, 2015 that the Applicants amended the claims to broaden the "support" term and remove the "occupies at least a portion of a central core of Schlemm's canal" language. This addition was new matter, rendering the claims invalid under 35 U.S.C. § 112 ¶ 1 (pre-AIA).

[3] Each independent claim originally filed with the application that became the '328 patent included the "wherein the support occupies at least a portion of a central core of Schlemm's canal."  *See* May 5, 2019 Claims, cl. 1.  It was not until October, 24, 2019 that the Applicants amended the claims to broaden the "support" term and remove the "occupies at least a portion of a central core of Schlemm's canal" language. This addition was new matter, rendering the claims invalid under 35 U.S.C. § 112 ¶ 1 (pre-AIA).

## II.    IDENTIFICATION OF PRIOR ART

Pursuant to Paragraph 9 of the Amended Scheduling Order (D.I. 65), and based on public information and produced documents available to it at this time, Defendants identify the following prior art that Defendants allege anticipate or render obvious each asserted claim.

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 1 | Lynch et al. | 2005/0038334 | Shunt Device and Method for Treating Glaucoma | Feb. 17, 2005 | U.S. | Lynch '334 |
| 2 | Grieshaber et al. | 2,244,646 | Method and Device to Improve Aqueous Humor Drainage in an Eye | Feb. 15, 1999 | Canada | Grieshaber |
| 3 | Porteous et al. | 2004/0254520 | Coil Implant for Glaucoma Treatment | Dec. 16, 2004 | U.S. | Porteous |
| 4 | Gharib | 2002/0165478 | Bifurcatable Trabecular Shunt for Glaucoma Treatment | Nov. 7, 2002 | U.S. | Gharib |
| 5 | Lynch et al. | 2005/105197 | Indwelling Shunt Device and Methods for Treating Glaucoma | Nov. 10, 2005 | WIPO | Lynch '197 |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 6 | Neuhann et al. | 6,494,857 | Device for Improving in a Targeted Manner and/or Permanently Ensuring the Ability of the Aqueous Humor to Pass Through the Trabecular Meshwork | Dec. 17, 2002 | U.S. | Neuhann |
| 7 | Stegmann et al. | 2006/066103 | Ophthalmic Implant for Treatment of Glaucoma | June 22, 2006 | WIPO | Stegmann |
| 8 | Lynch et al. | 00/64391 | Stent Device and Method for Treating Glaucoma | Nov. 2, 2000 | WIPO | Lynch '391 |
| 9 | Bergheim et al. | 2003/0060752 | Glaucoma Device and Methods Thereof | Mar. 27, 2003 | U.S. | Bergheim |
| 10 | Tu et al. | 6,736,791 | Glaucoma Treatment Device | May 18, 2004 | U.S. | Tu '791 |
| 11 | Tu et al. | 2005/0266047 | Injectable Glaucoma Implants with Multiple Openings | Dec. 1, 2005 | U.S. | Tu '047 |
| 12 | Tu et al. | 02/36052 | Glaucoma Treatment Device | May 10, 2002 | WIPO | Tu '052 |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 13 | Smedley et al. | 2006/0116626 | Fluid Infusion Methods for Glaucoma Treatment | June 1, 2006 | U.S. | Smedley '626 |
| 14 | Shadduck | 2004/0193262 | Implants for Treating Ocular Hypertension, Methods of Use and Methods of Fabrication | Sept. 30, 2004 | U.S. | Shadduck |
| 15 | Burns et al. | 2004/0147870 | Glaucoma Treatment Kit | July 29, 2004 | U.S. | Burns |
| 16 | Hill | 6,533,768 | Device for Glaucoma Treatment and Methods Thereof | Mar. 18, 2003 | U.S. | Hill |
| 17 | Bahler et al. | Am. J. Ophthalmol. 138:988–94 (2004), DOI: 10.1016/j.ajo.2004.07.035 | Trabecular Bypass Stents Decrease Intraocular Pressure in Cultured Human Anterior Segments | July 19, 2004 | U.S. | Bahler |
| 18 | Glaukos | N/a | iStent® | At least as early as July 2004 | U.S. | iStent |
| 19 | Stefansson | Am. J. Ophthamol. 8/9:681-93 (1925) | An Operation for Glaucoma | Sept. 1925 | Canada | Stefansson |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 20 | Sidoti et al. | Current Opinion in Ophthamology 5:11:85-98 (1994), DOI: 10.1097/ 00055735-199404000-00013 | Glaucoma Drainage Implants | April 1, 1994 | U.S. | Sidoti |
| 21 | Schwartz et al. | Curr. Opin. Ophthamol. 17:181-189 (2006), DOI: 10.1097/01.icu .0000193080.5 5240.7e | Glaucoma Drainage Implants: A Critical Comparison of Types | April 2006 | U.S. | Schwartz |
| 22 | Haffner et al | 2004/0102729 | Devices and methods for Glaucoma Treatment | May 27, 2004 | U.S. | Haffner |
| 23 | Johnson, et al. | J. Glaucoma, 10:55-67 (2001). | How Does Nonpenetrating Glaucoma Surgery Work? Aqueous Outflow Resistance and Glaucoma Surgery | Feb. 2001 | U.S. | Johnson |
| 24 | Butany et al. | J. Clin. Pathol., 58:795-804 (2005), DOI: 10.1136/jcp.20 04.024174 | Coronary Artery Stents: Identification and Evaluation | Sept. 2005 | U.S. | Butany |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 25 | Colombo et al. | J. Am. Coll. Cardiol., 40(6):1021-1033 (2002). | Selection of Coronary Stents | Sept. 2002 | U.S. | Colombo |
| 26 | Guerrero et al. | Int. Ophthamol. Clin., 40(1):149-163 (2000), DOI: 10.1097/ 00004397-200040010-00015 | Complications of Glaucoma Drainage Implant Surgery | January 2000 | U.S. | Guerrero |
| 27 | Minckler et al. | Cochrane Database of Systematic Reviews, 2:1-56 (2006), DOI: 10.1002/14651858.CD004918.pub2 | Aqueous Shunts for Glaucoma | April 19, 2006 | U.S. | Minckler |
| 28 | Yablonski | J. Glaucoma, 14(2):91-97 | Trabeculotomy with Internal Tube Shunt | April 2005 | U.S. | Yablonski |
| 29 | Zhou et al | J. Glaucoma, 15(5):446-455 | Trabecular Bypass | October 2006 | U.S. | Zhou |
| 30 | Stegmann | 5,360,399 | Method and Apparatus for Maintaining the Normal Intraocular Pressure | November 1, 1994 | U.S. | Stegmann '399 |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 31 | Stegmann | 5,486,165 | Method and Appliance for Maintaining the Natural Intraocular Pressure | January 23, 1996 | U.S. | Stegmann '165 |
| 32 | Matthias et al. | J. Cataract Refract Surg, 26:1367-1373 (2000), DOI: https://doi.org/ 10.1016/S0886 - 3350(00)0044 9-1 | Viscocanalosto my For Primary Open-Angle Glaucoma: The Gross Pankow Experience | Sept 2000 | U.S. | Matthias |
| 33 | Lynch et al. | 2005/0090807 | Shunt Device and Method for Treating Glaucoma | April 28, 2005 | U.S. | Lynch '807 |
| 34 | Smedley et al. | 7,186,232 | Fluid Infusion Methods for Glaucoma Treatment | March 7, 2003 | U.S. | Smedley |
| 35 | Lynch et al | 6,450,984 | Shunt Device and Method for Treating Glaucoma | September 17, 2002 | U.S. | Lynch '984 |
| 36 | Griehsaber et al | 2002/0013546 | Method and Device to Improve Aqueous Humor Drainage in an Eye | January 31, 2002 | U.S. | Grieshaber '546 |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 37 | Grieshaber et al | 6,375,642 | Method of and Device for Improving a Drainage of Aqueous Humor Within the Eye | April 23, 2002 | U.S. | Greishaber '642 |
| 38 | Bergheim et al | 6,638,239 | Apparatus and Method for Treating Glaucoma | October 28, 2003 | U.S. | Bergheim '239 |
| 39 | Dietlein et al | J Cataract Refract Surg 2008; 34:247–252 | Combined Cataract–Glaucoma Surgery Using the Intracanalicular Eyepass Glaucoma Implant | February 2008 | U.S. | Dietlein |
| 40 | Healio | https://www.healio.com/news/ophthalmology/20120331/eyepass-glaucoma-device-shows-promise | EyePass Glaucoma Device Shows Promise | May 4, 2004 | U.S. | Healio |

| # | Author/ Publisher/ Inventor/ Source | Patent/ Publication No. | Title/ Name/ Activity | Published/ Issue, Availability, or First Use, Sale, Disclosure, or Offer to Sell Date | Country of Origin | Abbreviation / Short Name |
|---|---|---|---|---|---|---|
| 41 | Wittman et al | J Glaucoma _ Volume 26, Number 4, April 2017 | Eyepass Glaucoma Implant in Open-Angle Glaucoma After Failed Conventional Medical Therapy: Clinical Results of a 5-Year-Follow-up | April 2017 | U.S. | Wittman |
| 42 | Mishra et al | J of Evolution of Med and Dent Sci/ eISSN- 2278-4802, pISSN-2278-4748/ Vol. 3/ Issue 62/Nov 17, 2014 | Glaucoma Drainage Device: A Review | November 17, 2014 | U.S. | Mishra |
| 43 | Sherwood et al | https://www.aao.org/education/current-insight/rethinking-glaucoma-surgery-aqueous-within-eyewall | Rethinking Glaucoma Surgery: Aqueous Within the Eyewall | March 1, 2006 | U.S. | Sherwood |
| 44 | Hill, Richard | https://glaucomatoday.com/articles/2012-nov-dec/sidebar-inventors-perspective | Sidebar: Inventor's Perspective | November/ December 2012 | U.S. | Sidebar |

13

Defendants' investigation is ongoing, and Defendants reserve the right to identify new or additional references as their investigation continues. For example, Defendants expect that this disclosure may be amended or supplemented based on additional prior art identified during discovery of which Defendants were not aware at the time of these contentions.

### 1. Ivantis Prior Art

Given that the Asserted Claims of the Asserted Patents are not entitled to the June 26, 2006 priority date for the reasons explained above in Section I, the below references and products qualify as prior art. Moreover, to the extent Defendants infringe any of the Asserted Claims, the following Ivantis references or product either anticipate or render obvious each of the Asserted Claims.

### a. Ivantis §§ 102(a), (b) Prior Art References

The following table of references lists exemplary patent references assigned to Ivantis that were each published prior to January 27, 2010, and therefore, qualify as prior art at least under §§ 102(a) or 102(b).

| Publication No. | Inventor | Publication Date | Title |
|---|---|---|---|
| US20080108934A1 | Berlin | 2008-05-08 | Delivery System And Method Of Use For The Eye |
| US20090082860A1 | Schieber et al | 2009-03-26 | Ocular Implants With Asymmetric Flexibility |
| US20090082862A1 | Schieber et al | 2009-03-26 | Ocular Implant Architectures |
| US20090082863A1 | Schieber et al | 2009-03-26 | Ocular Implants |
| WO2009042596A2 | Schieber et al | 2009-04-02 | Ocular Implants And Methods |
| US20090132040A1 | Frion et al | 2009-05-21 | Ocular Implant Delivery System And Method |
| WO2009042596A3 | Schieber et al | 2009-05-28 | Ocular Implants And Methods |
| WO2009067369A1 | Frion et al | 2009-05-28 | Ocular Implant Delivery System And Method |
| US20090227934A1 | Euteneuer et al | 2009-09-10 | Methods And Apparatus For Treating Glaucoma |
| WO2009111645A1 | Euteneuer et al | 2009-09-11 | Methods And Apparatus For Treating Glaucoma |

### b. Ivantis § 102(e) Prior Art References

The following table of references lists exemplary patent references assigned to Ivantis that claim priority to an application filed prior to January 27, 2010, and therefore, qualify as prior art at least under § 102(e).

| Publication Number | Inventor | Priority Date (Priority No.) | Title |
|---|---|---|---|
| US20090082863A1 | Schieber et al | 2007-09-24 (US11860318) | Ocular Implants |
| WO2009042596A2 | Schieber et al | 2007-09-24 (US11860318) | Ocular Implants And Methods |
| WO2009042596A3 | Schieber et al | 2007-09-24 (US11860318) | Ocular Implants And Methods |
| US7740604B2 | Schieber et al | 2007-09-24 (US11860318) | Ocular Implants For Placement In Schlemm's Canal |
| US20090132040A1 | Frion et al | 2007-11-20 (US11943289) | Ocular Implant Delivery System And Method |
| WO2009067369A1 | Frion et al | 2007-11-20 (US11943289) | Ocular Implant Delivery System And Method |
| US8512404B2 | Frion et al | 2007-11-20 (US11943289) | Ocular Implant Delivery System And Method |
| US20150223984A1 | Schieber et al | 2007-11-20 (US11943289) | Methods And Apparatus For Delivering Ocular Implants Into The Eye |
| US9226852B2 | Schieber et al | 2007-11-20 (US11943289) | Methods And Apparatus For Delivering Ocular Implants Into The Eye |
| US8540659B2 | Michael S. Berlin | 2008-01-07 (US11970488) | Delivery System And Method Of Use For The Eye |
| US20130150959A1 | Schieber et al | 2008-03-04 (US61033746) | Ocular Implant Architectures |
| US9402767B2 | Schieber et al | 2008-03-04 (US61033746) | Ocular Implant Architectures |
| WO2009111645A1 | Euteneur et al | 2008-03-05 (US61034059) | Methods And Apparatus For Treating Glaucoma |
| US20090082860A1 | Schieber et al | 2008-09-23 (US12236225) | Ocular Implants With Asymmetric Flexibility |
| US20090082862A1 | Schieber et al | 2008-09-23 (US12236254) | Ocular Implant Architectures |
| US8734377B2 | Schieber et al | 2008-09-23 (US12236225) | Ocular Implants With Asymmetric Flexibility |
| US20090227934A1 | Euteneur et al | 2009-03-05 (US12398847) | Methods And Apparatus For Treating Glaucoma |
| US8267882B2 | Euteneur et al | 2009-03-05 (US12398847) | Methods And Apparatus For Treating Glaucoma |

| Publication Number | Inventor | Priority Date (Priority No.) | Title |
|---|---|---|---|
| WO2011006078A1 | Wardle et al | 2009-07-09 (US61224156) | Single Operator Device For Delivering An Ocular Implant |
| WO2011006113A1 | Wardle et al | 2009-07-09 (US61224158) | Ocular Implants And Methods For Delivering Ocular Implants Into The Eye |
| WO2010065970A1 | Schieber et al | 2009-07-09 (US61224156) | Methods And Apparatus For Delivering Ocular Implants Into The Eye |
| WO2011050360A1 | Wardle et al | 2009-10-23 (US61254523) | Ocular Implant System And Method |
| US20100121342A1 | Schieber et al | 2009-12-07 (US12632738) | Methods And Apparatus For Delivering Ocular Implants Into The Eye |
| US8337509B2 | Schieber et al | 2009-12-07 (US12632738) | Methods And Apparatus For Delivering Ocular Implants Into The Eye |

i.      Hydrus Prior Art

Sight also accuses the Hydrus Microstent product of infringement. To the extent the claimed "support" is construed broadly to not mean one that "occupies at least a portion of a central core of Schlemm's canal," the Asserted Claims are entitled to priority dates years after the filing date of United States Patent Application No. 11/475,523 (June 26, 2006). *See* § I above. To the extent Sight's infringement contentions are true,[4] and because "it is axiomatic that that which would literally infringe if later anticipates if earlier," *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001), the Hydrus Microstent would anticipate each and every Asserted Claim.

## III.    ANTICIPATION

"[A] claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference." *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998).

---

[4] Defendants do not concede that Sight's infringement contentions are, in fact, true. Defendants reserve all rights to contest infringement.

1.      '482 Patent

Claim charts identifying where each element of each of the following Asserted Claims of the '482 Patent can be found in each item of prior art are attached as Exhibit 482-A. A listing of the charts for the '482 Patent is provided below:

| Reference | Anticipated Claims | Exhibit |
|---|---|---|
| Gharib | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A1 |
| Lynch '334 | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A2 |
| Porteous | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A3 |
| Grieshaber | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A4 |
| Lynch '197 | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A5 |
| Bergheim | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A6 |
| Hill | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A7 |
| Tu '052 | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A8 |
| Shadduck | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A9 |
| Stegmann | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A10 |
| Neuhann | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A11 |
| Lynch '391 | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A12 |
| iStent | 1–2, 5, 7–8, 15, 18, 21, 23, 32–33, 36, 38–39, 46, 49, 52, 54, 63, 65, 68–70, 73, 77 | Exhibit 482-A13 |
| Lynch '984 | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A14 |
| Grieshaber '642 | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A15 |
| Grieshaber '546 | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A16 |
| Bergheim '239 | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 | Exhibit 482-A17 |

2.    '443 Patent

Claim charts identifying where each element of each of the following Asserted Claims of the '443 Patent can be found in each item of prior art are attached as Exhibit 443-A. A listing of the charts for the '443 Patent is provided below:

| Reference | Anticipated Claims | Exhibit |
|---|---|---|
| Gharib | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A1 |
| Lynch '334 | 1, 8, 11–12, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A2 |
| Porteous | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A3 |
| Grieshaber | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A4 |
| Lynch '197 | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A5 |
| Bergheim | 1, 8, 11–12, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A6 |
| Hill | 1, 8, 11–12, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A7 |
| Tu '052 | 1, 8, 11–12, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A8 |
| Shadduck | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A9 |
| Stegmann | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A10 |
| Neuhann | 1, 8, 11–12, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A11 |
| Lynch '391 | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A12 |
| iStent | 1, 8, 11–12, 27, 42–43, 46, 54–59, 70–71 | Exhibit 443-A13 |
| Lynch '984 | 1, 8, 11–12, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A14 |
| Grieshaber '642 | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A15 |
| Grieshaber '546 | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A16 |
| Bergheim '239 | 1, 8, 11–12, 27, 42–43, 46, 52, 54–59, 70–71 | Exhibit 443-A17 |

3.    '361 Patent

Claim charts identifying where each element of each of the following Asserted Claims of the '361 Patent can be found in each item of prior art are attached as Exhibit 361-A. A listing of the charts for the '361 Patent is provided below:

| Reference | Anticipated Claims | Exhibit |
|---|---|---|
| Tu '047 | 1-3, 5-9 | Exhibit 361-A1 |
| Tu '791 | 1-2, 5-9 | Exhibit 361-A2 |
| Burns | 1-3, 5-9 | Exhibit 361-A3 |
| Smedley | 1-3, 5-9 | Exhibit 361-A4 |
| Gharib | 1-2, 5-9 | Exhibit 361-A5 |
| Porteous | 1-2, 5-9 | Exhibit 361-A7 |
| Grieshaber | 1-2, 5-9 | Exhibit 361-A8 |
| Bergheim | 1-2, 5-9 | Exhibit 361-A10 |
| Hill | 1-2, 5-9 | Exhibit 361-A11 |
| Tu '052 | 1-2, 5-9 | Exhibit 361-A12 |

18

| Reference | Anticipated Claims | Exhibit |
|---|---|---|
| Stegmann | 1-3, 5-9 | Exhibit 361-A14 |
| Neuhann | 1-2, 5-9 | Exhibit 361-A15 |
| Lynch '391 | 1-2, 5-9 | Exhibit 361-A16 |
| Lynch '984 | 1-2, 5-9 | Exhibit 361-A17 |
| Grieshaber '642 | 1-2, 5-9 | Exhibit 361-A18 |
| Grieshaber '546 | 1-2, 5-9 | Exhibit 361-A19 |
| Bergheim '239 | 1-2, 5-9 | Exhibit 361-A20 |

4.      '742 Patent

Claim charts identifying where each element of each of the following Asserted Claims of the '742 Patent can be found in each item of prior art are attached as Exhibit 742-A. A listing of the charts for the '742 Patent is provided below:

| Reference | Anticipated Claims | Exhibit |
|---|---|---|
| Gharib | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A1 |
| Lynch '334 | 1–3, 9, 12–13, 15, 17–20 | Exhibit 742-A2 |
| Porteous | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A3 |
| Grieshaber | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A4 |
| Lynch '197 | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A5 |
| Bergheim | 1–3, 9, 12–13, 15, 17–20 | Exhibit 742-A6 |
| Hill | 1–3, 9, 12–13, 15, 17–20 | Exhibit 742-A7 |
| Tu '052 | 1–3, 9, 12–13, 15, 17–20 | Exhibit 742-A8 |
| Shadduck | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A9 |
| Stegmann | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A10 |
| Neuhann | 1–3, 9, 12–13, 15, 17–20 | Exhibit 742-A11 |
| Lynch '391 | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A12 |
| iStent | 1–3, 9, 12–13, 17–20 | Exhibit 742-A13 |
| Lynch '984 | 1–3, 9, 12–13, 15, 17–20 | Exhibit 742-A14 |
| Grieshaber '642 | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A15 |
| Grieshaber '546 | 1–3, 6–9, 12–13, 15, 17–20 | Exhibit 742-A16 |
| Bergheim '239 | 1–3, 9, 12–13, 15, 17–20 | Exhibit 742-A17 |
| Eyepass | 1-3, 11-13, 15-18, 19 | Exhibit 742-A18 |

5.      '328 Patent

Claim charts identifying where each element of each of the following Asserted Claims of the '328 Patent can be found in each item of prior art are attached as Exhibit 328-A. A listing of the charts for the '328 Patent is provided below:

19

| Reference | Anticipated Claims | Exhibit |
|---|---|---|
| Tu '047 | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A1 |
| Tu '791 | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A2 |
| Burns | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A3 |
| Gharib | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A4 |
| Lynch '334 | 1-2, 4-8, 12-14, 18, 21-23 | Exhibit 328-A5 |
| Porteous | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A6 |
| Grieshaber | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A7 |
| Lynch '197 | 1-2, 6-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A8 |
| Bergheim | 1-2, 4-8, 12-14, 18, 21-23 | Exhibit 328-A9 |
| Hill | 1-2, 4-8, 12-14, 18, 21-23 | Exhibit 328-A10 |
| Tu '052 | 1-2, 4-8, 12-14, 18, 21-23 | Exhibit 328-A11 |
| Shadduck | 1-2, 6-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A12 |
| Stegmann | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A13 |
| Neuhann | 1-2, 4-8, 12-14, 18, 21-23 | Exhibit 328-A14 |
| Lynch '391 | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A15 |
| iStent | 1-2, 6-8, 12-14, 18, 21-23 | Exhibit 328-A16 |
| Lynch '984 | 1-2, 4-8, 12-14, 18, 21-23 | Exhibit 328-A17 |
| Grieshaber '642 | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A18 |
| Grieshaber '546 | 1-2, 4-8, 12-14, 18, 21-23, 25-26 | Exhibit 328-A19 |
| Bergheim '239 | 1-2, 4-8, 12-14, 18, 21-23 | Exhibit 328-A20 |

## IV.   OBVIOUSNESS

### A.   Applicable Law

Obviousness under 35 U.S.C. § 103 is a question of law based on factual underpinnings. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966) (obviousness determination requires consideration of: (1) the scope and content of the prior art; (2) the level of skill of a person of ordinary skill in the art; (3) the differences between the claimed invention and the teachings of the prior art; and (4) the extent of any objective indicia of non-obviousness). "The obviousness inquiry

entails consideration of whether a person of ordinary skill in the art would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and … would have had a reasonable expectation of success in doing so." *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1363 (Fed. Cir. 2018).

The Supreme Court has held that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR*, 550 U.S. at 416. "When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one." *Id.* at 417. Similarly, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.*

To determine whether there is an apparent reason to combine the known elements in the fashion claimed by the patent at issue, a court can "look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art." *Id.* at 418. For example, obviousness can be demonstrated by showing "there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *Id.* at 420. "[A]ny need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* Common sense also teaches that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.*

Thus, the motivation to combine the teachings of the prior art disclosed herein is found in the prior art and (i) the nature of the problem being solved; (ii) the teachings of the prior art; (iii) the knowledge of persons of ordinary skill in the art; (iv) the fact that the prior art is generally directed towards the same or similar problems; and (v) the predictable results obtained in combining the different elements of the prior art. *KSR*, 550 U.S. at 399-402

### B.   Obviousness Combinations

To the extent not anticipated, each Asserted Claim merely combines known elements to achieve predictable results, offers clear alternatives known to those of ordinary skill in the art, or claims a result-effective variable without any demonstration of criticality. It would have been obvious to a person of skill in the art at the time of the alleged invention to combine or modify the references[5] cited herein to achieve the claimed invention in each of the Asserted Claims and would have had a reasonable expectation of success in doing so.

### 1.   '482 Patent

Claim charts that identify where each element of each Asserted Claim can be found in each reference of the obviousness combination is provided in Exhibits 482-A and 482-B. In addition, Exhibit 482-B describes the level of experience, education, and training that a POSITA would have had at the time of the alleged invention and the motivations to combine and/or modify the disclosed prior art features with a reasonable expectation of success. A listing of the obviousness grounds for the '482 Patent is provided below:

| Obviousness Ground | Claims |
|---|---|
| Gharib alone | 1, 32, 63, and asserted claims dependent therefrom |

---

[5] The identified secondary references are illustrative and similar teachings may be found in other references identified in these contentions and any supplements thereto. Defendants reserve the right to rely on other secondary references identified in these contentions and any supplements thereto for such similar teachings.

| Obviousness Ground | Claims |
|---|---|
| Gharib in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Gharib in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Gharib in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Gharib in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Lynch '334 alone | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '334 in view of Bergheim, Bergheim '239 and/or Grieshaber, Grieshaber '642, Grieshaber '546 | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '334 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '334 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 8, 10–11, 39, 41–42, 77, 79–80 |
| Lynch '334 in view of Lynch '807 | 15, 46, 70 |
| Lynch '334 in view of Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Porteous alone | 1, 32, 63, and asserted claims dependent therefrom |
| Porteous in view of Bergheim, Bergheim '239, Lynch '334, Lynch '984, Lynch '197, and/or Shadduck | 1, 32, 63, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Porteous in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Porteous in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Porteous in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Grieshaber alone | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Grieshaber in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Lynch '197 alone | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '197 in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Lynch '197 in view of Gharib, Bergheim, Bergheim '239, Porteous, Lynch '334, Lynch '984, Neuhann, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '197 in view of Lynch '807 | 15, 46, 70 |
| Lynch '197 in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Bergheim alone | 1, 32, 63, and asserted claims dependent therefrom |
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 32, 63, and asserted claims dependent therefrom |
| Bergheim in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 8, 10–11, 39, 41–42, 77, 79–80 |
| Bergheim in view of Lynch '807 | 15, 46, 70 |
| Bergheim in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Hill alone | 1, 32, 63, and asserted claims dependent therefrom |
| Hill in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Hill in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, and/or Bergheim, Bergheim '239 | 8, 10–11, 39, 41–42, 77, 79–80 |
| Hill in view of Lynch '807 | 15, 46, 70 |
| Hill in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 60, 63, 65, 68–70, 73, 77, 79–80 |
| Tu '052 alone | 1, 32, 63, and asserted claims dependent therefrom |
| Tu '052 in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 32, 63, and asserted claims dependent therefrom |
| Tu '052 in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 8, 10–11, 39, 41–42, 77, 79–80 |
| Tu '052 in view of Lynch '807 | 15, 46, 70 |
| Tu '052 in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Shadduck alone | 1, 32, 63, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Shadduck in view of Porteous, Lynch '334, Lynch '984, and/or Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Shadduck in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 32, 63, and asserted claims dependent therefrom |
| Shadduck in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Shadduck in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 8, 10–11, 39, 41–42, 77, 79–80 |
| Shadduck in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Stegmann alone | 1, 32, 63, and asserted claims dependent therefrom |
| Stegmann in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Stegmann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Lynch '391, Lynch '197, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 1, 32, 63, and asserted claims dependent therefrom |
| Stegmann in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Stegmann in view of Lynch '807 | 15, 46, 70 |
| Stegmann in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Neuhann alone | 1, 32, 63, and asserted claims dependent therefrom |

27

| Obviousness Ground | Claims |
|---|---|
| Neuhann in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Neuhann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Stegmann, Lynch '197, Lynch '391, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 1, 32, 63, and asserted claims dependent therefrom |
| Neuhann in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Neuhann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Stegmann, Lynch '391, and/or Shadduck | 8, 10–11, 39, 41–42, 77, 79–80 |
| Neuhann in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Lynch '391 alone | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '391 in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '391 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '197, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '391 in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Lynch '391 in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |

| Obviousness Ground | Claims |
|---|---|
| iStent alone | 1, 32, 63, and asserted claims dependent therefrom |
| iStent in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| iStent in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 32, 63, and asserted claims dependent therefrom |
| iStent in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| iStent in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, Stegmann, Lynch '391, and/or Shadduck | 8, 10–11, 39, 41–42, 77, 79–80 |
| iStent in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Lynch '984 alone | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '984 in view of Bergheim, Bergheim '239 and/or Grieshaber, Grieshaber '642, Grieshaber '546 | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '984 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Lynch '984 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 8, 10–11, 39, 41–42, 77, 79–80 |
| Lynch '984 in view of Lynch '807 | 15, 46, 70 |

| Obviousness Ground | Claims |
|---|---|
| Lynch '984 in view of Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Bergheim '239 alone | 1, 32, 63, and asserted claims dependent therefrom |
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 32, 63, and asserted claims dependent therefrom |
| Bergheim '239 in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 8, 10–11, 39, 41–42, 77, 79–80 |
| Bergheim '239 in view of Lynch '807 | 15, 46, 70 |
| Bergheim '239 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Grieshaber '642 alone | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber '642 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |
| Grieshaber '546 alone | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 32, 63, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Lynch '334, Lynch '984 and/or Lynch '197 | 5 |
| Grieshaber '546 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–2, 5, 7–8, 10–11, 15, 18, 21, 23, 32–33, 36, 38–39, 41–42, 46, 49, 52, 54, 63, 65, 68–70, 73, 77, 79–80 |

2.      '443 Patent

Claim charts that identify where each element of each Asserted Claim can be found in each

reference of the obviousness combination is provided in Exhibit 443-A. In addition, Exhibit 443-

B describes the level of experience, education, and training that a POSITA would have had at the

time of the alleged invention and the motivations to combine and/or modify the disclosed prior art

