IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SIGHT SCIENCES, INC.,

          Plaintiff,

   v.

IVANTIS, INC., ALCON RESEARCH
LLC, ALCON VISION, LLC, and ALCON
INC.,

          Defendants.

**Redacted - Public Version**

C.A. No. 21-1317-GBW-SRF

**ALCON'S RESPONSES TO SIGHT'S
<u>CONCISE STATEMENTS OF ADDITIONAL FACTS</u>**

OF COUNSEL:
Gregg LoCascio
Sean McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

Pursuant to Paragraph 14(b) of the Scheduling Order (D.I. 93), Alcon submits its responses to Sight's concise statements of additional facts ("Resp. SOF") with its reply brief in support of its motions for summary judgment of invalidity:

1.      Response to D.I. 328, Sight's Concise Statement of Additional Facts in Support of Sight's Opposition to Alcon's Summary Judgment Motion No. 1 ("Resp. SOF1") (Ex. 1).

2.      Response to D.I. 329, Sight's Concise Statement of Additional Facts in Support of Sight's Opposition to Alcon's Summary Judgment Motion No. 2 ("Resp. SOF2") (Ex. 2).

3.      Response to D.I. 330, Sight's Concise Statement of Additional Facts in Support of Sight's Opposition to Alcon's Summary Judgment Motion No. 3 ("Resp. SOF3") (Ex. 3).

4.      Response to D.I. 331, Sight's Concise Statement of Additional Facts in Support of Sight's Opposition to Alcon's Summary Judgment Motion No. 4 ("Resp. SOF4") (Ex. 4).

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

/s/ Andrew Russell
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
Attorneys for Defendants

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ALCON'S RESPONSE TO SIGHT'S CONCISE STATEMENT OF ADDITIONAL FACTS IN SUPPORT OF SIGHT'S OPPOSITION TO ALCON'S <u>SUMMARY JUDGMENT MOTION NO. 1</u>**

OF COUNSEL:
Gregg LoCascio
Sean McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

1.      Disputed. The Block Limitation claims have no common structural features that meaningfully limit the claims or guide a POSA on how to achieve the claimed function. D.I. 298-17 §XVII.A; D.I. 298-18 §XX.A. The only "structure" common to all Asserted Claims is "support." Sight's example "structural limitations" (a)-(i) are generic structures and nothing in the specification indicates that having any of these achieves the claimed result. Dr. Downs admits these limitations on their own would not satisfy the claimed result. *See, e.g.,* D.I. 298-24 at 145:25-146:13 (radius of curvature); D.I. 298-15 ¶¶1091 (prop), 1084; D.I. 298-24 at 129:10-24, 140:13-141:14 (minimal contact); Ex. 67 at 191:22-193:6 (same). There are no working examples or clear guidance in the specification that explain what configurations, shapes, or features must be present to achieve the claimed function. D.I. 298-17 §XVII.A; D.I. 298-18 §XX.A. Dr. Downs also admitted a POSA would need to conduct a trial-and-error process to determine the full scope of the claims. *See, e.g.,* D.I. 298-24 at 86:6-19, 87:13-88:22, 98:10-100:11, 103:5-15, 105:23-106:5.

2.      Disputed. The Asserted Patents do not describe "prop[ping] open Schlemm's canal while having minimal contact" as a common characteristic of devices that achieve the Block Limitation. *See, e.g.*, D.I. 298-1 at 10:61-65 ("A common characteristic of the support configurations…is that they need not have continuous or extensive contact with a wall of Schlemm's canal. Indeed, ***many*** of the described devices and structures have minimal tangential, periodic, or sporadic contact with the wall." (emphasis added)); *see also supra* ¶1. Minimal, tangential, and periodic contact are claimed in dependent claims and therefore, by definition, cannot be common characteristics. *See* D.I. 298-1, cls. 2, 3, 7, 33, 34, 38, 65, 66, 69; D.I. 287 at 2 (construing "periodic contact" as "contact that is interrupted by a non-contact point").

3.      Disputed. The specification and two-dimensional figures provide no detail about the many variables of the support (*e.g.,* length, material, size, features), and many of these are not

shown as propping because they are not depicted as implanted. D.I. 298-18 ¶¶504-505. Dr. Downs admits he did not analyze whether the disclosed supports meet the surface area contact limitation and could only make an "educated guess" that Figure 9A would "not substantially interfere with flow." D.I. 298-24 at 130:14-132:4; 132:15-134:11. The inventors also argued that a POSA "would not be able to determine the amount contact of any one of [the cited prior art's] devices with any degree of certainty from the figures alone." Ex. 74 at 2814.

