IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.:  21-1317-JLH-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | ████████████ |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | **Redacted – Public Version Filed on:** |
| | ) | **March 25, 2024** |
| Defendants. | ) | |

**[PROPOSED] FINAL JURY INSTRUCTIONS**

## TABLE OF CONTENTS

1. GENERAL INSTRUCTIONS ................................................................................ 1

   1.1   Juror's Duties ................................................................................................ 2

   1.2   Burdens of Proof .......................................................................................... 3

   1.3   Evidence Defined ......................................................................................... 5

   1.4   Direct and Circumstantial Evidence ............................................................ 7

   1.5   Consideration of Evidence ........................................................................... 8

   1.6   Statements of Counsel .................................................................................. 9

   1.7   Credibility of Witnesses; Weighing Conflicting Testimony ....................... 10

   1.8   Expert Witnesses ........................................................................................ 11

   1.9   Deposition Testimony ................................................................................. 12

   1.10  Demonstrative Exhibits ............................................................................... 13

   1.11  Use of Notes ................................................................................................ 14

2. THE PARTIES AND THEIR CONTENTIONS ............................................... 15

   2.1   Claim Construction—Generally ................................................................. 17

       2.1.1  Claim Construction for the Case ..................................................... 18

3. INFRINGEMENT ............................................................................................... 19

   3.1   Direct Infringement—Knowledge of the Patent and Intent to Infringe Are Immaterial ................................................................................................... 21

   3.2   Direct Infringement—Infringement ............................................................ 22

   3.3   Infringement of Dependent Claims ............................................................. 23

   3.4   Infringement of "Comprising of" Claims .................................................... 24

   3.5   Actively Inducing Patent Infringement ...................................................... 25

   3.6   Willful Infringement ................................................................................... 27

4. INVALIDITY ....................................................................................................... 31

   4.1   Prior Art ...................................................................................................... 32

       4.1.1  Prior Public Use ............................................................................... 34

       4.1.2  Prior Art Considered or Not Considered by the Patent Office ................. 35

   4.2   Invalidity of Independent and Dependent Claims ............................................. 36

   4.3   Person of Ordinary Skill in the Art ............................................................. 37

   4.4   Invalidity—Anticipation ............................................................................. 38

   4.5   Invalidity—Obviousness ............................................................................. 41

       4.5.1  Obviousness—The First Factor: Scope & Content of the Prior Art ......... 43

i

|  |  | 4.5.2 | Obviousness—Second Factor: Differences Between the Claimed Invention & the Prior Art | 44 |
|  |  | 4.5.3 | Obviousness—The Third Factor: Level of Ordinary Skill | 47 |
|  |  | 4.5.4 | Obviousness—The Fourth Factor: Other Considerations | 48 |
|  | 4.6 | Invalidity—Enablement | | 50 |
|  | 4.7 | Invalidity—Written Description Requirement | | 52 |
| **5.** | **DAMAGES** | | | **55** |
|  | 5.1 | Date Damages Begin | | 56 |
|  | 5.2 | Damages—Kinds of Damages That May Be Recovered | | 57 |
|  | 5.3 | Lost Profits | | 58 |
|  |  | 5.3.1 | Lost Profits—"But For" Test | 58 |
|  |  | 5.3.2 | Lost Profits—Panduit Factors | 59 |
|  |  | (A) | Panduit Factors—Demand for the Patented Product or Method | 60 |
|  |  | (B) | Panduit Factors—Acceptable Non-Infringing Substitutes | 61 |
|  |  | (C) | Panduit Factors—Market Share | 63 |
|  |  | (D) | Panduit Factors—Capacity | 64 |
|  |  | (E) | Panduit Factors—Amount of Profit—Incremental Income Approach | 65 |
|  | 5.4 | Reasonable Royalty | | 66 |
|  |  | 5.4.1 | Reasonable Royalty—Generally | 66 |
|  |  | 5.4.2 | Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method | 67 |
|  |  | 5.4.3 | Reasonable Royalty—Relevant Factors If Using the Hypothetical Negotiation Method | 68 |
|  |  | 5.4.4 | Reasonable Royalty—Apportionment | 70 |
|  |  | 5.4.5 | Reasonable Royalty—Timing | 72 |
|  |  | 5.4.6 | Reasonable Royalty—Availability of Non- Infringing Substitutes | 73 |
|  |  | 5.4.7 | Reasonable Royalty—Use of Comparable License Agreements | 74 |
|  | 5.5 | Damages—Kinds of Damages That May Be Recovered | | 75 |
| **6.** | **DELIBERATION AND VERDICT** | | | **76** |
|  | 6.1 | Unanimous Verdict | | 77 |
|  | 6.2 | Duty to Deliberate | | 79 |

6.3     Social Media ........................................................................................................ 80

6.4     Court Has No Opinion ....................................................................................... 81

1.      **GENERAL INSTRUCTIONS**[1]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  Please listen very carefully to everything I say.  Each of you has been provided a copy of these instructions.  You are welcome to read along as I deliver them.

You will have your written copy of these instructions, as well as my preliminary instructions, with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.  In following my instructions, you must follow all of them, including the ones I gave you on Monday at the start of the case and the ones I have given during trial, and not single out some and ignore others.  They are all important.

**Source(s):**

*Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919-JLH, D.I. 528 (D. Del. May 2, 2023) (**"*Arendi*"**), 1.1

*Twinstrand Biosciences, Inc. v. Guardant Health, Inc.*, C.A. No. 21-1126-GBW-SRF, D.I. 494 (D. Del. Nov. 14, 2023), 1.1

---

[1] Where the parties propose alternative instructions, Sight Sciences' proposed language is in **BLUE** and Ivantis and Alcon's is in **RED.**

## 1.1     Juror's Duties

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

**Source(s):**

*Arendi* **1.2**

### 1.2    Burdens of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."  I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

Sight Sciences asserts that Ivantis and Alcon infringe the Asserted Patents.  Sight Sciences also alleges that Ivantis and Alcon's infringement of the Asserted Patents was willful.  A party asserting patent infringement has the burden of proving infringement, whether that infringement was willful, and the amount of monetary damages, by a preponderance of the evidence.

That means, for Sight Sciences to prevail on each of its claims, it must prove to you, in light of all the evidence, that what it claims is more likely true than not.  To say it differently: if you were to put the favorable and unfavorable evidence on opposite sides of a scale, Sight Sciences has to make the scales tip, to any degree, to Sight Sciences' side in each instance.  If the scale should remain equal or tip in favor of Ivantis and Alcon, you must find in favor of Ivantis and Alcon.

In addition to denying Sight Sciences' claims that it infringes, Ivantis and Alcon assert that the asserted claims are invalid.  A party challenging the validity of a patent—in this instance, Ivantis and Alcon—has the burden to prove that the asserted claims are invalid by clear and convincing evidence.  Clear and convincing evidence means evidence that it is highly probable that a fact is true.

You may have heard of "proof beyond a reasonable doubt" from criminal cases. That requirement is the highest burden of proof.  You may think of this "beyond a reasonable doubt" standard as approaching certainty, without reasonable doubt. The "clear and convincing" standard

is between the preponderance of the evidence and beyond a reasonable doubt standards.  The beyond a reasonable doubt standard does not apply to civil cases like this one and, therefore, you should put it out of your mind.

In determining whether either party has met its burden, you may, unless otherwise instructed, consider all the evidence, regardless of who may have produced it.

**Source(s):**

*Arendi* **1.12**

**2024 AIPLA Model Patent Jury Instructions ("AIPLA Model Instructions"), § II(2)**

### 1.3 Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, matters I have instructed you to take judicial notice of, and the stipulations to which the lawyers agreed.

Certain models, reproductions, charts, summaries, and graphics have been used to illustrate certain evidence and testimony from witnesses. Unless I have specifically admitted them into evidence, these models, reproductions, charts, summaries, and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. None of my comments or questions are evidence.

During the trial, I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

**Source(s):**

*Arendi* 1.3

### 1.4     Direct and Circumstantial Evidence

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence."  I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which directly proves a fact.  If a witness testified that he saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Source(s):**

*Arendi* **1.4**

### 1.5    Consideration of Evidence

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Source(s):**

*Arendi* **1.5**

### 1.6     Statements of Counsel

A further word about statements of counsel and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

**Source(s):**

*Arendi* **1.6**

### 1.7     Credibility of Witnesses; Weighing Conflicting Testimony

You are the sole judges of each witness's credibility.  You may believe everything a witness says, or part of it, or none of it.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you.  You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

**Source(s):**

*Arendi* 1.7

### 1.8    Expert Witnesses

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

**Source(s):**

*Arendi* 1.8

### 1.9     Deposition Testimony

During the trial, certain testimony was presented to you by the playing of video excerpts from a deposition.  The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence.  You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out-of-court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

**Source(s):**

*Arendi* 1.9

### 1.10   Demonstrative Exhibits

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.

The remainder of the exhibits (including charts, models, reproductions, PowerPoint presentations, and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**Source(s):**

*Arendi* 1.10

### 1.11    Use of Notes

You may have taken notes during trial to assist your memory.  As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There is a general tendency to attach undue importance to matters which one has written down.  In addition, some testimony which is considered unimportant at the time presented, and thus not written down, may take on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**Source(s):**

*Arendi* **1.11**

## 2.    THE PARTIES AND THEIR CONTENTIONS

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

1.    Whether Sight Sciences has proven **[Sight Sciences' Proposal:** by a preponderance of the evidence]² that Ivantis and Alcon infringe one or more of the Asserted Claims.

2.    Whether Ivantis and Alcon have proven **[Sight Sciences' Proposal:** by clear and convincing evidence]³ that one or more of the Asserted Claims is invalid.

3.    If you decide that one or more of the Asserted Claims has been infringed by Ivantis and Alcon, you will also need to decide whether Sight Sciences has proven **[Sight Sciences' Proposal:** by a preponderance of the evidence]⁴ that Ivantis and Alcon infringement was willful.

---

² **Ivantis and Alcon's Position:** This language is duplicative and unnecessary.  Further, it is not found in the AIPLA model instruction that forms the basis for this instruction.

