IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIGHT SCIENCES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 21-1317-JLH-SRF |
| | ) |
| IVANTIS, INC., ALCON RESEARCH LLC, ALCON VISION, LLC, and ALCON INC., | ) |
| | ) |
| Defendants. | ) |

## STIPULATION AND [PROPOSED] ORDER REGARDING DR. JOSEPH IZATT

WHEREAS, Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc.'s (collectively, "Defendants") expert, Dr. Joseph Izatt, offered opinions in connection with this matter and prepared Computer-Aided Design (CAD) models and calculations relating thereto that are relied upon by Defendants' experts Dr. Andrew Iwach and Dr. Angelo Tanna;

WHEREAS, Dr. Izatt unexpectedly passed away this past weekend;

WHEREAS, Plaintiff Sight Sciences, Inc. ("Sight") and Defendants (collectively, the "parties") have met and conferred regarding issues relating to Dr. Izatt's opinions; and

WHEREAS, the parties have agreed on the majority of the issues but have disputes as to specific language in Paragraphs 10-11, with Defendants' proposals shown in blue text and Sight's proposals shown in red text.  The parties are available for a teleconference at the Court's convenience to address these disputes.

NOW, THEREFORE, the parties hereby stipulate and agree, subject to the approval of the Court, that:

1.  The following exhibits may be moved into evidence during the testimony of Drs. Iwach or Tanna so long as (1) Dr. Iwach and/or Dr. Tanna (i) relied upon such exhibits or portions/images thereof in their expert reports or depositions, and/or (ii) the exhibit formed the basis for a conclusion of Dr. Izatt's on which Drs. Iwach and/or Tanna rely, and (2) they discuss the exhibit during their testimony, and Sight has no objection to the admissibility of these exhibits:

- DTX0312
- DTX0336-DTX0339
- DTX0341-DTX0343
- DTX0347
- DTX0637-DTX0643
- DTX0800
- DTX0922-DTX0931
- DTX0937-DTX0943
- DTX1100-DTX1105
- DTX1120
- DTX1161-DTX1169

2.  Drs. Iwach and Tanna may testify regarding Dr. Izatt's CAD models and the results of Dr. Izatt's analyses, including his surface area contact calculations, consistent with the opinions provided in Drs. Iwach's and Tanna's expert reports, and Sight has no objection to such testimony. Drs. Iwach and Tanna, as well as Defendants, will not make any arguments or representations regarding Dr. Izatt's modeling that are contrary to Dr. Izatt's own statements in his reports.

3.  Drs. Iwach and Tanna will not be required to testify to the process Dr. Izatt used for making any model they rely on or the process Dr. Izatt used for conducting surface area calculations within SolidWorks to rely on Dr. Izatt's models and surface area calculations. Regarding the process used by Dr. Izatt to make or to calculate surface areas of any model relied on by Drs. Tanna and Iwach, Sight will not: 1) make any argument or present any evidence challenging those models or 2) criticize, or cross-examine, Drs. Tanna and Iwach on those models, other than with respect to

assumptions or instructions provided by Drs. Iwach and Tanna directly or through counsel to Dr. Izatt.

4. Sight will not cross examine Drs. Iwach or Tanna on the fact that they did not discuss or describe the process used by Dr. Izatt to make the models and conduct the surface area calculations, and Sight will not make any argument or present any testimony criticizing Drs. Iwach or Tanna for the fact that they did not discuss or describe the process used by Dr. Izatt to make the models and conduct the surface area calculations.

5. Sight will not challenge the accuracy of Dr. Izatt's surface area contact calculations or the reliability of the CAD software used by Dr. Izatt to generate those calculations at trial. Nothing in this provision precludes Sight from challenging the assumptions or instructions provided by Drs. Iwach or Tanna directly or through counsel to Dr. Izatt for purposes of creating the models.

6. Sight will not use the expert reports of Dr. Izatt or the deposition transcript of Dr. Izatt at trial for any purpose, including but not limited to cross-examination of Drs. Iwach or Tanna.

7. Sight will not cross-examine any witness or present any argument or testimony on the merits of Dr. Izatt's opinions.

8. The parties and their fact and expert witnesses will not reference or make any argument regarding Dr. Izatt passing away or not testifying at the trial. Defendants reserve the right to ask the Court for an instruction informing the jury of Dr. Izatt's passing as trial develops.

