IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIGHT SCIENCES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 21-1317-JLH-SRF ) |
| IVANTIS, INC., ALCON RESEARCH LLC, ALCON VISION, LLC, and ALCON INC., | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' CORRECTED FEDERAL
RULE OF CIVIL PROCEDURE 50(A) MOTION**

Defendants Ivantis, Inc., Alcon Research LLC, Alcon Vision, LLC, and Alcon Inc. ("Ivantis and Alcon") move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). No reasonable jury could find for plaintiff Sight Sciences, Inc. ("Sight Sciences") on any issue, including infringement, invalidity, damages, or willfulness. Ivantis and Alcon respectfully request judgment as a matter of law on every issue, as to both Sight Sciences' claims and Ivantis and Alcon's counterclaims.

**I.     Infringement**

Sight Sciences has failed to offer legally sufficient evidence from which a reasonable jury could find infringement of any asserted claim. Sight Sciences asserts infringement of five claims of U.S. Patent Nos. 8,287,482 (the "'482 patent"), 9,370,443 (the "'443 patent"), and 11,389,328 (the "'328 patent"). D.I. 435, Ex. 1 at ¶¶ 1-3; *id.*, Ex. 2 at ¶¶ 4-6. Sight Sciences asserts that Ivantis and Alcon directly infringe claim 11 of the '482 patent and claims 8, 24, and 58 of the '443 patent, and induce infringement of claim 18 of the '328 patent (the "asserted claims"). *Id.* Ivantis and Alcon assert counterclaims seeking a declaratory judgment of non-infringement and invalidity for

every asserted claim. D.I. 77 at ¶¶ 23-72; D.I. 446, ¶ 9.  Sight Sciences' allegations of direct infringement and inducement fail for at least the reasons set forth below.

### A. <u>No Direct Infringement</u>

Sight Sciences have failed to prove that claim 11 of the '482 patent, claims 8, 24, or 58 of the '443 patent, or claim 18 of the '328 patent are directly infringed. A single missing claim element precludes a finding of infringement. *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994) ("For literal infringement, each limitation of the claim must be met by the accused device exactly, any deviation from the claim precluding a finding of infringement."). The accused Hydrus® Microstent ("Hydrus") and its accompanying Hydrus Microstent Delivery System and Instructions for Use (collectively, "Hydrus") do not meet at least the following limitations of the asserted claims:

- The "arcuate member" limitations ('443 and '328 patents):
  - "wherein at least a portion of the arcuate member has a radius of curvature smaller than the radius of curvature of Schlemm's canal so that at least a portion of the arcuate member is configured to extend out of Schlemm's canal and into the trabecular meshwork" ('443 patent, claims 8, 24, and 58)
  - "wherein at least a portion of the arcuate member has a radius of curvature R supp smaller than the radius of curvature of Schlemm's canal such that at least a portion of the arcuate member extends out of Schlemm's canal" ('328 patent, claim 18)
- The "substantial interference" limitations ('443 and '482 patents):
  - "so that fluid may traverse the canal without substantial interference from the support" ('482 patent, claim 11)

- "wherein the support does not substantially interfere with transmural flow across Schlemm's canal" ('443 patent, claims 8, 24, and 58)

1. **"Arcuate Member" Limitations**

Specifically, for the "arcuate member" limitations, no reasonable jury could find that a "portion of [an] arcuate member . . . extend[s] out of Schlemm's canal" as required by the asserted claims of the '443 and '328 patents. *See* JTX0002, claims 1, 8, 24, and 58; JTX0005, claims 1, 18. Infringement requires proof that the product actually made, used, or sold meets that claim limitation. But, Sight's expert, Dr. Downs, never held a Hydrus (Downs Trial Tr. at 93:10-12), never looked at one in person or under a microscope (Downs Trial Tr. Day 2 at 93:10-17), never measured one or offered any measurement for an arcuate Hydrus (Downs Trial Tr. Day 2 at 93:4-7), and never even attempted to determine the radius of curvature (or lack thereof because it is straight) of the Hydrus CAD file (Downs Trial Tr. Day 2 at 98:3-9). Instead, Dr. Downs relied only on an outdated engineering drawing (Downs Trial Tr. at 85:8-86:24, 86:9-14) and vague testimony from an Alcon witness[1] who was not even specifically asked whether the transition zone is straight (Downs Trial Tr. Day 2 at 87:16-22). The unrebutted evidence shows that the transition zone is, in fact, straight. Schieber Trial Tr. Day 2 at 222:15-17, 223:10-13, 240:12-17, 241:9-12; Iwach Trial Tr. Day 3 at 92:19-93:3; DTX96A; DTX267.1, 2; DTX0100. Even Dr. Downs admitted that the transition zone appears straight in the latest revision of the engineering drawing, and confirmed in real time on cross examination that the Hydrus CAD file shows the transition zone to be straight not curved. Downs Trial Tr. Day 2 at 91:4-7, 97:17-99:1.

