IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGHT SCIENCES, INC., | ) | |
| | ) | C. A. No.:  21-1317-JLH-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| IVANTIS, INC., ALCON RESEARCH LLC, | ) | |
| ALCON VISION, LLC AND ALCON INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

1.  GENERAL INSTRUCTIONS ................................................................ 1

    1.1  Juror's Duties ................................................................ 2

    1.2  Burdens of Proof ................................................................ 3

    1.3  Evidence Defined ................................................................ 5

    1.4  Direct and Circumstantial Evidence ........................................ 6

    1.5  Consideration of Evidence .................................................... 7

    1.6  Statements of Counsel ......................................................... 8

    1.7  Credibility of Witnesses; Weighing Conflicting Testimony ............... 9

    1.8  Expert Witnesses............................................................... 10

    1.9  Deposition Testimony ......................................................... 11

    1.10  Demonstrative Exhibits...................................................... 12

    1.11  Use of Notes ................................................................. 13

2.  THE PARTIES AND THEIR CONTENTIONS........................................ 14

    2.1  Claim Construction—Generally ............................................ 15

        2.1.1  Claim Construction for the Case ................................... 16

3.  INFRINGEMENT............................................................................ 17

    3.1  Direct Infringement—Knowledge of the Patent and Intent to Infringe Are Immaterial ..................................................................... 18

    3.2  Direct Infringement—Infringement........................................ 19

    3.3  Infringement of Dependent Claims......................................... 20

    3.4  Infringement of "Comprising of" Claims ................................. 21

    3.5  Actively Inducing Patent Infringement.................................... 22

4.  INVALIDITY ................................................................................. 24

    4.1  Prior Art ....................................................................... 25

        4.1.1  Prior Art Considered or Not Considered by the Patent Office ........ 26

    4.2  Invalidity of Independent and Dependent Claims ........................ 27

    4.3  Person of Ordinary Skill in the Art ........................................ 28

    4.4  Invalidity—Anticipation .................................................... 29

    4.5  Invalidity—Obviousness..................................................... 31

        4.5.1  Obviousness—The First Factor: Scope & Content of the Prior Art ........ 32

        4.5.2  Obviousness—Second Factor: Differences Between the Claimed Invention & the Prior Art ....................................................... 33

    4.5.3   Obviousness—The Third Factor: Level of Ordinary Skill ...................... 36

    4.5.4   Obviousness—The Fourth Factor: Other Considerations ........................ 37

4.6    Invalidity—Enablement ................................................................................. 38

4.7    Invalidity—Written Description Requirement ..................................................... 40

**5.    DAMAGES ....................................................................................................... 42**

5.1    Date Damages Begin .................................................................................. 43

5.2    Damages—Kinds of Damages That May Be Recovered ............................ 44

5.3    Lost Profits .................................................................................................. 45

    5.3.1   Lost Profits—"But For" Test ............................................................. 45

    5.3.2   Lost Profits—Panduit Factors ........................................................... 46

       (A)   Panduit Factors—Demand for the Patented Product or
            Method ................................................................................. 47

       (B)   Panduit Factors—Acceptable Non-Infringing Substitutes ........... 48

       (C)   Panduit Factors—Market Share .................................................... 50

       (D)   Panduit Factors—Capacity ....................................................... 51

       (E)   Panduit Factors—Amount of Profit—Incremental Income
            Approach .............................................................................. 52

5.4    Reasonable Royalty ..................................................................................... 53

    5.4.1   Reasonable Royalty—Generally ....................................................... 53

    5.4.2   Reasonable Royalty Definition—Using the "Hypothetical
          Negotiation" Method ........................................................................ 54

    5.4.3   Reasonable Royalty—Relevant Factors If Using the Hypothetical
          Negotiation Method .......................................................................... 55

    5.4.4   Reasonable Royalty—Apportionment ............................................... 57

    5.4.5   Reasonable Royalty—Timing ........................................................... 58

    5.4.6   Reasonable Royalty—Availability of Non- Infringing Substitutes ......... 59

    5.4.7   Reasonable Royalty—Use of Comparable License Agreements ............. 60

5.5    Damages—Kinds of Damages That May Be Recovered .......................... 61

**6.    WILLFUL INFRINGEMENT ......................................................................... 62**

**7.    DELIBERATION AND VERDICT ................................................................ 63**

7.1    Unanimous Verdict ..................................................................................... 64

7.2    Duty to Deliberate ...................................................................................... 65

7.3     Social Media .................................................................................................... 66

7.4     Court Has No Opinion ....................................................................................... 67

1.      **GENERAL INSTRUCTIONS**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  Please listen very carefully to everything I say.  Each of you has been provided a copy of these instructions.  You are welcome to read along as I deliver them.