31

features with a reasonable expectation of success. A listing of the obviousness grounds for the '443 Patent is provided below:

| Obviousness Ground | Claims |
|---|---|
| Gharib alone | 1, 58, and asserted claims dependent therefrom |
| Gharib in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Gharib in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Gharib in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Lynch '334 alone | 1, 58, and asserted claims dependent therefrom |
| Lynch '334 in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Lynch '334 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Lynch '334 in view of Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 8 |
| Lynch '334 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 21, 23–24, 27 |
| Lynch '334 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58–59, 70–71 |

| Obviousness Ground | Claims |
|---|---|
| Lynch '334 in view of Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Porteous alone | 1, 58, and asserted claims dependent therefrom |
| Porteous in view of Bergheim, Bergheim '239, Lynch '334, Lynch '984, Lynch '197, and/or Shadduck | 1, 58, and asserted claims dependent therefrom |
| Porteous in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Porteous in view of Lynch '334, Lynch '984, Gharib, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 8 |
| Porteous in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Grieshaber alone | 1, 58, and asserted claims dependent therefrom |
| Grieshaber in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Grieshaber in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Grieshaber in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58, 59, 70–71 |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Lynch '197 alone | 1, 58, and asserted claims dependent therefrom |
| Lynch '197 in view of Bergheim, Bergheim '239, Porteous, Lynch '334, Lynch '984, and/or Shadduck | 1, 58, and asserted claims dependent therefrom |
| Lynch '197 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Lynch '197 in view of Lynch '334, Lynch '984, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 8 |
| Lynch '197 in view of Bergheim, Bergheim '239, Porteous, Lynch '334, Lynch '984, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58–59, 70–71 |
| Lynch '197 in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Bergheim alone | 1, 58, and asserted claims dependent therefrom |
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 58, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Hill, Lynch '334, Lynch '984, Lynch '391, and/or Neuhann | 11, 12 |
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 21, 23–24, 27 |
| Bergheim in view of Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58–59, 70–71 |
| Bergheim in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Hill alone | 1, 58, and asserted claims dependent therefrom |
| Hill in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Hill in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 8 |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 21, 23-24, 27 |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, and/or Bergheim, Bergheim '239 | 58–59, 70–71 |

35

| Obviousness Ground | Claims |
|---|---|
| Hill in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Tu '052 alone | 1, 58, and asserted claims dependent therefrom |
| Tu '052 in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 58, and asserted claims dependent therefrom |
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 21, 23–24, 27 |
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58–59, 70–71 |
| Tu '052 in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Shadduck alone | 1, 58, and asserted claims dependent therefrom |
| Shadduck in view of Porteous, Lynch '334, Lynch '984, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Shadduck in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 58, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Shadduck in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 8 |
| Shadduck in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Hill, Lynch '334, Lynch '984, Lynch '391, and/or Neuhann | 11, 12 |
| Shadduck in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 21, 23–24, 27 |
| Shadduck in view of Porteous, Lynch '334, Lynch '984, Burns, and/or Bergheim, Bergheim '239 | 58–59, 70–71 |
| Shadduck in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Stegmann alone | 1, 58, and asserted claims dependent therefrom |
| Stegmann in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Stegmann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 1, 58, and asserted claims dependent therefrom |
| Stegmann in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 58, and asserted claims dependent therefrom |
| Stegmann in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Tu '052, and/or Bergheim, Bergheim '239 | 8 |

| Obviousness Ground | Claims |
|---|---|
| Stegmann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Hill, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Tu '052, Tu '047, iStent, EyePass, Lynch '391, and/or Neuhann | 11–12 |
| Stegmann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Burns, Tu '791, Smedley, and/or Shadduck | 58–59, 70–71 |
| Stegmann in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Neuhann alone | 1, 58, and asserted claims dependent therefrom |
| Neuhann in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Neuhann in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, Lynch '197, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 1, 58, and asserted claims dependent therefrom |
| Neuhann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Stegmann, Lynch '391, and/or Shadduck | 21, 23–24, 27 |
| Neuhann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Burns, Tu '791, Smedley, and/or Shadduck | 58–59, 70–71 |

| Obviousness Ground | Claims |
|---|---|
| Neuhann in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Lynch '391 alone | 1, 58, and asserted claims dependent therefrom |
| Lynch '391 in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Lynch '391 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Stegmann, Lynch '391, and/or Shadduck | 1, 58, and asserted claims dependent therefrom |
| Lynch '391 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Burns, Tu '791, Smedley, and/or Shadduck | 58–59, 70–71 |
| Lynch '391 in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| iStent alone | 1, 58, and asserted claims dependent therefrom |
| iStent in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| iStent in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 58, and asserted claims dependent therefrom |

39

| Obviousness Ground | Claims |
|---|---|
| iStent in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, Stegmann, Shadduck, and/or Shadduck | 21, 23–24, 27 |
| iStent in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Lynch '984 alone | 1, 58, and asserted claims dependent therefrom |
| Lynch '984 in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Lynch '984 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Lynch '984 in view of Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 8 |
| Lynch '984 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 21, 23–24, 27 |
| Lynch '984 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58–59, 70–71 |
| Lynch '984 in view of Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Grieshaber '642 alone | 1, 58, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber '642 in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58, 59, 70–71 |
| Grieshaber '642 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Grieshaber '546 alone | 1, 58, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58, 59, 70–71 |
| Grieshaber '546 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| Bergheim '239 alone | 1, 58, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 58, and asserted claims dependent therefrom |
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Hill, Lynch '334, Lynch '984, Lynch '391, and/or Neuhann | 11, 12 |
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 21, 23–24, 27 |
| Bergheim '239 in view of Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 58–59, 70–71 |
| Bergheim '239 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |
| EyePass alone | 1, 58, and asserted claims dependent therefrom |
| EyePass in view of Bergheim, Bergheim '239 | 1, 58, and asserted claims dependent therefrom |
| EyePass in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 1, 58, and asserted claims dependent therefrom |
| EyePass in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, Stegmann, Lynch '391, and/or Shadduck | 21, 23–24, 27 |
| EyePass in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1, 8, 11–12, 21, 23–24, 27, 42–43, 46, 52, 54–59, 70–71 |

3.      '361 Patent

Claim charts that identify where each element of each Asserted Claim can be found in each reference of the obviousness combination is provided in Exhibits 361-A and 361-B. In addition, Exhibit 361-B describes the level of experience, education, and training that a POSITA would have had at the time of the alleged invention and the motivations to combine and/or modify the disclosed prior art features with a reasonable expectation of success. A listing of the obviousness grounds for the '361 Patent is provided below:

| Obviousness Ground | Claims |
|---|---|
| Tu '047 alone | 1, and asserted claims dependent therefrom |
| Tu '047 in view of Lynch '334, Lynch '984 | 1, and asserted claims dependent therefrom |
| Tu '047 in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Stegmann, Neuhann, iStent, EyePass and/or Lynch '391 | 1, and asserted claims dependent therefrom |
| Tu '047 in view of Stegmann '399, Stegmann '165, and/or Matthias. | 3 |
| Tu '047 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler,  Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias. | 1–3, 5–9 |
| Tu '791 alone | 1, and asserted claims dependent therefrom |
| Tu '791 in view of Lynch '334, Lynch '984 | 1, and asserted claims dependent therefrom |
| Tu '791 in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Stegmann, Neuhann, iStent, EyePass and/or Lynch '391 | 1, and asserted claims dependent therefrom |
| Tu '791 in view of Stegmann '399, Stegmann '165, and/or Matthias. | 3 |

| Obviousness Ground | Claims |
|---|---|
| Tu '791 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Burns alone | 1, and asserted claims dependent therefrom |
| Burns in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Burns in view of Tu '047, Tu '052, Tu '791, Smedley, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Burns in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1, and asserted claims dependent therefrom |
| Burns in view of Tu '047, Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Burns in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Smedley alone | 1, and asserted claims dependent therefrom |
| Smedley in view of Grieshaber, Grieshaber '642, Grieshaber '546 | 1, and asserted claims dependent therefrom |
| Smedley in view of Lynch '334, Lynch '984 and/or Grieshaber, Grieshaber '642, Grieshaber '546 | 1, and asserted claims dependent therefrom |
| Smedley in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann '399, Stegmann '165, and/or Matthias | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Smedley in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Stegmann, Neuhann, and/or Lynch '391 | 1, and asserted claims dependent therefrom |
| Smedley in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Smedley in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Gharib alone | 1, and asserted claims dependent therefrom |
| Gharib in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Gharib in view of Tu '047, Tu '052, Tu '791, Smedley, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Gharib in view of Tu '047, Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Gharib in view of Tu '047, Tu '052, Tu '791, Burns, Smedley, Lynch '334, Lynch '984, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391 and/or iStent, EyePass | 1, and asserted claims dependent therefrom |
| Gharib in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Lynch '334 alone | 1, and asserted claims dependent therefrom |
| Lynch '334 in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Lynch '334 in view of Smedley and/or Tu '791 | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Lynch '334 in view of Tu '047, Tu '052, Tu '791, Smedley, Gharib, Porteous, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Lynch '334 in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Lynch '334 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Porteous alone | 1, and asserted claims dependent therefrom |
| Porteous in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Porteous in view of Tu '047, Tu '052, Tu '791, Smedley, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Porteous in view of Tu '047, Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Porteous in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1–3, 5–9 |
| Porteous in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Grieshaber alone | 1, and asserted claims dependent therefrom |
| Grieshaber in view of Tu '791 and/or Smedley | 1, and asserted claims dependent therefrom |
| Grieshaber in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Grieshaber in view of Tu '047, Tu '052, Tu '791, Smedley, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Grieshaber in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Burns, Porteous, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1–3, 5–9 |
| Grieshaber in view of Gharib, Lynch '334, Lynch '984, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Lynch '197 alone | 1, and asserted claims dependent therefrom |
| Lynch '197 in view of Bergheim, Bergheim '239, Porteous, Lynch '334, Lynch '984, and/or Shadduck | 1, and asserted claims dependent therefrom |
| Lynch '197 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 1, and asserted claims dependent therefrom |
| Lynch '197 in view of Tu '047, Tu '052, Tu '791, Smedley, Gharib, Porteous, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Lynch '197 in view of Bergheim, Bergheim '239, Gharib, Porteous, Lynch '334, Lynch '984, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 1, and asserted claims dependent therefrom |
| Lynch '197 Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Lynch '197 in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Bergheim alone | 1, and asserted claims dependent therefrom |

47

| Obviousness Ground | Claims |
|---|---|
| Bergheim in view of Tu '047, Tu '791, Smedley, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Shadduck, and/or iStent, EyePass | 1, and asserted claims dependent therefrom |
| Bergheim in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Bergheim in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler,  Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Hill alone | 1, and asserted claims dependent therefrom |
| Hill in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Tu '052, and/or Bergheim, Bergheim '239 | 1, and asserted claims dependent therefrom |
| Hill in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Tu '052, Bergheim, Bergheim '239, Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Hill in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler,  Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Tu '052 alone | 1, and asserted claims dependent therefrom |
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Lynch '334, Lynch '984, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 1, and asserted claims dependent therefrom |

48

| Obviousness Ground | Claims |
|---|---|
| Tu '052 in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Tu '052 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Shadduck alone | 1, and asserted claims dependent therefrom |
| Shadduck in view of Tu '047, Stegmann '399, Stegmann '165, and/or Matthias | 1, and asserted claims dependent therefrom |
| Shadduck in view of Bergheim, Bergheim '239, Gharib, Porteous, Lynch '334, Lynch '984, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 1, and asserted claims dependent therefrom |
| Shadduck in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Shadduck in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Stegmann alone | 1, and asserted claims dependent therefrom |
| Stegmann in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Stegmann in view of Tu '047, Stegmann '399, Stegmann '165, and/or Matthias | 1, and asserted claims dependent therefrom |
| Stegmann in view of Tu '047, Lynch '334, Lynch '984, and/or Grieshaber, Grieshaber '642, Grieshaber '546 | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Stegmann in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, Tu '047, Tu '791, iStent, EyePass and/or Smedley | 1, and asserted claims dependent therefrom |
| Stegmann in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Neuhann alone | 1, and asserted claims dependent therefrom |
| Neuhann in view of Lynch '391 in view of Tu '047 and/or Haffner | 1, and asserted claims dependent therefrom |
| Neuhann in view of Tu '047, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Neuhann in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Lynch '391 alone | 1, and asserted claims dependent therefrom |
| Lynch '391 in view of Tu '047 and/or Haffner | 1, and asserted claims dependent therefrom |
| Lynch '391 in view of Tu '047, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 3 |

| Obviousness Ground | Claims |
|---|---|
| Lynch '391 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| iStent alone | 1, and asserted claims dependent therefrom |
| iStent in view of Tu '047 and/or Haffner | 1, and asserted claims dependent therefrom |
| iStent in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Tu '052, and/or Bergheim, Bergheim '239 | 1, and asserted claims dependent therefrom |
| iStent in view of Tu '047, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| iStent in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Lynch '984 alone | 1, and asserted claims dependent therefrom |
| Lynch '984 in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Lynch '984 in view of Smedley and/or Tu '791 | 1, and asserted claims dependent therefrom |
| Lynch '984 in view of Tu '047, Tu '052, Tu '791, Smedley, Gharib, Porteous, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Lynch '984 in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |

| Obviousness Ground | Claims |
|---|---|
| Lynch '984 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Grieshaber '642 alone | 1, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Tu '791 and/or Smedley | 1, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Tu '047, Tu '052, Tu '791, Smedley, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Grieshaber '642 in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Burns, Porteous, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1–3, 5–9 |
| Grieshaber '642 in view of Gharib, Lynch '334, Lynch '984, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Grieshaber '546 alone | 1, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Tu '791 and/or Smedley | 1, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Tu '047, Tu '052, Tu '791, Smedley, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Grieshaber '546 in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Burns, Porteous, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1–3, 5–9 |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber '546 in view of Gharib, Lynch '334, Lynch '984, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| Bergheim '239 alone | 1, and asserted claims dependent therefrom |
| Bergheim in view of Tu '047, Tu '791, Smedley, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Shadduck, and/or iStent, EyePass | 1, and asserted claims dependent therefrom |
| Bergheim '239 in view of Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| Bergheim '239 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |
| EyePass alone | 1, and asserted claims dependent therefrom |
| EyePass in view of Tu '047 and/or Haffner | 1, and asserted claims dependent therefrom |
| EyePass in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Tu '052, and/or Bergheim '239 | 1, and asserted claims dependent therefrom |
| EyePass in view of Tu '047, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 3 |
| EyePass in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Stegmann '399, Stegmann '165, and/or Matthias | 1–3, 5–9 |

4.      '742 Patent

Claim charts that identify where each element of each Asserted Claim can be found in each

reference of the obviousness combination is provided in Exhibit 742-A. In addition, Exhibit 742-

B describes the level of experience, education, and training that a POSITA would have had at the

time of the alleged invention and the motivations to combine and/or modify the disclosed prior art

features with a reasonable expectation of success. A listing of the obviousness grounds for the '742

Patent is provided below:

| Obviousness Ground | Claims |
|---|---|
| Gharib alone | 13 |
| Gharib in view of Bergheim, Bergheim '239 | 13 |
| Gharib in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 13 |
| Gharib in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Lynch '334 alone | 6–9, 13, 19–20 |
| Lynch '334 in view of Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 2 |
| Lynch '334 in view of Bergheim, Bergheim '239 | 13 |
| Lynch '334 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 13 |

| Obviousness Ground | Claims |
|---|---|
| Lynch '334 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 6–9 |
| Lynch '334 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |
| Lynch '334 in view of Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Porteous alone | 2, 13 |
| Porteous in view of Bergheim, Bergheim '239, Lynch '334, Lynch '984, Lynch '197, and/or Shadduck | 2, 13 |
| Porteous in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 2, 13 |
| Porteous in view of Lynch '334, Lynch '984, Gharib, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 2 |
| Porteous in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Grieshaber alone | 6-9, 13, 19–20 |
| Grieshaber in view of Bergheim, Bergheim '239 | 13 |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 13 |
| Grieshaber in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |
| Grieshaber in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Lynch '197 alone | 2, 13, 19–20 |
| Lynch '197 in view of Bergheim, Bergheim '239, Porteous, Lynch '334, Lynch '984, and/or Shadduck | 2, 13 |
| Lynch '197 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 2, 13 |
| Lynch '197 in view of Bergheim, Bergheim '239, Porteous, Lynch '334, Lynch '984, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |
| Lynch '197 in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Bergheim alone | 3, 6–9, 13, 19–20 |
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Hill, Lynch '334, Lynch '984, Lynch '391, and/or Neuhann | 3 |

| Obviousness Ground | Claims |
|---|---|
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 6–9 |
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 13 |
| Bergheim in view of Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |
| Bergheim in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Hill alone | 2, 13, 19–20 |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 2, 13 |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 6–9 |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, and/or Bergheim, Bergheim '239 | 19–20 |
| Hill in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Tu '052 alone | 6–9, 13, 19–20 |
| Tu '052 in view of Bergheim, Bergheim '239 | 13 |

57

| Obviousness Ground | Claims |
|---|---|
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 13 |
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 6–9 |
| Tu '052 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |
| Tu '052 in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Shadduck alone | 1–3, 6–9, 12–13, 15, 17–20 |
| Shadduck in view of Porteous, Lynch '334, Lynch '984, and/or Bergheim, Bergheim '239 | 1–3, 6–9, 12–13, 15, 17–20 |
| Shadduck in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, Tu '052, and/or Lynch '197 | 2, 13 |
| Shadduck in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 6–9 |
| Shadduck in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Hill, Lynch '334, Lynch '984, Lynch '391, and/or Neuhann | 3 |
| Shadduck in view of Porteous, Lynch '334, Lynch '984, Burns, and/or Bergheim, Bergheim '239 | 19–20 |

| Obviousness Ground | Claims |
|---|---|
| Shadduck in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Stegmann alone | 1–3, 6–9, 12–13, 15, 17–20 |
| Stegmann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 1–3, 6–9, 12–13, 15, 17–20 |
| Stegmann in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 13 |
| Stegmann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Hill, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Tu '052, Tu '047, iStent, EyePass, Lynch '391, and/or Neuhann | 3 |
| Stegmann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Burns, Tu '791, Smedley, and/or Shadduck | 19–20 |
| Stegmann in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Neuhann alone | 1–3, 6–9, 12–13, 15, 17–20 |

| Obviousness Ground | Claims |
|---|---|
| Neuhann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 1–3, 6–9, 12–13, 15, 17–20 |
| Neuhann in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, Lynch '197, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 13 |
| Neuhann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Stegmann, Lynch '391, and/or Shadduck | 6–9 |
| Neuhann in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Lynch '391 alone | 1–3, 6–9, 12–13, 15, 17–20 |
| Lynch '391 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, and/or iStent, EyePass | 1–3, 6–9, 12–13, 15, 17–20 |
| Lynch '391 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Stegmann, Lynch '391, and/or Shadduck | 13 |
| Lynch '391 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, iStent, EyePass, Burns, Tu '791, Smedley, and/or Shadduck | 19–20 |

60

| Obviousness Ground | Claims |
|---|---|
| Lynch '391 in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| iStent alone | 1–3, 6–9, 12–13, 15, 17–20 |
| iStent in view of Bergheim, Bergheim '239 | 2, 13 |
| iStent in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 13 |
| iStent in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, Stegmann, Lynch '391, and/or Shadduck | 6–9 |
| iStent in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Lynch '984 alone | 6–9, 13, 19–20 |
| Lynch '984 in view of Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Neuhann, Stegmann, Lynch '391, and/or Tu '052 | 2 |
| Lynch '984 in view of Bergheim, Bergheim '239 | 13 |
| Lynch '984 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 13 |
| Lynch '984 in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 6–9 |

| Obviousness Ground | Claims |
|---|---|
| Lynch '984 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |
| Lynch '984 in view of Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Grieshaber '642 alone | 6-9, 13, 19–20 |
| Grieshaber '642 in view of Bergheim, Bergheim '239 | 13 |
| Grieshaber '642 in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 13 |
| Grieshaber '642 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |
| Grieshaber '642 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Grieshaber '546 alone | 6-9, 13, 19–20 |
| Grieshaber '546 in view of Bergheim, Bergheim '239 | 13 |
| Grieshaber '546 in view of Gharib, Porteous, Lynch '197, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Bergheim, Bergheim '239 | 13 |
| Grieshaber '546 in view of Bergheim, Bergheim '239, Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber '546 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| Bergheim '239 alone | 3, 6–9, 13, 19–20 |
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Hill, Lynch '334, Lynch '984, Lynch '391, and/or Neuhann | 3 |
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 6–9 |
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 13 |
| Bergheim '239 in view of Gharib, Porteous, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Tu '791, Tu '047, Hill, Smedley, and/or Shadduck | 19–20 |
| Bergheim '239 in view of Lynch '334, Lynch '984, Lynch '197, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |
| EyePass alone | 1–3, 6–9, 12–13, 15, 17–20 |
| EyePass in view of Bergheim, Bergheim '239 | 2, 13 |
| EyePass in view of Bergheim, Bergheim '239, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Neuhann, Stegmann, Lynch '391, and/or Lynch '197 | 13 |
| EyePass in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Bergheim, Bergheim '239, Hill, Tu '052, Tu '047, Stegmann, Lynch '391, and/or Shadduck | 6–9 |

| Obviousness Ground | Claims |
|---|---|
| EyePass in view of Lynch '334, Lynch '984, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, and/or Yablonski | 1–3, 6–9, 12–13, 15, 17–20 |

5.      '328 Patent

Claim charts that identify where each element of each Asserted Claim can be found in each reference of the obviousness combination is provided in Exhibits 328-A and 328-B. In addition, Exhibit 328-B describes the level of experience, education, and training that a POSITA would have had at the time of the alleged invention and the motivations to combine and/or modify the disclosed prior art features with a reasonable expectation of success. A listing of the obviousness grounds for the '328 Patent is provided below:

| Obviousness Ground | Claims |
|---|---|
| Tu '047 alone | 1, and asserted claims dependent therefrom |
| Tu '047 in view of Lynch '334, Lynch '984 | 1, and asserted claims dependent therefrom |
| Tu '047 in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Stegmann, Neuhann, iStent, EyePass and/or Lynch '391 | 1, and asserted claims dependent therefrom |
| Tu '047 in view of Tu '791, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Tu '047 in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| Tu '047 in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Tu '047 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |

| Obviousness Ground | Claims |
|---|---|
| Tu '047 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Tu '047 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler,  Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias. | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Tu '791 alone | 1, and asserted claims dependent therefrom |
| Tu '791 in view of Lynch '334, Lynch '984 | 1, and asserted claims dependent therefrom |
| Tu '791 in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Stegmann, Neuhann, iStent, EyePass and/or Lynch '391 | 1, and asserted claims dependent therefrom |
| Tu '791 in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Tu '791 in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Tu '791 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Tu '791 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Tu '791 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Burns alone | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Burns in view of Tu '047 | 1, and asserted claims dependent therefrom |
| Burns in view of Tu '047, Tu '052, Tu '791, Smedley, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Burns in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1, and asserted claims dependent therefrom |
| Burns in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| Burns in view of Tu '047, Tu '791, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Burns in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Burns in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Burns in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Burns in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Gharib alone | 1, and asserted claims dependent therefrom |
| Gharib in view of Tu '047, Tu '052, Tu '791, Smedley, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Gharib in view of Tu '047, Tu '791, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |

66

| Obviousness Ground | Claims |
|---|---|
| Gharib in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| Gharib in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Gharib in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Gharib in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Lynch '334 alone | 1, and asserted claims dependent therefrom |
| Lynch '334 in view of Tu '047, Tu '791, and/or Burns | 1, and asserted claims dependent therefrom |
| Lynch '334 in view of Tu '047, Tu '052, Tu '791, Smedley, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Hill, Gharib, Porteous, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Lynch '334 in view of Tu '047, Tu '791, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Lynch '334 in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Lynch '334 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Lynch '334 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |

| Obviousness Ground | Claims |
| --- | --- |
| Lynch '334 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Porteous alone | 1, and asserted claims dependent therefrom |
| Porteous in view of Tu '047, Tu '791, and/or Burns | 1, and asserted claims dependent therefrom |
| Porteous in view of Tu '047, Tu '052, Tu '791, Smedley, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Porteous in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Porteous in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Porteous in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Porteous in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Burns, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Porteous in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Grieshaber alone | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Grieshaber in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Grieshaber in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Grieshaber in view of Gharib, Porteous, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Grieshaber in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Grieshaber in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Burns, Porteous, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Grieshaber in view of Gharib, Lynch '334, Lynch '984, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Lynch '197 alone | 1, and asserted claims dependent therefrom |
| Lynch '197 in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Lynch '197 in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Lynch '197 in view of Bergheim, Bergheim '239 | 21, 22, 23 |

| Obviousness Ground | Claims |
|---|---|
| Lynch '197 in view of Gharib, Porteous, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Lynch '197 in view of Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Gharib, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Bergheim alone | 1, and asserted claims dependent therefrom |
| Bergheim in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Bergheim in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Bergheim in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| Bergheim in view of Gharib, Porteous, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, and/or Tu '052 | 21, 22, 23 |
| Bergheim in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Bergheim in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler,  Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Hill alone | 1, and asserted claims dependent therefrom |

70

| Obviousness Ground | Claims |
|---|---|
| Hill in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Hill in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Hill in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Hill in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Hill in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Hill in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler,  Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Tu '052 alone | 1, and asserted claims dependent therefrom |
| Tu '052 in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Tu '052 in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Tu '052 in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Tu '052 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Porteous, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Tu '052 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |

| Obviousness Ground | Claims |
|---|---|
| Tu '052 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Shadduck alone | 1, and asserted claims dependent therefrom |
| Shadduck in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Shadduck in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Shadduck in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| Shadduck in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Shadduck in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Shadduck in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Stegmann alone | 1, and asserted claims dependent therefrom |
| Stegmann in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Stegmann in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, Tu '047, Tu '791, iStent, EyePass and/or Smedley | 1, and asserted claims dependent therefrom |
| Stegmann in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Stegmann in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| Stegmann in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Stegmann in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Stegmann, Tu '052, and/or Bergheim '239 | 21, 22, 23 |
| Stegmann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Stegmann in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Neuhann alone | 1, and asserted claims dependent therefrom |
| Neuhann in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Neuhann in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, Tu '047, Tu '791, iStent, EyePass and/or Smedley | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Neuhann in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Neuhann in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Neuhann in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Neuhann in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Neuhann in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Lynch '391 alone | 1, and asserted claims dependent therefrom |
| Lynch '391 in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Lynch '391 in view of Lynch '334, Lynch '984, Burns, Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Tu '047, Tu '791, iStent, EyePass and/or Smedley | 1, and asserted claims dependent therefrom |
| Lynch '391 in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Lynch '391 in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Lynch '391 in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |

| Obviousness Ground | Claims |
|---|---|
| Lynch '391 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Lynch '391 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| iStent alone | 1, and asserted claims dependent therefrom |
| iStent in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| iStent in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| iStent in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| iStent in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| iStent in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| iStent in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| iStent in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Lynch '984 alone | 1, and asserted claims dependent therefrom |
| Lynch '984 in view of Tu '047, Tu '791, and/or Burns | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| Lynch '984 in view of Tu '047, Tu '052, Tu '791, Smedley, Grieshaber, Grieshaber '642, Grieshaber '546, Bergheim, Bergheim '239, Hill, Gharib, Porteous, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Lynch '984 in view of Tu '047, Tu '791, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Lynch '984 in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Lynch '984 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Lynch '984 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Lynch '984 in view of Gharib, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Grieshaber '642 alone | 1, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Grieshaber '642 in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Grieshaber '642 in view of Bergheim, Bergheim '239 | 21, 22, 23 |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber '642 in view of Gharib, Porteous, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Grieshaber '642 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Grieshaber '642 in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Porteous, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Grieshaber '642 in view of Gharib, Lynch '334, Lynch '984, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Grieshaber '546 alone | 1, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Grieshaber '546 in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias. | 4, 5 |
| Grieshaber '546 in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| Grieshaber '546 in view of Gharib, Porteous, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| Grieshaber '546 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Grieshaber '546 in view of Tu '047, Tu '052, Tu '791, Gharib, Smedley, Lynch '334, Lynch '984, Burns, Porteous, Lynch '197, Bergheim, Bergheim '239, Hill, Shadduck, Neuhann, Lynch '391, and/or iStent, EyePass | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |

| Obviousness Ground | Claims |
|---|---|
| Grieshaber '546 in view of Gharib, Lynch '334, Lynch '984, Lynch '197, Porteous, Neuhann, Stegmann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler, Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| Bergheim '239 alone | 1, and asserted claims dependent therefrom |
| Bergheim '239 in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |
| Bergheim '239 in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| Bergheim '239 in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| Bergheim '239 in view of Gharib, Porteous, Lynch '334, Lynch '984, Lynch '391, Neuhann, Shadduck, Stegmann, and/or Tu '052 | 21, 22, 23 |
| Bergheim '239 in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| Bergheim '239 in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, iStent, EyePass, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler,  Yablonski, Haffner, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |
| EyePass alone | 1, and asserted claims dependent therefrom |
| EyePass in view of Tu '047, Tu '052, Tu '791, Smedley, Porteous, Bergheim, Bergheim '239, Hill, Gharib, Shadduck, and/or Stegmann | 1, and asserted claims dependent therefrom |

| Obviousness Ground | Claims |
|---|---|
| EyePass in view of Tu '047, Burns, Lynch '197, Grieshaber, Grieshaber '642, Grieshaber '546, Neuhann, Smedley, Stegmann '399, Stegmann '165, and/or Matthias | 4, 5 |
| EyePass in view of Tu '791, Lynch '334, Lynch '984, Porteous, Lynch '197, Hill, Tu 52, Neuhann, and/or Lynch '391. | 18 |
| EyePass in view of Bergheim, Bergheim '239 | 21, 22, 23 |
| EyePass in view of Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '334, Lynch '984, Lynch '391, Stegmann, Tu '052, and/or Bergheim, Bergheim '239 | 21, 22, 23 |
| EyePass in view of Gharib, Porteous, Grieshaber, Grieshaber '642, Grieshaber '546, Stegmann, Lynch '391, and/or Shadduck | 25, 26 |
| EyePass in view of Gharib, Lynch '334, Lynch '984, Grieshaber, Grieshaber '642, Grieshaber '546, Lynch '197, Porteous, Neuhann, Lynch '391, Bergheim, Bergheim '239, Tu '791, Tu '047, Tu '052, Smedley, Shadduck, Burns, Hill, Bahler, Stefansson, Sidoti, Schwartz, Johnson, Butany, Colombo, Guerrero, Minckler,  Yablonski, Stegmann '399, Stegmann '165, and/or Matthias | 1-2, 4-8, 12-14, 18, 21-23, 25-26 |

## V.    INDEFINITENESS

The patent specification must conclude with one or more claims that "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, Paragraph 2. To satisfy the definiteness requirement, a claim must inform a POSITA of the invention's scope with reasonable certainty when read in view of the specification and prosecution history. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Claim definiteness is measured from the viewpoint of a POSITA at the patent's filing date. *Id.* at 909. In addition, claims are indefinite where "it is unclear whether infringement of the claim occurs when one creates a system that allows the user to [preform method steps], or whether infringement occurs

when the user actually uses the [system]." *IPXL Holdings LLC v. Amazon.com Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005).