4.      Disputed. Dr. Downs testified that to determine the *full scope* of the Block Limitation claims, a POSA would apply an extensive winnowing process (select, model, and test) to all "candidate devices that one would consider is likely to lower intraocular pressure." D.I. 298-24 at 87:13-88:22; *see also id.* at 98:1-100:11. This experimentation requires considerable time and expense for each individual device. *Id.* at 35:7-25, 98:10-100:11, 105:23-106:5, 114:25-115:6, 117:13-119:9; D.I. 298-41; D.I. 298-54; D.I. 298-55 at -702-703; D.I. 298-25 at 122:23-123:14. The only devices Dr. Downs explained a POSA could weed out without testing were those that common sense would dictate could not be implanted (*e.g.*, "a big, round, solid object"). D.I. 298-24 at 86:6-19; *id.* at 87:13-88:22, 95:6-96:11, 98:1-100:11. Dr. Downs explained that "[b]est practice" as of 2006 would have been to model and then do perfusion testing in cadaver eyes, *i.e.*, a two-step experimentation for each. D.I. 298-15 ¶1071. Dr. Downs did not analyze whether any embodiments could be implanted. D.I. 298-24 at 130:14-132:4, 132:15-134:11.

5.      Disputed. *See supra* ¶4.

6.      Disputed but immaterial. At the time of Alcon's statements about prior art, Sight's only interpretation of the Block Limitation was based on increased outflow and whether a device *permitted* flow. D.I. 59-1, Ex. M at 9-13; D.I. 332-5 at 39-41 (opining that prior art devices with openings improve outflow). The prior art undisputedly discloses fenestrations, non-contact points,

and arcuate members. D.I. 298-15 §§VII.A.1.c, A.3.c, B.1.c, B.3.c, C.2.d, C.4.c, D.1.c, 3.c, E.1.c, E.3.c, IX.A.1.a, A.3.a, B.1.a, B.3.a, C.1.b, C.3; *see also, e.g.*, *id.* ¶¶228-232 (not disputing Lynch-984 discloses "arcuate member"); D.I. 298-18 ¶370; D.I. 298-24 at 158:25-160:11. Yet, Dr. Downs rejects Alcon's approach to determining whether a device meets the Block Limitation and instead opines that membrane specific flow is required. D.I. 298-15 §§VII.A.1.c, B.1.c, C.1.d, D.1.c, E.1.c.

7.     Disputed. The Block Limitation claims recite a biological result after a support is implanted that the Court has described as reducing IOP or increasing aqueous outflow. D.I. 273 at 6-7. The "Field" of the Asserted Patents recites that biological response. D.I. 298-1 at 12-20. The Asserted Patents do not teach structural features that would lead to predicable effects on flow, ██ ████████████████████████████████████████████████████████████████████ D.I. 298-54; D.I. 298-55; D.I. 298-25 at 184:2-185:5 (post-priority test of two stents got mixed results, including an ***increase*** in IOP). In addition, Dr. Downs admits that a POSA would perform models as only the ***first step*** in the iterative process of finding candidate devices followed by extensive perfusion studies. D.I. 298-24 at 87:13-88:22; 98:10-100:11; 105:23-106:5; *see supra* ¶4. Co-inventor David Badawi admitted that more tests should be done to determine functionality even after doing perfusion studies (the ***second step*** in Downs's iterative process). *Id.*; D.I. 298-25 at 175:16-177:5; 178:3-25; 181:12-16; 184:2-185:5; *see also id.* at 96:22-25, 122:23-123:5.

8.     Disputed. ████████████████████████████████████████ ██████████████████████████████ Nor does Sight dispute that they have not explained how the Helix embodies the invention. D.I. 297 at 9 n.4. ████████████████████████ ████████████████████████████████████████████████████████ ████████████████ D.I. 298-25 at 173:24-175:15, 182:3-23. ████████ ████████████████████████████████████████████ . Exs. 75-77. David Badawi

admitted that more tests should be done to determine functionality. *See supra* ¶7. ███████

████████████████████████████████████████████████████████████████████

███████████████ *Compare* D.I. 298-29 at 115-16 *with* D.I. 298-1 at Figs. 8E-F. Sight provides

zero evidence David Badawi contacted other manufacturers to seek their independent capabilities.

9.      Disputed but immaterial. Sight does not dispute that determining the *full scope* of

the Block Limitation claims would be undue even if analytical and computational modeling was

routine. *See supra* ¶4. Even testing showing that a device facilitated and did not block flow is

insufficient to determine whether the device would achieve a reduction in IOP. *See supra* ¶8.

10.     Disputed. Dr. Downs admits outflow alone is not enough to determine whether the

Block Limitation is satisfied. D.I. 298-15 ¶149 (disagreeing that prior art's increased net efflux of

aqueous meets the Block Limitation); D.I. 298-23 at 202:7-15.

11.     Disputed. *See supra* ¶4.

12.     Disputed. There is no evidence that fluorescent dye studies "visualize flow of

aqueous humor through the trabecular meshwork and Schlemm's canal" *in vivo*, and a POSA

would not have been able to infer *in vivo* functionality from those studies. D.I. 301 ¶¶7-8; D.I.

298-19 ¶109; D.I. 340-1 ¶¶165, 167-172; D.I. 340-37 at 214; Ex. 67 at 231:2-232:25, 236:3-237:7,

239:1-8, 244:20-245:5, 284:11-285:22, 287:16-288:12; D.I. 340-36 at 689-690; D.I. 298-18 ¶537.