**Sight Sciences' Position:** Including the relevant standard of proof for the parties' contentions as part of this summary reflects standard practice in this District, and provides guidance that is key to the jury's deliberation as to each of these issues. *E.g.*, Final Jury Instructions, *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919-JLH (D. Del. May 2, 2023), D.I. 528, at 15; Final Jury Instructions, *RSB Spine, LLC v. DePuy Synthes, Sales, Inc.*, C.A. No. 19-01515-RGA (D. Del. Dec. 9, 2022), D.I. 275, at 5; Final Jury Instructions, *Persavvere, Inc. v. Milwaukee Elec. Tool Corp.*, C.A. 21-cv-00400-GBW (D. Del. Dec. 11, 2023), D.I. 240, at 13.

³ **Ivantis and Alcon's Position:** This language is duplicative and unnecessary. Further, it is not found in the AIPLA model instruction that forms the basis for this instruction.

**Sight Sciences' Position:** Including the relevant standard of proof for the parties' contentions as part of this summary reflects standard practice in this District, and provides guidance that is key to the jury's deliberation as to each of these issues. *E.g.*, Final Jury Instructions, *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919-JLH (D. Del. May 2, 2023), D.I. 528, at 15; Final Jury Instruction, *RSB Spine, LLC v. DePuy Synthes, Sales, Inc.*, C.A. No. 19-01515-RGA (D. Del. Dec. 9, 2022), D.I. 275, at 5; *Persavvere, Inc. v. Milwaukee Elec. Tool Corp.*, C.A. 21-cv-00400-GBW (D. Del. Dec. 11, 2023), D.I. 240, at 13.

⁴ **Ivantis and Alcon's Position:** This language is duplicative and unnecessary. Further, it is not found in the AIPLA model instruction that forms the basis for this instruction.

**Sight Sciences' Position:** Including the relevant standard of proof for the parties' contentions as part of this summary reflects standard practice in this District, and provides guidance that is key to the jury's deliberation as to each of these issues. *E.g.*, Final Jury Instructions, *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919-JLH (D. Del. May 2, 2023), D.I. 528, at 15; Final Jury Instruction, *RSB Spine, LLC v. DePuy Synthes, Sales, Inc.*, C.A. No. 19-01515-RGA (D. Del. Dec. 9, 2022),

4.     If you decide that one or more of the Asserted Claims has been infringed by Ivantis and Alcon and is not invalid, you will then need to decide the amount of money damages Sight Sciences has proven **[Sight Sciences' Proposal:** by a preponderance of the evidence]⁵ are to be awarded.

**Source(s):**

**AIPLA Model Instructions, § V(1)**

---

D.I. 275, at 5; *Persawvere, Inc. v. Milwaukee Elec. Tool Corp.*, C.A. 21-cv-00400-GBW (D. Del. Dec. 11, 2023), D.I. 240, at 13.

[5] **Ivantis and Alcon's Position:** This language is duplicative and unnecessary. Further, it is not found in the AIPLA model instruction that forms the basis for this instruction.

**Sight Sciences' Position:** Including the relevant standard of proof for the parties' contentions as part of this summary reflects standard practice in this District, and provides guidance that is key to the jury's deliberation as to each of these issues. *E.g.*, Final Jury Instructions, *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919-JLH (D. Del. May 2, 2023), D.I. 528, at 15; Final Jury Instruction, *RSB Spine, LLC v. DePuy Synthes, Sales, Inc.*, C.A. No. 19-01515-RGA (D. Del. Dec. 9, 2022), D.I. 275, at 5; *Persawvere, Inc. v. Milwaukee Elec. Tool Corp.*, C.A. 21-cv-00400-GBW (D. Del. Dec. 11, 2023), D.I. 240, at 13.

### 2.1    Claim Construction—Generally

Before you decide infringement and invalidity, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

**Source(s):**

**AIPLA Model Instructions § V(2)(2.0)**

### 2.1.1   Claim Construction for the Case

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. Those meanings have been provided to you in a chart in your binders.

**Source(s):**

**AIPLA Model Instructions § V(2)(2.1)**

### 3.      INFRINGEMENT

I will now instruct you as to the law you must follow when deciding whether Sight Sciences has proven that Ivantis and Alcon infringed any of the Asserted Claims.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the claimed invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Sight Sciences alleges that Ivantis and Alcon's Hydrus Microstent, both individually and in conjunction with accompanying materials, infringes the Asserted Claims.

[**Sight Sciences' Proposal:** In making your decision regarding infringement, you must compare the Accused Product and Method to the Asserted Claims. You must not determine infringement by comparing the Accused Product and Method to embodiments disclosed by the patent, including those shown in the patents' drawings. You should not, for example, look to whether the Accused Product or Method looks like the figures in the patents to determine whether or not the Accused Product or Method infringes one of the Asserted Claims.][6]

---

[6] **Sight Sciences' Position:** Sight Sciences' proposed language is not duplicative of Section 2.2 and Defendants do not contest that it is an accurate statement of law intended to avoid jury confusion.  *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 437 (D. Del. 2023) (instructing jury not to "compare the accused . . . [p]roducts with . . . the patent descriptions or figures."); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002) ("[I]nfringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent."); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1311 n.11 (Fed. Cir. 2005) ("[T]he question of infringement of course relates to the comparison of the accused tool to the claims, not to a specific figure of the patent."); *Star Tech. Grp., Inc. v. Testerion, Inc.*, 215 F.3d 1351 (table), 1999 WL 693829, at *6 (Fed. Cir. Sept. 7, 1999) ("It is fundamental that infringement is determined by comparing the accused device to the claims, rather than comparing the accused device to the figures of the patent specification."); *see also Zenith Labs., Inc. v. Bristol-Meyers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("[I]t is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper

A claim of a patent may be infringed directly or indirectly. I will now explain direct and indirect infringement.

**Source(s):**

**AIPLA Model Instructions § V(3)(3.0)**

---

comparison is with the claims of the patent."); *Atl. Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 846 (Fed. Cir. 1992) ("This court has repeatedly emphasized that infringement analysis compares the accused product with the patent claims, not an embodiment of the claims.") This language is intended to aid the jury in their deliberation regarding infringement, which should be based solely on the ***claims*** of the Asserted Patents.

**Ivantis and Alcon's Position:** Sight Sciences' proposed language does not come from the AIPLA Model Patent Jury Instructions and is duplicative of Section 2.2 above. The proposed language also gives the impression that the figures of the Asserted Patents are irrelevant, and they are not. The patent figures are directly relevant to Ivantis and Alcon's § 112 lack of written description defense for certain claims of the Asserted Claims, *see, e.g.*, *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) ("[T]he specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed."), and Sight Sciences' proposed instruction may confuse the jury with respect to this issue.

### 3.1    Direct Infringement—Knowledge of the Patent and Intent to Infringe Are Immaterial

In this case, Sight Sciences asserts that Ivantis and Alcon have directly infringed the Asserted Claims of the '482 and '443 Patents. Ivantis and Alcon are liable for directly infringing a claim if you find that Sight Sciences has proven that it is more likely than not that Ivantis and Alcon made, used, imported, offered to sell, or sold the invention defined in that claim of Sight Sciences' patent during the term of the '482 and '443 Patents.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.

**Source(s):**

**AIPLA Model Instructions § V(3)(3.1)**

## 3.2    Direct Infringement—Infringement

To determine infringement, you must compare the accused product or method with each patent claim Sight Sciences asserts is infringed.

You must determine infringement separately for each patent claim that Sight Sciences asserts is infringed.

A patent claim is infringed only if the accused product or method includes each and every element or method step recited in that patent claim. The same element or method step of the accused product or method may satisfy more than one element of a patent claim. If the accused product or method does not contain one or more elements or method steps recited in a claim, Ivantis and Alcon do not infringe that claim.

**Source(s):**

**AIPLA Model Instructions § V(3)(3.2)**

### 3.3     Infringement of Dependent Claims

There are two different types of claims in the patent. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. For example, Claim 1 of the '443 Patent, which is not asserted by Sight Sciences in this case, is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, Claim 8 of the '443 Patent is a dependent claim that refers to Claim 1 of the '443 Patent. A dependent claim includes all elements recited in the dependent claim, as well as all elements of the independent claim to which it refers.

To establish literal infringement of a dependent claim, Sight Sciences must show that it is more likely than not that the accused product or method includes each and every element of the independent claim and dependent claim.

If you find that an independent claim from which a dependent claim depends is not literally infringed, then you must find that the dependent claim is also not literally infringed.

**Source(s):**

**AIPLA Model Instructions § V(3)(3.5)**

23

### 3.4    Infringement of "Comprising of" Claims

The preambles to the Asserted Claims use the word "comprising." The word "comprising" means "including the following but not excluding others."

If you find that the accused product or method includes all of the elements in one of the Asserted Claims, even if the accused product or method includes additional components or method steps, you must find that the accused product or method literally infringes that claim.

**Source(s):**

**AIPLA Model Instructions § V(3)(3.6)**

### 3.5     Actively Inducing Patent Infringement

In this case, Ivantis and Alcon are accused of actively inducing physicians to directly infringe the Asserted Claims of the '361, '742, and '328 Patents.

To establish that Ivantis and Alcon actively induced infringement, Sight Sciences must prove by a preponderance of the evidence that (1) a single actor is responsible for direct infringement, namely, a single actor performs all of the steps of the method recited in at least one of the Asserted Claims, and (2) Ivantis and Alcon actively induced these acts of infringement by physicians.

To prove active inducement, Sight Sciences must establish that it is more likely than not that:

1.  Ivantis and Alcon aided, instructed, or otherwise acted with the intent to cause acts by physicians that would constitute direct infringement of one of the Asserted Claims;

2.  Ivantis and Alcon knew of the Asserted Claims, or showed willful blindness to the existence of the Asserted Claims, at that time;

3.  Ivantis and Alcon knew, or showed willful blindness, that the actions of physicians would infringe at least one of the Asserted Claims; and

4.  Physicians infringed at least one of the Asserted Claims.

Sight Sciences must prove all four elements to establish infringement.  In order to establish active inducement of infringement, it is not sufficient that Ivantis and Alcon directly infringes the claim. Nor is it sufficient that Ivantis and Alcon was aware of the act(s) by physicians that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Ivantis and Alcon specifically intended physicians to infringe the Asserted Patents or that Ivantis and Alcon believed there was a high probability that physicians would infringe the Asserted Patents, but deliberately avoided learning the infringing nature of the physicians' acts. The mere fact, if true, that Ivantis and Alcon knew or should have known that

there was a substantial risk that the physicians' acts would infringe the Asserted Patents would not

be sufficient to support a finding of active inducement of infringement.