9. The following may be read to the jury as stipulated by both parties: "SolidWorks is a computer-aided design ('CAD') and computer-aided engineering ('CAE') software. SolidWorks is a commonly used application by engineers for designing and modeling three-dimensional structures and assemblies. SolidWorks includes a number of tools. One of the tools available in

the software is the 'Measure' tool. The Measure tool can be used to conduct a number of measurements, including precise calculations of surface areas on the modeled structure. Engineers commonly rely upon the SolidWorks Measure tool to determine measurements, including surface area measurements. The Measure tool was used by Dr. Izatt to calculate the surface area values presented by Drs. Iwach and Tanna."

10. The parties agree to the following instruction to be read as part of the preliminary jury instructions: **[Defendants' Proposal]**[1]: **Option 1:** "The parties agree that you should not draw any inferences from the fact that a person does not appear or testify at trial." **Option 2:** "One of Ivantis and Alcon's expert witnesses, Dr. Joseph Izatt, passed away unexpectedly two weeks before trial. Therefore, you should not draw any inferences from the fact that he will not appear to testify at trial." **[Sight's Proposal]**[2]: "One of Ivantis and Alcon's expert witnesses, Dr. Joseph Izatt, is

---

[1] Dr. Izatt's passing has undoubtedly prejudiced Defendants' case. Typically, as Sight has recognized, a substitute expert would need to be identified and engaged, given the time to adopt the deceased expert's opinions as their own, and then be deposed prior to trial. Recognizing that such an approach would necessitate a continuance of the trial date, Defendants have worked diligently with Sight since learning of Dr Izatt's passing to explore a stipulation that would allow the parties to keep the trial date in a manner that limits the prejudice suffered by Defendants due to Dr. Izatt's passing. Although the parties are close to agreement, Sight's proposal would be highly prejudicial to Ivantis and Alcon. While legally speaking a deceased witness is "unavailable" under the Rules of Evidence, the practical reality is that, to a lay juror, this language sounds as if Dr. Izatt has some other, more important commitment. Defendants' preference was to not call attention to Dr. Izatt *at all*, so Defendants propose an instruction that "The parties agree that you should not draw any inferences from the fact that a person did not appear or testify at trial." Sight has argued an instruction should be given that is specifically limited to Dr. Izatt, thus drawing attention to Dr. Izatt's absence from trial. If that is done, it would be highly prejudicial to Defendants if the jury is left wondering as to why he has not appeared. The only way to eliminate that prejudice of calling direct attention to Dr. Izatt's absence is to inform the jury that he passed away. To the extent the Court is inclined to provide an instruction specific to Dr. Izatt, it should be Defendants' Option 2.

[2] Recognizing the very unfortunate news regarding Dr. Izatt's passing, Sight and Defendants have worked cooperatively to allow Defendants to present Dr. Izatt's analysis without the need for live testimony from another expert. Given the parties' agreements in this stipulation, the only remaining issue is how to address Dr. Izatt's absence. On this limited issue, Defendants' proposals go too far. *First*, Defendants' Option 1 is improper because it is overly broad and not

4

unexpectedly unavailable for trial. You should not draw any inferences from the fact that he will not appear to testify at trial."

11. The parties agree that Ivantis and Alcon can read the following statement regarding Dr. Izatt's surface area calculations into the record during their case presentation: "The following is a statement agreed to by both parties: For the models that Dr. Izatt prepared according to the assumptions and instruction provided by Doctors Iwach and/or Tanna, **[Defendants' Proposal]**[3]: Dr. Izatt's surface contact area calculations are correct." **[Sight's Proposal]**[4]: Dr. Izatt performed mathematically correct surface contact area calculations."