---

[1] Specifically, Dr. Hadba was not asked about the critical transition zone or any particular structures. "Q: To the left of that there's another arrow that's labeled Rdot .128 Do you see that? A: Yes. Q: And that indicates that that portion of Hydrus has a radius of 0.128, correct? A: Correct. Q: And that portion of the Hydrus extends from the vertical line to the tip of the inlet, correct? A: Correct." Hadba Trial Tr. Day 2 at 35:16-21.



As shown above, the inlet portion of the production Hydrus that Dr. Downs alleges extends out of Schlemm's canal is straight, not arcuate, and cannot be an "arcuate member" under the Court's claim construction. DTX96A; *see* D.I. 287 (construing an "arcuate member" as "a structure having one or more curved portions"). Ivantis and Alcon showed that the Revision J drawing accurately represents what the production Hydrus looks like, because the inlet portion contains more material and returns to its natural straight orientation after heat setting. Downs Trial Tr. Day 2 at 91:4-7, 97:17-99:1, Schieber Trial Tr. Day 2 at 240:22-241:4. Thus, no reasonably jury could find that Hydrus includes a "portion of [an] arcuate member [that] extend[s] out of Schlemm's canal" as required by claims 8, 24, and 58 of the '443 patent, and claim 18 of the '328 patent.

 2. **Substantial Interference**

Further, as to the "substantial interference" limitation, Sight Sciences argues that the term requires actual flow across the trabecular meshwork must be shown to meet the claim. Downs

Trial Tr. Day 2 at 99:3-8.  Yet, the evidence is clear that Sight's expert, Dr. Crawford Downs, failed to present any actual testing or other modeling to show flow of aqueous humor across the trabecular meshwork and through the windows of the Hydrus device.  Downs Trial Tr. Day 2 at 99:12-100:4; 101:23-24 ("I took no flow measurements"); 102:4-15 (Dr. Downs did not "offer the jury or disclose any die models showing flow").  To the extent Sight Sciences is correct that flow is required across the trabecular meshwork, it has failed to present legally sufficient evidence to permit a reasonable jury to find that the accused Hydrus meets the "substantial interference" limitation. Moreover, Dr. Downs is not a medical doctor, has never used the Hydrus or any other MIGS device, and lacks any expertise to opine on what happens inside a live eye. Downs Trial Tr. Day 2 at 106:11-12, 106:17-107:13 ("Never implanted a medical device in a human for the treatment of glaucoma"). Sight Sciences presented no evidence or testimony on which a reasonable jury could find flow across the trabecular meshwork with Hydrus. To the contrary, Dr. Reay Brown and Dr. Parrish both refuted Sight's position that such flow could be measured as Dr. Downs contended. Brown Trial Tr. Day 2 at 271:7-13, Parrish Trial Tr. Day 3 at 231:21-232:2. As such, no reasonable jury could find that the Hydrus meets the "substantial interference" limitation. Fed. R. Civ. P. 50(a) (permitting judgment as a matter of law when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue"); *see Grazier v. City of Phila.*, 328 F.3d 120, 124-26 (3d Cir. 2003) (affirming grant of judgment as a matter of law under Fed. R. Civ. P. 50(a) where "[n]o reasonable jury could find" for the opposing party on an issue).

      In light of the missing claim elements set forth above, Sight Sciences has failed to show that Ivantis and Alcon or any other person or entity make, use, offer for sale, sell, or import an infringing product or method in the United States. Because "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," Fed. R. Civ. P. 50(a), Ivantis

5

and Alcon respectfully request that the Court grant judgment as a matter of law of no infringement under Rule 50(a).