You will have your written copy of these instructions, as well as the preliminary instructions, with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.  In following my instructions, you must follow all of them, including the ones the Court gave you last Friday at the start of the case and the ones I have given during trial, and not single out some and ignore others.  They are all important.

1

## 1.1    Juror's Duties

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

## 1.2     Burdens of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."  I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

Sight Sciences asserts that Ivantis and Alcon infringe the Asserted Patents.  Sight Sciences also alleges that Ivantis and Alcon's infringement of the Asserted Patents was willful.  A party asserting patent infringement has the burden of proving infringement, whether that infringement was willful, and the amount of monetary damages, by a preponderance of the evidence.

That means, for Sight Sciences to prevail on each of its claims, it must prove to you, in light of all the evidence, that what it claims is more likely true than not.  To say it differently: if you were to put the favorable and unfavorable evidence on opposite sides of a scale, Sight Sciences has to make the scales tip, to any degree, to Sight Sciences' side in each instance.  If the scale should remain equal or tip in favor of Ivantis and Alcon, you must find in favor of Ivantis and Alcon.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

In addition to denying Sight Sciences' claims that it infringes, Ivantis and Alcon assert that the asserted claims are invalid.  A party challenging the validity of a patent—in this instance, Ivantis and Alcon—has the burden to prove that the asserted claims are invalid by clear and convincing evidence.  Clear and convincing evidence means evidence that it is highly probable that a fact is true.  Clear and convincing evidence involves a higher degree of persuasion than is

3

necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt.

In determining whether either party has met its burden, you may, unless otherwise instructed, consider all the evidence, regardless of who may have produced it.

### 1.3     Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, matters I have instructed you to take judicial notice of, and the stipulations to which the lawyers agreed.

Certain models, reproductions, charts, summaries, and graphics have been used to illustrate certain evidence and testimony from witnesses.  Unless I have specifically admitted them into evidence, these models, reproductions, charts, summaries, and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  You should not be influenced by a lawyer's objection or by my ruling on that objection.  None of my comments or questions are evidence.

During the trial, I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Make your decision based only on the evidence, as I have defined it here, and nothing else.

5

### 1.4    Direct and Circumstantial Evidence

During the preliminary instructions, the Court told you about "direct evidence" and "circumstantial evidence."  I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which directly proves a fact.  If a witness testified that he saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 1.5     Consideration of Evidence

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6    Statements of Counsel

A further word about statements of counsel and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

### 1.7    Credibility of Witnesses; Weighing Conflicting Testimony

You are the sole judges of each witness's credibility.  You may believe everything a witness says, or part of it, or none of it.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you.  You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

### 1.8    Expert Witnesses

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

### 1.9    Deposition Testimony

During the trial, certain testimony was presented to you by the playing of video excerpts from a deposition.  The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence.  You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out-of-court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

### 1.10   Demonstrative Exhibits

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.

The remainder of the exhibits (including charts, models, reproductions, PowerPoint presentations, and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**1.11    Use of Notes**

You may have taken notes during trial to assist your memory.  As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There is a general tendency to attach undue importance to matters which one has written down.  In addition, some testimony which is considered unimportant at the time presented, and thus not written down, may take on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**2.      THE PARTIES AND THEIR CONTENTIONS**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

1.      Whether Sight Sciences has proven by a preponderance of the evidence that Ivantis and Alcon infringe one or more of the Asserted Claims.

2.      Whether Ivantis and Alcon have proven by clear and convincing evidence that one or more of the Asserted Claims is invalid.

3.      If you decide that one or more of the Asserted Claims has been infringed by Ivantis and Alcon and is not invalid, you will then need to decide the amount of money damages Sight Sciences has proven by a preponderance of the evidence are to be awarded.

4.      If you decide that one or more of the Asserted Claims has been infringed by Ivantis and Alcon and is not invalid, you will also need to decide whether Sight Sciences has proven by a preponderance of the evidence that Ivantis and Alcon's infringement was willful.

## 2.1    Claim Construction—Generally

Before you decide infringement and invalidity, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

### 2.1.1   Claim Construction for the Case

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. Those meanings have been provided to you in a chart in your binders.

3.    **INFRINGEMENT**

I will now instruct you as to the law you must follow when deciding whether Sight Sciences has proven that Ivantis and Alcon infringed any of the Asserted Claims.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the claimed invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Sight Sciences alleges that Ivantis and Alcon's Hydrus Microstent, both individually and in conjunction with accompanying materials, infringes the Asserted Claims.