Defendants maintain that various claim elements listed below are indefinite because a POSITA would not have been reasonably certain about the scope of the claim terms. Defendants do not reiterate indefiniteness arguments for every claim limitation in the invalidity contention charts attached hereto. To the extent Defendants provide evidence of the invalidity of each claim limitation, Defendants do not concede that a POSITA would have been reasonably certain about the scope of the claims.

### A.     '482 Patent

The following Asserted Claims of the '482 Patent, and any claims that depend therefrom, are indefinite because the specification and prosecution history do not disclose the scope of the claim limitations listed below with reasonable certainty to a POSITA.

- "so that fluid may traverse the canal without substantial interference from the support" (Claims 1, 32, 63). "without substantial interference from the support" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "contact between the support and a wall of the canal is discontinuous along a perimeter of the lumen of the canal" (Claims 1, 63). "discontinuous" and "a perimeter of the lumen" are vague terms that are not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "wherein when the support is disposed within a cylindrical section of the lumen of the canal having an internal wall surface area C, the support contacts less than 30% of C" (Claims 1, 32, 63). The specification provides no guidance regarding how to measure the internal wall surface area C. The only discussion regarding this variable is that it can be "estimated by viewing the inside of Schlemm's canal as a slightly arcuate cylinder." There is no guidance regarding what it means to be an "estimate" as opposed to calculating an actual value, there is no guidance regarding what would constitute a "slightly arcuate cylinder," and there is no appreciation that Schlemm's canal is flexible, can vary depending upon what is disposed within it, and can vary intra- and interperson. A POSITA could not be reasonably certain about the scope of this claim limitation given the compounded layers of uncertainty that are not clarified in the specification.

80

- "the support makes minimal contact with the interior surface of the canal wall" (Claim 2). "minimal contact" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "the support comprises elements that make periodic contact with the canal wall" (Claim 7). "periodic contact" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "wherein the support has a unitary structure" (Claim 15). "unitary structure" is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "only a portion of the exterior surface of the support contacts an inner periphery of the lumen of the canal" (Claim 32). "only a portion" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim. "inner periphery of the lumen of the canal" is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

**B.     '443 Patent**

The following Asserted Claims of the '443 Patent, and any claims that depend therefrom, are indefinite because the specification and prosecution history do not disclose the scope of the claim limitations listed below with reasonable certainty to a POSITA.

- "wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of curvature of Schlemm's canal so that at least a portion of the arcuate member is configured to extend out of Schlemm's canal and into the trabecular meshwork" (Claims 1, 58). There is no guidance in the specification for a POSITA to be reasonably certain about the scope of the claim, at least because the specification provides no guidance regarding from where to measure the radius of curvature. There is also no guidance regarding what constitutes when at least a portion of the arcuate member "is configured to extend out of Schlemm's canal," and how one can distinguish between one that is "configured to" versus not "configured to" in a device claim.

- "wherein the support does not substantially interfere with transmural flow across Schlemm's canal" (Claims 1, 58) "does not substantially interfere with transmural flow across Schlemm's canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "wherein when the support is disposed within a cylindrical section of the lumen of the canal having an internal wall surface area C, the support contacts less than 30% of C" (Claims 1, 58). This surface area limitation is indefinite as explained above for the '482 patent.

- "wherein the support has a cross-sectional diameter" (Claims 54 and 55). A POSITA would not be reasonably certain about the scope of this claim, at least because the

specification provides no guidance how to measure the cross-sectional diameter of various configurations potentially covered by the scope of the claims (e.g, non-circular, non-beaded configurations).

- "wherein the support does not substantially interfere with longitudinal flow along Schlemm's canal" (Claim 56). "does not substantially interfere with longitudinal flow along Schlemm's canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "wherein the support does not substantially interfere with transmural flow into and out of Schlemm's canal" (Claim 57). "does not substantially interfere with transmural flow into and out of Schlemm's canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

## C.    '361 Patent

The following Asserted Claims of the '361 Patent, and any claims that depend therefrom, are indefinite because the specification and prosecution history do not disclose the scope of the claim limitations listed below with reasonable certainty to a POSITA.

- "wherein at least a portion of the arcuate member has a radius of curvature smaller than a radius of curvature of Schlemm's canal" (Claim 1). There is no guidance in the specification for a POSITA to be reasonably certain about the scope of the claim, at least because the specification provides no guidance regarding from where to measure the radius of curvature.

- "wherein the support does not substantially interfere with longitudinal flow along the canal" (Claim 6). "does not substantially interfere with longitudinal flow along the canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "wherein the support does not substantially interfere with transmural flow across the [inner/outer] wall of the canal" (Claims 7, 8). "does not substantially interfere with transmural flow across the [inner/outer] wall of the canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim. The specification also provides no guidance regarding what would constitute an "inner wall" or an "outer wall" of a three-dimensional shape, and where one would become the other.

### D.  '742 Patent

The following Asserted Claims of the '742 Patent, and any claims that depend therefrom, are indefinite because the specification and prosecution history do not disclose the scope of the claim limitations listed below with reasonable certainty to a POSITA.

- "wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal" (Claim 1).  There is no guidance in the specification for a POSITA to be reasonably certain about the scope of the claim, at least because the specification provides no guidance regarding from where to measure the radius of curvature.

- "wherein when the support is disposed within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of C" (Claim 13).  This surface area limitation is indefinite as explained above for the '482 patent.

- "wherein the support does not substantially interfere with longitudinal flow along Schlemm's canal" (Claim 17).  "does not substantially interfere with longitudinal flow along Schlemm's canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "wherein the support does not substantially interfere with transmural flow into and out of Schlemm's canal" (Claim 18).  "does not substantially interfere with transmural flow into and out of Schlemm's canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

The claims and limitations listed above are not intended to be exhaustive but merely illustrate examples of various ways in which the Asserted Claims are indefinite. Defendants have relied upon Plaintiff's apparent interpretation of the claims as evidenced, for example, by the Second Amended Complaint and Plaintiff's Initial Infringement Contentions. Defendants reserve the right to supplement their contentions regarding indefiniteness as new facts come to light or should Plaintiff offer new interpretations of the Asserted Claims, whether explicitly or implicitly.

### E.    '328 Patent

The following Asserted Claims of the '328 Patent, and any claims that depend therefrom, are indefinite because the specification and prosecution history do not disclose the scope of the claim limitations listed below with reasonable certainty to a POSITA.

- "wherein at least a portion of the arcuate member has a radius of curvature $R_{supp}$ smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal" (Claim 1). There is no guidance in the specification for a POSITA to be reasonably certain about the scope of the claim, at least because the specification provides no guidance regarding from where to measure the radius of curvature.

- "wherein the support does not significantly block fluid outflow [to the collector channels/ from the trabecular meshwork] after insertion into Schlemm's canal" (Claims 7, 8).  "does not significantly block fluid outflow [to the collector channels/ from the trabecular meshwork]" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.

- "wherein $R_{supp}$ is about 40% smaller than the radius of curvature of Schlemm's canal" (claim 12).  "about 40% smaller than the radius of curvature of Schlemm's canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.  The specification also provides no guidance regarding from where to measure the radius of curvature.

- "wherein $R_{supp}$ is about 50% smaller than the radius of curvature of Schlemm's canal" (claim 13).  "about 50% smaller than the radius of curvature of Schlemm's canal" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.  The specification also provides no guidance regarding from where to measure the radius of curvature.

- "wherein $R_{supp}$ is about 3 mm" (claim 14).  "about 3 mm" is a relative term that is not defined in the specification and a POSITA could not be reasonably certain about the scope of the claim.  The specification also provides no guidance regarding from where to measure the radius of curvature.

- "wherein when the support is inserted within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of the surface area of C" (Claim 21).  This surface area limitation is indefinite as explained above for the '482 patent.

## VI. WRITTEN DESCRIPTION AND/OR ENABLEMENT

Under 35 U.S.C. § 112, Paragraph 1, a patent specification must contain a written description of the invention. The test for an adequate written description is whether the specification objectively demonstrates to a person of ordinary skill in the art that the patent applicant actually invented, or "possessed," the claimed subject matter when the patent application was filed. *Ariad Pharm., Inc. v. Eli Lilly and Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010).

A patent specification must teach a person of ordinary skill in the art how to make and use the claimed invention without undue experimentation, which is known as the enablement requirement. 35 U.S.C. § 112, Paragraph 1; *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010). To determine whether experimentation would have been undue, courts typically consider: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Id.* (citing *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)).

Defendants maintain that various claim elements listed below fail to satisfy the written description or enablement requirement. Defendants do not reiterate enablement or written description arguments for every claim limitation in the invalidity contention charts attached hereto. To the extent Defendants provide evidence of the invalidity of each claim limitation, Defendants do not concede that the Asserted Patents satisfy either the written description or enablement requirement.

Various claims of the Asserted Patents fail to satisfy the written description or enablement requirement, including at least the claims reciting the following limitations:

- "wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of curvature of Schlemm's canal so that at least a portion of the arcuate member is configured to extend out of Schlemm's canal and into the trabecular meshwork" ('443 patent Claims 1, 58). The specification does not provide sufficient description to support that the inventors possessed supports "configured to extend out of Schlemm's canal and into the trabecular meshwork." There is no discussion regarding what would constitute "configured to" to demonstrate that the inventors possessed the full scope of that claim limitation. There is also no guidance or examples sufficient for a POSITA to make and use a support "configured to" given the unpredictability of the shape and orientation of various Schlemm's canals in individuals and across individuals.

- "wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal" ('742 patent Claim 1; '328 patent claim 1 (similar)). This claim similarly lacks written description support at least for the reasons above for the "configured to" limitation.

- "A method for treating an eye condition" (for '742 patent Claim 1 only, to the extent the preamble is limiting). The specification states that "[t]he devices, kits and methods described herein relate generally to intraocular pressure reduction" and that "[t]reatments for glaucoma, pre-glaucoma and ocular hypertension primarily seek to reduce intraocular pressure." The specification does not provide adequate written description support to demonstrate that the inventor possessed "treating an eye condition" generally, to the extent the preamble is limiting. For similar reasons, the claim preamble fails the enablement requirement to the extent it is limiting because the specification provides no guidance or examples treating all eye conditions, particularly given the unpredictability of treatments and success and the vast possibilities of eye conditions.

- "wherein the support has a cross-sectional diameter" ('443 patent Claims 54 and 55). The specification provides insufficient guidance regarding how to make and use the claimed invention that potentially covers various configurations and that have no clear or predictable cross-sectional diameter.

- "support" if broadly construed to not require "wherein the support occupies at least a portion of a central core of Schlemm's canal." ('443 patent, all Asserted Claims, as explained in n.2 above; '328 patent, all Asserted Claims, as explained in n.3 above). The specification provides no description to demonstrate that the inventors possessed "supports" broadly, as opposed to how the inventors consistently described the invention—as one in which the support must occupy at least a portion of a central core of Schlemm's canal.

- "wherein the support has a first shape prior to insertion within Schlemm's canal and a second shape after insertion." ('328 patent, claim 26). The specification does not provide support for the breadth of this claim to demonstrate the inventors possessed "first shape…and a second shape after insertion" generally. Instead, the specification only states: "If a shape memory material is used, the support can have a *compressed* state prior to and during implantation into Schlemm's canal, and an *expanded* state following implantation to open the canal." '328 patent at 13:60-63 (emphasis added).

- "fluid may traverse the canal without substantial interference from the support" ('482 patent, claims 1, 32); "support does not substantially interfere with [transmural/longitudinal] flow [across/into and out of/along] Schlemm's canal" ('443 patent, claims 1, 56, 57, 58; '361 patent, claim 6; '742 patent, claims 17, 18); "support does not substantially interfere with transmural flow across the [outer/inner] wall of Schlemm's canal" ('361 patent, claims 7, 8);, and "support does not significantly block fluid outflow" ('328 patent, claims 7, 8). The court's report and recommendation on claim construction construed these terms to mean "the support does not significantly block either fluid outflow from the trabecular meshwork or fluid outflow to the collector channels." D.I. 134 at 2. The specifications do not provide sufficient guidance on what materials the "support" should be made of or the structural configuration the support should take to achieve the claimed function(s), and practicing the full scope of the broadly claimed "support" would require undue experimentation. The specifications also do not provide sufficient description to support that the inventors possessed all supports that would achieve the claimed function(s).

- "a portion of the arcuate member extends out of Schlemm's canal" ('742 patent, claim 1; '328 patent, claim 1). The specifications do not provide sufficient description to support that the inventors possessed the breadth of "extends out of Schlemm's canal" without limitation and this limitation was added after the claimed priority date of June 26, 2006.

Based on Sight's apparent interpretation of these limitations, the specifications for the '482, '443, '742, '361, and '328 Patents do not show that the alleged inventors possessed the full scope of such limitations because the specifications do not discuss or describe how the claimed supports themselves are "configured to extend out of Schlemm's canal." *See* Application No. 15/182,165 August 9, 2018 Office Action at 3-4; Sight's Preliminary Infringement Contentions Ex. B at 23-28; *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997) (a "mere wish or plan" for obtaining the invention is not adequate).

The specifications also do not provide adequate guidance to determine whether a claimed "support" (a "broad usage in the claims" that is "not limited" according to Sight, *Markman* Tr. 12:2-8) would meet the "without substantial interference" limitations without undue experimentation. The claimed "support" can take an unlimited number of shapes, sizes, and configurations, but there is no description regarding how to determine whether any of the infinite number of "supports" would "substantially interfere," and determining the full scope of "supports" that meet that claimed function would require extensive and expensive experimentation that would

be undue. *See, e.g.*, D. Badawi 6/12/2023 Tr. 122-124; 176-185. The specifications provide no working examples of any "support" that achieves the limitation. This is akin to a "hunting license" that would require "painstaking experimentation" to determine what satisfies the functional requirements of the claims. *Brenner v. Manson*, 383 U.S. 519, 536 (1966); *see also Amgen v. Sanofi*, 143 S. Ct. 1243, 1256 (2023) (stating that Amgen's specification amounts to a "research assignment" in that it either "call[s] on scientists to create wide range of candidate antibodies and then screen each to see which happen to bind" or "requires scientists to make substitutions to the amino acid sequences of antibodies known to work and then test the resulting antibodies to see if they do too" which the court says "is not enablement"). Sight has essentially tasked others with the challenge of testing different support sizes, shapes, configurations, and materials of construction to determine whether any particular support substantially interferes with flow when implanted. *See, e.g.*, D. Badawi 6/12/2023 Tr. 193-198; 200-202; P. Badawi 6/23/2023 Rough Tr. 132-139,. Instead, no implants or devices were fabricated until "subsequent to" the filing of the Asserted Patents' claimed priority date and no perfusion testing was conducted prior to the claimed priority date. *See, e.g.*, D. Badawi 6/12/2023 Tr. 43-44; 158; 164-165; 170-174; 216; 231-232; 270-271; P. Badawi 6/23/2023 Rough Tr. 124-125, 135-136, 198-200. This attempt to "monopolize an entire class of things defined by their function" does not satisfy the enablement requirement. *Id.* at 16 (discussing Amgen's attempt to claim every antibody that binds to a particular area of the PCSK9 receptor); *see also O'Reilly v. Morse*, 56 U.S. 62 (1853) (discussing that the patentee sought to claim all telegraphic forms of communication); *Consolidated Electric Light Co. v. McKeesport Light Co.*, 159 U.S. 465 (1895) (discussing that the patentee sought to claim all fibrous and textile materials for incandescence); *Holland Furniture Co. v. Perkins Glue*

*Co.*, 277 U.S. 245 (1928) (discussing that the patentee sought to claim all starch glues that worked as well as animal glue for wood veneering).

The claims also fail to satisfy the written description requirement. "To satisfy the written description requirement, the patent need[s] to demonstrate to a skilled artisan that the inventors possessed and disclosed in their filing the particular species" that would accomplish the desired functional objective. *Juno Therapeutics, Inc. v. Kite Pharma*, Inc., 10 F.4th 1330, 1336-37 (Fed. Cir. 2021), cert. denied, 143 S. Ct. 402 (2022) (holding claims invalid for lack of written description for claims covering T-cell receptors comprising "a binding element that specifically interacts with a selected target" because the specification "fail[ed] to provide a representative sample of species within, or defining characteristics for, that expansive genus"). The specifications for the Asserted Patents fail to disclose a representative number of species within the claimed genus. *See LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005) (claim that covers three modes of image compression but describes only one lacks an adequate written description). At most, for the "configure to" limitation, the specifications state once, in passing, that "[i]n some variations the support will be implanted within the canal, but may extend partially beyond Schlemm's canal, e.g., into the trabecular meshwork." *See* [0041]. The specifications do not describe the variations or how they would be "configured to extend…into the trabecular meshwork." Regarding the "without substantial interference" limitations, the specification does not provide "a representative number of species falling with the scope of the genus" that would achieve the claimed function; indeed, the specification does not attribute that claimed function to *any* embodiment or example and there are no disclosed experiments on any "support.". *See Juno Therapeutics*, 10 F.4th at 1335. There is also no disclosed structural feature common to the genus of "support" that a POSA would be able to visualize or recognize the

members of the genus, particularly because the specification provides virtually no limits on the structural features. *Id.* Additionally, the '742 specification at most indicates that the alleged invention is used to reduce intraocular pressure, not generically "treating an eye condition." [6]

## VII.   FAILURE TO FURTHER LIMIT

Claim 57 of the '443 patent is invalid for failing to comply with the requirements of 35 U.S.C. § 112 ¶ 4. Claim 57, which depends upon claim 1, recites that "the support does not substantially interfere with transmural flow *into and out of* Schlemm's canal." Claim 1 already requires "the support does not substantially interfere with transmural flow *across* Schlemm's canal." Nothing in the specification explains how "into and out of" differs from "across." Thus, Claim 57 contains no additional limitations that Claim 1 does not already recite, and is invalid. *See Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006). Similarly, claim 56 of the 443 patent is invalid under the R&R's construction as failing to further limit independent claim 1.

Similarly, claim 15 of the '482 patent is invalid for failing to comply with the requirements of 35 U.S.C. § 112 ¶ 4. Claim 15, which depends upon claim 1, recites that "the support has a unitary structure." If "has" is interpreted in its ordinary sense to mean that the support must have at least one component that has a unitary structure, but it may have other separate or connectable components, then "unitary structure" does not limit the support.

## VIII.   DOCUMENT PRODUCTION

Copies of the prior art referenced in Defendants' Corrected Initial Invalidity Contentions were produced with production numbers: IVANTIS_SS_00001298 - IVANTIS_SS_00003153.

---

[6] For similar reasons that the '742 preamble does not satisfy the written description requirement, to the extent the preamble is limiting, claim 1 of the '742 is not enabled because a POSITA would not be able to make and use the invention without undue experimentation.

Documents produced with Defendant's First Supplemental Initial Invalidity Contentions (9/22/2022) have the following production numbers: IVANTIS_SS_00003154 - IVANTIS_SS_00003172.

Documents produced with Defendants' Second Supplemental Initial Invalidity Contentions (6/29/2023) have the following production numbers: IVANTIS_SS_00456059- IVANTIS_SS_00456154.

Dated: June 29, 2023

/s/ Kat Li
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Noah S. Frank
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeannie M. Heffernan
Kat Li
Austin C. Teng
Ryan J. Melde KIRKLAND
& ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Laura Zhu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jake Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Kat Li, hereby certify that on June 29, 2023, this document was served on the persons

listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Melanie K. Sharp | Michelle S. Rhyu |
| James L. Higgins | David Murdter |
| Taylor E. Hallowell | Lauren Strosnick |
| YOUNG, CONAWAY, STARGATT & TAYLOR LLP | Alissa Wood |
| Rodney Square | Cameron C. Vanderwall |
| 1000 North King Street | COOLEY LLP |
| Wilmington, DE 19801 | 3175 Hanover Street |
| (302) 571-6600 | Palo Alto, CA 94305 |
| msharp@ycst.com | (650) 843-5000 |
| jhiggins@ycst.com | rhyums@cooley.com |
| thallowell@ycst.com | dmurdter@cooley.com |
| | lstrosnick@cooley.com |
| Orion Armon | amwood@cooley.com |
| COOLEY LLP | cvanderwall@cooley.com |
| 1144 15th Street, Suite 2300 | |
| Denver, CO 80202 | |
| (720) 566-4000 | |
| oarmon@cooley.com | |

Bonnie Fletcher Price
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800
bfletcherprice.com

Dustin M. Knight
COOLEY LLP                                  */s/ Kat Li*
11951 Freedom Drive, 14th Floor              Kat Li
Reston, VA 20190                             KIRKLAND & ELLIS LLP
(703) 456-8000                               401 Congress Avenue
dknight@cooley.com                           Austin, TX  78701
                                             (512) 678-9100

Dated: June 29, 2023                         *Attorney for Defendants*

93

# EXHIBIT 8
# EXCERPTED



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, ALCON VISION, LLC, and ALCON INC., | ) ) ) | ████████████████████ |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF SIGHT SCIENCES, INC.'S SECOND SET OF INTERROGATORIES (NOS. 7-19)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as all applicable local rules and this Court's Orders, Defendants Ivantis, Inc. ("Ivantis"), Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. (collectively, "Defendants") hereby make the following objections and responses to the Second Set of Interrogatories (Nos. 7-19), which were served by Plaintiff Sight Sciences, Inc. ("Sight") on March 10, 2023 ("Interrogatories").

**OBJECTIONS TO SIGHT'S DEFINITIONS AND INSTRUCTIONS**

1.      Defendants object to Sight's Instructions and Definitions to the extent they purport to impose upon Defendants discovery obligations that exceed those provided for in the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware, orders entered in this case, or agreements among the parties.

2.      Defendants object to Sight's Instructions and Definitions to the extent they purport to alter the plain meaning and/or scope of any specific Interrogatory on the grounds that such alteration renders the Interrogatory vague, ambiguous, unduly broad, and/or uncertain by failing to adequately define terms or by using terms the meaning of which are not readily available or

**INTERROGATORY NO. 13:**

If You contend that Sight Sciences' response to Your Interrogatory No. 8 is factually or legally incorrect for any reason, identify and describe all factual and legal bases supporting Your contention.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendants object to this Interrogatory as seeking information protected from discovery by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity, including attorney-client communications and attorney work product. Defendants will not provide such information. Defendants object to this Interrogatory as prematurely seeking final invalidity contentions and expert opinions, which Defendants will provide in accordance with the Scheduling Order.

Without waiving any applicable privileges or immunities, Defendants respond as follows:

Defendants incorporate by reference their initial invalidity contentions and exhibits and their forthcoming final invalidity contentions and expert report(s), which will be served in accordance with the Scheduling Order.

**6/29/23 SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Defendants hereby incorporate by reference its previous objections and responses to this Interrogatory as if fully set forth herein. Subject to the foregoing general and specific objections, and without waiving any such objections, Defendants further respond:

Sight's response to Defendants' Interrogatory No. 8 is factually and legally incorrect for several reasons. For example, Sight's contention that Defendants are collaterally estopped by the PTAB's IPR findings and cannot contest that the art and arguments included in the petitions is cumulative is inconsistent with the case law. Collateral estoppel applies only to final written decisions, not institution decisions. *See Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, at *1 (D. Del. Jan. 2, 2019) ("The jury will not be told anything

about the existence of the IPRs or of other litigation between the parties. Westinghouse will not reference the IPRs to support its invalidity defenses and Siemens will not reference the IPRs to rebut invalidity."); *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 494 n.11 (D. Del. 2019) ("[A] denial of institution of IPR proceedings is not a decision on the merits."); *SunPower Corp. v. PanelClaw, Inc.*, 2016 WL 1293479, at *4 n.50 (D. Del. April 1, 2016) ("The PTAB's decision not to institute an IPR is not the type of adjudication that leads to issue preclusion."); *Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, No. CV 12-1461-LPS-CJB, 2016 WL 7042066, at *17 (D. Del. Dec. 2, 2016), *report and recommendation adopted*, No. CV 12-1461-LPS-CJB, 2017 WL 6375173 (D. Del. Dec. 13, 2017), *aff'd sub nom. Princeton Digital Image Corp. v. Ubisoft Ent. SA*, 829 F. App'x 527 (Fed. Cir. 2020) (finding no issue preclusion applies to IPR that was denied institution); *Click-to-Call Techs. LP v. Ingenio, Inc.*, No. 1:12-CV-00465-LY, 2021 WL 3410316, at *7 (W.D. Tex. Aug. 4, 2021), *report and recommendation adopted*, No. 1:12-CV-465-LY, 2021 WL 4692404 (W.D. Tex. Aug. 30, 2021), *aff'd in part, rev'd in part and remanded*, 45 F.4th 1363 (Fed. Cir. 2022) ("Because the PTAB did not grant *inter partes* review to claim 27, the issue was not litigated in the IPR, and Defendants are free to assert that the Dezonno patent anticipates claim 27 in this litigation."); *Pers. Audio LLC v. Togi Ent., Inc.*, No. 14-MC-80025 RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014) ("[D]iscovery related to collateral estoppel is premature and irrelevant at this stage because the PTAB has yet to issue a final written decision in the IPR proceedings."). As one example, the *Papst* case Sight relies on belies its argument. There, the Federal Circuit confirmed that preclusion applies only to final written decisions. *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc*., 924 F.3d 1243, 1250-1251 (Fed. Cir. 2019).

Sight's contentions concerning "calculations or measurements" are misplaced at least because they prematurely call for expert testimony. In addition, Sight vaguely refers to supports that "would not prop open Schlemm's canal," without any explanation or reference to specific art. As set forth in Defendants' invalidity contentions, the prior art discloses and/or teaches the claimed "support" and all related limitations. Further, Sight contends Defendants fail "to provide the dimensions of prior art supports, to calculate the surface area of prior art supports, to calculate the degree of surface area contact between prior art supports and the internal wall surface of Schlemm's canal, or to calculate the internal wall surface area of Schlemm's canal after the support is inserted in relation to the size of the support," but such calculations are impossible, as Defendants and fact witnesses have explained. *See, e.g.*, Defendants' Initial Invalidity Contentions at 45; Defendants' Responsive Claim Construction Brief at 13-18; Schieber Rough Tr. at 155-16. The Asserted Patents disclose exemplary cross-sectional dimensions of "beads" of about 50 microns to about 500 microns, but include no dimensions or details regarding "supports" generally, including length.

Sight's contention that certain "prior art devices" are allegedly "inoperative for their intended purposes" is factually and legally erroneous. First, Sight does not reference any such prior art device by name. Second, Sight's contention is based on several misstatements of the Asserted Claims, including, for example, that the Asserted Claims require a device (1) "large enough" to prop open Schlemm's canal, (2) "longitudinally insertable without cutting or tearing the trabecular meshwork that must hold the support in place," and/or (3) insertable "without undue damage to the sclera and collector channels." No such requirements are found in the Asserted Claims, and any contention otherwise would be a flawed and untimely claim-construction argument. Moreover, Sight contends the unnamed devices "could not be longitudinally inserted into Schlemm's canal

in a manner that would be medically acceptable or effective," but provides no basis or explanation for such assertion. In fact, all the prior art devices Defendants rely on are longitudinally insertable into Schlemm's canal and designed for the express purpose of lowering intraocular pressure, as set forth in Defendants' invalidity contentions. To the extent Sight contends more is required, the Asserted Patents suffer from the same deficiency and are thus invalid.

Sight's contention that Defendants' invalidity contentions "fail to establish the invalidity of any claim because they are based on prior art that is the same or highly similar prior art to the art considered by the U.S. Patent Office during prosecution" is factually and legally erroneous. Defendants' invalidity contentions rely on art that was not before the Office or considered by the Office during prosecution, and which invalidates all Asserted Claims. In addition, Defendants rely on combinations of references that the Office did not consider. Sight does not address such art and combinations of art in its response to Interrogatory No. 8. As an example, Sight does not address iStent or a single combination of references. To the extent Defendants rely on art and/or combinations that are the "same or highly similar" to art or combinations that were before the Office, the Office clearly erred because such art and/or combinations disclose and/or teach every limitation of every Asserted Claim, as set forth in Defendants' invalidity contentions (including all supplements thereto and Defendants' forthcoming final invalidity contentions).

Sight's contention that Defendants "tacitly acknowledged the validity of the patents-in-suit" when Jim Shay allegedly "offered to purchase the patent family" is factually and legally erroneous. Defendants deny that any such offer was made, and hereby incorporate Defendants' Third Supplemental Response to Sight Sciences' First Set of Interrogatories, Interrogatory No. 2 at pp. 9-12. Paul Badawi testified that he could not recall an offer to purchase the then-pending patent applications, and Sight has produced no documentary evidence to support any such "offer."

*E.g.*, June 23, 2023 P. Badawi Rough Dep. Tr. 117:15-119:18. Furthermore, it is impossible to "tacitly acknowledge" the validity of a patent years before a patent even issues.

Defendants disagree with Sight's definition of a Person of Ordinary Skill in the Art, and incorporate by reference the definition set forth in Defendants' Responsive Claim Construction Brief. *See* Defendants' Responsive Claim Construction Brief at 1.

Sight's response to Interrogatory No. 8 also does not sufficiently put Defendants on notice of Sight's contentions regarding the alleged validity of the patents. In contrast to Defendants' invalidity contentions, which provide claim-by-claim, limitation-by-limitation bases for each Asserted Claim where the prior art reference discloses each limitation, including citations to specific portions of the references that teach the limitation, Sight's response does not address each claim or limitation for each Asserted Claim, and does not address the prior art disclosures Defendants mapped for each limitation. Instead, several of Sight's responses merely parrot claim limitations and baldly assert that prior art references do not disclose the claim limitation despite explicit teachings in the prior art disclosing those limitations. The only limitation Sight's response attempts to address—"support"—still does not identify why Sight believes the prior art references do not teach or disclose a "support." For the remaining limitations that Sight did not address, in stark contrast to Defendants' invalidity contentions, Sight's responses merely state that prior art references do not teach particular limitations with no further explanation, detail, or even cites to the prior art references.