13.     Disputed. Sight relies only on statements regarding what the Hydrus is ***designed*** to

do ███████████████████████ but provides no evidence that fluid flows

through the trabecular meshwork. *See* D.I. 292-22 at 415712, 415721; D.I. 292-10 at 94:21-23;

D.I. 292-23 at 7001; D.I. 292-24 at 276226; D.I. 292-25 at 74723; D.I. 292-26 at 23768.

14.     Disputed. *See supra* ¶13.

4

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Exhibit 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SIGHT SCIENCES, INC.,                    )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )   C.A. No. 21-1317-GBW-SRF
                                         )
IVANTIS, INC., ALCON RESEARCH            )
LLC, ALCON VISION, LLC, and ALCON        )
INC.,                                    )
                                         )
            Defendants.                  )

**ALCON'S RESPONSE TO SIGHT'S CONCISE STATEMENT OF ADDITIONAL
FACTS IN SUPPORT OF SIGHT'S OPPOSITION TO ALCON'S
<u>SUMMARY JUDGMENT MOTION NO. 2</u>**

<table>
<tr><td></td><td>John W. Shaw (No. 3362)</td></tr>
<tr><td></td><td>Karen E. Keller (No. 4489)</td></tr>
<tr><td></td><td>Andrew E. Russell (No. 5382)</td></tr>
<tr><td></td><td>Nathan R. Hoeschen (No. 6232)</td></tr>
<tr><td>OF COUNSEL:</td><td>SHAW KELLER LLP</td></tr>
<tr><td>Gregg LoCascio</td><td>I.M. Pei Building</td></tr>
<tr><td>Sean McEldowney</td><td>1105 North Market Street, 12th Floor</td></tr>
<tr><td>Justin Bova</td><td>Wilmington, DE 19801</td></tr>
<tr><td>Steven Dirks</td><td>(302) 298-0700</td></tr>
<tr><td>Socrates L. Boutsikaris</td><td>jshaw@shawkeller.com</td></tr>
<tr><td>KIRKLAND & ELLIS LLP</td><td>kkeller@shawkeller.com</td></tr>
<tr><td>1301 Pennsylvania Avenue, N.W.</td><td>arussell@shawkeller.com</td></tr>
<tr><td>Washington, DC 20004</td><td>nhoeschen@shawkeller.com</td></tr>
<tr><td>(202) 389-5000</td><td>*Attorneys for Defendants*</td></tr>
</table>

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

1.      Disputed. D.I. 298-17 § XVIII; D.I. 298-18 § XXI; D.I. 297 at 14-18.

2.      Disputed. *See supra* ¶ 1. Claims with the Block Limitation claim "supports" defined by biological function achieved when implanted and the specification does not provide representative species or common structural features to achieve that function. *See infra* ¶ 3.

3.      Disputed but immaterial. The Asserted Patents provides non-limiting variables, including length, thickness, materials, curvature (D.I. 298-1 at 11:39-59, 12:55-13:46), yet do not provide any detailed examples (*e.g.*, the dimensions or features) of any supports to determine whether they satisfy the Block Limitation or disclose that Figures 5B-12H represent supports that achieve the function. *See generally* D.I. 298-1; *see also* D.I. 298-18 ¶¶ 502-03. The Asserted Patents do not describe the two-dimensional Figures 5B-12H as making "minimal contact." D.I. 327 at 9; *see also infra* ¶ 6. Dr. Downs did not analyze the amount of contact made by supports shown in Figs 5B-12H or have an opinion on whether they were implantable or covered by the claims. D.I. 298-24 at 130:22-131:14, 132:15-135:5.

4.      Disputed. Dr. Downs admitted that he did not analyze whether any embodiments in the Asserted Patents would satisfy the Block Limitation, only guessed as to whether one embodiment would substantially interfere with flow. D.I. 298-24 at 130:22-131:14, 132:15-135:5.

5.      Disputed but immaterial. There are no "instructive examples." *See supra* ¶ 3.

6.      Disputed. The Asserted Patents do not describe "scaffolding" or "minimal contact" as common structural features that achieve the Block Limitation. *See, e.g.*, D.I. 298-1 at 10:61-65 ("A common characteristic of the support configurations described here is that they need not have continuous or extensive contact with a wall of Schlemm's canal. Indeed, ***many*** of the described devices and structures have minimal tangential, periodic, or sporadic contact with the wall." (emphasis added)). Minimal and tangential contact are claimed in dependent claims and therefore,

1

by definition, cannot be a common characteristic. *See* D.I. 298-1 cls. 2-3, 33-34, and 65-65 (claiming "wherein the support" makes "minimal contact" or "tangential contact"). Dr. Downs also testified that minimal contact is not sufficient, on its own, to meet the Block Limitation. D.I. 298-24 at 145:16-146-13; *id.* 140:13-141:14.

7.      Disputed. D.I. 298-17 § XVIII; D.I. 298-18 § XXI; *see also supra* ¶¶ 3-6.

8.      Disputed. Dr. Downs testified that 20% contact (undisputedly "minimal") was insufficient to meet the Block Limitation. D.I. 332-10 at 129:7-24; *see supra* ¶6, 7.