**Source(s):**

**AIPLA Model Instructions § V(3)(3.8)**

**Federal Circuit Bar Association Modal Patent Jury Instructions (May 2020) ("Federal
Circuit Model Instructions"), B.3.2**

### 3.6     Willful Infringement

**[Sight Sciences' Proposal:** In this case, Sight Sciences argues that Ivantis and Alcon willfully infringed Sight Sciences' patents.

To prove willful infringement, Sight Sciences must persuade you that Ivantis or Alcon infringed one of the asserted claims. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Sight Sciences must persuade you that it is more likely true than not true that Ivantis or Alcon intentionally ignored or recklessly disregarded one of the asserted claims that you have also found infringed by Ivantis and Alcon. You must base your decision on Ivantis or Alcon's knowledge and actions at the time of infringement. Evidence that Ivantis or Alcon had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that Ivantis or Alcon engaged in additional conduct evidencing deliberate or reckless disregard of Sight Sciences' patent rights.

In deciding whether Ivantis or Alcon willfully infringed, you should consider all of the facts surrounding the infringement including: whether Ivantis or Alcon intentionally copied Sight Sciences' patented technology in developing the accused products; whether Ivantis or Alcon knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Ivantis or Alcon had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent or that the patent was invalid.**]** **[Ivantis and Alcon's Proposal:** If you

27

determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.][7]

---

[7] **Sight Sciences' Position:** This instruction mimics the willful infringement jury instruction provided by Judge Andrews in *Vectura Ltd. v. GlaxoSmithKline LLC*, No. 16-638-RGA, D.I. 319, at 6 (D. Del. May 3, 2019). As Judge Andrews explained in a subsequent ruling concerning this jury instruction: "First, the jury instruction was not error. Defendants proposed that I instruct the jury using language taken directly from *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016). However, as I explained then, the jury instruction on willful infringement was (1) taken from the Northern District of California's Model Patent Jury Instructions, and (2) is a more accurate statement of the law of willful infringement." *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579, 592 (D. Del. 2019) (cleaned up). Judge Andrews' instruction offers a clear and accurate statement of law concerning willful infringement that better suits this case, including by providing an explanation of recklessness within the context of willful infringement. In *Halo*, the U.S. Supreme Court held that recklessness may be subjective and need not be limited to *objective* recklessness. 579 U.S. at 106. As the *Halo* Court explained, citing to *Safeco Insurance Company of America v. Burr*, "a person is reckless if he acts 'knowing or having reason to know of facts which would lead a reasonable man to realize' his actions are unreasonably risky." *Id.* (quoting *Safeco*, 551 U.S. 47, 69 (2007) (emphasis omitted)); *see also* Final Jury Instructions, *First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*, C.A. No. 19-428-RGA (D. Del. Apr. 29, 2022), D.I. 380, at 22 (instructing the jury that "[t]o show that [defendant]'s infringement was willful, [plaintiff] must prove by a preponderance of the evidence that [defendant] knew of the Asserted Patents and deliberately or intentionally infringed them. For example, you may consider whether [defendant] acted despite a risk of infringement that was either known or so obvious that it should have been known."). The relevance of "recklessness" to the present matter necessitates an instruction that guides the jury in their deliberations. Moreover, Judge Andrews' instruction is more accessible (and thus less prone to confusion) than the alternatives offered by either the 2024 AIPLA Model Jury Instructions or the 2020 Federal Circuit Model Jury Instructions on this issue.

**Ivantis and Alcon's Position:** Ivantis and Alcon's proposal follows the 2024 AIPLA Model Patent Jury Instructions the parties have used as the basis for the majority of the proposed instructions, and which Sight does not allege is an incorrect recitation of the law. *See* 2024 AIPLA Model Patent Jury Instructions, Section V(11.0). Moreover, Sight Sciences' proposed instruction refers to "reckless disregard of Sight Sciences' patent rights," which is not present in either the AIPLA or FCBA model instructions. The addition of the "reckless disregard" language also risks confusing the issues, as *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) overruled the *Seagate* "objective recklessness" standard and stated that the "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." As the Federal Circuit has explained, "[u]nder *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). Additionally, in a decision after the *Vectura* case on which Sight relies, the Federal Circuit held that "[t]o establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the

[**Ivantis and Alcon's Proposal:** If you find that it is more likely than not that Ivantis and Alcon infringed a valid claim of the Asserted Patents, then you must also determine whether or not Ivantis and Alcon's infringement was willful.

To show that Ivantis and Alcon's infringement was willful, Sight Sciences must prove by a preponderance of the evidence that Ivantis and Alcon knew of the Asserted Patents and intentionally infringed at least one asserted claim. You may consider whether Ivantis and Alcon's behavior was deliberate or intentional. [**Sight Sciences' Proposal:**  However, you may not find that Ivantis and Alcon's infringement was willful merely because Ivantis and Alcon knew about the patent, without evidence that the infringement was deliberate, intentional, or reckless. A person is reckless if he acts knowing or having reason to know of facts which would lead a reasonable man to realize his actions are unreasonably risky.][8]  However, you may not find that Ivantis and Alcon's infringement was willful merely because Ivantis and Alcon knew about or were willfully blind to the Asserted Patents, without deliberate or intentional infringement. In determining

----

challenged conduct." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). Sight's "reckless disregard" language is at odds with the requirement for specific intent to infringe.

[8] **Sight Sciences' Position:** Should the court decline to adopt the instruction offered by Judge Andrews in *Vectura Ltd. v. GlaxoSmithKline LLC*, No. 16-638-RGA, D.I. 319, at 6 (D. Del. May 3, 2019) and prefers an instruction based on the 2024 AIPLA Model Jury Instructions, Sight Sciences requests deleting Ivantis and Alcon's proposed language "[h]owever, you may not . . . were willfully blind . . . infringement" as this deviates from the AIPLA Model and refers to willful blindness, which is likely to confuse the jury.  Instead, Sight Sciences proposes inserting its proposed language for the reasons Sight Sciences identifies in the preceding footnote.

**Ivantis and Alcon's Position:** Sight Sciences offers no support for its proposed language, which is not present in the AIPLA or FCBA model instructions. Moreover, it appears to come from the *Seagate* objective recklessness standard, which was overruled by *Halo*. The proper test of willfulness requires that "the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct."  *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021).

whether Sight Sciences has proven that Ivantis and Alcon's infringement was willful, you must consider all of the circumstances and assess Ivantis and Alcon's knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.]

4.        **INVALIDITY**[9]

Ivantis and Alcon contend that the Asserted Claims of the Asserted Patents are invalid. Ivantis and Alcon must prove invalidity by clear and convincing evidence.

Claims of an issued patent may be found to be invalid. Thus, you must determine whether each of Sight Sciences' claims are invalid.

**Source(s):**

**AIPLA Model Instructions § V(4)**

---

[9] **Ivantis and Alcon's Position:** Sight Sciences indicated "Sight Sciences anticipates further reducing the number of asserted patents following the Court's rulings on summary judgment and *Daubert* motions." If Sight does so, the reduction may impact the scope of Ivantis and Alcon's invalidity case, which would require updates to these instructions. Ivantis and Alcon reserve the right to narrow the scope of their case further and amend these instructions, in the event that Sight reduces the number of asserted claims for trial.

### 4.1    Prior Art

Prior art includes any of the following items received into evidence during trial:

1.      any product or method that was publicly known or used by others in the United States before June 26, 2006;

2.      any product or method that was in public use or on sale in the United States before June 26, 2006;

3.      any patents that issued before June 26, 2006 or patent applications that published before June 26, 2006;

4.      any published application for patent by another filed in the United States before June 26, 2006;

5.      a patent granted on an application for patent by another filed in the United States before June 26, 2006;

6.      any publications having a date of public accessibility before June 26, 2006; and

7.      any product or method that was made by anyone in the United States before June 26, 2006 where the claimed invention was not later abandoned, suppressed, or concealed.

[**Ivantis and Alcon's Proposal:** Sometimes, as a matter of efficiency and writing economy, a piece of prior art may choose to incorporate by explicit reference content from various other pieces of prior art rather than fully repeating their contents.[10] If one piece of prior art incorporates by reference material from another piece of prior art, the material incorporated by reference should be considered part of the document that incorporates by reference.[11]][12]

---

[10] *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1239 (Fed. Cir. 2001); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272 (Fed. Cir. 2000).

[11] *Sunovion Pharm. v. Dey Pharma*, C.A. No. 06-cv-113-LPS, D.I. 571 (Final Jury Instructions), at 34 (D. Del. Feb. 8, 2012).

[12] **Ivantis and Alcon's Position:** This proposal is an accurate statement of the law and is necessary to explain the concept of incorporation by reference to the jury before they decide anticipation.  A similar instruction was given in *Sunovion Pharm. v. Dey Pharma*, C.A. No. 06-cv-113-LPS, D.I. 571 (Final Jury Instructions), at 34 (D. Del. Feb. 8, 2012).  Sight's cases are inapposite; this instruction does not "charge[] the jury with the task of determining what material was incorporated by reference," it merely explains the concept that if one piece of prior art incorporates by reference

**Source(s):**

**AIPLA Model Instructions § V(5)(5.0)**

**Pre-AIA 35 U.S.C. § 102**

---

material from another piece of prior art, the material incorporated by reference should be considered part of the document that incorporates by reference.

**Sight Sciences' Position:** Incorporation by reference is a question of law, not fact; therefore, this is an improper instruction for the jury. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283 (Fed. Cir. 2000) ("The magistrate judge charged the jury with the task of determining what material was incorporated by reference [however] it was the duty of the magistrate judge to determine, as a matter of law, whether and what material was incorporated by reference into the [reference, such that] we conclude that instructing the jury to make that determination constituted legal error."); *c.f.*, *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1337 (Fed. Cir. 2010) (It "is correct that if incorporation by reference comes into play in an anticipation determination, it is the court's role to determine what material in addition to the host document constitutes the single reference."). Thus, Defendants' instruction invites the jury to improperly consider a question of law.  Defendants do not cite any model jury instructions in support of their proposed instruction.

### 4.1.1   Prior Public Use

Ivantis and Alcon contend that the asserted claims are invalid because the invention defined in those claims was publicly used by others in the United States before June 26, 2006.

The asserted claims are invalid if the invention defined in those claims was publicly used by others in the United States before June 26, 2006.