---

in any way tied to Dr. Izatt. For example, if Defendants choose not to present a corporate witness, or choose not to present a non-infringement expert, the jury is free to draw inferences from the fact that such people did not appear or testify at trial. Dr. Izatt's unfortunate passing should not be used as a trial strategy to shield an intentional decision to not present witnesses that are otherwise available. *Second*, Defendants' Option 2 is improper because it unnecessarily and prejudicially injects Dr. Izatt's unfortunate passing to the jury, including by noting that his passing was "unexpectedly two weeks" before trial. The only reason Defendants have provided for informing the jury of Dr. Izatt's passing is that they don't want the jury to draw any negative inferences regarding why Dr. Izatt did not attend trial (e.g., that he "has some other, more important commitment"). This concern, however, is adequately addressed by an instruction that the jury "should not draw any inferences from the fact he will not appear at trial." To the extent, however, that the Court deems it is necessary to include a reference Dr. Izatt's passing, it should omit Defendants' proposal that his passing was "unexpectedly two weeks" before trial as it is unnecessary.

[3] Defendants' proposal clearly and simply confirms for the jury a point that is not disputed: Dr. Izatt's surface contact area calculations are correct. Sight's language is clunky and risks juror confusion. Sight's suggestion that Defendants' proposal is misleading is wrong. Defendants' proposal clearly conveys that the calculations that are accurate were done on models "***prepared according to the assumptions and instructions provided by Doctors Iwach and/or Tanna***."

[4] Sight's proposal accurately reflects the parties' agreement that Dr. Izatt performed mathematically correct surface contact area calculations. Defendants' alternative language – that "Dr. Izatt's surface contact area calculations are correct" – is potentially misleading because the "correctness" of Dr. Izatt's calculations depends both on (i) the assumptions and instructions provided by Drs. Iwach and/or Tanna (which are disputed) as well as (ii) whether Dr. Izatt performed mathematically correct calculations using those assumptions (which is not disputed). At a minimum, Defendants' proposal should be modified to clarify that "Dr. Izatt's surface area calculations are <u>mathematically</u> correct," to avoid misleading the jury.

| | |
|---|---|
| */s/ James L. Higgins*<br>Melanie K. Sharp (No. 2501)<br>James L. Higgins (No. 5021)<br>Taylor E. Hallowell (No. 6815)<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>msharp@ycst.com<br>jhiggins@ycst.com<br>thallowell@ycst.com<br><br>COOLEY LLP<br>Michelle S. Rhyu<br>Jeffrey Karr<br>Lauren Strosnick<br>Alissa Wood<br>Juan Pablo González<br>Angela R. Madrigal<br>3175 Hanover Street<br>Palo Alto, CA 94304-1130<br>(650) 843-5000<br><br>Orion Armon<br>1144 15th Street, Suite 2300<br>Denver, CO 80202-2686<br>(720) 566-4000<br><br>Dustin M. Knight<br>Joseph Van Tassel<br>Reston Town Center<br>11951 Freedom Drive, 14th Floor<br>Reston, VA 20190-5656<br>(703) 456-8000<br><br>Bonnie Fletcher Price<br>1299 Pennsylvania Avenue, NW, Suite 700<br>Washington, DC 20004-2400<br>(202) 842-7800<br>*Attorneys for Plaintiff*<br><br><br>Dated: April 12, 2024 | */s/ John W. Shaw*<br>John W. Shaw (No. 3362)<br>Andrew E. Russell (No. 5382)<br>Nathan Hoeschen (No. 6232)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>arussell@shawkeller.com<br>nhoeschen@shawkeller.com<br><br>KIRKLAND & ELLIS LLP<br>Gregg LoCascio<br>Sean McEldowney<br>Steven Dirks<br>Socrates L. Boutsikaris<br>1301 Pennsylvania Avenue, N.W.<br>Washington, DC 20004<br>(202) 389-5000<br><br>Jeanne M. Heffernan<br>Kat Li<br>Ryan J. Melde<br>Julie Metkus<br>401 Congress Avenue<br>Austin, TX 78701<br>(512) 678-9100<br><br>Ryan Kane<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446-4800<br><br>Brian A. Verbus<br>Jacob Rambeau<br>300 N. LaSalle<br>Chicago, IL 60654<br>(312) 862-2000<br><br>Noah Frank<br>200 Clarendon Street<br>Boston, MA 02116<br>(617) 385-7500<br>*Attorneys for Defendants* |

6

SO ORDERED on this ____ day of _____, 2024.

                                                  _____
                                                  United States District Court Judge