### B. No Induced Infringement

Sight Sciences has failed to show that Ivantis or Alcon induced any third party to infringe claim 18 of the '328 patent, for reasons including those set forth above regarding direct infringement. Nor has Sight Sciences established that Ivantis or Alcon at all times possessed the requisite knowledge that the allegedly induced acts constituted infringement of the asserted claims. *See Astornet Techs., Inc. v. Bae Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015) ("To prove inducement of infringement, the patentee must 'show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement.'") (citation omitted). Further, Sight has not established that Ivantis and Alcon acted with the requisite intent as further detailed in Section III, below. Thus, no reasonable jury could find that Ivantis and Alcon induced infringement of claim 18 of the '328 patent.

## II. Invalidity

No reasonable jury could find that Ivantis and Alcon have not proven by clear and convincing evidence that the asserted claims are invalid as not enabled and as lacking written description, for at least the reasons set forth below.

### A. The Asserted Claims of the '482 and '443 Patents Are Not Enabled

Ivantis and Alcon presented clear and convincing evidence that, as to claims 8, 24, and 58 of the '443 patent and claim 11 of the '482 patent, the asserted patents fail to disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention as of the effective filing date of the claimed invention to make and use the full scope of the claimed invention without undue experimentation. *See MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1381 (Fed. Cir. 2012) ("The specification must contain sufficient disclosure to

enable an ordinarily skilled artisan to make and use the entire scope of the claimed invention at the time of filing."). For example, the asserted claims of the '443 and '482 patents encompass a broad genus of possible "support[s]" that achieve a function of not "substantial[ly] interfere[ing] with" flow across Schlemm's canal. D. Badawi Trial Tr. Day 1 at 115:19-116:8, 103:21-104:6, 105:8-106:12, 106:18-107:4, 108:17-109:23; Downs Trial Tr. Day 3 at 207:10-14 (cannot say if the number of combination is larger or smaller than 1 million). But the specifications of the '443 and '482 patents do not enable the full scope of the claimed supports for their respective claims, because a personal of ordinary skill in the art could not make and use that wide range of supports without undue experimentation. D. Badawi Trial Tr. Day 1 at 141:3-6, 141:10-12, 110:15-112:16, 112:24-113:10, Downs Trial Tr. Day 3 at 206:11-207:6, 208:8-210:22. The eight *Wands* factors further support a finding of no enablement, due to the large quantity of experimentation needed, the scant guidance provided, the absence of working examples, the nature of the invention as a medical device, the state of the prior art, the relative skill of those in the art, the unpredictability of the art, and the wide breadth of the claims. *See In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); D. Badawi Trial Tr. Day 1 at 113:4-120:25, 124:12-125:2, 127:15-20, 128:2-9, 131:5-20, 122:5-20, 132:5-25, 133:23-134:-23, 137:4-15, 138:11-141:12, 149:11-16, 150:21-151:3, JTX1, JTX2, DTX125, DTX136, DTX165, DTX166, DTX260, DTX270, DTX1039, DTX1127. No reasonable jury could find that the specifications of the '443 and '482 patents enable the full scope of the asserted claims.

### B.  Written Description

No reasonable jury could find that Ivantis failed to present clear and convincing evidence that, as to claims 8, 24, and 58 of the '443 patent and claim 11 of the '482 patent, the respective patents in suit fail to provide an adequate written description of the full scope of each of the asserted claims. The specifications of the asserted patents, viewed as a whole, fail to describe each

and every limitation of the asserted claim with clear, concise, and exact terms such that a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. *See* 35 U.S.C. § 112, ¶ 1. For example, as set forth above regarding enablement, the asserted claims of the '443 and '482 patents encompass a broad genus of possible supports that must not "substantially interfer[e]" with flow across Schlemm's canal. D. Badawi Trial Tr. Day 1 at 113:4-120:25, 124:12-125:2, 127:15-20, 128:2-9, 131:5-20, 122:5-20, 132:5-25, 133:23-134:23, 137:4-15, 138:11-141:12, 149:11-16, 150:21-151:3, JTX1, JTX2, DTX125, DTX136, DTX165, DTX166, DTX260, DTX270, DTX1039, DTX1127. But the specification does not disclose that broad genus, representative species within that genus, or common structural features that would enable one of ordinary skill to visualize or recognize embodiments that would meet the claim elements. Day 3 Trial Tr. at 50:6-25. The specification, for instance, discloses no embodiments that were constructed or implanted to determine whether they would achieve the claim limitations and Sight did not have a prototype as of the filing date. D. Badawi Trial Tr. Day 1 at 64:20-65:14. Ultimately, the claims, as construed, encompass an immense number of possible supports, while the biological response recited in the claims is unpredictable, and the specification lacks sufficient guidance for how to make and use the full range of supports that meet the claim limitations. D. Badawi Trial Tr. Day 1 at 96:12-18, 97:20-21, 99:24-100:2, 115:3-116:8, 118:20-119:4, 120:15-25, 124:12-125:2, 127:15-20, 128:2-9, 131:5-20, 122:5-20, 132:5-25, 133:23-134:2, 134:5-7, 134:14-23, 137:4-15, 138:11-13, 138:16-17, 138:21-139:5, 139:15-140:7, 140:10-141:6, 141:10-12, 149:11-16, 150;21-151:3, JTX1, JTX2, DTX125, DTX136, DTX165, DTX166, DTX260, DTX270, DTX1039, DTX1127. No reasonable jury could find that the specifications of the '443 and '482 patents provide an adequate written description of the asserted claims.