Having one's own patent is not a defense to infringing another's patent.  Accordingly, whether Ivantis and Alcon have patents and whether any of these patents cover the Hydrus Microstent should not be considered in your determination of whether the Hydrus Microstent infringes Sight Sciences' patents.

A claim of a patent may be infringed directly or indirectly. I will now explain direct and indirect infringement.

### 3.1    Direct Infringement—Knowledge of the Patent and Intent to Infringe Are Immaterial

In this case, Sight Sciences asserts that Ivantis and Alcon have directly infringed the Asserted Claims of the '482 and '443 Patents. Ivantis and Alcon are liable for directly infringing a claim if you find that Sight Sciences has proven that it is more likely than not that Ivantis and Alcon made, used, imported, offered to sell, or sold the invention defined in that claim of Sight Sciences' patent during the term of the '482 and '443 Patents.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.

### 3.2     Direct Infringement—Infringement

To determine infringement, you must compare the accused product or method with each patent claim Sight Sciences asserts is infringed.

You must determine infringement separately for each patent claim that Sight Sciences asserts is infringed.

A patent claim is infringed only if the accused product or method includes each and every element or method step recited in that patent claim. The same element or method step of the accused product or method may satisfy more than one element of a patent claim. If the accused product or method does not contain one or more elements or method steps recited in a claim, Ivantis and Alcon do not infringe that claim.

### 3.3    Infringement of Dependent Claims

There are two different types of claims in the patent. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. For example, Claim 1 of the '443 Patent, which is not asserted by Sight Sciences in this case, is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, Claim 8 of the '443 Patent is a dependent claim that refers to Claim 1 of the '443 Patent. A dependent claim includes all elements recited in the dependent claim, as well as all elements of the independent claim to which it refers.

To establish literal infringement of a dependent claim, Sight Sciences must show that it is more likely than not that the accused product or method includes each and every element of the independent claim and dependent claim.

If you find that an independent claim from which a dependent claim depends is not literally infringed, then you must find that the dependent claim is also not literally infringed.

### 3.4    Infringement of "Comprising of" Claims

The preambles to the Asserted Claims use the word "comprising." The word "comprising" means "including the following but not excluding others."

If you find that the accused product or method includes all of the elements in one of the Asserted Claims, even if the accused product or method includes additional components or method steps, you must find that the accused product or method literally infringes that claim.

### 3.5     Actively Inducing Patent Infringement

In this case, Ivantis and Alcon are accused of actively inducing physicians to directly infringe claim 18 of the '328 Patent.

To establish that Ivantis and Alcon actively induced infringement of claim 18 of the '328 Patent, Sight Sciences must prove by a preponderance of the evidence that (1) a single actor (here, a physician) is responsible for direct infringement, namely, a single actor performs all of the steps of the method recited in claim 18 of the '328 Patent, and (2) Ivantis and Alcon actively induced these acts of infringement by a physician.

To prove active inducement, Sight Sciences must establish that it is more likely than not that:

1.      Ivantis and Alcon aided, instructed, or otherwise acted with the intent to cause acts by physicians that would constitute direct infringement of claim 18 of the '328 Patent;

2.      Ivantis and Alcon knew of claim 18 of the '328 Patent, or showed willful blindness to the existence of that claim, at that time;

3.      Ivantis and Alcon knew, or showed willful blindness, that the actions of physicians would infringe claim 18 of the '328 Patent; and

4.      Physicians infringed claim 18 of the '328 Patent.

Sight Sciences must prove all four elements to establish infringement.  In order to establish active inducement of infringement, it is not sufficient that Ivantis and Alcon directly infringe the claim. Nor is it sufficient that Ivantis and Alcon were aware of the act(s) by physicians that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Ivantis and Alcon specifically intended physicians to infringe claim 18 of the '328 Patent or that Ivantis and Alcon believed there was a high probability that physicians would infringe the claim, but deliberately avoided learning the infringing nature of the physicians' acts. The mere fact, if true, that Ivantis and Alcon knew or should have known that

22

there was a substantial risk that the physicians' acts would infringe claim 18 of the '328 Patent

would not be sufficient to support a finding of active inducement of infringement.

4.      **INVALIDITY**

Ivantis and Alcon contend that the Asserted Claims of the Asserted Patents are invalid. Ivantis and Alcon must prove invalidity by clear and convincing evidence.