Defendants incorporate by reference their initial invalidity contentions and exhibits, their supplemental invalidity contentions and exhibits, and their forthcoming final invalidity contentions and expert report(s), which will be served in accordance with the Scheduling Order.

Defendants have not willfully infringed the Asserted Patents.  By contrast, Defendants would suffer hardship if forced to remove Hydrus from the marketplace in form of lost jobs, revenue, loyalty, brand equity, and goodwill.  Marshall Dep. Tr. at 155:24-159:4 (describing hardships to Defendants and third parties).

<table>
<tr><td>OF COUNSEL:</td><td>As to objections and contentions only,</td></tr>
</table>

OF COUNSEL:

Gregg LoCascio
Sean M. McEldowney
Noah S. Frank
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeannie M. Heffernan
Kat Li
Austin C. Teng
Ryan J. Melde KIRKLAND
& ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Laura Zhu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jake Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Dated: June 29, 2023

As to objections and contentions only,

_/s/ Kat Li_
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Kat Li, hereby certify that on June 29, 2023, this document was served on the persons

listed below in the manner indicated:

**BY EMAIL**

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Bonnie Fletcher Price
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800
bfletcherprice@cooley.com

Dustin M. Knight
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190
(703) 456-8000
dknight@cooley.com

Michelle S. Rhyu
David Murdter
Lauren Strosnick
Alissa Wood
Cameron C. Vanderwall
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
dmurdter@cooley.com
lstrosnick@cooley.com
amwood@cooley.com
cvanderwall@cooley.com

*/s/ Kat Li*
Kat Li
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

*Attorney for Defendants*

# EXHIBIT 9
# EXCERPTED

Nos. 2022-1293, 2022-1294, 2022-1295, 2022-1296

---

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

---

IN RE: CELLECT, LLC,
*Appellant*

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Nos. 90/014,453, 90/014,454, 90/014,455, 90/014,457

---

## CELLECT, LLC'S PRINCIPAL BRIEF

---

Jonathan Caplan
Jeffrey Price
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000
jcaplan@kramerlevin.com
jprice@kramelevin.com

Paul J. Andre
Lisa Kobialka
James R. Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Tel: (650) 752-1700
Fax: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*ATTORNEYS FOR CELLECT, LLC*

# REPRESENTATIVE CLAIMS

## U.S. Patent No. 6,982,742

**42.** In a PDA having capability to transmit and receive data in a communications network, the improvement comprising:

a video system integral with said PDA for receiving and transmitting video images, and for viewing said images, said video system comprising:

a camera module housing an image sensor therein, said image sensor lying in a first plane and including an array of pixels for receiving images thereon, said image sensor producing a pre-video signal, a first circuit board lying in a second plane and electrically coupled to said image sensor, said first circuit board including circuitry means for timing and control of said array of pixels and circuitry means for processing and converting said pre-video signal to a desired video format, a transceiver radio element communicating with said firs circuit board for transmitting said converted pre-video signal;

a transceiver radio module mounted in said PDA for wirelessly receiving said converted pre-video signal; and

a video view screen attached to said PDA for viewing said video images, said video view screen communicating with said transceiver radio module, and displaying video images processed by said first circuit board.

## U.S. Patent No. 6,424,369

**49.** In a PDA having capability to transmit data between a personal computer connected to a communications network, the improvement comprising:

a video system integral with said PDA for receiving and transmitting video images, and for viewing said images, said video system comprising:

a camera module housing an image sensor therein, said image sensor lying in a first plane and including an array of CMOS pixels for receiving images thereon, said image sensor producing a pre-video signal, a first circuit board lying in a second plane and electrically coupled to said image sensor, said first circuit board including circuitry means for timing and control of said array of CMOS pixels and circuitry means for processing and converting said pre-video signal to a desired video format; and

i

a video view screen attached to said PDA for viewing said video images, said video view screen communicating with said first circuit board.

## U.S. Patent No. 6,452,626

**1.** In a wireless telephone for conducting wireless telephonic communications, the improvement comprising:

a video system integral with said telephone for receiving and transmitting video images, and for viewing said video images, said video system comprising;

a camera module housing an image sensor therein, said image sensor lying in a first plane and including an array of CMOS pixels for receiving images thereon, said image sensor further including circuitry means on said first plane and coupled to said array of CMOS pixels for timing and control of said array of CMOS pixels, said image sensor producing a pre-video signal, a first circuit board lying in a second plane and electrically coupled to said image sensor, said first circuit board including circuitry means for converting said pre-video signal to a desired video format;

a video monitor attached to said wireless phone for viewing said video images, said video monitor communicating with said first circuit board, and displaying video images processed by said first circuit board.

## U.S. Patent No. 7,002,621

**33.** In a video telephone for receiving and transmitting telephone communications to include video signals transmitted by the user of the phone, and video signals received from the party to whom a call is made, the video telephone including a video monitor for viewing the video signals, the improvement comprising:

a camera module for taking video images, said camera module communicating with circuitry within said video enabling video signals to be transmitted from said camera module to said video telephone for viewing by said user or for further transmission to another party, said camera module including an image sensor housed therein and lying in a first plane, said image sensor including an array of pixels for receiving images thereon, said image sensor producing a pre-video signal, and a transceiver radio element communicating with said image sensor for wirelessly transmitting said pre-video signal.

# CERTIFICATE OF INTEREST

Counsel for Cellect, LLC certifies the following:

1. The full name of every entity represented by us is:

   Cellect, LLC.

2. The name of the real party in interest for the entity.  Do not list the real party if it is the same as the entity:

   Not applicable.

3. All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party or amicus curia represented by me are listed below:

   Cellect, LLC is a wholly-owned subsidiary of Micro Imaging Solutions LLC.

4. The names of all law firms, and the partners or associates that have not entered an appearance in the appeal, and (a) appeared for the entity in the lower tribunal; or (b) are expected to appear for the entity in this court:

   Not applicable.

5. Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

   - *In Re: Cellect, LLC*, No. 22-1292 (Fed. Cir.); and

   - *Cellect, LLC v. Samsung Electronics Co., Ltd., et al.*, No. 1:19-cv-00438 (D. Colo.).

6. All information required by Fed. R. App. P. 26.1(b) and (c) in criminal cases and bankruptcy cases.

   None.

Dated: May 16, 2022

By:  /s/ Paul J. Andre
Paul J. Andre
Lisa Kobialka
James R. Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Tel: (650) 752-1700
Fax: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

Jonathan Caplan
Jeffrey Price
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000
jcaplan@kramerlevin.com
jprice@kramelevin.com

*Attorneys for Appellant*
Cellect, LLC

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF RELATED CASES ..................................................................1

JURISDICTION..................................................................................................2

INTRODUCTION ...............................................................................................3

STATEMENT OF ISSUES ..................................................................................8

STATEMENT OF THE CASE.............................................................................9

     A.    Cellect's Challenged Patents Are from the Same Patent
          Family and Claim Priority to the Same Application...........................10

     B.    The Same Examiner Prosecuted the Applications of the
          Challenged Patents with the Requirements for
          Patentability in Mind .........................................................................12

     C.    The Board Affirmed the Patent Office's Use of Patent
          Term Adjustments to Create Double Patenting
          References during Reexamination ......................................................17

SUMMARY OF ARGUMENT .............................................................................18

ARGUMENT ......................................................................................................21

I.       STANDARD OF REVIEW......................................................................21

II.     THE BOARD LEGALLY ERRED IN TREATING PATENT
       TERM ADJUSTMENTS DIFFERENTLY THAN PATENT TERM
       EXTENSIONS FOR PURPOSES OF DOUBLE PATENTING.................22

     A.    Patent Term Restoration Based on Government Delays
          Should Be Treated the Same ..............................................................22

     B.    The Plain Language of 35 U.S.C. § 154(b) Forecloses the
          Board's Claim that Patent Term Adjustments by
          Themselves Create Double Patenting Issues......................................26

C.     District Courts Have Applied this Court's Holding in
       *Novartis* to Patent Term Adjustments ................................................. 32

D.     The Board's Differential Treatment of Extensions and
       Adjustments Is Illogical and Unworkable ........................................... 39

III.   THE EQUITABLE CONCERNS UNDERPINNING THE
       DOUBLE PATENTING DOCTRINE DO NOT EXIST IN THIS
       CASE ........................................................................................................ 41

IV.    THERE IS NO SUBSTANTIAL NEW QUESTION OF
       PATENTABILITY HERE BECAUSE THE EXAMINER
       CONSIDERED DOUBLE PATENTING DURING
       PROSECUTION AND KNEW OF THE ADJUSTMENTS ....................... 45

V.     EVEN IF THIS COURT PERMITS TERM ADJUSTMENTS TO
       RETROACTIVELY CREATE DOUBLE PATENTING ISSUES,
       ONLY THE ADJUSTMENT SHOULD BE CONSIDERED FOR
       INVALIDATION ...................................................................................... 52

VI.    THE BOARD'S REMAINING INVALIDITY ALLEGATIONS
       DEPEND ON DOUBLE PATENTING AND THUS COLLAPSE ............. 54

CONCLUSION ..................................................................................................... 54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbvie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust*,
    764 F.3d 1366 (Fed. Cir. 2014) ........................................................................25

*Amgen, Inc. v. Sandoz Inc.*,
    No. 18-11026 (MAS) (DEA), 2021 WL 5366800 (D.N.J. Sept. 20,
    2021) ..........................................................................................................*passim*

*In re Bradt*,
    937 F.2d 589 (Fed. Cir. 1991) ...........................................................................3

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
    689 F.3d 1368 (Fed. Cir. 2012) ........................................................................21

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
    753 F.3d 1208 (Fed. Cir. 2014) ....................................................33, 37, 38, 43

*In re Glatt Air Techniques, Inc.*,
    630 F.3d 1026 (Fed. Cir. 2011) ........................................................................21

*Immunex Corp. v. Sandoz, Inc.*,
    964 F.3d 1049 (Fed. Cir. 2020) ........................................................................38

*Magna Elecs., Inc. v. TRW Automotive Holdings Corp.*,
    Nos. 1:12-cv-654, 1:13-cv-324, 2015 WL 11430786 (W.D. Mich.
    Dec. 10, 2015)....................................................................................................34

*Merck & Co. v. Hi-Tech Pharmacal Co.*,
    482 F.3d 1317 (Fed. Cir. 2007) .................................................................*passim*

*Mitsubishi Tanabe Pharma Corp. v. Sandoz Inc.*,
    533 F. Supp. 3d 170 (D.N.J. 2021).............................................................*passim*

*Novartis AG v. Ezra Ventures, LLC*,
    909 F.3d 1367 (Fed. Cir. 2018) ..................................................................*passim*

*Novartis Pharm. Corp. v. Breckenridge Pharm., Inc.*,
    909 F.3d 1355 (Fed. Cir. 2018) ..................................................................38, 43

*Sandy MacGregor Co. v. Vaco Grip Co.*,
   2 F.2d 655 (6th Cir. 1924) ...................................................................35

*Underwood v. Gerber*,
   149 U.S. 224 (1893)......................................................................35, 44

*In re Vivint, Inc.*,
   14 F.4th 1342 (Fed. Cir. 2021) ...........................................................21

**Statutes**

5 U.S.C.
   § 706........................................................................................................21

28 U.S.C.
   § 1295(a)(4)(A) ........................................................................................2

35 U.S.C.
   § 103...........................................................................................20, 21, 54
   § 154(b)............................................................................................*passim*
   § 156................................................................................................*passim*
   § 156(a)...................................................................................................40
   § 156(c)...................................................................................23, 26, 31
   § 156(g)(6).............................................................................................23
   § 303(a)...................................................................................................50

Hatch-Waxman Act ...................................................................................23

**Other Authorities**

37 C.F.R. § 1.705 (pre-2013-04-01) .....................................20, 46, 50, 51

37 C.F.R. § 1.705 (current) ............................................................50, 51

H.R. Rep. 106-287(I) (1999)........................................ 22, 23, 35, 40, 41, 42

H.R. Rep. No. 107-120 (2001)................................................................50

Manual of Patent Examining Procedure § 2304.01(a) (June 2020) .......................12

Manual of Patent Examining Procedure § 609 (June 2020) ..............................14, 47

Manual of Patent Examining Procedure § 609.02 (June 2020) ........................16, 48

Manual of Patent Examining Procedure § 804 (June 2020) ....................... 19, 41, 42

Manual of Patent Examining Procedure § 2242 (June 2020) ........................... 49, 50

Manual of Patent Examining Procedure § 2733 (June 2020) ........................... 50, 51

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, Cellect, LLC states that:

No appeal in this case was previously before this Court or any other court.

The following case is pending before this Court regarding U.S. Patent No.

6,982,740:

- *In Re: Cellect, LLC*, No. 22-1292 (Fed. Cir.).

The following case is pending before the United States District Court for the

District of Colorado regarding U.S. Patent Nos. 6,982,740, 6,982,742, 6,424,369,

6,452,626, and 7,002,621:

- *Cellect, LLC v. Samsung Electronics Co., Ltd., et al.*, No. 1:19-cv-00438
  (D. Colo.).

## **JURISDICTION**

On December 1, 2021, the U.S. Patent Trial and Appeal Board issued four Decisions on Appeal in Reexamination Control Nos. 90/014,453 (Appx1-25), 90/014,454 (Appx26-49), 90/014,455 (Appx50-74), and 90/014,457 (Appx75-97). Patent Owner, Cellect, LLC, timely filed a Notice of Appeal in each reexamination on December 21, 2021.  Appx4136-4141, Appx6381-6386, Appx9260-9267, Appx12114-12119.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(4)(A).

# INTRODUCTION

The U.S. Patent Trial and Appeal Board ("the Board") created an artificial distinction between patent term extension (or "PTE") and patent term adjustment (or "PTA") for purposes of non-statutory obviousness-type double patenting (or "double patenting") that runs contrary to this Court's guidance and other District Courts' holdings. These types of statutorily authorized time extensions do not run afoul of the judicially created doctrine of double patenting because they do not permit "*improper* timewise extension of the patent right." *In re Bradt*, 937 F.2d 589, 592 (Fed. Cir. 1991) (emphasis added). Indeed, the time extensions from PTA and PTE are *properly* granted by statute—35 U.S.C. §§ 154(b) and 156. Nonetheless, the Board determined that judicially created "non-statutory" double patenting trumps mandated "statutory" PTA for validity purposes for a family of patents under common ownership.

Doubling down on this flawed logic, the Board used a hodgepodge of related patents to find a substantial new question of patentability during reexamination and invalidated four related patents under the guise of double patenting (the "Challenged Patents").[1] The figures below show the patents' relationship and how the Board weaponized certain Cellect patents to invalidate every patent with a PTA.

---

[1] The Challenged Patents are U.S. Patent No. 6,982,742 ("the '742 Patent"), U.S. Patent No. 6,424,369 ("the '369 Patent"), U.S. Patent No. 6,452,626 ("the '626 Patent), and U.S. Patent No. 7,002,621 ("the '621 Patent").

Below is the relationship amongst the Cellect patents and their original

expiration date relative to the adjusted expiration dates.



First, the Board used the '369 Patent against its own child, the '742 Patent,
and against its sister, the '626 Patent, as shown below.



Next, the Board used the '626 Patent against its own child, the '621 Patent.  (As
shown above, however, the '626 Patent was itself invalidated by its brother,
the '369 Patent.)



Finally, the Board used U.S. Patent No. 6,862,036 ("the '036 Patent") against its uncle, the '369 Patent.



By the time the Board finished turning one family member against another, it had invalidated every patent with a PTA based on double patenting, as pictured below.



6

The Board's whack-a-mole logic found every term-adjusted patent invalid under double patenting based solely on the patents' expiration dates. The Board used an equitable doctrine to achieve an inequitable result. To wit, Cellect had no opportunity to cure the *alleged* improper term adjustment because the cure (*i.e.*, a terminal disclaimer) was unavailable in the reexaminations because the Cellect patents had expired when the double patenting rejection was made, whereas Cellect could have filed a terminal disclaimer during the original prosecution if the issue had been raised. Under the Board's interpretation of PTA and how it relates to double patenting, every inventor would need to file preemptive terminal disclaimers during prosecution to avoid having related patents invalidate one another under double patenting, resulting in the abrogation of 35 U.S.C. § 154(b) altogether.

Moreover, the Board ignored the specific facts surrounding the prosecution of the Cellect patents that demonstrated that the PTAs were *proper* term extensions. The same Patent Examiner, Anand Rao, was responsible for examination of all of Cellect's Challenged Patents and the '036 Patent (collectively "the Patents at Issue"). He was aware of the claims, that the U.S. Patent and Trademark Office ("Patent Office") had granted PTAs, and determined that double patenting was not applicable. Thus, there cannot be any *substantial new* question of patentability. Nonetheless, the Board weaponized these adjustments to invalidate related patents,

even though "[a] difference in expiration dates between two patents that arises solely from a statutorily authorized time extension, such as a patent-term adjustment pursuant to 35 U.S.C. § 154(b) or a patent-term extension pursuant to 35 U.S.C. § 156, cannot be the basis for an application of [double patenting]." *Amgen, Inc. v. Sandoz Inc.*, No. 18-11026 (MAS) (DEA), 2021 WL 5366800, at *26-27 (D.N.J. Sept. 20, 2021), *appealed on other grounds*, No. 22-1147 (lead) (Fed. Cir. Nov. 12, 2021) (citing *Novartis AG v. Ezra Ventures, LLC*, 909 F.3d 1367, 1372-75 (Fed. Cir. 2018) (rejecting attempt to use "a judge-made doctrine" to "cut off a statutorily-authorized time extension")) (further citation omitted).

## STATEMENT OF ISSUES

1.    Whether patent term adjustments should be treated in the same way as patent term extensions for purposes of non-statutory obviousness-type double patenting.

2.    Whether a patent can become a basis for double patenting against another related patent, when the only reason that the two related patents expire at different times was due to a statutorily granted patent term adjustment.

3.    Whether the Board erred in finding that double patenting raised a substantial new question of patentability during reexamination when the evidence demonstrates that the Patent Office considered double patenting during prosecution and knew about the term adjustments during prosecution.

## STATEMENT OF THE CASE

Two generations of the Adair family, Dr. Edwin L. Adair, a renowned urologist and prolific inventor, and his sons Jeffrey Adair and John Adair, founded Appellant Cellect, LLC ("Cellect") and its parent company, Micro Imaging Solutions LLC. Appx1745, Appx1751, ¶¶ 2, 21. Together, this innovative family pioneered and developed complementary metal-oxide semiconductor ("CMOS") imaging technology. *See generally* Appx1745-1751 (Declaration of Cellect's Chief Technology Officer), ¶¶ 2-21. They were awarded numerous patents, and the Cellect family of Patents at Issue disclose CMOS camera technology that has important applications in modern smartphones and tablets. Appx1750-1751, ¶¶ 16-21. Dr. Adair, his brother Randall Adair, and Mr. Jeffrey Adair are the inventors of the Challenged Patents at issue in this appeal. Appx132, Appx163, Appx189, Appx216.

Cellect appeals four Board Decisions affirming the invalidity of certain claims of the Challenged Patents in *ex parte* reexaminations based on double patenting due to the Patent Office granting a patent term adjustment. *See generally* Appx1-25, Appx26-49, Appx50-74, Appx75-97 (Decisions on Appeal for Reexamination Control Nos. 90/014,453, 90/014,454, 90/014,455, and 90/014,457, respectively) (collectively "Decisions"). The Challenged Patents and claims at issue in these Decisions are:

- Claims 22, 42, 58, and 66 of the '742 Patent;

- Claims 1, 17, 19, 21, 22, 27, 49, 55, and 61 of the '369 Patent;

- Claims 1, 5, 11, 33, 34, 58, and 64 of the '626 Patent; and

- Claims 25, 26, 27, 28, 29, and 33 of the '621 Patent.

### A. Cellect's Challenged Patents Are from the Same Patent Family and Claim Priority to the Same Application

The Challenged Patents generally relate to "solid state image sensors," with each Challenged Patent describing and distinctly claiming communication devices that are improved with reduced-area imaging devices (for example, solid state sensors that are of a minimum size). Appx132 ('742 Patent Abstract), Appx148 ('742 Patent at 1:20-26); Appx163 ('369 Patent Abstract), Appx177 ('369 Patent at 1:16-21); Appx189 ('626 Patent Abstract), Appx203 ('626 Patent at 1:15-21); Appx216 ('621 Patent Abstract); Appx232 ('621 Patent at 1:21-25).

In addition to having the same three inventors, all the Challenged Patents are assigned to the inventors' family business, Cellect. Appx132, Appx163, Appx189, Appx216. Co-founder and Chief Technology Officer of Cellect and its parent company, Mr. Jeffrey Adair, pledged that Cellect will not assign these patents to another entity. Appx1745, Appx1753 (Mr. Adair's declaration), ¶¶ 2, 24. The Challenged Patents are also part of the same patent family, all claiming priority to October 6, 1997, which is the filing of the parent application, U.S. Patent Appl. No. 08/944,322. Appx132, Appx163, Appx189, Appx216. In particular, the '369

and '626 Patents are continuations-in-part ("CIP") of U.S. Patent No. 6,275,255

("the '255 Patent"), the '742 Patent is a CIP of the '369 Patent, and the '621 Patent

is a CIP of the '626 Patent. *Id.*; *see also* Appx6549.

Between July 2000 and July 2002, Cellect filed the applications that matured

into the Challenged Patents, along with U.S. Patent Appl. No. 10/198,189, which

matured into the '036 Patent.   Appx132, Appx163, Appx189, Appx216,

Appx6387 (the '036 Patent).  While there is no reexamination challenge to

the '036 Patent, the Board used the '036 Patent (a continuation of the '626 Patent)

as a reference against the '369 Patent.  Appx28-29, Appx49 (Board's '369 Patent

Decision).

As shown in the diagram below, due to Patent Office delays during

prosecution, several of Cellect's patents received a PTA pursuant to pre-AIA 35

U.S.C. § 154(b).  The Patent Office calculated and granted the adjustments, which

were included in the Notices of Allowance.  Appx514-516 ('742 Patent);

Appx998-1000 ('369 Patent); Appx6851-6853 ('626 Patent); Appx9715-9717

('621 Patent).  Notably, but for the PTAs, the Challenged Patents would have

expired on the same day, October 6, 2017, which is the expiration of the

unchallenged '036 Patent that did not qualify for a PTA.  Appx6387.



**B.    The Same Examiner Prosecuted the Applications of the Challenged Patents with the Requirements for Patentability in Mind**

The same Examiner, Examiner Rao, evaluated all the patent applications of the Patents at Issue with all the members of the patent family in mind.  Appx132, Appx163, Appx189, Appx216, Appx6387.  The prosecution histories of the Cellect patents demonstrate that he was not only aware of the family relationships among these patents, but also understood and considered the relevancy of the related patent applications within the Cellect patent family during prosecution.

Examiner Rao conducted interference searches in accordance with the Manual of Patent Examining Procedure (June 2020) ("MPEP") § 2304.01(a), which requires that applications are searched against any other pending applications with conflicting claims.  He recorded in the relevant prosecution

histories that he searched the correct classes for the Challenged Patents while examining the applications for the '742, '369, '626, and '621 Patents. Appx524-525 (interference search notes in classes 348, 382, and 455 from the '742 Patent file history); Appx1017 (interference search notes in classes 348 and 455 from the '369 Patent file history); Appx6880 (interference search notes in classes 348 and 455 from the '626 Patent file history); Appx9724 (interference search notes in classes 348 and 455 from the '621 Patent file history).

The unrebutted testimony of Mr. Robert Spar, the former Director of the Office of Patent Legal Administration and a 40-year veteran of the Patent Office (Appx2432-2435), confirmed that not only did Examiner Rao conduct the proper interference searches, but also that his searches demonstrated his consideration of any potential double patenting issues. Appx2439-2443 (Mr. Spar's declaration in the '742 Patent reexamination), ¶¶ 20, 29-33 (describing the interference search for the '742 Patent Application); Appx6247-6249 (Cellect's citation to and reliance on Mr. Spar's declaration submitted in the '626 Patent reexamination); Appx8108-8113 (Mr. Spar's declaration in the '626 Patent reexamination), ¶¶ 20, 28-32 (describing the interference search for the '369 and '626 Patent Applications); Appx10910-10915 (Mr. Spar's declaration in the '621 Patent reexamination), ¶¶ 20, 28-33 (describing the interference search for the '621 Patent Application). Mr.

Spar opined that this, along with other evidence of Examiner Rao's thoroughness during prosecution, shows that Examiner Rao considered double patenting. *Id.*

Further, Examiner Rao expressly acknowledged that he had considered related patents, including the parent patent applications that the Board now employs as double patenting references, during the prosecution of the applications for the '621 and '742 Patents. He signed his initials on an information disclosure statement ("IDS"), indicating he had considered the parent '626 Patent when evaluating its child '621 Patent Application. Appx9721 (initialed IDS from the '621 Patent file history, listing the '626 Patent); *see* MPEP § 609 (examiner initials on an IDS indicate information was considered). He also searched for the '626 Patent during prosecution of the '621 Patent, because he identified the application number for the '626 Patent in the list of search terms he used to look for prior art references. Appx9724 (search terms from the '621 Patent file history, identifying U.S. Patent Appl. No. 09/613,027, which matured into the '626 Patent).

While examining the patentability of the '621 Patent Application, Examiner Rao extended his evaluation beyond just the relevant parent patent. He also considered the '036 Patent. Appx9721 (initialed IDS from the '621 Patent file history, listing the '036 Patent). He used U.S. Patent Appl. No. 09/935,993, which matured into the '742 Patent, as another search term. Appx9724 (search terms from the '621 Patent file history). He even searched for and considered other

14

related patents within the same family but from earlier in the priority chain. *Id.* (search terms from the '621 Patent file history, identifying U.S. Patent Appl. No. 09/175,685, which matured into related U.S. Patent No. 6,043,839 ("the '839 Patent")); Appx9731-9732 (initialed IDS from the '621 Patent file history, listing related U.S. Patent No. 5,929,901 ("the '901 Patent")).

During prosecution of the '742 Patent application, he used the application number of its parent patent, the '369 Patent, in the list of search terms that he used to look for prior art references. Appx524 (search terms from the '742 Patent file history, identifying U.S. Patent Appl. No. 08/638,976, which matured into the '369 Patent). Again, he went beyond merely considering the parent application. He used additional related patents as search terms, such as U.S. Patent Appl. No. 09/934,201, which matured into the '621 Patent. *Id.* (search terms from the '742 Patent file history). He also initialed an IDS to show he considered the related '626 Patent, '036 Patent, and the earlier '901 Patent in connection with the '742 Patent prosecution. Appx531 (initialed IDS from the '742 Patent file history, listing the '626 and '036 Patents); Appx520 (initialed IDS from the '742 Patent file history, listing the '901 Patent).

Examiner Rao's search terms during prosecution also included the inventors' names. Appx524 (search terms from the '742 Patent file history), Appx9724 (search terms from the '621 Patent file history). That search would turn up the

parent patents and other related applications, as the Patents at Issue have the exact same inventors.  Thus, he evaluated the child applications in light of their respective parents, as the MPEP requires.  *See* MPEP § 609.02.  Based on all the foregoing evidence, his thorough evaluations of Cellect's patent family extended not just ***down*** each parent-child line, but also ***across*** the various applications that followed the original priority application.

In addition, Examiner Rao considered the applicability of potential prior art across the family during prosecution.  *See, e.g.*, Appx437-440, Appx947-953, Appx6785-6788, Appx9664-9667 (Office Actions for the '742, '369, '626, and '621 Patents, respectively).  For example, he considered the same alleged prior art reference, Jacobsen *et al.*, in validity challenges to each of the Challenged Patents.  *Id.*  He also indicated that he considered the earlier '901 Patent in connection with his examination of the '369 Patent.  Appx992 (initialed IDS from the '369 Patent file history, listing the '901 Patent).

There can be no reasonable dispute that Examiner Rao considered double patenting during the prosecution of the family of the Challenged Patents. Examiner Rao issued a double patenting rejection when warranted for the related '255 Patent application, which is the parent of the '626 and '369 Patents and the grandparent of the '742 and '621 Patents.  Appx3259-3262 (Office Action based on double patenting for U.S. Appl. No. 09/496,312, which matured into

the '255 Patent).  He did not issue such a rejection in connection with the

Challenged Patents because none was necessary.

### C.    The Board Affirmed the Patent Office's Use of Patent Term Adjustments to Create Double Patenting References during Reexamination

The Board affirmed the Patent Office's application of the judicially created

doctrine of double patenting against the Challenged Patents based on certain

patents' statutorily granted PTAs, which resulted in each Challenged Patent

expiring at a different time.  Appx12-16, Appx35-38, Appx61-65, Appx84-89

(Board's '742, '369, '626, and '621 Decisions, respectively, addressing

applicability of double patenting to PTA).  Specifically, the Patent Office relied on

the adjusted expiration dates to create double patenting references and turn

Cellect's related patents against one another, even though Examiner Rao found no

double patenting issues within this family during prosecution.  Thus, the Patent

Office weaponized the following patents against their term-adjusted relatives:

- The '369 Patent allegedly invalidates its own child, the '742 Patent.  Appx24.  The '369 Patent is the earlier-filed and earlier-issued patent.

- The '626 Patent allegedly invalidates its own child, the '621 Patent.  Appx97.  The '626 Patent is the earlier-filed and earlier-issued patent.

- The '036 Patent allegedly invalidates the related '369 Patent.  Appx49.  The '036 Patent is the later-filed and later-issued patent.

17

- The '369 Patent allegedly invalidates the related '626 Patent. Appx73. The '369 Patent is the later-filed and earlier-issued patent.

In affirming the Patent Office's decision, the Board also summarily concluded that double patenting applies to the '742, '626, and '621 Patents ***regardless*** of the PTAs. Appx18-19, Appx67-68, Appx91-92 ('742, '626, and '621 Decisions, respectively). It based this argument on the Patent Office's conclusory statement that "regardless whether two relevant patents have different expirations," double patenting may apply. Appx4112 (Examiner's Answer in reexamination of the '742 Patent), Appx9233-9234 (Examiner's Answer in reexamination of the '626 Patent). But the Board never explained why this position applies in this case, where there is no gamesmanship and no risk of divided ownership.