9.      Disputed. *See supra* ¶¶ 6, 8. Fenestrations, radius of curvature, and surface area contact are separately claimed and therefore cannot be "common characteristics." D.I. 298-1 cl. 1 (no radius of curvature); D.I. 298-5 cl. 2 (fenestration), cl. 13 (surface area contact).

10.      Disputed. Dr. Downs could not say if there were more or less than one million supports that could be covered by the Asserted Claims. D.I. 298-24 at 34:19-35:5; D.I. 298-17 ¶ 1238 ("[T]he universe of possible supports is massive."), ¶ 1239 ("The patents' specification further demonstrates that the universe of supports is immense.").

11.      Disputed. The Block Limitation claims recite a biological result after a support is implanted that the Court has described as reducing intraocular pressure or increasing aqueous outflow. D.I. 273 at 6-7 ("[A] skilled artisan would evaluate whether a support 'substantially interferes' or 'significantly blocks' fluid flow in the eye 'by determining whether and increase in aqueous outflux (and therefore a decrease in IOP) has been achieved by the support.'"). The "Field" of the Asserted Patents likewise recites that biological response: "[T]he devices, kits and methods relate to intraocular implants implantable into Schlemm's canal that can reduce intraocular pressure without substantially interfering with fluid flow across Schlemm's canal." D.I. 298-1 at 1:12-20. The Asserted Patents do not teach structural features that would lead to

predicable effects on flow, as evidenced by █████████████████████████ ███████████████████ D.I. 298-54; D.I. 298-55; 298-25 at 184:2-185:5 ██████████ ██████████████████████████████████████████████████████████████ █████████████. In addition, Dr. Downs admits that a POSA would perform models as only the *first step* in the iterative process of finding candidate devices and would then need to perform extensive experimentation. D.I. 298-24 at 87:13-88:22; 98:10-100:11; 105:23-106:5. Sight's own CTO and co-inventor, David Badawi, admitted that more tests should be done to determine functionality even after perfusion studies (the *second step* in Downs's iterative process). *Id.*; D.I. 298-25 at 175:16-177:5; 178:3-25; 181:12-16; 184:2-185:5; *see also id.* at 96:22-25, 122:23-123:5.

12.     Disputed. Sight provides no evidence that Alcon made statements that Hydrus "facilitates" fluid flow. Sight relies on statements reflecting only the design intent of the Hydrus to ████████████████████████████████████████████████████████████ ██████████████████████. D.I. 292-22 at IVANTIS_SS_00415712 ███████████ ███████████████████████████████████████████████████); *id.* at IVANTIS_SS_00415721 ██████████████████████████); D.I. 292-10 at 94:21-23 (███████████████████████████████████████████); D.I. 292-23 at IVANTIS_SS_00007001 ████████████████████████████████████████████ ████████████████████████); D.I. 292-24 at IVANTIS_SS_00276226 ██████████████████████████████); *see also* D.I. 298-14 ¶¶87-89, 91, 95-96; D.I. 298-16 ¶¶45-49, 51-52, 62.

13.     Disputed. *See supra* ¶ 12.

14.     Undisputed but immaterial. Dr. Downs testified that a POSA would have to model or test to determine the full scope of the Block Limitation claims. D.I. 298-24 at 98:10-100:11

15.     Disputed but immaterial. Sight's "winnowing" process of modeling and experimentation requires extensive trial-and-error: modeling countless permutations with different configurations, shapes, materials, lengths, radii of curvature, and other variables, and then testing those models to determine which permutation of variables, if any, may achieve the Block Limitation function (D.I. 298-24 at 35:7-25; 98:10-100:11). Further, "a whole host" of assumptions not described in the Asserted Patents must be made. D.I. 298-24 at 73:9-75:6; *see also id.* 80:23-85:6, 98:10-99:13. Perfusions tests, in turn, require acquiring cadaver eyes from an eye bank, which Dr. Downs admits are unpredictable (D.I. 298-23 at 236:3-237:7), and testing that takes hours to days to complete for each eye. D.I. 298-55 at SGHT0161702-703 (193 hours); D.I. 298-41 (5 days); D.I. 298-24 at 98:10-100:11, 105:23-106:5, 114:25-115:6. Each study costs upwards of "several thousand dollars." D.I. 298-25 at 122:23-123:14; D.I. 298-24 at 117:13-119:9.