That invention was publicly used in the United States if an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States, and (2) ready for patenting.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Factors relevant to determining whether a claimed invention was in public use include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation, even if the specifics of the invention are kept secret; and the circumstances surrounding any testing and experimentation. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

**Source(s):**

**AIPLA Model Instructions § V(6.2)(6.2.1)**

### 4.1.2   Prior Art Considered or Not Considered by the Patent Office

Regardless of whether or not particular prior art references were considered by the Patent Examiner during the prosecution of the application that issued as the Asserted Patents, Ivantis and Alcon must prove invalidity by clear and convincing evidence.  This burden of proof remains the same whether or not the Patent Examiner considered the references.

Where Ivantis and Alcon are relying on prior art that was not considered by the Patent Examiner, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Examiner did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the Ivantis and Alcon have carried their clear-and-convincing burden of proving invalidity.

**Source(s):**

**AIPLA Model Instructions § V(5)(5.1)**

**Federal Circuit Model Instructions B.4.3c(ii)**

### 4.2    Invalidity of Independent and Dependent Claims

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid.

**Source(s):**

**AIPLA Model Instructions § V(5)(5.2)**

### 4.3 Person of Ordinary Skill in the Art

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art, also referred to as a POSA, in the field of the claimed invention as of the effective filing date.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1. the level of education and experience of persons actively working in the field as of June 26, 2006, including the inventor(s);

2. the types of problems encountered in the art as of June 26, 2006 and prior art solutions to those problems; and

3. the sophistication of the technology in the art as of June 26, 2006, including the rapidity with which innovations were made in the art as of June 26, 2006.

**Source(s):**

**AIPLA Model Instructions § V(5)(5.3)**

### 4.4     Invalidity—Anticipation

An invention must be new to be entitled to patent protection under the U.S. patent laws. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. To prove anticipation, Ivantis and Alcon must prove that the claimed invention is not new by clear and convincing evidence.

In this case, Ivantis and Alcon contend that some Asserted Claims of the Asserted Patents are invalid because the claimed inventions are anticipated. Specifically, Ivantis and Alcon contend that the '443 Patent Claim 8 is anticipated by Lynch-984, and the '742 Patent Claim 1 is anticipated by Lynch-984, Gharib-478, and the Glaukos iStent.

The parties agree that (i) U.S. Patent No. 6,450,984, which the parties refer to as "Lynch-984"; and (ii) U.S. Patent Publication No. 2002/0165478, which the parties refer to as "Gharib-478," are prior art.

Ivantis and Alcon contend that the Glaukos iStent is prior art.  Sight Sciences denies that the Glaukos iStent is prior art.  You must decide whether Ivantis and Alcon have proven, by clear and convincing e evidence, that the Glaukos iStent is prior art.

Anticipation must be determined on a claim-by-claim basis.  To anticipate a claim, each element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether each of the elements of the claimed invention is found in a prior art reference, you should consider what a person of ordinary skill in the art would have understood from his or her review of the particular reference.  Ivantis and Alcon may show that an asserted claim is not new, and thus is anticipated, by any of the following ways:

(i)     The Asserted Claim is not new if it was known to or used by others in the United States before June 26, 2006.  An invention is known when the information about it was reasonably accessible to the public on that date.

(ii)    The Asserted Claim is not new if it was already patented or described in a printed publication, anywhere in the world, before June 26, 2006.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.

(iii)   The Asserted Claim is not new if it was described in a patent granted on an application for patent by another filed in the United States before June 26, 2006.

(iv)    The Asserted Claim is not new if it was already made by someone else in the United States before June 26, 2006, if that other person did not abandon, suppress, or conceal the invention.

In determining whether a single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior art reference but also what is inherently present or disclosed in that prior art reference or what inherently results from its practice. Prior art inherently anticipates a patent claim if the missing element(s) or feature(s) would necessarily result from what the prior art reference teaches to a person of ordinary skill in the art. A party claiming inherent anticipation must prove that the allegedly inherent elements or features necessarily are present by clear and convincing evidence. Evidence outside of the prior art reference itself may be used to show that elements that are not expressly disclosed in the reference are inherent in it. To be inherent, the element(s) or feature(s) that are alleged to have been inherent must necessarily have existed in or resulted from the prior art reference. The fact that the element(s) or feature(s) are likely to have existed is not sufficient. It is not required,

however, that persons of ordinary skill recognize or appreciate the inherent disclosure at the time the prior art was first known or used. Thus, the prior use or disclosure of the prior art that was unrecognized and unappreciated can still be an invalidating anticipation, provided the allegedly inherent element(s) or feature(s) were necessarily present in the prior use or disclosure.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.

**Source(s):**

**AIPLA Model Instructions § V(6)**

**Federal Circuit Model Instructions B.4.3b-1**

*Arendi* **4.4**

### 4.5     Invalidity—Obviousness

Ivantis and Alcon contend that the Asserted Claims are invalid because the claimed invention(s) would have been "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to persons of ordinary skill in the art in the field of the invention as of June 26, 2006.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of June 26, 2006.

The following factors must be evaluated to determine whether Ivantis and Alcon have established that the claimed invention is obvious:

1.    The scope and content of the prior art relied upon by Ivantis and Alcon;

2.    The differences, if any, between each claim of the Asserted Patents that Ivantis and Alcon contend are obvious and the prior art;

3.    The level of ordinary skill in the art as of June 26, 2006; and

4.    Additional considerations, if any, that indicate that the claims were obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. Defendants must prove by clear and convincing evidence that the invention would have been obvious. Again, you must undertake this analysis separately for each claim that Ivantis and Alcon contend is obvious.

I will now explain each of the four factors in more detail.

41

**Source(s):**

**AIPLA Model Instructions § V(7)(7.0)**

### 4.5.1   Obviousness—The First Factor: Scope & Content of the Prior Art

In deciding obviousness, the parties agree that the prior art includes the following items received into evidence during the trial:

- U.S. Patent Publication No. 2002/0165478, which the parties refer to as "Gharib-478"

- U.S. Patent Publication No. 2003/0060752, which the parties refer to as "Gharib-752"

- U.S. Patent No. 6,638,239, which the parties refer to as "Gharib-239"

- U.S. Patent No. 6,450,984, which the parties refer to as "Lynch-984"

- WO 2005/105197, which the parties refer to as "Lynch-197"

- U.S. Patent No. 7,186,232, which the parties refer to as "Smedley"

The parties dispute whether the Glaukos iStent constitutes prior art. You must decide whether Ivantis and Alcon have proven, by clear and convincing evidence, that the Glaukos iStent is prior art.

**[Ivantis and Alcon's Proposal:** In addition to the above references, Ivantis and Alcon introduced other publications and patents that published prior to June 26, 2006.  You may also consider these references as part of the scope and content of the prior art.][13]

**Source(s):**

**AIPLA Model Instructions § V(7)(7.1)**

---

[13] **Sight Sciences' Position:** The language added here by Defendants deviates from the 2024 AIPLA Model Jury Instructions the parties have cited for nearly all of the instructions in this case, including this one.

**Ivantis and Alcon's Position:** Ivantis and Alcon may rely at trial on references that are indisputably prior art to establish the knowledge of a person having ordinary skill in the art, to show the level of ordinary skill in the art, to provide motivations to combine prior art, or for other proper purposes.  This instruction is appropriate to provide context to the jury that other publications that published before June 26, 2006 and which are discussed during the trial but not expressly listed in this instruction are likewise prior art.

### 4.5.2   Obviousness—Second Factor: Differences Between the Claimed Invention & the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art as of June 26, 2006. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the claimed invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art as of June 26, 2006. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proven obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long-known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the teachings in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.

If you find that a reason existed as of June 26, 2006 to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious.

Similarly, you may consider the possibility that a reference teaches away from the claimed invention. A reference teaches away from the invention when it would have discouraged a person of ordinary skill in the art as of June 26, 2006 from practicing the claimed invention, or when such a person would be led in a different direction than practicing the claimed invention.

You must undertake this analysis separately for each claim that Ivantis and Alcon contend would have been obvious.

In comparing the scope and content of each prior art reference to a patent claim, you may find that inherency may supply a claim element that is otherwise missing from the explicit disclosure of a prior art reference. The inherent presence of an element so found by you may be used in your evaluation of whether the claimed invention would have been obvious in view of the prior art. But, to rely on inherency to establish the existence of a claim element in the prior art in an obviousness analysis, that element necessarily must be present in, or the natural result of, the combination of elements explicitly disclosed by the prior art. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from an explicit disclosure is not sufficient to find inherency. However, if the disclosure is sufficient to show that the natural result flowing from the explicit disclosure *would* result in the claim element in question, inherency may be found. Something inherent from the explicit disclosure of the prior art must be limited when applied in an obviousness analysis and used only when the inherent element is the natural result of the combination of prior art elements explicitly disclosed. An important

45

consideration when determining whether a reference inherently discloses a previously unknown property of something is whether that property is unexpected. Although all properties of something are inherently part of that thing, if a property is found to be unexpectedly present, then the property may be nonobvious.

**Source(s):**

**AIPLA Model Instructions § V(7)(7.2)**

### 4.5.3   Obviousness—The Third Factor: Level of Ordinary Skill

To determine the obviousness of the invention, you must determine the level of ordinary skill in the field of the invention at the time of June 26, 2006. As mentioned earlier, you must consider and assess this factor before reaching your conclusion in this case.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

**Source(s):**

**AIPLA Model Instructions § V(7)(7.3)**

### 4.5.4   Obviousness—The Fourth Factor: Other Considerations

As part of deciding the issue of obviousness for each claimed invention, you must also consider certain factors, which may help to determine whether the invention would have been obvious. These factors are sometimes referred to as secondary considerations of non-obviousness. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole. Certain of these factors include:

1.  Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.  **[Sight Sciences' Proposal:** Was there long-felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?**]**[14]

---

[14] **Sight Sciences' Position:** This factor is among those included in Section V(7)(7.4) of the 2024 AIPLA Model Patent Jury Instructions, which provides the basis for this section, and is a relevant factor properly disclosed by Sight Sciences, including during expert discovery through Dr. Crawford Downs who offered opinions in his Rebuttal Report as to long-felt/unresolved need. Defendants' assertion that "[e]vidence of long-felt need was raised for the first time by Sight Sciences in a supplemental expert report served March 3, 2024" is mistaken.