### C. Obviousness-Type Double Patenting

Defendant further moves for judgment as a matter of law on obviousness-type double patenting of the asserted claims of the '443 patent, as discussed at the pretrial conference and as set forth in Defendants' opening and answering summary judgment briefs. *See* D.I. 297 at 20-24. *See* Transcript of March 22, 2024 Pretrial Conference at 18:5-8, 23:3-7.

### III. Willfulness

No reasonable jury could find that Ivantis and Alcon's alleged infringement of the asserted claims was willful. There is no evidence that Ivantis and Alcon deliberately or intentionally infringed any of the asserted claims. Sight Sciences cannot rely on knowledge alone of the asserted patents or of patent applications to show knowledge of the issued claims or intent to infringe the issued claims. *See, e.g.*, *SRI, Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (finding there can be no willful infringement due to a "patent pending" notice, as "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents."). Despite Sight's lofty opening statements, Day 1 Trial Tr. at 31:20-34:10, the remaining evidence Sight Sciences presented at trial amounts to, at most, knowledge of the patents, but not knowledge of infringement or any intentional or deliberate infringement sufficient to show specific intent to infringe at the time of the challenged conduct. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). Sight Sciences alleges that, in 2008, Ivantis President and CEO David Van Meter opened and read a patent application that contained only claims that plaintiff admitted are not infringed by the Hydrus and issued as an unasserted patent that is also admittedly not infringed by the Hydrus. Sight Sciences contention that they later filed continuations with broader claims that later led to one of the asserted patents and that Ivantis admitted knowledge of two of the asserted patents as of 2016 is not sufficient to support willfulness of the patents in suit. Van

9

Meter Day 2 Trial Tr. at 185:16-187:18. But, that '068 application (PTX36) has no issued claims and the claims in the application required a core-centric design, which was not asserted against the Hydrus.  D. Badawi Trial Tr. Day 1 at 142:22-143:1. Moreover, knowledge alone cannot be a legally sufficient basis for reasonable jury to find willfulness. *See Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*, C.A. Nos. 2022-2001, 2022-2076, 2023 U.S. App. LEXIS 21178, at *22 (Fed. Cir. Aug. 15, 2023) ("[K]nowledge of the asserted patent and evidence of infringement, although necessary, is not sufficient for a finding of willfulness").

## IV. Damages

Sight Sciences has failed to offer sufficient evidence for a reasonable jury to find any amount of damages for the alleged infringement. It has failed to set forth an adequate evidentiary basis for lost profits or reasonable royalty damages for at least the reasons set forth below.

Sight Sciences has failed to offer a legally sufficient evidentiary basis for a reasonable jury to find that any of its products, including Omni, are sufficiently similar to the Hydrus product to support an award of lost profits or that they directly compete in the same market segment for the same customers, or that any lost sales were the result of the alleged infringement. Nor has it offered sufficient evidence for a reasonable jury to find that, but for Ivantis and Alcon's alleged infringement, Sight Sciences would have made additional profits.

Sight Sciences has likewise filed to offer evidence sufficient for a reasonable jury to find for it on the Panduit factors. *See Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978). Sight Sciences has not shown, for example, a lack of available non-infringing alternatives for the asserted claims.  Instead, Sight's expert, Dr. Downs, provides a one-sentence conclusory opinion that "there were just no non-infringing alternatives available to Ivantis in the market that were possible." Downs Day 2 Trial Tr. at 71:10-16. Sight Sciences further failed to

10

adequately link its purported lost profits to any alleged infringement by Ivantis and Alcon of the asserted claims, or to carry its burden of proving the quantity of that alleged infringement.