Claims of an issued patent may be found to be invalid. Thus, you must determine whether each of Sight Sciences' claims are invalid.

**4.1    Prior Art**

Prior art includes any of the following items received into evidence during trial:

1.    any product or method that was publicly known or used by others in the United States before June 26, 2006;

2.    any product or method that was in public use or on sale in the United States before June 26, 2006;

3.    any patents that issued before June 26, 2006 or patent applications that published before June 26, 2006;

4.    any published application for patent by another filed in the United States before June 26, 2006;

5.    a patent granted on an application for patent by another filed in the United States before June 26, 2006;

6.    any publications having a date of public accessibility before June 26, 2006; and

7.    any product or method that was made by anyone in the United States before June 26, 2006 where the claimed invention was not later abandoned, suppressed, or concealed.

### 4.1.1   Prior Art Considered or Not Considered by the Patent Office

Regardless of whether or not particular prior art references were considered by the Patent Examiner during the prosecution of the application that issued as the Asserted Patents, Ivantis and Alcon must prove invalidity by clear and convincing evidence.  This burden of proof remains the same whether or not the Patent Examiner considered the references.

Where Ivantis and Alcon are relying on prior art that was not considered by the Patent Examiner, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Examiner did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether Ivantis and Alcon have carried their clear-and-convincing burden of proving invalidity.

### 4.2     Invalidity of Independent and Dependent Claims

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid.

### 4.3     Person of Ordinary Skill in the Art

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art, also referred to as a POSA, in the field of the claimed invention as of the effective filing date.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1. the level of education and experience of persons actively working in the field as of June 26, 2006, including the inventor(s);

2. the types of problems encountered in the art as of June 26, 2006 and prior art solutions to those problems; and

3. the sophistication of the technology in the art as of June 26, 2006, including the rapidity with which innovations were made in the art as of June 26, 2006.

### 4.4     Invalidity—Anticipation

An invention must be new to be entitled to patent protection under the U.S. patent laws. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. To prove anticipation, Ivantis and Alcon must prove that the claimed invention is not new by clear and convincing evidence.

In this case, Ivantis and Alcon contend that one of the Asserted Claims of the Asserted Patents is invalid because the claimed invention is anticipated. Specifically, Ivantis and Alcon contend that the '443 Patent Claim 8 is anticipated by Lynch-984.

The parties agree that U.S. Patent No. 6,450,984, which the parties refer to as "Lynch-984," is prior art.

Anticipation must be determined on a claim-by-claim basis.  To anticipate a claim, each element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether each of the elements of the claimed invention is found in a prior art reference, you should consider what a person of ordinary skill in the art would have understood from his or her review of the particular reference.

In determining whether a single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior art reference but also what is inherently present or disclosed in that prior art reference or what inherently results from its practice. Prior art inherently anticipates a patent claim if the missing element(s) or feature(s) would necessarily result from what the prior art reference teaches to a person of ordinary skill in the art. A party claiming inherent anticipation must prove that the allegedly inherent elements or features necessarily are present by clear and convincing evidence. Evidence outside of the prior

art reference itself may be used to show that elements that are not expressly disclosed in the reference are inherent in it. To be inherent, the element(s) or feature(s) that are alleged to have been inherent must necessarily have existed in or resulted from the prior art reference. The fact that the element(s) or feature(s) are likely to have existed is not sufficient. It is not required, however, that persons of ordinary skill recognize or appreciate the inherent disclosure at the time the prior art was first known or used. Thus, the disclosure of the prior art that was unrecognized and unappreciated can still be an invalidating anticipation, provided the allegedly inherent element(s) or feature(s) were necessarily present in the disclosure.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.

### 4.5    Invalidity—Obviousness

Ivantis and Alcon contend that each of the Asserted Claims is invalid because the claimed invention(s) would have been "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to persons of ordinary skill in the art in the field of the invention as of June 26, 2006.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of June 26, 2006.

The following factors must be evaluated to determine whether Ivantis and Alcon have established that the claimed invention is obvious:

1.    The scope and content of the prior art relied upon by Ivantis and Alcon;

2.    The differences, if any, between each claim of the Asserted Patents that Ivantis and Alcon contend are obvious and the prior art;

3.    The level of ordinary skill in the art as of June 26, 2006; and

4.    Additional considerations, if any, that indicate that the claims were obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. Defendants must prove by clear and convincing evidence that the invention would have been obvious. Again, you must undertake this analysis separately for each claim that Ivantis and Alcon contend is obvious.

I will now explain each of the four factors in more detail.