## **SUMMARY OF ARGUMENT**

The judicially created doctrine of obviousness-type double patenting simply does not apply to Cellect's Challenged Patents, because they are related and would have expired on the same day but for receiving PTAs pursuant to 35 U.S.C. § 154(b). The Board legally erred by forcing application of double patenting based solely on the PTAs in and of themselves. In so doing, the Board treated PTAs pursuant to 35 U.S.C. § 154(b) differently from PTEs pursuant to 35 U.S.C. § 156 for purposes of double patenting, which is illogical and contrary to law and

Congressional intent. This Court has found that an extension does not transform a patent into a double patenting reference because the "judge-made doctrine" of double patenting cannot "cut off a statutorily-authorized time extension," and it should find the same with respect to adjustments because they are simply another form of "statutorily-authorized time extension." *Novartis*, 909 F.3d at 1375. The Board should have followed this Court's precedent.

Double patenting exists to prevent two equitable considerations, neither of which are present here: an unjust timewise extension of patent term through manipulative prosecution, and harassing litigation filed by multiple patent owners that split multiple patents for the same invention between them. MPEP § 804. Here, there is no allegation that Cellect engaged in gamesmanship or crafty prosecution to secure extra patent term. Indeed, Cellect received the statutorily mandated adjustments because of Patent Office delays during prosecution, through no fault of Cellect. Any alleged risk of claim splitting is entirely speculative, particularly given that Cellect's Chief Technology Officer affirmed that Cellect has always and will always keep the Challenged Patents. Appx1753 (Adair Decl.), ¶ 24. Thus, the Challenged Patents do not trigger either of the traditional concerns that might warrant application of double patenting.

No substantial new question of patentability exists in this case that could justify reexamination of Cellect's related patents. The same examiner evaluated

Cellect's Patents at Issue, all of which have the same inventors. He considered the applications in light of the other related patents, and did not issue a double patenting rejection because one was not warranted. In contrast, he ***did*** issue a double patenting rejection when warranted against another application in the same patent family. Appx3258-3262 (Office Action for the '255 Patent). The Board cannot create a substantial new question of patentability by second-guessing the examiner's judgment. Nor does the PTA, in and of itself, shed "new light" on patentability, because the original examiner of the Challenged Patents knew of the adjustments and how long they would be during prosecution. 37 C.F.R. § 1.705 (pre-2013-04-01) (requiring that Patent Office identify adjustments with the Notice of Allowance).

The Board's Decisions deploy an equitable doctrine to achieve an inequitable result—namely, to punish Cellect for its indisputably proper, statutorily granted term adjustment. Even if this Court permits this retroactive creation of double patenting references out of related patents, only the adjustment should be invalidated—not the patent.

The Board's only remaining invalidity allegations depend on double patenting in combination with alleged 35 U.S.C. § 103 references. Since double patenting is inappropriate here, these allegations also fail.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews *de novo* the Board's erroneous statutory interpretation causing patents with statutorily granted adjustments to be treated differently than patents with statutorily granted extensions for purposes of obviousness-type double patenting. 5 U.S.C. § 706 (the court reviewing an agency action "shall decide all relevant questions of law [and] interpret [] statutory provisions"); *see also In re Vivint, Inc.*, 14 F.4th 1342, 1348 (Fed. Cir. 2021) (subjecting the Board's inconsistent treatment of a similar issue appearing in two statutory frameworks to plenary review).

The Board's decision that a PTA based on Patent Office delays, without more, creates a substantial new question of patentability is also a question of law "review[ed] without deference." *In re Vivint*, 14 F.4th at 1348. "As with statutory obviousness under 35 U.S.C. § 103, obviousness-type double patenting is an issue of law premised on underlying factual inquiries." *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.,* 689 F.3d 1368, 1376 (Fed. Cir. 2012) (citation omitted). This Court "review[s] the Board's ultimate determination of obviousness de novo and the Board's underlying factual findings for substantial evidence." *In re Glatt Air Techniques, Inc.*, 630 F.3d 1026, 1029 (Fed. Cir. 2011) (finding that the Board

failed to make a proper prima facie case for obviousness because substantial evidence did not support the Board's findings) (citation omitted).

## II. THE BOARD LEGALLY ERRED IN TREATING PATENT TERM ADJUSTMENTS DIFFERENTLY THAN PATENT TERM EXTENSIONS FOR PURPOSES OF DOUBLE PATENTING

### A. Patent Term Restoration Based on Government Delays Should Be Treated the Same

The Board misinterpreted and ignored this Court's guidance in *Novartis* and *Merck* when it affirmed the use of the judge-made, non-statutory doctrine of double patenting to invalidate patents solely because the patent terms were extended under 35 U.S.C. § 154(b).  *Novartis*, 909 F.3d at 1372-75; *Merck & Co. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317, 1322 (Fed. Cir. 2007).  This Court has held that double patenting cannot "cut off a statutorily-authorized time extension." *Novartis*, 909 F.3d at 1375.  The Board ignored this guidance and distinguished PTA from PTE using a rationale that is both legally flawed and internally inconsistent.

The Board committed legal error in determining that it should treat PTA and PTE differently for purposes of double patenting.  Two statutory frameworks accomplish the goal of Congress to "restore the value of the patent term that a patent owner loses during the early years of the patent . . . ." *Novartis*, 909 F.3d at 1369; *see also* H.R. Rep. 106-287(I) (1999) at 49-50.  Congress intended both patent term extensions (35 U.S.C. § 156) and patent term adjustments (35 U.S.C. §

154(b)) to be statutory "technical term adjustment provisions" that restore patent term lost to different types of administrative delay.  *See* H.R. Rep. 106-287(I) (1999) at 51 ("coordinat[ing]" adjustments and extensions).  Given the parallels between the two types of patent term restoration, adjustments should be treated the same as extensions when government delays, as opposed to any activities of the patent applicant, is the basis for the adjustment.

The Congressional intent behind these doctrines emphasizes this very point.  As part of the Hatch-Waxman Act in 1984, patents covering subject matter that requires regulatory review, like pharmaceutical patents, "shall be extended" up to five years, upon patent owner's application and the satisfaction of various conditions.  *See* 35 U.S.C. §§ 156(c), 156(g)(6).  In 1999, Congress provided that a patent for any subject matter "shall be extended" one day for each day of delay in prosecution that is attributable solely to the Patent Office, through no fault of the patent owner.  35 U.S.C. § 154(b)(1)(A).

Each statute also identifies certain limitations on its applicability.  For example, a patent owner must choose only one patent for a § 156 extension if there are multiple patents involved in the same regulatory review period for a given product.  35 U.S.C. § 156(c)(4).  For § 154 adjustments, the length of the term adjustment cannot cause the patent's term to exceed the expiration date specified in a terminal disclaimer.  35 U.S.C. § 154(b)(2)(B).

The Board's inconsistent application of the statutory framework and how it applies to double patenting cannot be reconciled with the foregoing Congressional intent and this Court's precedent. Given the parallels, PTAs and PTEs should be treated consistently when applying the judicially created doctrine of double patenting. It cannot be, as the Board erroneously concluded, that adjustments—but not extensions—can transform a related patent into a double patenting reference. That, however, was precisely what the Board did here—it used related patents to invalidate Cellect's Challenged Patents. This creates a tension in the law that defies common sense. In refusing to follow this Court's reasoning in *Novartis*, which addressed PTEs, the Board attempts to make new law drawing an artificial distinction between PTE and PTA as they relate to double patenting.

In *Novartis*, this Court interpreted 35 U.S.C. § 156 and found that the plain meaning of the statute did not reflect additional limitations that defendant Ezra proposed were necessary to combat alleged double patenting violations. *Novartis*, 909 F.3d at 1372-73. The Court further held that a patent is not at risk of invalidation for double patenting just because "the term extension it received causes the [extended] patent to expire after [another] allegedly patentably indistinct [] patent." *Id.* at 1373. Here, consistent with *Novartis*, the plain meaning of § 154(b) should control and a patent should not be at risk of invalidation for double

patenting just because it received a term **adjustment** that causes it to expire after another allegedly patentably indistinct patent.

Moreover, as this Court has observed, the "judge-made doctrine" of double patenting should not "cut off a statutorily-authorized time extension," because the entire point of the doctrine was to "prevent extension of a patent beyond a '**statutory** time limit.'"[2]  *Novartis*, 909 F.3d at 1375 (emphasis added) (citation omitted).  Such a consideration applies equally to both types of term restoration because they are both statutory time limit modifications for patent term.  This Court's guidance in *Novartis* should apply here to avoid the inconsistencies that arise from the Board's contrary interpretation.[3]  Thus, the Board's legal error requires reversal.

---

[2] The Board claims this Court already decided PTAs could create double patenting issues, but this Court's observation that statutory restoration could affect expiration dates **predates** the *Novartis* decision on how to actually handle such patent term restorations.  *See* Appx15, Appx38, Appx64, Appx88-89 (all citing *Abbvie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust*, 764 F.3d 1366, 1373 (Fed. Cir. 2014)).  In fact, this Court distinguished *AbbVie* in *Novartis* because a patent term extension raised "no concern that [patent owner], once its [] patent issued, sought to subsequently 'secur[e] a second, later expiring patent for the same invention,' as in *AbbVie* . . . ."  909 F.3d at 1375 (quoting *Abbvie*, 764 F.3d at 1373).

[3] The Board wrongly claims that Cellect would apply different dates for purposes of determining terminal disclaimers than for double patenting, without citation.  Appx16, Appx38, Appx65, Appx89.  Cellect made no such argument.  In line with *Novartis*, the double patenting analysis should compare original expiration dates when the sole reason that expiration dates differ is a statutory restoration of patent term.  It is unclear to what contradictory positions the Board refers.

### B. The Plain Language of 35 U.S.C. § 154(b) Forecloses the Board's Claim that Patent Term Adjustments by Themselves Create Double Patenting Issues

The Board does not dispute that Cellect's Challenged Patents were entitled to and received properly calculated term adjustments based on Patent Office delay. As a "[g]uarantee of prompt patent and trademark office responses . . . if the issue of an original patent is delayed due to the failure of the [Patent Office]" to adhere to certain deadlines for timely prosecution, then "the term of the patent *shall* be extended 1 day for each day" of delay. *Compare* 35 U.S.C. § 154(b)(1)(A) *with* 35 U.S.C. § 156(c) ("[t]he term of a patent eligible for extension . . . *shall* be extended by the time equal to the regulatory review period for the approved product . . .") (all emphases added); *Novartis*, 909 F.3d at 1372 (acknowledging purpose of statutory frameworks). "Use of the word 'shall' in a statute generally denotes the imperative." *Merck*, 482 F.3d at 1322 (interpreting § 156) (citations omitted). Thus, the Patent Office granted Cellect the appropriate PTAs by statutory mandate.

But the Board heavily relied upon the following portion of § 154(b), which is the exception to the mandatory term adjustment:

> No patent the term of which has been disclaimed beyond a specified date may be adjusted under this section beyond the expiration date specified in the disclaimer.

35 U.S.C. § 154(b)(2)(B). This exception in the statute, however, addresses an existing terminal disclaimer made during the prosecution of a patent application.

The Board rewrites this portion of the statute to support its argument that the adjustment itself creates a double patenting issue, which is erroneous because the statute says nothing about double patenting.

The Board's statutory interpretation would effectively eviscerate § 154(b) as it would make adjustments unavailable to related patents, because such adjustments would also invalidate them. *See* Appx12-16, Appx35-38, Appx61-65, Appx86-89. The only way to guarantee that a patent owner avoids the unreasonable result visited on Cellect would be to file a preemptive terminal disclaimer with every continuation patent. Without such a disclaimer, any adjustment could create a double patenting issue amongst related patents where one never existed before. But with such a disclaimer, continuation patents could never receive an adjustment to offset Patent Office delays that diminished the patent owner's rightful term. 35 U.S.C. § 154(b)(2)(B) (patents with terminal disclaimers cannot receive an adjustment that recaptures disclaimed term). The Board's decision not only uses a judicially created doctrine to cut off a statutorily mandated time extension; it uses a judicially created doctrine to eliminate Congress' compensation to patent owners for administrative delays that interfere with the foundational *quid pro quo* of patent law. The fact that a comparable statutory provision for term extensions is treated entirely differently only compounds the legal error.

The Board's position is contrary to principles of statutory interpretation. The plain meaning of this limitation on a "patent the term of which has been disclaimed" is exactly as it sounds—a limitation on a patent with an existing disclaimer, not a "patent the term of which [may need to be] disclaimed [if adjustment is granted]." *See Novartis*, 909 F.3d at 1372 (citation omitted) ("[C]ourts 'ordinarily resist[] reading words into a statute that do not appear on its face.'"). Section 154(b)(2)(B) is unambiguous that it applies to ***existing*** disclaimers. Since none of the Challenged Patents has a terminal disclaimer, the exception is inapplicable on its face.

Nothing in the plain meaning of § 154(b)(2)(B) or the Congressional intent behind it demonstrates that Congress intended for the Patent Office to check if the adjustment would result in a patent needing a ***new*** terminal disclaimer based on the adjustment itself. Congress enacted §§ 156 and 154(b) to accomplish similar goals. *See Merck*, 482 F.3d at 1322 (affirming validity of extension and discussing Congressional intent). Nor does the contrast between the limitations on extensions and the limitations on adjustments somehow make § 154(b)(2)(B) applicable. The Board seeks to broaden § 154(b)(2)(B) to force its application here, but this is an improper attempt to inject extra-textual limitations into an unambiguous statute. When statutory conditions are met, the patent term "***shall*** be extended" to account for delay, provided that the adjustment does not seek to reclaim any patent term

that "has been disclaimed beyond a specified date."  *See* 35 U.S.C. § 154(b)
(emphasis added).

The surrounding statutory text supports Cellect's straightforward reading.
The most natural reading of a "specified date" and an "expiration date specified in
the disclaimer" is a date already specified in a disclaimer already made.  No
conditional language exists indicating that even for patents the term of which has
***not*** been disclaimed, such a patent should only receive adjustment after
considering if the adjustment itself could make a disclaimer applicable.[4]

The Board misconstrued the meaning of "terminal disclaimer" to shoehorn
this nonexistent conditional language into § 154(b)(2)(B).  It contended that "given
that terminal disclaimers arise ***almost*** exclusively to overcome obviousness-type
double patenting, Congress expressly addressing terminal disclaimers in § 154 ***is***
***tantamount to addressing*** obviousness-type double patenting."  Appx14, Appx37,
Appx63, Appx87 (Board's Decisions) (emphases added) (citations omitted).  The
Board thus concluded that rather than simply stating that a PTA cannot restore
already-disclaimed patent term, the statute ***also states*** that any adjusted patent

---

[4] The Board notes that the Director has discretion to "establish[] procedures for the
application for and determination of patent term adjustments," but declines to
consider "whether that discretion includes the [adjustment] issues here."  Appx16
n.6, Appx38-39 n.5, Appx65 n.6, Appx89 n.5 (Board's Decisions, citing 35 U.S.C.
§ 154(b)(3)(A)).  In other words, the Board ignored whether any established Patent
Office procedures obviate the Board's concerns or contradict its position.

should undergo a double patenting analysis against any related patents using the date of the adjustment—regardless of whether any double patenting issues existed before adjustment.

This interpretation is legal error for at least three reasons. First, the Board failed to identify any ambiguity justifying its reconstruction of the statute, because there is none. The most natural reading controls. *Merck*, 482 F.3d at 1322. Second, the Board recasts the words that Congress *actually* chose because, in the Board's view, they are "tantamount to" using different terminology requiring consideration of a judicially created test. It offered no support in the statutory text (or legislative history) that Congress intended to incorporate the judicial doctrine of double patenting into its statutory mandate or intended to create grounds for a *new* double patenting analysis.[5] Third, the Board notes that terminal disclaimers may sometimes arise independently of double patenting, but it apparently does not seek to read these circumstances into the statute—a choice that injects ambiguity into an otherwise clear statutory framework. The Board's selective redefinition of what is an existing disclaimer raises a red flag, signaling departure from the plain meaning of the statute.

---

[5] And even if this Court does read the statute in the manner the Board suggests, the attack should be on the validity of the adjustment—not the patent. *See infra*, Section V.

Cellect's straightforward textual reading of §§ 154(b) and 154(b)(2)(B) also
aligns with this Court's guidance in *Novartis*. In that case, this Court examined
one of the statutory limitations on the scope of patent term extensions under § 156.
*Novartis*, 909 F.3d at 1373. Section 156(c)(4) limits a patent owner's application
for extension to just one patent per covered product, stating that "in no event shall
more than one patent be extended . . . ." 35 U.S.C. § 156(c)(4). Defendant Ezra
claimed this Court should read § 156(c)(4) to ***also*** mean that no more than one
patent could be "effectively extended," arguing that a patent with a terminal
disclaimer should not be extended lest any patentably indistinct variants
"effectively" also receive extra term. *Novartis*, 909 F.3d at 1372-73. The Court
declined Ezra's invitation to broaden the scope of the limitation on extensions
beyond its plain meaning, noting in particular that Congress did not write
"effectively" in the statute. *Id*.

Similarly, here, this Court is evaluating one of the statutory limitations on
the scope of patent term adjustments. The Board seeks to expand the scope of the
statutory limitation on terminally disclaimed patents to also limit patents without
existing disclaimers, using the adjustment itself as the invalidating basis. As in
*Novartis* and *Merck*, this Court should reject these arguments because they do not
comply with basic principles of statutory interpretation. The Board's insistence
that this provision nonetheless applies to the Challenged Patents without terminal

disclaimers "ignores the word 'shall'" and fails to apply "the most natural reading of the statutory language." *See Merck*, 482 F.3d at 1322 (declining to read in a limitation on availability of an extension that lacked support in statutory text); *Novartis*, 909 F.3d at 1372-73 (declining to read extended in statutory limitation to also mean "effectively extended," which would broaden application of statutory limitation beyond plain meaning).

Cellect's non-terminally disclaimed patents are entitled to their periods of adjustment, and those adjustments have nothing to do with a double patenting analysis. Section 154(b)(2)(B) does not say otherwise.

### C. District Courts Have Applied this Court's Holding in *Novartis* to Patent Term Adjustments

Two District Courts have addressed how PTA intersects with double patenting in light of *Novartis* and determined that PTA must be treated the same way as PTE with respect to double patenting. In *Mitsubishi*, the Chief Judge of the District Court of New Jersey, applying *Novartis,* came to this conclusion. *Mitsubishi Tanabe Pharma Corp. v. Sandoz Inc.*, 533 F. Supp. 3d 170 (D.N.J. 2021). The District Court recognized that "[t]he Federal Circuit has not, however, had occasion to consider the instant situation: whether a later-filed, later-issued patent that expires before the earlier-filed, earlier-issued patent due to a statutorily allowed term extension under § 154(b), can act as an obviousness-type double patenting reference." *Id*. at 213. Then the *Mitsubishi* court evaluated the same key

facts present in this case—two patents in the same patent family would have expired on the same date but for the fact that one received a indisputably proper patent term adjustment pursuant to § 154(b). *Id.* at 213-14.

The District Court reviewed this Court's guidance on double patenting from *Gilead* through *Novartis* and determined that "the granting of a [patent term adjustment] does not present the potential for gamesmanship by inventors to secure a second, later-expiring patent for the same invention." *Id.* at 214; *see also Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1210, 1217 (Fed. Cir. 2014) (later-issued but earlier-expiring patent could be double patenting reference against unrelated patent). As the District Court emphasized, "[p]erhaps more importantly, however, the Court is swayed by the Federal Circuit's observation that 'a judge made doctrine' should not be used to 'cut off a statutorily-authorized time extension.'" *Mitsubishi*, 533 F. Supp. 3d at 214 (citing *Novartis,* 909 F.3d at 1375). The *Mitsubishi* court concluded, "[a]greeing with [defendant's] position would mean just that," (*i.e.*, cutting off a statutorily authorized time extension). *Mitsubishi*, 533 F. Supp. 3d at 214. Agreeing with the Board's position in this case would mean "just that" as well.

The Board attempted to distinguish the *Mitsubishi* decision, showing much disrespect to both the Court's analysis and an Article III judge. *See, e.g.*, Appx17, Appx40, Appx66-67, Appx90-91 (Board's Decisions, stating "[T]he court does not

appear to have understood that a terminal disclaimer is the standard way to cure

double patenting, . . .” and concluding that “it is not clear whether the district court

was even considering the right facts.”).  The Board gave “little weight” to the

*Mitsubishi* decision because of four stated reasons.

 ***First***, the Board cites to *Magna* as a case that “came out the opposite way

from *Mitsubishi.*”  Appx16, Appx39, Appx66, Appx90 (Board's Decisions, citing

*Magna Elecs., Inc. v. TRW Automotive Holdings Corp.*, Nos. 1:12-cv-654, 1:13-cv-

324, 2015 WL 11430786 (W.D. Mich. Dec. 10, 2015)).  What the Board fails to

appreciate is that *Magna* was decided prior to this Court's decision in *Novartis* and

thus could not apply its precedential analysis regarding statutory term extensions.

Additionally, the Board fails to recognize the distinct factual differences between

this case and *Magna*.  For example, *Magna* involved patents examined by ***different***

examiners during original prosecution, such that it was “not even clear that the

primary examiner was aware of the [other patent's] claims.”  *Magna*, 2015 WL

11430786, at *3.  The reasoning in *Magna* lacked this Court's guidance on other

types of term restoration and is not applicable here where one examiner was

involved in the prosecution of all the Patents at Issue and demonstrated he was

well-aware of Cellect's applications and patent family.

 ***Second***, the Board faults the District Court for failing to address the fact that

double patenting can apply “even to two patents that have the same filing date, the

same issue date, and the same expiration date" because it may be "needed to ensure that two patents remain commonly owned." Appx17, Appx39, Appx66, Appx90 (Board's Decisions, citing *Underwood v. Gerber*, 149 U.S. 224 (1893); *Sandy MacGregor Co. v. Vaco Grip Co.*, 2 F.2d 655, 657 (6th Cir. 1924)). While the Board later argues that such gamesmanship is not necessary to apply the doctrine of double patenting, it does not make sense to punitively apply an equitable doctrine designed to prevent gamesmanship where gamesmanship does not exist, as the *Mitsubishi* court reasoned. *Compare Mitsubishi*, 533 F. Supp. 3d at 214 *with*, *e.g.*, Appx20, Appx45-46, Appx69-70, Appx93-94 (Board's Decisions); *see also* H.R. Rep. 106-287(I) (1999) at 48-49 (any § 154(b) adjustment is offset by any days of applicant-caused delay, punishing only those that "purposely manipulate" system). Thus, the Board's criticism of the District Court's analysis regarding potential gamesmanship is a red herring because the District Court already determined there was none.

**Third**, the Board states that the District Court does not understand the law regarding terminal disclaimers, "thereby overlooking why the Federal Circuit decided a rule for terminal disclaimers (*Merck v. Hi-Tech*) should also apply to a double patenting analysis (*Novartis v. Ezra*) as a 'logical extension.'" Appx17, Appx40, Appx66-67, Appx90 (Board's Decisions, citing *Mitsubishi*, 533 F. Supp. 3d at 214 n.45). The Board repeatedly emphasizes this Court's observation that its

35

*Novartis* holding is a "logical extension" of its *Merck* holding and thus adjustments and extensions cannot be treated consistently, when in fact the "logical extension" argument supports application of the *Novartis* reasoning here. *See* Appx11, Appx14-15, Appx17 (Board's '742 Decision relying heavily on "logical extension" argument); Appx34, Appx37, Appx40 (same for the Board's '369 Decision); Appx60, Appx63-64, Appx66-67 (same for the Board's '626 Decision); Appx84-85, Appx88, Appx90 (same for the Board's '621 Decision).

In context, this Court wrote, "[w]e conclude, as a logical extension of our holding in [*Merck*], that obviousness-type double patenting does not invalidate a validly obtained [extension] in such a scenario," where the scenario is "the term extension it received causes the [] patent to expire after [an] allegedly patentably indistinct [] patent." 909 F.3d at 1373; *see also id.* at 1369 (the only other mention of "logical extension," in substantially the same sentence). The Board's heavy reliance appears misplaced, as it seems unlikely this Court was signaling anything about the substance of § 154 by observing that *Novartis* is logical in light of *Merck*. Nonetheless, it is perfectly logical that where a validly obtained statutory term restoration exists (*Merck*), it follows that such a restoration cannot, without more, become the basis for invalidation for double patenting (*Novartis*).

**Fourth**, the Board gave little weight to the *Mitsubishi* decision because it alleges "it is not clear whether the district court was even considering the right

facts." Appx17, Appx40, Appx67, Appx91.  A simple read of the decision, however, demonstrates that the Chief Judge of the District Court of New Jersey had extensive knowledge of the facts of the case and applied them to the precedent provided by this Court with respect to PTE and double patenting.  In the paragraph the Board criticizes, the District Court (1) explained that in **_its_** case, but for the PTA, the alleged reference and the challenged patent would expire at the same time (citing the factual record); (2) distinguished the _Gilead_ case involving unrelated patents expiring at different times; and (3) concluded that "[i]n **_that_** connection," _i.e._, to match the facts of _Gilead_ just discussed, the alleged reference patent "would have expired before" the challenged patent but for the PTA (citing this Court's precedent, not the factual record).  _Mitsubishi_, 533 F. Supp. 3d at 214 (emphasis added).  This Court should rebuke the Board's disregard of the _Mitsubishi_ decision based on specious claims that the District Court did not know the facts of its case.

Another judge in the District of New Jersey evaluated this term restoration issue in detail and came to the same conclusion as the Chief Judge in _Mitsubishi_. _Amgen_, 2021 WL 5366800, at *26-27.  The District Court relied on _Novartis_ to hold that both types of restoration should be treated the same: "[a] difference in expiration dates between two patents that arises solely from a statutorily authorized time extension, such as a patent-term adjustment pursuant to 35 U.S.C. § 154(b) or

a patent-term extension pursuant to 35 U.S.C. § 156, cannot be the basis for an application of [double patenting]." *Id.* at *26 (citing, *inter alia*, *Novartis*, 909 F.3d at 1372-75). The District Court further determined that "[e]ven if the '283 Patent were a proper [double patenting] reference for the '638 Patent, the Court would exercise its equitable discretion not to apply the doctrine of [double patenting] under the circumstances of this case because the difference in expiration dates between the '638 and '283 Patents is not the result of prosecution gamesmanship or any improper conduct by Celgene." *Amgen*, 2021 WL 5366800, at *27 (citing *Immunex Corp. v. Sandoz, Inc.*, 964 F.3d 1049, 1059 (Fed. Cir. 2020) (noting that double patenting is an "equitable doctrine"); *Novartis Pharm. Corp. v. Breckenridge Pharm., Inc.*, 909 F.3d 1355, 1364 (Fed. Cir. 2018) (declining to apply double patenting when "happenstance of an intervening change in patent term law" caused difference in expiration dates, rather than "prosecution gamesmanship"); *Gilead*, 753 F.3d at 1210 (double patenting applies when patent owner structured priority claims to achieve extra term)) (further citation omitted). As in *Amgen*, the Patent Office has made no claims of gamesmanship against Cellect in this case.

In both instances post-*Novartis* where District Courts determined the applicability of double patenting in view of a PTA, they followed this Court's guidance and determined that § 154(b) should be treated the same as § 156 with

38

respect to double patenting. Consistent treatment of these two statutory
frameworks is the most logical and legally correct statutory interpretation—the
Board got it wrong, and the two District Courts got it right.

### D.    The Board's Differential Treatment of Extensions and Adjustments Is Illogical and Unworkable

That § 156 and § 154 each have their own limitations on when to issue
mandatory time extensions does not justify the Board's proposed disparate
treatment for purposes of double patenting. The Board baselessly assumes that
because the statutes treat terminally disclaimed patents differently, as described
*supra* Section II(A)-(B), this case involving a post-prosecution double patenting
objection against patents with adjustments (but without terminal disclaimers) must
somehow come out opposite to this Court's treatment of the same objection to
patents with extensions (and with terminal disclaimers). *See, e.g.*, Appx13-14,
Appx36-37, Appx62-63, Appx86-87 (Board's Decisions, concluding "the rule" in
*Merck* and *Novartis* "does not apply to a[n] [adjustment] because those decisions
were premised on the contrast between [adjustments] and [extensions]").

Such an assumption is legal error. First, it is contrary to the plain language
of § 154(b), as explained *supra*, Section II(A)-(B). The Board identified no reason
to interpret a statutory provision about terminal disclaimers as a Congressional
proxy for how and when to conduct a double patenting analysis. Second, it is
contrary to Congressional intent. Congress describes both statutes as "technical

term adjustment provisions" and intentionally "coordinated" the two to clarify that any extension "shall include" any adjustment.  H.R. Rep. 106-287(I) (1999) at 51; 35 U.S.C. § 156(a).  Third, the Board's interpretation causes conflict with § 156(a), highlighting its lack of foundation in any statutory text or Congressional intent.

In practice, the Patent Office could not apply the Board's proposed distinction between extensions and adjustments without creating inconsistencies. For example, when a patent has both an extension and adjustment, using the "final" adjusted and extended expiration date erases the distinction the Board seeks to draw here by treating the extension and adjustment in the same manner for purposes of double patenting.  Further, that approach violates the principle set forth in *Novartis* because it uses the extension as a basis for double patenting.  But basing the expiration date solely on either the extension or the adjustment artificially ignores the existence of the other type of time extension.

As explained in detail *infra*, Section III, patent term restoration provisions like adjustments and extensions do not trigger the concerns that the judiciary created the double patenting doctrine to address—namely, unjust timewise extensions and litigation harassment.  Use of an artificial expiration date for purposes of double patenting also does not serve these goals, because it does not reflect a patent term that the patent owner will actually receive.  There is no way to

consider the justice of a time extension that does not reflect the actual amount of time received.

In contrast, if both statutes are treated consistently like the "technical term adjustment provisions" that they are, which do not of themselves create double patenting issues, then the composition of a term restoration is irrelevant. *See* H.R. Rep. 106-287(I) (1999) at 51; *cf. Amgen*, 2021 WL 5366800, at *26-27 (when following *Novartis*, it was irrelevant that the alleged reference patent had both an extension and adjustment). The original expiration date of the patent would control for purposes of double patenting.