16.     Disputed but immaterial. At the time of Alcon's statements about prior art, Sight's only interpretation of the Block Limitation was based on increased outflow and whether a device ***permitted*** flow. D.I. 59-1, Ex. M at 9-13; D.I. 332-5 at 39-41 (opining that prior art devices with openings improve outflow). The prior art undisputedly discloses fenestrations, non-contact points, arcuate members. D.I. 298-15 §§ VII.A.1.c, A.3.c, B.1.c, B.3.c, C.2.d, C.4.c, D.1.c, 3.c, E.1.c, E.3.c, IX.A.1.a, A.3.a, B.1.a, B.3.a, C.1.b, C.3; *see also, e.g.*, *id.* ¶¶ 228-232 (not disputing Lynch-984 discloses "arcuate member") D.I. 298-18 ¶ 370; D.I. 298-24 at 158:25-160:11 (testifying any dispute would have been in his Report). Yet, Dr. Downs rejects Alcon's approach to determining whether a device meets the Block Limitation and instead opines that membrane specific flow is required. D.I. 298-15 §§ VII.A.1.c, VII.B.1.c, VII.C.1.d, VII.D.1.c, VII.E.1.c.

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

5

Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ALCON'S RESPONSE TO SIGHT'S CONCISE STATEMENT OF ADDITIONAL
FACTS IN SUPPORT OF SIGHT'S OPPOSITION TO ALCON'S
<u>SUMMARY JUDGMENT MOTION NO. 3</u>**

|  |  |
|---|---|
| | John W. Shaw (No. 3362) |
| | Karen E. Keller (No. 4489) |
| | Andrew E. Russell (No. 5382) |
| | Nathan R. Hoeschen (No. 6232) |
| OF COUNSEL: | SHAW KELLER LLP |
| Gregg LoCascio | I.M. Pei Building |
| Sean McEldowney | 1105 North Market Street, 12th Floor |
| Justin Bova | Wilmington, DE 19801 |
| Steven Dirks | (302) 298-0700 |
| Socrates L. Boutsikaris | jshaw@shawkeller.com |
| KIRKLAND & ELLIS LLP | kkeller@shawkeller.com |
| 1301 Pennsylvania Avenue, N.W. | arussell@shawkeller.com |
| Washington, DC 20004 | nhoeschen@shawkeller.com |
| (202) 389-5000 | *Attorneys for Defendants* |

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

1

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

1.       Disputed. D.I. 298-17 § XIX; D.I. 298-18 § XXII; D.I. 297 § III.C; D.I. 302.

2.       Disputed. Sight and its expert have repeatedly applied inconsistent interpretations of the Block Limitation. D.I. 339 at 11-14; D.I. 294 at 23-24; Alcon's Reply ISO Daubert § VII, filed concurrently with these Resp. SOF.

3.       Disputed but immaterial. The Asserted Patents provides non-limiting variables, including length, thickness, materials, curvature (D.I. 298-1 at 11:39-59, 12:55-13:46), yet do not provide any detailed examples (e.g., the dimensions or features) of any supports to determine whether they satisfy the Block Limitation. *See generally* D.I. 298-1; *see also* D.I. 298-18 ¶¶ 502-03. The Asserted Patents do not describe the two-dimensional Figures 5B-12H as making "minimal contact." D.I. 327 at 9; *see also infra* ¶5. Dr. Downs did not analyze the amount of contact made by supports shown in Figs 5B-12H or have an opinion on whether they were implantable or covered by the claims. D.I. 298-24 at 130:22-131:14, 132:15-135:5.

4.       Disputed but immaterial. There are no "instructive examples." *See supra* ¶ 3.

5.       Disputed. The Asserted Patents do not describe "minimal contact" as a common characteristic. *See, e.g.*, D.I. 298-1 at 10:61-65 ("A common characteristic of the support configurations described here is that they need not have continuous or extensive contact with a wall of Schlemm's canal. Indeed, ***many*** of the described devices and structures have minimal tangential, periodic, or sporadic contact with the wall." (emphasis added)). Minimal and tangential contact are claimed in dependent claims and therefore, by definition, cannot be a common characteristic. *See* D.I. 298-1 cls. 2-3, 33-34, and 65-65 (claiming "wherein the support" makes "minimal contact" or "tangential contact"). Dr. Downs also testified that minimal contact is not sufficient, on its own, to meet the Block Limitation. D.I. 298-24 at 145:16-146-13; *id.* 140:13-141:14.

6.     Disputed but immaterial. The Court acknowledged that the Block Limitations are terms of degree (*i.e.,* relative), and noted its construction was "without prejudice." D.I. 134 at 21-22; *id.* at 21 n.1; D.I. 273 at 6-7.

7.     Disputed but immaterial. At Sight and its expert's urging, the Court noted that a POSA would evaluate whether a support satisfies the Block Limitation "by determining whether an increase in aqueous outflux (and therefore a decrease in IOP) has been achieved by the support." D.I. 273 at 6; D.I. 327 at 18-19.