**Ivantis and Alcon's Position:** Evidence of long-felt need was raised for the first time by Sight Sciences in a supplemental expert report served March 3, 2024, which Defendants raised with Sight as an untimely and improper new opinion. *Robocast, Inc. v. Apple Inc*., C.A. No. 11-235-RGA, 2014 U.S. Dist. LEXIS 10033, at *3 (D. Del. Jan. 28, 2014) (Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report.'"); *In re Asbestos Prods. Liab. Litig*., 289 F.R.D. 424, 425 (E.D. Pa. 2013) ("Rule 26(e) is not an avenue to correct 'failures of omission because the expert did an inadequate or incomplete preparation' . . . , add new opinions . . . or 'deepen' or 'strengthen' existing opinions.") (citations omitted). Sight Sciences then agreed to withdraw the improper new opinion. Ex. 2, 3/8/2024 Sight Email to Ivantis and Alcon ("we will re-serve the Downs Supplement without that section on Monday."). Thus, Sight Sciences has not disclosed any evidence of long-felt need, and it would be inappropriate to raise such evidence or argument for the first time at trial or to instruct the jury on issues that are not present in this case. On a meet and confer, Sight argued that Downs Rebuttal Report Paragraphs 1040-1048 disclose a long-felt need opinion. They do not, and Sight's position is contradicted by Sight's withdrawal of the Section of Dr. Downs's supplemental report attempting to raise that issue for the first time.  The only mention of "long-felt need" in Dr. Downs' report is in a general recitation of the secondary considerations of non-obviousness. *See* Ex. B, Downs Reb. Rep. ¶¶ 31, 1040. But Paragraphs 1041-1048 contain no discussion or opinion on any alleged long-felt need. *Id.*

3.      Did others try, but fail, to solve the problem that was solved by the claimed invention?

4.      Did others copy the claimed invention?

5.      Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.      Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. These factors are relevant only if there is a direct connection, or nexus, between the factor and the invention covered by the patent claim. Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Ivantis and Alcon have proven that the claimed invention would have been obvious.

There are also factors that, if established, may suggest that the claim was obvious. One such factor is whether the claimed invention was independently and simultaneously invented within a comparatively short amount of time. If you answer "yes" to that question, it may suggest that the claim was obvious.[15]

**Source(s):**

**AIPLA Model Instructions § V(7)(7.4)**

---

[15] *Trustees of Columbia Univ. in City of New York v. Illumina, Inc*., 620 F. App'x 916, 929-30 (Fed. Cir. 2015) ("Independently made, simultaneous inventions, made 'within a comparatively short space of time,' are persuasive evidence that the claimed apparatus 'was the product only of ordinary mechanical or engineering skill.'") (quoting *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010)); *L'Oreal USA, Inc. v. Olaplex, Inc.*, 844 Fed. App'x 308, 322-323 (Fed. Cir. 2021) (finding claims obvious where evidence showed independent development); *see also Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*, 70 F.4th 1331, 1339-40 (Fed. Cir. 2023) ("[C]opying," in the context of secondary considerations of nonobviousness, applies only "if the alleged copyist has in fact copied the patented product rather than independently arrived at a similar design.").

### 4.6     Invalidity—Enablement

Ivantis and Alcon contend that the Asserted Claims of the '482 Patent and '443 Patent are invalid for lack of enablement. Ivantis and Alcon bear the burden of establishing by clear and convincing evidence that the specification fails to satisfy the enablement requirement.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention as of the effective filing date of the claimed invention to make and use the full scope of the claimed invention without undue experimentation. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill in the art would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill in the field of the invention to practice the claimed invention does not mean that a patent does not meet the enablement requirement. [**Sight Sciences' Proposal:** A specification may call for a reasonable amount of experimentation to make and use a patented invention.[16] However, the amount of experimentation cannot amount to random trial-and-error discovery.[17]][18] Factors that you may

---

[16] *Amgen Inc. v. Sanofi*, 598 U.S. 594, 612 (2023).

[17] *Id.* at 614–15.

[18] **Ivantis and Alcon's Position:** Sight Sciences' proposed language does not come from the 2024 AIPLA Model Patent Jury Instructions, on which this Section is based. Further, the proposed language is not one of the factors to consider for determining enablement for which the jury is already being instructed. Sight Sciences' proposed language is thus unnecessary for resolving enablement. Further, Sight Sciences' first sentence is duplicative, as the jury has already been instructed that "The fact that some experimentation may be required for a person of ordinary skill in the field of the invention to practice the claimed invention does not mean that a patent does not meet the enablement requirement." And Sight Sciences' second sentence is a selective quotation

consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1.  The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques;

2.  The amount of direction or guidance disclosed in the patent;

3.  The presence or absence of working examples in the patent;

4.  The nature of the invention;

5.  The state of the prior art;

6.  The relative skill of those in the art;

7.  The predictability of the art; and

8.  The breadth of the claims.

**Source(s):**

**AIPLA Model Instructions § V(8)**

**Federal Circuit Model Instructions B.4.2b**

---

from *Amgen* and unnecessary.  For example, *Amgen* also provides that "[t]hese two approaches amount to little more than two research assignments," which is insufficient to meet the enablement requirement.  *Amgen Inc. v. Sanofi*, 598 U.S. 594, 614 (2023).  Sight's language purports to impose a heightened standard that if anything other than "random trial-and-error discovery" is required, the claim Is enabled, which is not the law.  *Id.*  Indeed, the Supreme Court describes that language as an "analogy" and notes "like many analogies, this one may oversimplify a bit, but it captures the gist of the problem."  *Id.* at 614-15.

**Sight Sciences' Position:** This language provides an accurate statement of law reflecting the Supreme Court's recent decision on this issue, and is necessary to provide clarity to the jury as to what degree of "experimentation" is allowed pursuant to § 112.  Notably, Defendants do not dispute that Sight Sciences' proposed language is an accurate statement of law.

51

### 4.7    Invalidity—Written Description Requirement

Ivantis and Alcon contend that the Asserted Claims of the '483 Patent and '443 Patent are invalid for failure to satisfy the written-description requirement. Defendants bear the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written-description requirement.

A patent must contain a written description of the product or method claimed in the patent. The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written-description requirement, the patent specification must describe each and every limitation of a patent claim, with clear, concise, and exact terms. When determining whether the specification discloses the invention, the claim must be viewed as a whole. To satisfy the written description requirement, the patent specification must describe the full scope of each element of the claimed invention, including each element thereof, either expressly or inherently.  A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

[**Ivantis and Alcon's Proposal:** In other words, the specification and claims as originally filed must convey to persons skilled in the art that the inventors had invented the subject matter that is spelled out in the claims that ultimately issued as a patent. The description must be

sufficiently clear that persons skilled in the art will recognize that inventors made the invention having each of the elements described in the claims.[19]][20]

The written-description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent.  The written description requirement is satisfied if the specification shows that the inventor possessed the subject matter claimed in the patent as of the effective filing date of the claimed invention, even though the claims may have been changed or new claims added since that time.

The exact words found in the claim need not be used. It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required. Enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.

The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention. However,

---

[19] *Masimo Corp. v. Philips Elect. N. Am. Corp.*, C.A. No. 09-80-LPS, D.I 908 (Final Jury Instructions) at 41 (D. Del. Sept. 30, 2014).

[20] **Sight Sciences' Position:** Defendants' proposed language does not come from the 2024 AIPLA Model Patent Jury Instructions, on which this section is largely modeled.  Nor is it based on the 2020 Federal Circuit Model Jury Instruction relied upon elsewhere in this section.  Instead, it consists of a few sentences arbitrarily selected by Defendants that inject bias and confusion into already comprehensive instructions regarding written description; Defendants' proposed language is unnecessary, and is duplicative of instructions reflected elsewhere in this section.

**Ivantis and Alcon's Position**: Ivantis and Alcon's proposed language comes from the Final Jury Instructions in *Masimo Corp. v. Philips Elect. N. Am. Corp.* and provides an accurate recitation of the law. The proposed language provides further clarification to help guide the jury about the written description requirement. C.A. No. 09-80-LPS, D.I 908 (Final Jury Instructions) at 41 (D. Del. Sept. 30, 2014).

a mere wish or plan for obtaining the claimed invention is not adequate written description. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1.      The nature and scope of the patent claims;

2.      The complexity, predictability, and maturity of the technology at issue;

3.      The existing knowledge in the relevant field; and

4.      The scope and content of the prior art.

The sufficiency of the written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

If you find that Ivantis and Alcon have proven by clear and convincing evidence that the Asserted Patents do not contain adequate written description for the inventions recited in any of the Asserted Claims, then you must find that claim is invalid.

**Source(s):**

**AIPLA Model Instructions § V(9)**

**Federal Circuit Model Instructions B.4.2a**

## 5.     DAMAGES

If you find that the accused product or method infringes any of the Asserted Claims, and that those claims are not invalid, you must determine the amount of damages to be awarded Sight Sciences for the infringement. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that each of the Asserted Claims is either invalid or is not infringed, then Sight Sciences is not entitled to any damages.

Sight Sciences must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence.

If proven by Sight Sciences, damages must be in an amount adequate to compensate Sight Sciences for the infringement. The purpose of a damages award is to put Sight Sciences in about the same financial position it would have been in if the infringement had not happened. But the damages award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance, only in the event you find in favor of Sight Sciences. You will need to address damages only if you find that one or more of the asserted claims are both not invalid and infringed.

**Source(s):**

**AIPLA Model Instructions § V(10)(10.0)**

**Federal Circuit Model Instructions B.5.1**

### 5.1     Date Damages Begin

Sight Sciences and Ivantis and Alcon agree that the date for the start of any damages calculation is no earlier than August 9, 2018, the earliest date **[Sight Sciences' Proposal: of]**[21] **[Ivantis and Alcon's Proposal: for which Ivantis could be liable for any type of]**[22] infringement. Although Ivantis made and used the Hydrus prior to that date, the parties agree that those activities **[Sight Sciences' Proposal: were not infringing]**[23]  **[Ivantis and Alcon's Proposal: are exempt from liability]** because they were reasonably related to seeking FDA approval.

**Source(s):**

**AIPLA Model Instructions § V(10.1)(10.1.1)**

---

[21] **Sight Sciences' Position:** the relevant statutory provision, 35 U.S.C. § 271(e)(1) states activities in the safe harbor "shall not be an act of infringement," not "exempt from infringement liability." Sight Sciences' proposed language thus corrects an erroneous statement of law in Defendants' language, which relates to deficiencies in the non-infringing alternatives theories proffered Defendants' experts, who misapplied by the law by solely opining about the availability of design-arounds beginning in 2012—six years before the date of first infringement.  *See* D.I. 291 at § XII(B), p. 40 and D.I. 354 at § VIII(B), p. 20.