Regarding a reasonable royalty, Sight's expert Mr. Jarosz derived a royalty rate from a settlement agreement entered into between Glaukos and Ivantis that differs significantly from the hypothetical license between Sight and Ivantis. The *Glaukos* agreement is not technologically comparable because it includes rights to many more patents (300) that are of broader scope than the three patents in suit. Trial Tr. Day 2 (Brown) at 266:18-21; Trial Tr. Day 4 (Jarosz) at 78:14-24. Sight's technical expert, Dr. Downs, simply provided his say-so that the Sight patents were broader and therefore more valuable than the *Glaukos* patents. Trial Tr. Day 2 (Downs) at 75:18-76:6. The agreement is also not economically comparable for at least the reasons that it was entered into between two head-to-head competitors for stent technology (whereas Sight does not sell a stent) and under the coercive impact of both the underlying *Glaukos* litigation and the pending Alcon option agreement. Trial Tr. Day 2 (Van Meter) at 172:18-173:15; *see also id.* at 138:10-142:10.

Mr. Jarosz also relies on an Alcon deal model that was created in connection with Alcon's assessment of whether to acquire Ivantis. As part of that analysis, Alcon created a model that projects future cash flow of Ivantis as a company going forward in perpetuity. However, the hypothetical negotiation involves a bare patent license to the three patents in suit, not the acquisition of an entire company, rendering Mr. Jarosz's use of that model non-comparable. Trial Tr. Day 4 (Jarosz) at 65:20-25; *id.* (Meyer) at 135:1-137:4.

Sight has likewise failed to reliably apportion its lost profit or reasonable royalty damages. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287 (Fed. Cir. 2017) ("[A]pportionment is an important component of damages law generally, and we believe it is

11

necessary in both reasonable royalty and lost profits analysis."); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–28 (Fed. Cir. 2014); *Ericsson Inc., v. D-Link Systems*, 773 F.3d 1201, 1232 (Fed. Cir. 2014) ("royalty rate…must be apportioned"); *id*. at 1226 ("[A]pportionment is required even for non-royalty forms of damages…"); *WesternGeco LLC v. ION Geophysical Corp.*, 913 F.3d 1067, 1073 (Fed. Cir. 2019) (apportionment is required for lost profits, including where the "application of the Panduit factors does not result in the separation of profits attributable to the patented device and the profits attributable" to other aspects). Mr. Jarosz relies on Dr. Downs for his apportionment of 83.3% based on Hydrus marketing materials, but Dr. Downs admitted that the patents are not linked to the highlighted features. Trial Tr. Day 2 (Downs) at 112:6-16; Trial Tr. Day 4 (Jarosz) at 71:22-24, 72:23-73:22.

In light of the evidence and Sight Sciences' failures of proof, no reasonable jury could find that Sight Sciences is entitled to lost profit damages, or that it is entitled to a reasonable royalty.

## **CONCLUSION**

Because no reasonable jury could find for Sight Sciences on its claims or against Ivantis and Alcon on their counterclaims, Ivantis and Alcon respectfully request that the Court grant judgment as a matter of law.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |  |
|  | /s/ Andrew E. Russell |
|  | John W. Shaw (No. 3362) |
| OF COUNSEL: | Karen E. Keller (No. 4489) |
| Gregg LoCascio | Andrew E. Russell (No. 5382) |
| Sean McEldowney | Nathan R. Hoeschen (No. 6232) |
| Steven Dirks | SHAW KELLER LLP |
| Socrates L. Boutsikaris | I.M. Pei Building |
| KIRKLAND & ELLIS LLP | 1105 North Market Street, 12th Floor |
| 1301 Pennsylvania Avenue, N.W. | Wilmington, DE 19801 |
| Washington, DC 20004 | (302) 298-0700 |
| (202) 389-5000 | jshaw@shawkeller.com |
|  | kkeller@shawkeller.com |
| Jeanne M. Heffernan | arussell@shawkeller.com |
| Kat Li | nhoeschen@shawkeller.com |
| Ryan J. Melde | *Attorneys for Defendants* |

KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Ryan Kane
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Brian A. Verbus
Jacob Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Dated: April 26, 2024