31

### 4.5.1   Obviousness—The First Factor: Scope & Content of the Prior Art

In deciding obviousness, the parties agree that the prior art includes the following items received into evidence during the trial:

- U.S. Patent No. 6,450,984, which the parties refer to as "Lynch-984" or "Lynch"

- WO 2005/105197, which the parties refer to as "Lynch-197"

- U.S. Patent No. 7,186,232, which the parties refer to as "Smedley"

- International Publication No. 2006/066103, which the parties refer to as "Stegmann"

- U.S. Patent Publication No. 2002/0165478, which the parties refer to as "Gharib-478"

- U.S. Patent Publication No. 2003/0060752, which the parties refer to as "Gharib-752"

- U.S. Patent No. 6,638,239, which the parties refer to as "Gharib-239"

### 4.5.2   Obviousness—Second Factor: Differences Between the Claimed Invention & the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art as of June 26, 2006. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the claimed invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art as of June 26, 2006. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proven obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long-known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the teachings in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.

33

If you find that a reason existed as of June 26, 2006 to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious.

Similarly, you may consider the possibility that a reference teaches away from the claimed invention. A reference teaches away from the invention when it would have discouraged a person of ordinary skill in the art as of June 26, 2006 from practicing the claimed invention, or when such a person would be led in a different direction than practicing the claimed invention.

You must undertake this analysis separately for each claim that Ivantis and Alcon contend would have been obvious.

In comparing the scope and content of each prior art reference to a patent claim, you may find that inherency may supply a claim element that is otherwise missing from the explicit disclosure of a prior art reference. The inherent presence of an element so found by you may be used in your evaluation of whether the claimed invention would have been obvious in view of the prior art. But, to rely on inherency to establish the existence of a claim element in the prior art in an obviousness analysis, that element necessarily must be present in, or the natural result of, the combination of elements explicitly disclosed by the prior art. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from an explicit disclosure is not sufficient to find inherency. However, if the disclosure is sufficient to show that the natural result flowing from the explicit disclosure *would* result in the claim element in question, inherency may be found. Something inherent from the explicit disclosure of the prior art must be limited when applied in an obviousness analysis and used only when the inherent element is the natural result of the combination of prior art elements explicitly disclosed. An important

34

consideration when determining whether a reference inherently discloses a previously unknown property of something is whether that property is unexpected. Although all properties of something are inherently part of that thing, if a property is found to be unexpectedly present, then the property may be nonobvious.

### 4.5.3   Obviousness—The Third Factor: Level of Ordinary Skill

To determine the obviousness of the invention, you must determine the level of ordinary skill in the field of the invention at the time of June 26, 2006. As mentioned earlier, you must consider and assess this factor before reaching your conclusion in this case.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

### 4.5.4   Obviousness—The Fourth Factor: Other Considerations

As part of deciding the issue of obviousness for each claimed invention, you must also consider certain factors, which may help to determine whether the invention would have been obvious. These factors are sometimes referred to as secondary considerations of non-obviousness. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole. Certain of these factors include:

1.   Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.   Did others try, but fail, to solve the problem that was solved by the claimed invention?

3.   Did the claimed invention achieve unexpectedly superior results over the closest prior art?

4.   Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. These factors are relevant only if there is a direct connection, or nexus, between the factor and the invention covered by the patent claim. Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Ivantis and Alcon have proven that the claimed invention would have been obvious.

There are also factors that, if established, may suggest that the claim was obvious. One such factor is whether the claimed invention was independently and simultaneously invented within a comparatively short amount of time. If you answer "yes" to that question, it may suggest that the claim was obvious.

37

### 4.6     Invalidity—Enablement

Ivantis and Alcon contend that the Asserted Claims of the '482 Patent and '443 Patent are invalid for lack of enablement. Ivantis and Alcon bear the burden of establishing by clear and convincing evidence that the specification fails to satisfy the enablement requirement.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention as of the effective filing date of the claimed invention to make and use the full scope of the claimed invention without undue experimentation. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill in the art would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill in the field of the invention to practice the claimed invention does not mean that a patent does not meet the enablement requirement. Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1.      The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques;

2.      The amount of direction or guidance disclosed in the patent;

3.      The presence or absence of working examples in the patent;

4.      The nature of the invention;

5.      The state of the prior art;

6.      The relative skill of those in the art;

7.      The predictability of the art; and

8.      The breadth of the claims.

### 4.7    Invalidity—Written Description Requirement

Ivantis and Alcon contend that the Asserted Claims of the '482 Patent and '443 Patent are invalid for failure to satisfy the written description requirement. Defendants bear the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written description requirement.