## III. THE EQUITABLE CONCERNS UNDERPINNING THE DOUBLE PATENTING DOCTRINE DO NOT EXIST IN THIS CASE

The Patents at Issue—which are all related—do not implicate the concerns that the judiciary sought to mitigate when it created the doctrine of double patenting. MPEP § 804 notes:

> Where the claims of an application are not the 'same' as those of a first patent, but the grant of a patent with the claims in the application ***would unjustly extend the rights*** granted by the first patent, a double patenting rejection under nonstatutory grounds is proper. . . . A rejection based on nonstatutory double patenting is based on a judicially created doctrine grounded in public policy so as to prevent the unjustified or improper timewise extension of the right to exclude granted by a patent. . . . A double patenting rejection also serves public policy interests by preventing the possibility of multiple suits against an accused infringer by different assignees of patents claiming patentably indistinct variations of the same invention.

MPEP § 804 (emphasis added) (citations omitted). A double patenting rejection is thus proper where the patent rights would ***unjustly*** extend the rights of a first patent. This unjust extension would occur under one of the two underlying policy grounds—improper timewise extension or harassment by multiple assignees— neither of which is present here.

When Congress created the PTA, they referred to it as a tool to "guarantee" the patent term to which a patent owner is entitled. H.R. Rep. 106-287(I) (1999) at 48-49. They intended to "compensate patent applicants for certain reductions in patent term that are not the fault of the applicant," particularly because previously "no adjustments were provided for administrative delays caused by the PTO that were beyond the control of the applicant." *Id.* Congress observed:

> [N]o patent applicant diligently seeking to obtain a patent will receive a term of less than the [statutory number of] years . . . ***Only*** those who ***purposely manipulate*** the system to delay the issuance of their patents will be penalized under [this title], a result that the Committee believes entirely appropriate.

*Id.* at 49 (emphasis added). The Board has not and cannot point to any evidence that Cellect has "purposely manipulate[d] the system to delay the issuance" of the Challenged Patents and improperly extend their term. To penalize a "diligent" applicant using the very provision intended to "guarantee" patents their proper term is inequitable and contrary to Congressional intent.

Here, Cellect did not devise a pattern of patent filings that would have required a terminal disclaimer. *See Novartis*, 909 F.3d at 1374 (distinguishing *Gilead* because that case involved "potential gamesmanship [] through structuring of priority claims"); *see also Gilead*, 753 F.3d at 1210 (patents covering same invention were ***unrelated***). Cellect's patents are all ***related***. Because of their relationship, they all originally expired on the same date. Thus, under their pre-adjustment shared expiration date, not only were they "valid under all other provisions of law" (*Novartis*, 909 F.3d at 1374), but they also showed no sign of the gamesmanship that double patenting prevents. There is nothing untoward in permitting Cellect the benefit of the adjustment.

This Court has emphasized the importance of the specific facts of a case when the mere operation of a statutory change in patent term is alleged to create double patenting issues, and thus this Court should weigh heavily the relationship amongst Cellect's patents. *See, e.g.*, *Novartis*, 909 F.3d at 1375 ("[b]ut for" the § 156 extension, challenged patent would have expired before the alleged reference, so there was "no concern" that patent owner sought a "second, later-expiring patent for the same invention"); *Breckenridge*, 909 F.3d at 1367 (but for intervening change in law governing length of patent term, challenged patent would have expired before alleged reference, so use as a reference was improper); *Amgen*, 2021 WL 5366800, at *27 (even if adjustments should create basis for

43

double patenting, lack of gamesmanship indicates inappropriateness of applying double patenting doctrine). Here, the Patents at Issue are *all* related with the same shared priority claim and the same expiration date, but for the term adjustments.

The Board relies on a case from 1893, *Underwood v. Gerber*, to support its argument that a patent expiring on the same day as another patent may nonetheless invalidate it. Appx17-18, Appx39, Appx66, Appx68, Appx90. In that case, the patent owner applied for two indistinct patents on the same day and asserted only one of the two in an infringement litigation, reserving the other. *Underwood*, 149 U.S. at 224, 227. The defendant raised the reserved patent as prior art which the Supreme Court confirmed rendered the first obvious. *Id.* at 227-31. This extreme fact pattern is far afield from Cellect's valid continuation practice protecting the various aspects of its inventions, with an examiner that considered other related applications. Further, Cellect has never and will never split its patents amongst multiple owners, nor has it. Appx1753 (Adair Decl.), ¶ 24. Thus, the risk of claim splitting or harassment by multiple litigants is entirely speculative.

This Court should not endorse the Board's use of double patenting to summarily invalidate related patents with shared expiration dates, based on a "risk" of divided ownership of *related* patents that is nonexistent in this case and improbable in other cases. The Board's position would abrogate § 154(b) as patent owners file unwarranted terminal disclaimers as a hedge against their continuations

receiving adjustments that would invalidate other family members.  Once

terminally disclaimed, the patent owner receives no recompense for government

delay that eats into the owner's statutorily granted patent term.  *See* 35 U.S.C.

§ 154(b)(2)(B).  Such a result is inequitable and does not achieve the goals of

Congress *or* double patenting.

## IV.  THERE IS NO SUBSTANTIAL NEW QUESTION OF PATENTABILITY HERE BECAUSE THE EXAMINER CONSIDERED DOUBLE PATENTING DURING PROSECUTION AND KNEW OF THE ADJUSTMENTS

The Board fundamentally erred in finding a substantial new question of

patentability exists in this case, because (1) the same Examiner examined all of the

Challenged Patents and the alleged double patenting reference, the '036 Patent,

determined that double patenting did not apply; and (2) Examiner Rao knew of the

PTAs and their length from the Notices of Allowance under the ***then-current***

statutory scheme, such that the Board was simply wrong that the information was

unavailable until issuance.[6]  *See generally* Appx21-22, Appx46, Appx70-71,

Appx94-95.  Examiner Rao did, in fact, have the PTAs before him during

prosecution, because they were included with the Notices of Allowance.  The

---

[6] Only for the '742 Patent, the Board claimed that the PTA constituted a new question of patentability and that Examiner Rao did not consider double patenting. Appx21-22.  In the '369, '626, and '621 Patent Decisions, the Board only claimed that Examiner Rao did not consider double patenting.  Appx46, Appx70-71, Appx94-95.  As demonstrated below, both assertions of the Board are incorrect.

version of 37 C.F.R. § 1.705 that was in force during prosecution of the

Challenged Patents required that notices of allowance identify the PTAs. Appx516,

Appx1000, Appx6853, Appx9717 (adjustment decisions with Notices of

Allowance for the Challenged Patents). Thus, the Board's claim that "at the time

of a notice of allowance, an examiner does not necessarily know whether the

resulting patent will receive any PTA or if so how much" is simply wrong.

Appx22.

Examiner Rao's knowledge of the Patents at Issue and the actions he took

during prosecution to evaluate patentability demonstrates that he considered

potential double patenting issues. First, the Challenged Patents and the '036 Patent

belong to the same patent family, have the same inventors, and have the same

assignee. Appx132, Appx163, Appx189, Appx216, Appx6387. Second, the same

examiner, Examiner Rao, prosecuted all the relevant applications during the same

timeframe. *Id.* Third, he was not shy about issuing a double patenting rejection

when warranted. He, in fact, issued one during prosecution of the related '255

Patent Application, which is the parent to the '369 and '626 Patents and

grandparent to the '742 and '621 Patents. Appx3259-3262 (Office Action based

on double patenting for '255 Patent).

Fourth, Examiner Rao conducted interference searches that would have

identified any same or similar claims in conflict with the claims of the applications

of the Challenged Patents. *See, e.g.*, Appx524-525 (interference search notes from the '742 Patent file history); Appx1017 (interference search notes from the '369 Patent file history); Appx6880 (interference search notes from the '626 Patent file history); Appx9724 (interference search notes from the '621 Patent file history). Mr. Spar, an expert on Patent Office examination practices and procedures, considered these searches and the other indicia of Examiner Rao's diligence during prosecution demonstrate that the examiner did in fact consider double patenting, and found nothing of concern. Appx2441-2443, Appx8110-8113, Appx10912-10915. The Board simply never addressed this evidence.

The fact that Examiner Rao examined the applications in parallel highlights that he was keenly aware of and considered the reference patents. During the prosecution of the '742 and '621 Patent Applications, Examiner Rao explicitly considered each application's respective parent, the '369 and '626 Patents. *See, e.g.*, Appx524, Appx9721, Appx9724. He initialed next to the parent of the '621 Patent on an IDS, confirming he expressly considered it. Appx9721 (initialed IDS from the '621 Patent file history, listing the parent '626 Patent); MPEP § 609 (examiner initials indicate information was considered). He identified the parent applications of the '742 Patent and '621 Patent as search terms in the descriptions of his search strategies for each prosecution, again confirming he considered those parent applications. Appx524 (search terms from the '742 Patent file history,

47

identifying the parent '369 Patent by its application number), Appx9724 (search terms from the '621 Patent file history, identifying the parent '626 Patent by its application number). Indeed, the parent-child relationship **required** Examiner Rao to consider the child applications in light of the parent patents—and he annotated the files properly to show that he did. *See* MPEP § 609.02 ("The examiner will consider information which has been considered by the Office in a parent application . . . ."). Yet here, the Patent Office uses the parent '369 and '626 Patents to invalidate their children, the '742 and '621 Patents, even though the Examiner determined they did not impact validity.

Additionally, there is ample undisputed evidence in the relevant prosecution histories of the Challenged Patents that Examiner Rao was well-aware of the other patents in the family and their interrelatedness because he considered various other related patents during prosecution—not just the parent applications. *See, e.g.*, Appx9721 (initialed IDS from the '621 Patent file history, listing the '626 and '036 Patents); Appx531 (initialed IDS from the '742 Patent file history, listing the '626 and '036 Patents); Appx9724 (search terms from the '621 Patent file history, identifying the '626 and '742 Patents by their application numbers); Appx524 (search terms from the '742 Patent file history, identifying the '369 and '621 Patents by their application numbers).

He also considered related patents earlier in the priority chain during the prosecution of the '742, '369, and '621 Patents. *See, e.g.*, Appx520 (initialed IDS from the '742 Patent file history, listing the '901 Patent); Appx9731-9732 (initialed IDS from the '621 Patent file history, listing the '901 Patent); Appx9724 (search terms from the '621 Patent file history, identifying the '839 Patent by its application number); Appx992 (initialed IDS from the '369 Patent file history, listing the '901 Patent).

Further, Examiner Rao considered the applicability of some of the same alleged prior art across multiple prosecutions of Cellect's related patents. *See, e.g.*, Appx437-440, Appx947-953, Appx6785-6788, Appx9664-9667 (Office Actions asserting Jacobsen *et al.* as a prior art reference in the '742, '369, '626, and '621 Patents' file histories). His search strategy for the '742 and '621 Patents also included an inventor name search, which would have returned the Challenged Patents' parent patents as references given their shared inventors, as well as other Cellect patent applications. Appx524 (search terms from the '742 Patent file history), Appx9724 (search terms from the '621 Patent file history). There is no question that the examiner was well-aware of Cellect's patent family.

There is no substantial new question of patentability where "the same question of patentability has already been . . . decided in an earlier concluded examination or review of the patent by the Office." MPEP § 2242 ("earlier

concluded examination" includes "the original examination of the application which matured into the patent"). The Board's Decisions ignore the evidence that Examiner Rao considered any double patenting issue with respect to the Patents at Issue here, and instead boil down to questioning Examiner Rao's judgment. *See* Appx21, Appx46, Appx71, Appx95. Merely questioning judgment is insufficient to raise a substantial new question. *See* 35 U.S.C. § 303(a) (requiring "substantial new question"); MPEP § 2242; *see also* H.R. Rep. No. 107-120 (2001) at 3 (Congress intended to limit substantial new questions under § 303(a) so that "[t]he issue raised must be more than just questioning the judgment of the examiner").

Further, the Board erred in its Decision for the '742 Patent by applying the wrong version of 37 C.F.R. § 1.705, which explains when a PTA will be communicated to a patent owner. *Compare* 37 C.F.R. § 1.705 (pre-2013-04-01) ("[t]he notice of **allowance** will include . . . any patent term adjustment") *with* 37 C.F.R. § 1.705 (current) ("[t]he **patent** will include . . . any patent term adjustment") (emphases added). The Board relied on the current version of 37 C.F.R. § 1.705, as explained in the current MPEP § 2733, to conclude that Examiner Rao did not know about the existence or length of the term adjustments during prosecution because "a patent term adjustment calculation is performed after the notice of allowance" and is "indicated on the patent." Appx21-22 (quoting MPEP § 2733, which explains requirements of 37 C.F.R. § 1.705).

To the contrary, Examiner Rao did know about the adjustment during prosecution. For patents issued prior to January 14, 2013, which includes the '742 Patent (as well as the other Challenged Patents), the Patent Office provided an adjustment determination with the written notice of allowance. 37 C.F.R. § 1.705; *see also* MPEP § 2733 (discussing revisions to 37 C.F.R. § 1.705). Patents issuing after January 14, 2013, receive an adjustment determination upon issuance, which did not apply to the Challenged Patents. Thus, the Board erroneously cast Cellect's term adjustments as providing "new light" on patentability for the '742 Patent. Appx516, Appx1000, Appx6853, Appx9717 (adjustment determinations in Notices of Allowance for the '742, '369, '626, and '621 Patents). The patents in Cellect's patent family all issued between 2002 and 2006, well before the change. Appx132, Appx163, Appx189, Appx216. Since Examiner Rao knew of the term adjustments and their length during prosecution of the Challenged Patents, the Board's cursory conclusion that the adjustments in this case cast "new light" indicating a substantial new question is wrong.

The Board's arguments on substantial new question highlight the arbitrariness of the precedent it seeks to establish. In the Board's view, a substantial new question arises when challenged Patent A receives a longer term adjustment than Patent B, which receives only a short adjustment. The Board claims the adjustment creates a substantial new question if that adjustment causes

challenged Patent A to expire later than Patent B, even though challenged Patent A

would otherwise have expired before Patent B (making Patent B unavailable as a

reference). *See, e.g.*, Appx22 ('742 Decision). But under this scheme, if Patent A

received just a little less adjustment—even a matter of one day less—Patent B

would remain later-expiring and inappropriate as a reference. This shifting sands

approach, in which the issuance of each related patent could affect even already-

issued patents solely due to an adjustment, sows confusion and uncertainty in

continuation practice. Such an arbitrary result cannot have been the Congressional

intent for term adjustments nor the judicial intent for addressing double patenting

concerns.

Thus, the Board improperly concluded that Examiner Rao did not consider

double patenting and did not know about the adjustments during prosecution,

compelling reversal.

## V. EVEN IF THIS COURT PERMITS TERM ADJUSTMENTS TO RETROACTIVELY CREATE DOUBLE PATENTING ISSUES, ONLY THE ADJUSTMENT SHOULD BE CONSIDERED FOR INVALIDATION

If the judicially created doctrine of double patenting is expanded to include

patents whose expiration dates differ solely because of congressionally mandated

term adjustments, this Court should at least draw the line to avoid invalidating an

entire patent for circumstances outside a patent owner's control. Patent owners

facing double patenting objections after issuance should have the opportunity to

decline the adjustment so they can avoid invalidation of an otherwise valid patent.
Indeed, this Court appeared to signal in *Novartis* that any double patenting concern
would affect the validity of the ***extension***, not the patent, contrary to the Board's
position in this case. *See* 909 F.3d at 1369 ("double patenting does not invalidate
an otherwise validly obtained PTE").

The facts of this case highlight why invalidation of the entire patent is unjust
and illogical. Cellect's patents share a priority claim and would have expired on
the same date, but for Patent Office delays affecting four of the applications
ranging from 45 to 759 days. The Board concedes that, at least as to the '369
Patent, there can be no double patenting allegation absent staggered expiration
dates. *Compare* Appx26-49 ('369 Decision) *generally with* Appx18 ('742
Decision) (the '369 Decision is silent whereas the '742 Decision erroneously
alleged double patenting was proper notwithstanding the adjusted expiration dates).
Cellect and other patent owners would sooner forego the adjustment and accept the
loss of term due to administrative delay, than watch a validly obtained patent—the
result of significant investment—turn to ashes in their hands, struck by the
lightning of an unfortunate term adjustment. Allowing the patent owner to forego
the adjustment is still an inequitable result and inconsistent with Congressional
intent, but it is at least less inequitable than the Board's drastic approach.

## VI.   THE BOARD'S REMAINING INVALIDITY ALLEGATIONS DEPEND ON DOUBLE PATENTING AND THUS COLLAPSE

Because the Board's remaining grounds for invalidity depended on a combination of alleged double patenting with 35 U.S.C. § 103 references, there again can be no finding of invalidity for the same reasons explained above. Specifically, the Board applied the Harris, Tran, and Nguyen references in combination with the alleged double patenting against the '742 Patent, '369 Patent, and '626 Patent, respectively, and summarily concluded obviousness.  Appx24, Appx49, Appx73 (Board's Decisions).  The Board offered no explanation as to how the additional § 103 references render a Challenged Patent obvious in combination with a double patenting reference, much less how they could invalidate by themselves.  Since these patents are not obvious due to alleged double patenting, however, the unexplained addition of a § 103 reference cannot shore up the Board's deficient analysis.  Thus, the Board's additional invalidity grounds must fail because the '742 Patent, '369 Patent, and '626 Patent are not subject to the double patenting doctrine and nothing in the record supports that the alleged § 103 references alone invalidate.

## <u>CONCLUSION</u>

The judgment should be reversed because double patenting does not apply to the Challenged Patents.

Respectfully submitted,

Dated: May 16, 2022                    By:  */s/ Paul J. Andre*
                                       Paul J. Andre
                                       Lisa Kobialka
                                       James R. Hannah
                                       KRAMER LEVIN NAFTALIS
                                       & FRANKEL LLP
                                       990 Marsh Road
                                       Menlo Park, CA 94025
                                       Tel: (650) 752-1700
                                       Fax: (650) 752-1800
                                       pandre@kramerlevin.com
                                       lkobialka@kramerlevin.com
                                       jhannah@kramerlevin.com

                                       Jonathan Caplan
                                       Jeffrey Price
                                       KRAMER LEVIN NAFTALIS
                                       & FRANKEL LLP
                                       1177 Avenue of the Americas
                                       New York, New York 10036
                                       Tel: (212) 715-9100
                                       Fax: (212) 715-8000
                                       jcaplan@kramerlevin.com
                                       jprice@kramelevin.com

                                       *Attorneys for Appellant*
                                       Cellect, LLC

# EXHIBIT 10

## UNITED STATES INTERNATIONAL TRADE COMMISSION

### Washington, D.C.

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN VIDEO PROCESSING DEVICES AND PRODUCTS CONTAINING SAME** | **Inv. No. 337-TA-1323** |

**ORDER NO. 47:**  **INITIAL DETERMINATION GRANTING RESPONDENTS' MOTION FOR SUMMARY DETERMINATION OF INVALIDITY BASED ON OBVIOUSNESS-TYPE DOUBLE PATENTING**

(May 1, 2023)

On March 22, 2023, and pursuant to Order No. 42, respondents ASUSTeK Computer Inc. and ASUS Computer International ("ASUS") moved (1323-031), with a supporting memorandum ("Mot. Mem."), for summary determination of invalidity based on obviousness-type double patenting for claim 1 of U.S. Patent No. 7,769,238 ("the 238 patent") and claims 1-4 of U.S. Patent No. 8,139,878 ("the 878 patent").  On April 3, 2023, complainant VideoLabs, Inc. ("VideoLabs") opposed ("Opp'n").  Also on April 3, 2023, the Commission Investigative Staff ("Staff") filed a statement of opposition ("Staff Resp.").  Oral argument on the motion was held on April 25, 2023.

For the reasons detailed below, the motion is granted.

## I.     FACTUAL BACKGROUND

The following facts are uncontested between the parties.  The asserted 238 and 878 patents exist within a family beginning with Japanese Application No. 2002-112665 ("the JP665 application"), as indicated in the image below:



Mot. Mem. at 4.  All of the patents concern video coding and decoding techniques and are presently owned either by non-party Gogo Kaisha IP Bridge or VideoLabs.  *See id.* at 5; Mot., Ex. Q (Orchard Report) at 3 (figure).

The 238 and 878 patents were filed as continuations of the application which became U.S. Patent No. 7,306,143, which is itself a divisional of U.S. Patent No. 7,095,896 ("the 896 patent").  Additional divisional applications stemming from the 896 patent include U.S. Patent Nos. 7,305,134 ("the 134 patent") and 7,308,144 ("the 144 patent"), as shown.  The asserted 238 patent itself serves as a parent to a chain of continuity ending with U.S. Patent No. 8,867,855 ("the 855 patent").  Accordingly, all of these patents share a common specification.  Opp'n at 19.

Because of the claims of priority made by and between the original 896 patent, the 144 patent, the 134 patent, the asserted 878 patent, the asserted 238 patent, and the 855 patent, each of these patents would ordinarily have expired on the same date of March 27, 2023.  *See* Opp'n at 2, 7-8.  However, certain Patent Term Adjustments ("PTA") pursuant to 35 U.S.C. § 154 were issued

by the USPTO during prosecution of the 896 patent, asserted 238 patent, and asserted 878 patent, extending their expirations as shown below:

| Patent | | Patent Term Adjustment | Expiration Date[4] |
|---|---|---|---|
| Reference Patents | 7,095,896 | 106 days | July 11, 2023 |
| | 7,305,134 | 0 days | March 27, 2023 |
| | 7,308,144 | 0 days | March 27, 2023 |
| | 8,867,855 | 0 days | March 27, 2023 |
| Asserted Patents | 7,769,238 | 508 days | August 16, 2024 |
| | 8,139,878 | 1165 days | June 4, 2026 |

Mot. Mem. at 6 (footnote omitted); Opp'n at 8.  One noteworthy result from these PTAs is that the 855 patent now expires before the asserted 238 and 878 patents, even though it was filed, not only after those patents were filed, but after those patents issued.  Also important to note is that no terminal disclaimers were filed in connection with the 238 and 878 patents, which ordinarily link expiration dates and require continued common ownership between related applications and/or patents.  Opp'n at 6; Manual for Patent Examining Procedure § 804.02 (Feb. 2023).

## II.   STANDARDS OF LAW

### A.   Summary Determination

Commission Rule 210.18 provides that "[a]ny party may move with any necessary supporting affidavits for a summary determination in its favor upon all or any part of the issues to be determined in the investigation" and that determination "shall be rendered if pleadings and any depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary determination as a matter of law." 19 C.F.R. § 210.18(a), (b). The Commission has analogized summary determination to summary judgment, in which "'the evidence' of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Certain*

3

*Carburetors and Products Containing Such Carburetors*, Inv. No. 337-TA-1123, Comm'n Op. at 5–6 (Oct. 28, 2019) ("*Carburetors*") (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1377 (Fed. Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).  When the moving party bears the burden of proof on a particular issue, the moving party must show that there is no genuine issue of material fact as to every element.  *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed. Cir. 1992).  When the nonmoving party bears the burden of proof on a particular issue, the moving party must show that the nonmoving party failed to produce evidence on an essential element of its claim or defense.  *See Eli Lilly and Co. v. Barr Labs.*, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001).  A party moving for summary determination must identify the legal basis of its motion, and must point to those portions of the record that show the lack of a genuine issue of material fact.  *Carburetors*, Inv. No. 337-TA-1123, Comm'n Op. at 6 (citing *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986))).

### B.    Obviousness-Type Double Patenting

According to the Federal Circuit:

> Obviousness-type double patenting is a judicially-created doctrine designed to "prevent claims in separate applications or patents that do not recite the 'same' invention, but nonetheless claim inventions so alike that granting both exclusive rights would effectively extend the life of patent protection." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1373 (Fed. Cir. 2005) (citation omitted). It prohibits the issuance of claims in a second patent that are "not patentably distinct from the claims of the first patent." *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985) (citations omitted). A later patent claim "is not patentably distinct from an earlier claim if the later claim is obvious over, or anticipated by, the earlier claim." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001) (citations omitted).

> There are two justifications for obviousness-type double patenting. The first is "to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about." *Van Ornum*, 686 F.2d at 943–44 (quotation and citation omitted). The second rationale is to prevent multiple infringement suits by different assignees asserting essentially the same patented invention. *Fallaux*, 564 F.3d at 1319 (recognizing that "harassment by multiple

assignees" provides "a second justification for obviousness-type double patenting"); *see also* Chisum on Patents § 9.04[2][b][ii] ("The possibility of multiple suits against an infringer by assignees of related patents has long been recognized as one of the concerns behind the doctrine of double patenting.").

*In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013); s*ee Gilead Sciences, Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1212-14 (Fed. Cir. 2014). The analysis involves two steps:

> "First, the court 'construes the claim[s] in the earlier patent and the claim[s] in the later patent and determines the differences.' Second, the court 'determines whether those differences render the claims patentably distinct.'" *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1385 (Fed. Cir. 2010) (alteration in original) (quoting *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 518 F.3d 1353, 1363 (Fed. Cir. 2008)). "'A later claim that is not patentably distinct from,' *i.e.*, 'is obvious over[ ] or anticipated by,' an earlier claim is invalid for obviousness-type double patenting." *Id.* at 1385 (alteration in original) (quoting *Eli Lilly*, 251 F.3d at 968).

*Abbvie Inc. v. Mathilda and Terence Kenney Institute of Rheumatology Trust*, 764 F.3d 1366, 1374 (Fed. Cir. 2014). Such analysis does not mandate express consideration of the factors outlined in *Graham v. John Deere Co*., 383 U.S. 1 (1966). *See In re Basell Poliolefine Italia S.P.A*., 547 F.3d 1371, 1379 (Fed. Cir. 2008). This is because the analysis requires claim-to-claim comparison, rather than claim-to-disclosure comparison. *See In re Braat*, 937 F.2d 589, 592-93 (Fed. Cir. 1991).

## III.   ANALYSIS

ASUS' motion contends claim 1 of the 238 patent and claims 1-4 of the 878 patent are invalid for obviousness-type double patenting as against the 896 patent, 134 patent, 144 patent, and/or 855 patent in view of other certain prior art. Mot. Mem. at 4. The parties dispute both whether the claims of the two asserted patents are "patentably distinct" from the claims of the earlier-expiring patents, and whether earlier-expiring patents can be used as double patenting references in the first place when that early expiration is due to a PTA. As discussed below, both questions are properly answered in the affirmative.

**A.      The Claims Are Not Patentably Distinct**

        **1.      238 Patent, Claim 1**

For the 238 patent, ASUS argues, through its expert Dr. Orchard, that "Claim 1 of the '238 Patent is Obvious Based on Claim 1 of the '855 Child and/or Claim 2 of the '896 Parent in View of H.324 and H.26L."  Mot., Ex. Q (Orchard Report) at 6; *see id.* at ¶¶ 21-73.  ASUS readily acknowledges that the asserted and reference claims do not have identical scope, and provides the following tables to illustrate the differences:

| '238 Patent, Claim 1 | '855 Child, Claim 1 |
|---|---|
| 1.  A receiving apparatus which receives multiplexed data which is obtained by multiplexing coded audio data and coded picture data, said receiving apparatus comprising: a demultiplexing unit configured to separate the multiplexed data into the coded audio data and the coded picture data; an audio processing unit configured to decode the separated coded audio data; and a picture decoding unit configured to decode the separated coded picture data, wherein said picture decoding unit includes a block decoding unit configured to decode coded block data included in the coded picture data, the coded block data being obtained by dividing a picture signal into plural blocks, generating a residual block image from a block image of the respective blocks and a predictive block image obtained by intra-picture prediction or inter-picture prediction, and coding, on a block basis, coefficients obtained by performing orthogonal transformation and quantization on the residual block image, said block decoding unit includes: a coefficient number decoding unit configured to decode the coded block data to obtain the number of non-zero coefficients which are coefficients included in a current block to be decoded and having a value other than "0"; a unit configured to obtain coefficients corresponding to a residual block image of the current block by decoding the coded block data; a unit configured to obtain the residual block image of the current block by performing inverse quantization and inverse orthogonal transformation on the coefficients corresponding to the residual block image of the current block; and a reproducing unit configured to reproduce a block image of the current block, from the obtained residual block image and a predictive block image obtained by intra picture prediction or inter-picture prediction, said coefficient number decoding unit includes: a determining unit configured to determine a predictive value for the number of non-zero coefficients included in the current block based on the number of non-zero coefficients included in a decoded block located on a periphery of the current block; a selecting unit configured to select a variable length code table based on the determined predictive value; and a variable length decoding unit configured to perform variable length decoding on a coded stream which is generated by coding the number of the non-zero coefficients included in the current block, by using the selected variable length code table. | 1. A method for managing content in a communication system, the method comprising: receiving at a server coded content from a first terminal apparatus, the coded content being coded by a picture coding method which codes a picture on a block basis; storing at the server the coded content; receiving at the server from a second terminal apparatus, a request for providing the stored coded content to the second terminal apparatus; providing from the server to the second terminal apparatus the stored coded content; and decoding the provided coded content at the second terminal apparatus, the provided coded content being decoded by a picture decoding method which decodes a coded picture on a block basis; wherein the picture coding method comprises: determining a predictive value for a total number of non-zero coefficients included in a current block to be coded based on a total number of non-zero coefficients included in a coded block located above the current block and a total number of non-zero coefficients included in a coded block located to the left of the current block, wherein each non-zero coefficient is a transform coefficient having a level value other than "0"; selecting a variable length code table based on the determined predictive value; and coding the total number of non-zero coefficients included in the current block by using the selected variable length code table, and wherein the picture decoding method comprises: determining a predictive value for a total number of non-zero coefficients included in a current block to be decoded based on a total number of non-zero coefficients included in a decoded block located above the current block and a total number of non-zero coefficients included in a decoded block located to the left of the current block, wherein each non-zero coefficient is a transform coefficient having a level value other than "0"; selecting a variable length code table based on the determined predictive value; and decoding coded data obtained by coding the total number of non-zero coefficients included in the current block by using the selected variable length code table. |

| '238 Patent, Claim 1 | '896 Parent, Claim 2 |
|---|---|
| 1.  A receiving apparatus which receives multiplexed data which is obtained by multiplexing coded audio data and coded picture data, said receiving apparatus comprising:<br><br>a demultiplexing unit configured to separate the multiplexed data into the coded audio data and the coded picture data;<br><br>an audio processing unit configured to decode the separated coded audio data; and<br><br>a picture decoding unit configured to decode the separated coded picture data, wherein said picture decoding unit includes a block decoding unit configured to decode coded block data included in the coded picture data, the coded block data being obtained by dividing a picture signal into plural blocks, generating a residual block image from a block image of the respective blocks and a predictive block image obtained by intra-picture prediction or inter-picture prediction, and coding, on a block basis, coefficients obtained by performing orthogonal transformation and quantization on the residual block image,<br><br>said block decoding unit includes:<br><br><span style="color:red">a coefficient number decoding unit configured to decode the coded block data to obtain the number of non-zero coefficients which are coefficients included in a current block to be decoded and having a value other than "0";</span><br><br>a unit configured to obtain coefficients corresponding to a residual block image of the current block by decoding the coded block data;<br><br>a unit configured to obtain the residual block image of the current block by performing inverse quantization and inverse orthogonal transformation on the coefficients corresponding to the residual block image of the current block; and<br><br>a reproducing unit configured to reproduce a block image of the current block, from the obtained residual block image and a predictive block image obtained by intra picture prediction or inter-picture prediction,<br><br><span style="color:red">said coefficient number decoding unit includes:</span><br><br><span style="color:blue">a determining unit configured to determine a predictive value for the number of non-zero coefficients included in the current block based on the number of non-zero coefficients included in a decoded block located on a periphery of the current block;</span><br><br><span style="color:green">a selecting unit configured to select a variable length code table based on the determined predictive value; and</span><br><br><span style="color:red">a variable length decoding unit configured to perform variable length decoding on a coded stream which is generated by coding the number of the non-zero coefficients included in the current block, by using the selected variable length code table.</span> | 2. A decoding method for decoding coded data on a block basis, the method comprising:<br><br><span style="color:blue">determining a predictive value for a total number of non-zero coefficients included in a current block to be decoded based on a total number of non-zero coefficients included in a decoded block located adjacent to the current block, wherein each non-zero coefficient is a transform coefficient having a level value other than "0";</span><br><br><span style="color:green">selecting a variable length code table based on the determined predictive value; and</span><br><br><span style="color:red">decoding the coded data obtained by coding the total number of non-zero coefficients included in the current block by using the selected variable length code table.</span> |

Mot., Ex. Q (Orchard Report) at 7-8.  Dr. Orchard, ASUS' expert, explains that the colored text represents "the purported invention for decoding the number of non-zero coefficients," which is effectively the same between the patents, and the black text which "merely recite[s] well-known aspects of demultiplexing and decoding audio and picture data."  *Id.* at ¶¶ 19-20.  He opines that a person of ordinary skill in the art (POSITA) would recognize two differences between the 238 patent claims and each reference's claims: 1) the black text reciting "well-known structures for performing well-known, standardized aspects of demultiplexing and decoding audio and picture data"; and 2) "in the colored text, the '238 Patent recites 'units' for performing the allegedly novel claim functions, while the '855 Child and '896 Parent recite the same functions as method steps." *Id.* at ¶¶ 21, 28.  For both, however, he argues a POSITA would find it obvious to modify 855 patent claim 1 or 896 patent claim 2 to include those differences.  *Id.*  And ASUS argues that VideoLabs' expert fails to dispute this conclusion, therefore making summary determination proper.  Mot. Mem. at 13 (citing Mot., Ex. R (Richardson Report) at ¶¶ 433-436).