8.     Disputed. There are no "teachings" in the Asserted Patents of any analytical or computational modeling, cadaver eye perfusion testing, or fluorescence studies. And a POSA would also not have been able to infer with reasonable certainty how a device functions *in vivo* from any of those undisclosed models or tests or from using their skill, knowledge, and expertise. D.I. 301 ¶¶ 7-8 (A POSA would not be able to determine flow of fluid through trabecular meshwork *in vivo*.); D.I. 298-19 ¶ 109; D.I. 340-37 at IVANTIS_SS_00471214 (Sight's Chief Medical Officer stating that "we do not know how fluid flows in the trabecular meshwork or the collector channels and we do not have a way to follow outflow"); D.I. 298-23 at 231:2-232:25 (testifying that technology to visualize fluid flow in the trabecular meshwork or collector channels was "definitely not" available in 2006), 236:3-237:7 ("they don't have clinical records for these [cadaver] eyes… it's a problem with getting eyes from eye banks that you don't always know the full ocular history of an eye," including whether the eyes were diseased), 239:1-8 ("can't tell definitively" where at what portions of Hydrus are shown in fluorescence study image), Ex. 67, 244:20-245:5 (admitting that fluorescence study "doesn't conclude that there was flow through the windows [of the Hydrus]" and that it would be a "fair reading" that the authors of the fluorescence study "don't know for sure" where the fluid flowed through), Ex. 67, 284:11-285:22 ("hanging

2

your hat on studies like this is dangerous in real life because, you know, models can get you in trouble because they can mislead you without experimental validation."), D.I. 333-16 at 287:16-288:12 ("modeling studies…can provide you with some general guidance but you really need to do experiments."); D.I 340-36 at IVANTIS_SS_00344689-690 (study concluding that 15 mm version of Hydrus showed similar efficacy compared to 8 mm version despite having more openings abutting the trabecular meshwork, suggesting flow through bypass inlet rather than through windows); D.I. 340-1 ¶¶ 165-172; D.I. 298-18 ¶ 537. Indeed, Dr. Downs performed no analysis on whether any of the embodiments in the Asserted Patents satisfy the Block Limitation. D.I. 298-24 at 130:22-131:14, 132:15-135:5. And, any modeling or calculations performed require a "whole host" of assumptions that are not described in the Asserted Patents. D.I. 298-24 at 73:9-75:6, 77:19-79:21, 80:23-85:6, 98:10-99:13. At the time of Alcon's statements about prior art, Sight's only interpretation of the Block Limitation was based on increased outflow and whether a device **permitted** flow. D.I. 59-1, Ex. M at 9-13; D.I. 332-5 at 39-41 (opining that prior art devices with openings improve outflow). Dr. Downs rejects Alcon's approach to determining whether a device meets the Block Limitation and instead opines that membrane specific flow is required. D.I. 298-15 §§ VII.A.1.c, VII.B.1.c, VII.C.1.d, VII.D.1.c, VII.E.1.c.

9.      Disputed. *See supra* ¶ 8.

10.     Disputed. *See supra* ¶ 8.

11.     Disputed. *See supra* ¶ 8.

12.     Disputed. *See* D.I. 298-18 ¶ 538 ("Dr. Downs provides no analysis regarding how long a device would have to be to satisfy his requirement, what shape or configuration a support would have to take to create this alleged pressure differential, and how he would measure transmural flow specifically across the trabecular meshwork"); *see also supra* ¶ 8.

3

13.     Disputed. Sight provides no evidence that Alcon made statements to the FDA and/or doctors that Hydrus "facilitated fluid flow." Sight relies on statements reflecting only the design intent of the Hydrus to ***allow*** fluid to flow through the windows of the device to the extent there would be fluid flow across the trabecular meshwork. *See* D.I. 292-22 at IVANTIS_SS_00415712 (The Hydrus's "[w]indows along the length of the implant ***allow*** natural trabecular flow through the body of [the] device"), 415721 ("[M]icrostent geometry ***allows*** for outflow through TM through open windows"); D.I. 292-10 at 94:21-23 (stating "windows provide –have multiple functions. One is to ***allow*** aqueous flow"); D.I. 292-23 at IVANTIS_SS_00007001 ("Hydrus Microstent also has 3 large windows that face the trabecular meshwork to ***allow*** aqueous to easily pass through"); D.I. 292-24 at IVANTIS_SS_00276226 ("[A]queous outflow ***can*** still occur through the windows."); D.I 298-14 ¶¶ 87-89, 91, 95-96; D.I. 298-16 ¶¶ 45-49, 51-52, 62.

14.     Disputed but immaterial. Alcon's prior art related statements also do not have any bearing on the indefiniteness inquiry because at that point, Sight's only interpretation of the term was based on increased outflow and whether a device ***permitted*** flow. D.I. 59-1, Ex. M at 9-13; *see* D.I. 332-5 at 39-41 (opining that prior art devices with openings improve outflow). Sight insinuates it agrees with this analysis, D.I. 327 at 20, but Dr. Downs actually opines that ***none*** of the prior art references meet the Block Limitation, ultimately dismissing features of these references (*e.g.*, fenestrations, bypass inlets, or surface features designed to minimize contact) that would ***allow*** flow across the trabecular meshwork as insufficient to show that fluid ***does*** flow. *See, e.g.*, D.I. 298-15 §§ VII.A.1.c, VII.B.1.c, VII.C.1.d, VII.D.1.c, VII.E.1.c.