[22] **Ivantis and Alcon's Position:** The alleged infringement in this case commenced in 2012 but was exempt from liability under § 271(e)'s safe harbor until the first alleged compensable infringement occurred in August 2018. *See* D.I. 339, Alcon's Answering Brief to Sight's Motions for Summary Judgment and to Exclude Expert Testimony, at 35. Ivantis and Alcon's proposal provides helpful guidance to the jury regarding the date of compensable infringement.

[23] **Sight Sciences' Position:** the relevant statutory provision, 35 U.S.C. § 271(e)(1), states that activities in the safe harbor are non-infringing, not exempt from liability. Sight Sciences' proposed language thus corrects an inaccurate statement of law in Defendants' language.

**Ivantis and Alcon's Position:** The alleged infringement in this case commenced in 2012 but was exempt from liability under § 271(e)'s safe harbor until the first alleged compensable infringement occurred in August 2018. *See* D.I. 339, Alcon's Answering Brief to Sight's Motions for Summary Judgment and to Exclude Expert Testimony, at 35. Ivantis and Alcon's proposal provides helpful guidance to the jury regarding the date of compensable infringement.

### 5.2    Damages—Kinds of Damages That May Be Recovered

There are two kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "What profits would the patent owner have made 'but for' the alleged infringement?" Lost profits can be recovered for the loss of revenue suffered by a patentee as a result of an infringing product or method competing in the same marketplace as the patentee's own products or methods. Lost profits can be recovered by the patentee for revenue loss associated with the patentee's products or methods that are themselves not covered by the patents at issue,[24] if those products or methods were sufficiently similar to the infringing product or method to directly compete in the same market segment for the same customers and if the patentee can prove that those lost sales were the result of the infringement.

Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and that the patent owner would have accepted just before infringement began. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

**Source(s):**

**AIPLA Model Instructions § V(10.2)**

---

[24] *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1548 (Fed. Cir. 1995) (en banc); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004).

### 5.3    Lost Profits

#### 5.3.1    Lost Profits—"But For" Test

Sight Sciences is seeking lost-profits damages for a portion of the accused infringing sales in this case. To prove lost profits, Sight Sciences must show that, but for Ivantis and Alcon infringement, Sight Sciences would have made additional profits through the sale of all or a portion of the sales of the Hydrus Microstent made by Ivantis and Alcon. Sight Sciences must prove by a preponderance of the evidence that it would have made additional profits but for Ivantis and Alcon selling the Hydrus Microstent. Part of your job is to determine what the parties who purchased or practiced the allegedly infringing product or method from Ivantis and Alcon would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by Sight Sciences, not the profits, if any, made by Ivantis and Alcon on the allegedly infringing sales.

**Source(s):**

**AIPLA Model Instructions § V(10.2.1)(10.2.1.1)**

### 5.3.2   Lost Profits—Panduit Factors

Sight Sciences has proven its lost profits if you find that Sight Sciences has proven each of

the following factors by a preponderance of the evidence:

1.   a demand for the patented product or method in the relevant market;

2.   the absence of acceptable non-infringing substitutes;

3.   that Sight Sciences had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by Ivantis and Alcon—in other words, that Sight Sciences was capable of satisfying the demand for the patented product or method; and

4.   the amount of profit that Sight Sciences would have made if it were not for Ivantis and Alcon infringement.

I will now explain each of these factors.

**Source(s):**

**AIPLA Model Instructions § V(10.2.1)(10.2.1.2)**

**(A)     Panduit Factors—Demand for the Patented Product or Method**

The first factor asks whether there was demand for the patented product or method, in the relevant market. Sight Sciences can prove demand for the patented product or method by showing significant sales of Ivantis and Alcon product or method that are covered by one or more of the asserted claims of the patents-in-suit. To use sales of Ivantis and Alcon product or method as proof of this demand, however, Sight Sciences' and Ivantis and Alcon products or methods must be sufficiently similar to compete against each other in the same market or market segment. Sight Sciences' product or method need not be covered by the Asserted Patents for Sight Sciences to be entitled to lost profits. However, Sight Sciences must demonstrate by a preponderance of the evidence that its products were sufficiently similar to Ivantis and Alcon's products to compete in the same market for the same customers and that Sight Sciences has suffered revenue loss as a result of that marketplace competition with the Accused Product or Method.[25]

**Source(s):**

**AIPLA Model Instructions § V(10.2.1)(10.2.1.3)**

---

[25] *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1548 (Fed. Cir. 1995) (en banc); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004); *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc*., 1 F.3d 1214, 1218–19 (Fed. Cir. 1993)

**(B)      Panduit Factors—Acceptable Non-Infringing Substitutes**

The second factor asks whether non-infringing, acceptable substitutes for Sight Sciences' claimed product or method competed with Ivantis and Alcon infringing product or method in the marketplace and the impact of such substitutes on the marketplace absent the sale of Ivantis and Alcon product or method. If the realities of the marketplace are that competitors other than Sight Sciences would likely have captured some or all of Ivantis and Alcon sales of the infringing product or method, even despite a difference in the product or method, then Sight Sciences is not entitled to lost profits on those sales that would have been made by non-infringing substitute.

To be an acceptable substitute, the product or method must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitute also must not infringe the patent, either because they were licensed under the patent or they did not include all the features required by the patent. The acceptable substitute may be a product or method that involved a modification of the infringing product or method to avoid infringement or the removal of at least one feature of the invention from the product or method. The acceptable substitute, in addition to being either licensed or non-infringing, must have been available during the damages period.

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how to make or use the alleged substitute were readily available at the time of infringement. Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether an alleged infringer had to design or invent around the patented

technology to develop an alleged substitute.[26] If the acceptable substitute was not sold during the damages period, then Defendants must show by a preponderance of the evidence that, during the damages period, a competitor or Defendants had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute.

If you determine that some of Ivantis and Alcon customers would just as likely have purchased an acceptable non-infringing substitute, then Sight Sciences has not shown it lost those sales but for Ivantis and Alcon infringing sales.

Even if you find that Sight Sciences' and/or Ivantis and Alcon products and methods were the only ones with the advantages of the patented invention, Sight Sciences is nonetheless required to prove to you that Sight Sciences, in fact, would have made Ivantis and Alcon infringing sales.

**Source(s):**

**AIPLA Model Instructions § V(10.2.1)(10.2.1.4)**

**Federal Circuit Model Instructions B.5.2**

---

[26]2020 Federal Circuit Model Jury Instructions, at 58.

(C)    **Panduit Factors—Market Share**

If you find that there were acceptable non-infringing substitutes in the market, then Sight Sciences may still be entitled to lost profits on a portion of Ivantis and Alcon infringing sales. The burden is on Sight Sciences to prove that it is more likely than not that its product or method competed in the same market as Ivantis and Alcon infringing product or method, and that Sight Sciences would have made a portion of the infringing sales equal to at least Sight Sciences' share of that market but for Ivantis and Alcon infringement. It is not necessary for Sight Sciences to prove that Sight Sciences and Ivantis and Alcon were the only two suppliers in the market for Sight Sciences to demonstrate entitlement to lost profits.

**Source(s):**

**AIPLA Model Instructions § V(10.2.1)(10.2.1.5)**

### (D)     Panduit Factors—Capacity

This factor asks whether Sight Sciences had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Ivantis and Alcon infringement. Sight Sciences must prove that it could have supplied the additional products needed to make the sales Sight Sciences said it lost, or that someone working with Sight Sciences could have worked with a third party to supplied the additional products. Sight Sciences also must prove that it more likely than not had the ability to market and sell these additional products.

**Source(s):**

**AIPLA Model Instructions § V(10.2.1)(10.2.1.6)**

### (E)     Panduit Factors—Amount of Profit—Incremental Income Approach

Sight Sciences may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that Sight Sciences would have had to pay to make the lost sales. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

**Source(s):**

**AIPLA Model Instructions § (10.2.1)(10.2.1.7)**

### 5.4     Reasonable Royalty

### 5.4.1   Reasonable Royalty—Generally

Sight Sciences is claiming lost profits for only a portion of the accused infringing sales, so you must also consider the issue of a reasonable royalty. The amount of damages that Defendants pay Sight Sciences for infringing Sight Sciences' patents must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of Sight Sciences' invention.

You must only award Sight Sciences a reasonable royalty in an amount that Sight Sciences has proven by a preponderance of the evidence that it could have earned on any infringing sales for which you have not already awarded lost-profit damages. A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, sell, or import a patented product or practice a patented method.

A reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products or methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The total royalty must reflect the value attributable to the infringing features of the product or method, and no more.

**Source(s):**

**AIPLA Model Instructions § V(10.2.5)(10.2.5.1)**

### 5.4.2   Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Sight Sciences and Ivantis and Alcon. Of course, we know that they did not agree to a license and royalty payment. But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license at a time prior to when the infringement first began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also assume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

**Source(s):**

**AIPLA Model Instructions § V(10.2.5)(10.2.5.2)**

**Federal Circuit Model Instructions B.5.6**

### 5.4.3   Reasonable Royalty—Relevant Factors If Using  the Hypothetical Negotiation Method

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by Ivantis and Alcon to license other patents comparable to the Asserted Patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product or method in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the Asserted Patents and the term of the license.

8. The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11. The extent to which Ivantis and Alcon have made use of the invention; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee (such Ivantis and Alcon) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Source(s):**

**AIPLA Model Instructions § V(10.2.5)(10.2.5.3)**

### 5.4.4   Reasonable Royalty—Apportionment

If you find that damages are appropriate, the amount you find as damages must be based on the value attributable to the patented features, as distinct from other, unpatented features of the Hydrus, or other factors such as Ivantis and Alcon's brand, marketing, or advertising. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable only to the patented technology. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more. **[Ivantis and Alcon's Proposal:** Apportionment must also be applied to any inputs into a reasonable royalty calculation, such as comparable licenses. For example, if an allegedly comparable license conveys a greater scope of rights than the patent rights under the asserted patents, any royalty award derived from the license must be apportioned downward to account for the difference in the scope of conveyed rights. The key to properly apportioning any damages amount that you find is to deduct the value of all unpatented features such that the damages awarded to Sight Sciences reflect only the value of the patented feature as claimed in the asserted patents. Sight Sciences must give evidence tending to apportion between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.[27]][28]

---

[27] *CAP-XX, Ltd. V. Maxwell Tech., Inc*., C.A. No. 19-1733-JLH, D.I. 314 (Final Jury Instructions) at 54 (D. Del. Dec. 15, 2023); *see also, Garretson v. Clark*, 111 U.S. 120, 121, 4 S. Ct. 291, 291–92, 28 L. Ed. 371 (1884); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)

[28] **Ivantis and Alcon's Proposal:** Ivantis and Alcon's proposed language provides an accurate statement of the law regarding apportionment. *See Garretson v. Clark*, 111 U.S. 120, 121, 4 S. Ct. 291, 291–92, 28 L. Ed. 371 (1884); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed.