A patent must contain a written description of the product or method claimed in the patent. The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, with clear, concise, and exact terms. When determining whether the specification discloses the invention, the claim must be viewed as a whole.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent.  The written description requirement is satisfied if the specification shows that the inventor possessed the subject matter claimed in the patent as of the effective filing date of the claimed invention, even though the claims may have been changed or new claims added since that time.  It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.  An inventor is permitted to amend claims or add claims to a patent application in order to encompass the devices or processes of others on the market, but in order to satisfy the written description requirement, the specification of the originally-filed application must describe the full scope of each element of the claimed invention, such that persons of ordinary skill in the art would recognize that the inventor made the invention having each of the elements described in the claim.

The exact words found in the claim need not be used. It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required. Enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.  In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1.      The nature and scope of the patent claims;

2.      The complexity, predictability, and maturity of the technology at issue;

3.      The existing knowledge in the relevant field; and

4.      The scope and content of the prior art.

The sufficiency of the written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

If you find that Ivantis and Alcon have proven by clear and convincing evidence that the Asserted Patents do not contain adequate written description for the inventions recited in any of the Asserted Claims, then you must find that claim is invalid.

5.      **DAMAGES**

If you find that the accused product or method infringes any of the Asserted Claims, and that those claims are not invalid, you must determine the amount of damages to be awarded Sight Sciences for the infringement. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that each of the Asserted Claims is either invalid or is not infringed, then Sight Sciences is not entitled to any damages.

Sight Sciences must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence.

If proven by Sight Sciences, damages must be in an amount adequate to compensate Sight Sciences for the infringement. The purpose of a damages award is to put Sight Sciences in about the same financial position it would have been in if the infringement had not happened. But the damages award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance, only in the event you find in favor of Sight Sciences. You will need to address damages only if you find that at least one of the Asserted Claims is both infringed and valid.

### 5.1     Date Damages Begin

Sight Sciences and Ivantis and Alcon agree that the date for the start of any damages calculation is no earlier than August 9, 2018, when the accused product was launched following FDA approval.

**5.2     Damages—Kinds of Damages That May Be Recovered**

There are two kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "What profits would the patent owner have made 'but for' the alleged infringement?" Lost profits can be recovered for the loss of revenue suffered by a patentee as a result of an infringing product or method competing in the same marketplace as the patentee's own products or methods. Lost profits can be recovered by the patentee for revenue loss associated with the patentee's products or methods that are themselves not covered by the patents at issue, if those products or methods were sufficiently similar to the infringing product or method to directly compete in the same market segment for the same customers and if the patentee can prove that those lost sales were the result of the infringement.

Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and that the patent owner would have accepted just before infringement began. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

### 5.3 Lost Profits

#### 5.3.1 Lost Profits—"But For" Test

Sight Sciences is seeking lost-profits damages for a portion of the accused infringing sales in this case. To prove lost profits, Sight Sciences must show that, but for Ivantis and Alcon's infringement, Sight Sciences would have made additional profits through the sale of all or a portion of the sales of the Hydrus Microstent made by Ivantis and Alcon. Sight Sciences must prove by a preponderance of the evidence that it would have made additional profits but for Ivantis and Alcon selling the Hydrus Microstent. Part of your job is to determine what the parties who purchased or practiced the allegedly infringing product or method from Ivantis and Alcon would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by Sight Sciences, not the profits, if any, made by Ivantis and Alcon on the allegedly infringing sales.

### 5.3.2   Lost Profits—Panduit Factors

Sight Sciences has proven its lost profits if you find that Sight Sciences has proven each of

the following factors by a preponderance of the evidence:

1.   a demand for the patented product or method in the relevant market;

2.   the absence of acceptable non-infringing substitutes;

3.   that Sight Sciences had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by Ivantis and Alcon—in other words, that Sight Sciences was capable of satisfying the demand for the patented product or method; and

4.   the amount of profit that Sight Sciences would have made if it were not for Ivantis and Alcon's infringement.

I will now explain each of these factors.

**(A)      Panduit Factors—Demand for the Patented Product or Method**

The first factor asks whether there was demand for the patented product or method, in the relevant market. Sight Sciences can prove demand for the patented product or method by showing significant sales of Ivantis and Alcon's product or method that are covered by one or more of the asserted claims of the patents-in-suit. To use sales of Ivantis and Alcon's product or method as proof of this demand, however, Sight Sciences' and Ivantis and Alcon's products or methods must be sufficiently similar to compete against each other in the same market or market segment. Sight Sciences' product or method need not be covered by the Asserted Patents for Sight Sciences to be entitled to lost profits. However, Sight Sciences must demonstrate by a preponderance of the evidence that its products were sufficiently similar to Ivantis and Alcon's products to compete in the same market for the same customers and that Sight Sciences has suffered revenue loss as a result of that marketplace competition with the Accused Product or Method.