ASUS and Dr. Orchard are persuasive and the record clearly and convincingly shows the differences between 238 patent claim 1 and 855 patent claim 1 or 896 patent claim 2 do not create a patentable distinction.  *In re Berg*, 140 F.3d 1428, 1432 (Fed. Cir. 1998) (framing the test as, "if the scope of the application and the patent claims is not identical, the court must ask whether the former defines merely an obvious variation of the latter.").  The differences are nothing more than the widely known and standard frameworks (H.26L and H.324) in which coding/decoding the number of non-zero coefficients would have been used by a person of ordinary skill in the art.

To begin, the colored text properly represents the inventive aspect of the patents, which, as the shared specification describes it, is "to perform coding by applying variable length coding for the numbers of the coefficients other than 0."  238 patent at 1:49-52.  And while the 855 and 896 patents recite determining a predictive value (blue), selecting a table (green), and decoding data

which had been coded by the number of non-zero coefficients (red) as method steps, whereas the 238 patent recites "units" for accomplishing the same, this variance is a trivial, obvious difference, which VideoLabs does not dispute.  Mot. Mem. at 15-16; Mot., Ex. Q (Orchard Report) at ¶¶ 28-45; *see generally* Opp'n at 19-26.  Therefore, the trivial, obvious differences between the elements in the colored text of the claimed invention and of the qualifying double patenting references provide no patentable distinction between them.

As for the black text, the record shows the recited features were not only ordinary and well known in the art—but the exact framework in which the inventive concept (decoding based on the number of non-zero coefficients) would have been known to operate, *i.e.*, it would have been obvious to combine them.  *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1359 (Fed. Cir. 2017) ("a motivation to combine can be found explicitly or implicitly in the prior art references themselves, in market forces, in design incentives, or in 'any need or problem known in the field of endeavor at the time of invention and addressed by the patent.'") (citing *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 420-21 (2007)).  Dr. Orchard aptly divides the limitations in black text into two groups to aid the analysis.

### a)    The Demultiplexing Limitations

The first group includes the preamble and the first two limitations which recite the concept of multiplexing (or, more accurately, demultiplexing) coded audio data and coded video data:

1. A receiving apparatus which receives multiplexed data which is obtained by multiplexing coded audio data and coded picture data, said receiving apparatus comprising:

a demultiplexing unit configured to separate the multiplexed data into the coded audio data and the coded picture data;

an audio processing unit configured to decode the separated coded audio data;

238 patent at cl. 1 (together, the "Demultiplexing Limitations"); Mot., Ex. Q (Orchard Report) at ¶ 22.  Dr. Orchard opines "[a] POSITA would recognize from the language of '855:1 or '896:2 that the claims relate to video codec technology, and would consider it obvious to include the alleged inventions in those claims within a system that receives multiplexed coded audio and coded picture data, demultiplexes that data, and decodes the audio portion." *Id.* at ¶ 23.  For support, he refers to statements made by VideoLabs during an *inter partes* review (IPR) proceeding relating to the 238 patent that "multiplexing/ demultiplexing and coding of video and audio data were already well-known to a POSITA and standardized" as in the H.324 (audio) and H.26L (video) publications.  *Id.* at ¶ 24 (citing *Dell Tech. Inc. v. VideoLabs, Inc.*, IPR2022-00628).[1]

In this investigation, VideoLabs' expert, Dr. Richardson, takes the same position—albeit in a defense against written description attacks stemming from the specification's failure to mention audio multiplexing.  Mot., Ex. R (Richardson Report) at ¶¶ 123-125.  He explains that the context for the original JP665 application was the H.26L video coding specification, which was widely known in the art; and that specification was readily understood to be used alongside audio coding as set forth in the H.324 specification, also widely known in the art:

---

[1]    Within Dr. Orchard's invalidity report, H.26L is identified as JVT-B118; and Dr. Richardson's report confirms JVT-B118 and H.324, as applied, qualify as prior art to the original JP665 application and by extension the 238 and 878 patents.  Mot., Ex. Q (Orchard Report) at ¶ 27; Mot., Ex. R (Richardson Report) at ¶ 170.

### 1. JP665 Directly References Audio Encoding/Decoding and Multiplexing/Demultiplexing of Coded Video with Coded Audio

123.    Dr. Orchard contends that nothing within the four corners of JP665 provides written description support for the audio encoding/decoding and multiplexing/demultiplexing limitations.  (Orchard Rpt. at ¶¶ 249-302.)  I disagree.  JP665 directly references audio encoding/decoding and multiplexing and demultiplexing of coded video with coded audio.  In particular, the inventors disclose that the context for the invention of JP665 is H.26L (Orchard Rpt., Ex. I (JP665) at ¶ [0003]), the development effort that led to the publication of H.264.  From its inception, H.26L was designed to be used in devices and systems that multiplexed and demultiplexed coded audio and video data.  (*See, e.g.*, JVT-A004 (ASUS_ITC1323-00024582).)  Moreover, JP665 discloses a computer that implements the coding of moving pictures in the context of H.26L.  (*See, e.g.*, JP665 at 9 (claim 21) and Fig. 23 (VIDEOLABSITC0079120).)  A POSITA would have recognized that this computer, implementing coding in the context of H.26L, would include audio coding/decoding and multiplexing and demultiplexing units.

124.    Dr. Orchard, similar to the Dell petitioner in the IPR proceedings, admits that a POSITA would have understood how to combine a version of H.26L (such as JVT-C167 or JVT-B118) with H.324 and audio coding.  (*See, e.g.*, IPR2022-00628, Paper 1 at 61-62 (VIDEOLABSITC0078732); IPR2022-00629, Paper 1 at 61-62 (VIDEOLABSITC0078865); Orchard Rpt. at Appx. A-C.)  H.26L in the 2002 timeframe was a fully working video codec, designed to be multiplexed with coded audio in frameworks such as H.324, H.320, MPEG-2 Systems and MPEG-4 Systems.  H.26L was developed by the Joint Video Team, whose

published Requirements (JVT-A004 (ASUS_ITC1323-00024582)) emphasizes the use of H.26L for applications including multiplexed coded video and coded audio.

125.   The inventors of the '238 and '878 patents attended and contributed to JVT and MPEG meetings prior to filing JP665, including meetings with extensive discussion of multiplexing of coded video and coded audio.  Accordingly, JP665, by specifying H.26L as the context of the invention, clearly shows to a POSITA that the inventors were in possession of the claimed invention by its April 15, 2002, filing date.  (*See* Orchard Rpt., Ex. I (JP665) at ¶ [0003].)

## 2.   The Context of JP665 is H.26L

126.   H.26L was intended as a successor to H.263, and H.263 and/or other video codecs are required in an H.324 implementation.  H.324, which was well known at the time, includes audio encoding/decoding and multiplexing/demultiplexing of coded video with coded audio.  H.26L was designed to work within an H.324 multiplexing environment and work was well underway on standardizing this within the JVT.  (*See, e.g.*, VCEG-N52 (ASUS_ITC1323-00035267).)

127.   Additionally, H.26L was designed to be used with the MPEG-4 File Format.  The ITU-T VCEG group working on the H.26L standardization recognized in September 2001 that H.26L was to be incorporated in higher-level "systems," such as MPEG-4 Systems and H.324, and thus noted that multiplexing with audio is a "fundamental consideration" of H.26L:

128.   Video data is usually associated with audio data and requires the ability to control and multiplex this and other data for synchronized playback.  Therefore, higher-level "systems" designs that incorporate the video coding standards into specific application environments are fundamental considerations when measuring the usefulness of any video coding standard.  (*See* VCEG-N18 (ASUS_ITC1323-00035260).)

. . . .

13

133.    All of the specified carriage mechanisms for H.26L (byte stream, packetized, or file format) include multiplexing of coded video and coded audio. Hence, by the April 15, 2002, filing date of JP665, H.26L was already incorporated into well-known frameworks that multiplex coded video with coded audio, such as MPEG-2 Systems, MPEG-4 Systems, H.323, H.324 and the ISO Media File Format.

Mot, Ex. R (Richardson Report) at ¶¶ 123-128, 133. VideoLabs' expert continues:

135.    The invention of JP665 is presented in the context of H.26L at the time of JP665 (*i.e.*, the Working Draft Standard described in JVT-B118) and is therefore presented in the context of frameworks that expressly include audio coding and multiplexing. Hence the inventors of JP665 presented an invention intended to be applied to the then-current draft of H.26L, itself a system designed to be used with coded audio and multiplexing. The inventors further disclosed "a computer to execute the processing of coding and decoding a moving picture" in the context of H.26L. (*See* JP665 at 9 (VIDEOLABSITC0079120).) A POSITA, including the inventors, would have recognized that a computer implementing H.26L would do so as part of a "system," such as those described in H.324 or MPEG-4 Systems. A POSITA would recognize that these systems include audio coding and decoding units and multiplexing and demultiplexing units for multiplexing/demultiplexing coded audio and video.

136.    As explained above, H.26L was designed as a successor to the older H.263 standard and was intended from its inception to be used in audio/video multiplexing and transport frameworks such as H.323, H.324, MPEG-2 Systems and the ISO Media File Format. The application to H.26L and the entire context of JP665 therefore conveys to a POSITA that the inventors had possession of the claimed subject matter, including unit(s) for multiplexing and demultiplexing of coded audio and coded video data, as well as unit(s) for coding and decoding audio data.

*Id.* at ¶¶ 135-136; *see id.* at ¶¶ 142, 146, 155, 158, 162 ("A POSITA would have readily understood JP665's video coding disclosure to be used in the context of multimedia systems with multiplexed audio."). Dr. Orchard draws the exact same connection between H.26L and H.324 as the

14

multiplexing framework in which a POSITA would have understood to use the invention of the JP665 application and the 238 patent.  Mot., Ex. Q (Orchard Report) at ¶¶ 46-52.  Thus, there can be no genuine dispute that a system that demultiplexes coded video data and coded audio data (e.g., the prior H.26L and H.324 specifications) was *the* obvious context for decoding, and therefore for decoding based on the number of non-zero transform coefficients and a variable length code table (the alleged invention).

Thus, both experts agree that this was the obvious context.  To the extent Dr. Richardson has suggested that it would not have been obvious to combine H.26L with H.324 (*see, e.g.*, Mot., Ex. R (Richardson Report) at ¶¶ 182-4 (potentially disputing JVT-B118 combination with H.324 or with H.263+)), that suggestion does not create a genuine issue of material fact in light of his contradictory statements rebutting written description invalidity.  *See Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1232 (Fed. Cir. 2019) ("a party cannot simply contradict an earlier sworn statement" to overcome summary judgment without "credible evidence supporting the contradiction") (citations and internal quotations omitted).  And Dr. Orchard's opinion that audio and multiplexing are not *inherent* to a video-related invention (*see, e.g.*, Opp'n, Ex. 3 (Orchard Report) at ¶ 258) similarly does not raise a genuine issue of material fact, because inherency has no direct bearing on whether two claims are patentably distinct.  *See Hospira, Inc. v. Fresenius Kabi USA, LLC*, 946 F.3d 1322, 1329 (Fed. Cir. 2020) (an element is inherent in the obviousness context if it is "necessarily present" in the prior art or the "natural result" of the combination of elements); Opp'n at 21.  Accordingly, one of ordinary skill would find the missing Demultiplexing Limitations do not establish a patentable distinction.

**b)     The Decoding Limitations**

The second group of missing limitations (black text, above) recite, according to Dr. Orchard, "a well-known structure (a video decoder) to perform the well-known video codec

functionality that forms the background of the claims in the '855 Child and/or the '896 Parent." Mot., Ex. Q (Orchard Report) at ¶ 25.  They include the use of block-based coding/decoding, intra-picture and inter-picture prediction, and orthogonal transformation and quantization of coefficients:

> a picture decoding unit configured to decode the separated coded picture data, wherein said picture decoding unit includes a block decoding unit configured to decode coded block data included in the coded picture data, the coded block data being obtained by dividing a picture signal into plural blocks, generating a residual block image from a block image of the respective blocks and a predictive block image obtained by intra-picture prediction or inter-picture prediction, and coding, on a block basis, coefficients obtained by performing orthogonal transformation and quantization on the residual block image,
>
> said block decoding unit includes:
>
> . . . .
>
> a unit configured to obtain coefficients corresponding to a residual block image of the current block by decoding the coded block data;
>
> a unit configured to obtain the residual block image of the current block by performing inverse quantization and inverse orthogonal transformation on the coefficients corresponding to the residual block image of the current block; and
>
> a reproducing unit configured to reproduce a block image of the current block, from the obtained residual block image and a predictive block image obtained by intra-picture prediction or inter-picture prediction,

238 patent at cl. 1 (together, the "Decoding Limitations"); Mot., Ex. Q (Orchard Report) at ¶ 25; Mot., Ex. R (Richardson Report) at ¶ 88 (showing the Decoding Limitations are 1[d], 1[f], 1[g], and 1[h]).  Dr. Orchard states, "a person of skill in the art would have considered it fundamentally obvious to include this background technology" (Mot., Ex. Q (Orchard Report) at ¶ 25) and "[b]ecause the '855 Child and the '896 Parent claims recite the same purported invention as the '238 Patent (decoding the number of non-zero coefficients within a block-based decoding framework) adding limitations that simply recite the known framework for block-based decoding would have been obvious to a POSITA" (*id.* at ¶ 26).

16

For support, Dr. Orchard references statements made by VideoLabs within a claim construction brief from related litigation and statements made in an IPR declaration from Dr. Richardson involving the 238 patent.  Mot., Ex. Q (Orchard Report) at ¶ 26 (citations omitted). VideoLabs does not challenge Dr. Orchard's characterization of Dr. Richardson's IPR declaration, specifically, that block based coding/decoding, inter-and intra-prediction, residual block image, transformation, quantization, and variable length coding were "the well-known block-based coding/decoding framework in which the purported invention for decoding the number of non-zero coefficients would have been used" *id.* (citing *Dell Tech. Inc. v. VideoLabs, Inc.*, IPR2022-00628, EX2001, ¶¶ 34-41).  *See generally* Opp'n.  Dr. Orchard also refers to his comparisons included within his report that track the H.26L prior art against each of these functions:

> 27.  Moreover, as is shown in my comparisons throughout my report between the various H.26L prior art references (including at least JVT-B118, JVT-F100d2, VCEG-N83) and claim 1 of the '238, each of the limitations quoted above describe well-known video decoding steps performed by known video codecs.  *See, e.g.*, JVT-B118 at 16-17 (block based coding/decoding), 22, 28-33 (inter and intra-prediction and residual block image), 42-43 (transformation), 44-45 (quantization), 13-14 and 51 (variable length coding);
>
> . . . .
>
> and VCEG-N83 at 6 (noting that decoder and encoder processes can be understood with reference to just decoder), 7-8 (block based coding/decoding), 10-14 (inter- and intra-prediction and residual block image), 19 (transformation), 20-21 (quantization), 24-26 (variable length coding).

Mot., Ex. Q (Orchard Report) at ¶ 27 (citation omitted).[2]  Accordingly, the disclosures related to well-known steps for decoding in the H.26L prior art references, as explained by Dr. Orchard, correspond to the missing Decoding Limitations.  *See id.* at ¶¶ 59, 62, 64, 65 (collectively asserting

---

[2]     Alongside JVT-B118, Dr. Orchard identifies VCEG-N83 as a version of H.26L, also confirmed by Dr. Richardson as qualifying prior art.  Mot., Ex. Q (Orchard Report) at ¶ 27, 40; Mot., Ex. R (Richardson Report) at 170.

limitations 1[d], 1[f], 1[g], and 1[h] are part of H.26L); Mot., Ex. R (Richardson Report) at ¶ 88 (showing the Decoding Limitations are 1[d], 1[f], 1[g], and 1[h]).

Dr. Richardson's rebuttal expert report disputes none of this, including the comparisons of H.26L against the Decoding Limitations:  block based coding/decoding, inter- and intra-prediction and residual block image, transformation, quantization, and variable length coding.  *See* Mot., Ex. R (Richardson Report) at ¶¶ 188-227 (challenging only later limitations 1[i]-1[k] for JVT-B118), 315-354 (same for VCEG-N83); *see generally* 238 patent at cl. 1.  And he otherwise affirmatively acknowledges H.26L was block-based and utilized transform, quantization, and residual coding. Mot., Ex. R (Richardson Report) at ¶¶ 275, 276, 320; *see id.* at ¶ 453 (explaining the same was known in the art via discussion in the 238 patent specification).  The *Markman* order in this investigation established as much as well.  Order No. 39 at 31-32 (explaining the prior art process) (citing 238 patent at 1:19-52, Fig. 5).  Accordingly, all the missing Decoding Limitations were well known to one of ordinary skill in the art.

### c)      Summary

A skilled artisan would have known that all three categories of references—the demultiplexing references, the decoding references, and the 896 and 855 patents—were compatible and readily combined.  According to Dr. Orchard, it would have been obvious to a person having ordinary skill in the art at the time of the invention "to combine the video coding methods recited in [Claim 1 of the '855 Child and/or Claim 2 of the '896 Parent] with the framework provided in known video coding/decoding standards such as H.324 and draft versions of H.26L (including at least JVT-B118, JVT-F100d2, VCEG-N83) that describe systems and methods for decoding coded data on a block basis."  Mot., Ex. Q (Orchard Report) at ¶ 46; *see also id.* at ¶¶ 47–52.  For instance, Dr. Orchard opines that "[a] POSITA would have been motivated to combine the methods in '855:1 and/or '896:2 with draft versions of H.26L (including

at least JVT-BI 18, VCEG-N83) in order to obtain the benefits of the most recent standard developments and advances," such as "improv[ing] coding efficiency." *Id.* at ¶ 47. Moreover, Dr. Orchard states that "[a] POSITA would also have had a reasonable expectation of success in combining claim 1 of the '855 Child and/or claim 2 of the '896 Parent with H.26L" because "[t]his combination merely involves applying a known technique (the VLC coding methods of in '855:1 and/or '896:2) to a known framework (the video coding methods in H.26L) to yield predictable results." *Id.*; *see also id.* at ¶¶ 49-51 (providing additional rationales). Dr. Orchard also opines that "[g]iven that H.26L was intended to be used with H.324, and the methods recited in '855:1 and/or '896:2 are intended to be used to modify H.324, a POSITA would be motivated to make the combination, and a POSITA would have had a reasonable expectation of success that the combination would work as intended." *Id.* at ¶ 52. Neither VideoLabs nor its expert Dr. Richardson contest Dr. Orchard's opinions on the motivation to combine or the likelihood of success. *See generally* Opp'n; Mot., Ex. R (Richardson Report) at ¶¶ 433-436.

Based on the above, Dr. Orchard's opinions that a person having ordinary skill in the art would have found it obvious to modify the 855 patent claim 1 or 896 patent claim 2 to include the demultiplexing and decoding limitations in view of known video coding/decoding standards such as H.324 and draft versions of H.26L (including at least JVT-B118, JVT-F100d2, VCEG-N83) as discussed above are persuasive. And this conclusion is consistent with VideoLabs' expert, Dr. Richardson, regarding his opinions at least on video and audio multiplexing being widely known in the art. Mot., Ex. R (Richardson Report) at ¶¶ 123-125.

Moreover, and importantly, Dr. Richardson does not specifically dispute the obviousness of the Decoding Limitations as it relates to obviousness-type double patenting. His double patenting opinion is limited to pointing out that the claims are not identical, and noting his assumption that the 855 patent does not qualify as a prior art reference:

H.      **Appendix H – Double Patenting in View of the '896 Parent and '855 Child**

433.    The opinions expressed by Dr. Orchard in Appendix H to his expert report fail to show that claim 1 of the '238 patent or claims 1-4 of the '878 patent are unpatentable for obviousness type double patenting.

434.    To the extent Dr. Orchard provides additional clarity regarding his opinions, I reserve my right to respond.

435.    First, as stated above, I am a technical expert, not a lawyer, and I offer no legal opinions, however, I have been advised that the '855 child patent does not qualify as an obviousness type double patenting reference.

436.    Second, even Dr. Orchard admits that there are differences in the claim language of the '238 and '878 patents and the '855 child and '896 parent. Further, it is my understanding that the patent office examined and allowed the different claim scopes of the issued family member patents.

Mot., Ex. R (Richardson Report) at ¶¶ 433-436.  No party has indicated his deposition contains any further elaboration.  Mot., Ex. V (Richardson Dep.).  This is despite Dr. Orchard providing over a hundred paragraphs on the subject.  *See* Mot., Ex. Q (Orchard Report); Mot. Mem. at 16.

As ASUS correctly notes, pointing out differences in claim scope is merely the first step in an obvious-type double patenting analysis.  *Abbvie Inc.*, 764 F.3d at 1374 (explaining the analysis involves two steps).  "The proper question is whether the differences in claim language raise patentable distinctions."  Mot. Mem. at 19.  Thus, Dr. Richardson's generalized opinion that "there are differences" in claim language does not create a genuine issue.  And while VideoLabs and the Staff argue that additional paragraphs, not referenced by ASUS, contain more pertinent argument (Opp'n at 22-24; Hr'g Tr. at 43:18-45:15), they do not.  This handful of citations is either irrelevant or limited to the same preliminary observation that the claim scope is not identical.  Mot., Ex. R (Richardson Report) at ¶¶ 172, 441, 443-46; *see id.* at ¶ 448 ("448.  Thus, it is my opinion that the

20

Asserted Claims have a different scope and hence define a different 'invention' than that of the claims in the '896 and '143 parent patents.").  For example, paragraphs 446-48 of Dr. Richardson's report, which VideoLabs particularly emphasized at the oral argument, are literally irrelevant to the "patentably distinct" inquiry, because they simply characterize the claimed inventions and assert that they are "different" from the claims of the 896 and 855 patents, without explaining how those differences are non-obvious.  Mot., Ex. R (Richardson Report) at ¶¶ 446-48; Hr'g Tr. at 63:15-67:14.  On balance, therefore, Dr. Richardson does not offer any opinion disputing the lack of patentable distinction involving either the Demultiplexing or the Decoding Limitations, as it relates to obviousness-type double patenting.  Accordingly, there is no genuine dispute that the Demultiplexing and Decoding Limitations were obvious differences in light of the H.26L and H.324 specifications.  Combined with the negligible differences in how the inventive features are claimed in the three patents, there is also no genuine dispute that claim 1 of the 238 patent is not patentably distinct from claim 1 of the 855 patent or claim 2 of the 896 patent.

This point bears emphasis:  VideoLabs has no expert evidence whatsoever to counter Dr. Orchard's well-supported and detailed opinion, as it relates to the "patentably distinct" inquiry.  Its prehearing brief cites no evidence supporting its assertion that claim 1 of the 238 patent is patentably distinct from the claims of the 896 and 855 patents.  *See* EDIS Doc. ID No. 794373 at 152.  Nor is there any credibility determination to make, because even accepting every affirmative opinion of Dr. Richardson, the claims of the 238 patent are not patentably distinct from the reference patents.  In short, a hearing plainly would not yield any more "fulsome evidentiary development" than what is already in the record.  Hr'g Tr. at 51:22.

### 2.    878 Patent, Claims 1-4

For the 878 patent, ASUS argues, through Dr. Orchard, that "Claims 1-4 of the '878 Patent are Obvious Based on Claim 1 of the '855 Child and/or Claim 1 of the '134 and/or '144 Cousin in

View of H.324 and H.26L."  Mot., Ex. Q (Orchard Report) at 33; *see id.* at ¶¶ 74-123.  ASUS readily acknowledges that these claims do not have identical scope, and provides the following tables to illustrate the differences in independent claim 1:

| '878 Patent, Claim 1 | '134 Cousin and '144 Cousin, Claim 1 |
|---|---|
| 1.  A transmitting apparatus which transmits multiplexed data which is obtained by multiplexing coded audio data and coded picture data, said transmitting apparatus comprising:<br>an audio processing unit configured to code audio data to obtain coded audio data;<br>a picture coding unit configured to code picture data to obtain coded picture data; and<br>a multiplexing unit configured to multiplex the coded audio data and the coded picture data to obtain multiplexed data,<br>wherein said picture coding unit includes a block coding unit configured to code a block image to obtain coded block data, the block image being obtained by dividing a picture signal into plural blocks, generating a residual block image from the block image of the respective blocks and a predictive block image obtained by intra picture prediction or inter-picture prediction, and coding, on a block basis, coefficients obtained by performing orthogonal transformation and quantization on the residual block image,<br>wherein said block coding unit includes:<br><span style="color:red">a coefficient number coding unit configured to code a total number of non-zero coefficients included in a current block to be coded, each of the non-zero coefficients being a coefficient having a value other than "0",</span><br><span style="color:red">wherein said coefficient number coding unit includes:</span><br><span style="color:blue">a determining unit configured to determine a predictive value for the total number of non-zero coefficients included in the current block based on a total number of non-zero coefficients included in a coded block located on a periphery of the current block;</span><br><span style="color:green">a selecting unit configured to select a variable length code table based on the determined predictive value; and</span><br><span style="color:red">a variable length coding unit configured to perform variable length coding on the total number of the non-zero coefficients included in the current block, by using the selected variable length code table.</span> | 1. A coding method for coding an image on a block basis, the method comprising:<br><span style="color:blue">determining a predictive value for a total number of non-zero coefficients included in a current block to be coded based on a total number of non-zero coefficients included in a coded block located above the current block and a total number of non-zero coefficients included in a coded block located to the left of the current block, wherein</span> <span style="color:red">each non-zero coefficient is a transform coefficient having a level value other than "0";</span><br><span style="color:green">selecting a variable length code table based on the determined predictive value; and</span><br><span style="color:red">coding the total number of non-zero coefficients included in the current block by using the selected variable length code table,</span><br>wherein the predictive value is determined … . |

| '878 Patent, Claim 1 | '855 Child, Claim 1 |
|---|---|
| 1.  A transmitting apparatus which transmits multiplexed data which is obtained by multiplexing coded audio data and coded picture data, said transmitting apparatus comprising: | 1. A method for managing content in a communication system, the method comprising: |
| an audio processing unit configured to code audio data to obtain coded audio data; | receiving at a server coded content from a first terminal apparatus, the coded content being coded by a picture coding method which codes a picture on a block basis; |
| a picture coding unit configured to code picture data to obtain coded picture data; and | storing at the server the coded content; |
| a multiplexing unit configured to multiplex the coded audio data and the coded picture data to obtain multiplexed data, | receiving at the server from a second terminal apparatus, a request for providing the stored coded content to the second terminal apparatus; |
| wherein said picture coding unit includes a block coding unit configured to code a block image to obtain coded block data, the block image being obtained by dividing a picture signal into plural blocks, generating a residual block image from the block image of the respective blocks and a predictive block image obtained by intra picture prediction or inter-picture prediction, and coding, on a block basis, coefficients obtained by performing orthogonal transformation and quantization on the residual block image, | providing from the server to the second terminal apparatus the stored coded content; and decoding the provided coded content at the second terminal apparatus, the provided coded content being decoded by a picture decoding method which decodes a coded picture on a block basis; wherein the picture coding method comprises: |
| wherein said block coding unit includes: | |
| a coefficient number coding unit configured to code a total number of non-zero coefficients included in a current block to be coded, each of the non-zero coefficients being a coefficient having a value other than "0". | determining a predictive value for a total number of non-zero coefficients included in a current block to be coded based on a total number of non-zero coefficients included in a coded block located above the current block and a total number of non-zero coefficients included in a coded block located to the left of the current block, wherein each non-zero coefficient is a transform coefficient having a level value other than "0"; |
| wherein said coefficient number coding unit includes: | |
| a determining unit configured to determine a predictive value for the total number of non-zero coefficients included in the current block based on a total number of non-zero coefficients included in a coded block located on a periphery of the current block; | |
| a selecting unit configured to select a variable length code table based on the determined predictive value; and | selecting a variable length code table based on the determined predictive value; and |
| a variable length coding unit configured to perform variable length coding on the total number of the non-zero coefficients included in the current block, by using the selected variable length code table. | coding the total number of non-zero coefficients included in the current block by using the selected variable length code table, and wherein the picture decoding method comprises: determining a predictive value for a total number of non-zero coefficients included in a current block to be decoded based on a total number of non-zero coefficients included in a decoded block located above the current block and a total number of non-zero coefficients included in a decoded block located to the left of the current block, wherein each non-zero coefficient is a transform coefficient having a level value other than "0"; selecting a variable length code table based on the determined predictive value; and decoding coded data obtained by coding the total number of non-zero coefficients included in the current block by using the selected variable length code table. |

23

Mot., Ex. Q (Orchard Report) at ¶ 75.  Again, Dr. Orchard explains that the colored text represents "the purported invention for coding the number of non-zero coefficients," which is effectively the same between patents.  *Id.* at ¶¶ 74-75.  In fact, the first three method steps of claim 1 of the 134 patent and claim 1 of the 144 patent are identical, and as shown above, claim 1 of the 878 patent simply rewrites those steps in apparatus form.  *Compare* 134 patent at cl. 1 *with* 144 patent at cl. 1.  Dr. Orchard also explains that the black text "merely recite[s] well-known aspects [of] coding audio and picture data."  *Id.* at ¶¶ 74-75.