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Exhibit 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1317-GBW-SRF |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH | ) | |
| LLC, ALCON VISION, LLC, and ALCON | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ALCON'S RESPONSE TO SIGHT SCIENCES, INC.'S CONCISE STATEMENT OF
ADDITIONAL FACTS IN SUPPORT OF SIGHT SCIENCES, INC.'S OPPOSITION TO
ALCON'S MOTION FOR SUMMARY JUDGMENT NO. 4 CONCERNING
<u>OBVIOUSNESS-TYPE DOUBLE PATENTING</u>**

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)

OF COUNSEL:
Gregg LoCascio
Sean McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

1.      Disputed but immaterial. The Court denied Sight's motion to strike. D.I. 342.

2.      Disputed but immaterial. The Court denied Sight's motion to strike. D.I. 342.

3.      Disputed but immaterial. The Court denied Sight's motion to strike. D.I. 342.

4.      Undisputed.

5.      Disputed but immaterial. The Court denied Sight's motion to strike. D.I. 342.

6.      Disputed but immaterial. The Court denied Sight's motion to strike. D.I. 342. Whether the '361 and '443 patents' claims are patentably distinct from the '328 and/or '742 patents' claims "is a question of law," not fact. *See In re Basell Poliolefine Italia S.P.A.*, 547 F.3d 1371, 1375 (Fed. Cir. 2008).

7.      Disputed. It is apparent from the plain language of the claims, the art, and Sight's own admissions or statements that claims 3 and 5 of the '361 patent would have been obvious over the corresponding claims of the '328 Patent listed in D.I.297-1, Appendix X:

| '361 Patent | '328 Patent | Sight's Admissions/Statements |
|---|---|---|
| 3. The method of claim 1, wherein the high viscosity fluid is sodium hyaluronate. | 4. The method of claim 1, further comprising dilating Schlemm's canal prior to inserting the support. 5. The method of claim 4, wherein Schlemm's canal is dilated by injecting fluid into the canal. | D.I. 298-5, '328 Patent, 17:58-60 ("[A] high viscosity fluid such as sodium hyaluronate, or other dilating fluids *known in the art*, can be used to dilate the canal."). Ex. 66, Sight's Galanis Op. Rep. ¶99 ("Most clinicians, including myself, prefer sodium hyaluronate for viscodilation of Schlemm's canal due to its high viscosity properties."). |
| 5. The method of claim 1, wherein the support contacts the interior wall of the canal at least at three points. | 21. The method of claim 1, wherein when the support is inserted within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less | Ex. 79, Sight's Final Infringement Contentions, Ex. C, 33–34 (identifying Hydrus's windows as "fenestrations"), 39–40 (alleging fenestrations create multiple contact points). Ex. 81, Sight's Final Infringement Contentions, Ex. E, 61–70 (alleging Hydrus windows reduce the percentage of stent contact with Schlemm's canal) |

| '361 Patent | '328 Patent | Sight's Admissions/Statements |
|---|---|---|
| | than 30% of the surface area of C. | D.I. 298-5, '328 Patent, 14:52–53 ("The fenestrations can be created to make support 122 more porous in nature.").<br><br>D.I. 298-14, Downs Op. Rep. ¶115 ("I have identified a point of discontinuous contact along a cross-sectional perimeter that results from the windows of the [Hydrus]"). |

8.      Disputed. It is apparent from the plain language of the claims, the art, and Sight's

own admissions or statements that claims 42, 43, 54, 55, 58, 59, 70, and 71 of the '443 Patent

would have been obvious over the corresponding claims of the '742 Patent listed in D.I.297-1,

Appendix X:

| '443 Patent | '742 Patent | Sight's Admissions/Statements |
|---|---|---|
| 42. The device of claim 1 wherein the support is configured to contact a wall of Schlemm's canal at least at two points. | 2. The method of claim 1, wherein the support has at least one fenestration.<br>12. The method of claim 1, wherein at least a portion of the support is porous.<br>13. The method of claim 1, wherein when the support is disposed within a cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of C. | Ex. 78, Sight's Final Infringement Contentions, Ex. B at 74–76 (alleging fenestrations or "pores" create multiple contact points).<br>Ex. 80, Sight's Final Infringement Contentions, Ex. D, 35–46 (alleging Hydrus windows reduce the percentage of stent contact with Schlemm's canal)<br>D.I. 298-4,'742 Patent, 14:49–50 ("The fenestrations can be created to make support [] more porous in nature.").<br>D.I. 298-14, Sight's Downs Op. Rpt. ¶115 ("I have identified a point of discontinuous contact along a cross-sectional perimeter that results from the windows of the [Hydrus]"). |
| 43. The device of claim 42 wherein the support is configured to contact a wall of | 2. The method of claim 1, wherein the support has at least one fenestration.<br>12. The method of claim 1, wherein at least a portion of the support is porous.<br>13. The method of claim 1, wherein when the support is disposed within a | D.I. 298-4,'742 Patent, 14:49–50 ("The fenestrations can be created to make support 122 more porous in nature.").<br>D.I. 298-14, Sight's Downs Op. Rpt. ¶115 ("I have identified a point of discontinuous contact along a cross-sectional perimeter that results from the windows of the [Hydrus]"). |