In other words, the royalty must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

**Source(s):**

**AIPLA Model Instructions § V(10.2.5)(10.2.5.4)**

*Arendi* **5.5**

---

Cir. 2014); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308,1329 (Fed. Cir. 2014) ("The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product."). Apportionment is necessary in this case, and Ivantis and Alcon's proposed language provides additional guidance to the jury on their responsibility on how and to what apportionment applies, including comparable licenses. This information should not be withheld from the jury.

**Sight Sciences' Position:** Defendants' proposed language is improper. Section 5.4.7 of these Instructions below, which addresses the use of comparable license agreements, already provides that: "However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Sight Sciences and Ivantis and Alcon, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination." Furthermore, Defendants' proposed language is of their own making, ***not*** reflecting of the instruction offered in *CAP-XX, Ltd. v. Maxwell Techs., Inc.*, C.A. No. 19-1733-JLH, D.I. 314 (Final Jury Instructions) at 54 (D. Del. Dec. 15, 2023). There, the Court's apportionment instruction made ***no mention*** of comparable licenses or needing to apportion downward. Defendants' proposal here biases these instructions, and lends itself to juror confusion by disrupting otherwise cohesive instructions regarding apportionment.

### 5.4.5   Reasonable Royalty—Timing

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, profits earned by the infringer, and non-infringing alternatives.**[Ivantis and Alcon's Proposal:** Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.[29]][30]

**Source(s):**

**AIPLA Model Instructions § V(10.2.5)(10.2.5.7)**

**Federal Circuit Model Instructions B.5.6**

---

[29] 2020 Federal Circuit Model Jury Instructions, at 64.

[30] **Sight Sciences' Position:** Defendants' proposed language does not come from the AIPLA Model Patent Jury Instructions, is unnecessary, and is duplicative of instructions reflected elsewhere in this section, which already instructs how the jury should weigh evidence of facts that occurred after first infringement.

**Ivantis and Alcon's Position:** Ivantis and Alcon's proposed language is taken from the 2020 Federal Circuit Model Jury Instructions and is a correct statement of law that provides helpful context to the jury regarding the evidence it may consider. This information should not be withheld from the jury.

### 5.4.6   Reasonable Royalty—Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product or method that is licensed under the patent or that does not infringe the patent, [**Sight Sciences' Proposal:** and that is available or on the market when infringement occurred.][31]

**Source(s):**

**AIPLA Model Instructions § V(10.2.5)(10.2.5.8)**

---

[31] **Sight Sciences' Position:** The relevance of non-infringing substitutes to a lost profit analysis is the impact they would have on marketplace conditions in the event the accused product did not exist; to have *any* impact, such a product needs to be available (or have the ability to be made available on demand). *Grain Processing Corp. v. Am. Maize Prods. Co.*,185 F.3d 1341, 1348 (Fed. Cir. 1999); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 108 F.3d 1392 (table), 1997 WL 71726, at *1 (Fed. Cir. Feb. 20, 1997); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2013 WL 5958172, at *2, *6–7 (N.D. Cal. Nov. 7, 2013); *Janssen Biotech, Inc. v. Celltrion Healthcare Co.*, 239 F. Supp. 3d 328, 331 (D. Mass. 2017).

**Ivantis and Alcon's Position:** Sight Sciences' proposed language is a thinly veiled attempt to insert its Daubert arguments related to opinions on non-infringing alternatives into the jury instructions and is thus improper. *See* D.I. 339, Alcon's Answering Brief to Sight's Motions for Summary Judgment and to Exclude Expert Testimony, at 34–36. As Sight acknowledges, non-infringing alternatives are treated differently in the lost profits context than in the reasonable royalty context. *See AstraZeneca v. Apotex*, 782 F.3d 1324, 1334 n.3 (Fed. Cir. 2015) (Reasonable royalty "does not look to what would have happened absent the infringing product, but to what the parties would have agreed upon as a reasonable royalty on the sales made by the infringer."); *see also RSB Spine v. DePuy Synthes Sales*, 2022 WL 17084156, at *4 (D. Del. Nov. 18, 2022) (*Grain Processing* applies to lost profits not reasonable royalty); *Salazar v. HTC*, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018) ("[NIAs] don't play the same role in a reasonable-royalty determination."). Sight attempts to blur those lines with its proposal. This is inappropriate given that the concept of availability of a non-infringing alternative has already been discussed in the instructions related to lost profits.

### 5.4.7   Reasonable Royalty[32]—Use of Comparable License Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for comparable rights to similar technologies. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, economic circumstances, structure, and scope. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Sight Sciences and Ivantis and Alcon in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Sight Sciences and Ivantis and Alcon, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

**Source(s):**

**AIPLA Model Instructions § V(10.2.5)(10.2.5.9)**

**Federal Circuit Model Instructions B.5.9**

---

[32] Alcon reserves the right to supplement, amend, or otherwise modify these proposed jury instructions in light of Orders and/or instructions from the Court regarding Alcon's Daubert motion on this issue.

### 5.5     Damages—Kinds of Damages That May Be Recovered

In this case, Sight Sciences seeks lost profits for a portion of its damages and a reasonable royalty for the remainder of its damages for infringement that occurred between the launch of the Accused Product in August 2018 and the present.

Any damages award must apply only once for each act of infringement. In other words, if you find that Sight Sciences has proven that Ivantis and Alcon infringed any valid Asserted Claim of the Asserted Patents and that Sight Sciences has also proven that it is entitled to lost profits damages for some of those sales, then you may not award a reasonable royalty for those sales for which you are already awarding lost profits.  If you find that Sight Sciences has proven that Ivantis and Alcon infringed any valid Asserted Claim of the Asserted Patents, but that Sight Sciences has not proven it is entitled to lost profits damages for any sales, then you must award a reasonable royalty for all infringing sales.

Any amounts of damages that you determine that Sight Sciences is entitled to recover based on lost profits or a reasonable royalty must be set out separately on the jury verdict form. The total amount of damages is the sum of any lost profits damages and any reasonable royalty.

**Source(s):**

**ABA Model Jury Instructions: Patent Litigation (2d Ed. 2023) § 4.6.1**

6.      **DELIBERATION AND VERDICT**

Now let me finish up by explaining some things about your deliberation in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down on your message to me or tell the jury officer how you stand on your votes.  For example, do not write down or say that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

**Source(s):**

*Arendi* **6.1**

### 6.1    Unanimous Verdict

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  I will review it with you in a moment.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.  Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law.  Do not decide who you think should win this case and then answer the questions accordingly.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

**Source(s):**

*Arendi* **6.2**

### 6.2    Duty to Deliberate

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that, your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

**Source(s):**

*Arendi* 6.3

### 6.3     Social Media

During your deliberations, just as during trial, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, WeChat, WhatsApp, SnapChat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

Of course, you may examine the various devices entered into evidence in this case—just as you may examine other evidence from this case.  But you should not use those devices to perform Internet research about this case or to communicate with anyone outside the jury room.

**Source(s):**

*Arendi* 6.4

### 6.4     Court Has No Opinion

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

**Source(s):**

*Arendi* 6.5

31443550.1

# EXHIBIT A

| | |
|---|---|
| **From:** | Armon, Orion <oarmon@cooley.com> |
| **Sent:** | Friday, March 8, 2024 6:00 PM |
| **To:** | Andrew Russell; z/Sight Sciences Ivantis |
| **Cc:** | #Alcon-SightSciences; SKIvantis; Hallowell, Taylor E.; *msharp@ycst.com |
| **Subject:** | RE: Sight Sciences v. Ivantis, C.A. No. 21-1317-GBW-SRF - Request to Withdraw § II.A of Dr. Downs' Supplemental Report |

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

Andrew – Section II.A of Dr. Downs' Supplement was justified in light of the contents of Tanna's Supplement as well as the contents of Dr. Brown's deposition, which defendants elected to take outside the fact discovery period.  Nevertheless, we will re-serve the Downs Supplement without that section on Monday to resolve this dispute without bothering the court.

Sincerely,
Orion

**From:** Andrew Russell <arussell@shawkeller.com>
**Sent:** Friday, March 8, 2024 7:40 AM
**To:** z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>
**Cc:** #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>; SKIvantis <SKIvantis@shawkeller.com>; Hallowell, Taylor E. <THallowell@ycst.com>; Sharp, Melanie <msharp@ycst.com>
**Subject:** Re: Sight Sciences v. Ivantis, C.A. No. 21-1317-GBW-SRF - Request to Withdraw § II.A of Dr. Downs' Supplemental Report

**[External]**

Counsel for Sight,

Please provide your response today. If Sight will not withdraw Dr. Downs' new opinions and confirm that it will not rely on them at trial, please provide your availability to meet and confer on Monday 3/11.

Thank you,

Andrew E. Russell
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0704

Visit ipde.com for updates about IP litigation and the District of Delaware.

**From:** Andrew Russell <arussell@shawkeller.com>
**Date:** Wednesday, March 6, 2024 at 7:49 PM
**To:** z/Sight Sciences Ivantis <zSightSciencesIvantis@cooley.com>
**Cc:** #Alcon-SightSciences <Alcon-SightSciences@kirkland.com>, SKIvantis
<SKIvantis@shawkeller.com>, Hallowell, Taylor E. <THallowell@ycst.com>, Sharp, Melanie
<msharp@ycst.com>
**Subject:** Sight Sciences v. Ivantis, C.A. No. 21-1317-GBW-SRF - Request to Withdraw § II.A of Dr. Downs'
Supplemental Report

Counsel for Sight,

Section II.A of Dr. Downs' supplemental report includes new opinions that go beyond proper supplementation under
Rule 26(e). We write to request that Sight withdraw those opinions and confirm that it will not rely on them at trial.