### (B)     Panduit Factors—Acceptable Non-Infringing Substitutes

The second factor asks whether non-infringing, acceptable substitutes for Sight Sciences'
claimed product or method competed with Ivantis and Alcon's accused product or method in the
marketplace and the impact of such substitutes on the marketplace absent the sale of Ivantis and
Alcon's accused product or method. If the realities of the marketplace are that competitors other
than Sight Sciences would likely have captured some or all of Ivantis and Alcon's sales of the
infringing product or method, even despite a difference in the product or method, then Sight
Sciences is not entitled to lost profits on those sales that would have been made by non-infringing
substitute.

To be an acceptable substitute, the product or method must have had one or more of the
advantages of the patented invention that were important to the actual buyers of the infringing
products, not the public in general. The acceptable substitute also must not infringe the patent,
either because they were licensed under the patent or they did not include all the features required
by the patent. The acceptable substitute may be a product or method that involved a modification
of the infringing product or method to avoid infringement or the removal of at least one feature of
the invention from the product or method. The acceptable substitute, in addition to being either
licensed or non-infringing, must have been available during the damages period.

An alternative product or method may be considered "available" as a potential substitute
even if the product or method was not actually on sale during the infringement period. Factors
suggesting the alternative was available include whether the material, experience, and know-how
to make or use the alleged substitute were readily available at the time of infringement. Factors
suggesting the alternative was not available include whether the material was of such high cost as
to render the alternative unavailable and whether an alleged infringer had to design or invent
around the patented technology to develop an alleged substitute.  If the acceptable substitute was

not sold during the damages period, then Defendants must show by a preponderance of the evidence that, during the damages period, a competitor or Ivantis and Alcon had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute.

If you determine that some of Ivantis and Alcon's customers would just as likely have purchased an acceptable non-infringing substitute, then Sight Sciences has not shown it lost those sales but for Ivantis and Alcon's infringing sales.

Even if you find that Sight Sciences' and/or Ivantis and Alcon's products and methods were the only ones with the advantages of the patented invention, Sight Sciences is nonetheless required to prove to you that Sight Sciences, in fact, would have made Ivantis and Alcon's infringing sales.

### (C)    Panduit Factors—Market Share

If you find that there were acceptable non-infringing substitutes in the market, then Sight Sciences may still be entitled to lost profits on a portion of Ivantis and Alcon's infringing sales. The burden is on Sight Sciences to prove that it is more likely than not that its product or method competed in the same market as Ivantis and Alcon's infringing product or method, and that Sight Sciences would have made a portion of the infringing sales equal to at least Sight Sciences' share of that market but for Ivantis and Alcon's infringement. It is not necessary for Sight Sciences to prove that Sight Sciences and Ivantis and Alcon were the only two suppliers in the market for Sight Sciences to demonstrate entitlement to lost profits.

### (D)    Panduit Factors—Capacity

This factor asks whether Sight Sciences had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Ivantis and Alcon's infringement. Sight Sciences must prove that it could have supplied the additional products needed to make the sales Sight Sciences said it lost, or that someone working with Sight Sciences could have worked with a third party to supply the additional products. Sight Sciences also must prove that it more likely than not had the ability to market and sell these additional products.

### (E)    Panduit Factors—Amount of Profit—Incremental Income Approach

Sight Sciences may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that Sight Sciences would have had to pay to make the lost sales. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

### 5.4   Reasonable Royalty

#### 5.4.1   Reasonable Royalty—Generally

Sight Sciences is claiming lost profits for only a portion of the accused infringing sales, so you must also consider the issue of a reasonable royalty. The amount of damages that Ivantis and Alcon pay Sight Sciences for infringing Sight Sciences' patents must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of Sight Sciences' invention.

You must only award Sight Sciences a reasonable royalty in an amount that Sight Sciences has proven by a preponderance of the evidence that it could have earned on any infringing sales for which you have not already awarded lost-profit damages. A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, sell, or import a patented product or practice a patented method.

A reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products or methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The total royalty must reflect the value attributable to the infringing features of the product or method, and no more.