As with the 238 patent, Dr. Orchard breaks that black text of claim 1 into groups.  The first group includes the preamble and first three limitations concerning coded audio data, coded picture data, and multiplexing the two.  878 patent at cl. 1; Mot., Ex. Q (Orchard Report) at ¶ 77.  For the same reasons discussed above, these limitations certainly would have been obvious, because the H.26L and H.324 contexts in which the 878 patent's contributions were meant to be used were readily understood by POSITAs to implement audio/video multiplexing—as confirmed by both parties' experts.  *See, e.g.*, Mot., Ex. Q (Orchard Report) at ¶¶ 77-79, 101-107, 108-111; Mot., Ex. R (Richardson Report) at ¶¶ 123-128, 133, 135-6, 142, 146, 155, 158, 162.

The second block of black text concerns block-based coding by intra- or inter-picture prediction, along with orthogonal transformation and quantization of coefficients.  878 patent at cl. 1; Mot., Ex. Q (Orchard Report) at ¶ 80.  This is the flip side of the "picture decoding unit" limitation as in claim 1 of the 238 patent discussed above, and for those same reasons, would have been an obvious result of implementing the 878 patent within the widely understood and intended H.26L and H.324 frameworks—as opined by Dr. Orchard and without opposition from Dr. Richardson.  *See, e.g.*, Mot., Ex. Q (Orchard Report) at ¶¶ 77-79, 101-107, 112-113; Mot., Ex. R (Richardson Report) at ¶¶ 433-436, 443-448.

24

Finally, Dr. Orchard's opinions regarding the triviality of the 878 patent reciting "units" for performing the same functions recited in the 855, 134, and 144 patents are unopposed.  Mot., Ex. Q (Orchard Report) at ¶¶ 83-100.  They are thus accepted, and combined with the similarities in the inventive claim language (as shown in the colored text) and the context with which a POSITA would have been familiar (that is, the black text), they confirm the lack of patentable distinction between claim 1 of the 878 patent and claim 1 of the 855 patent, or claim 1 of the 134 patent, or claim 1 of the 144 patent.

And as with the 238 patent, according to Dr. Orchard, a person having ordinary skill in the art at the time of the invention would have been motivated "to combine the video coding methods recited in [Claim 1 of the '855 Child and claim 1 of each of the '134 and '144 Cousins] with the framework provided in known video coding/decoding standards such as H.324 and draft versions of H.26L (including at least JVT-B118, JVT-F100d2, VCEG-N83) that describe systems and methods for decoding coded data on a block basis," with a reasonable expectation of success. Mot., Ex. Q (Orchard Report) at ¶ 101 ¶; *see also id.* at ¶¶ 102-107.  And for the same reasons discussed above for the 238 patent, Dr. Orchard's opinions are persuasive.

This leaves claims 2-4.  Unlike independent claim 1, Dr. Orchard does not present side-by-side tables here.  *See* Mot., Ex. Q (Orchard Report) at ¶¶ 121-123.  He does address each of claims 2-4 individually, however, and explains how its language is already present within the claims of the 855, 134, or 144 patents.  *See id.*

For claim 2 ("wherein the determining unit is configured to determine a predictive value for the total number of non-zero coefficients included in the current block based on a total number of non-zero coefficients included … above the current block and … to the left of the current block"), Dr. Orchard persuasively shows that it exists within claim 1 of the 855 patent, claim 1 of the 134, and claim 1 of the 144 patent.  Mot., Ex. Q (Orchard Report) at ¶ 121; *see* 878 patent at

cl. 2. In fact, claim 2 of the 878 patent merely adds as a limitation most of the first element in each of claim 1 of the 134 patent and claim 1 of the 144 patent, rephrased as an apparatus. *Compare* 878 patent at cl. 2 ("based on . . . a coded block located above . . . and a . . . coded block located to the left") *with* 134 patent at cl. 1 ("based on . . . a coded block located above . . . and a . . . coded block located to the left") *and* 144 patent at cl. 1 (same). And Dr. Orchard's opinion goes unrebutted, and even unaddressed, by Dr. Richardson and VideoLabs. *See generally* Mot, Ex. R (Richardson Report); Opp'n. Thus, there is no genuine issue regarding a lack of patentable distinction for claim 2 over the claim 1 of the 855 patent, claim 1 of the 134 patent, or claim 1 of the 144 patent.

For claim 3 ("when only one of a coded block located above the current block or a coded block located to the left of the current block is not found . . ."), Dr. Orchard persuasively shows how it exists within claim 1 of the 144 patent; in particular, it is a rephrasing of the last two elements of that claim. Mot., Ex. Q (Orchard Report) at ¶ 122; *see* 878 patent at cl. 3; 144 patent at cl. 1. This opinion again goes unrebutted and unaddressed by Dr. Richardson and VideoLabs. *See generally* Mot, Ex. R (Richardson Report); Opp'n. Thus, there is no genuine issue regarding a lack of patentable distinction for claim 3 over claim 1 of the 144 patent.

For claim 4 ("determine the predictive value . . . to be a value of '0' when no coded blocks are found above and to the left of the current block"), Dr. Orchard persuasively shows how it exists within claim 1 of the 134 patent; in particular, it is a rephrasing of the last element of that claim. Mot., Ex. Q (Orchard Report) at ¶ 123; *see* 878 patent at cl. 4; 134 patent at cl. 1 ("wherein the predictive value is determined to be a value of "0" when no coded blocks are found above and to the left of the current block"). Again, this opinion goes unrebutted and unaddressed by Dr. Richardson and VideoLabs. *See generally* Mot, Ex. R (Richardson Report); Opp'n. Thus, there

is no genuine issue regarding a lack of patentable distinction for claim 4 over claim 1 of the 134

patent.

### 3.    No Other Genuine Issues Of Material Fact

Therefore, the asserted claims are not patentably distinct from the earlier-expiring claims

within their patent family.  And as demonstrated above, VideoLabs' expert presents no genuine

resistance to Dr. Orchard's opinion that the asserted claims are patentably indistinct from earlier-

expiring family member claims.  Nor does VideoLabs offer any secondary indicia of non-

obviousness, even assuming that such indicia may be considered.  Nevertheless, VideoLabs

presents a few additional points in opposition that require discussion.

First, VideoLabs contends that Dr. Richardson's general disagreement with Dr. Orchard's

opinions on obviousness-type double patenting and the non-identity between claim language are

"admissions" that "alone are sufficient to defeat Respondents' Motion."  Opp'n at 19 (citing Mot.,

Ex. R (Richardson Report) at ¶ 443; Mot. Mem. at 13), 20-21, 24.  Nothing could be further from

the truth.  Dr. Richardson's one-sentence disagreement (Mot., Ex. R (Richardson Report) at ¶ 443)

is too conclusory to raise a genuine issue of material fact.  *Diebold Nixdorf, Inc. v. Int'l Trade

Comm'n*, 899 F.3d 1291, 1303 (Fed. Cir. 2018) ("All the record contains is one expert's

unsupported, and largely unhelpful, opinion that skilled artisans would have understood that a

'cheque standby unit' has a particular function and can be made of 'well-known components for

holding cheques in a standby configuration pending user confirmation of the deposit.'").  Nor does

the rest of his opinion raise any genuine issue, as explained above.  And as mentioned, identifying

differences in claim language is but the first step in the obviousness-type double patenting

analysis—not the last.  VideoLabs readily admits as much in other contexts.  Opp'n at 26

("Because the first step in an OTDP analysis is to 'constru[e] . . . the claims in the earlier patent

and the claim in the later patent to identify any differences.'") (citing *Amgen Inc. v. F. Hoffman-*

*La Roche Ltd*, 580 F.3d 1340, 1361 (Fed. Cir. 2009)).  It has been shown clearly and convincingly that the list of limitations "missing from the claims of the Reference Patents" are nothing more than fundamental features of the H.26L and H.324 prior art frameworks, with which a skilled artisan would have been familiar.  *See* Opp'n at 20, 24.  VideoLabs criticizes ASUS for "attempt[ing] to sweep away these patentable distinctions as 'minor differences,'" (*id.* at 21), but it is VideoLabs who conspicuously fails to provide any supporting argument or expert opinion as to why the differences are non-obvious.  *See, e.g.*, *id.* (discussing the generalized and immaterial idea that not all video systems use audio).

Second, VideoLabs argues ASUS has improperly relied on the 238 and 878 patents' specification to support the obviousness-type double patenting position.  Opp'n at 24.  This is inaccurate.  As demonstrated above, it is the scopes of the claims between the asserted and reference patents which have been considered—not any overlap in specification content, or overlap between the asserted patents and the reference patents' "disclosure."  *See General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1281 (Fed. Cir. 1992) (a reference patent's disclosure may not be used as though it were prior art, "even where the disclosure is found in the claims").  To be sure, if the specification were the only evidence relied on in the OTDP analysis, "then a patent would always be obvious in view of its family members sharing a specification." Opp'n at 25.  But the specification is not "wholly irrelevant to assessing OTDP" as VideoLabs contends.  *Id.*  The specification can be used to help assess whether claims are patentably distinct or not, as specifications frequently contain background information on what was known in the art. *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1339 (Fed. Cir. 2020) ("As an initial matter, it is appropriate to rely on admissions in a patent's specification when assessing whether that patent's claims would have been obvious.") (citation omitted).

28

Lastly, VideoLabs contends an unresolved claim construction from the *Markman* proceedings must be settled before ASUS can show "the Asserted Claims of the 238 and 878 Patents, when properly construed, are patentably indistinct from the claims of the Reference Patents." Opp'n at 25-26 (citing Order No. 39 at 26). But the cited issue was whether the "coefficient number decoding [/coding] unit" claim term (238 patent at cl. 1; 878 patent at cl. 1) warrants means-plus-function treatment (Order No. 39 at 23-26). This is not germane to the present motion as the "coefficient number decoding [/coding] unit" refers to those limitations which are undisputedly shared across all patent claims (*i.e.*, the blue, red, and green text in the tables above), either as apparatus element or as a method step. In other words, it has no bearing on whether the missing claim language (*i.e.*, the black text in the tables above) would have been obvious. In fact, VideoLabs does not even specifically mention the "coefficient number decoding [/coding] unit" claim construction in its brief. *See* Opp'n at 25-26. And although another possible claim construction issue (regarding the term "periphery" in the independent claims) came up during oral argument (Hr'g Tr. at 21:10-22:10, 40:7-24), VideoLabs does not argue that any dispute over that term's meaning precludes summary determination (*id.* at 38:21-39:25). At most VideoLabs argues that Respondents "haven't provided any analysis or opinion" regarding the meaning of "periphery"–which is incorrect. *Id*. at 39:15-16; *see* Mot., Ex. Q (Orchard Report) at ¶¶ 67, 68, 116.

For its part, the Staff agrees with VideoLabs that genuine issues of material fact exist as to whether the asserted claims are patentably distinct or not. Staff Resp. at 7-8. But the Staff offers only cursory argument in support of the "patentably distinct" portion of the inquiry, on matters that have been addressed above, and otherwise admits that Dr. Richardson has provided only "a very small universe of opinions." *See id.* (citing Mot., Ex. R (Richardson Report) at ¶¶ 443-448); Hr'g Tr. at 51:14.

29

### B.      A Later Expiration Due To PTA Does Not Preclude Double Patenting

Having found a clear and convincing case that claim 1 of the 238 patent is not patentably distinct from claim 1 of the 855 patent or claim 2 of the 896 patent, and that claims 1-4 of the 878 patent are not patentably distinct over claim 1 of the 855 patent, claim 1 of 134 patent, or claim 1 of the 144 patent, the question becomes whether any of these references are eligible for obviousness-type double patenting when the 238 and 878 patents' later expiration is due wholly to PTA.  *See* Opp'n at 6-14; Mot. Mem. at 7-13.

Prior precedent, the spirit of the doctrine, and the letter of the PTA statute (35 U.S.C. § 154), all show the references are eligible.  The Federal Circuit explains the purpose of the doctrine as follows:

> Through a statutorily prescribed term, Congress limits the duration of a patentee's right to exclude others from practicing a claimed invention. 35 U.S.C. § 154(a)(2) (1994). The judicially-created doctrine of obviousness-type double patenting cements that legislative limitation by prohibiting a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent. *In re Longi*, 759 F.2d 887, 892, 225 USPQ 645, 648 (Fed. Cir. 1985) (explaining that, even though no explicit statutory basis exists for obviousness-type double patenting, the doctrine is necessary to prevent a patent term extension through claims in a second patent that are not patentably distinct from those in the first patent). As one of our predecessor courts explained, "[t]he fundamental reason for the rule [of obviousness-type double patenting] is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about." *In re Van Ornum*, 686 F.2d 937, 943–44, 214 USPQ 761, 766 (CCPA 1982) (quoting *In re Schneller*, 55 C.C.P.A. 1375, 397 F.2d 350, 158 USPQ 210, 214 (CCPA 1968)).

*Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967-8 (Fed. Cir. 2001).  Put another way, the doctrine functions to "prevent multiple infringement suits by different assignees asserting essentially the same patented invention." *In re Hubbell*, 709 F.3d at 1145 (citation omitted).  The court has also instructed that "a later-filed but earlier-expiring patent can serve as a double patenting reference for an earlier-filed but later-expiring patent" and "the expiration date is the

30

benchmark of obviousness-type double patenting." *Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1358 (Fed. Cir. 2018) (citing *Gilead*, 753 F.3d at 1210).

Such is the case here. The 855 patent, 896 patent, 134 patent, and 144 patent will all expire (or already have) before the 238 and 878 patents. All share identical inventors. Mot. Mem. at 7 n.6. And because the asserted claims of the 238 and 878 patents are indistinct from those of the 855, 896, 134, and 144 patents, the spirit of preventing multiple infringement suits by different assignees fully applies. Indeed, as ASUS notes, it has already taken a license to the 896, 134, and 144 patents through the H.264 standard patent pool. Mot. Mem. at 5 (citing Mot., Exs. L, T), 11 (citing same). Subjecting ASUS to an infringement action for redundant (*i.e.*, indistinct) subject matter, as VideoLabs has done with the present investigation, is not equitable or justified.

Nevertheless, VideoLabs contends that when the later expiration dates are the result of PTA, obviousness-type double patenting should not apply. Opp'n at 6. More specifically, VideoLabs argues that no gamesmanship has occurred—"a central impetus for OTDP"—because the PTA was due solely to administrative delays at the USPTO. *Id.* at 7, 12. According to VideoLabs, this circumstance differentiates itself from the patentees in *Abbvie* and *Gilead*, who caused the later expirations through "deliberate and controllable acts." *See id.* at 11-12 (citing *Abbvie*, 764 F.3d at 1370, 1373-74; *Gilead*, 753 F.3d at 1214-17).

This is not persuasive. While VideoLabs' predecessor-in-interest, Panasonic Corporation (Mot. Mem. at 4 n.2; Mot., Exs. M, N), may not have engaged in the exact acts found culpable in *Abbvie* or *Gilead*, it is clear that it filed serial continuation and divisional applications claiming indistinct subject matter between 2003 and 2013, which at least created the conditions for prosecutorial gamesmanship. Moreover, gamesmanship may have motivated the creation of the obviousness-type double patenting doctrine, but proof of gamesmanship is not an element of the

doctrine, in contrast to inequitable conduct, where the applicant's intent is crucial. *See Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1287 (Fed. Cir. 2011).

VideoLabs also holds up recent case law establishing the inapplicability of obviousness-type double patenting when the subject patent's later expiration is caused by Patent Term Extension ("PTE") under 35 U.S.C. § 156.  Opp'n at 8-9 (citing *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367, 1374-75 (Fed. Cir. 2018)).  VideoLabs explains:

> The Federal Circuit reasoned that, since obviousness-type double patenting is a "'judge-made doctrine' that is intended to prevent extension of a patent beyond a 'statutory time limit,'" it does not stand to reason that it should be used to "cut off a statutorily-authorized time extension." *Ezra*, 909 F.3d at 1375. Rather, a known and necessary outcome of § 156 is that patents may receive extended patent terms that would not be permitted under a traditional OTDP analysis. *See id.* at 1374 ("[I]f a patent is terminally disclaimed to another patent to overcome an obviousness-type double patenting rejection and then term-extended under § 156 (as in Merck), it necessarily will expire after the patent to which it had been subject to an obviousness-type double patenting rejection.") (citing *Merck & Co. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317 (Fed. Cir. 2007)). The Federal Circuit declined to extend OTDP to deprive a patentee of the benefits of PTE in such situations, as doing so would preclude an intended result of the statute and none of the policy considerations of preventing gamesmanship, such as those that existed in *Gilead* and *Abbvie*, were at issue. *Ezra*, 909 F.3d at 1374-75.

*Id.* at 9.  VideoLabs urges that the *Ezra* court's reasoning applies equally to Section 154(b) governing PTA (*id.* at 9-11) while also acknowledging the issue is currently before the Federal Circuit (*id.* at 12 n.7 (citing *In re Cellect LLC*, No. 22-1293 (Fed. Cir.))).[3]

ASUS and the Staff oppose extending *Ezra*'s holding from the Section 156 PTE context to Section 154 PTA.  Mot. Mem. at 9; Staff Resp. at 6 n.4.  The Staff, in particular, acknowledges that certain district courts have done so, but notes that the USPTO Patent Trial and Appeal Board

---

[3]    The filings in *Cellect* have been officially noticed.  *See* Hr'g Tr. at 55:19-24.  Some of the *amicus* briefs raise interesting issues, particularly the brief filed by the Intellectual Property Owners Association, but the substantive arguments are effectively presented by the parties and there is no need to delve here into the points made by *amici.*

("PTAB") disagrees. *Id.* at 6 n.5 (citations omitted). And the Staff chooses to "give[] more weight to the PTAB's decision than the district court decisions." *Id.*

ASUS, the Staff, and the PTAB have the stronger position. On the way to its holding, the *Ezra* court considered the interplay between obviousness-type double patenting, Section 154, and Section 156. *Ezra*, 909 F.3d at 1373-74 (citing *Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*, 482 F.3d 1317 (Fed. Cir. 2007)). And in doing so, the court held that the provision included in Section 154 which prevents PTA from affecting terminal disclaimers (subsection (b)(2)(B)) does not exist within Section 156:

> In *Merck*, U.S. Patent No. 4,797,413 was terminally disclaimed after the expiration of U.S. Patent No. 4,677,115 to overcome an obviousness-type double patenting rejection during prosecution. 482 F.3d at 1318–19. The '413 patent later received a PTE of 1,233 days pursuant to § 156. *Id.* at 1319. Appellant Hi-Tech Pharmacal Co. argued that "as a condition for the lifting of the double-patenting rejection and thus the grant of the '413 patent, Merck disclaimed any extension of its term beyond the expiration of the '115 patent and is thus foreclosed from obtaining a term extension under § 156." *Id.* at 1321. This court upheld the validity of the '413 patent's term extension grant. *Id.* at 1324. We first recognized that a straightforward reading of § 156 mandates a term extension so long as the other enumerated statutory requirements for a PTE are met. *Id.* at 1321–22 (citing 35 U.S.C. § 156(a)). *We then noted the contrast between § 156 for PTE with the language of § 154 for patent term adjustments: § 154 "expressly excludes patents in which a terminal disclaimer was filed from the benefit of a term adjustment for PTO delays," but § 156 contains "no similar provision that excludes patents in which a terminal disclaimer was filed from the benefits of Hatch-Waxman extensions." Id. at 1322.* Thus, this court concluded that "[t]he express prohibition against a term adjustment regarding PTO delays [under § 154(b)], the absence of any such prohibition regarding Hatch-Waxman extensions, and the mandate in § 156 that the patent term shall be extended if the requirements enumerated in that section are met, support the conclusion that a patent term extension under § 156 is not foreclosed by a terminal disclaimer." *Id.*

*Id.* at 1373-74 (emphasis added).

That Section 154(b)(2)(B) "expressly excludes patents in which a terminal disclaimer was filed from the benefit of a term adjustment for PTO delays" is instructive. If a terminal disclaimer preempts PTA then, logically, the conditions which necessitated that terminal disclaimer

(obviousness-type double patenting) should also preempt PTA.  The Staff highlights the PTAB's reasoning in *Cellect*:

> We are not persuaded by Appellant's arguments. First, unlike a PTE under § 156, the statute for a PTA (§ 154) states that any terminal disclaimer should be applied after any PTA. Because the primary purpose of a terminal disclaimer is to overcome double patenting, the same rule should apply to double patenting. Moreover, even if double patenting was based on the expiration date before applying any PTA (akin to a PTE), double patenting still would be appropriate here because two patents that are obvious variants and expire on the same day still need a terminal disclaimer to enforce common ownership. Second, the result here is not inequitable because the Federal Circuit has said the existence of any extra term of a second patent is itself what is inequitable, and Appellant still enjoyed the entire term of the earliest patent. Third, double patenting is a substantial new question because, regardless of what should have happened in the original prosecution, there is insufficient evidence that the original examiner actually considered double patenting.

*Ex Parte Cellect LLC Pat. Owner & Appellant*, No. APPEAL 2021-005303, 2021 WL 5755329, at *3 (P.T.A.B. Dec. 1, 2021).

In response, VideoLabs cites a district court decision, *Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.*, 533 F.Supp. 170 (D.N.J. Apr. 7, 2021), which expressly determined to treat PTA the same as PTE, noting it was "swayed by the Federal Circuit's observation that 'a judge made doctrine' should not be used to 'cut off a statutorily-authorized time extension.'"  533 F.Supp. at 213-4.  That court, however, neglected to consider the terminal disclaimer exception to Section 154 noted above.  This diminishes its persuasive value as compared to the arguments of the PTAB, ASUS, and the Staff.  Again, from a policy perspective, the fact that PTA stems solely from USPTO delays does not necessarily mean the application is free from gamesmanship.  It is easy to conceive of an applicant filing multiple applications towards plainly indistinct subject matter with the hope that at least some escape the Examiner's notice.  Should the examiner fail to issue the appropriate rejection, and fail to process the application in a timely manner, the exact situation warned of by the Federal Circuit will occur:

34

In that regard, the Federal Circuit was concerned that "the terms of such patents could be subject to significant gamesmanship during prosecution." *Id.* In other words, if such conduct were permitted, "inventors could potentially obtain additional patent term exclusivity for obvious variants of their inventions while also exploring the value of an earlier priority date during prosecution." *Id.*

*Mitsubishi*, 533 F.Supp. at 212-213 (citing *Gilead*, 753 F.3d at 1215); *Abbvie*, 764 F.3d at 1373 ("But this argument ignores another crucial purpose of the doctrine: It is designed to prevent an inventor from securing a second, later expiring patent for the same invention. . . . That problem still exists. Patents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to examination delays at the PTO.").  It is much more reasonable to limit *Ezra* to the exact context of the public-private bargain behind PTE.  *See Ezra*, 909 F.3d at 1369 ("Section 156 was part of the Drug Price Competition and Patent Term Restoration Act of 1984 (Hatch-Waxman Act) and was enacted to restore the value of the patent term that a patent owner loses during the early years of the patent because the product cannot be commercially marketed without approval from a regulatory agency (*e.g.*, Food and Drug Administration approval)."), 1372 ("Importantly, Congress did not, through § 156, compensate a loss of term for all patents affected by regulatory review. In striking a balance between the competing interests of new drug developers and low-cost generic competitors, Congress limited a PTE grant for such a patent owner to only one of its patents.").

## IV.    CONCLUSION

In sum, it is my initial determination to GRANT ASUS' motion for summary determination that claim 1 of the 238 patent and claims 1-4 of the 878 patent are invalid for obviousness-type double patenting (1323-031).   And with all asserted claims having been found invalid, the investigation is terminated in its entirety, all other pending motions are denied as moot, and the upcoming evidentiary hearing is canceled.  This initial determination, along with any supporting documentation, is hereby certified to the Commission.

Pursuant to 19 C.F.R. § 210.42(h), this initial determination shall become the determination of the Commission forty-five (45) days after the date of service of the initial determination, unless a party files a petition for review of the initial determination within ten (10) business days after service of the initial determination pursuant to 19 C.F.R. § 210.43(a), or the Commission, pursuant to 19 C.F.R. § 210.44, orders on its own motion a review of the initial determination or certain issues herein.  Any issue or argument not raised in a petition for review, or response thereto, will be deemed to have been abandoned and may be disregarded by the Commission in reviewing the Initial Determination pursuant to 19 C.F.R. §§ 210.43(b) and (c).

Within seven days of the date of this document, the parties shall submit to the Office of the Administrative Law Judges a joint statement as to whether or not they seek to have any portion of this document deleted from the public version.  If the parties do seek to have portions of this document deleted from the public version, they must submit to this office a copy of this document with red brackets indicating the portion or portions asserted to contain confidential business information.  The submission may be made by email and/or hard copy by the aforementioned date and need not be filed with the Commission Secretary.

**SO ORDERED.**

Cameron Elliot
Administrative Law Judge

36

# EXHIBIT 11

ORAL ORDER: Having reviewed the parties' most recent letters regarding Fairchild's contentions in this matter, as well as the related filings, and having heard oral argument on the issue on October 3, 2014, IT IS HEREBY ORDERED that, in light of all the facts and circumstances, for the reasons stated below as well as those stated during the recent teleconference, Defendant Power Integrations' ("Power") position is more reasonable than Plaintiff Fairchild's. For example, Fairchild provides no persuasive reason for changing its identification of certain structures in its May 2014 infringement contentions, or for citing new prior art in its supplemental invalidity contentions well after the close of fact discovery in December 2013. Moreover, Fairchild cannot avoid the boundaries of its timely infringement contentions by not disclosing the substance of its doctrine of equivalents and structural equivalents contentions until its Corrected Opening Expert Report of Dr. Collins in September 2014. This conclusion is supported by application of the Pennypack factors, as: Power would be prejudiced by allowing Fairchild to proceed on its untimely contentions, which would likely lead to loss of the current trial date and the necessity for additional expensive discovery, and could potentially require additional claim construction proceedings; Power could not cure the prejudice without undue expense and/or delay, including disruption of the currently-scheduled May/June 2015 trial; while the Court does not find Fairchild acted in bad faith, it did willfully proceed on timing in conflict with the Court's scheduling order for fact discovery, and there was no express agreement from Power to allow Fairchild to so proceed; and while Fairchild will lose some "critical" evidence, it may proceed on its timely-filed contentions. Accordingly, having previously advised the parties that the Court intended (after the now-completed supplemental briefing) to side with whichever of the two positions was most reasonable, the Court GRANTS Power's motion to strike, finding this not to be an "extreme" sanction under the circumstances. As proposed by Power, Fairchild is permitted to provide new expert reports limited to and consistent with its timely contentions submitted prior to the close of fact discovery. The parties shall SUBMIT a proposed order modifying the scheduling order, while keeping this case on track for the currently-scheduled trial, no later than October 27, 2014. ORDERED by Judge Leonard P. Stark on 10/22/14. (ntl) (Entered: 10/22/2014)

## <u>CERTIFICATE OF SERVICE</u>

I, Melanie K. Sharp, Esquire, hereby certify that on October 19, 2023, I caused to be electronically filed a true and correct copy of Letter to The Honorable Gregory B. Williams from Melanie K. Sharp in Support of Sight Sciences, Inc.'s Motion to Strike Defendants' New and Untimely Obviousness-Type Double Patenting Defense with the Clerk of the Court using CM/ECF, which will send notification to the following counsel of record:

John W. Shaw
Karen E. Keller
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

I further certify that on October 19, 2023, I caused a copy of the foregoing document to be served on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL:**

| | |
|---|---|
| Gregg LoCascio | Jeanne M. Heffernan |
| Sean M. McEldowney | Kat Li |
| W. Todd Baker | Austin C. Teng |
| Justin Bova | Ryan J. Melde |
| Steven Dirks | Lydia B. Cash |
| Socrates L. Boutsikaris | Kirkland & Ellis LLP |
| Kirkland & Ellis LLP | 401 Congress Avenue |
| 1301 Pennsylvania Avenue, N.W. | Austin, TX  78701 |
| Washington, DC  20004 | jheffernan@kirkland.com |
| gregg.locascio@kirkland.com | kat.li@kirkland.com |
| sean.mceldowney@kirkland.com | austin.teng@kirkland.com |
| justin.bova@kirkland.com | ryan.melde@kirkland.com |
| steven.dirks@kirkland.com | lydia.cash@kirkland.com |
| socrates.boutsikaris@kirkland.com | |

Ryan Kane
Nathaniel DeLucia
Laura Zhu
Emily C. Sheffield
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
nathaniel.delucia@kirkland.com
laura.zhu@kirkland.com
emily.sheffield@kirkland.com

Brian A. Verbus
Jacob Rambeau
300 N. LaSalle
Chicago, IL 60654
brian.verbus@kirkland.com
jake.rambeau@kirkland.com

Noah S. Frank
200 Clarendon Street
Boston, MA 02116
noah.frank@kirkland.com

_____/s/ Melanie K. Sharp_____
Melanie K. Sharp (No. 2501)

30886572.1

2