| '443 Patent | '742 Patent | Sight's Admissions/Statements |
|---|---|---|
| Schlemm's canal at least at three points. | cylindrical section of the lumen of Schlemm's canal having an internal wall surface area C, the support contacts less than 30% of C. | Ex. 78, Sight's Final Infringement Contentions, Ex. B at 74–76 (alleging fenestrations or "pores" create multiple contact points).<br><br>Ex. 80, Sight's Final Infringement Contentions, Ex. D, 35–46 (alleging Hydrus windows reduce the percentage of stent contact with Schlemm's canal) |
| 54. The device of claim 1 wherein the support has a cross-sectional diameter of about 50 microns to about 500 microns. | 1. A method for treating an eye condition, comprising: implanting a support within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal. (emphasis added)<br><br>16. The method of claim 1, wherein the support is rigid. | D.I. 298-4,'742 Patent, 9:9–21 ("Beads can have cross-sectional dimensions in the range from about 50 microns to about 500 microns. Insertion of beads …into Schlemm's canal open the canal ….")<br><br>D.I. 298-24, 9/28 Downs Tr. at 91:14-93:2 ("…to actually do what a prop does, yes, you would need some particular rigidity…"). |
| 55. The device of claim 1 wherein the support has a cross-sectional diameter of about 190 microns to about 370 microns. | 1. A method for treating an eye condition, comprising: implanting a support within Schlemm's canal, wherein the support comprises an arcuate member, wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal. (emphasis added)<br><br>16. The method of claim 1, wherein the support is rigid. | D.I. 298-4, '742 Patent, 2:38–39 ("Schlemm's canal is small, approximately 190-370 microns in cross-sectional diameter, and circular.").<br><br>D.I. 298-24, 9/28 Downs Tr. at 91:14-93:2 ("…to actually do what a prop does, yes, you would need some particular rigidity…"). |

The only "distinction" Sight highlights between claims 58, 70, and 71 of the '443 patent and the '742 patents' claims is the non-limiting "kit" in the preamble, and Sight does not dispute that the device plus introducer in the '742 Patent claims would be a "kit" even if limiting. D.I. 339 § III.A.1; *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1385-86 (Fed. Cir. 2003)

3

(holding invalid for ODP a patent claiming a method for using a compound that was already claimed in an earlier patent). And the recitation of including instructions with the kit in claim 59 of the '443 patent would have been, at a minimum, obvious. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1309 (Fed. Cir. 2006) ("[A]dding the instructions limitation does not render claim 1 of the '611 patent non-obvious."); D.I. 340-21, Parrish Tr. at 163:3–166:17.

9.      Disputed. During prosecution of the '328 patent, the Examiner evaluated whether the claims of the '328 Patent were invalid for ODP over the claims of the '361 and/or '443 patents by analyzing whether the claims were patentably distinct, which necessarily required an obviousness determination. *See* D.I. 298-8 ¶2 (noting ODP is appropriate "because the examined application claim … would have been obvious over, the reference claim(s)"); *id*. ¶3 ("[W]here the only difference between the prior art and the claims was a recitation of relative dimensions … the claimed device was not patentably distinct from the prior art device."); *id*. ¶¶4–6 ("Although the claims at issue are not identical, they are not patentably distinct from each other …. Taken together, the patented claims suggest the instantly claimed method.").

10.     Disputed. During prosecution of the '742 Patent, the Examiner evaluated whether the claims of the '742 Patent were invalid for ODP over the claims of the '361 and/or '443 patents by analyzing whether the claims were patentably distinct, which necessarily required an obviousness determination. *See* D.I. 298-6 ¶5 (noting ODP is appropriate "because the examined application claim … would have been obvious over, the reference claim(s)").

11.     Undisputed. Sight stated that one chart showed the "similar scope" of the claims.

12.     Undisputed. Sight stated that one chart showed the "similar scope" of the claims.

OF COUNSEL:
Gregg LoCascio
Sean M. McEldowney
Justin Bova
Steven Dirks
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
Kat Li
Ryan J. Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
Nathaniel DeLucia
Emily Sheffield
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah S. Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: November 16, 2023

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2023, this document was served on

zsightsciencesivantis@cooley.com and the persons listed below in the manner indicated:

### <u>BY EMAIL</u>

Melanie K. Sharp
James L. Higgins
Taylor E. Hallowell
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

Orion Armon
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000
oarmon@cooley.com

Dustin M. Knight
Joseph Van Tassell
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190
(703) 456-8024
dknight@cooley.com
jvantassell@cooley.com

Michelle S. Rhyu, J.D., Ph.D.
Lauren Strosnick
Alissa Wood
Angela R. Madrigal
Juan Pablo Gonzalez
Jeffrey Karr
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94305
(650) 843-5000
rhyums@cooley.com
lstrosnick@cooley.com
amwood@cooley.com
jgonzalez@cooley.com
amadrigal@cooley.com
jkarr@cooley.com

Bonnie Fletcher Price
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 776-2099
bfletcherprice@cooley.com

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700a
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*