The Court has held that Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which
should have been included in the expert witness' report.'" *Robocast, Inc. v. Apple Inc.*, C.A. No. 11-235-RGA, 2014 U.S.
Dist. LEXIS 10033, at *3 (D. Del. Jan. 28, 2014). "Rule 26(e) is not an avenue to correct 'failures of omission because the
expert did an inadequate or incomplete preparation' . . . , add new opinions . . . or 'deepen' or 'strengthen' existing
opinions." *In re Asbestos Prods. Liab. Litig.*, 289 F.R.D. 424, 425 (E.D. Pa. 2013) (citations omitted).

Section II.A of Dr. Downs' supplemental report does not add information to his existing opinions that was unavailable at
the time of his initial report, and instead offers improper new opinions. For example, Dr. Downs states that Dr. Brown's
testimony "provides further support for my conclusion that prior to the claimed invention, there was an unsolved need"
for the claimed device. ¶ 5. But he never offered any such opinion on unmet needs. He likewise states that Dr. Brown's
testimony supports his opinion that "others had tried and failed to make the invention," citing ¶ 1040-1057 of his
rebuttal report. ¶ 10, n.15. But Dr. Brown's previous opinions relied only on the Hydrus and iStent devices. Sight cannot
use Dr. Brown's deposition as an excuse to offer previously-undisclosed opinions regarding the Stegmann device,
Eyepass, Grieshaber-642, and Grieshaber-546.

To the extent Dr. Downs had opinions regarding unmet need or the "failure" of the Stegmann device, Eyepass,
Grieshaber-642, and Grieshaber-546, he was required to disclose those in his original reports. He did not. Dr. Brown is a
Sight employee, and this information has been in Sight's possession for years.  Dr. Downs cannot now "supplement" his
report to offer new opinions rebutting Dr. Tanna's original reports, based on information that has always been available
to him and to Sight. *See Lockhart v. Willingboro High Sch.*, C.A. No. 14-3701 (JBS/AMD), 2017 U.S. Dist. LEXIS 225472, at
*11-12 (D.N.J. May 3, 2017) (striking supplemental expert reports where "there is no showing that [the expert] received
new information so as to support supplementation of his Report under Rule 26(e), nor has Plaintiff set forth any reason
why these opinions were not included in the [original] Report.").

Nor does *Pennypack* excuse Dr. Downs' improper new opinions. Sight failed to disclose these contentions during
discovery, including in response to Defendants' interrogatory no. 2. Sight deprived Defendants of the opportunity to
pursue discovery on these issues and to consider them when filing Defendants' dispositive motions. As such, they must
be excluded. *See EIS Inc. v. IntiHealth Ger GmbH*, C.A. No. 19-1227-GBW, D.I. 605 (D. Del. Aug. 16, 2023) (excluding
improper supplemental report that caused "genuine concerns of prejudice" due to its timing, and holding that alleviating
that prejudice would "require [the opposing party] to expend additional time, effort, and expense for a trial scheduled
to begin in less than one month").

Please confirm that Sight will withdraw Dr. Downs' opinions in § II.A of his report, and that Dr. Downs will not present
testimony on these issues at trial. Otherwise, please provide your availability on Thursday March 7 to meet-and-confer
on this issue.

We are continuing to review the supplemental report that Sight served after Defendants sent their pretrial disclosure materials, and reserve the right to amend our pretrial disclosures as needed, including to address the supplemental report.

Andrew E. Russell

Shaw Keller LLP

I.M. Pei Building

1105 North Market Street, 12th Floor

Wilmington, DE 19801

(302) 298-0704

Visit ipde.com for updates about IP litigation and the District of Delaware.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SIGHT SCIENCES, INC.,

    Plaintiff,

    v.

IVANTIS, INC., ALCON RESEARCH
LLC, ALCON VISION, LLC AND
ALCON INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)

C. A. No.:  21-1317-GBW-SRF

**JURY TRIAL DEMANDED**

████████████

# REBUTTAL EXPERT REPORT OF DR. J. CRAWFORD DOWNS
# ON INVALIDITY OF U.S. PATENT NOS.
# 8,287,482; 9,370,443; 9,486,361; 10,314,742; AND 11,389,328

Dated:  August 17, 2023

Respectfully submitted,

Dr. J. Crawford Downs

obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. Additionally, counsel has informed me that, in order to render the claimed invention obviousness, the prior art must provide a reasonable expectation of success. I understand that the use of hindsight is improper when considering whether a claim would have been obvious to a POSA at the time of invention; it is improper to use hindsight to reconstruct the claims or use the asserted patent as a guide to navigate through the prior art disclosures.

31.    I have been informed that the analysis also requires the consideration of objective evidence, or indicia, of non-obviousness, including: (1) evidence of *commercial success* attributed to the claimed invention and its differences over the prior art; (2) evidence of *industry praise*—a showing that others of skill in the art have praised the claimed invention; (3) evidence of deliberate *copying* of the patented invention and not a prior art device; (4) evidence of *long-felt but unresolved need*—in other words, a persistent problem or need in the art that was resolved by the patented invention; (5) evidence showing *failure of others*—that others have

15

tried and failed to solve the problem or provide the need resolved by the claimed invention; (6) evidence of the *willingness of the industry to license* the patent (but I have been informed that it should also be considered whether this willingness is due to respect for the invention or a desire to avoid litigation); (7) evidence showing *skepticism* by those of skill in the art as to the merits of the invention, or teaching away from the invention; (8) evidence showing that others *independently developed the claimed invention at the same time*; (9) evidence of *unexpected results*—that those of skill in the art were surprised by the capabilities of the claimed invention. All of the above may be indications of non-obviousness.

### E.   Written Description

32.    I understand that lack of written description may also lead to a patent claim being invalidated. I have been informed that the written description requirement is set forth in the first paragraph of 35 U.S.C. § 112.

33.    I understand that, in order to determine whether a patent claim has an adequate written description, one must analyze whether the patent application as originally filed sufficiently demonstrated to a POSA that the inventor(s) had possession of the claimed invention. I have been informed that the written description need not use the exact claim language and may even be disclosed in the patent's figures. I have also been informed that the written description requirement is not satisfied if a POSA would not have understood the inventor(s) to have been in

canal and a second shape after insertion"; instead, the support could be designed to retain the same shape prior to and after insertion in Schlemm's Canal.  Therefore, it is my opinion that Dr. Tanna fails to explain why Lynch-197 renders this limitation obvious.

## XII. SECONDARY CONSIDERATIONS RENDER THE ASSERTED CLAIMS NON-OBVIOUS

1040. As I noted above, I was instructed by counsel that, where objective evidence of obviousness or non-obviousness is present, it must be considered when evaluating the alleged obviousness of a patent claim if there is a nexus between the objective evidence and the claimed invention.  I understand that objective considerations of non-obviousness may include: (1) whether the invention proceeded in a direction contrary to accepted wisdom in the field; (2) whether there was a long felt but unresolved need in the art that was satisfied by the invention; (3) whether others had tried but failed to make the invention; (4) whether others copied the invention; (5) whether the invention achieved unexpected results; (6) whether the invention was praised by others; (7) whether others have taken licenses to use the invention; (8) whether experts or those skilled in the art at the making of the invention expressed surprise or disbelief regarding the invention; (9) whether products incorporating the invention have achieved commercial success that is attributable to the invention; and (10) whether or not others having ordinary skill in

572

the field independently made the claimed invention at about the same time the inventor made the invention.

1041. In my opinion, the evidence available in this case supports a finding that the asserted claims of the Patents-in-Suit are non-obvious because Ivantis was unable to develop a successful design until its CEO David Van Meter analyzed Paul and David Badawis' patent application and used it as a guide to develop a successful (and infringing) product after having spent years trying and failing to develop a product on its own.

1042. Denali Medical, the predecessor to Ivantis, was founded to

████████████████████████████████████████████████████

███████████████████████████████████ ██████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

---



1043. According to Denali's ██████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████ The first four design objectives

that Denali aimed to accomplish were as follows:

---

[695] IVANTIS_SS_00043467.



However, none of Denali's early solutions were feasible.

1044. Denali's development of a stent began in late 2006. 

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████

1045. Denali then pursued a second design, which it referred to as a ████

████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████   ████████████████████.

1046. Denali's next design for an intraocular stent took the form of ████

██████████████████████████

---

[696] IVANTIS_SS_000387682.

[697] *See* IVANTIS_SS_000387682.

████████████████████████████████████████



698 *See, e.g.,* IVANTIS_SS_00017827 at 17838-39.

699 *See* IVANTIS_SS_00060390.

700 IVANTIS_SS_00017827 at 17838-39.

701 IVANTIS_SS_00008352 at 8367.



1047. The parent patent application to the Patents-in-Suit was published as

U.S. Patent Application Publication 2007/0298068 on December 27, 2007. ███

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████ ███████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████

---

702 DV000032.

703 *Id.*

████████████████████████████████████████

1048. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

---

[704] IVANTIS_SS_00017827 at 17835-839.

[705] DV000032.

[706] DV000043.

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on March 18, 2024, I caused to be electronically filed a true and correct copy of Proposed Final Jury Instructions with the Clerk of the Court using CM/ECF, which will send notification to the following counsel of record:

John W. Shaw
Karen E. Keller
Andrew E. Russell
Nathan R. Hoeschen
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

I further certify that on March 18, 2024, I caused a copy of the foregoing document to be served on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL:**

Gregg LoCascio
Sean M. McEldowney
W. Todd Baker
Steven Dirks
Socrates L. Boutsikaris
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004
gregg.locascio@kirkland.com
sean.mceldowney@kirkland.com
justin.bova@kirkland.com
steven.dirks@kirkland.com
socrates.boutsikaris@kirkland.com

Jeanne M. Heffernan
Kat Li
Austin C. Teng
Ryan J. Melde
Lydia B. Cash
Kirkland & Ellis LLP
401 Congress Avenue
Austin, TX  78701
jheffernan@kirkland.com
kat.li@kirkland.com
austin.teng@kirkland.com
ryan.melde@kirkland.com
lydia.cash@kirkland.com

Ryan Kane
Nathaniel DeLucia
Emily C. Sheffield
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
ryan.kane@kirkland.com
nathaniel.delucia@kirkland.com
laura.zhu@kirkland.com
emily.sheffield@kirkland.com

Brian A. Verbus
Jacob Rambeau
300 N. LaSalle
Chicago, IL 60654
brian.verbus@kirkland.com
jake.rambeau@kirkland.com

Noah S. Frank
200 Clarendon Street
Boston, MA 02116
noah.frank@kirkland.com

_/s/ Melanie K. Sharp_ _____
Melanie K. Sharp (No. 2501)

31443904.1