### 5.4.2   Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Sight Sciences and Ivantis. Of course, we know that they did not agree to a license and royalty payment. But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license at a time prior to when the infringement first began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also assume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

### 5.4.3   Reasonable Royalty—Relevant Factors If Using  the Hypothetical Negotiation Method

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1.  Any royalties received by Sight Sciences for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.  The rates paid by Ivantis and Alcon to license other patents comparable to the Asserted Patents.

3.  The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.  Sight Sciences' established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.  The commercial relationship between Sight Sciences and Ivantis and Alcon, such as whether or not they are competitors in the same territory in the same line of business.

6.  The effect of selling the patented product or method in promoting other sales of Ivantis and Alcon; the existing value of the invention to Sight Sciences as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.  The duration of the Asserted Patents and the term of the license.

8.  The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

9.  The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for Sight Sciences; and the benefits to those who have used the invention.

11.  The extent to which Ivantis and Alcon have made use of the invention; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as Sight Sciences) and a licensee (such as Ivantis) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

### 5.4.4   Reasonable Royalty—Apportionment

If you find that damages are appropriate, the amount you find as damages must be based on the value attributable to the patented features, as distinct from other, unpatented features of the Hydrus, or other factors such as Ivantis and Alcon's brand, marketing, or advertising. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable only to the patented technology. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

In other words, the royalty must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

### 5.4.5   Reasonable Royalty—Timing

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.  You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, profits earned by the infringer, and non-infringing alternatives.

### 5.4.6   Reasonable Royalty—Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product or method that is licensed under the patent or that does not infringe the patent.

### 5.4.7   Reasonable Royalty—Use of Comparable License Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for comparable rights to similar technologies. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, economic circumstances, structure, and scope. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Sight Sciences and Ivantis in order for you to consider it.  However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Sight Sciences and Ivantis, in terms of the scope of patent rights included, the technologies involved, and the economic circumstances of the contracting parties, when you make your reasonable royalty determination.

**5.5     Damages—Kinds of Damages That May Be Recovered**

In this case, Sight Sciences seeks lost profits for a portion of its damages and a reasonable royalty for the remainder of its damages for infringement that occurred between the launch of the Accused Product in August 2018 and the present.

Any damages award must apply only once for each act of infringement. In other words, if you find that Sight Sciences has proven that Ivantis and Alcon infringed any valid Asserted Claim of the Asserted Patents and that Sight Sciences has also proven that it is entitled to lost profits damages for some of those sales, then you may not award a reasonable royalty for those sales for which you are already awarding lost profits.  If you find that Sight Sciences has proven that Ivantis and Alcon infringed any valid Asserted Claim of the Asserted Patents, but that Sight Sciences has not proven it is entitled to lost profits damages for any sales, then you must award a reasonable royalty for all infringing sales.

Any amounts of damages that you determine that Sight Sciences is entitled to recover based on lost profits or a reasonable royalty must be set out separately on the jury verdict form. The total amount of damages is the sum of any lost profits damages and any reasonable royalty for sales you did not already take into account for lost profits.

6.      **WILLFUL INFRINGEMENT**

If you find that it is more likely than not that Ivantis and Alcon infringed a valid claim of the Asserted Patents, then you must also determine whether or not Ivantis and Alcon's infringement was willful.

To show that Ivantis and Alcon's infringement was willful, Sight Sciences must prove by a preponderance of the evidence that Ivantis and Alcon knew of the Asserted Patents and intentionally infringed at least one of the Asserted Claims. You may consider whether Ivantis and Alcon's behavior was deliberate or intentional. However, you may not find that Ivantis and Alcon's infringement was willful merely because Ivantis and Alcon knew about the patent, without deliberate or intentional infringement. In determining whether Sight Sciences has proven that Ivantis and Alcon's infringement was willful, you must consider all of the circumstances and assess Ivantis and Alcon's knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

7.      **DELIBERATION AND VERDICT**

Now let me finish up by explaining some things about your deliberation in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down on your message to me or tell the jury officer how you stand on your votes.  For example, do not write down or say that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

### 7.1      Unanimous Verdict

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.  Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law.  Do not decide who you think should win this case and then answer the questions accordingly.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.   What the verdict shall be is your sole and exclusive duty and responsibility.

### 7.2      Duty to Deliberate

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that, your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.3    Social Media

During your deliberations, just as during trial, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, WeChat, WhatsApp, SnapChat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

Of course, you may examine the various devices entered into evidence in this case—just as you may examine other evidence from this case.  But you should not use those devices to perform Internet research about this case or to communicate with anyone outside the jury room.

### 7.4     Court Has No Opinion

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.   You must decide the case yourselves based on the evidence presented.